THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

BUNGIE, INC., a Delaware corporation,

Plaintiff

v.

AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,

Defendants.

Cause No. 2:21-cv-0811 TSZ

**DEFENDANTS' MOTION TO DISMISS AND/OR REFER TO MANDATORY ARBITRATION**

**Note on Motion Calendar: February 4, 2022**

**Oral Argument Requested**

Defendants, by and through their undersigned counsel, hereby move to dismiss Causes of Action 1 through 9 of the Complaint under Rule 12(b)(6) Fed. R. Civ. P. for failure to state a claim for which relief may be granted.

Defendants further move for an order referring Causes of Action 3 through 9 of the Complaint to binding arbitration as expressly required by the terms of the Limited Software License Agreement ("LSLA") which Plaintiff Bungie, Inc. ("Bungie") alleges (1) controls here and (2) has been breached by Defendants.

Finally, and in the alternative, Defendants move to dismiss this action in its entirety pursuant to Rules 12(b)(2) and 12(b)(3) Fed. R. Civ. P. for lack of personal jurisdiction and improper venue.

**I        INTRODUCTION**

In a likely unintentional moment of transparency and honesty, Bungie, at Paragraph 4 of its Complaint, succinctly admits its true motives and true goals in this litigation:

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 1

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

4.     **Bungie brings this action** to stop Defendants' unlawful actions, to prevent Defendants from profiting off the unlawful infringement of Bungie's IP, to prevent Defendants from damaging Bungie's reputation and diminishing the perceived value of the Destiny IP by impairing the experience of legitimate non-cheat players of Destiny 2, as well as **to put cheaters and those who assist them on notice that Bungie does not and will not tolerate cheating in Destiny 2.**

(Complaint ¶4, emphasis supplied.)

What is really going on here is Bungie's transparent misuse of the legal system to achieve ends not actually permitted under laws actually passed by Congress.

While Bungie pays lip service to Defendants' supposed "unlawful actions" and "unlawful infringement" of Bungie's purported "IP," the fact remains that "cheating in Destiny 2" is not, in and of itself, unlawful, and the right of all people to engage in lawful conduct trumps Bungie's personal thoughts as to what is legitimate and what should be "tolerated" when it comes to online computer gaming.  Congress, not Bungie, sets the rules, and it is Bungie's burden to establish with competent evidence that Defendants engaged in "unlawful actions," and/or "unlawful infringement" of Bungie's purported IP.

Despite the hysteria and hyperbole of Bungie's Complaint, the Complaint is woefully inadequate when it comes to identifying what Defendants' purported unlawful acts are. Nevertheless, with deep pockets and a large law firm at its disposal, Bungie, *despite no actual evidence of wrongdoing,* does, indeed, put others "on notice" that it will not "tolerate" those who do not acquiesce to its own views as to what is permissible, what constitutes "cheating: and what is "legitimate."  Bungie apparently hopes to bamboozle this court into proscribing entirely lawful activities.  This court should not be party to such questionable tactics and should apply the laws that actually exist, not those Bungie apparently conjures out of thin air.

Under well-established law set out in *Twombly*[1]*, Iqbal*[2] and other cases, bare-boned accusations of "infringement," such as Bungie makes here, are insufficient to set out a "plausible" theory of liability.  More directly, they are insufficient to provide Defendants with adequate notice of what they supposedly did wrong and what Bungie's purported evidence of

---

1 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007).
2 *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 2
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

infringement consists of. For these reasons, Bungie's purported claims should be dismissed for failure to state a claim for which relief may be granted.

Not deterred by what its *own* Limited Software License Agreement ("LSLA") actually says, Bungie, in this action, seeks to have this Court litigate claims that are clearly and expressly subject to mandatory arbitration under that very same LSLA Bungie claims controls here. For this additional reason, such claims should be referred to mandatory arbitration of all issues, including whether any claim for which relief may be granted even exists.

Finally, as none of the Defendants has substantial contacts with the Western District of Washington, personal jurisdiction here does not exist. Indeed, the LSLA Bungie asserts here expressly states other than what Bungie claims. To the extent Bungie relies on its LSLA to claim such jurisdiction and venue, again, the claims belong in arbitration, not in this court.

