# EXHIBIT A

## Case No. 21-CV-0817-TSZ

**(Exhibit A to Declaration of Philip P. Mann)**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ENTERPRISE MANAGEMENT
LIMITED, INC., MARY LIPPITT,

　　　　　Plaintiffs,

　　v.

CONSTRUX SOFTWARE
BUILDERS, INC, STEVE C.
MCCONNELL,

　　　　　Defendants.

CASE NO. 2:19-CV-1458-DWC

ORDER ON DEFENDANTS' MOTION
TO DISMISS

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR

13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.

Dkt. 11, 12. Currently pending before the Court is Defendants Construx Software Builders, Inc.

and Steve McConnell's Motion to Dismiss. Dkt. 31. After considering the relevant record, the

Court concludes Plaintiffs Enterprise Management Limited, Inc. and Mary Lippitt have stated a

copyright infringement claim regarding Defendants' Change Model chart. Plaintiffs have not

sufficiently stated a copyright infringement claim regarding Defendants' Domino Change Model

chart or a personality rights claim. Further, Plaintiffs' Consumer Protection Act claim is

preempted by the Copyright Act and fails to state a claim. For these reasons, Defendants' Motion to Dismiss is granted-in-part and denied-in-part.

## I.    Background

In the First Amended Complaint ("FAC"), Plaintiffs allege Defendants unlawfully copied and distributed Plaintiff Lippitt's works or derivations based on her works, which are owned by Plaintiff Enterprise, without permission. Dkt. 29. Plaintiffs also allege Defendants used Plaintiff Lippitt's name to benefit their business without Plaintiff Lippitt's permission in violation of Washington State's Consumer Protection Act ("CPA") and Personality Rights Act. *Id*.

Defendants filed the pending Motion to Dismiss on December 26, 2019. Dkt. 31. Plaintiffs filed their Response on January 13, 2020. Dkt. 32. Defendants filed their Reply on January 17, 2020. Dkt. 33. On March 17, 2020, the Court directed the parties to provide supplemental briefing in light of new Ninth Circuit case law. Dkt. 33. The parties submitted supplemental briefing on April 10, 2020. Dkt. 35, 36.

## II.    Standard of Review

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). To survive a motion to dismiss, a plaintiff must merely cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 672 (2009). Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007).

**III.    Discussion**

Defendants assert (A) Plaintiffs have failed to state a copyright infringement claim; (B) the CPA claim is preempted by the Copyright Act; and (C) Plaintiffs have failed to state a personality rights claim. Dkt. 31.

A.   Copyright Infringement

In the FAC, Plaintiffs allege Defendants violated the Copyright Act by copying and distributing, without authorization or approval from Plaintiffs, copies of Plaintiffs' charts or derivations based on Plaintiffs' charts. Dkt. 29.

A plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant copied protected aspects of the copyrighted work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). The second element contains distinct components: "copying" and "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117.

In the Motion to Dismiss, Defendants contend Plaintiffs have not sufficiently pled facts to show (1) copying and (2) unlawful appropriation and therefore the FAC fails to allege a copyright infringement claim. Dkt. 31.[1]

---

[1] Defendants do not argue Plaintiff has failed to allege a valid copyright. Dkt. 31. Further, Plaintiffs filed certificates of copyright registrations for the charts Defendants allegedly copied. Dkt. 29, 29-1. Therefore, the Court finds Plaintiffs pled facts sufficient to show ownership of a valid copyright.

1        i. *Plaintiffs' Copyrighted Charts*

2 The following two charts are Plaintiffs' alleged copyrighted works:





Plaintiffs' first chart, Managing Complex Change, is protected under U.S. Copyright Registration No. TX 2-124-202 and will be identified in this Order as "TX 2-124-202." *See* Dkt. 29, ¶ 22.[2] Plaintiffs' second chart, Aligning for Success, is protected under U.S. Copyright

---

[2] The FAC alleges the Managing Complex Change chart is protected by Registration No. TX 2-124-202. Dkt. 29. However, the Managing Complex Change chart in the FAC appears to be a chart created by Donald Warrick. *See Enterprise Management Ltd., Inc. v. Warrick*, 717 F.3d 1112 (10th Cir. 2013).

