THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR REFER TO MANDATORY ARBITRATION**<br><br>**Note on Motion Calendar: February 18, 2022**<br><br>**Oral Argument Requested** |

Defendants, in response to Bungie, Inc.'s Opposition and in further support of their Motion to Dismiss, hereby state as follows:

## I.    INTRODUCTION

Simply repeating false and baseless statements does not make them true.  Bungie can't change what its Complaint and supporting papers actually say.  The Complaint *actually filed by Bungie:* (1) provides no detail whatsoever as to how Defendants supposedly "copied" Bungie's purported works, (2) provides no showing whatsoever that Defendants actually "copied" any of Bungie's purported works, (3) makes the legally and factually impossible claim that Defendants "copied" two works *before those works were even in existence*, (4) makes no showing whatsoever that Defendants made any use at all of any purported trademark owned by Bungie, (5) fails even to allege, much less detail, *any* connection

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 1

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

between Mr. May and the remaining Defendants, and (6) now relies on a purported term of a Limited Software License Agreement that does not appear in the Exhibit Bungie *actually filed* with the Court.

Rather than accept bluff and bluster, this Court should instead apply the clear precedent of *Twombly* and *Iqbal* and either dismiss this action entirely or, at minimum, order the filing of an Amended Complaint that at least makes "plausible" allegations.

## II.    RESPONSE

### A.    Bungie Is Blowing Smoke

Lacking any evidence to make a plausible claim as required by *Twombly* and *Iqbal,* Bungie, in its Opposition instead makes bald assertions that either (1) have no factual basis whatsoever, (2) are clearly *not* unlawful, or (3) are absurd on their face.

Bungie at pages 2 and 3 of its Opposition claims that, "Throughout [its] complaint," it "details Defendants' infringement of the Destiny Copyright" citing to "¶¶ 49–50, 53, 55, 70–71" of its Complaint.  But what do these paragraphs *actually* say?

Paragraphs 49 of the Complaint says, "Defendants created, advertised, sold, and distributed cheat software, including for Destiny 2, while Paragraph 50 says, "Defendants advertised and sold their cheats through their website, AimJunkies.com. Defendants' sold their cheat, Destiny 2 Hacks, for $34.95/month."  A simple, fair reading shows that neither of these paragraphs alleges *anything* unlawful.  Again, it is not unlawful *per se* to sell or otherwise distribute what Bungie calls, "cheat software." (If Bungie contends otherwise, it has not cited any law to that effect.)  To the extent Bungie seeks relief in this action, it must identify controlling law, such as copyright or trademark law, and, more importantly, must allege and establish liability under the requirements of *those* laws, not by way of vague accusations that "cheating" in computer games is a violation of some imaginary law.

Paragraph 53 of the Complaint alleges:

Destiny 2 players who purchase and deploy Defendants' cheat may be given an unfair advantage over non-cheating Destiny 2 players. For example, Defendants' 'Destiny 2 Aimbot' claims to automatically aim at enemy players without

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 2

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

requiring input from the cheat user; the 'Destiny 2 No Recoil' purports to eliminate recoil from weapons, allowing the user to stay locked on to his/her enemies; and the 'ESP' feature purportedly allows the cheat user to see players and items through walls, which non-cheating players cannot do.

(Complaint ¶53.)  Again, *nothing* alleged in Paragraph 53 of the Complaint is unlawful or can form the basis for a "plausible" cause of action.  Paragraph 53 simply does not provide the "detail" Bungie alleges.

Paragraph 55 of the Complaint says, "On information and belief, Defendants copied and distributed Bungie's copyrighted works in order to reverse engineer, disassemble, decompile, decrypt, and modify those works without Bungie's authorization."  That is the *entirety* of Bungies's "detailed" allegation of copying.  Indeed, the use of "On information and belief" in this paragraph suggests that Bungie has no actual facts to back up its claim and hopes that a discovery "fishing expedition" might turn up something to support its unfounded claim.  This is *precisely* the type of "formulaic recitation of the elements of a cause of action" that the Supreme Court itself properly proscribed in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  How this is not a "bare bones" pleading is difficult if not impossible to see.

Paragraph 70 of the Complaint says, "Defendants' cheat software infringes Bungie's Destiny Copyrights by copying, producing, preparing unauthorized derivative works from, distributing and/or displaying Destiny publicly all without Bungie's permission."  Again, this is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," which the Supreme Court expressly proscribed in *Iqbal,* 556 U.S. at 678.

