UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

    Plaintiff,

v.

AIMJUNKIES.COM; PHOENIX DIGITAL GROUP LLC; JEFFREY CONWAY; DAVID SCHAEFER; JORDAN GREEN; and JAMES MAY,

    Defendants.

C21-811 TSZ

ORDER

THIS MATTER comes before the Court on a Motion to Dismiss and/or Refer to Mandatory Arbitration, docket no. 28, filed by Defendants Aimjunkies.com ("Aimjunkies"), Phoenix Digital Group LLC ("Phoenix Digital"), Jeffrey Conway, David Schaefer, Jordan Green, and James May. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Background**

Plaintiff Bungie, Inc. ("Bungie") is the owner of the Destiny video game franchise, which includes Destiny, Destiny 2, and their respective expansions. Compl. at ¶ 1 (docket no. 1). Bungie is a Delaware corporation with its principal place of business in Bellevue, Washington. *Id.* at ¶ 5. Bungie owns multiple copyrights in the Destiny

ORDER - 1

franchise. *Id.* at ¶ 31 & Exs. 1–4. Bungie also owns multiple trademarks associated with the franchise, including "DESTINY, DESTINY (& design), DESTINY 2, DESTINY 2: LIGHTFALL, DESTINY 2: BEYOND LIGHT, and DESTINY 2: THE WITCH QUEEN." *Id.* at ¶ 32 & Ex. 5. Bungie released Destiny 2, the most recent game in the franchise, in September 2017. *Id.* at ¶ 21.

By "downloading, installing, and/or playing Destiny 2," players accept the terms of Bungie's Limited Software License Agreement ("LSLA").[1] *Id.* at ¶ 41. Pursuant to the LSLA, players agree that they will not: (i) "[e]xploit Destiny 2 or any of its parts commercially," (ii) [c]opy, reproduce, distribute, display or use any part of Destiny 2 except as expressly authorized by Bungie," (iii) "[s]ell, rent, lease, license, distribute, or otherwise transfer Destiny 2 or any copies thereof," (iv) "[r]everse engineer, derive source code, modify, decompile, disassemble, or create derivative works of Destiny 2, in whole or in part," or (v) "[h]ack or modify Destiny 2, or create, develop, modify, distribute, or use any unauthorized software programs to gain advantage in any online or multiplayer game modes." *Id.* at ¶ 43. The LSLA contains a mandatory arbitration provision that encompasses all claims except those for "patent infringement or invalidity, copyright infringement, moral rights violations, trademark infringement, and/or trade secret misappropriation." Ex. A to Rava Decl. (docket no. 31-1 at 10). The LSLA also

---

[1] A copy of the LSLA was attached to the operative pleading, *see* Ex. 6 to Compl. (docket no. 1-1), but certain portions of the document were obscured by a "Cookie Policy" and "Privacy Policy" banner located at the bottom of each page. Bungie contends that the banner's inclusion was inadvertent and has provided a complete copy of the LSLA at Exhibit A to the Declaration of William Rava, docket no. 31-1.

ORDER - 2

includes a forum selection cause, which provides that, "[t]o the extent permitted by applicable law[,] . . . [users] consent to the exclusive jurisdiction of the state and federal courts in King County, Washington." *Id.* (docket no. 31-1 at 13).

According to Bungie, Aimjunkies is a business of unknown classification that creates, advertises, markets, and sells online cheat software for Destiny 2 for $34.95 per month. Compl. at ¶¶ 6, 49 & 50. The cheat software at issue, "Destiny 2 Hacks," gives players an unfair advantage in the game. *Id.* at ¶¶ 2 & 50. Bungie alleges "on information and belief" that Phoenix Digital, a limited liability company registered in Arizona, acquired Aimjunkies in June 2016. *Id.* at ¶¶ 7 & 51. Bungie claims that Phoenix Digital was listed as the seller of Destiny 2 cheat software purchased through Aimjunkies as of December 4, 2020. *Id.* at ¶ 52. Jeffrey Conway, David Schaefer, and Jordan Green are members of Phoenix Digital. *Id.* at ¶¶ 8–10. Bungie has not alleged any affiliation between James May and the other defendants. *See id.* at ¶ 11. Bungie alleges that all defendants downloaded, installed, and/or played Destiny 2, thereby accepting the terms of the LSLA. *Id.* at ¶ 42.

