1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

               Plaintiff,

    v.

AIMJUNKIES.COM; PHOENIX DIGITAL
GROUP, LLC; DAVID SCHAEFER; JORDAN
GREEN; JEFFREY CONWAY AND JAMES
MAY,

               Defendants.

No. 2:21-cv-811

**PLAINTIFF BUNGIE, INC.'S
MOTION FOR PRELIMINARY
INJUNCTION**

NOTE ON MOTION CALENDAR:
June 10, 2022

ORAL ARGUMENT REQUESTED

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................. 1

II.  STATEMENT OF FACTS ............................................................................... 1

  A.   Bungie and *Destiny 2* ............................................................................ 1

  B.   Defendants Copied and Modified Bungie's Copyrighted Software Code ............. 2

    1.   The ESP Cheat Feature .......................................................... 2

    2.   The AIMBOT Cheat Feature .................................................... 5

    3.   The One Position Kill Cheat Feature ....................................... 6

  C.   Defendants Sell and Threaten to Publicly Release the Cheat Software ................ 6

III. ARGUMENT ................................................................................................... 7

  A.   Legal Standard ..................................................................................... 7

  B.   The Court Should Issue a Preliminary Injunction ....................................... 8

    1.   Bungie Is Likely to Succeed on the Merits of Its Direct and Secondary Copyright Infringement Claims ............................. 8

      a.   Direct Infringement ..................................................... 8

      b.   Contributory Infringement .......................................... 11

      c.   Vicarious Infringement ............................................... 12

    2.   Bungie Will Suffer Irreparable Harm if Defendants Are Not Enjoined ............................................................................. 13

    3.   The Balance of Equities Tips Sharply Towards Bungie ............. 14

    4.   Issuance of an Injunction Is in the Public Interest .................... 15

    5.   The Balance of the *Winter* Factors Favors Issuance of the Requested Injunction ............................................................. 15

  C.   No Bond Should be Required ................................................................. 16

IV.  CONCLUSION ............................................................................................... 17

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3

4
CASES

5
*2Die4Kourt v. Hillair Capital Mgm't, LLC*,
   692 F. App'x 366 (9th Cir. 2017) ...................................................................13, 16

6

7
*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................11, 12

8

9
*Alliance for the Wild Rockies v. Pena*,
   865 F.3d 1211 (9th Cir. 2017) ...........................................................................8, 15

10
*Blizzard Entm't, Inc. v. Bossland GmbH*,
   No. SA CV 16-1236-DOC, 2017 WL 7806600 (C.D. Cal. Mar. 31, 2017) ...........11

11

12
*Broadcast Music, Inc. v. Benchley Ventures, Inc.*,
   131 F. Supp. 3d 1097 (W.D. Wash. 2015)...........................................................12

13

14
*California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*,
   766 F.3d 1319 (9th Cir.), *amended on other grounds*, 775 F.3d 998 (9th Cir.
   1985) ...................................................................................................................16

15

16
*Disney Enters., Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) ...........................................................................8, 14

17
*Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002)................................................................................10

18

19
*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ................................................................................11

20

21
*hiQ Labs, Inc. v. LinkedIn Corp.*,
   ___ F.4th ___, 2022 WL 1132814 (9th Cir. Apr. 18, 2022)...................................7

22
*Los Angeles Memorial Coliseum Comm'n v. Nat. Football League*,
   634 F.2d 1197 (9th Cir. 1980) ..............................................................................8

23

24
*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) .............................................................................11

25

26
*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) .............................................................................10

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

*Nexon Am., Inc. v. S.H.*,
    No. CV 10-9689 PA, 2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ...................................11

*Nintendo of Am., Inc. v. Storman*,
    No. CV 19-7818-CBM-(RAOx), 2021 WL 4780329 (C.D. Cal. Aug. 5, 2021) ....................12

*Senate of Cal. v. Mosbacher*,
    968 F.2d 974 (9th Cir. 1992) ........................................................................................................7

*Take-Two Interactive Software, Inc. v. Zipperer*,
    No. 18 Civ. 2608 (LLS), 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018) ..............10, 11, 13, 15

*Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ......................................................................................9

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
    630 F.3d 1255 (9th Cir. 2011) ....................................................................................................9

*W. Va. Highlands Conservancy v. Island Creek Coal Co.*,
    441 F.2d 232 (4th Cir. 1971) ....................................................................................................16

*Warner Bros. Entm't Inc. v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) ....................................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...........................................................................................................7, 8, 15

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275 (2d Cir. 2012)......................................................................................................15

**STATUTES**

17 U.S.C. § 106........................................................................................................................................8

17 U.S.C. § 106(1)–(4)............................................................................................................................8

**RULES**

Fed. R. Civ. P. 65 ....................................................................................................................................1

Fed. R. Civ. P. 65(c) ..............................................................................................................................16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

## I.     INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Bungie, Inc. ("Plaintiff" or "Bungie") moves the Court for a preliminary injunction enjoining Defendants AimJunkies.com, Phoenix Digital Group, LLC ("Phoenix Digital"), David Schaefer, Jordan Green, Jeffrey Conway, and James May (collectively "Defendants") and their officers, directors, agents, servants, employees, attorneys, representatives and all persons in active concert or participation with them from the sale or transfer of Defendants' *Destiny 2* cheat software (the "Cheat Software") to any person or entity.

