1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

BUNGIE, INC.,

8                                  Plaintiff,

9           v.

10   AIMJUNKIES.COM; PHOENIX
     DIGITAL GROUP LLC; DAVID
11   SCHAEFER; JORDAN GREEN;
     JEFFREY CONWAY; and JAMES
12   MAY,

13                                  Defendants.

C21-811 TSZ

PRELIMINARY INJUNCTION

14          THIS MATTER comes before the Court on a motion for preliminary injunction,

15   docket no. 35, filed by plaintiff Bungie, Inc. ("Bungie").  The Court has reviewed all

16   papers filed in support of, and in opposition to, the motion, and has determined that oral

17   argument is unnecessary.  For the following reasons, the motion is GRANTED.

18   **Background**

19          Bungie is the owner of the popular Destiny video game franchise, which includes

20   Destiny 2.  *See* Kaiser Decl. at ¶ 6 (docket no. 36).  In September 2017, Bungie released

21   Destiny 2, which is now a free-to-play video game with paid expansions and an

22
23

1  "estimated player base of over 30 million." *Id.*  On November 10, 2020, Bungie released

2  Destiny 2: Beyond Light, an expansion to Destiny 2.  *Id.*  Bungie owns multiple

3  copyrights in computer code and audiovisual material for Destiny 2 and Destiny 2:

4  Beyond Light, which are registered in the Copyright Office.  *See* Ex. 1 to Rava Decl.

5  (docket no. 37-1).

6      Bungie alleges that defendants Aimjunkies.com ("Aimjunkies"), Phoenix Digital

7  Group LLC ("Phoenix Digital"), David Schaefer, Jordan Green, Jeffrey Conway, and

8  James May (collectively the "Defendants") "develop, advertise, use, and distribute" cheat

9  software that gives players an unfair advantage in Destiny 2 and its expansions.[1]

10  Am. Compl. at ¶ 2 (docket no. 34).  Bungie claims that the Defendants previously sold

11  their cheat software through the Aimjunkies.com website for $34.95 per month.  *See*

12  Ex. 4 to Rava Decl. (docket no. 37-1).  The Defendants contend that they stopped

13  distributing the cheat software on November 12, 2020.  Schaefer Decl. at ¶ 7 (docket

14  no. 28-5).

15      On April 27, 2022, this Court dismissed all of Bungie's claims against Schaefer,

16  Green, Conway, and May without prejudice.  *See* Order (docket no. 33).  The Court also

17  dismissed without prejudice Bungie's claim of copyright infringement against Phoenix

18  Digital and Aimjunkies, and referred a number of Bungie's claims against these entities

19

20  ─────────────────

21  [1] Bungie alleges that defendants Schaefer, Green, and Conway are managing members of Phoenix Digital
and actively participated in all infringing activities.  Am. Compl. at ¶¶ 5–7 (docket no. 34).  Bungie
contends that May, although not a member of Phoenix Digital, contributed to the development of the

22  cheat software.  *See id.* at ¶ 8.

23

to mandatory arbitration.[2]  *Id.*  On April 28, 2022, the website torrentfreak.com published an article discussing this Court's ruling.  *See* Ex. 5 to Rava Decl. (docket no. 37-1).  The article reported that Phoenix Digital was "in the final stages of selling the AimJunkies websites to a Ukrainian group of investors."  *Id.*

On May 11, 2022, Bungie emailed the Defendants, asking whether the purported sale had been completed and if it included the cheat software at issue in this case.  *See* Ex. 6 to Rava Decl. (docket no. 37-1).  On May 19, 2022, having received no response to its email, Bungie filed its amended complaint, docket no. 34, and the present motion for preliminary injunction, docket no. 35.  On May 23, 2022, Aimjunkies and Phoenix Digital issued a press release reporting that Blome Entertainment ("BME"), an allegedly Ukrainian company, had "completed and signed definitive agreements" with Phoenix Digital to acquire the Aimjunkies.com website.[3]  Ex. 4 to 2d Rava Decl. (docket no. 43-1 at 20).  The press release provides that the "acquisition will give BME access to

---

[2] The Court granted Bungie leave to amend its complaint on or before May 27, 2022.  *See* Order at 13 (docket no. 33).

