1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

                Plaintiff,

     v.

AIMJUNKIES.COM; PHOENIX DIGITAL
GROUP, LLC; DAVID SCHAEFER; JORDAN
GREEN, JEFFREY CONWAY; AND JAMES
MAY,

                Defendants.

No. 2:21-cv-811

**PLAINTIFF BUNGIE, INC.'S
OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL
DISMISSAL OF PLAINTIFF'S
FIRST AMENDED COMPLAINT**

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157237984.4

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 2

      A.    Defendants Used *Destiny 2* to Develop and Distribute the Cheat Software
            in Washington State ................................................................. 2

III.  ARGUMENT ...................................................................................... 4

      A.    The Court Has Personal Jurisdiction Over Schaefer, Conway, and Green ............ 4

            1.    Schaefer, Conway, and Green Consented to Jurisdiction in
                  Washington ................................................................ 5

            2.    Schaefer, Conway, and Green Directed and/or Personally
                  Participated in the Infringing Activities of Phoenix Digital ...................... 8

                  a.    Schaefer, Conway, and Green Personally Participated in the
                        Infringing Conduct that Was Purposefully Directed at
                        Washington ................................................... 8

                  b.    Bungie's Claims Arise Out of Schaefer's, Conway's, and
                        Green's Washington-Related Activities ........................... 12

                  c.    The Exercise of Jurisdiction Is Reasonable ................... 12

      B.    Bungie Sufficiently Pleads Copyright Infringement Against May ...................... 13

IV.   CONCLUSION ................................................................................... 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Adobe Sys. Inc v. Accoladian Res., LLC,*
5
   No. C 14-388 WHA, 2014 WL 3737979 (N.D. Cal. July 28, 2014) ......................................11

6

*Adobe Sys. Inc. v. Childers,*
   No. 5:10-cv-3571-JF/HRL, 2011 WL 566812 (N.D. Cal. Feb. 14, 2011)..............................11
7

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC,*
8
   666 F. Supp. 2d 1109 (C.D. Cal. 2009) ................................................................................11

9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009).............................................................................................................13
10

11

*AT & T v. Compagnie Bruxelles Lambert,*
   94 F.3d 586 (9th Cir. 1996) ...................................................................................................5
12

*Bell Atl. Corp. v. Twombly,*
13
   550 U.S. 554 (2007).............................................................................................................13

14

*Burger King Corp. v. Rudzewicz,*
15
   471 U.S. 462 (1985)..........................................................................................................8, 12

16

*CE Distrib., LLC v. New Sensor Corp.,*
   380 F.3d 1107 (9th Cir. 2004) .............................................................................................12
17

18

*Cook Prods., LLC v. Swanicke,*
   No. C16-1844 TSZ, 2017 WL 5665427 (W.D. Wash. Aug. 24, 2017)..................................13

19

*Cook v. United States,*
20
   No. CO09-0509-TSZ, 2009 WL 3707027 (W.D. Wash. Nov. 3, 2009)...................................6

21

*Corker v. Costco Wholesale Corp.,*
   ___ F. Supp. 3d ___, 2022 WL 457963 (W.D. Wash. Feb. 14, 2022) ....................8, 9, 11, 12

22

*Dig. Mentor, Inc. v. Ovivo USA, LLC,*
23
   No. C17-1935-RAJ, 2018 WL 6724765 (W.D. Wash. Dec. 21, 2018) ..................................13

24

*Dow Chem. Co v. Calderon,*
   422 F.3d 827 (9th Cir. 2005) .................................................................................................5
25

26

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) .............................................................................................13

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –ii

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Enterprises Int'l, Inc. v. Pasaban, S.A.*,
   No. 11-CV-5919-RBL, 2013 WL 526163 (W.D. Wash. Feb. 11, 2013)....................................6

5

*Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*,
   No. C12-2082JLR, 2013 WL 566949 (W.D. Wash. Feb. 13, 2013) .............................5, 7

6

7

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ........................................................................8

8

9

*Harbers v. Eddie Bauer, LLC*,
   No. C19-1012JLR, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) .....................................6

10

*JHR Mfg., LLC, v. Puffle, Inc.*,
   No. C20-6115 BHS, 2021 WL 2805333 (W.D. Wash. July 6, 2021)......................................9

11

12

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) .......................................................................15

13

14

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) .....................................................................12

15

*MetroPCS Georgia, LLC v. Metro Dealer Inc.*,
   No. C18-1476, 2019 WL 2409608 (W.D. Wash. June 7, 2019)...........................................5

16

17

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) .....................................................................14

18

19

*MOD Super Fast Pizza, LLC v. Chang*,
   No. C12-1359 TSZ, 2012 WL 12882910 (W.D. Wash. Nov. 26, 2012)..............................4, 5

20

*Mundi v. Union Security Life Insurance, Co.*,
   555 F.3d 1042 (2009)................................................................................6

21

22

*Pegram v. Herdrich*,
   530 U.S. 211 (2000).................................................................................6

