THE HONORABLE THOMAS S. ZILLY

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

BUNGIE, INC.,

No. 2:21-cv-811

10

Plaintiff,

**PLAINTIFF BUNGIE, INC.'S MOTION TO DISMISS PHOENIX DIGITAL GROUP, LLC'S AND JAMES MAY'S COUNTERCLAIMS WITH PREJUDICE**

11

v.

12

AIMJUNKIES.COM; PHOENIX DIGITAL GROUP, LLC; DAVID SCHAEFER; JORDAN GREEN; JEFFREY CONWAY AND JAMES MAY,

13

NOTE ON MOTION CALENDAR: October 28, 2022

14

Defendants.

ORAL ARGUMENT REQUESTED

15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1

**TABLE OF CONTENTS**

2
                                                                                                    **Page**

3   I.      INTRODUCTION ..................................................................................... 1

4   II.     STATEMENT OF FACTS ....................................................................... 1

5           A.      Procedural History ....................................................................... 1

6           B.      Bungie, the LSLA, and the Privacy Policy ................................. 3

7           C.      Defendants' Allegations ............................................................... 4

8   III.    ARGUMENT .......................................................................................... 5

9           A.      Legal Standard ............................................................................. 5

10          B.      May's Computer Fraud and Abuse Act Claims Should Be Dismissed ................. 6

11                  1.      May Does Not Allege That He Suffered Loss ............................ 7

12                  2.      Bungie Did Not Access May's Computer Without Authorization ............ 8

13          C.      May's and Phoenix Digital's DMCA Anti-Circumvention Claims Should
                    Be Dismissed ............................................................................... 10
14

15          D.      Phoenix Digital's Breach of Contract Claim Should Be Dismissed .................... 12

            E.      Defendants' Claims Should Be Dismissed with Prejudice ..................... 13
16

17  IV.     CONCLUSION ....................................................................................... 14

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
5
*Allen v. City of Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ..................................................13

6
7
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................5, 10, 12

8
*Bailey-Medwell v. Hartford Life & Accident Ins. Co.*,
   No. C17-1697-MJP, 2018 WL 5264335 (W.D. Wash. Oct. 23, 2018)...................12

9
10
*Bardy v. Cardiac Science Corp.*,
   No. C13-0778JLR, 2014 WL 294526 (W.D. Wash. Jan. 27, 2014) ........................12

11
12
*Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*,
   No. C13–1300–MJP, 2013 WL 6979555 (W.D. Wash. Oct. 31, 2013), *aff'd*,
   655 F. App'x 564 (9th Cir. 2016) ..................................................5, 6

13
14
*Courser v. Mich. House of Representatives*,
   831 F. App'x 161 (6th Cir. 2020) ..................................................8

15
*Crabtree v. Bowers*,
   102 Wash. App. 1017 (Wash. Ct. App. 2000) (unpublished)................................12

16
17
*D&J Optical, Inc. v. Wallace*,
   No. 1:14cv658-MHT, 2015 WL 1474146 (M.D. Ala. Mar. 31, 2015)...................11

18
19
*FMHUB, LLC v. MuniPlatform, LLC*,
   No. 19-15595 (FLW), 2021 WL 1422873 (D.N.J. Apr. 15, 2021)...................10, 11

20
*FMHUB, LLC v. MuniPlatform, LLC*,
   No. 19-15595 (FLW) (DEA), 2020 WL 4581828 (D.N.J. Aug. 10, 2020) ...........11

21
22
*Ford Motor Co. v. Autel US Inc.*,
   No. 14-13760, 2016 WL 3569541 (E.D. Mich. July 1, 2016)................................11

23
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004) ..................................................11

24
25
*Nat. Prods. Inc. v. Innovative Intelligent Prods. LLC*,
   No. 2:20-cv-00428-DGE, 2022 WL 579339 (W.D. Wash. Feb. 25, 2022)...........14

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1

**<u>TABLE OF AUTHORITIES</u>**
(continued)

2

3

**Page(s)**

4

*nexTUNE, Inc. v. McKinney*,
   No. C12-1974 TSZ, 2013 WL 2403243 (W.D. Wash. May 31, 2013)............................6, 7, 9

5

6

*Philips N. Am., LLC v. Summit Imaging Inc.*,
   No. C19-1745JLR, 2020 WL 1515624 (W.D. Wash. Mar. 30, 2020)....................................10

7

*Shipley v. Trans Union Corp.*,
   No. C04-2560P, 2006 WL 1515594 (W.D. Wash. May 25, 2006) .........................................14

8

9

*Singleton v. Nielsen*,
   No. C03-2372RSM, 2006 WL 8454922 (W.D. Wash. June 26, 2006) ...................................14

10

*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ...........................................................................5, 6