## II   THE ASSERTED CLAIMS

Bungie's twenty-three page, one-hundred-thirty-six paragraph Complaint consists mostly of Bungie touting its own purported fame and the popularity of its products. Bungie spares no detail in describing itself, its products, and its own purported popularity among online gamers. However, when it comes to stating what Defendants actually did and how their actions somehow violated Bungie's rights, the Complaint is, not surprisingly, vague, bare bones, and wholly without relevant detail. Despite the total absence of such necessary detail, Bungie, in its Complaint, nevertheless asserts nine causes of action as follows:

1. **Copyright Infringement,** 17 U.S.C. § 501, et seq.;
2. **Trademark Infringement,** 15 U.S.C. § 1114;
3. **False Designation of Origin,** 15 U.S.C. § 1125(a);
4. **Circumvention of Technological Measures,** 17 U.S.C. § 1201(a);
5. **Trafficking in Circumvention Technology,** 17 U.S.C. §§ 1201(a)-(b);
6. **Breach of Contract;**
7. **Tortious Interference;**
8. **Violation of the Washington Consumer Protection Act,** RCW 19.86.020;
9. **Unjust Enrichment.**

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 3

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

Importantly, nowhere in its Complaint does Bungie plead "enough facts to state a claim to relief that is plausible on its face," as required under under clear Supreme Court precedent.

### III  APPLICABLE LAW

The days of bare-bones "notice pleading" are over.  As clearly established by the Supreme Court in the landmark cases of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the pleading standard of Rule 8, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.  As further held by the Supreme Court in *Iqbal,* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' (citing *Twombly,* 550 U.S. at 555) Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement. (citing *Twombly,* 550 U.S. at 557)." *Iqbal,* 556 U.S. at 678.

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zixiang Li v. Kerry,* 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

As an example of the type of detail needed to plead a plausible case of copyright infringement, and the level of detail found to be deficient, this court's recent decision in *Enter. Mgmt. v. Construx Software Builders, Inc.,* No. 2:19-CV-1458-DWC (W.D. Wash. May 29, 2020) is illustrative. (Copy attached as Exhibit A to Mann Declaration.)  In that case, and unlike here, the initial Complaint itself (Mann Dec. Ex.B), as well as the First Amended Complaint (Mann Dec. Ex.C), reproduced both the relevant portions of the work alleged to be infringed *and* the relevant portions of the works alleged to be infringing.[3]  Despite this level of detail, the court nevertheless dismissed some of the copyright claims as lacking plausibility.

---

3  See, e.g., ¶¶ 19, 20, 33-49 & 62-67 of Mann Dec. Ex.B, and ¶¶ 19, 20, 35-68 & 84-90 of Mann Dec. Ex.C).

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

# IV   ARGUMENT

**A.   The Complaint Fails To Allege A Plausible Claim For Copyright Infringement**

   **1.   Bungie Fails To Plead Any Specific Facts Amounting To "Copyright Infringement"**

The elements of copyright infringement are clear and direct: "A valid claim for copyright infringement requires '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Minds v. Office Depot, Inc.,* 945 F.3d 1106, 1110 (9th Cir. 2019) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)). Here, Bungie fails to plead any facts, plausible or otherwise, that Defendants have "cop[ied]...constituent elements of [its] work that are original." The sole extent of Bungie's pleadings in this regard are that:

"Defendants develop, advertise, use, and distribute a software cheat that purports to give players an unfair advantage in Destiny 2." (Complaint, ¶ 2);

"Defendants are infringing Bungie's copyrights…" (*Id.);*

"On information and belief, Defendants copied and distributed Bungie's copyrighted works in order to reverse engineer, disassemble, decompile, decrypt, and modify those works without Bungie's authorization." (*Id.* at ¶ 55);

"Defendants' cheat software infringes Bungie's Destiny Copyrights by copying, producing, preparing unauthorized derivative works from, distributing and/or displaying Destiny 2 publicly all without Bungie's permission." (*Id.* at ¶ 70); and

"Defendants' copies, reproductions, derivative works, and/or displays are identical or substantially similar to the copyrighted works." (*Id.* at ¶ 71).

This is the totality of Bungie's pleading regarding Defendants' purported "copying" of Bungie's alleged works.