1  Registration Nos. TXu 956-226 and TX 50827-350 and will be identified in this Order as "TXu

2  956-226/TX 50827-350." *See id*. at ¶ 23.

3       ii.  *Defendants' Charts*

4      Plaintiffs allege Defendants violated the Copyright Act through use of a chart in

5  Defendants' YouTube video and a chart printed in a book authored by Defendants titled <u>More</u>

6  <u>Effective Agile</u>. Dkt. 29.





**Figure 23-1**

*The Domino Change Model describes required elements for change and the effects of each missing element.*

20      Defendants' first chart, used in the YouTube video, will be identified as "Change

21  Model." Defendant's second chart, used in the book <u>More Effective Agile</u>, will be identified as

22  "Domino Change Model."

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 5

iii. *Copying*

Defendants first assert Plaintiffs failed to allege facts sufficient to show Defendants had access to TX 2-124-202 and TXu 956-226/TX 50827-350 in order to copy the charts. Dkt. 31. In the Response, Plaintiffs argue they have pled facts showing direct evidence of copying. Dkt. 32, pp. 3-4. While Plaintiffs do not assert they have alleged facts sufficient to show circumstantial evidence of copying, the Response appears to argue the FAC alleges copying circumstantially. *Id*.

"Because independent creation is a complete defense to copyright infringement, a plaintiff must prove that a defendant copied the work." *Skidmore*, 952 F.3d at 1064. A plaintiff may establish copying through direct or circumstantial evidence. However, "direct evidence of copying is rarely available." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

Absent direct evidence of copying, a plaintiff can attempt to prove copying "circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117. The similarities between the two works must show the two works are similar due to "copying rather than . . . coincidence, independent creation, or prior common source." *Skidmore*, 952 F.3d at 1064 (quotation and citation omitted). The Ninth Circuit as found that "the similarities between the two works need not be extensive, and they need not involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.,* 581 F.3d 1138, 1143 (9th Cir. 2009).

1    In the FAC, Plaintiffs allege Defendant McConnell identified Plaintiff Lippitt as the

2    "author of the original Work upon which the chart" appearing in Defendants' YouTube video

3    was based. Dkt. 29, ¶ 39. Plaintiffs also allege Defendant McConnell stated the Change Model in

4    the YouTube video was inspired by Plaintiff Lippitt and non-party Tim Knoster. *Id*. at ¶ 40.

5    Plaintiffs contend Defendant McConnell's attribution to Plaintiff Lippitt shows knowledge of her

6    works. *Id*. at ¶ 41. Plaintiffs state that Defendants have seen and had access to "Dr. Lippitt's

7    copyrighted Works prior to publishing the YouTube Video." *Id*. at ¶¶ 49, 50. Plaintiffs also

8    allege Defendants were aware Plaintiff Lippitt "is the source of the change model" at the time of

9    publishing the Domino Change Model. *Id*. at ¶ 82.

10    There are insufficient allegations to show direct evidence of copying. Plaintiffs have

11    alleged only the mere possibility that Defendants viewed and copied TX 2-124-202 and TXu

12    956-226/TX 50827-350. Defendant McConnell's statement that the Change Model is based on or

13    inspired by Plaintiff Lippitt's and Tim Knoster's work does not show Defendants viewed and

14    copied TX 2-124-202 or TXu 956-226/TX 50827-350. There are no allegations in the FAC

15    showing Defendants admitted to copying TX 2-124-202 or TXu 956-226/TX 50827-350, nor

16    allegations showing Defendants engaged in "virtual duplication" of Plaintiffs' entire work.