Finally, Paragraph 71 of the Complaint says, "Defendants' copies, reproductions, derivative works, and/or displays are identical or substantially similar to the copyrighted works."  As noted in Defendants Motion (Dkt#28), the Complaint nowhere even refers to "copies, reproductions...or displays" except in this paragraph, and it is impossible to know what Bungie believes they are.  That is insufficient.  *See, Somerset Commc'ns Grp., LLC v. Wall to Wall Adver., Inc.,* No. C13-2084-JCC, at *5 (W.D. Wash. May 6, 2014) ("A court is not required to accept as true, however, 'allegations that are merely conclusory, unwarranted

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 3

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

deductions of fact, or unreasonable inferences,'" *citing In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008)).  *Nowhere* does this paragraph provide support for this bald, bare bones, formulaic and unadorned, "the-defendant unlawfully-harmed-me accusation" that no longer passes muster under clear law.  Bungie argues that its allegations of infringement are "detailed" by pointing to the very paragraphs that prove otherwise.

Ironically, Bungie itself correctly notes at p. 4 of its Opposition, that, "A claim has facial plausibility *when the pleaded factual content* allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  But there is no actual "factual content" pleaded. According to Bungie, this Court can make a "reasonable inference that defendant is liable for misconduct alleged" simply because Bungie says that it is.  By this reasoning, this Court can also "reasonably infer" that the world is flat because at least some people claim it is, or that space aliens routinely kidnap and examine humans simply because other people claim actually to have been abducted.  This sort of pleading chicanery is precisely what the Supreme Court properly ended with *Twombly* and *Iqbal* and should not be endorsed by any court that takes its role seriously.

Similarly, Bungie's claims regarding Defendants' supposed "admissions" are equally disingenuous and contrary to fact.  In particular, Bungie, at p. 2 of its Opposition, claims that:

> Although Defendants claim to have stopped selling the cheat as of November 12, 2020...Bungie identified a toolset connected with Defendants' cheat software on its Destiny 2 servers in or around June 2021, indicating that Defendants were continuing to develop their Destiny 2 cheat software immediately before the complaint was filed.

(Bungie Opposition, p. 2)  Bungie, in footnote 2 at p. 5 of its Opposition, further claims that, "Defendant David Schaefer even admits Defendants distributed and sold the alleged cheat software by "offer[ing it] to the public at least as early as April 2019" and admitting to at least $27,748 in revenue from sales of the cheat software."  In support of these claims, Bungie cites to paragraphs 3 and 7-9 of Mr. Schaefer's declaration,  (Dkt. #28-5).  Again, an actual review

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

of the Mr. Schaefer's declaration testimony shows that Bungie once again overstates and misrepresents what was actually said.

At Paragraph 7 of his declaration (Dkt. #28-5 at ¶ 7), Mr. Schaefer accurately and truthfully states that, "Phoenix Digital Group complied with Bungie's demand and ceased further distribution of the products on Nov 12th 2020."  Bungie unfairly labels Mr. Schaefer a liar, however, by making the bald assertion that, "Bungie identified a toolset connected with Defendants' cheat software on its Destiny 2 servers in or around June 2021, indicating that Defendants were continuing to develop their Destiny 2 cheat software immediately before the complaint was filed." (Opposition, p. 2.)

As Bungie no doubt knows and conveniently omits to tell the Court, is that any such "identification" made by Bungie "in or around June 2021" was of a third party who had likely purchased the Phoenix Digital product long before and subsequently used it long after Phoenix Digital ceased selling it.  Unlike Defendants, Bungie knows *exactly* what appears "on its Destiny 2 servers" and, again unlike Defendants, knows who the party accessing the servers actually was.  Mr. Schaefer's testimony remains true.  Bungie's failure to identify just who was supposedly accessing its servers in June, 2021 strongly suggests that it was not the Defendants but someone else.  Indeed, had it been any of the Defendants, Bungie would no doubt have made that, "Exhibit A" in its opposition.

Similarly, when Bungie accuses Mr. Schaefer of "admit[ting] [that] Defendants distributed and sold the alleged cheat software" and cites to paragraphs 3, 7–9 of his declaration in support, a review of the actual language indicates that Mr. Schaefer made no such admission.  In all cases, his testimony was that "Phoenix Digital Group" distributed the subject products and made the sales, not "Defendants" as Bungie falsely claims.