Bungie brings nine causes of action: (i) copyright infringement under 17 U.S.C. § 501; (ii) trademark infringement under 15 U.S.C. § 1114; (iii) false designation of origin under 15 U.S.C. § 1125(a); (iv) circumvention of technological measures under 17 U.S.C. § 1201(a); (v) trafficking in circumvention technology under 17 U.S.C. §§ 1201(a)–(b); (vi) breach of contract; (vii) tortious interference; (viii) violation of the Washington Consumer Protection Act, specifically RCW 19.86.020; and (ix) unjust enrichment. *Id.* at ¶¶ 66–136. Defendants now move to dismiss Bungie's claims against

ORDER - 3

them, arguing that: (i) under Rule 12(b)(6), Bungie failed to sufficiently plead its claims, (ii) causes of action three through nine are subject to binding arbitration pursuant to the LSLA, and (iii) in the alternative, personal jurisdiction and venue are improper in the Western District of Washington.

**Discussion**

**1.  Failure to State a Claim**

    **a.  Rule 12(b)(6) Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on the pending motion to dismiss, the Court must assume the truth of Bungie's allegations and draw all reasonable inferences in its favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *See Twombly*, 550 U.S. at 570.

    **b.  Defendants Jeffrey Conway, David Schaefer, Jordan Green, and James May**

In its complaint, Bungie refers to all defendants collectively as "Defendants." Bungie clearly alleges that Aimjunkies (a website purportedly owned by Digital Phoenix) advertises, markets, and sells cheat software for the Destiny 2 videogame. Bungie's complaint, however, is confusing as to Jeffrey Conway's, David Schaefer's, Jordan Green's, and James May's alleged participation in the challenged conduct. Bungie, for example, does not allege any facts explaining James May's involvement in this action or

ORDER - 4

whether he is affiliated in some way with Aimjunkies, Phoenix Digital, or the other individual defendants. Although Bungie alleges that the other individual defendants are members of Phoenix Digital, *see* Compl. at ¶¶ 8–10, Bungie does not clearly assert that any of them personally participated in the alleged conduct supporting Bungie's claims, or make clear whether it alleges they are liable solely by nature of their relationship with Phoenix Digital. To sufficiently state its claims, Bungie must plead facts clarifying the individual defendants' alleged involvement in the challenged conduct. Therefore, all causes of action against Jeffrey Conway, David Schaefer, Jordan Green, and James May are DISMISSED without prejudice and with leave to amend.[2]

    c. **Defendants Aimjunkies and Phoenix Digital**

        i. **First Cause of Action: Copyright Infringement**

Bungie has not plausibly alleged a claim of copyright infringement against Aimjunkies and Phoenix Digital. To state a claim for copyright infringement, a plaintiff must plead facts supporting the following elements: (i) ownership of a valid copyright, and (ii) copying of constituent elements of the work that are original. *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Bungie has pleaded facts to establish that it owns copyrights relating to the Destiny franchise. *See* Compl. at ¶ 31 & Exs. 1–4.

---

[2] Pursuant to Rule 15(a), leave to amend shall be freely given when justice so requires. A district court may exercise its discretion and deny leave to amend for a variety of reasons, including undue delay, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of amendment. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). The Court exercises its discretion and GRANTS Bungie leave to amend its complaint.

ORDER - 5

Bungie, however, has not pleaded sufficient facts to plausibly allege that Aimjunkies and Phoenix Digital copied constituent elements of Bungie's work. Bungie relies on conclusory allegations that the "cheat software infringes Bungie's Destiny Copyrights by copying, producing, preparing unauthorized derivative works from, distributing and/or displaying Destiny 2 publicly all without Bungie's permission," Compl. at ¶ 70, and the "copies, reproductions, derivative works, and/or displays are identical or substantially similar to the copyrighted works." *Id.* at ¶ 71. Notably, Bungie has not pleaded any facts explaining how the cheat software constitutes an unauthorized copy of any of the copyrighted works identified in the complaint. Bungie's complaint must contain more than a "formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

Therefore, the motion to dismiss is GRANTED as to Bungie's first cause of action for copyright infringement in violation of 17 U.S.C. § 501 against Aimjunkies and Phoenix Digital, and this cause of action is DISMISSED without prejudice and with leave to amend.

    **ii.  Second Cause of Action: Trademark Infringement**

Bungie has plausibly alleged a claim for trademark infringement against Aimjunkies and Phoenix Digital. A claim of trademark infringement under § 1114 of the Lanham Act requires a plaintiff to prove that: (i) it owns a valid, protectable trademark, and (ii) the defendant's use of the mark is likely to cause confusion or mistake, or to deceive consumers. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006). Here, Bungie has alleged that it owns multiple trademarks associated with the

1  Destiny franchise, *see* Compl. at ¶¶ 34–39, including the trademark for the "DESTINY
2  (& design)" mark, Ex. 5 to Compl. According to the complaint, Aimjunkies and Phoenix
3  Digital used the DESTINY (& design) mark, without Bungie's authorization, to
4  advertise, promote, and sell their cheat software. *Id.* at ¶ 77. Bungie further alleges that
5  Aimjunkies and Phoenix Digital's unauthorized use of the mark "is likely to cause
6  confusion, mistake, or deception as to the source, origin, or authenticity" of the cheat
7  software. *Id.* at ¶ 79. Bungie has plausibly alleged a claim for trademark infringement in
8  violation of 15 U.S.C. § 1114 against Aimjunkies and Phoenix Digital, and the motion to
9  dismiss is DENIED as to Bungie's second cause of action.