Defendants have created, advertised, and sold their Cheat Software that gives cheat users an unfair advantage in Bungie's *Destiny 2* video game, damages the integrity of Bungie's popular video game, and compromises the goodwill that Bungie has worked hard to earn among *Destiny 2* players.  Bungie initiated this lawsuit, in part, to prevent the proliferation of the Cheat Software, which infringes Bungie's copyrights in its *Destiny 2* video game.  While Defendants claim to no longer offer the Cheat Software for sale through their website, AimJunkies.com, Defendants now appear poised to sell the entire AimJunkies.com website—including the *Destiny 2* Cheat Software—to Ukrainian buyers who would be outside of the Court's jurisdiction.  Bungie brings this motion for a narrowly tailored preliminary injunction to stop only Defendants' transfer of the Cheat Software (not the entirety of the AimJunkies.com websites) to any third party, including these foreign buyers, prior to the final disposition of this case.

## II.     STATEMENT OF FACTS

### A.     Bungie and *Destiny 2*

Bungie's *Destiny 2* video game is an incredibly successful shared-world first-person action video game.  Originally released in September 2017, *Destiny 2* is now a free-to-play game with paid expansions, continually refreshed downloadable content ("DLC"), and an estimated player base of over 30 million players.  Declaration of Edward Kaiser ("Kaiser Decl.") ¶ 6.  Among other

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

DLC, one of Bungie's recent expansions is *Destiny 2: Beyond Light*, released on November 10, 2020.  *Id.*  Bungie is the owner of all rights, title, and interest in the copyrights in *Destiny 2* and *Destiny 2: Beyond Light*,[1] including its computer software and the audiovisual works that software creates, which are the subject of four U.S. Copyright registrations.  Declaration of William C. Rava ("Rava Decl."), Ex. 1.

Among other things, Bungie's copyrighted computer software consists of data structures that correspond to certain attributes of *Destiny 2*, including, for example, player positioning (where each *Destiny 2* player and non-player character is located in *Destiny 2* at any given moment). Kaiser Decl. ¶ 12.  The data structures provide a precise layout for individual pieces of data stored and organized in a computer's memory, so that the video game functions as intended when running on the players' computers.  *Id.*  Bungie's copyrighted computer software also includes data structures and functions dedicated to *Destiny 2*'s rendering, which determines what each player sees from their character's position and facing while playing *Destiny 2*.  *Id.* at ¶ 13.  Bungie's copyrighted computer software for *Destiny 2*, i.e., the software that supports gameplay, networking, and display, among other functions constitutes what is commonly referred to as the *Destiny 2* "game engine."  *Id.* at ¶ 3.

## B.    Defendants Copied and Modified Bungie's Copyrighted Software Code

Defendants have created, advertised, and offered for sale Cheat Software for *Destiny 2*. Defendants' Cheat Software gives its users an unfair advantage in *Destiny 2* by adding certain non-authorized features in the game, including "Extra-Sensory Perception" ("ESP"), "AIMBOT," and "One Position Kill" ("OPK") cheat features.  Rava Decl., Ex. 2.

### 1.    The ESP Cheat Feature

In *Destiny 2*, knowing the location of enemy players and other characters—especially those hidden from view—is immensely beneficial and provides an unfair advantage.  The ESP cheat-feature allows users of the Cheat Software to do just that, by seeing the location of other *Destiny 2*

---

[1] For ease of reference, *Destiny 2* and *Destiny 2: Beyond Light* are referred to hereafter as "*Destiny 2*".

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –2

156952872.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   players and non-player characters, including through solid walls.  The Cheat Software displays a

2   distinct box around the other players, displaying those players' names and their distance from the

3   cheat user.  *Id.*; Kaiser Decl. ¶ 11.  The following screenshots show the difference in the display a

4   normal player sees compared to the view of a player using the ESP feature of the Cheat Software.

5                                          Normal Player's View



16                            Player's View Using Defendants' Cheat Software



PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1

2   Rava Decl., Ex. 2; *see also id.* at 2–3 (showing additional screenshots of the ESP feature active in *Destiny 2*).

3          In order to show cheat users the location of players as shown above, the Cheat Software

4   needs to (a) ascertain the location of other characters and (b) display the relevant information to

5   the cheat user.  Both actions required that Defendants copy and modify Bungie's copyright-

6   protected software code.  Kaiser Decl. ¶ 11.