[3] Bungie raises doubt concerning the Defendants' claim that they sold the Aimjunkies.com website to a group of Ukrainian investors.  On November 20, 2020, before Bungie initiated this action, defendant Conway sent a letter to Bungie's counsel.  *See* Ex. 2 to 2d Rava Decl. (docket no. 43-1).  In his letter, Conway alleged that he no longer owned Aimjunkies.com, and that the "referenced sites were sold to Phoenix Digital Group LLC, and Phoenix Digital Group in turn sold them to CallofDutyHacks.RU site owners some time ago."  *Id.*  On June 29, 2021, the Defendants sent a letter to Bungie explaining that the sale referenced in Conway's November 20, 2020, letter "ultimately did not go through."  Ex. A to 2d Schaefer Decl. (docket no. 39-2).  Further, the press release announcing BME's acquisition of Aimjunkies.com appears to be an altered version of a January 31, 2022, press release announcing Sony Interactive Entertainment LLC's acquisition of Bungie.  *Compare* Ex. 4 to 2d Rava Decl. (docket no. 43-1 at 20) *with* Ex. 5 to 2d Rava Decl. (docket no. 43-1 at 23).

PRELIMINARY INJUNCTION - 3

1  Aimjunkies's world-class cheat library," and all equity and property rights in Phoenix

2  Digital's other websites, VirtualAdvantage.com and Mombot.com.  *Id.*

3      Bungie seeks a "narrowly tailored" preliminary injunction for its copyright

4  infringement claim to stop only the Defendants' transfer of the Destiny 2 cheat software,

5  and not the entirety of the Aimjunkies.com websites, to any third party prior to the final

6  disposition of this case.

7  **<u>Discussion</u>**

8      A preliminary injunction is an extraordinary remedy, "never awarded as of right."

9  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A party seeking a

10  preliminary injunction must establish:  (1) a likelihood of success on the merits; (2) a

11  likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing of

12  equities tips in favor of a preliminary injunction; and (4) an injunction is in the public

13  interest.  *Id.* at 20.  The Ninth Circuit has also articulated an alternative "sliding scale"

14  approach pursuant to which the first and third *Winter* factors are analyzed on a

15  continuum; under such standard, a weaker showing on the merits, combined with a

16  stronger demonstration on the balancing test, might warrant preliminary injunctive relief,

17  assuming the second and fourth *Winter* elements are met.  *All. for the Wild Rockies v.*

18  *Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  Under this "sliding scale" method, the

19  movant need only raise "serious questions going to the merits," but the balance of

20  hardships must tip "sharply" in the movant's favor.  *Id.* at 1131–32; *see also Farris v.*

21  *Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

22

23

1        **1.      Likelihood of Success on the Merits**

2        In their response to Bungie's motion, docket no. 39, the Defendants do not contest

3 Bungie's assertion that it is likely to succeed on the merits of its direct and secondary

4 copyright infringement claims.  Instead, the Defendants challenge only whether Bungie

5 has demonstrated immediate irreparable harm.  Having reviewed the motion and

6 Bungie's claims, the Court concludes that Bungie is likely to succeed on the merits of

7 some claims, and raises serious questions going to the merits of others.

8        **a.    Direct Infringement**

9        Bungie alleges that the Defendants' actions constitute direct copyright

10 infringement.  Am. Compl. at ¶ 107.  To establish direct copyright infringement, Bungie

11 must "(1) show ownership of the allegedly infringed material, and (2) demonstrate that

12 the alleged infringers violate at least one exclusive right granted to copyright holders

13 under 17 U.S.C. § 106."  *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856

14 (9th Cir. 2017) (internal quotations omitted).  Bungie has shown that it owns two

15 audiovisual copyrights and two software code copyrights in Destiny 2 and its expansion.

16 *See* Ex. 1 to Rava Decl. (docket no. 37-1); *see also United Fabrics Int'l, Inc. v. C&J*

17 *Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (explaining that a copyright registration

18 is "prima facie evidence" of the validity of a copyright).  Bungie, therefore, has

19 sufficiently satisfied the first element of its claim.

20        Bungie has also submitted an unrebutted declaration which demonstrates that the

21 Defendants likely infringed its copyright.  *See generally* Kaiser Decl. (docket no. 36).

22 Bungie contends that the Defendants created, advertised, and offered for sale cheat

23

software that includes non-authorized features such as Extra-Sensory Perception ("ESP"), AIMBOT, and One Position Kill ("OPK").[4]  *See* Ex. 2 to Rava Decl. (docket no. 37-1). Bungie alleges that, to create cheat software that includes these features, Defendants necessarily copied the Destiny 2 software code that corresponds to key attributes in the Destiny 2 video game, such as the data structures for player and combatant positioning. Kaiser Decl. at ¶¶ 14, 17 & 20.  Bungie believes that the Defendants also reverse engineered software code in Destiny 2, including the code for rendering functions and the code that calculates the angle deltas for mouse movements.  *Id.* at ¶¶ 14 & 17.  According to Bungie, the Defendants then incorporated cheat software derived from copied Destiny 2 code into every copy of their cheat software.  *Id.* at ¶¶ 14, 17 & 20.  Further, because Bungie periodically modifies or updates the Destiny 2 code, Bungie asserts that the Defendants necessarily created new copies of Bungie's code whenever Bungie updated the Destiny 2 software code to ensure that the cheat software's features continued to function.  *Id.* at ¶ 22.  Bungie has made a strong showing that this conduct likely constitutes infringement of its exclusive right to copy or reproduce Destiny 2.[5]