23

24

*Perry v. Brown*,
   791 F. App'x 643 (9th Cir. 2019) ..................................................................8

25

*Philips Oral Healthcare, LLC v. Shenzhen Sincere Mold Tech. Co.*,
   No. 2:18-CV-01032-TSZ, 2019 WL 1572675 (W.D. Wash. Apr. 11, 2019)............................8

26

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

157237984.4

1
2

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

3
4

*Picciano v. Clark Cty.*,
    No. C20-6106-DGE, 2022 WL 1624717 (W.D. Wash. May 23, 2022) ..................................10

5

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ........................................................................................10, 14

6
7

*Take-Two Interactive Software, Inc. v. Zipperer*,
    No.18-cv-2608, 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018)..........................................5

8
9

*Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..........................................................................14

10

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ..........................................................................................13

11

**RULES**

12

Fed. R. Civ. P. 12(b)(2)..................................................................................................4, 13

13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## I.    INTRODUCTION

2       Defendants' Motion for Partial Dismissal of Plaintiff's First Amended Complaint (Dkt.

3   No. 40, hereafter "Motion") should be denied in its entirety.  This Court has personal jurisdiction

4   over Defendants David Schaefer, Jordan Green, and Jeffrey Conway for two, independently

5   sufficient reasons.  *First*, despite their best efforts, they cannot hide behind their corporate form.

6   Bungie has alleged specific facts in its amended complaint that demonstrate how Schaefer, Green,

7   and Conway personally participated in the infringing actions of their corporate counterpart,

8   Phoenix Digital Group LLC, including but not limited to their ownership and operation of the

9   AimJunkies.com website, their personal recruitment of developers for the purpose of developing

10  *Destiny 2* cheat software (the "Cheat Software), and their personal direction of the creation and

11  sale of the Cheat Software.  *Second*, Schaefer, Conway, and Green have necessarily admitted that

12  they consented to personal jurisdiction in this Court by accepting Bungie's LSLA in connection

13  with *Destiny 2*, both through their prior argument that certain of Bungie's claims *must* be referred

14  to mandatory arbitration *and* by failing to rebut Bungie's allegations in the amended complaint

15  that they accepted the LSLA by downloading and using *Destiny 2*.

16      May's motion to dismiss Bungie's copyright infringement claim against him for failure to

17  state a claim should similarly be denied.  Bungie has alleged facts more than sufficient to show

18  that May infringed Bungie's copyrights both as a *user* of the Cheat Software, and as a *developer*

19  of the same Cheat Software.  As this Court recently held in its order granting Bungie's motion for

20  a preliminary injunction, these allegations are sufficient to support a "strong showing that this

21  conduct likely constitutes infringement of [Bungie's] exclusive right to copy or reproduce" *Destiny*

22  *2*.  Dkt. No. 50 at p. 6; *see also id.* at 5–6.

23

24

25

26

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –1
157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## II.     FACTUAL BACKGROUND[1]

Bungie, headquartered in Bellevue, Washington, is the owner of the popular Destiny franchise including *Destiny 2*, an incredibly successful shared-world first-person action videogame.  Dkt. No. 34 ("Amend. Compl.") ¶ 1.  Defendants Phoenix Digital Group LLC ("Phoenix Digital"; together with Schaefer, Conway, and Green, the "Phoenix Digital Defendants") and its three managing members—Schaefer, Conway, and Green—operate the website AimJunkies.com, where they sell cheat software for dozens of video games, including *Destiny 2*.  *Id.* ¶ 2.  May was also involved in the development of the Cheat Software.  *Id.* ¶ 74.[2]

### A.     Defendants Used *Destiny 2* to Develop and Distribute the Cheat Software in Washington State

To develop the Cheat Software, the Phoenix Digital Defendants copied the *Destiny 2* software code that corresponds to the data structures for player positioning in *Destiny 2* and reverse engineered the software code for *Destiny 2*'s rendering functions.  *Id.* ¶¶ 77–83.  Additionally, when used by *Destiny 2* players, the Cheat Software code is injected into (i.e., run inside of) the *Destiny 2* game engine.  *Id.* ¶¶ 84–91.  This process extracts information to which the cheat user does not ordinarily have access, manipulates the data structures, and thereby creates an unauthorized derivative work of the *Destiny 2* software.  *Id.*

The Phoenix Digital Defendants—with the help of May—also updated the Cheat Software to ensure it operated with the data structures in Bungie's periodically updated *Destiny 2* software.  *Id.* ¶¶ 74, 92.  Every time the Phoenix Digital Defendants updated the Cheat Software to be compatible with Bungie's updated game software, they created a new copy of Bungie's data structures and software code, and then modified those data structures and that software code.  *Id.* ¶ 93.

---

[1] Unless otherwise noted, the below recitation of facts are alleged in Bungie's Amended Complaint (Dkt. No. 34).  Because Defendants' Motion to Dismiss concerns only personal jurisdiction for Conway, Schaefer, and Green, and Bungie's copyright infringement claim regarding May, Bungie only provides allegations from its Amended Complaint relevant to those issues.