11

12

*United Fed'n of Churches, LLC v. Johnson*,
   ___ F. Supp. 3d. ___, 2022 WL 1128919 (W.D. Wash. Apr. 15, 2022) ................................8

13

14

*Vernon v. Qwest Commc'n Int'l, Inc.*,
   643 F. Supp. 2d 1256 (W.D. Wash. 2009)............................................................................5

15

16

*Walsh v. Microsoft Corp.*,
   63 F. Supp. 3d 1312 (W.D. Wash. 2014)..............................................................................8

17

*Wesch v. Yodlee, Inc.*,
   No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021)......................................8

18

19

**STATUTES**

20

17 U.S.C. § 1201(a)(1)(A) .............................................................................................................10

21

18 U.S.C. § 1030 .............................................................................................................................7

22

18 U.S.C. § 1030(a)(2)(C) ...............................................................................................................8

23

18 U.S.C. § 1030(a)(4) .....................................................................................................................8

24

18 U.S.C. § 1030(a)(5)(c) ................................................................................................................8

25

**RULES**

26

Fed. R. Civ. P. 11(b) ........................................................................................................................2

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

**<u>TABLE OF AUTHORITIES</u>**<br>**(continued)**

**Page(s)**

Fed. R. Civ. P. 11(c) ................................................................................2

Fed. R. Civ. P. 12(a)(4)(A) ........................................................................2

Fed. R. Civ. P. 12(b)(6)......................................................................1, 4, 5, 6

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

# I.    INTRODUCTION

Phoenix Digital Group LLC's ("Phoenix Digital") and James May's (collectively, "Counterclaimants") counterclaims are legally deficient and factually unsupported.  In separate emails (which were deleted soon after sending), David Schaefer, a managing member of Phoenix Digital, admits the counterclaims are an attempt to weaponize the use of allegations "on information and belief" in order to "get away with" pleadings they know are "not true."  These bad faith allegations are but the latest in a string of violations of the Local and Federal Rules, including the timing of the pleading itself which comes two weeks after the deadline.  The counterclaims are also bereft of the necessary factual allegations, each one missing allegations of key elements, and should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

# II.    STATEMENT OF FACTS

## A.    Procedural History

Defendants[1] admit that they sold and distributed the cheat software at issue for Bungie's *Destiny 2* video game (the "Cheat Software").  Dkt. No. 63 (hereafter "Counterclaims") ¶ 33.  The Cheat Software infringes Bungie's copyrights, gives an unfair advantage to users of the cheat, violates legitimate users' expectations of fair play, and causes significant harm to both Bungie and the *Destiny 2* player base.  Dkt. No. 34 ("Amend. Compl.") ¶ 2; Dkt. No. 36 ("May 2022 Kaiser Decl.") ¶¶ 10–23.

Given Defendants' infringing conduct, and to protect itself and its player base, Bungie filed the present action naming Defendants and alleging claims of trademark infringement and copyright infringement.  Dkt. No. 1.  On July 1, 2022, this Court granted Bungie's Motion for Preliminary Injunction and held that "Bungie has made a strong showing that [Defendants'] conduct likely

---

[1] "Defendants" shall refer collectively to all Defendants in this action: AimJunkies.com, Phoenix Digital, David Schaefer, Jordan Green, Jeffrey Conway, and James May.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    constitutes infringement of its exclusive right to copy or reproduce Destiny 2."  Dkt. No. 50

2    (Preliminary Injunction) p. 6.

3           Now, *over 18 months after Bungie initiated this action*, Counterclaimants belatedly raise

4    several baseless and patently false counterclaims.[2]  This late filing follows a series of actions that

5    flout the Local and Federal Rules.  In fact, this is the *third* late filing by Defendants in response to

6    Bungie's pleadings.  The first came after Defendants were granted *four* extensions of time to

7    respond to the complaint; they then defaulted.  *See* Dkt. Nos. 11, 12, 15, 17 (Unopposed Motions

8    for Extension); Dkt. No. 18 (Mot. for Default).  Next, after Bungie filed its First Amended

9    Complaint, Defendants missed the deadline to respond to *that* pleading and belatedly filed a

10   Second Motion to Dismiss.  *See* Dkt. No. 38; Dkt. No. 40 (Second Motion to Dismiss).  In denying

11   the Second Motion to Dismiss, and in response to Defendants' failure to comply with another

12   Local Rule, the Court directed Defendants to "review and comply with all Local Civil Rules."

13   Dkt. No. 61 (Order Denying Defendants' Second Motion to Dismiss) p. 3 n.5.  Just a month prior

14   to that Order, Defendants failed to "comply with LCR 26(c)(1)" in regard to a separate motion,

15   and the Court "REMINDED [Defendants] of their obligation to comply with all local court rules."