By its own pleadings and allegations, Bungie claims only that Defendants "develop, advertise, use, and distribute a software cheat that purports to give players an unfair advantage

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 5

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

in Destiny 2." Nowhere does Bungie allege that the "software cheat" is, itself, a "copy" of any of the copyrighted works Bungie identifies at Paragraph 31 of its Complaint and shown in Exhibits 1-4 thereto. Nor can it. The "software cheat" that Bungie complains of in this action is *not* an unauthorized copy of any of the copyrighted works Bungie identifies in Paragraph 31 and Exhibits 1-4 of its Complaint. Significantly, Bungie nowhere even directly alleges that it is. Instead, Bungie complains generally about "cheaters" and how "cheating" is unfair.

Furthermore, the naked assertion in Paragraph 71 of Bungie's Complaint that, "Defendants' copies, reproductions, derivative works, and/or displays are identical or substantially similar to the copyrighted works." is woefully inadequate in that Bungie *nowhere* identifies, provides samples of, shows, describes or otherwise gives proper notice of what these purported "copies, reproductions, derivative works, and/or displays" are. How are Defendants supposed to defend against such a claim if the "copies, reproductions, derivative works, and/or displays" are described in such a vague manner? Defendants literally have no idea what Bungie is referring to here.[4]

Despite the wild and dramatic story Bungie tells about the evils of "cheating" in online games, Defendants are unaware of any law, and Bungie has certainly not cited any, that proscribes "cheating" in online gaming. To the extent Bungie relies on "copyright infringement" to achieve its goals, Bungie is *required* by the clear precedent of *Twombly* and *Iqbal* to plead the necessary elements of copyright infringement and to do so in a "plausible" manner. The "formulaic recitation of the elements" and the "naked assertion[s] devoid of further factual enhancement" that Bungie provides in Paragraphs 2, 55, 70 and 71 of its Complaint fail to meet that standard.

### 2. Undisputed Facts Demonstrate That Defendants *Could Not* Have Infringed At Least Two Of Bungie's Purportedly Copyrighted Works

At Paragraph 31 of its Complaint, Bungie identifies four copyright registrations that it asserts in this action. On its face, the Complaint unambiguously establishes that two of the

---

[4] Indeed, the words "reproductions" and "displays" appear in the Complaint *only* in ¶ 71 and nowhere else. What are they?

Motion to Dismiss  
Cause No. 21-CV-0811-TSZ                    Page 6

Mann Law Group pllc  
403 Madison Ave. N. Ste. 240  
Seattle, WA 98110  
Phone: 206.436.0900

works covered by these registrations were first published on November 10, 2020. (See, Registrations TX 8-933-658 and PA 2-280-030, attached to the Complaint as Exhibits 2 and 4, respectively). However, the "cheat software" Bungie complains of in this action was created and distributed *long before* November 10, 2020 , and, therefore, could not have been "copied" from these work. (Declaration of David Schaefer, ¶3) Indeed, Bungie first contacted Defendants to complain about their alleged "cheat software" at least as early as November 4, 2020, *before* the works copyrighted in Exhibits 2 and 4 had even been published. (Schaefer Dec. ¶6, Ex.A).

It is fundamental law that one accused of copyright infringement must have "access" to the work allegedly copied. "[T]o prove copyright infringement, a copyright owner must demonstrate 'defendant's access to the copyrighted work *prior to the creation* of defendant's work.'" *Lucky Break Wishbone Corp. v. Sears, Roebuck Co.,* 528 F. Supp. 2d 1106, 1122 (W.D. Wash. 2007) (citing *Baxter v. MCA, Inc.,* 812 F.2d 421 at 423) (emphasis supplied). "Proof of access *requires* an opportunity to view or to copy plaintiff's work." *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 482 (9th Cir. 2000) (emphasis supplied). "'[A] prior-created work cannot infringe a later-created one' because there can be no access to the copyrighted work. *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1128 (9th Cir. 2002) ('By simple logic, it is impossible to copy something that does not exist.')." *Lucky Break Wishbone,* 528 F. Supp. 2d at 1122.

Under the "simple logic" correctly noted by this and other courts long ago, Defendants could not have based their accused "cheat software" on works that were first published on November 10, 2020, well after that "cheat software" was first created. For this reason, there is no set of facts on which Bungie can plausibly claim that Defendants' earlier created work was based on or otherwise copied from Bungie's later created works. It is a factual and legal impossibility long recognized by the courts.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 7

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

### B. The Complaint Fails To Allege A Plausible Claim For Trademark Infringement

As with its claim for copyright infringement, Bungie fails to provide any detail whatsoever as to how and where Defendants purportedly use the alleged "DESTINY (& design) mark" as a trademark and not in a "fair use" manner.