17    *Narell v. Freeman*, 872 F.3d 907, 910 (9th Cir 1989) (noting direct copying occurs when the

18    defendant has engaged in "virtual duplication of a plaintiff's entire work" and finding an author's

19    admission that he consulted the original work and took language from it when writing his book

20    was not sufficient to show direct evidence of copying); *see Rogers v. Koons*, 960 F.3d 301, 307

21    (2d Cir. 1992) (finding direct evidence of copying when the copied work was based on a

22    photograph of the original work with specific instructions to design the copied work "as per the

23

24

1   photo"). Plaintiffs statements that Defendants have seen and had access to TX 2-124-202 and

2   TXu 956-226/TX 50827-350 are conclusory and fail to allege direct evidence of copying.

3          However, in the FAC, Plaintiffs allege Defendants identify Plaintiff Lippitt and state the

4   Change Model was inspired by Plaintiff Lippitt. Dkt. 29, ¶¶ 37, 39. In this case, Defendants'

5   reference to Plaintiff Lippitt is sufficient to show a reasonable possibility that Defendants viewed

6   Plaintiffs' copyrighted works prior to creating the Change Model. Further, Defendants' Change

7   Model contains similarities that are probative of copying. For example, the Change Model, TX

8   2-124-202, and TXu 956-226/TX 50827-350 all consist of the same flow-chart format and use

9   nearly identical words.

10          The Domino Change Model does not reference Plaintiff Lippitt. However, the FAC

11   alleges Defendants were aware that Plaintiff Lippitt was the source of the complex change idea

12   at the time of publishing the Domino Change Model. Dkt. 29. Plaintiffs have sufficiently alleged

13   a reasonable possibility that Defendants viewed TX 2-124-202 and TXu 956-226/TX 50827-350

14   prior to publishing the Domino Change Model. Furthermore, the Domino Change Model

15   contains nearly identical words to TX 2-124-202 and TXu 956-226/TX 50827-350.

16          In sum, Plaintiffs have alleged facts "from which a reasonable finder of fact could infer

17   that [Defendants] had a reasonable opportunity to copy [Plaintiffs'] work." *Shame on You*

18   *Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1149 (C.D. Cal. 2015), *aff'd sub nom.*

19   *Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017). Therefore, the Court

20   finds allegations in the FAC, including imbedded images of the charts and Defendants'

21   identification of Plaintiff Lippitt, are sufficient to create a presumption that Defendants' charts

22   were a product of copying rather than independent creation. Accordingly, Plaintiffs have alleged

23   facts sufficient to show "copying."

24

iv.  *Unlawful Appropriation*

Second, Defendants assert Plaintiffs have not sufficiently alleged facts to show "unlawful appropriation." Dkt. 31. "Unlawful appropriation" exists when the works in question share substantial similarities. *Id*. The Ninth Circuit employs "a two-part test to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work." *Id*. First, the extrinsic test compares the objective similarities of the specific expressive elements of the two works. *Id*. Notably, before the comparison can be made, "the court must 'filter out' the unprotectable elements of the plaintiff's work – primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Rentmeester*, 883 F.3d at 1118. Second, the intrinsic test examines the "similarity of the expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008). "Only the extrinsic test's application may be decided by the court as a matter of law" and is, therefore, the only test relevant in ruling on a motion to dismiss. *Rentmeester*, 883 F.3d at 1118.

**Change Model:** As Plaintiffs have separate copyrights for the two charts in the FAC, the Court will analyze the similarities and differences between the Change Model, TX 2-124-202, and TXu 956-226/TX 50827-350 independently.

*Change Model and TX 2-124-202*: Both the Change Model and TX 2-124-202 contain columns and rows to express a flow-chart of complex change. The Change Model also uses nearly identical words as used in TX 2-124-202. Both charts use a similar shape to highlight the elements (rectangle with round edges and a rectangle with square edges). Additionally, both charts show each result when an element necessary for change is missing.