These transparent misrepresentations of Mr. Schaefer's actual testimony appear to be simply further attempts by Bungie to smear Defendants through innuendo and false accusation, rather than make a real case through actual evidence.  Again, it is for this reason

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 5

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

1   that the law, as clarified by *Twombly* and *Iqbal,* requires detailed and plausible pleadings
2   based on actual fact rather than suspicion and false accusation.

3   In short, Bungie's circular argument that its claims are detailed because they are
4   detailed (which they are not) begs the question and does not cure the fatal flaws in the
5   Complaint it actually filed, not the one it pretends it did.  Its further reliance on supposed
6   "admissions" that were never made is further testimony to the inadequacy of its pleadings.

7   **B.      The Complaint Fails To Plead A Plausible Claim Of Copyright Infringement**

8   The sole allegations purporting to set out a plausible claim for copyright infringement
9   are those addressed above.  As has been shown, these amount to nothing more than bare
10  bones, unadorned accusations that Defendants "copied" Bungie's supposedly copyrighted
11  works.  Nowhere does Bungie even show what its "works" look like, much less show an
12  actual sample of Bungie's purportedly infringing work to permit comparison.  "Substantial
13  similarity" is the definitive test in the Ninth Circuit and elsewhere for assessing whether a
14  disputed work was "copied."  Here, Bungie fails not only to allege or otherwise show
15  "substantial similarity," it fails to provide any materials whatsoever that can even be
16  compared.  Nowhere in the Complaint or its exhibits is there a depiction of Bungie's
17  supposedly copyrighted work.  Nowhere is there a depiction of Defendants' supposedly
18  infringing works.  Again, we are supposed to accept that Defendants "copied" Bungie's works
19  on Bungie's say-so alone.  There is no way that Defendants or this Court can make even a
20  preliminary assessment as to whether substantial similarity exists between the works, and the
21  *only* basis Bungie provides for substantiating its claim of infringement is that it says so.  That
22  does not pass legal muster under the clear *Twombly* and *Iqbal* standards.

23  Bungie's citations to two unreported decisions of courts in New York and the Central
24  District of California are unavailing.  In the first of these, (*Take-Two Interactive Software,*
25  *Inc. v. Zipperer)* the Complaint was far more detailed as to the defendant's conduct than here,
26  and it was expressly alleged in that case that the defendant "created and distributed computer
27  programs which are alternative versions of [plaintiff's video game] based on [plaintiff's video

28

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ                                Page 6

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

game]."  Here there is no allegation whatsoever that Defendants, "created and distributed computer programs *which are alternative versions of Bungie's video game."*  Nor can there be for the reason that the accused software here is *not* an "alternative version" of Bungie's game and Bungie knows that.  Had such been the case, Bungie could easily have included screen shots of its game and Phoenix Digital's (non existent) "game" and thus shown any similarities.  Bungie hasn't done so because *it cannot.*  Defendants have simply not provided an "alternative version" of Plaintiff's game and Bungie has not even claimed there is one.

Similarly, Bungie's citation to *Blizzard Entm't, Inc. v. Bossland GmbH* should be given little weight in that that case was a default judgment where no one appeared to challenge the Plaintiff's allegations.  As reliable precedent, default judgments are thin reeds on which to base a reasoned decision.  Defendants' rights here should not be compromised simply because a different defendant in a different case chose not to appear and defend against different claims made in *that* case.

Importantly, Bungie side-steps the fatal flaw that Defendants *could not* have copied at least two of the works for the very simple reason that Defendants' accused works were indisputably created *before* Bungie, by its own admission, published the works, thereby making them available to others.  Bungie makes the legally flawed argument that because Defendants' accused work was sold for two or three weeks after Bungie's works were first published, this avoids the problem.  Nonsense.  The relevant question is how Defendants could possibly have had the legally necessary "access" to a work *that was not even in existence* at the time the work was allegedly copied.  Nor is its suggestion that Defendants *might* have changed their product at some point availing.  Nowhere does Bungie even describe the content of Defendants' product much less show that such content changed at any time, either before or after first publication of the subject works.  Bungie is clutching at straws.  It is surprising that, rather than simply admit a mistake in this regard and withdraw its flawed claims as to the two subject works, Bungie instead insults the intelligence of this Court by making such a logically and legally flawed argument.

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 7

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

## C.      Bungie Side Steps The Trademark Issues

Bungie spends considerable effort demonstrating that it owns various trademarks. Importantly, Defendants have never contended otherwise.  What Defendants do challenge, and what Bungie does not and cannot show, is any purported misuse on Defendants' part of Bungies' trademarks.  The fact remains that Defendants have made no use whatsoever of Bungie's trademarks other than in a clear "fair use" manner.  And Defendants cannot raise such a defense until and unless Bungie identifies which of its marks Defendants supposedly infringed and how Defendants supposedly misused those marks.  Bungie makes no such identification anywhere in its Complaint.