        **iii.**      **Third Cause of Action: False Designation of Origin**

11       Bungie has also sufficiently stated a claim for false designation of origin in
12  violation of § 1125(a) of the Lanham Act. The Lanham Act "prohibits false
13  representations about the origin of source or manufacture of goods through the use of
14  another's trade name or trademark, either registered or unregistered." *SMC Promotions,*
15  *Inc. v. SMC Promotions*, 355 F. Supp. 2d 1127, 1133 (C.D. Cal. 2005). For unregistered
16  marks, a false designation of origin claim is recognized as the equivalent of a claim for
17  trademark infringement. *Id.* Thus, in order to state a claim for false designation of
18  origin, a plaintiff must establish: (i) a valid and protectable trademark or trade name, and
19  (ii) the likelihood of confusion as to the origin of a defendant's goods or services. *Levi*
20  *Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

21       Bungie alleges that it has strong rights in its DESTINY marks. Compl. at ¶ 87; *see*
22  *also id.* at ¶¶ 33–39. Bungie also alleges that it has invested substantial resources in

1  marketing, advertising, and distributing video games under the DESTINY marks, and that
2  Destiny 2, which is sold under the DESTINY marks, has an expanding player base of
3  more than 30 million members. *Id.* at ¶ 34.  Bungie claims that Aimjunkies and Phoenix
4  Digital's use of the marks in connection with the sale, distribution, and advertising of
5  cheats is likely to cause confusion or mistake among consumers as to the origin of the
6  cheat software. *See id.* at ¶ 88.  Bungie has plausibly alleged a claim for false designation
7  of origin against Aimjunkies and Phoenix Digital.  Thus, the motion is DENIED as to
8  Bungie's third cause of action for false designation of origin in violation of 15 U.S.C.
9  § 1125(a).

### iv. Arbitration of Remaining Claims

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Both federal and Washington state law manifest a strong policy favoring arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 341 n.4, 103 P.3d 773 (2004).  In interpreting an arbitration agreement, the Court generally will apply "ordinary state-law principles that govern the formation of contracts." *See Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 920 (9th Cir. 2011) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The Court must determine whether a valid agreement to arbitrate exists and whether the agreement to arbitrate encompasses the dispute at issue.  *See Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the Court determines that "the response is

ORDER - 8

affirmative on both counts," then the Court will enforce the agreement pursuant to its terms. *See id.*

In this case, Aimjunkies and Phoenix Digital contend that the third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action, *see* Compl. at ¶¶ 86–136, must be referred to mandatory arbitration under the applicable LSLA. Bungie alleges that Aimjunkies and Phoenix Digital accepted the terms of its LSLA by downloading, installing, and/or playing Destiny. *See id.* at ¶ 42. On February 10, 2022, Bungie voluntarily submitted a demand for arbitration in connection with its fourth through ninth causes of action against all defendants. Rava Decl. at ¶ 2 (docket no. 31). The parties agree that the LSLA excepts from arbitration copyright and trademark infringement claims. *See* Ex. A to Rava Decl. (docket no. 31-1 at 10). Bungie argues that its third cause of action for false designation of origin is excepted from the arbitration provision because the elements of the claim are virtually identical to the elements of a claim for trademark infringement. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000). Because a false designation of origin claim concerning the use of unregistered marks is recognized as the equivalent of a claim for trademark infringement, the Court concludes that Bungie's third cause of action for false designation of origin is excepted from the LSLA's arbitration provision.

Accordingly, the motion to compel arbitration is DENIED as it relates to the third cause of action for false designation of origin against Aimjunkies and Phoenix Digital, and GRANTED as to the remaining causes of action. The fourth, fifth, sixth, seventh,

ORDER - 9

eighth, and ninth causes of action against Aimjunkies and Phoenix Digital must be ARBITRATED in accordance with the LSLA.