7          To enable the Cheat Software's ESP feature, Defendants had to copy the *Destiny 2* software

8   code that corresponds to the data structures for player positioning and reverse engineer the software

9   code for rendering functions in *Destiny 2*.  Kaiser Decl. ¶ 14.  Defendants then had to incorporate

10  both code derived from the copied data structures as well as reverse engineered code into every

11  copy of Defendants' Cheat Software sold or distributed.  *Id.*

12         The Cheat Software then creates a modified version of the display that cheat users see when

13  playing *Destiny 2*.  To do so, cheat users run an authentic copy of *Destiny 2* on their computers

14  while also running a copy of the Cheat Software.  *Id.* at ¶ 15.  The Cheat Software then injects

15  code into (i.e. runs its software code inside) the *Destiny 2* game engine.  The injected code extracts

16  information to which the cheat user does not ordinarily have access from the player positioning

17  data structures and then manipulates the rendering data structures and calls the camera and display

18  functions (that are ordinarily only called by other game functions within an authentic copy of

19  *Destiny 2*) to create the modified *Destiny 2* that displays boxes and player information around other

20  characters.  *Id.*

21         In addition to copying Bungie's software code for *Destiny 2* to create the initial version of

22  the Cheat Software, Defendants also copied Bungie's code whenever Bungie updated the

23  corresponding data structures in *Destiny 2*.  When Bungie updates the software code for *Destiny

24  2*, Bungie frequently updates the data structure for player positioning, the rendering software code,

25  and other relevant data structures.  Kaiser Decl. ¶ 22.  And when Bungie released updates for

26  *Destiny 2* that affected these data structures, Defendants followed with updates for their Cheat

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

Software enabling it to work with the updated *Destiny 2* software code. *See, e.g.*, Rava Decl., Ex. 3. To do so, Defendants updated the software code for their Cheat Software. Kaiser Decl. ¶ 22. Thus, every time Defendants updated the Cheat Software in response to Bungie's updates to *Destiny 2*, Defendants created new copies of the above-described data structures and software code, and incorporated those into their updated Cheat Software. *Id.*[2]

### 2.    The AIMBOT Cheat Feature

Aiming accuracy is also an essential and important skill in a first-person shooter game like *Destiny 2*. The AIMBOT feature of Defendants' Cheat Software allows its users to aim their weapon automatically and accurately at other *Destiny 2* players and non-player characters with little to no input (i.e., movement of the mouse and/or controller joystick) by the player. Rava Decl., Ex. 2.

As with the ESP feature, the Cheat Software AIMBOT feature could only function in *Destiny 2* if Defendants copied the *Destiny 2* software code that corresponds to the data structures for player positioning (i.e., the target at which the player aims their weapon), and/or reverse engineered the *Destiny 2* software code that calculates the angle deltas for mouse movements (i.e., software code used to calculate how far the weapon cursor moves in *Destiny 2* in response to inputs), and then incorporated code derived from the copies of these sets of code into every copy of Defendants' Cheat Software that they sold or distributed. Kaiser Decl. ¶ 17. In order to enable Cheat Software users to automatically aim at other players, the Cheat Software must inject code into the *Destiny 2* game engine to automatically call functions in *Destiny 2*. *Id.* at ¶ 18. And, like the ESP feature, Defendants made additional copies of Bungie's software code in order to keep the AIMBOT cheat feature working with the updated versions of *Destiny 2*. *Id.* at ¶ 22.

---

[2] At a minimum, Defendants appear to have updated their Cheat Software at least once on or about November 11, 2020. *See* Rava Decl., Ex. 3.

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

### 3.    The One Position Kill Cheat Feature

In *Destiny 2*, players earn accolades and rewards by using their skills to defeat a large number of enemies.  The OPK cheat feature shortcuts this skill-based progression, allowing Cheat Software users to cause other players and characters in *Destiny 2* to either respawn at or move (teleport) to a single position so that they may all be damaged by the cheat users' abilities at once, accelerating the rate at which cheat users accumulate rewards and accolades.  Kaiser Decl. ¶ 19; Rava Decl., Ex. 2.

Like the Cheat Software's other features, the OPK feature only works if Defendants copied the *Destiny 2* software code that corresponds to the data structures for player positioning and combatant positioning.  Kaiser Decl. ¶ 20.  Defendants would then have to incorporate code derived from the copied data structures into every copy of Defendants' Cheat Software that they sold or distributed.  *Id.*  For the Cheat Software to call the necessary functions and to manipulate the character positions to enable Cheat Software users to teleport other characters to one position, the Cheat Software must inject code into the authentic copy of *Destiny 2* on the users' computers. *Id.* at ¶ 21.  The injected code modifies the player input data structures and calls functions in *Destiny 2* to teleport the other characters.  *Id.*  Similarly, Defendants would need to update their Cheat Software if Bungie's update to *Destiny 2* changed any of the data structures required for this feature, requiring Defendants to make new copies of these data structures.  *Id.* at ¶ 22.