---

[4] ESP allows users of the cheat software "to see the location of other Destiny 2 players and non-player characters, including through solid walls, by displaying a distinct box around the other players, displaying the players' names, and their distance from the cheat user."  Kaiser Decl. at ¶ 11 (docket no. 36). AIMBOT allows users of the cheat software to "aim their weapons automatically and accurately at other Destiny 2 player and non-player characters with little to no input (i.e., movement of the mouse and/or controller joystick) by the cheat users."  *Id.* at ¶ 16.  OPK "automatically teleports characters to a position advantageous to the cheat user," allowing cheat users to easily damage their opponents.  *Id.* at ¶ 19.

[5] Bungie also argues that the Defendants likely created unauthorized derivative works of Destiny 2 by implementing their cheat features.  *See Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (holding that a defendant's alternative version of plaintiff's video game "with added elements that allow its users to use features not available in the original version" likely constituted a derivative work).  The Defendants' ESP feature, for example,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

        **b.**      **Secondary Copyright Infringement**

       Bungie also alleges that the Defendants are liable for contributory infringement and vicarious infringement.  Am. Compl. at ¶¶ 108–110.  To be liable for a claim of contributory infringement, a defendant must (1) know of the direct infringement, and (2) either induce, cause, or materially contribute to the infringing conduct.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).  "Put differently, liability exists if the defendant engages in 'personal conduct that encourages or assists the infringement.'"  *Blizzard Ent., Inc. v. Bossland GmbH*, No. CV 16-1236, 2017 WL 7806600, at *5 (C.D. Cal. Mar. 31, 2017) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001)).  According to Bungie, every time a purchaser downloads a copy of the Defendants' cheat software, "a new copy of software code derived from Bungie's copyrighted code that was incorporated into the Cheat Software is created."  Mot. for Prelim. Inj. (docket no. 35 at 15) (citing Kaiser Decl. at ¶¶ 14, 17 & 20).  The Defendants admit that they sold $27,748 in copies of the cheat software between April 2019 and November 2020, *see* Schaefer Decl. at ¶¶ 3, 7 & 8, and no dispute exists that the cheat software was available for purchase on the Aimjunkies.com website, *see* 2d Schaefer Decl. at ¶ 4 (docket no. 39-1).  Bungie argues that the

---

modifies the audiovisual display of Destiny 2 "by displaying a distinct box around the other players, displaying the players' names, and their distance from the cheat user."  Kaiser Decl. at ¶ 11.  Bungie further alleges that the Defendants have infringed on its exclusive right to distribute copies of Destiny 2.  *See Nexon Am., Inc. v. S.H.*, No. CV 10-9689, 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (finding that the defendant infringed on plaintiff's exclusive right of distribution when it uploaded a modified version of plaintiff's video game software to a website where it was downloaded by third-party users).  In this case, no dispute exists that the Defendants sold the cheat software on Aimjunkies.com.  *See* Schaefer Decl. at ¶¶ 6–7 (docket no. 28-5).

PRELIMINARY INJUNCTION - 7

1    Defendants, as the sellers of the cheat software, were aware of the resulting infringement

2    by the purchasers, and that they induced, caused, or materially contributed to the

3    infringing conduct by offering the cheat software for sale on their website.  The Court

4    concludes that Bungie has raised serious questions going to the merits of this claim.