[2] May, Schaefer, Conway, Green, Phoenix Digital and AimJunkies.com are collectively referred to as "Defendants".

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –2
157237984.4

1    Each of Phoenix Digital's three managing members—Schaefer, Conway, and Green—
2  contributed to, participated in, and directed the development and distribution of the Cheat
3  Software. *See id.* ¶¶ 59–73. Each operated and controlled the AimJunkies.com website, which
4  they used to promote, sell, and distribute the Cheat Software. *Id.* ¶ 71. Each accessed and utilized
5  the same email accounts and AimJunkies.com forum aliases to promote the distribution of the
6  Cheat Software and to recruit programmers to develop cheats for AimJunkies, including the Cheat
7  Software. *Id.* Schaefer also personally recruited cheat developers to work for Phoenix Digital and
8  AimJunkies.com for the express purpose of creating infringing video game software and hired
9  cheat developers to develop the Cheat Software on behalf of Phoenix Digital. *Id.* ¶¶ 65–66.

10    As managing members and officers of Phoenix Digital, Schaefer, Conway, and Green also
11  personally and directly benefited from the sale and distribution of the Cheat Software including by
12  sharing in the profits generated from the sale of the Cheat Software. *Id.* ¶ 72. To collect payments
13  for the sale of the Cheat Software, the Phoenix Digital Defendants used Conway's personal phone
14  number to accept the payments. *Id.* ¶ 69; *see also* Dkt. No. 25 (Conway's ECF registration with
15  phone number). They also directed employees and agents of Phoenix Digital to develop and
16  distribute the Cheat Software. *Id.* ¶ 73. Likewise, each of the managing members of Phoenix
17  Digital had the ability to control the distribution of the Cheat Software through the
18  AimJunkies.com website (which they owned and controlled) and had knowledge that such
19  software was being developed and distributed through the website. *Id.*

20    Like the Phoenix Digital Defendants, May also has a history of cheat development and
21  sale, including in connection with the Phoenix Digital Defendants. *Id.* ¶ 75. Between October 3,
22  2019 and May 13, 2021, May used this experience to help develop updates to the Cheat Software.
23  *Id.* ¶ 74. During that time, May contacted Bungie's servers numerous times at the direction of and
24  on behalf of the Phoenix Digital Defendants to help the Phoenix Digital Defendants update the
25  Cheat Software. *Id.*

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

In order to develop and distribute the Cheat Software, Schaefer, Conway, Green, and May each downloaded, installed, played, copied, or used *Destiny 2*. *Id.* ¶ 50.  Moreover, at the direction of Schaefer, Conway, and Green, members or agents of Phoenix Digital also downloaded, installed, played, copied, or used *Destiny 2*.  For instance, at the Phoenix Digital Defendants' direction, May used *Destiny 2* dozens of times, including by connecting to Bungie's *Destiny 2* servers to help the Phoenix Digital Defendants update the Cheat Software. *Id.* ¶ 74.  By downloading, installing, playing, copying, or using *Destiny 2*, users such as Defendants, accept the terms of Bungie's LSLA. *Id.* ¶ 47; Dkt. No. 34-1 (LSLA) at 18.  By agreeing to the terms of the LSLA, the Defendants "consent[ed] to the exclusive jurisdiction of the state and federal courts in King County, Washington."  Dkt. No. 34-1 (LSLA) at 27; *see also* Dkt. No. 33 (April 27, 22 Order) ("Plaintiff has sufficiently demonstrated that Aimjunkies and Phoenix Digital consented to personal jurisdiction and venue in this District when they accepted the LSLA[.]")

Additionally, Defendants distributed the Cheat Software in Washington—where Bungie is headquartered—conceding that roughly 3% of sales of the Cheat Software were to Washington State residents.  Declaration of David Schaefer ISO Defs.'s First Mot. to Dismiss (Dkt. No. 28-5) ("First Schaefer Decl.") ¶ 8; Amend. Compl. ¶ 21.  And each of the Phoenix Digital Defendants shared in the profits received from sales of the Cheat Software to Washington State residents.  Amend. Compl. ¶ 72.

### III.    ARGUMENT

Defendants assert that this Court lacks jurisdiction over Schaefer, Conway, and Green.  Mot. at 4–8.  May separately asserts that Bungie failed to state a claim for copyright infringement against him. *Id.* at 8–10.  Defendants are wrong on both counts.

### A.    The Court Has Personal Jurisdiction Over Schaefer, Conway, and Green

To defeat a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff "is only required to make a prima facie showing of jurisdictional facts." *MOD Super Fast Pizza, LLC v. Chang*, No. C12-1359 TSZ, 2012 WL 12882910, at *2 (W.D. Wash.

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –4
157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Nov. 26, 2012).  A plaintiff makes a prima facie showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction.  *Id.*  "In determining whether [a plaintiff] has met its burden of making a prima facie showing of jurisdictional facts, the court considers uncontroverted allegations in [a plaintiff's] complaint as true, and resolves conflicts between facts contained in the parties' affidavits in [the plaintiff's] favor."  *Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, No. C12-2082JLR, 2013 WL 566949, at *2 (W.D. Wash. Feb. 13, 2013) (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

This Court has personal jurisdiction over Schaefer, Conway, and Green because they agreed to jurisdiction in Washington through the forum-selection clause and because this Court has specific jurisdiction over them.