16   Dkt. No. 55 (Minute Order) p. 1 n.1.

17          Finally, Defendants' most recent filing—their Answer and Counterclaims—comes two

18   weeks after the deadline to file a response to Bungie's First Amended Complaint and three months

19   after discovery opened.[3]  By no later than September 8, Defendants knew they had missed this

20   deadline—because Bungie's counsel reminded them—yet they still waited to file their Answer

21   and Counterclaims for another week.  *See* Declaration of Jacob Dini ("Dini Decl."), Ex. 1

22   (September 8, 2022 email to Phil Mann).  Defendants did not request leave for the late filing nor

23   provide any explanation for it.

24

25          [2] Bungie believes that several, if not all, of Counterclaimants' counterclaims were brought in violation Fed.
R. Civ. P. 11(b), and Bungie expressly reserves the right to seek sanctions under Fed. R. Civ. P. 11(c).

26          [3] After Defendants' Second Motion to Dismiss was denied on August 18, 2022, Defendants' Answer to
Bungie's First Amended Complaint was due fourteen days later on September 1, 2022.  Fed. R. Civ. P. 12(a)(4)(A).

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.**     **Bungie, the LSLA, and the Privacy Policy**

Bungie's *Destiny 2* video game is a successful shared-world first-person action video game. Originally released in September 2017, *Destiny 2* is now a free-to-play game with paid expansions, continually refreshed downloadable content ("DLC"), and an estimated player base of over 30 million players.  Dkt. No. 34 (hereafter, "Amend. Compl.") ¶¶ 26–27.  Among other DLC, Bungie released its recent expansions, *Destiny 2: Beyond Light*, on November 10, 2020.  *Id.* ¶ 27.  Bungie is the owner of all rights, title, and interest in the copyrights in *Destiny 2* and *Destiny 2: Beyond Light*,[4] including its computer software and the audiovisual works that software creates, which are the subject of four U.S. Copyright registrations.  *Id.* ¶ 37, Ex. 1–4.

Any player who downloads, installs, plays, copies, or uses *Destiny 2* must accept the terms of Bungie's Limited Software License Agreement ("LSLA").  *Id.* ¶ 47; *see also* Dkt. No. 63-1 (copy of the LSLA attached to Defendants' answer and counterclaims).  By accepting the LSLA, players also agree to be bound by Bungie's Privacy Policy, expressly incorporated by reference in the LSLA.  Dkt. No. 63-1 (LSLA) p. 2; Declaration of Edward Kaiser ("Kaiser Decl.") Ex. 1 (Bungie's Privacy Policy).  James May is one of the players who accepted the LSLA, and thus also accepted the Privacy Policy.  Counterclaims ¶¶ 4–5.  Under the terms of the Privacy Policy, "By using the Bungie Services, you consent to the data practices described in this Privacy Statement." Kaiser Decl., Ex. 1.  The Privacy Policy then describes how information is collected by Bungie, as consented to by *Destiny 2* players, including that Bungie "collect[s] Personal Information about you and your use of the Bungie Services via automated means, such as through cookies, web beacons and similar technologies," including information such as:

- Bungie Services Use Data, including information about your use of the Bungie Services, the pages and content that you view, the referring and existing pages, your access times, the links you click, and other actions taken within the Bungie Services.

---

[4] For ease of reference, *Destiny 2* and *Destiny 2: Beyond Light* are referred to hereafter as "*Destiny 2*".

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

- Device Data, including information regarding your device, such as device type, operating system type, browser type, device regional and language settings, IP address, and device ID (such as IDFA or AAID).

*Id.* ¶ 2(b).  This information is collected by Bungie to, among other reasons, "prevent fraudulent use of the Bungie Services," "enforce our Terms of Use [and] our legal rights," and "prevent or address potential or actual injury or interference with our rights, property, operations, users or others who may be harmed or may suffer loss or damage." *Id.* ¶ 2(c).

## C.    Defendants' Allegations

Defendants offer scant support for their counterclaims.  Setting aside their simple recitation of the elements of the underlying counterclaims (which need not be taken as true), Defendants' handful of relevant factual allegations can be summarized as follows:[5]

- James May alleges that Bungie accessed his personal computer that he protects with passwords and a firewall and "downloaded information" from it.  Counterclaims ¶¶ 2–3, 7–10.  May's sole "evidence" to support this allegation is a spreadsheet containing metadata that include various file paths.  *Id.* ¶ 8.  May fails to identify what the data on the spreadsheet shows.[6]  *Id.*

- May agreed to Bungie's LSLA.  *Id.* ¶ 5.  As discussed above, the LSLA incorporates Bungie's Privacy Policy.  Dkt. No. 63-1 p. 2; Kaiser Decl., Ex. 1.