Nowhere in its Complaint and exhibits does Bungie show actual use by Defendants of any of Bungie's purported marks. Unlike most trademark infringement actions wherein a sample of the supposedly infringing mark is typically attached as "Exhibit B"[5], Bungie nowhere shows or otherwise provides a sample of how Defendants are supposedly using Bungie's marks in an infringing manner. Indeed, the entirety of Bungie's allegations regarding Defendants' purported use of its mark appears in Paragraph 50 of its Complaint wherein Bungie alleges "Defendants' sold their cheat, 'Destiny 2 Hacks,' for $34.95/month" and in Paragraph 53 wherein Bungie makes reference to "Destiny 2 Aimbot" and "Destiny 2 No Recoil" products allegedly provided by Defendants.[6] Again, Bungie nowhere provides a sample or even a description of how Defendants supposedly use these terms. Bungie *nowhere* even attempts to show or describe how Defendants supposedly used any "design" purportedly owned by Bungie.

It is basic, well established law that trademark rights do not preclude *any* use by others of a protected mark, but only precludes use by others that would likely cause confusion as to source or would otherwise cause harm to a trademark owner. In particular, the well-established "fair use" doctrine permits others to use a trademark fairly to describe their own product and how it relates to the product of another. For example, it is not trademark infringement for a Volkswagen repair specialist to use the recognized marks, "Volkswagen" and "VW" in his business name to describe accurately what he does and what services are offered. *See, Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir. 1969). As stated by the Ninth Circuit in *Brother Records, Inc. v. Jardine,* 318 F.3d 900 (9th Cir.

---

[5] Right after "Exhibit A," which is usually a reproduction of the mark allegedly being infringed.

[6] As set out in Paragraph 5 of the accompanying Declaration of David Schaefer, none of the purported "cheat software" includes or has ever included a "no recoil" function. Again, Defendants have no basis for knowing the basis for the allegation or how to defend against it.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 8

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

2003), "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." *Id.* at 903-04 (9th Cir. 2003) (citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152 (9th Cir. 2002)).

Here, and based on the sparse, vague allegations Bungie makes regarding Defendants' supposed infringement of Bungie's marks, it is impossible to determine what purported use is even being complained of, much less determine whether an allegation of infringement is "plausible." Again, the utter lack of detail or specific facts needed to enable Defendants to understand and respond to a plausible allegation makes it difficult or impossible for Defendants to perform a meaningful investigation of the claim and determine what, exactly, is being alleged. As with Bungie's claim for copyright infringement, the claim for trademark infringement does not meet the *Twombly* and *Iqbal* standards and must be dismissed.

**C.     The Complaint Fails To Allege A Plausible Claim For False Designation Of Origin**

Count 3 of Bungie's Complaint purports to make out a case for false designation of origin under 15 U.S.C. § 1125(a). Unlike trademark infringement, (i.e. Count 2), Bungie, in this third cause of action, alleges solely that:

> Defendants' actions constitute the use in interstate commerce of a false designation of origin, false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants' products and services with Bungie, or as to the origin, sponsorship, or approval of the goods and services provided by Defendants in violation of 15 U.S.C. § 1125(a).

(Complaint, ¶ 88.)

How, if at all, Bungie's third cause of action differs from its second, is impossible to determine from the sparse and vague allegations Bungie makes. What is the "false designation of origin" Bungie complains of? What are the "false or misleading description of fact, or false or misleading representations of fact that are likely to cause confusion or mistake"? In what way have Defendants done anything to "deceive as to the affiliation,

Motion to Dismiss
Cause No. 21-CV-0811-TSZ                    Page 9

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

connection, or association of Defendants' products and services with Bungie, or as to the origin, sponsorship, or approval of the goods and services provided by Defendants"? Such cannot be determined from the Complaint as filed.