1    The Court recognizes the Change Model and TX 2-124-202 contain differences. The

2    Change Model contains an additional element ("consensus") and an additional result

3    ("sabotage"), which adds an extra row and column to the chart. The Change Model also shows

4    two elements ("resources" and "incentives") in an order different than TX 2-124-202. The

5    Change Model uses colored boxes, whereas TX 2-124-202 does not contain color. The Change

6    Model also uses plus signs and equal signs as connectors between the elements and the results.

7    TX 2-124-202 uses arrows as connectors. Finally, to show a missing element, TX 2-124-202

8    inserted a blank space. In contrast, the Change Model removed the box coloring and changed the

9    font color to white to show an element had been removed. Thus, unlike TX 2-124-202, the

10   Change Model does not contain a blank space.

11   *Change Model and TXu 956-226/TX 50827-350*: As with TX 2-124-202, both the Change

12   Model and TXu 956-226/TX 50827-350 contain columns and rows, creating a flow-chart to

13   express complex change. The Change Model uses nearly identical words as used in TXu 956-

14   226/TX 50827-350. Both charts also show the corresponding result when each element necessary

15   for change is removed. Furthermore, both the Change Model and TXu 956-226/TX 50827-350

16   use plus signs and equal signs to connect the elements with the result.

17   However, as with the Change Model and TX 2-124-202, there are differences between

18   the Change Model and TXu 956-226/TX 50827-350. The Change Model has a black background

19   and uses green and yellow colored boxes to highlight the elements. In TXu 956-226/TX 50827-

20   350, the background is grey-scaled and the elements are contained within transparent ovals. To

21   show a missing element, TXu 956-226/TX 50827-350 omits the oval and inserts a jagged line. In

22   contrast, to show an element had been removed from the change process, the Change Model

23   includes the missing element, which is inserted in a transparent box with white font coloring.

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 10

1  Thus, unlike TXu 956-226/TX 50827-350, the Change Model does not contain a blank space or a

2  line where the missing element would be located. The Change Model contains an additional

3  element ("consensus") and an additional result ("sabotage"). The Change Model also changed

4  the wording for one element ("skills" in place of "capabilities") and two results ("change" in the

5  place of "success" and "treadmill" in place of "false starts"). The Change Model also has two

6  elements ("resources" and "incentives") in in an order different than the chart.

7       *Substantially Similar*: The Copyright Act protects the original "selection, coordination,

8  and arrangement" of an idea. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952

9  (9th Cir. 2019). To show substantial similarities, the two works' "selection and arrangement of

10  elements must be similar enough that 'the ordinary observer, unless he set out to detect the

11  disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (quoting *Peter*

12  *Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)).

13       In this case, the FAC sufficiently alleges substantial similarities between the Change

14  Model and both TX 2-124-202 and TXu 956-226/TX 50827-350. While the Court has

15  highlighted the differences in each chart, the side-by-side images show substantial similarities in

16  the selection and arrangement of the charts. At this stage, the Court finds the arrangement of the

17  elements are similar enough that an "ordinary observer . . . would be disposed to overlook" the

18  differences. *See id*. Therefore, the FAC contains sufficient allegations to show the Change Model

19  is substantially similar to TX 2-124-202 and TXu 956-226/TX 50827-350. *See Malibu Textiles,*

20  *Inc.*, 922 F.3d at 952 (finding striking similarities, a standard higher than substantial similarities,

21  where the "works contain nearly identical floral, leaf, boteh, and dot elements, and those

22  elements are arranged in virtually the same way;" noting the slight differences and finding side-

23  by-side pictures made the similarities apparent); *Kevin Barry Fine Art Assocs. v. Ken Gangbar*

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 11

1   *Studio, Inc.*, 391 F. Supp. 3d 959, 968 (N.D. Cal. 2019) (denying motion to dismiss and finding

2   substantial similarities where the complaint contained side-by-side pictures showing the two

3   pieces had "similar general arrangements, with similar cluster patterns, presented in nearly the

4   same way"); *Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287, 1299

5   (C.D. Cal. 1995) (comparing the works in question and finding the extrinsic ideas that were

6   inherent parts of the copyrighted films appear to be substantially similar to those in a

7   commercial). Whether Plaintiffs can prove these allegations remains to be seen, however, for

8   purposes of this Motion, the FAC sufficiently states a claim for copyright infringement as to the