Again, nowhere in its pleadings does Bungie show actual use by Defendants of any of Bungie's purported marks.  Bungie sets up a strawman argument by claiming that Defendants challenge the "likelihood of confusion" element of a viable trademark claim.  However, Bungie fails to address the critical, dispositive fact that there can be no "likelihood of confusion" if Defendant's have not, in fact, actually used the disputed marks.  Again, there is nothing in the Compliant that this Court can review or otherwise look at to see whether a "reasonable inference" can be made that Defendants in any way infringed Bungie's marks.

To allow Bungie to proceed with its alleged trademark claims without making any showing whatsoever how Defendants supposedly used Bungie's marks is a classic, "sue first, ask questions later" scenario that should not be permitted or endorsed by this or any court. How onerous could it possibly be for Bungie simply to obtain a picture, image or other sample of Defendants' product or marketing materials showing the purported misuse of the mark and include it as an exhibit to the complaint?  Such happens routinely in virtually every trademark infringement case filed today.  Why, then, couldn't Bungie do it here?  Defendants should not be forced to respond to and defend against claims that cannot reasonably be understood.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

**D.      No Plausible Claims Against James May Are Pleaded In The Complaint**

Much as it has done throughout, Bungie claims it has viable claims against James May simply because it says so.   Again, these non-existent claims do not, and cannot meet the threshold requirements of *Twombly* and *Iqbal.*

At pages 10 and 11 of its Opposition (not Complaint) Bungie states that:

1.      "Bungie sued Defendant James May because, through his alleged participation in the  development, maintenance, advertising, and sale of the Destiny 2 cheat software on the AimJunkies website,";

2.      "Mr. May infringed Bungie's copyrights and trademarks, violated the anti-circumvention provisions of the Digital Millennium Copyright Act, breached his contract with Bungie, tortiously interfered with Bungie's contracts with Destiny 2 players who use the AimJunkies cheat, and violated the Washington Consumer Protection Act."; and

3.      "Mr. May advertised and sold cheat software (Dkt. #1 at ¶¶ 49–50), created, maintained, and modified cheat software (id. at ¶ 54), copied and distributed Bungie's copyrighted works (id. at ¶ 55), incorporated technology that circumvents Bungie's technological protection measures (id. at ¶ 56), and accepted and breached the LSLA (id. at ¶¶ 42, 117)."

*Nowhere* does the Complaint allege that Mr. May, "Participat[ed] in the  development, maintenance, advertising, and sale of the Destiny 2 cheat software on the AimJunkies website."  Nor does the Complaint allege that Mr. May, "advertised and sold cheat software," or that he, "created, maintained, and modified cheat software," or that he, "tortiously interfered with Bungie's contracts with Destiny 2 players who use the AimJunkies cheat,"  or that he, "incorporated technology that circumvents Bungie's technological protection measures," or that he did any of the other actions Bungie, *now* claims he did.  These appear for the very first time in Bungies' Opposition, not its Complaint.

Again, the only specific allegation against Mr. May is that he is an individual residing in Ohio.  (See Complaint, ¶11.)  Indeed, a word search of the Complaint reveals that other

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

than in the caption and introductory paragraph of the Complaint, the name "James May" appears *only* in Paragraph 11.  This is the *totality* of the allegations against Mr. May.

Contrary to Bungie's brazen assertion, the Compliant makes absolutely no allegation that Mr. May, "Participat[ed] in  the  development, maintenance, advertising, and sale of the Destiny 2 cheat software on the AimJunkies website."  Mr. May has the absolute right to be informed of the allegations made against him, and the Federal Rules require that such allegations be made by way of a formal complaint filed in accordance with law, not by way of attorney argument appearing for the first time on pages 10 and 11 of an opposition brief filed eight months later.

Contrary to Bungie's citations in footnote 5 at page 11 of its Opposition, courts in *this circuit* routinely reject so-called, "Shotgun Pleadings" of the type filed by Bungie here:

> Fourth, and finally, there is the relatively rare sin of **asserting multiple claims against multiple defendants without specifying which of the defendants are responsible** for which acts or omissions, or which of the defendants the claim is brought against.  The unifying characteristic of all types of shotgun pleadings is that **they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.**

*Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015) (emphasis supplied).  *See, also A.B. v. Hilton Worldwide Holdings,* 484 F. Supp. 3d 921, 943 (D. Or. 2020) Contrary to Bungie's assertion, there is plenty of Ninth Circuit precedent to support dismissing complaints wherein, as here, "multiple claims against multiple defendants [are asserted] without specifying which of the defendants are responsible."