**2.    Personal Jurisdiction**

Under Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction is appropriate. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). When the Court decides a Rule 12(b)(2) motion without an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal citations omitted). The Court may consider evidence outside the complaint, such as affidavits, declarations, and other submitted materials, on a Rule 12(b)(2) motion. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the parties' respective affidavits and/or declarations conflict, the Court must resolve all disputed facts in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

Aimjunkies and Phoenix Digital contend that personal jurisdiction and venue are improper in the Western District of Washington. Plaintiff, however, has sufficiently demonstrated that Aimjunkies and Phoenix Digital consented to personal jurisdiction and venue in this District when they accepted the LSLA, which contains a forum selection clause. *See* Ex. A to Rava Decl. (docket no. 31-1). Indeed, lack of personal jurisdiction is a waivable defense, *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005), and forum selection clauses are presumptively valid, *MetroPCS Georgia, LLC v. Metro*

ORDER - 10

*Dealer Inc.*, No. C18-1476, 2019 WL 2409608, at *4 (W.D. Wash. June 7, 2019) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)); *see also Take-Two Interactive Software, Inc. v. Zipperer*, No. 18-cv-2608, 2018 WL 4347796, at *3–6 (S.D.N.Y. Aug. 16, 2018) (holding that a forum selection clause in a video game licensing agreement was enforceable even though the defendant did not read the agreement).[3] The Court will honor the clause absent a compelling and countervailing reason. *See MetroPCS*, 2019 WL 2409608, at *4. Aimjunkies and Phoenix Digital bear the burden to show that enforcement would be unreasonable and unjust, or that the clause is invalid for reasons such as fraud. *See id.* (citing *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)). In this case, Aimjunkies and Phoenix Digital do not dispute that players agree to the terms of the LSLA by downloading, installing, and/or using the Destiny 2 program.[4] Nor have they shown that enforcement of the forum selection clause is unreasonable or unjust, or that the clause is otherwise invalid. Accordingly, personal jurisdiction and venue are proper before this Court.[5]

---

[3] Aimjunkies and Phoenix Digital do not claim that they lacked knowledge of the LSLA. On November 4, 2020, counsel for Bungie sent Defendant Jeffrey Conway a cease-and-desist letter in which it accused Aimjunkies and Phoenix Digital of violating the agreement. Ex. A to Schaefer Decl. (docket no. 28-5). Bungie alleges that, despite this letter, Aimjunkies and Phoenix Digital likely continued to sell cheat software. Resp. (docket no. 30 at 8); *see also* Compl. at ¶ 65.

[4] Instead, Aimjunkies and Phoenix Digital argue, without supporting authority, that they have not consented to personal jurisdiction in this District because the language in the LSLA reading, "[t]o the extent permitted by applicable law," refers to Washington's long-arm statute. Washington's long-arm statute, RCW 4.28.185, however, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 771, 783 P.2d 78, 82 (1989).

[5] The Court will dismiss all claims against Defendants Jeffrey Conway, David Schaefer, Jordan Green, and James May for the reasons discussed in this Order. The Court also notes that Bungie has not sufficiently demonstrated that this Court has personal jurisdiction over these defendants. To the extent Bungie contends that Jeffrey Conway, David Schaefer, Jordan Green, and James May accepted the terms

ORDER - 11

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1) The motion to dismiss and/or refer to arbitration, docket no. 28, is GRANTED in part and DENIED in part, as follows:

    (a) The motion is GRANTED as to all causes of action against Defendants Jeffrey Conway, David Schaefer, Jordan Green, and James May, and the claims against these defendants are DISMISSED without prejudice and with leave to amend;

    (b) The motion is GRANTED as to the first cause of action for copyright infringement in violation of 17 U.S.C. § 501 against Aimjunkies and Phoenix Digital, and that claim is DISMISSED without prejudice and with leave to amend;

    (c) The motion to refer the third cause of action against Aimjunkies and Phoenix Digital to mandatory arbitration is DENIED;

    (d) The motion to refer the fourth, fifth, sixth, seventh, eighth, and ninth causes of action to mandatory arbitration is GRANTED, and the fourth, fifth, sixth, seventh, eighth, and ninth causes of action against Aimjunkies and Phoenix Digital must be ARBITRATED in accordance with the LSLA; and

    (e) All other requested relief is DENIED.

---

of the LSLA and are bound by its forum-selection clause, any amended complaint must allege facts explaining how Bungie knows that these individuals accepted the agreement.

ORDER - 12

(2) The fourth, fifth, sixth, seventh, eighth, and ninth causes of action are hereby STAYED. The parties are DIRECTED to file a Joint Status Report within fourteen (14) days after completion of arbitration proceedings or by December 21, 2022, whichever occurs earlier.

(3) Bungie shall file any amended complaint on or before May 27, 2022. Any answer or response is due within fourteen (14) days after the amended complaint is filed. *See* Fed. R. Civ. P. 15(a)(3).

(4) The parties are DIRECTED, on or before June 10, 2022, to submit a Joint Status Report in the form required by the Order entered on June 16, 2021, docket no. 7.

(5) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 27th day of April, 2022.

Thomas S. Zilly
United States District Judge

ORDER - 13