### C.    Defendants Sell and Threaten to Publicly Release the Cheat Software

Defendants sold the Cheat Software on AimJunkies.com beginning at least as early as April 2019 and through at least December 4, 2020.  *See* Declaration of David Schaefer ISO Defs.' Mot. to Dismiss (Dkt. No. 28-5) ("Schaefer Decl.") at ¶ 3; Rava Decl., Ex. 4.  During that time, Defendants generated at least $27,000 in revenue from selling hundreds of copies of the Cheat Software.  Schaefer Decl. ¶ 8.  Defendants claim to have stopped selling the Cheat Software as of November 12, 2020.  *Id.* at ¶¶ 7, 9.

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

On June 15, 2021, Bungie initiated this litigation.  In response, and despite knowing of Bungie's allegation that their Cheat Software was infringing Bungie's copyrights, *Defendants threatened to publicly release the source code for the Cheat Software*.  On August 26, 2021, Mr. Schaefer emailed Bungie asserting that what Bungie "does not understand is there [are] repercussions" for the lawsuit.  Rava Decl., Ex. 8.  Mr. Schaefer noted that by "pushing this [litigation] further" Bungie was "driving [Defendants] back underground."  *Id.*  Mr. Schaefer ended the email by threatening to make the Cheat Software "accessible to everyone."  *Id.*  Defendants' threat has now nearly become a reality.

On April 28, 2022, an article posted on TorrentFreak.com reported that, in speaking with the Defendants regarding this litigation, Defendants "stress[ed] that they are in the final stages of selling the AimJunkies websites to a Ukrainian group of investors."  Rava Decl., Ex. 5.  On May 11, 2022, Bungie asked Defendants whether, with the sale, they intended to transfer the Cheat Software to these foreign buyers and whether the sale was completed.  Rava Decl., Ex. 6.  As of the date of this motion, Defendants have not responded.  Rava Decl. ¶ 7.

### III.   ARGUMENT

#### A.   Legal Standard

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *hiQ Labs, Inc. v. LinkedIn Corp.*, ___ F.4th ___, 2022 WL 1132814, at *5 (9th Cir. Apr. 18, 2022).  Even if a plaintiff is unable to establish likely success on the merits, a plaintiff may obtain a preliminary injunction "under the 'sliding scale' variant of the *Winter* standard," as long as the plaintiff can show "serious questions going to the merits,"[3] that "'the balance of hardships tips *sharply* in the plaintiff's favor,' and [that] the other

---

[3] "Serious questions" are questions that are "substantial, difficult, and doubtful as to make them a fair ground for litigation and thus more deliberative investigation."  *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 977 (9th Cir. 1992) (internal quotation marks omitted).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    two *Winter* factors are satisfied." *See Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217

2    (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 1281, 1291 (9th Cir. 2013)).

3    **B.     The Court Should Issue a Preliminary Injunction**

4           The fundamental purpose of a preliminary injunction is to preserve the status quo pending

5    a determination of the action on the merits.  *Los Angeles Memorial Coliseum Comm'n v. Nat.*

6    *Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).  Here, preserving the status quo requires

7    preventing the sale and transfer of the Cheat Software to a foreign entity.

8           According to Defendants, they are no longer distributing their Cheat Software for

9    *Destiny 2*.  Schaefer Decl. ¶ 7.  Defendants' impending sale of the AimJunkies websites and threats

10   to publicly release the Cheat Software threatens this status quo, re-opening the possibility that the

11   Cheat Software could be made widely available by a Ukrainian entity unreachable by this Court.

12   In this case, issuance of a preliminary injunction to enjoin only the transfer of the Cheat Software

13   is both necessary and appropriate because Bungie is likely to succeed on the merits of its direct

14   and secondary copyright infringement claims, the balance of hardships tips sharply in Bungie's

15   favor and the balance of the other *Winter* factors favors issuance of the preliminary injunction.

16

17        **1.     Bungie Is Likely to Succeed on the Merits of Its Direct and Secondary
                   Copyright Infringement Claims**

18             **a.     Direct Infringement**

19          Bungie must prove two elements to succeed on its direct copyright infringement claim:

20   (1) ownership of the allegedly infringed material and (2) that Defendants violated at least one

21   exclusive right granted to copyright holders under 17 U.S.C. § 106.  *Disney Enters., Inc. v.*

22   *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  A copyright owner's exclusive rights include

23   the rights to reproduce the copyrighted work, prepare derivative works based on the copyrighted

24   work, and to distribute copies of the copyrighted work.  17 U.S.C. § 106(1)–(4).