5         To prevail on a vicarious infringement claim, a plaintiff must prove that the

6    defendant "(1) enjoyed a direct financial benefit from the infringing activity of the direct

7    infringer; and (2) declined to exercise the right and ability to supervise or control that

8    infringing activity."  *Nintendo of Am., Inc. v. Storman*, No. CV 19-7818, 2021 WL

9    4780329, at *4 (C.D. Cal. Aug. 5, 2021) (citing *Ellison v. Robertson*, 357 F.3d 1072,

10   1076 (9th Cir. 2004)).  "A financial benefit exists where the availability of infringing

11   material acts as a draw for customers."  *Id.* (citation omitted).  "A defendant exercises

12   control over a direct infringer when he has both a legal right to stop or limit the directly

13   infringing conduct, as well as the practical ability to do so."  *Id.* (quoting *Perfect 10, Inc.*

14   *v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).  Bungie contends that it has

15   satisfied both elements of this claim because the Defendants enjoyed a direct financial

16   benefit from the cheat software, *see* Schaefer Decl. at ¶ 8, and had the right and practical

17   ability to control their purchasers' infringement.  To prove that the Defendants exercised

18   the requisite control over their purchasers, Bungie cites to the fact that the Defendants

19   removed the cheat software from Aimjunkies.com upon receipt of Bungie's cease and

20   desist letter.  *Id.* at ¶ 7.  The Court similarly concludes that Bungie has raised serious

21   questions going to the merits of this claim.

22

23

1        **2.     Irreparable Harm**

2        The party requesting a preliminary injunction "must demonstrate that immediate

3    or imminent irreparable harm is likely." *Disney Enters., Inc. v. VidAngel, Inc.*, 224

4    F. Supp. 3d 957, 966 (C.D. Cal. 2016).  Speculative injury will not suffice.  *Id.* (citing

5    *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).  Bungie

6    argues that the cheat software could be re-released on the market if the Defendants are

7    permitted to transfer the software to a third party.  Bungie asserts that further distribution

8    of the cheat software would cause Bungie to suffer irreparable harm to its business

9    reputation and goodwill.  *See Rent-A-Center, Inc. v. Canyon Television & Appliance*

10   *Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (recognizing "that intangible injuries, such

11   as damage to . . . goodwill, qualify as irreparable harm"); *see also Take-Two Interactive*,

12   2018 WL 4347796, at *9 ("It is impossible to quantify the reputational harm that [a video

13   game developer] will suffer from losing its credibility with video game players who do

14   not use the [defendant's] cheat programs.").  In support of this argument, Bungie has

15   provided a declaration from Edward Kaiser, an Engineering Lead for the company.

16   Kaiser Decl. at ¶ 1.  Kaiser explains that following the Defendants' initial release of the

17   cheat software, Bungie received over 6,000 reports from non-cheating Destiny 2 players

18   concerning other players' use of the software.  *See* Kaiser Decl. at ¶ 23; Ex. 1 to Kaiser

19   Decl. (docket no. 36-1) (providing one example of a Destiny 2 user report).

20

21

22

23

In response, the Defendants argue that Bungie's request for a preliminary injunction is moot.[6]  According to defendant Schaefer, none of the Defendants have distributed the cheat software since December 2020.  *See* 2d Schaefer Decl. at ¶ 4.  Schaefer also states that Phoenix Digital did not develop the cheat software at issue in this action.  *Id.* at ¶ 5.  Instead, the software was "developed by unknown third party developers who make there [sic] products available for distribution through the Aimjunkies.com website."[7]  *Id.* at ¶ 5.  Because they did not develop the cheat software, Schaefer contends that the Defendants never had access to, or possession of, the software's source and/or object code.  *Id.* at ¶ 6.  Finally, Schaefer declares that the Defendants sold Aimjunkies.com to a Ukrainian purchaser on May 5, 2022, before Bungie filed its motion for preliminary injunction.[8]  *See id.* at ¶ 9.

---

[6] The Defendants also contend that Bungie's request for an injunction is untimely.  The Court, however, is unpersuaded by this argument.  Bungie has established that it moved for an injunction shortly after learning that the Defendants intended to sell the Aimjunkies.com website to a Ukrainian purchaser.  *See* Exs. 5–6 to Rava Decl.

[7] Schaefer explains that, [w]hen a potential customer places an order with Aimjunkies.com, upon payment of an agreed price, Aimjunkies.com allows the customer to access the third-party developer's computer server and download the software directly from the third-party developer."  2d Schaefer Decl. at ¶ 5 (docket no. 39-1).  Additionally, the Court notes that Schaefer's declaration appears to conflict with an email he sent to Bungie on August 26, 2021.  *See* Ex. 8 to Rava Decl. (docket no. 37-1).  In his email, Schaefer alleges that he and his partners have been "making game cheats" since Bungie's counsel was in high school.  *Id.*  Bungie contends that Schaefer also threatened to release the cheat software's source code.  *See id.* ("In the old days sites would put the source code on public forms . . . .  Is that what you're looking for in your game?  Please for both of ours [sic] benefit call your crusader off.").

[8] According to Schaefer, the cheat software's source and/or object code was not transferred to the purchaser because the code was never in the possession of, or accessible to, the Defendants.  2d Schaefer Decl. at ¶ 9.