### 1.    Schaefer, Conway, and Green Consented to Jurisdiction in Washington

As this Court previously noted, lack of personal jurisdiction is a waivable defense, which can be waived by agreeing to a forum selection clause.  *See* April 27, 2022 Order (Dkt. No. 33) at p. 10–11 (*citing Dow Chem. Co v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005); *MetroPCS Georgia, LLC v. Metro Dealer Inc.*, No. C18-1476, 2019 WL 2409608, at *4 (W.D. Wash. June 7, 2019); *Take-Two Interactive Software, Inc. v. Zipperer*, No.18-cv-2608, 2018 WL 4347796, at *3–6 (S.D.N.Y. Aug. 16, 2018)).

Any party that downloads, installs, plays, copies, or uses *Destiny 2* accepts the terms of Bungie's LSLA.  Amend. Compl. ¶ 47; Dkt. No. 34-1 (LSLA) at 18.  Under the LSLA, that party "consents to the exclusive jurisdiction of the state and federal courts in King County, Washington." Dkt. No. 34-1 (LSLA) at 27.

By arguing that certain claims were required to be referred to mandatory arbitration under the LSLA, Schaefer, Conway, Green, and May each necessarily admitted their acceptance of and are estopped from asserting they did not agree to the LSLA and its Washington forum-selection clause.  In their First Motion to Dismiss, all of the Defendants collectively argued that certain

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –5

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    claims in Bungie's original complaint *must* be referred to mandatory arbitration and that the terms

2    of the LSLA "must be enforced as written." Dkt. No. 28 at p. 12.  The LSLA, which has force and

3    effect only if it is a binding contract between two entities, could be used to *compel* arbitration only

4    if all of the defendants, in fact, agreed to be bound by the terms of the LSLA.  *Harbers v. Eddie*

5    *Bauer, LLC*, No. C19-1012JLR, 2019 WL 6130822, at *4 (W.D. Wash. Nov. 19, 2019)

6    ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

7    dispute which he has not agreed to so submit.").  All of the Defendants, including Schaefer

8    Conway, and Green are now bound by their prior representations that the LSLA controlled, despite

9    their current representations that they did not agree to those terms.  *Cook v. United States*, No.

10   CO09-0509-TSZ, 2009 WL 3707027, at *5 (W.D. Wash. Nov. 3, 2009) ("The rule of judicial

11   estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and

12   then relying on a contradictory argument to prevail in another phase.'") (quoting *Pegram v.*

13   *Herdrich*, 530 U.S. 211, 227 n.8 (2000)); *Enters. Int'l, Inc. v. Pasaban, S.A.*, No. 11-CV-5919-

14   RBL, 2013 WL 526163, at *4 (W.D. Wash. Feb. 11, 2013) ("Equitable estoppel 'precludes a party

15   from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that

16   contract imposes' …") (quoting *Mundi v. Union Sec. Life Ins., C*o., 555 F.3d 1042 (2009)).

17       Courts in the Ninth Circuit, such as the court in *Enters. Int'l, Inc. v. Pasaban, S.A.*,

18   commonly apply equitable estoppel to enforce arbitration provisions of a contract where a party

19   claims the benefits of a contract, even one of the parties is a non-signatory.  *Enters. Int'l, Inc.*,

20   2013 WL 526163, at *4.  The same reasoning applies in reverse:  where a party claims the benefit

21   of an arbitration provision in a contract, they must also be bound by the remaining provisions of

22   that contract.  Defendants cannot cherry-pick LSLA clauses to enforce or not enforce—Schaefer,

23   Conway, and Green agreed to be bound by the LSLA, and that includes its forum selection clause.

24   Therefore, by choosing to enforce the arbitration clause of the LSLA, Schaefer, Conway, and

25   Green have conceded they are bound by the remainder of the LSLA.

26

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –6

157237984.4

1    Defendants Schaefer, Conway, and Green also concede that they are bound by the terms of

2    the LSLA.  In its Amended Complaint, Bungie alleges that each of Schaefer, Conway, and Green

3    downloaded, installed, played, copied, and used *Destiny 2* in connection with their creation and

4    distribution of the Cheat Software, and are thus bound by the LSLA and its forum selection clause.

5    Amend Compl. ¶¶ 20, 49–50.  Bungie also describes, in detail, how these individual defendants

6    used *Destiny 2*.  *Id.* ¶¶ 77–98; *see also* Dkt. No. 36 ("Kaiser Decl.") ¶¶ 10–22.  Schaefer, Conway,

7    and Green largely do not rebut these allegations.  In his declaration, Conway merely claims that

8    he did not "play" or "otherwise participate[]" in games developed by Bungie.  Declaration of

9    Jeffrey Conway (Dkt. No. 40-1) ("Conway Decl."). ¶ 4.  Schaefer includes a similar claim, except

10   he asserts that he did not play or participate in games developed by *Phoenix Digital*.[3] Declaration

11   of David Schaefer ISO Defs.'s Second Mot. to Dismiss (Dkt. No. 40-3) ("Second Schaefer Decl.")