- Phoenix Digital's AimJunkies website *currently* has a Terms of Service with various prohibitions that parties *now* must agree to when purchasing the Cheat Software from Defendants.  Counterclaims ¶¶ 33–37.

---

[5] Bungie denies Counterclaimants' allegations in the Counterclaims, but recite them here and accepts such allegations as true where necessary solely for the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

[6] Indeed, as Dr. Kaiser explained at his deposition, the spreadsheet does not show instances Bungie accessed May's computer; it shows metadata from processes—such as reverse engineering tools—that *May* connected to the *Destiny 2* process.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

- Phoenix Digital alleges that Bungie obtained the Cheat Software from AimJunkies on or about January 3, 2020 using the loader software AimJunkies provides to download their cheats, and "decompiled, reverse engineered and otherwise inspected" the Cheat Software. *Id.* ¶¶ 38–40, 45. Phoenix Digital does not allege that Bungie agreed to any Terms of Service, or that AimJunkies' purported Terms of Service even existed when Bungie allegedly obtained the Cheat Software.

These sparse factual allegations cannot support Counterclaimants' wild counterclaim theories. Moreover, Counterclaimants' allegations are missing key elements necessary for their claims. Each of the counterclaims should thus be dismissed with prejudice.

### III.    ARGUMENT

#### A.    Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Vernon v. Qwest Commc'n Int'l, Inc.*, 643 F. Supp. 2d 1256, 1261 (W.D. Wash. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Unlike factual allegations, legal conclusions are not accepted as true. *Id.* (quoting *Ashcroft*, 556 U.S. at 664). A complaint that pleads facts that are "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft*, 556 U.S. at 678 (internal citation and quotation omitted). The "mere possibility of misconduct" does not entitle the pleader to relief. *Id.* at 679. None of the counterclaims meet this standard.

Courts may rule on affirmative defenses—like the existence and effect of a party's terms of service—in considering Rule 12(b)(6) motions "where the defense is apparent from the face of the complaint." *Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*, No. C13–1300–MJP, 2013 WL 6979555, at *3 (W.D. Wash. Oct. 31, 2013) (cleaned up) (holding that license to copyrighted works was incorporated by reference, and dismissing copyright infringement claim on motion to dismiss based on the license), *aff'd*, 655 F. App'x 564 (9th Cir. 2016); *Song fi Inc. v.*

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   *Google, Inc*., 108 F. Supp. 3d 876, 880 (N.D. Cal. 2015) (holding that YouTube's Terms of Service

2   were incorporated by reference, and dismissing claims that were "foreclose[d]" by those terms).

3   And "where[,] as is the case here, the complaint incorporates documents[,] . . . the Court may

4   consider them in ruling on a 12(b)(6) motion." *Beijing Zhongyi Zhongbiao Elec.*, 2013 WL

5   6979555 at *3.  Further, where additional terms are incorporated within an agreement that is

6   incorporated by reference, those additional terms, too, are incorporated by reference and may be

7   considered in ruling on a 12(b)(6) motion. *Song fi*, 108 F. Supp. 3d at 880 (dismissing claims with

8   prejudice considering both the YouTube Terms of Service and the Community Guidelines that

9   were incorporated by reference in the Terms of Service).

10   Here, in their Counterclaims, Counterclaimants disclosed and relied on Bungie's LSLA,

11   which incorporates Bungie's Privacy Policy.  *See, e.g.*, Counterclaims ¶¶ 4–6; *see* Kaiser Decl.,

12   Ex. 1.  Accordingly, the LSLA and Privacy Policy are incorporated by reference.

13   **B.   May's Computer Fraud and Abuse Act Claims Should Be Dismissed**

14   May asserts three causes of action under the Computer Fraud and Abuse Act ("CFAA").

15   All three should be dismissed because May consented to the alleged "access" to his computer.

16   Moreover, May fails to allege that he suffered sufficient loss as required by the CFAA.

17   As an initial matter, May's allegations regarding Bungie's supposed "access" of his

18   computer are simply false.  The purported evidence May relies on, which Counterclaimants attach

19   to their counterclaims, does not show Bungie downloading files from May's computer; it shows

20   metadata of processes on May's computer that *he* connected to the *Destiny 2* process, such as

21   May's "Reverse Engineering Tool[s]".[7]  Kaiser Decl. ¶ 2.  On a Rule 12(b)(6) motion, the Court

22   must accept reasonable inferences, but the Court is not required to accept as true "allegations that

23   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *nexTUNE*,

24

25   ───────────────

    [7] Defendants' conclusory inference that Bungie did more than simply detect unauthorized access of the
26   *Destiny 2* process has been weaponized by Schaefer—by perpetuating his false allegations to various media outlets—
    to damage Bungie's reputation.  *See e.g.,* https://www.youtube.com/watch?v=2aQeBeXuj5s (accessed on October 5,
    2022).