Again, the sparse, vague and conclusory allegations made by Bungie make it impossible for Defendants even to understand, much less analyze, the purported facts supposedly underlying this cause of action. Indeed, given that Bungie, by its own representations, "does not tolerate cheating or the individuals and entities who assist players in cheating" (Complaint ¶ 47) and "regularly bans players who are connected to cheat makers and/or who use cheat software within Destiny 2" (Complaint ¶ 48), how "plausible" is it that, despite such actions, consumers will mistakenly believe the accused "cheat software" is somehow created, sponsored, distributed, etc., with the *approval* of, Bungie? Bungie not only fails to plead a "plausible" claim, its own allegations make such a claim implausible on its face. In the absence of more specific factual pleading, Bungie's third cause of action must be dismissed under the *Twombly* and *Iqbal* standards.

**D.    The Complaint Fails To Allege A Plausible Claims For Circumvention of Technological Measures And Trafficking in Circumvention Technology**

Bungie's fourth and fifth causes of action are related in that both stem from 17 U.S.C. § 1201(a) which provides, in part, that, "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." As held by the Ninth Circuit, "Circumvention means 'to decrypt an encrypted work ... without the authority of the copyright owner.' § 1201(a)(3)(A)." *Disney Enters., Inc. v. VidAngel, Inc.,* 869 F.3d 848, 863 (9th Cir. 2017).

Again, the Complaint fails to identify in any plausible manner how Defendants supposedly did this, and these causes of action should be dismissed as well. Indeed, the allegation at Paragraph 29 of the Complaint that, "On information and belief, cheat software may also be used to surreptitiously install malware and other harmful software on the

Motion to Dismiss
Cause No. 21-CV-0811-TSZ                    Page 10

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

computers of cheat software users," is simply untrue and is nowhere otherwise addressed or factually supported in the Complaint. (See, Schaefer Declaration, ¶4.)

### E. The Complaint Fails To Allege Any Plausible Claim Against Defendant James May

The sole specific allegation against Defendant James May consists of a single sentence stating, "Defendant James May is an individual residing at 2217 Polo Park Drive, Dayton, Ohio, 45439." (Complaint ¶11.) Unlike the remaining individual defendants who, at least, are each alleged to be a "member" of the corporate defendant, Phoenix Digital, no such allegation is made against Mr. May. Indeed, his connection to any of the other defendants or to the alleged "cheat software" is nowhere stated or described in the Complaint. Except in Paragraph 11, Mr. May is *nowhere else* even mentioned in the body of the Complaint.

Why, and on what basis, Bungie is suing Mr. May is nowhere stated in, and cannot be determined from, the Complaint. Whether Mr. May is alleged to be liable for all, some or none of the nine causes of action asserted by Bungie simply cannot be ascertained. What unlawful act Mr. May himself is alleged to have committed (other than simply being lumped in with the other "Defendants") is nowhere stated. Again, how is Mr. May supposed to mount a defense to allegations that are not only vague but entirely non-existent?

A single sentence allegation that Mr. May, "is an individual residing at 2217 Polo Park Drive, Dayton, Ohio, 45439" without more does not, and cannot state a claim for which relief can be granted. What Mr. May supposedly did, other than reside in Ohio, is precisely what is supposed to be pleaded but is nowhere stated in the Complaint. This is the epitome of the type of fact-free and detail-free conclusory pleading the Supreme Court clearly proscribed in *Twombly* and *Iqbal* and that is improper here.

Because Bungie's Complaint alleges no connection whatsoever between Mr. May and the "cheat software" at issue in this case, and because residing in Dayton, Ohio is, to Defendants' knowledge, simply not an offense for which relief may be granted, Defendant James May should be dismissed from this action altogether.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 11

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

**F.    With The Possible Exceptions Of The First And Second Causes Of Action, Each Of The Remaining Causes Of Action Alleged By Bungie Must Be Referred To Mandatory Arbitration And Do Not Belong Here**

At Paragraph 42 of its Complaint, Bungie alleges that, "On information and belief, Defendants each downloaded, installed, and or played Destiny 2 and therefore accepted the terms of the LSLA." A copy of the "LSLA" Bungie alleges binds the Defendants, appears as Exhibit 6 to Bungie's Complaint (Dkt.#1-1, 16-23).

Under the clear, express terms of the LSLA, and except with respect to certain limited exceptions, mandatory arbitration is the "sole means" by which disputes under the LSLA are to be resolved. Those terms, drafted and imposed by Bungie itself, must be enforced as written.