9   Change Model.

10   **Domino Change Model:** In contrast to the Change Model, the FAC fails to allege facts

11   sufficient to show the Domino Change Model is substantially similar to TX 2-124-202 or TXu

12   956-226/TX 50827-350. The Domino Change Model uses nearly identical words as TX 2-124-

13   202 and TXu 956-226/TX 50827-350 to show complex change. However, the Domino Change

14   Model expresses complex change using domino images and only two words per tile. The

15   Domino Change Model does not contain graphics that are substantially similar to TX 2-124-202

16   or TXu 956-226/TX 50827-350. Rather, the Domino Change Model expresses complex change

17   in a completely different manner: placing each element with the corresponding result if the

18   element identified on each domino is missing from the change process. While Defendants used

19   the many of the same words to express complex change, Defendant also added an additional

20   element and result, expanding the ideas expressed in TX 2-124-202 or TXu 956-226/TX 50827-

21   350. The Court finds the use of the same words alone is insufficient to show unlawful

22   appropriation in this case.

23

24

1    Plaintiffs assert the Domino Change Model is an unlawful derivative work. Dkt. 32. The

2    Copyright Act grants the exclusive rights to prepare a derivative work to the holder of the

3    copyright. 17 U.S.C. § 106(2). "To constitute a violation of section 106(2) the infringing work

4    must incorporate in some form a portion of the copyrighted work." *Litchfield v. Spielberg*, 736

5    F.2d 1352, 1357 (9th Cir. 1984). The Ninth Circuit, however, rejected the argument that a

6    copyright holder did not have to establish that a work is substantially similar to the original work

7    to be an unlawful derivative work. *Id*. Here, the Domino Change Model does incorporate

8    portions of TX 2-124-202 and TXu 956-226/TX 50827-350. But, as discussed above, the

9    Domino Change Model is not substantially similar to TX 2-124-202 or TXu 956-226/TX 50827-

10   350. Therefore, the Court is not persuaded by Plaintiffs' argument that the Domino Change

11   Model violates the Copyright Act because it is an unlawful derivative work. *See Vault Corp. v.*

12   *Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988) (to be an unlawful derivation, "the

13   infringing work must be substantially similar to the copyrighted work").

14   For these reasons, Plaintiffs failed to allege facts sufficient to show the Domino Change

15   Model is substantially similar to either TX 2-124-202 or TXu 956-226/TX 50827-350. Thus, as a

16   matter of law, the FAC fails to state a claim for copyright infringement as to the Domino Change

17   Model.

18   v.  *Conclusion*

19   For the above stated reasons, the Court finds Plaintiffs have sufficiently alleged a

20   copyright infringement claim against Defendants regarding the Change Model. Plaintiffs have

21   not sufficiently stated a copyright infringement claim against Defendants regarding the Domino

22

23

24

Change Model. Accordingly, Defendants' Motion to Dismiss as to Plaintiffs' copyright claims is granted-in-part and denied-in-part.

B. <u>Consumer Protection Act</u>

In the FAC, Plaintiffs allege Defendants marketed TX 2-124-202 and TXu 956-226/TX 50827-350 to benefit their business without Plaintiffs' permission in violation of the CPA. Dkt. 29, ¶¶ 117-19. Plaintiffs contend Defendants committed unfair methods of competition or unfair or deceptive acts or practices. *Id*. at ¶¶ 120-21. Plaintiffs assert they have been injured as a result of Defendants' unfair trade practices. *Id*. at ¶ 122.

Washington's CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ...." RCW 19.86.020 (2009). To sustain an unfair competition action under the CPA, a plaintiff must demonstrate (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest (4) causing an injury to the plaintiff's business or property with (5) a causal link between the unfair or deceptive act and the injury suffered. *Nat'l Products, Inc. v. Gamber–Johnson LLC,* 699 F.Supp.2d 1232, 1242 (W.D. Wash. 2010) (citing *Dewitt Const. Inc. v. Charter Oak Fire Ins. Co.,* 307 F.3d 1127, 1132 (9th Cir. 2002)).