The fact remains that the Complaint as filed fails to set out any plausible claim against Mr. May, and Mr. May should be dismissed from this case entirely.

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 10

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

**E.**     **Personal Jurisdiction Over Defendants In This District Does Not Properly Exist**

        **1.**     **Defendants Did Not "Consent" To Jurisdiction Here**

In a footnote buried on page 11 of its Opposition, Bungie confesses that the copy of the Limited Software License Agreement ("LSLA") submitted with its Complaint fails actually to contain the language Bungie relies on to support its claim that Defendants "consented" to jurisdiction here.  Having now submitted a proper copy of the LSLA, Bungie claims that the supposed "consent" arises from language reading, "(ii) you consent to the exclusive jurisdiction of the state and federal courts in King County, Washington."  However, a true reading of that language (which was missing in Bungie's original filing) states, "*To the extent permitted by applicable law:*...(ii) you consent to the exclusive jurisdiction of the state and federal courts in King County, Washington." (Emphasis supplied.)  In the absence of any showing to the contrary, the applicable law is RCW § 4.28.185, which authorizes jurisdiction to the full extent of the federal due process clause.  Even under the (now submitted) language of the LSLA, Bungie still bears the burden of establishing that exercising personal jurisdiction over the Defendants here "comports with fair play and substantial justice."

Bungie's claim that "By seeking to enforce the LSLA's arbitration provision, Defendants necessarily concede that they have accepted the LSLA" is misplaced.  Defendant's make no such concession.  Rather, Defendants correctly point out that, if *Bungie* seeks to enforce the LSLA, the terms of Bungies's very own contract *demand* that such claims must be heard in arbitration.  Furthermore, the LSLA *itself* expressly provides that "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of this Agreement, including without limitation...whether a claim is subject to arbitration."  Accordingly, under the express terms of the LSLA itself, the *arbitrator*, and not this Court, has "exclusive authority" to decide claims made by Bungie under its very own LSLA, and an *arbitration*, not a proceeding here, is the proper forum for determining whether the LSLA is binding against the Defendants.

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

This Court cannot properly invoke the purported "consent" to jurisdiction clause of the LSLA without a prior finding by an arbitrator that the Defendants are, in fact, bound by that contract.  That simply has not yet occurred.

### 2.    None Of The Defendants Directed Their Activities Toward Washington

The sole grounds for Bungie's claim that "Defendants Purposefully Directed Their Conduct at Washington," consists of their operating a publicly accessible website and making a total of $416.22 in gross sales of the subject products in Washington.  There is no evidence whatsoever that any of the Defendants specifically directed *any* of their activities toward Washington as opposed to virtually anyone in the world with an Internet connection, nor can there be.  None of the Defendants has any connection whatsoever with Washington State and Bungie cannot, show otherwise.

Furthermore, Bungie has not only sued the corporate entity, Phoenix Digital Group LLC, which operates the website and made the *de minimis* sales, but has also sued Messrs. Conway, Schaefer, Green and May in their individual capacities.  *There is no evidence whatsoever that any of these individuals directed any activities toward the State of Washington.*  Apparently, Bungie believes that simply because three of these individual defendants have an interest in Phoenix Digital, this, alone, is sufficient to confer personal jurisdiction over them in Washington.  Bungie has cited no law in support of this novel position.  Indeed, the law is contrary." *See, Glob. Commodities Trading Grp. v. Beneficio De Arroz Choloma, S.A.,* 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum contacts to each of the corporation's employees. *Instead, we assess whether each individual had minimum contacts with the forum such that the exercise of jurisdiction over that individual would comport with traditional notions of fair play and substantial justice.*") (Emphasis supplied).  Bungie has not shown that "minimum contacts" were  made by any of the individual Defendants.  Again, this is particularly true in the case of Mr. May where Bungie has not even alleged any connection between him and the others, much less offered any evidence of his activities here.

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ

Page 12

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III    CONCLUSION

For all the reasons stated herein, this action should be dismissed.

Dated February 18, 2022.

/s/ Philip P. Mann
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

Reply in Support of Motion to Dismiss
Cause No. 21-CV-0811-TSZ                     Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900