25          Bungie has unquestionably met the first element.  Bungie owns four copyright registrations

26   in connection with *Destiny 2* covering the software code that Defendants infringed:   two

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    audiovisual copyrights and two software code (literary work) copyrights.  Rava Decl., Ex. 1.  These

2    registrations cover the entirety of the computer software code and audiovisual components of the

3    *Destiny 2* video game, first published on September 9, 2017, and the *Destiny 2: Beyond Light*

4    expansion, first published on November 10, 2020.  *Id.*  Bungie has therefore shown that it owns

5    the infringed materials.  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th

6    Cir. 2011) (a copyright registration is prima facie evidence of the validity of the copyright).

7           And, while discovery has yet to begin, Bungie is likely to succeed in showing that

8    Defendants violated at least one exclusive right granted to Bungie as the owner of those copyrights.

9           ***First***, in order to create the Cheat Software, Defendants necessarily copied certain

10   copyrighted software code from *Destiny 2* and incorporated that code into the Cheat Software.

11   Kaiser Decl. ¶¶ 14, 17, 20.  Specifically, Defendants copied the data structures that correspond to

12   player and combatant positioning, rendering, and reverse-engineered the software code dedicated

13   to the game's rendering and calculation of angle deltas for mouse movement.  *Id.*  Copying this

14   code enabled Defendants' Cheat Software's ESP, AIMBOT, and OPK features.  That is, to

15   implement these cheat features—which allow cheat users to see through walls, automatically aim,

16   and teleport other players—Defendants *had* to copy Bungie's software data structures, and *had* to

17   include the copied data structures into the Cheat Software.  *Id.*  The AIMBOT feature requires that

18   the Cheat Software be able to determine player location and automatically aim the cheat user's

19   weapon by changing where the player is looking.  That means the Cheat Software *must* copy and

20   incorporate the *Destiny 2* software data structures that correspond to those attributes (e.g., player

21   positioning, and angle deltas for mouse movement).  Kaiser Decl. ¶ 17.  Likewise, implementing

22   the ESP feature requires that the Cheat Software copied and incorporated the *Destiny 2* software

23   code corresponding to player positioning and rendering.  *Id.* at ¶ 14.  That copying infringes

24   Bungie's copyrights.  *See Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*, 315 F. Supp. 3d 1147,

25   1161 (C.D. Cal. 2018) ("The act of downloading and storing the pages and code of a website

26   qualifies as making a 'copy' under the Copyright Act . . . .").

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1    Moreover, every time Defendants updated the Cheat Software following an update to

2    Bungie's *Destiny 2* software code, Defendants had to again copy Bungie's updated code to ensure

3    compatibility with the updated game.  Kaiser Decl. ¶ 22.  Therefore, Defendants have infringed

4    Bungie's exclusive right to copy or reproduce its copyrighted *Destiny 2*.  That alone is sufficient

5    to show a likelihood of success on Bungie's copyright infringement claim.

6    ***Second,*** by implementing the cheat features, the Cheat Software creates unauthorized

7    derivative works of *Destiny 2*.  It is well-established that unauthorized programs that add new

8    features to a video game or other software infringe the right to create derivative works.  *See Micro*

9    *Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998) (levels of computer game burned onto

10   a CD disk were derivative works in part because the levels manipulated the game code to create

11   an altered visual display); *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d

12   197, 208 (3d Cir. 2002); *Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 Civ. 2608 (LLS),

13   2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (granting preliminary injunction against cheat

14   developer where developer's cheat created an alternative version of plaintiff's video game with

15   "added elements that allow its users to use features not available" in the original game).

16   Here, in order to modify the visual display of the video game for the ESP feature (e.g.,

17   drawing the boxes around players), Defendants' Cheat Software injects code into the *Destiny 2*

18   game engine and then reads the player positioning structures, manipulates the rendering data

19   structures, and calls the camera and display functions, resulting in modified versions of *Destiny 2*

20   that include Bungie's copyrighted code plus the code added by Defendants' Cheat Software.

21   Kaiser Decl. ¶ 15.  The ESP feature thus alters both the underlying code and the display of

22   *Destiny 2*, creating unauthorized derivative works.  Similarly, in order to automatically aim at other

23   *Destiny 2* players for the AIMBOT feature, Defendants' Cheat Software injects code into the

24   *Destiny 2* game engine to modify the player input data structures and automatically calls functions

25   in *Destiny 2*, altering the game and creating a derivative work.  Kaiser Decl. ¶ 18.  Finally, the

26   OPK feature injects code into *Destiny 2*, modifying the player input data structures and calling

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   functions in *Destiny 2* to teleport other characters, again creating a derivative work.  Kaiser Decl.