PRELIMINARY INJUNCTION - 10

1    Although the Defendants contend that they no longer distribute the cheat software,

2    and do not have access to its source and/or object code, the available evidence

3    demonstrates that the Defendants have knowledge of, and/or access to, servers from

4    which future purchasers could download the cheat software, directly from the software's

5    alleged developers.  Further, despite the purported sale, whether the individual defendants

6    will still play some role in the management of Aimjunkies.com is unclear.  According to

7    the Defendants' press release, "[p]ost-acquisition, Aimjunkies will be an independent

8    subsidiary of BME and run by its Board of Directors . . . and Aimjunkies's current site

9    management team."  Accordingly, the Court concludes that Bungie's request for a

10   preliminary injunction is not moot.  *See Take-Two Interactive*, 2018 WL 4347796, at *10

11   (holding that a defendant's own statement that he did not intend to continue distributing

12   "cheat menus" for plaintiff's video game was insufficient to satisfy his burden to show

13   mootness).  Bungie has sufficiently demonstrated that any further sale, transfer, or

14   distribution of the cheat software, whether through Aimjunkies.com or other means, will

15   likely cause immediate irreparable harm to its reputation and goodwill.

16      **3.   Balancing of Equities and the Public Interest**

17   Bungie has demonstrated that the balance of hardships tips sharply in its favor.

18   When considering the equities of a preliminary injunction, the Court must "must balance

19   the competing claims of injury and must consider the effect on each party of the granting

20   or withholding of the requested relief."  *See Winter*, 555 U.S. at 24 (citation omitted).

21   Here, the record contains no evidence that the Defendants will be harmed by an

22   injunction.  In fact, the Defendants do not claim that they will suffer any injury, rather,

23

PRELIMINARY INJUNCTION - 11

1   they argue that the Court has nothing to enjoin.  Bungie, however, has presented evidence

2   that it will suffer irreparable reputational harm among Destiny 2 players if the cheat

3   software is transferred to a third party.  *See* Kaiser Decl. at ¶ 23.  Finally, Bungie has

4   demonstrated that the public interest in the protection of copyrighted works is served by

5   an injunction in this action.  The Court, therefore, concludes that a "narrowly tailored"

6   preliminary injunction is warranted.

7   **<u>Conclusion</u>**

8        For the foregoing reasons, the Court ORDERS:

9        (1)   Bungie's motion for a preliminary injunction, docket no. 35, is

10  GRANTED[9];

11       (2)   Aimjunkies, Phoenix Digital, David Schaefer, Jordan Green, Jeffrey

12  Conway, James May, and all of their officers, agents, servants, employees, and attorneys,

13  and all others who are in active concert or participation with Aimjunkies, Phoenix

14  Digital, David Schaefer, Jordan Green, Jeffrey Conway, James May, and/or their officers,

15  agents, servants, employees, and attorneys, who receive actual notice of this order by

16

17  ──────────────

18  [9] In its amended complaint, Bungie realleges its claim for copyright infringement against all of the
    Defendants.  Am. Compl. at ¶¶ 101–14.  Pending before the Court is the Defendants' second motion to
    dismiss, docket no. 40, which will note for the Court's consideration on July 15, 2022.  *See* Minute Order

19  (docket no. 48).  Defendants Conway, Schaefer, and Green move under Federal Rules of Civil Procedure
    12(b)(2) and 12(b)(3) to dismiss all claims against them for lack of personal jurisdiction and improper
    venue.  Defendant May moves under Rule 12(b)(6) to dismiss the only claim against him (copyright

20  infringement) for failure to state a claim.  Defendants Aimjunkies and Phoenix Digital do not move to
    dismiss any of the claims against them.  The Court must await completion of the briefing before ruling on

21  the individual defendants' motion to dismiss.  This Order, nevertheless, binds Conway, Schaefer, Green,
    and May because of their status as officers, agents, servants, and/or employees of Aimjunkies and
    Phoenix Digital, or as other persons in active concert or participation with any of these entities or

22  individuals, pending further order of the Court.  *See* Fed. R. Civ. P. 65(d)(2)(B)–(C).

23

PRELIMINARY INJUNCTION - 12

personal service or otherwise, are ENJOINED until resolution of this action, or until

further order of this Court, from selling, providing, or otherwise transferring the cheat

software at issue in this action, including but not limited to any source code or object

code for any version of the cheat software, to any third party;

      (3)    Bungie will not be required to post a bond; and

      (4)    The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 1st day of July, 2022.

Thomas S. Zilly
United States District Judge