12   ¶ 4.  And while Schaefer, Conway and Green assert that they did not download the LSLA, they do

13   not make the same assertions regarding *Destiny 2*.  Conway Decl. ¶ 5; Second Schaefer Decl. ¶ 5;

14   Declaration of Jordan Green (Dkt. No. 40-2) ("Green Decl.") ¶ 2.  Notably, Schaefer, Conway,

15   and Green do not rebut Bungie's allegations that they downloaded and installed *Destiny 2*, that

16   they copied *Destiny 2*, and that they used *Destiny 2*.  In fact, Green does not even deny that he

17   played *Destiny 2*.  *See generally*, Green Decl.  Thus, Bungie's allegations that Schaefer, Conway,

18   and Green downloaded, installed, copied, and used *Destiny 2*, and the details of how they did so

19   (Amend. Compl. ¶¶ 10, 48–51, 68–98) are controlling and they are bound by the LSLA.  *Fluke*

20   *Elecs.*, 2013 WL 566949, at *2 (On a motion to dismiss for lack of personal jurisdiction, "the court

21   considers uncontroverted allegations in [the plaintiff's] complaint as true, and resolves conflicts

22   between facts contained in the parties' affidavits in [the plaintiff's] favor.").

23

24

25

26       [3] It is unclear if Schaefer intended to indicate that he did not play or participate in games developed by
Bungie, but regardless, the following analysis remains the same and Schaefer is bound by the LSLA.

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –7

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2
### 2.      Schaefer, Conway, and Green Directed and/or Personally Participated in the Infringing Activities of Phoenix Digital

Separate from Schaefer, Conway, and Green's agreement to the forum-selection clause in

the LSLA, personal jurisdiction in this case is also proper because (1) Schaefer, Conway, and

Green purposefully directed their activities at Washington, (2) the lawsuit arises out of or relates

to their forum-related activities, and (3) the exercise of jurisdiction is reasonable.   *Glob.*

*Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th

Cir. 2020).   Where a plaintiff establishes the first two elements, the defendants must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable.   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### a.      Schaefer, Conway, and Green Personally Participated in the Infringing Conduct that Was Purposefully Directed at Washington

To satisfy the first element—"purposeful direction"—Bungie need only allege that

Schaefer, Conway, and Green "(1) committed an intentional act, (2) expressly aimed at the forum

state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."   *Corker*

*v. Costco Wholesale Corp.*, ___ F. Supp. 3d ___, 2022 WL 457963, at *2 (W.D. Wash. Feb. 14,

2022); *see also See Perry v. Brown*, 791 F. App'x 643, 646 (9th Cir. 2019).   "The 'intentional act'

prong can be met by operating an interactive website" such as AimJunkies.com.   *Corker*, 2022

WL 457963, at *2.   "The 'expressly aimed' prong can be met by conducting business over the

internet and selling products to forum residents."   *Id.* (holding that "purposeful direction" element

was satisfied where defendant sold products through online website to Washington residents).

And, in cases of copyright and trademark infringement, the "causing harm" prong is satisfied

where the copyright or trademark owner is located in the forum.   *See Philips Oral Healthcare,*

*LLC v. Shenzhen Sincere Mold Tech. Co.*, No. 2:18-CV-01032-TSZ, 2019 WL 1572675, at *4

(W.D. Wash. Apr. 11, 2019) ("In a trademark infringement action, it is foreseeable that harm

suffered by the mark owner will be felt in its home state. … As Philips Oral Healthcare, LLC's

principal place of business is in Bothell, Washington … the Court finds it is foreseeable that it

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –8

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   would be harmed here."); *JHR Mfg., LLC, v. Puffle, Inc.*, No. C20-6115 BHS, 2021 WL 2805333,

2   at *4 (W.D. Wash. July 6, 2021) (foreseeable harm prong of jurisdictional test satisfied where

3   plaintiff alleged trademark infringement and had its principal place of business in Washington).

4          As shown in the uncontroverted allegations in Bungie's amended complaint and

5   Defendants' own declaration testimony, Schaefer, Conway, and Green participated in creating,

6   advertising and distributing the Cheat Software—which was sold to Washington residents and

7   infringed the intellectual property rights of a Washington resident—and financially benefited from

8   those sales.