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1    *Inc. v. McKinney*, No. C12-1974 TSZ, 2013 WL 2403243, at \*4 (W.D. Wash. May 31, 2013)

2    (Zilly, J.) (granting motion to dismiss where trade secret claim was premised on "speculation

3    unsupported by any factual allegation").  May's unsupported conclusions regarding the meaning

4    of a spreadsheet attached to their counterclaim—devoid of factual allegations with supporting

5    context—are nothing more than speculation, and should not be accepted as true for purposes of

6    the motion to dismiss.  *Id.*  May's CFAA counterclaims should therefore be dismissed on this basis

7    alone.

8            Nevertheless, even if these factual allegations are taken as true—no matter how farfetched

9    and baseless they are—May still fails to sufficiently plead his CFAA claims.

10           **1.      May Does Not Allege That He Suffered Loss**

11           May fails to plead an essential element of each of his CFAA claims.  The CFAA is a

12   criminal statute, authorizing private parties to file civil claims only in limited circumstances.  *See*

13   18 U.S.C. § 1030.  "A civil action for a violation of [the CFAA] may be brought only if the conduct

14   involves" one of the following factors:

15           (I)     loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000

16                   in value;

17           (II)    the modification or impairment, or potential modification or impairment, of the

18                   medical examination, diagnosis, treatment, or care of 1 or more individuals;

19           (III)   physical injury to any person;

20           (IV)    a threat to public health or safety; or

21           (V)     damage affecting a computer used by or for an entity in the United States

22                   Government in furtherance of the administration of justice, national defense, or

23                   national security.

24   *Id.* §§ 1030(g), 1030(c)(4)(A)(i)(I)–(V).  May's CFAA allegations plainly do not involve any of

25   the circumstances described in (II)–(V).  *See* Counterclaims ¶¶ 1–26.

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1    If May's CFAA claims are to survive, then he must allege that Bungie's access to his

2    computer caused a "loss" during any 1-year period aggregating at least $5,000 in value.   Courts

3    routinely dismiss CFAA claims when plaintiffs fail to allege this prerequisite to maintaining a civil

4    action under the statute, particularly where the allegations are nothing more than conclusory legal

5    statements.  *See, e.g.*, *United Fed'n of Churches, LLC v. Johnson*, ___ F. Supp. 3d. ___, 2022 WL

6    1128919, at *6–8 (W.D. Wash. Apr. 15, 2022) (granting motion to dismiss CFAA claim for failure

7    to allege cognizable loss); *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash.

8    2014) (dismissing CFAA claim where plaintiff "state[d] cursorily that '[i]n the instant case the

9    aggregate claims will easily exceed $5,000.00...' but provide[d] no information on how

10   calculations [could] be made that result in more than $5,000 in damages"); *Wesch v. Yodlee, Inc.*,

11   No. 20-cv-05991-SK, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021) (granting motion to

12   dismiss CFAA claim where plaintiffs' "conclusory allegations," merely parroting the statute, were

13   insufficient to state a claim); *Courser v. Mich. House of Representatives*, 831 F. App'x 161, 180

14   (6th Cir. 2020) (affirming dismissal of CFAA claims where Plaintiff alleged only that he "suffered

15   damages and loss," that defendants "caused damage," and that defendants' conduct "involved a

16   loss to [plaintiff] during any 1-year period aggregating at least $5,000 in value").

17           May does not even attempt to allege that he suffered any "loss" as defined under the CFAA,

18   let alone $5,000 worth of loss during any 1-year period.   Nor could he.   May's barebones

19   counterclaims do not include a single allegation regarding any harm to his computer or the files

20   thereon.  May's first three counterclaims based on CFAA violations should therefore be dismissed.

21           **2.    Bungie Did Not Access May's Computer Without Authorization**

22           To defeat a motion to dismiss his CFAA counterclaims, May must also have alleged that

23   Bungie accessed his computer "without authorization."   18 U.S.C. §§ 1030(a)(4), 1030(a)(2)(C),

24   1030(a)(5)(C).[8]   He fails to do so.

25

26           ⁸ May does not allege that Bungie "exceed[ed] authorized access" to his computer under sections 1030(a)(4)
     or 1030(a)(2)(C).  *See* Dkt. No. 63 pp. 11–13.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1       The sole factual allegation May asserts regarding Bungie's purported "access" of May's

2   computer is based on the spreadsheet Bungie produced, Bates No. Bungie_WDWA_0000409.