As expressly stated by the LSLA, "Either party may initiate binding arbitration as the *sole means* to formally resolve claims, subject to the terms set forth below." (Complaint Exhibit 6, p. 5; Dkt. # 1-1, p. 21 of 23, emphasis supplied.) As further stated by the LSLA, "all claims arising out of or relating to this Agreement (including its interpretation, formation, performance and breach), the parties' relationship with each other and/or your use of the Program shall be finally settled by binding arbitration administered by JAMS." *Id.* The LSLA further provides that, "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes…" *Id.*

The only exception to these clear requirements is for, "an action in state or federal court that only asserts claims for patent infringement or invalidity, copyright infringement, moral rights violations, trademark infringement, and/or trade secret misappropriation." *Id.* at p. 6. (Dkt. # 1-1, p. 22 of 23.) In this case, Bungie makes no claims for "patent infringement", "moral rights violations" or "trade secret misappropriation," and the only causes of action subject to these "exceptions" are its first and second causes of action for "copyright infringement" and "trademark infringement" respectively. The remaining causes are each subject to the mandatory arbitration clause of Bungie's own LSLA that it purports to enforce in this action.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 12

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

The law is clear that arbitration clauses in contracts such as the LSLA mean what they say and must be enforced as written. As clearly set out in the Federal Arbitration Act, 9 U.S.C. §2:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce **to settle by arbitration a controversy thereafter** arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* (Emphasis supplied).

As interpreted by the courts, this section, "requires courts to enforce agreements to arbitrate according to their terms," (citing *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012)), in order "to place an arbitration agreement upon the same footing as other contracts ... and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)) *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018). *See also Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102 (9th Cir. 2016), and *Cixxfive Concepts, LLC v. Getty Images, Inc.*, No. C19-386-RSL (W.D. Wash. July 7, 2020) ("as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Because the arbitration clause of the very LSLA Bungie asserts and seeks to enforce in this action clearly and unequivocally requires arbitration of all but the first and second causes of action asserted by Bungie, the remaining causes of action three through nine should and must be referred to arbitration and not heard here.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 13

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

### G. There Is No Personal Jurisdiction Over Defendants In This District, And Venue Here Is Improper

Bungie's sole grounds for asserting personal jurisdiction over all Defendants in this action consist of two allegations: *First,* that, "Personal jurisdiction over Defendants is proper because Defendants consented to jurisdiction in the state and federal courts in King County, Washington," (Complaint ¶ 14) and *Second,* that, "Personal jurisdiction over Defendants is also proper because...Defendants infringed Bungie's copyrights and trademarks, circumvented and/or trafficked in technology that circumvented Bungie's technological protection measures, and committed other acts directed to Washington." (Complaint ¶ 15). In particular, "Defendants knew or should have known that the impact of their intentional acts would cause harm in Washington, where Bungie is headquartered." *Id.*  Neither ground has merit.

Similarly, Bungie's sole grounds for asserting that venue is proper here also consist of two allegations: *First,* that, "Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants have harmed Bungie in this judicial district" (Complaint ¶16) and *Second,* that, "Venue is also proper because Defendants consented to suit in the federal court located in King County, Washington" (Complaint ¶17). Again, neither ground has merit.

#### 1. Defendants Did Not Consent To Jurisdiction And Venue Here

As to the claim that Defendants consented to jurisdiction and venue here, Bungie is simply wrong. As noted in Section F above, with the exception of its copyright infringement and trademark infringement claims, Bungie's remaining causes of action Nos. 3-9 are subject to mandatory arbitration under the express terms of the very LSLA Bungie cites. To the extent the LSLA addresses "consent" to jurisdiction and venue in King County, Washington, such consent is expressly limited to "*residents outside the United States,*" not residents of the United States as are all of the Defendants named here. (Complaint Exhibit 6, p. 6; Dkt. # 1-1, p. 22.) Indeed, with respect to U.S. residents, such as Defendants, the LSLA expressly provides that, "If you are a resident of the United States, arbitration will take place at any

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 14

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

reasonable location within the United States convenient for you." *Id.* Not only does the LSLA on which Bungie relies, *not* say that the Defendants consented to jurisdiction and venue here, it expressly states the opposite, namely that proceedings will take place, "at any reasonable location within the United States convenient for you." *Id.* Bungie apparently has not read the very agreement upon which it relies.