Defendants assert Plaintiffs' CPA claims related to Defendants' use of copyrighted works and uncopyrighted ideas is preempted by the Copyright Act. Dkt. 31, 33. Defendants also contend Plaintiffs' CPA claim related to Defendants' use of Plaintiff Lippitt's name fails to state a claim upon which relief can be granted. Dkt. 31, 33.

i. *Preemption*

Defendants first contend Plaintiffs' claims related to copyrighted works and uncopyrighted ideas are preempted by the Copyright Act. Dkt. 31. The Copyright Act protects

the right to reproduce, distribute, and display copyrighted materials, as well as the right to prepare derivative works based on the copyrighted material. 17 U.S.C. § 106. A CPA claim may be preempted by federal copyright law when the state claim incorporates by reference and merely restates federal copyright claims. *See* 17 U.S.C. § 301(a); *Litchfield*, 736 F.2d at 1358 (holding that because the unfair competition and misrepresentation claims are "restatements of the copyright infringement claims, they are preempted by federal copyright law"). State law claims are preempted when (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are equivalent to the exclusive rights of copyright. *Grosso v. Miramax Film Corp.,* 383 F.3d 965, 968 (9th Cir. 2004). To survive preemption, the state law claim must include an "extra element" that makes the right asserted qualitatively different from those protected by the Copyright Act. *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1089 (9th Cir.2005) (citing *Summit Mach. Tool Mfg. v. Victor CNC Sys.,* 7 F.3d 1434, 1439–40 (9th Cir.1993)).

Plaintiffs contend the CPA claim contains different rights than those protected by the Copyright Act and, thus, is not preempted. Dkt. 32, pp. 9-11. Specifically, Plaintiffs assert the FAC alleges Defendants used Plaintiff Lippitt's name and "uncopyrighted ideas" to benefit their own business. *Id.* at pp. 10-11. However, the CPA claim incorporates the allegations specific to the copyright claim. Dkt. 39, ¶ 117; *see Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212–13 (9th Cir. 1998). And, the gravamen of Plaintiffs' claim is that Defendants copied and used Plaintiffs' copyrighted materials. The CPA claim related to Plaintiffs' copyrighted works and uncopyrighted ideas implicates all of Plaintiffs' alleged rights under the Copyright Act and lacks an extra element. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 12 F.Supp.3d 1341, 1347-48 (W.D. Wash. 2014) (finding the complaint was poorly drafted to clearly set out an additional

element not found in the copyright claim and, thus, the CPA claim was preempted by the Copyright Act); *Selby v. New Line Cinema Corp.*, 96 F.Supp.2d 1053, 1059 (C.D. Cal. 2000) (finding the plaintiff's *ideas* fell within the subject matter of copyright).

The rights in both the CPA and copyright claims stem from the Copyright Act and are qualitatively indistinguishable. Thus, Plaintiffs' CPA claim related to Defendants use of copyrighted works and uncopyrighted ideas is preempted by the Copyright Act. *See Oldcastle Precast, Inc. v. Granite Precasting & Concrete, Inc.*, 2010 WL 2217910, at \*2 (W.D. Wash. June 1, 2010) (finding CPA claim preempted and a new element was not added where the plaintiff alleged the defendant marketed copied materials as its own and used the copied parts to mislead the public); *Blue Nile, Inc. v. Ice.com, Inc.,* 478 F.Supp.2d 1240, 1249–50 (W.D. Wash. 2007) (finding a CPA claim preempted where the plaintiff incorporated his copyright allegations into the claim and failed to add an extra element).