2   ¶ 21; *Take-Two Interactive Software*, 2018 WL 4347796, at *8.

3   **Third and finally**, Defendants have also infringed Bungie's exclusive right to distribute

4   copies of *Destiny 2*.  As discussed above, Defendants' Cheat Software incorporated copies of code

5   derived from Bungie's copyrighted *Destiny 2* software code.  Defendants then distributed their

6   Cheat Software via AimJunkies.com for $34.95 per copy, admitting to at least $27,000 worth of

7   sales of the Cheat Software.  *See* Rava Decl., Ex. 4; Schaefer Decl. ¶ 8.  Each sale of the Cheat

8   Software violated Bungie's distribution right.  *See Nexon Am., Inc. v. S.H.*, No. CV 10-9689 PA

9   (JCx), 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (holding that defendant distributed

10  infringing cheat software, which was a modified version plaintiff's video game software, by

11  uploading it to a website where it was then downloaded by users).

12          **b.    Contributory Infringement**

13          To be liable for contributory infringement, (1) the defendant must have knowledge of direct

14  infringement; and (2) either induced, caused, or materially contributed to the infringing conduct.

15  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *Blizzard Entm't, Inc.*

16  *v. Bossland GmbH*, No. SA CV 16-1236-DOC (KESx), 2017 WL 7806600, at *5 (C.D. Cal. Mar.

17  31, 2017) (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019–22 (9th Cir. 2001)).

18  "[P]roviding the site and facilities for known infringing activity is sufficient to establish

19  contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

20          Every time a purchaser downloads a copy of Defendants' Cheat Software, a new copy of

21  software code derived from Bungie's copyrighted code that was incorporated into the Cheat

22  Software is created.  *See* Kaiser Decl. ¶¶ 14, 17, 20.  As Defendants admit, they sold tens of

23  thousands of dollars' worth of copies of their Cheat Software.  Schaefer Decl. ¶ 8.  Defendants, as

24  the owners of the AimJunkies.com website and sellers of the Cheat Software, are aware of the

25  resulting infringement by their purchasers.  *See* Rava Decl., Ex. 7; Schaefer Decl. ¶ 3, 7–8.

26  Defendants were also the direct cause of the infringement and encouraged that infringement.  But

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1  for Defendants' creation of the Cheat Software, advertising its infringing features on their website,

2  and sale of the Cheat Software, the cheat users' infringement would not have occurred.  *See* Rava

3  Decl., Exs. 2, 4.  Defendants therefore induced, caused, or materially contributed to the infringing

4  conduct "by advertising and making the [Cheat Software] available for download on [their]

5  website." *Nintendo of Am., Inc. v. Storman*, No. CV 19-7818-CBM-(RAOx), 2021 WL 4780329,

6  at *4 (C.D. Cal. Aug. 5, 2021).

7  <center>**c.  Vicarious Infringement**</center>

8  Liability for vicarious copyright infringement extends to a defendant that "has the right and

9  ability to supervise the infringing activity and also has a direct financial interest in such activities."

10  *A&M Records*, 239 F.3d at 1022 (quoting *Fonovisa*, 76 F.3d at 262).  A financial interest exists

11  where "the availability of infringing material acts as a draw for customers." *Nintendo of Am.*, 2021

12  WL 4780329, at *4.  And, a defendant exercises control over a direct infringer "when he has both

13  a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do

14  so." *Broadcast Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1103 (W.D. Wash.

15  2015) (quoting *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).

16  Bungie has satisfied both elements in this case.  Defendants admit to having both the right

17  and practical ability to control their purchasers' infringement.  Upon receipt of Bungie's cease and

18  desist letter, Defendants claim to have ceased distribution of the Cheat Software as of

19  November 12, 2020. Schaefer Decl. ¶ 7.  In addition, Defendants admit to a direct financial interest

20  in the Cheat Software -- generating over $27,000 in sales and $13,000 in profits from the Cheat

21  Software.  Schaefer Decl. ¶ 8.  The primary draw of the Cheat Software, as advertised on

22  Defendants' website, was the added features such as "ESP," "AIMBOT," and "OPK" which

23  infringe Bungie's copyrights. Rava Decl., Ex. 2.  Therefore, Defendants are vicariously liable for

24  the infringement of the purchasers of their Cheat Software.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1

2.      **Bungie Will Suffer Irreparable Harm if Defendants Are Not Enjoined**

2          In response to this lawsuit, Defendants threatened Bungie with "repercussions" in the form

3    of Defendants publicly releasing the Cheat Software.  Rava Decl., Ex. 8.  Defendants are now

4    poised to carry out that threat.  According to a report released shortly after the Court's ruling on

5    Defendants' motion to dismiss, Defendants "are in the final stages of selling the AimJunkies

6    websites to a Ukrainian group of investors."  Rava Decl., Ex. 5.[4]

7          If Defendants are allowed to transfer the Cheat Software to a third party—especially an

8    unknown, foreign entity beyond the jurisdiction of this or any United States court—Bungie faces

9    the threat that the Cheat Software will be re-released on the market, an act that will unquestionably

10   cause irreparable harm to Bungie.  Indeed, the fact that irreparable harm will occur if the Cheat

11   Software is distributed again is confirmed by the harm already caused by Defendants' prior

12   distribution of the Cheat Software.