9          First, it is undisputed that Phoenix Digital advertised, sold, and distributed the Cheat

10  Software into Washington.  Amend. Compl. ¶¶ 2, 59; First Schaefer Decl. ¶¶ 7–9; Second Schaefer

11  Decl. ¶ 11.

12         Second, Schaefer, Conway, and Green participated in the creation of and decision to sell

13  and distribute the Cheat Software, including into Washington.  Amend. Compl. ¶¶ 59–76.  At all

14  relevant times, Schaefer, Conway, and Green were Officers and Members of Phoenix Digital and

15  thus had knowledge and control of the activities of Phoenix Digital, including its sales of the Cheat

16  Software.  Amend. Compl. ¶ 4; Conway Decl. ¶ 2;[4] Second Schaefer Decl. ¶ 1; Green Decl. ¶ 1.

17  Likewise, Schaefer, Conway, and Green each had ownership and control of the AimJunkies.com

18  website that was used to distribute the Cheat Software to Washington residents.  Amend. Compl.

19  ¶ 62.  And the infringing actions of Phoenix Digital were done at the express direction of Schaefer,

20  Conway, and Green.  *Id.* ¶¶ 64–73.  Schaefer, Conway, and Green's knowledge, control, and

21  direction of Phoenix Digital's infringing actions, which were targeted towards, in part, Washington

22  consumers and which infringed a Washington resident's copyrighted works, is sufficient to

23  establish "purposeful direction" for jurisdictional purposes.  *See Corker*, 2022 WL 457963, at *4.

24

25         [4] Conway states that he was an Officer and Director of Phoenix Digital prior to March 7, 2021.  Conway
    Decl. at ¶ 2.  Solely for purposes of this motion, Bungie does not contest this fact.  The time period during which Mr.
26  Conway admits to being an Officer and Director of Phoenix Digital includes the period during which Phoenix Digital
    sold the Cheat Software.  *See* Amend. Compl. ¶¶ 59–62.

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –9

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    In addition to controlling and directing Phoenix Digital's infringement, Schaefer, Conway,

2   and Green also personally participated in the infringement.  Schaefer recruited and hired software

3   developers for the specific purpose of copying game engine structures and reverse engineering

4   new video games like *Destiny 2*, and specifically to create the Cheat Software.  Amend. Compl.

5   ¶¶ 5, 65, 66, 71.  Conway's personal residence is the primary place of business of Phoenix Digital,

6   such that official correspondence regarding the business is directed to his home and the business

7   of Phoenix Digital—which primarily consists of selling cheat software, including the Cheat

8   Software—was conducted at his home too. *Id.*¶ 69.  Conway also used his personal phone number

9   to accept payments for the Cheat Software on PayPal sold through AimJunkies.com. *Id.*; *see also*

10  Dkt. No. 25.  And each of Schaefer, Conway, and Green used and controlled the same email

11  account, phoenixdigitalgroup2012@gmail.com, to recruit developers to create the Cheat Software

12  and conduct the infringing business of Phoenix Digital.  Amend. Compl.¶ 71.  They also each

13  received a share of profits from the sale of the Cheat Software, including a share of the sales to

14  consumers in Washington. *Id.* at ¶ 72.

15    Instead of rebutting any of these specific allegations, Schaefer, Conway, and Green ask the

16  Court to ignore facts alleged by Bungie "on information and belief."  *See* Mot. at 7–8.  Their

17  request, however, is contrary to established Ninth Circuit law.  "The *Twombly* pleading

18  standard…does not prevent a plaintiff from pleading facts alleged upon information and belief

19  where the facts are peculiarly within the possession and control of the defendant or where the belief

20  is based on factual information that makes the inference of culpability plausible." *Soo Park v.*

21  *Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *see also Picciano v. Clark Cty.*, No. C20-6106-

22  DGE, 2022 WL 1624717, at *5 (W.D. Wash. May 23, 2022) (*quoting Soo Park*, 851 F.3d at 928).

23    So too here.  Many of Bungie's allegations made "on information and belief" are supported

24  by specific facts not alleged on information and belief.  And, of course, until Defendants respond

25  to discovery requests, only Defendants have possession of certain information regarding their own

26  infringement. *See, e.g.*, Amend. Compl. ¶¶ 72, 73.  These allegations therefore should not be

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –10

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   ignored, and the Court should find that Bungie has satisfied its obligation to make a prima facie

2   showing that Schaefer, Conway, and Green personally participated in and/or directed the

3   infringing activity of Phoenix Digital giving rise to personal jurisdiction.

4       Schaefer, Conway, and Green also attempt to shield themselves from this Court's

5   jurisdiction by hiding behind their company Phoenix Digital.  But their respective status as current

6   or former corporate officers of Phoenix Digital does not insulate them from personal jurisdiction

7   in Washington.  As explained above, Phoenix Digital's contacts with Washington are attributable

8   to Schaefer, Conway, and Green.  Courts regularly exercise personal jurisdiction over corporate

9   officers where the plaintiff demonstrates that the officer is personally liable for the wrongdoing in

10  the forum. *See Corker*, 2022 WL 457963, at *2.  A corporate officer or director is personally liable

11  for all torts which he authorizes or directs, or in which he participates, notwithstanding that he

12  acted as an agent of the corporation and not on his own behalf. *Id.*  And so a "corporate officer's

13  contact on behalf of a corporation is sufficient to subject the officer to personal jurisdiction where

14  the officer is a primary participant in the alleged wrongdoing or had control of, and direct