3   May, however, provides no information as to what the spreadsheet is.  Instead, he includes an

4   unsupported (and false) conclusion that the spreadsheet shows instances that Bungie accessed his

5   computer (it does not).  Such bare conclusions need not be accepted as true.  *nexTUNE*, 2013 WL

6   2403243, at *4.

7       Moreover, May fails to allege facts sufficient to establish that Bungie's purported access

8   to his computer, if it had occurred, would fall outside the scope of Bungie's Privacy Policy, to

9   which May concedes he agreed.  Counterclaims ¶ 4; LSLA at p. 1 (incorporating the Privacy

10  Policy); Kaiser Decl., Ex. 1 (Privacy Policy).  Through the Privacy Policy, May agreed that Bungie

11  could collect certain information.

12      Specifically, the Privacy Policy explains that Bungie "collect[s] Personal Information

13  about you and your use of the Bungie Services via automated means, such as through cookies, web

14  beacons and similar technologies," including information about "your use of the Bungie Services,"

15  "actions taken within the Bungie Services," "your device," and other categories of information.

16  Kaiser Decl,. Ex. 1.  This information is collected by Bungie to, among other reasons, "prevent

17  fraudulent use of the Bungie Services," "enforce our Terms of Use [and] our legal rights," and

18  "prevent or address potential or actual injury or interference with our rights, property, operations,

19  users or others who may be harmed or may suffer loss or damage."  *Id.* ¶ 2(c).  In other words,

20  Bungie is authorized to collect certain data from the computers of users of Bungie's services, and

21  May expressly authorized this collection.  May's counterclaims do not include any factual

22  allegations demonstrating that the data purportedly collected by Bungie falls outside of these

23  categories of data he agreed to allow Bungie to collect, and May's CFAA claims (Counterclaims

24  1-3) should thus be dismissed.  *See* Counterclaims ¶¶ 1–26.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**C.    May's and Phoenix Digital's DMCA Anti-Circumvention Claims Should Be Dismissed**

2

May and Phoenix Digital both assert counterclaims against Bungie under the Digital

3

Millennium Copyright Act's ("DMCA") anti-circumvention provision, 17 U.S.C. § 1201(a)(1)(A).

4

To survive a motion to dismiss, Counterclaimants must allege facts sufficient to show that (1)

5

Counterclaimants employ technological measures that effectively control access (2) to

6

Counterclaimants' works that are protected by copyright and that (3) Bungie circumvented those

7

technological measures.  *See id.* ("No person shall circumvent a technological measure that

8

effectively controls access to a work protected under this title.").  Both of their claims suffer from

9

multiple fatal defects and should therefore be dismissed.

10

First, Phoenix Digital fails to allege that it employs technological measures that effectively

11

control access to the program it alleges that Bungie accessed.  A complaint alleging a claim for

12

violation of § 1201(a)(1)(A) is deficient if it "fails to allege that the copyrighted works are

13

protected by technological measures."  *FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595

14

(FLW), 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (granting motion to dismiss); *cf. Philips*

15

*N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 WL 1515624, at *2–3 (W.D. Wash.

16

Mar. 30, 2020) (denying motion to dismiss where plaintiff specifically enumerated the different

17

protection measures implemented).  Here, Phoenix Digital only vaguely references "technological

18

measures," without alleging any facts concerning what those measures may be.  Counterclaims

19

¶¶ 44–45.  Such a "threadbare recital" of the statutory language is plainly insufficient, and Phoenix

20

Digital's DMCA claim should be dismissed on this basis alone.  *Iqbal*, 556 U.S. at 663.

21

Next, neither Phoenix Digital nor May allege that Bungie accessed "any work protected by

22

[copyright]" when Bungie supposedly circumvented Counterclaimants' technological measures.

23

17 U.S.C. § 1201(a)(1)(A).  The DMCA requires any "claimant to show that the 'technological

24

measure' at issue 'controls access to *a work protected under this title*,' . . . which is to say a work

25

protected under the general copyright statute.  To the extent the [plaintiff's software] is not a 'work

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1    protected under [the copyright statute,]' . . . the DMCA necessarily would not protect it." *Lexmark*

2    *Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 550 (6th Cir. 2004) (emphasis in

3    original).  Courts uniformly dismiss DMCA claims that fail to allege this element.  *See, e.g.*, *Ford*

4    *Motor Co. v. Autel US Inc.*, No. 14-13760, 2016 WL 3569541, at *3–4 (E.D. Mich. July 1, 2016)

5    (granting motion to dismiss DMCA anti-circumvention claim where plaintiff failed to plead that

6    the file accessed by defendant's alleged circumvention was copyrighted); *FMHUB, LLC v.*

7    *MuniPlatform, LLC*, No. 19-15595 (FLW) (DEA), 2020 WL 4581828, at *6 (D.N.J. Aug. 10,

8    2020) (granting motion to dismiss where "[w]hat is missing from these allegations, however, is an

9    identification of, and direct statement that there are, any 'copyrighted works'"); *D&J Optical, Inc.*

10   *v. Wallace*, No. 1:14cv658-MHT, 2015 WL 1474146, at *6–7 (M.D. Ala. Mar. 31, 2015).