### 2. Defendants Are Not Subject To Personal Jurisdiction Here

As to the second asserted ground for personal jurisdiction, the clear law of this court and circuit precludes personal jurisdiction here. Rule 12(b)(2) Fed.R.Civ.P. requires dismissal of an action where personal jurisdiction is lacking. The plaintiff bears the burden of establishing that personal jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011). The Court only has jurisdiction over a non-resident defendant to the extent authorized by the state's long-arm statute. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154-55 (9th Cir. 2006). Washington's long-arm statute, Wash. Rev. Code § 4.28.185, authorizes jurisdiction to the full extent of the federal due process clause. *Easter v. Am. W. Fin.,* 381 F.3d 948, 960 (9th Cir. 2004). The due process clause (and therefore Washington state law) provide that a court may only exercise personal jurisdiction over a non-resident defendant by general or specific jurisdiction. See *Boschetto v. Hansing,* 539 F.3d 1011, 1016 (9th Cir. 2008). Here, and for reasons set out below, neither general nor specific jurisdiction exists over either defendant and, therefore, this case must be dismissed under Rule 12(b)(2).

### (a.) There is no General Jurisdiction Here

Plaintiff does not and cannot establish general jurisdiction over Defendants. General jurisdiction is only proper if a non-resident defendant's contacts with the forum state are so "substantial or continuous and systematic" that they "approximate physical presence." *Bancroft & Masters, Inc. v Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). A mere showing that a defendant has systematic business contacts with the forum is insufficient. *Id.* The Ninth Circuit has found general jurisdiction lacking where a defendant is not incorporated

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 15

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

in the forum state, does not maintain offices or employees in the forum state and does not actively direct its products to residents of forum states. *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir. 1986) (occasional sale to resident from forum state is insufficient to confer general jurisdiction).

Bungie's Complaint does not set forth facts to establish general jurisdiction over any of the Defendants in this Court. The corporate Defendant, Phoenix Digital Group, LLC, is not incorporated in Washington and does not have stores, employees, or a registered agent in the state. (Schaefer Dec. ¶2.) Bungie does not allege (nor can it) that any of the individual Defendants are Washington residents, own property here, or otherwise maintain a presence in Washington. Defendants do not actively direct or advertise their products to Washington consumers. *Id.* Defendants' sales to Washington residents have been incidental to their nationwide marketing and are not sufficient to confer general jurisdiction. *See Daimler AG v. Bauman,* 571 U.S. 117, 138 (2014) (rejecting a theory that would permit "the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business."); *Bancroft,* 223 F.3d at 1086 (stating that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"). Therefore, Plaintiff has not and cannot satisfy the exacting standard needed to establish general jurisdiction over any of the Defendants here.

### (b) Specific Jurisdiction Does Not Exist Either

A court determines two issues in considering whether the Defendant has purposefully established the minimum contacts with the forum state necessary to grant specific jurisdiction: (1) whether defendant purposefully directed its activities at residents of the forum state; and (2) whether this litigation is a result of alleged injuries arising out of or related to those activities. *See Blue Nile, Inc. v. Ideal Diamond Sols., Inc.,* No. C10- 380TSZ, 2011 WL 830724, at *2 (W.D. Wash. Mar. 1, 2011) (citing *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004)). If these factors are met, the Court considers whether

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 16
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

specific jurisdiction would comport with fair play and substantial justice, i.e., it must be reasonable. *Id.; Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 320 (1945).

Plaintiff cannot meet its burden of showing that Defendants purposefully directed their activities at residents of Washington. Forcing Defendants to litigate in Washington simply does not comport with fair play and substantial justice.

The purposeful direction portion of the specific jurisdiction test requires a showing that the defendants (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendants knew is likely to be suffered in the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Here, Plaintiff has failed to properly allege that Defendants' acts were expressly aimed at Washington.