### ii. *Lippitt's Name*

Defendants also assert Plaintiffs have failed to state a CPA claim based on Defendants' use of Plaintiff Lippitt's name. Dkt. 31. Plaintiffs allege "Defendants are using Dr. Lippitt's name to benefit their own business." Dkt. 29, ¶ 118. Further, Plaintiffs state that, "[b]y knowingly using Dr. Lippitt's name and ideas to their own profit, Defendants commit unfair competition." *Id.* at ¶ 121. Plaintiffs state only that they have been injured in their business by Defendants' unfair trade practices. *Id.* at ¶ 122. To state a claim under the CPA, a plaintiff must demonstrate, in relevant part, that the unfair or deceptive practice caused an injury to plaintiff's business with a causal link between the unfair or deceptive act and the injury. *See Nat'l Products, Inc.*, 699 F.Supp.2d at 1242. Here, the FAC merely recites the elements of a CPA claim. There are no allegations sufficiently explaining how Defendants used Plaintiff Lippitt's name to

unfairly compete or how that use caused injuries to Plaintiffs. Therefore, the Court finds

Plaintiffs' thread-bare allegations are insufficient to state a CPA claim based on Defendants' use

of Plaintiff Lippitt's name. *See Iqbal*, 556 U.S. at 678 (the pleading must be more than an

"unadorned, the-defendant-unlawfully-harmed-me accusation"); *Alvarez v. Target Corp.*, 2013 WL

4734123, at * 7 (E.D. Wash. July 10, 2013) (finding the plaintiff did not state a CPA claim when

she merely recited the injury element without additional facts indicating the injury to the plaintiff's

business or property).

        iii. *Conclusion*

    For the above stated reasons, the Court finds Plaintiffs' CPA claims related to

Defendants' alleged use of Plaintiffs' copyrighted works and uncopyrighted ideas is preempted

by the Copyright Act. Plaintiffs' CPA claims related to Defendants' use of Plaintiff Lippitt's

name fails to state a claim upon which relief can be granted. Accordingly, Defendants' Motion to

Dismiss is granted as to Plaintiffs' CPA claims.

    C. Personality Rights

    Plaintiffs allege Defendants knowingly used Plaintiff Lippitt's name in their YouTube

video for their own profit in violation of Washington State's personality rights. Dkt. 29, ¶¶ 124-

35. Plaintiffs assert Defendants used Plaintiff Lippitt's name in bad faith and without her

permission. *Id*. Defendants contend several statutory exemptions apply in this case and therefore

Plaintiffs' Personality Rights claim must be dismissed. Dkt. 31.

    The Washington Personality Rights Act, RCW 63.60.010, provides that "[e]very

individual or personality has a property right in the use of his or her name, voice, signature,

photograph, or likeness." *In re Powell*, 2017 WL 3977337, at *2 (W.D. Wash. Sept. 11, 2017).

Under RCW § 63.60.050,

1  Any person who uses or authorizes the use of a living or deceased individual's or
2  personality's name, voice, signature, photograph, or likeness, on or in goods,
   merchandise, or products entered into commerce in this state, or for purposes of
3  advertising products, merchandise, goods, or services, or for purposes of fund-
   raising or solicitation of donations, or if any person disseminates or publishes such
4  advertisements in this state, without written or oral, express or implied consent of
   the owner of the right, has infringed such right. An infringement may occur under
5  this section without regard to whether the use or activity is for profit or not for
   profit.

6  The Personality Rights Act, however, does not apply to the use of an individual's name in a

7  "literary work, theatrical work, musical composition, film, radio, online or television program,

8  magazine article, news story, public affairs report, or sports broadcast or account, or with any

9  political campaign when the use does not inaccurately claim or state an endorsement by the

10 individual or personality." RCW § 63.60.070(2)(b).

11       In the FAC, Plaintiffs allege Defendants knowingly used Plaintiff Lippitt's name in their

12 YouTube video without her permission and in bad faith. Dkt. 29, ¶¶ 125-28. Plaintiffs contend

13 Defendants used Plaintiff Lippitt's name to create content to compete with Plaintiff Lippitt for

14 their own profit. *Id.* at ¶¶ 129-32. Plaintiffs also state "Defendants' use of Dr. Lippitt's name

15 inaccurately suggests Dr. Lippitt endorses [Defendants'] use of her Works and their underlying

16 ideas." *Id.* at ¶ 66.