13         Defendants' initial distribution of the Cheat Software caused significant harm to Bungie's

14   business reputation and goodwill.  Despite Defendants' claims that they only distributed a small

15   number of copies of the Cheat Software, *Bungie received over 6,000 reports from Destiny 2*

16   *players regarding other players that were using the Cheat Software.  See* Kaiser Decl. ¶ 23.  Non-

17   cheating players commonly complained about users of the Cheat Software, explaining that the

18   presence of the Cheat Software was ruining their experience with *Destiny 2.  See* Kaiser Decl., Ex.

19   1 (user reporting the AimJunkies Cheat Software stating "PVP Cheaters… When u [sic] will stop

20   that cheats in online game?…Just please").  This harm—which is almost certain to increase or

21   reoccur if the Cheat Software is transferred—constitutes irreparable harm and warrants entering

22   an injunction.  *2Die4Kourt v. Hillair Capital Mgm't, LLC*, 692 F. App'x 366, 369 (9th Cir. 2017)

23   ("Evidence of loss of control over business reputation and damage to goodwill can constitute

24   irreparable harm."); *Take-Two Interactive Software*, 2018 WL 4347796, at *9 (sufficient showing

25

26   _____

[4] After learning of this report, Bungie reached out to Defendants to confirm whether the sale of the AimJunkies websites would include transfer of Defendants' Cheat Software and whether the sale had been completed.  Rava Decl., Ex. 6.  Defendants did not respond.  *Id.* at ¶ 7.

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1    of irreparable harm to enjoin distribution of video game cheat software where the defendant's cheat

2    programs would "caused [plaintiff] to lose control over its carefully-orchestrated plan for how [its

3    video game was] designed to be played" and the cheat programs "cause harm to [plaintiff's]

4    reputation among video game consumers").

5           **3.      The Balance of Equities Tips Sharply Towards Bungie**

6           Before issuing a preliminary injunction, the Court must "balance the competing claims of

7    injury and must consider the effect on each party of the granting or withholding of the requested

8    relief." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).  As explained

9    above, the irreparable harm to Bungie if Defendants' Cheat Software is transferred to an unknown

10   foreign buyer group is substantial.  On the other hand, there is little to no potential harm to

11   Defendants in prohibiting them from transferring the Cheat Software to the foreign buyer group,

12   particularly because Bungie is *not* seeking to prohibit the transfer of any AimJunkies' property or

13   assets other than the Cheat Software.

14          Even if Defendants were able to show some potential for lost profits by being prohibited

15   from selling the Cheat Software, any lost revenue that Defendants would have earned from the

16   sale of that software should be given no weight in the balancing of equities calculus, because the

17   source of the profits infringes Bungie's copyrights.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869

18   F.3d 848, 866 (9th Cir. 2017) ("lost profits from an activity which has been shown likely to be

19   infringing merit little equitable consideration") (internal quotes omitted).   Moreover, by

20   Defendants' own prior admissions, the Cheat Software held little to no value to Defendants.  *See*

21   Declaration of David Schaefer ISO Defs.' Mot. to Dismiss ("Schaefer Decl.") (Dkt. No. 28-5) ¶ 7.

22   Finally, Bungie seeks only a narrow, but vital, injunction preventing the transfer of the Cheat

23   Software.  Defendants would not be prohibited from transferring or selling any property or assets

24   *other* than the Cheat Software, and thus would suffer little to no harm if the injunction were issued.

25

26

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

Because of the substantial harm that will result to Bungie if the Cheat Software is transferred to foreign actors, and the minimal (if any) impact this restriction would have on Defendants' sale of the AimJunkies websites, the balance of equities tips sharply in Bungie's favor.

### 4.      Issuance of an Injunction Is in the Public Interest

An injunction preventing AimJunkies' transfer of the infringing Cheat Software is in the public's interest because "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" those creative works. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012); *see also Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1015 (C.D. Cal. 2011) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work."). Further, non-cheating players of *Destiny 2* have been harmed by the use of Defendants' Cheat Software, and likely will be injured again by the Cheat Software if it is sold to a foreign buyer who then distributes the Cheat Software themselves. *See* Kaiser Decl. ¶ 23, Ex. 1; *Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 Civ. 2608 (LLS), 2018 WL 4347796, at *11 (S.D.N.Y. Aug. 16, 2018).