15  participation in the alleged activities." *Id.* (quoting *Allstar Mktg. Grp., LLC v. Your Store Online,*

16  *LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (collecting cases)); *see also Adobe Sys. Inc v.*

17  *Accoladian Res., LLC*, No. C 14-388 WHA, 2014 WL 3737979, at *5 (N.D. Cal. July 28, 2014)

18  (denying motion to dismiss individual defendant where individual was doing the business of the

19  corporate defendant and the associated websites, the individual defendant profited from the

20  infringing activity, and the individual was listed on domain registration records as the contact for

21  the website); *Adobe Sys. Inc. v. Childers*, No. 5:10-cv-3571-JF/HRL, 2011 WL 566812, at *6

22  (N.D. Cal. Feb. 14, 2011) (denying motion to dismiss individual defendant who was the president

23  of the LLC defendant, participated transactions of the LLC, and made important decisions

24  regarding the LLC's business).

25

26

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –11

157237984.4

1

2

### b.    Bungie's Claims Arise Out of Schaefer's, Conway's, and Green's Washington-Related Activities

The Ninth Circuit employs a "but for" causation analysis to determine whether claims arose out of defendants' forum-related contacts. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "In trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied." *Corker*, 2022 WL 457963, at *4 (cleaned up).  In this case, but for Schaefer's, Conway's, and Green's personal participation in and direction of the creation and distribution of the Cheat Software, including into Washington (First Schaefer Decl. ¶ 8), Bungie, itself a Washington resident, would not have suffered harm.  Thus, this element is satisfied. *Id.*

### c.    The Exercise of Jurisdiction Is Reasonable

Because Bungie has met the first two elements of the specific personal jurisdiction test, to avoid jurisdiction, Schaefer, Conway, and Green must present a "compelling case" that other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477.  The Ninth Circuit considers seven factors in this analysis, and none weigh in favor of Schaefer, Conway, or Green.[5]  Schaefer, Conway, and Green have personally participated in the infringement of a forum resident's intellectual property through the creation and sale to Washington residents of the Cheat Software.  Schaefer, Conway, and Green, themselves in different states, would suffer no greater burden here than either (a) litigating together in a different forum, or (b) each individual defendant litigating this case in their home state.  They have not identified a conflict with the sovereignty of their own states, and Washington undoubtedly has an interest in adjudicating a dispute focused on infringement of a Washington-based corporation's intellectual property sold into Washington. Litigating this case in Washington with all Defendants in a single forum is also the most efficient

---

[5] These factors are: (1) the extent of defendants' purposeful interjection into the forum state's affairs; (2) the burden on defendants of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   judicial resolution of this matter, as Bungie's evidence of infringement and intellectual property
2   ownership is located in Washington, and the claims with respect to each defendant will almost
3   certainly entail overlapping if not identical evidence.  Although alternative forums may exist, no
4   forum is more convenient for all Defendants in this case.

5       Bungie has therefore shown that Schaefer, Conway, and Green are subject to personal
6   jurisdiction in Washington, and their motion to dismiss based on lack of personal jurisdiction
7   should be denied.

8   **B.   Bungie Sufficiently Pleads Copyright Infringement Against May**

9       On a motion to dismiss under Rule 12(b)(6), a plaintiff need only allege facts sufficient to
10  state a claim for relief that is plausible on its face.  *Cook Prods., LLC v. Swanicke*, No. C16-1844
11  TSZ, 2017 WL 5665427, at *1 (W.D. Wash. Aug. 24, 2017) (quoting *Bell Atl. Corp. v. Twombly*,
12  550 U.S. 554, 568 (2007)).  "A claim has facial plausibility when the pleaded factual content allows
13  a court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
14  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a Rule 12(b)(6) motion, the court must
15  accept the complaint's factual allegations as true and draw "all reasonable inferences in favor of
16  the nonmoving party."  *Id.* (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).
17  To state a direct copyright infringement claim against May, Bungie need only allege (1) ownership
18  of a valid copyright and (2) that May violated Bungie's exclusive rights under the Copyright Act.
19  *Dig. Mentor, Inc. v. Ovivo USA, LLC*, No. C17-1935-RAJ, 2018 WL 6724765, at *9 (W.D. Wash.
20  Dec. 21, 2018) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

21      On the first element, May does not dispute Bungie's ownership of the four copyrights
22  identified in the amended complaint.  Amend. Compl. ¶ 37.

23      On the second element, Bungie alleges that May violated Bungie's rights to copy, create
24  derivative works, and display its *Destiny 2* Copyrights by participating in both the development of
25  the Cheat Software and his use of the Cheat Software.  *See id.* ¶ 74.  As Bungie details at length,
26  both of these activities require infringement of the *Destiny 2* Copyrights.  For example, creation

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –13
157237984.4

of the ESP, AIMBOT, and OPK features requires that the developer copy the *Destiny 2* software code that corresponds to certain data structures and reverse-engineer certain functions. *Id.* ¶¶ 83, 87, 90; Kaiser Decl. ¶¶ 10–22. This was an infringement of Bungie's exclusive rights as a copyright owner. *See Ticketmaster L.L.C. v. Prestige Entm't West, Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) (copying); *see also* Dkt. No. 50 (holding that Bungie was likely to succeed on copyright infringement claims).