11            May alleges that Bungie accessed "his computer(s) and the files and data contained

12   thereon."  Counterclaims ¶ 28.  He does not allege that he owns any copyrights in his

13   "computer(s)," "files," or "data."  *See D&J Optical*, 2015 WL 1474146, at *7 (granting motion to

14   dismiss where the alleged "work" accessed was patient information, and "[t]here is no indication

15   that this type of information is a protected work under the Act").  Likewise, Phoenix Digital alleges

16   that Bungie accessed its "proprietary" "loader software," but Phoenix Digital does not allege that

17   this loader software constitutes a copyrighted work.  Counterclaims ¶ 45.  Thus, the DMCA claims

18   of both May and Phoenix Digital should be dismissed for this reason too.

19            Finally, Phoenix Digital's and May's respective DMCA anti-circumvention claims should

20   be dismissed because they do not allege facts sufficient to identify an act of "circumvention"

21   allegedly committed by Bungie.  In support of their DMCA claims, Counterclaimants merely

22   parrot the statutory language of the DMCA, alleging that Bungie "bypassed, removed, deactivated,

23   and/or impaired one or more of the technological measures" employed by Counterclaimants.

24   Counterclaims ¶¶ 28, 44.  But such pleading, which "is devoid of any allegations that [Bungie]

25   actually took steps to 'circumvent' the technological measures" employed by Counterclaimants is

26   insufficient to state a claim under the DMCA's anti-circumvention provision. *FMHUB, LLC*, 2021

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –11

158352392.4

1    WL 1422873, at *6.  Defendants' DMCA claims should therefore be dismissed on this basis as

2    well.

3    **D.    Phoenix Digital's Breach of Contract Claim Should Be Dismissed**

4           To plead a breach of contract claim, Phoenix Digital must plead, among other things, that

5    a valid contract exists between the parties, and that Phoenix Digital sustained damages.  *Bailey-*

6    *Medwell v. Hartford Life & Accident Ins. Co.*, No. C17-1697-MJP, 2018 WL 5264335, at *3 (W.D.

7    Wash. Oct. 23, 2018).  Phoenix Digital fails to do either.

8           First, while Phoenix Digital alleges that it *currently* has a Terms of Service that applies to

9    downloads of its software, it fails to allege that those terms applied when Bungie purportedly

10   downloaded the Cheat Software or that Bungie agreed to them.  Counterclaims ¶¶ 33, 38.  Phoenix

11   Digital's failure to plead such basic facts is fatal, and likely incurable.[9]

12          Phoenix Digital also fails to allege any facts that support its bald assertion that Bungie's

13   alleged breach of the Phoenix Digital Terms of Service "has caused and is continuing to cause

14   harm and damage" to Phoenix Digital, and this claim should therefore be dismissed.

15   Counterclaims ¶ 42.  "[D]amages are an essential element of a breach of contract claim."  *Bardy*

16   *v. Cardiac Science Corp.*, No. C13-0778JLR, 2014 WL 294526, at *5 (W.D. Wash. Jan. 27, 2014)

17   (citing *Crabtree v. Bowers*, 102 Wash. App. 1017, at *1 (Wash. Ct. App. 2000) (unpublished)).  In

18   alleging damages to support a breach of contract claim, "a complaint must do more than tender

19   'naked assertions devoid of further factual enhancement.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

20   These sorts of naked assertions are insufficient to survive a motion to dismiss.  *Id.* (granting motion

21   to dismiss breach of contract claim where plaintiff stated only "[plaintiff] has suffered damages as

22   a result of [defendant]'s breach of the Agreement and of its obligations agreed to between the

23   Parties").  Phoenix Digital's breach of contract claim should therefore be dismissed.

24

25          [9] Captures of the AimJunkies website prior to filing the lawsuit indicate that the current link to AimJunkie's
     Terms of Service at the bottom of their website was added sometime after Bungie filed its lawsuit.  And any such
26   terms—purportedly prohibiting investigations into software that infringes Bungie's and others' intellectual property—
     are unlikely to be enforceable.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1    **E.    Defendants' Claims Should Be Dismissed with Prejudice**

2        "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1)

3    bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)

4    whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d

5    367, 373 (9th Cir. 1990).  These factors weigh in favor of dismissing the counterclaims with

6    prejudice.