"[E]xpress aiming encompasses wrongful conduct individually targeting a known forum resident." *Bancroft & Masters,* 223 F.3d at 1087 (9th Cir. 2000); *see also Johnson v. Venzon*, No. C12-895RSL, 2012 WL 3778877, at *4 (W.D. Wash. Aug. 30, 2012) (noting a party expressly aims its actions at a forum state "where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum").  As this Court recently explained, courts in the Ninth Circuit have required "something more than the mere operation of a website that is accessible by consumers in the forum district." *Blue Nile,* 2011 WL 830724, at *2, n.4 (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) ("Creating a[web]site, like placing a product into the stream of commerce, may be felt nationwide . . . but, without more, it is not an act purposefully directed towards the forum state."); *see also Rio Props. Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002) (requiring a showing that defendant had a "marketing campaign directed toward [the forum state]").

There is no allegation that Defendants have expressly aimed any activity to Washington. Nor could there be.  The accompanying Declaration of Mr. Schaefer  establishes that neither he nor Phoenix Digital Group or any of the members thereof did anything specifically directed toward the State of Washington or its residents.  Defendant Phoenix

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 17

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

Digital Group is a Delaware limited liability company with offices in California, Arizona and Oregon. (Schaefer Dec. ¶2.) It has no office or other facility in Washington. None of the individual defendants is a Washington resident. Defendants did nothing more than operate a business from their facilities in California, Arizona and Oregon and make their products available to all potential customers online. Mere operation of a website or making products available for online sale does not constitute "purposeful direction." *See Blue Nile,* 2011 WL 830724, at *3 (granting motion to dismiss for lack of personal jurisdiction) citing *Brayton Purcell,* 606 F.3d at 1135 ("Under the majority's opinion, every website operator faces the potential that he will be hailed into far-away courts based upon allegations of intellectual property infringement, if he happens to know where the alleged owner of the property rights resides and he is not barred from doing business there.") (emphasis added).

It is well established that a court need not "assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Technology Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir. 1977). "Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore v. Walden,* 657 F.3d 838, 846-47 (9th Cir. 2011). Such allegations fail to provide any "factual enhancement" that Defendant expressly aimed its activities to Washington. *Twombly,* 550 U.S. 544 at 557

Bungie's unsupported naked assertion that Defendants "infringed Bungie's copyrights and trademarks, circumvented and/or trafficked in technology that circumvented Bungie's technological protection measures, and committed other acts directed to Washington." (Complaint ¶ 15) is insufficient, without more, to confer such jurisdiction, particularly where, as here, any sales of products into Washington were de minimis at best. (Schaefer Dec. ¶8.)

Because Bungie has not pleaded facts to support even a *prima facie* showing of personal jurisdiction here, and because the very LSLA contract Bungie asserts here actually demands that venue be *elsewhere,* this action should be dismissed in its entirety on those grounds as well.

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 18

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

## CONCLUSION

This is another case of well-heeled companies using their superior resources to bully others and achieve through the courts what they cannot accomplish in the marketplace. Although the rich have as much right to seek redress through the courts as the poor, they nevertheless need to follow the rules that apply to all. Bungie has not done that here.

The Complaint Bungie filed here is apparently a "one size fits all" document it uses in all disputes wherein someone dares to offer what Bungie calls "cheat software." This is illustrated by the fact that, in this action, Bungie accuses Defendants of infringing copyrights in two works that were not even available to the Defendants at the time they supposedly "copied" it. Similarly, Bungie brings its action in this court, despite the fact that *its own agreement,* which it itself drafted and imposes on others as a contract of adhesion, clearly calls for mandatory arbitration. Indeed, Bungie claims the Defendants – clearly U.S. residents – have consented to jurisdiction here, even though the actual language of Bungie's own agreement specifies that that only applies to *non U.S. residents* and that for U.S Residents, the dispute "will take place at any reasonable location within the United States convenient for you." Bungie has simply not complied with either the terms of its own contract or applicable pleading standards.

For all the reasons stated herein, this action should be dismissed,

Dated January 10, 2022.

>*/s/ Philip P. Mann*
>Philip P. Mann, WSBA No: 28860
>**Mann Law Group PLLC**
>403 Madison Ave. N. Ste. 240
>Bainbridge Island, Washington  98110
>Phone (206) 436-0900
>phil@mannlawgroup.com
>Attorneys for Defendants

Motion to Dismiss
Cause No. 21-CV-0811-TSZ
Page 19

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

**CERTIFICATE OF SERVICE**

I hereby certify on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

DATED: January 10, 2022                                /s/ *Philip P. Mann*

Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 20

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900