17       The factual allegations regarding the YouTube video are:

18   • At the 3:25 minute mark a chart appears with the title "Lippitt/Knoster Change
19     Model"

20   • At the 2:21 minute mark, Defendant McConnell identifies Plaintiff Lippitt as the
21     author of the work depicted in the chart at the 3:25 minute mark

22   • At the 2:21 minute mark, the YouTube video contains words stating the specific
23     change model is inspired by Plaintiff Lippitt and non-party Tim Knoster.

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 18

1   Dkt. 29, ¶¶ 35-40. The references to Plaintiff Lippitt in the YouTube video fail to show

2   Defendants inaccurately claimed or stated Plaintiff Lippitt endorsed the content in Defendants'

3   YouTube video. Rather, the allegations show only that Defendants' reference to the change

4   model was inspired by Plaintiff Lippitt. Plaintiffs' conclusory statement that Defendants' use of

5   Plaintiff Lippitt's name suggests she endorses the YouTube video is not supported by the facts as

6   alleged in the FAC. Therefore, the Court finds the FAC fails to allege facts sufficient to show the

7   Personality Rights Act applies to Defendants' alleged use of Plaintiff Lippitt's name in the

8   YouTube video.

9        Plaintiffs assert only that they have stated a claim under the Personality Rights Act and

10   that any argument regarding the statutory exemptions should be argued in a motion for summary

11   judgment. Dkt. 32. Plaintiffs do not cite to any case law stating the Court cannot dismiss a

12   Washington Personality Rights claim because a complaint fails to allege facts sufficient to show

13   the exemptions do not apply. Further, the statutory language is clear: The Personality Rights Act

14   does not apply to circumstances where the use did not inaccurately claim or state an endorsement

15   by the individual or personality. As Plaintiffs do not allege facts sufficient to show Defendants

16   used Plaintiff Lippitt's name to inaccurately claim or state an endorsement, Defendants' conduct

17   does not fall within the Personality Rights Act. *See Haglund v. Sawant*, 2018 WL 22216154, at

18   *3 (W.D. Wash. May 15, 2018) (applying RCW 63.60.070(2)(b) to find the plaintiff failed to

19   allege the defendants violated his personality rights because the plaintiff did not allege the

20   defendant's use of the plaintiff's name was to claim or state the plaintiff's endorsement); *Weber*

21   *v. Warner Music, S.P., Inc.*, 2006 WL 1873604 (W.D. Wash. June 30, 2006) (applying RCW

22

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 19

1  63.60.070 to find plaintiff's personality claim failed as a matter of law). Accordingly, the Court

2  finds Defendants' Motion to Dismiss is granted as to Plaintiffs' Personality Rights Act claim.[3]

3  **IV.    Conclusion**

4         In conclusion, the Court finds Plaintiffs have stated a copyright infringement claim

5  against Defendants regarding the Change Model. Plaintiffs have not sufficiently stated a

6  copyright infringement claim against Defendants regarding the Domino Change Model. Further,

7  Plaintiffs' Washington State CPA claim as to Plaintiffs' copyrighted works and uncopyrighted

8  ideas is preempted by the Copyright Act and the CPA claim related to Defendants' use of

9  Plaintiff Lippitt's name fails to state a claim. Finally, Plaintiffs have failed to state a claim under

10  the Washington State Personality Rights Act. For these reasons, Defendants' Motion to Dismiss

11  (Dkt. 31) is granted-in-part and denied-in-part.

12         Dated this 29th day of May, 2020.

13

14                                                    David W. Christel
                                                      United States Magistrate Judge
15

16

17

18

19

20

21

22

---

23         [3] The Court agrees with Plaintiffs that they have sufficiently plead facts to overcome the other statutory
       exemptions asserted by Defendants. *See* Dkt. 31, 32. However, as the Court finds Plaintiffs have failed to show the
       Personality Rights Act applies in this case, the Court finds discussion regarding the additional statutory exemptions
24     argued by Defendants is unnecessary.

ORDER ON DEFENDANTS' MOTION TO
DISMISS - 20