### 5.      The Balance of the *Winter* Factors Favors Issuance of the Requested Injunction

Considering all four of the *Winter* factors, the Court should issue the requested injunction in favor of Bungie. Bungie is likely to succeed on the merits of its copyright infringement claim. In creating, updating, and selling the Cheat Software, Defendants have infringed multiple exclusive rights that Bungie owns in the *Destiny 2* copyrights. But even if Bungie has only presented "serious questions" as to the merits of its claim, the remaining Winter factors tip sharply in Bungie's favor and the Court should issue an injunction. *Pena*, 865 F.3d at 1217.

The threat of irreparable harm to Bungie is real. Defendants had previously threatened public release of the Cheat Software, and now they have taken steps to make that happen. If the

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1

1  Cheat Software is transferred to an unknown foreign buyer over whom no United States court can

2  obtain jurisdiction, Bungie faces the very real possibility that the infringing Cheat Software will

3  again be made widely available, harming Bungie's reputation and its hard-earned goodwill in the

4  video game community.  These harms cannot be compensated by money damages.  The burden on

5  Defendants if the injunction is granted, on the other hand, is comparatively small.  Bungie seeks

6  only to prevent the transfer of the Cheat Software to the foreign buyers, and the value of the Cheat

7  Software to the buyers (and thus to Defendants) is minimal, if above zero.  Finally, the public has

8  a compelling interest in protecting copyright owners' rights, and the non-cheating players of

9  *Destiny 2* have a strong interest in stopping the distribution of Cheat Software that they have told

10  Bungie harms their experience.  Therefore, Defendants should be preliminarily enjoined from

11  transferring the *Destiny 2* Cheat Software.

12  **C.     No Bond Should be Required**

13         Rule 65(c) requires, as a condition to issuance of a preliminary injunction, that the Court

14  require the applicant to provide security "in an amount that the court considers proper to pay the

15  costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

16  Where, as here, Bungie is likely to prevail on the merits and there is no likelihood of harm to

17  Defendants from issuance of a preliminary injunction, the Court has broad discretion to require no

18  bond or other security.  *See California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 766

19  F.3d 1319, 1325-26 (9th Cir.) ("The court has discretion to dispense with the security requirement,

20  or to request mere nominal security, where requiring security would effectively deny access to

21  judicial review. . . .  [Likewise], the likelihood of success on the merits, as found by the district

22  court, tips in favor of a minimal bond or no bond at all." (citations omitted)), *amended on other*

23  *grounds*, 775 F.3d 998 (9th Cir. 1985); *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 692 F. App'x

24  366, 369 (9th Cir. 2017) (holding that trial court did not abuse its discretion in requiring no bond

25  in connection with grant of preliminary injunction); *see also W. Va. Highlands Conservancy v.*

26

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –16

156952872.1

1  *Island Creek Coal Co.*, 441 F.2d 232, 236 (4th Cir. 1971) (requiring $100 bond where defendant

2  failed to prove that injunction could cause more than negligible harm).

3      Here, Bungie should not be required to give any bond in connection with the preliminary

4  injunction because Bungie is likely to prevail on the merits of its copyright infringement claim and

5  because the preliminary relief sought is particularly targeted.  Defendants have infringed Bungie's

6  computer software and audiovisual copyrights in *Destiny 2* through copying of the works to create

7  and update the Cheat Software, the creation of derivative works through the injection of their own

8  software code into Bungie's copyrighted software code to enable the features of the Cheat

9  Software, and the unauthorized distribution of software code derived from *Destiny 2* whenever the

10  Cheat Software is sold or transferred.  *See supra* Section III.B.1.  Bungie's requested preliminary

11  injunction is also narrow in scope; it seeks only to prevent the transfer of the Cheat Software.  As

12  Defendants concede, the value of the Cheat Software to Defendants is minimal.  *See supra* Section

13  III.B.3.  Therefore, no bond should be required in this case.

14                              **IV.    CONCLUSION**

15      For the foregoing reasons, Bungie respectfully requests that its motion for a preliminary

16  injunction be granted.

17

18

19  Dated: May 19, 2022              By: */s/William C. Rava*

20                                       William C. Rava, Bar No. 29948
                                         Jacob P. Dini, Bar No. 54115
21                                       **Perkins Coie LLP**
                                         1201 Third Avenue, Suite 4900
22                                       Seattle, Washington 98101-3099
                                         Telephone: +1.206.359.8000
23                                       Facsimile: +1.206.359.9000
                                         WRava@perkinscoie.com
24                                       JDini@perkinscoie.com

25                                       *Attorneys for Plaintiff Bungie, Inc.*

26

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) –17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

156952872.1