Bungie further alleges that use of the Cheat Software by a cheat user requires the injection of code into the *Destiny 2* game engine, thus creating an unauthorized derivative work based on the *Destiny 2* Copyrights. Amend. Compl. ¶¶ 85, 88, 91. This, too, is an infringement of Bungie's rights. *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998); *see also* Dkt. No. 50 at p. 6 n.5. And cheat users that use the ESP feature create a modified display of the *Destiny 2* audiovisual output, thus infringing Bungie's display right. *See Micro Star*, 154 F.3d at 1112. As alleged by Bungie, May personally participated in both the development and use of the Cheat Software. Specifically, Bungie identified 83 unique accounts connected to May that contacted Bungie's servers in a manner consistent with the use of the Cheat Software or the operation of reverse-engineering tools that interact with the *Destiny 2* game engine. Amend. Compl. ¶ 74.

As with the other Defendants, May also attempts to summarily dismiss Bungie's allegations made "on information and belief," but these allegations should not be ignored because Bungie has alleged sufficient factual information that makes these inferences plausible. *See Soo Park*, 851 F.3d at 928. In addition to the 83 unique accounts connected to May that were detected on Bungie's servers in a manner consistent with the use and development of the Cheat Software, Bungie's allegation that this was done in support of Phoenix Digital was supported by (a) the fact that May used a computer file associated with Phoenix Digital while contacting Bungie's servers in the aforementioned instances, and (b) May's history of cheat software distribution and development on *at least one other website owned by Phoenix Digital* (mombotcheats.com), having identified a PayPal account associated with May that was used in connection with the sale of cheat

PLAINTIFF'S OPP'N TO DEFENDANTS'
PARTIAL MOT. TO DISMISS
(No. 2:21-cv-811) –14

157237984.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1     software on that website.  Amend. Compl. ¶¶ 63, 74, 75.  Further, May's own Bungie account has

2     been banned by Bungie for using the Cheat Software and operating reverse-engineering tools, and

3     other video game accounts that appear to be connected to May are also connected to AimJunkies.

4     *Id.* ¶ 76.  Bungie has alleged more than enough facts to support its allegation of May's participation

5     in the development and use of the Cheat Software to show that he has infringed the *Destiny 2*

6     Copyrights.

7          Finally, May's overbroad mischaracterization of *MDY Indus., LLC v. Blizzard Entm't, Inc.*,

8     629 F.3d 928 (9th Cir. 2010) does not help him avoid liability here.  *MDY* does not stand for the

9     broad proposition for which May cites it for; namely, that using cheat software is not copyright

10    infringement.  *See* Mot. at 3, 9.  As relevant here, the *MDY* court was deciding whether a party's

11    breach of a specific licensing provision in that case was properly characterized as a breach of

12    contract claim, or instead gave rise to a copyright infringement claim.  *MDY Indus.*, 629 F.3d at

13    939.  The difference turned on whether the provision, as interpreted under applicable state law,

14    was a "condition" (the breach of which would give rise to copyright infringement) or a "covenant"

15    (the breach of which is a breach of contract).  *Id.*  Under even the most expansive interpretation,

16    the court held that under Delaware law as applied to Blizzard's Terms of Use, given the specific

17    facts of that case (concerning automated bot software), the Terms of Use's prohibition against

18    using bots or unauthorized software in Blizzard's video game was a covenant, not a condition, and

19    thus when a bot user uses the defendant's bot software in Blizzard's video game licensed pursuant

20    to Blizzard's Terms of Use, the proper claim is breach of contract, not copyright infringement.  *Id.*

21    at 939–41.

22          As explained in detail above, Bungie has alleged with specificity May's acts that give rise

23    to Bungie's claim for copyright infringement against him, and his motion to dismiss should be

24    denied.

25                    **IV.    CONCLUSION**

26          Bungie therefore respectfully requests that the Motion be denied in its entirety.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2    Dated: July 11, 2022                   By: /s/ William C. Rava

3                                               William C. Rava, Bar No. 29948
                                                Jacob P. Dini, Bar No. 54115
4                                               **Perkins Coie LLP**
                                                1201 Third Avenue, Suite 4900
5                                               Seattle, Washington 98101-3099
                                                Telephone: +1.206.359.8000
6                                               Facsimile: +1.206.359.9000
                                                WRava@perkinscoie.com
7                                               JDini@perkinscoie.com

8                                               *Attorneys for Plaintiff Bungie, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPP'N TO DEFENDANTS'                    **Perkins Coie LLP**
PARTIAL MOT. TO DISMISS                         1201 Third Avenue, Suite 4900
(No. 2:21-cv-811) –16                           Seattle, Washington 98101-3099
                                                   Phone: +1.206.359.8000
157237984.4                                          Fax: +1.206.359.9000