7        *First*, Counterclaimants bring their counterclaims in bad faith knowing their allegations

8    are unsupported, false, and with the calculated intent to damage Bungie's reputation.

9    Counterclaimants' true intentions in filing their counterclaims were exposed by Schaefer's recent

10   emails to various third parties.  In a 2022 email to Richard Hoeg, an attorney and the managing

11   member of Hoeg Law Firm, PLLC and an online streamer on YouTube, Schaefer claims that the

12   phrase "on information and belief" is "code for 'its not true but were going to throw this out there

13   and see if it sticks with the judge[.]'"  Dini Decl., Ex. 3.[10]  He further notes that he believes the

14   phrase is used by Bungie to "get away with [saying] what they say in a filing that they cant [sic]

15   say in public because its slanderous." *Id.*  With this malicious definition of what "on information

16   and belief" means and why it is used, Schaefer explains he is "embracing 'on information and

17   belief'" in his counterclaims. *Id.*  Counterclaimants have apparently taken this erroneous definition

18   to heart and acted in accordance, alleging claims with no basis to "get away with" allegations that

19   they know are "not true" to "see if it sticks."  To state the obvious, Schaefer is mistaken; alleging

20   facts "on information and belief" does not justify or excuse making knowingly false allegations or

21   "get[ting] away" with libel (or slander).  Further supporting this bad faith finding, according to his

22   counsel, Schaefer deleted these key communications, and other similar communications, during

23   the pendency of this lawsuit. *See* Dini Decl., Ex. 2.  Phoenix Digital's and May's counterclaims

24   _____

25   [10]  Bungie discovered Schaefer's correspondence through a YouTube video posted by Mr. Hoeg: (https://www.youtube.com/watch?v=2aQeBeXuj5s).  Defendants did not produce this communication and Defendants' counsel recently confirmed that Schaefer deleted his emails to third parties such as Mr. Hoeg. Dini Decl.,

26   Ex. 2 (email to P. Mann regarding September 30, 2022 meet and confer).  Bungie intends to pursue appropriate remedies, including seeking spoliation sanctions, at the appropriate time.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –13

1    were thus brought in bad faith and should be dismissed with prejudice.  *Shipley v. Trans Union*

2    *Corp.*, No. C04-2560P, 2006 WL 1515594, at *3 (W.D. Wash. May 25, 2006) (finding claims

3    were brought in bad faith where they were based on dishonest acts and for the purpose of

4    harassment).

5            ***Second and third***, Defendants' unexplained delay in filing their response to Bungie's

6    pleading in violation of the Federal Rules—*for the third time*—and the prejudice it has caused is

7    reason to dismiss their claims with prejudice.  Dkt. Nos. 18, 38; 40, 55 p. 1 n.1, 61 n. 5, 63. The

8    parties have already exchanged the majority of their documents, both parties are at or near the limit

9    on their interrogatory requests, and depositions have been taken.  Adding new counterclaims at

10   this stage of the proceeding would waste resources and prejudice Bungie.  Defendants should not

11   be rewarded for again flouting the Federal and Local Rules, and their counterclaims should be

12   dismissed with prejudice.  *See Singleton v. Nielsen*, No. C03-2372RSM, 2006 WL 8454922, at *2

13   (W.D. Wash. June 26, 2006) (striking answer as untimely where defendants had participated in

14   some pre-trial matters but failed to demonstrate good cause for late filing of answer); *Nat. Prods.*

15   *Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-cv-00428-DGE, 2022 WL 579339, at *3 (W.D.

16   Wash. Feb. 25, 2022) ("Prejudice typically arises where the opposing party is surprised with new

17   allegations which require more discovery or will otherwise delay resolution of the case.").

18           ***Fourth and finally***, an amendment would be futile.   Counterclaimants' barebones

19   counterclaims are bereft of factual support and primarily rely on conclusory allegations.  Despite

20   having 18 months to craft their counterclaims, and months of discovery to try to find factual

21   support for their claims, Counterclaimants are still unable to sufficiently plead key elements of

22   their claims or provide sufficient factual allegations.  There is no reason to give Defendants yet

23   another opportunity to respond to Bungie's pleadings.

24                                    **IV.    CONCLUSION**

25           For the foregoing reasons, Bungie respectfully requests that Phoenix Digital's and James

26   May's counterclaims be dismissed with prejudice.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4

1

2

3  Dated: October 6, 2022

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

By: */s/William C. Rava*
William C. Rava, Bar No. 29948
Christian W. Marcelo, Bar No. 51193
Jacob P. Dini, Bar No. 54115
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
WRava@perkinscoie.com
CMarcelo@perkinscoie.com
JDini@perkinscoie.com

*Attorneys for Plaintiff Bungie, Inc.*

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

158352392.4