1

THE HONORABLE THOMAS S. ZILLY

2

3

4

5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

6

7

BUNGIE, INC., a Delaware corporation,

Cause No. 2:21-cv-0811 TSZ

8

Plaintiff

**DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION TO
DISMISS COUNTERCLAIMS**

9

10

v.

11

AIMJUNKIES.COM, a business of unknown
classification; PHOENIX DIGITAL GROUP
LLC, an Arizona limited liability company;
JEFFREY CONWAY, an individual; DAVID
SCHAEFER, an individual; JORDAN GREEN,
an individual; and JAMES MAY, an individual,

**Note on Motion Calendar:
October 28, 2022**

12

13

**Oral Argument Requested**

14

**(Redacted)**

15

Defendants.

16

17

18

Defendants Phoenix Digital Group LLC ("Phoenix Digital") and James May ("Mr.
May"), for the reasons stated herein, oppose Plaintiff Bungie, Inc.'s Motion to Dismiss their
Counterclaims (Dkt#64).

19

**I.    INTRODUCTION**

20

21

Faced with the increasingly undeniable fact that Bungie's case has no underlying
merit, Bungie shifts to personal attacks on Defendants and their counsel.

22

23

24

25

Discovery has now established that Bungie, *itself*, claims under oath that it has never
seen the source code for the subject "Destiny 2 Cheat Software," that it has never seen the
object code for such software, that it has never "reverse engineered" such software and that is
has never even performed *any* sort of analysis of such software.[1]  Indeed, Bungie's corporate

26

27

1    Bungie, through its Rule 30(b)(6) designated representative, Dr. Edward Kaiser, so testified at
his October 5, 2022 deposition.

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 1

1   representative has now testified under oath that Bungie has done nothing more than simply

2   purchase a subscription to the subject software from Phoenix Digital and thereafter use the

3   software "for about ten minutes."  That, apparently, is the full extent of whatever "pre-filing

4   investigation" Bungie made before bringing this action.

5          Based on this ten minute use of the software, and its admission that it has never even

6   seen, much less analyzed the actual code for the subject software, Bungie brazenly asserts,

7   without explanation or identifiable basis, that the "cheat software" at issue here *must*

8   nevertheless somehow copy Bungie's software.  This is nothing more than mere speculation,

9   otherwise known as a guess.

10          In a blatant case of the pot calling the kettle black, Bungie nevertheless asserts in its

11   Motion to Dismiss that the subject counterclaims are based on "mere speculation," (Dkt#64,

12   p.7).  Bungie does this apparently oblivious to the fact that that is *precisely* what its own claim

13   of copyright infringement is based on.  In reality, and as established herein, the subject

14   Counterclaims are based on far more than, "mere speculation," and are founded in part on

15   records Bungie *itself* created that document when it accessed Defendants' computers without

16   authorization on more than one-hundred occasions, as well as which computer files were

17   accessed.

18          Knowing its potential liability, and desperate to dismiss Defendants' counterclaims,

19   Bungie resorts to blatant misrepresentations of fact and law.  Desperate to prevent even an

20   opportunity for Defendants to amend their counterclaims should this Court conclude that

21   more detailed pleadings are needed, Bungie demands the extraordinary remedy of a dismissal

22   with prejudice.  To support this, Bungie resorts to gratuitous attacks on Defendants and their

23   counsel.  If Bungie truly believed Defendants and/or their counsel are in breach of any

24   applicable rule or law, adequate remedies are available, such as a formal motion for default or

25   a motion under Rule 11, following the procedures specified in both those rules and this

26   Court's Local Rules.  Bungie fails to do this, opting instead to engage in histrionics rather

27   than address the supposed transgressions using the procedures specified for so doing.

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1
2
## II    ARGUMENT

3
**A.    Mr. May's Counterclaims Plead Proper And Plausible Claims For Unauthorized Access And Theft Of Computer Data**

4
### 1.    Mr. May's Supporting Allegations Are All Based On Stated Facts

5
6
7
8
The gist of Mr. May's three counterclaims is that Bungie, without authorization, accessed Mr. May's personal computer and downloaded information contained thereon into Bungie's own files.  Contrary to Bungie's assertions, these pleadings are not "bare bones," but, rather, are backed up by both pleaded facts and documentary evidence.

9
10
11
12
13
14
15
16
17
At paragraph 2 of his First Counterclaim, Mr. May expressly alleges that, "At all relevant times, [he] has maintained, used and operated at his home a personal computer on which personal, private and confidential information is stored and maintained in one or more files contained on his personal computer's hard drive."  (Dkt#63, p.11, ¶2.)  This is not a conclusory, bare bones statement bereft of facts, and neither is it a statement of law.  Accepting the allegation as true, which this Court must do in considering a motion to dismiss, the statement clearly and directly establishes that Mr. May possesses private and confidential information and materials that he maintains on his own personal computer.  Any fair reading of this allegation cannot properly conclude otherwise.

18
19
20
21
22
23
24
25
26
At paragraph 3 of his First Counterclaim, Mr. May expressly alleges that he, "protects access to the files on his personal computer by requiring the use of one or more passwords, known only to him, to gain access to the files on his personal computer's hard drive," and that he further, "includes a firewall on his computer to deter and prevent unauthorized access to his computer and the files and data contained thereon." (Dkt#63, p.11, ¶3.)  Again, these are clear and direct statements of fact that establish not only that Mr. May maintains private and confidential information and materials on his computer, but that he restricts and prevents unauthorized access to such private and confidential information and materials through use of

27
28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1  "passwords" and "a firewall" to protect against unauthorized access.  Again, any fair reading

2  of these allegations cannot properly conclude otherwise.

3  At paragraph 6 of his first counterclaim, Mr. May alleges that, "The LSLA in effect at

4  all relevant times does not provide Bungie, Inc. with authorization to surreptitiously access

5  files on [his] personal computer and/or download information from those files without the

6  direct knowledge and express authorization of Mr. May." (Dkt#63, p.11, ¶6.)  This states the

7  clear fact that the LSLA agreed to by Mr. May and effective as of the relevant dates simply

8  *does not* contain any authorization for Bungie to defeat the password and firewall protections

9  Mr. May has employed, and *does not* contain any authorization for Bungie to access the

10 private and confidential information and materials Mr. May maintains on his so-protected

11 personal computer.  To the extent that Bungie now claims that such authorization is provided

12 in a separate document that does not actually appear in the LSLA but, rather, is merely

13 referenced in the LSLA, is itself a factual and legal argument that is properly addressed at a

14 later stage, and not at the stage of a Rule 12(b)(6) motion to dismiss.  See, *Marquez v.*

15 *Rodriguez*, 3:18-cv-0434-CAB-NLS, 2021 WL 2826075 at *5 (S.D. Cal. July 6, 2021) ("As a

16 general rule, a district court may not consider any material beyond the pleadings in the ruling

17 on a Rule 12(b)(6) motion.")

18 At paragraph 7 of his first counterclaim, Mr. May alleges that, "On several occasions

19 between October 2, 2019 and May 25, 2021 Bungie, Inc., without the knowledge and

20 authorization of Mr. May accessed and obtained information from personal files contained on

21 Mr. Mays' personal computer," (Dkt#63, p.11, ¶7), while at paragraph 8, Mr. May provides

22 detailed factual and documentary support for this allegation.  (Dkt#63, p.12, ¶8.)   In

23 particular, Mr. May includes as Exhibit B to his Answer and Counterclaim a document,

24 *produced by Bungie itself* that clearly shows and evidences Bungie's accessing and viewing

25 confidential information and materials resident on his password and firewall protected

26 computer. *Id.*

27

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone:  206.436.0900

1   　　　As expressly alleged by Mr. May in his first counterclaim, "Exhibit B evidences some

2   one-hundred and four (104) instances in which Bungie, Inc., without the knowledge of, and

3   authorization by, Mr. May accessed Mr. May's personal computer and downloaded

4   information from it." *Id.* The "one-hundred and four" instances can be verified simply by

5   counting up the one-hundred four individual line items included on Exhibit B.  As further

6   expressly alleged by Mr. May, "'Column C' of Exhibit B entitled 'Evidence' contains

7   multiple listings that identify computer files contained only on Mr. May's computer." As an

8   example of such listings "that identify computer files contained only on Mr. May's

9   computer," Mr. May, expressly alleges that the "listings" on the very document that Bungie

10  produced, "are expressly identified, for example, with the location, 'c:\users\james\desktop\

11  reclass\blah64.exe (4D09FFB3B8CFE53A8250D1A112C4CDE3)' which, in fact, is a private

12  file on the 'c' drive of Mr. May's computer." *Id.*

13  　　　Mr. May specifically and expressly alleges that the location, "c:\users\james\desktop\

14  reclass\blah64.exe (4D09FFB3B8CFE53A8250D1A112C4CDE3)" is a private file on the "c"

15  drive of his personal computer, and it is beyond question that this location appears in

16  documentation created by, and produced to Defendants by, Bungie, itself.  It is not "mere

17  speculation" that Bungie accessed these files, and while Bungie may feign ignorance of what

18  these locations are, Mr. May knows exactly what they are and clearly alleges, in Paragraph 8

19  of his counterclaims that they are, in fact, "private file[s] on the 'c' drive of [his] computer."

20  (Dkt#63, p.12, ¶8.)

21  　　　At Paragraph 11 of his counterclaim, Mr. May specifically and expressly alleges, that,

22  "Bungie, Inc.'s unauthorized access of Mr. May's confidential and private computer files has

23  caused and will continue to cause Mr. May irreparable injury and damage." (Dkt#63, p.12,

24  ¶11.)

25  　　　In his second counterclaim, Mr. May specifically alleges further facts regarding the

26  measures he takes to protect against unauthorized access to his private and confidential

27  computer records.

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                                Page 5

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1    At Paragraph 16 of his counterclaim, Mr. May specifically and expressly further
2  alleges, that he, "protects the files and data on his personal computer through such
3  technological means as the use of passwords and firewalls to preclude unauthorized access to
4  the data, files and records thereon," (Dkt#63, p.13, ¶16), while at Paragraph 17 he specifically
5  and expressly alleges that, "Bungie, Inc.'s unauthorized infiltration of [his] personal computer
6  and its unauthorized surveillance and acquisition of the personal records contained therein has
7  caused and will continue to cause [him] irreparable injury and damage."  (Dkt#63, p.13, ¶17.)

8    In his third counterclaim, Mr. May, at paragraphs 22 and 23, specifically and expressly
9  further alleges that he, "protects the files and data on his personal computer through such
10 technological means as the use of passwords and firewalls to preclude unauthorized access to
11 the data, files and records thereon," and that, "Bungie, Inc.'s unauthorized infiltration of [his]
12 personal computer and its unauthorized surveillance and acquisition of the personal records
13 contained therein has caused and will continue to cause [him] irreparable injury and damage."
14 (Dkt#63, p.13, ¶¶22,23.)

15    In his fourth counterclaim, Mr. May, at paragraphs 28 and 29, specifically and
16 expressly further alleges that, "On information and belief, Bungie bypassed, removed,
17 deactivated, and/or impaired one or more of the technological measures Mr. May employed to
18 control access to his computer(s) and the files and data contained thereon without the
19 authority of Mr. May," and that, "As a direct result of Bungie's circumvention, Mr. May has
20 been injured, and will continue to be injured." (Dkt#63, p.14, ¶¶28,29.)

21    These allegations are all supported by expressly stated facts and supporting
22 documentary evidence.  Contrary to Bungie's false claims, they are not bare bones, they are
23 not based on "mere speculation" or conjecture, and they are more than sufficient to set out
24 more than "plausible" claims for relief.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                      Page 6

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1

2

## 2.  Bungie's Arguments Are Without Merit

### *i     There are more than ample facts pleaded to support a "plausible" claim that Bungie accessed Mr. May's computer*

3

4

5

6

7

8

9

10

11

12

13

Bungie initially hopes to dismiss Mr. May's Counterclaims with the bald statement that, "May's allegations regarding Bungie's supposed 'access' of his computer are simply false." (Dkt 64, p.6.) If this were the standard, every case should and must be dismissed whenever a defendant says, "The allegations are false." But as Bungie *itself* has previously argued on many prior occasions (see, e.g., Dkt#30, p.4) "On a motion to dismiss under Rule 12(b)(6), a plaintiff need only allege facts sufficient to state a claim for relief that is plausible on its face. *Cook Prods., LLC v. Swanicke*, No. C16-1844 TSZ, 2017 WL 5665427, at \*1 (W.D. Wash. Aug. 24, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007)) and, "On a Rule 12(b)(6) motion, the court must accept the complaint's factual allegations as true and draw 'all reasonable inferences in favor of the nonmoving party.'" *I*d. (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).

14

15

16

17

18

19

Bungie now blatantly ignores these clear standards that it, itself, asserted to this Court only a few months ago. And just as recently as August 18, 2022, this Court, in this very case, correctly noted that, "The Court must take as true uncontroverted allegations in the [Counterclaim] and must resolve any conflicts over statements in affidavits in the [Counterclaim] plaintiff's favor." Dkt# 61, p.2, citing, *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).

20

More importantly, Mr. May's allegations are anything but false.

21

22

23

24

*First*, they are undeniably based on information and documents, *Bungie itself* obtained, created and produced to Defendants in discovery. There can be no denying that "Exhibit B" (Dkt# 63-2) to Mr. May's Counterclaims is a document produced by Bungie and that contains information obtained from Mr. May's own personal computer.

25

26

*Second,* Mr. May himself, in his accompanying declaration, testifies not only that the files identified in Exhibit B are, in fact, personal and private files on his own computer, but

27

28

1 further testifies that certain of these files have nothing to do with "Destiny 2" and, in fact, are
2 resident on remote memory storage devices connected to his computer.  (May Declaration,
3 ¶¶5,6,7-12.) This is more than sufficient to draw "a reasonable inference" that Bungie
4 "accessed" Mr. May's computer.  At the very least, it is more than sufficient to create a
5 factual question sufficient to preclude dismissal of Mr. May's Counterclaims at this stage.

6                    ***ii        Mr. May suffered damages in excess of $5000***

7          Mr. May in his Counterclaim clearly alleges that, "Bungie, Inc.'s unauthorized access
8 of Mr. May's confidential and private computer files has caused and will continue to cause
9 Mr. May irreparable injury and damage."  Dkt#63, ¶¶11, 17, 23 &31.  Although he did not
10 specify a figure for such damages, Mr. May, in his accompanying declaration, specifies that
11 his direct damages as a result of Bungie's unauthorized access to his computer has resulted in
12 direct damages in excess of $5000.  (May Declaration, ¶16.) These damages include, in part,
13 the direct expense of purchasing a new computer to replace the one compromised by Bungie's
14 unauthorized access, as well as the tens of hours he spent reviewing his files for signs of
15 compromise, "cleaning" such files found to be compromised, and then transferring those
16 "cleaned" files to the new computer. *Id.*  Mr. May further testifies that these expenses were
17 incurred between May 28, 2022 and June 15, 2022, a period of less than 12 months. *Id.*
18 Accordingly, even if this Court were to require Mr. May to file an amended Counterclaim,
19 Mr. May has the facts to establish that his damages resulting directly from Bungie's
20 unauthorized access of his computer exceed $5000 during a one-year period.

21                  ***iii       Bungie's reliance on its LSLA and its "Privacy Policy" are misplaced***

22          In arguing that Bungie both had authority to access Mr. May's computer and that it did
23 not "exceed" that authority, Bungie claims that its "LSLA" and the "Privacy Policy"
24 incorporated therein "authorized" Bungie to access the subject files on Mr. May's computer.
25 Bungie is wrong.  Neither document provides any such authority.

26          The March 6, 2020 LSLA (Dkt#36-B) that governs here says absolutely nothing about
27 granting Bungie access to Mr. May's (or anyone else's) personal computers.  Indeed, Bungie

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

makes no serious claim that it does.  Instead, Bungie relies on a "Privacy Policy" (Dkt#66-1) that is incorporated by reference into the LSLA.  In his accompanying declaration, Mr. May testifies that he never gave Bungie authorization to access his personal files, and neither the Bungie LSLA or the Privacy Policy told him Bungie would.  (May Declaration, ¶13.)  The problem for Bungie is that the Privacy Policy it relies on does not authorize Bungie to do what it did either.  Bungie intentionally hopes to mislead the Court on that.

The Privacy Policy sets out in black and white exactly what information Bungie says it will obtain from users of its services.  This is spelled out in Section 2 entitled, "Information We Collect," subsection "(a)" entitled, "Information Provided by You."  Section 2(a) of Bungie's Privacy Policy sets out the information it will collect from users, (i.e., "You") as follows: "Contact Data," "Credentials," "Demographic Data," "Billing Data," "Profile Data," "Content," and "Resume Data."

Each of these categories is further defined in the Privacy Policy, and *none* of the categories as so defined includes personal and confidential files contained on the hard drive and/or external drives of the Bungie users.

Section 2(a) of the Privacy Policy further states that Bungie collects this information "from you at various points through the Bungie Services," and expressly lists the various points at which this can occur.  These are expressly listed as, "Registration," "Purchases," "Subscriptions and Promotions," "Community Interaction," "Customer Service," "Business Partners," and "Job Application."  None of these categories on its face includes accessing personal and confidential files on a user's computer, and none of the further definitions of these categories in the Privacy Policy includes any such access either.

Section 2(b) of the Bungie Privacy Policy further sets out what information Bungie will collect "automatically" from its users.  These are expressly listed as follows: "Cookies," "Pixels," and "App Technologies."  Neither these titles nor the definitions that follow them in the Privacy Policy remotely include accessing personal and confidential files on a user's computer.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1        Section 2(a) of the Bungie Privacy Policy then goes on to list, "The categories of

2  information we automatically collect and have automatically collected in the last 12 months"

3  as follows:  "Bungie Services Use Data," "Device Data," and "Location Data."   The Privacy

4  Policy further states that "Bungie Services Use Data," includes, "information about your use

5  of the Bungie Services, the pages and content that you view, the referring and exiting pages,

6  your access times, the links you click, and other actions taken within the Bungie Services."  It

7  further states that, "Device Data," includes, "information regarding your device, such as

8  device type, operating system type, browser type, device regional and language settings, IP

9  address, and device ID (such as IDFA or AAID)."   It finally states that, "Location Data,"

10  includes, "imprecise location (location based on your IP address or data that indicates a city or

11  postal level)."   Importantly, *none* of these definitions or categories includes accessing

12  personal and confidential files on a user's computer. Such is neither "Service Use Data,"

13  "Device Data," or "Location Data," whether as understood by the public in general or as

14  defined in the Privacy Policy itself.

15        These are the *only* categories of data Bungie's own Privacy Policy permits Bungie to

16  collect from its users, and *none* of these categories permits Bungie to surreptitiously access

17  the private, confidential files maintained on a user's personal computer.  The Privacy Policy

18  simply does not permit Bungie to do what it did, and Bungie's reliance on it is misguided, if

19  not downright disingenuous.   At best, it reflects an inability to construe clear contract

20  language.

21        Bungie argues that its surveillance of Mr. May's computer was authorized by the

22  language of the Privacy Policy relating to, "enforcing [Bungie's] Terms of Use [and its] legal

23  rights," and to "prevent or address potential or actual injury or interference with [Bungie's]

24  rights, property, operations, users or others who may be harmed or may suffer loss or

25  damage."  (Bungie Opposition Brief, Dkt#64, at p.9).  This too is disingenuous.

26        A simple inspection of the Privacy Policy clearly shows that this language appears

27  only in Section 3 of the Privacy Policy, entitled "Use of Information."   Section 3 of the

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ
Page 10

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1  Privacy Policy specifies in plain language what *use* Bungie may make of, "your Personal

2  Information," but does not *redefine* what that "Personal Information" is.   "Personal

3  Information," in turn, is expressly defined in Section 2 of the Privacy Policy and, as

4  established above, *does not* include the personal and confidential files maintained on a user's

5  computer.

6      Bungie's blatant attempt to ignore what its own Privacy Policy actually says in favor

7  or what it does not say is misguided and ignores not only the most basic cannons of contract

8  interpretation but the English language itself.  The Privacy Policy Bungie relies on simply

9  does not permit Bungie to do what it did to Mr. May.

10               *iv.   Mr. May pleads a proper Anti-Circumvention claim*

11      Bungie's arguments that Mr. May fails properly to plead a claim for circumvention of

12  technological measures are misplaced.

13      Mr. May clearly alleges at Paragraphs 3, 16 and 22 of his Counterclaims (Dkt#63) that

14  he uses technological measures, such as "one or more passwords," and "a firewall," to protect

15  the private and confidential files on his computer.  The case law is clear that passwords and

16  firewalls do, indeed, comprise "technological measures" for purposes of 17 U.S.C. § 1201(a)

17  (1)(A).   See, e.g., *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL

18  4848387, at *12 (N.D. Cal. Oct. 1, 2019)  ("Courts that have examined similar password or

19  encrypted control code systems in the past have roundly concluded that these systems are

20  indeed "technological measures" for the purposes of the DMCA.")  See, also, *Ticketmaster*

21  *L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) (Holding that use of

22  "CAPTCHAS" to  control access to website is use of a "technological measure" for purposes

23  of DMCA).

24      Furthermore, it is well-established that computer records are themselves

25  copyrightable. See, *Ticketmaster L.L.C. v. Prestige Entm't W., Inc., supra.* ("These pages and

26  data are dynamic non-literal content and literal content, respectively, both of which, as

27  discussed above, are protected by Ticketmaster's copyrights.")  315 F. Supp. 3D at 1167.

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1
2

There is no credible basis for Bungie's claim that the computer files on Mr. May's computer are not works protected by copyright.  On the contrary, they are. (May Declaration, ¶3.)

3
4
5
6
7
8
9
10

Finally, there can be no legitimate dispute that Mr. May alleges circumvention of the technological measures, namely passwords and firewalls, Mr. May uses and relies on to protect his confidential computer records and files.  (See, Paragraphs 6, 8, 9 and 28 of his Counterclaims, Dkt#63.)  Not only does Mr. May allege such circumvention, Exhibit B to his counterclaim along with his accompanying declaration provide more than ample evidence that Bungie not only accessed Mr. May's files, but kept a detailed record of when it did so and what files were accessed.  (See also, May Declaration, ¶¶5-12, 14, 15 and Exhibit A attached thereto.)

11

12
13

**B.** **Phoenix Digital's Counterclaims Plead Proper And Plausible Claims For Breach of Contract and Circumvention of Technological Measures Under 17 U.S.C. § 1201(a))**

14

**1.** **Phoenix Digital's Supporting Allegations Are All Based On Stated Facts Or Identifiable Information and Reasonable Belief**

15
16
17
18
19
20
21
22
23
24
25
26

At Paragraphs 33-42 of its First Counterclaim (Dkt#63, pp.14-15, ¶¶33-42), Phoenix Digital clearly and expressly alleges the numerous facts upon which its claim for breach of contract is based.  These include the existence of a "Terms of Service" agreement that customers of Bungie's products and services must agree to (Dkt#63, pp.14, ¶33), and prohibitions in the Terms of Service against "decompil[ing], reverse engineer[ing] or otherwise inspect[ing] the internal workings of the software.  These also include restrictions specifying that customers, "shall not modify, hack, decompile, disassemble, reverse engineer, derive source code, or create derivative works of our software, in part or in whole," and that they "shall not transmit our software or display the software's object code on any computer screen or to make any hard copy memory dumps of the software's object code."  (Dkt#63, pp.15, ¶37.)

27
28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone:  206.436.0900

1
2
3
4
5
6
7
8
9
10

      In addition, Paragraphs 38 and 39 of Phoenix Digital's first counterclaim expressly allege that "Bungie, Inc., on or about January 3, 2020 obtained access to the "cheat software" at issue here," and that it did so using the alias, "Martin Zeniu" to do so.  (Dkt#63, pp.15, ¶¶38, 39.)  At the Rule 30(b)(6) deposition of Bungie, Inc., conducted on October 5, 2022, Bungie's corporate representative, Dr. Edward Kaiser, confirmed that Bungie, Inc., did indeed purchase a subscription to the "cheat software" at issue here on January 3, 2020 and did so using the alias, "Martin Zeniu."  Not only does Bungie use an alias and fake address to disguise and hide its acquisition of the "cheat software" from Phoenix Digital, it did so using the services of PayPal, apparently in disregard for PayPal's own publicly stated policy against the use of false or fictitious names in using it services.

11
12
13
14
15

      At Paragraph 40 of its first counterclaim, Phoenix Digital expressly alleges that, "Upon information and belief, Bungie, Inc., decompiled, reverse engineered and otherwise inspected the internal workings of the 'cheat software' product obtained from the aimjunkies website by 'Martin Zeniu' on or about January 3, 2020, in breach of the Phoenix Digital Terms of Service to which Bungie, Inc., had agreed."  (Dkt#63, pp.15, ¶40.)

16
17
18
19
20

      The "information and belief" upon which this allegation is based includes, in part, the Declaration of Edward Kaiser (Dkt#36) previously filed by Bungie in this action wherein Dr. Kaiser directly and expressly testifies, under oath, that, "I am familiar with the cheat software sold by Defendants," (Dkt#36, ¶10), that, "Bungie obtained a copy of the Cheat Software" *id.*, and that, "The team analyzed it to understand its features." *Id.*

21
22
23
24
25
26
27

      Further evidence on which Phoenix Digital bases the "information and belief" that Bungie reverse engineered or otherwise violated the Phoenix Digital Terms of Service is provided at ¶11 of Dr. Kaiser's Declaration wherein he testifies that, "In order to show the cheat users the location of players in Destiny 2, the Cheat Software needs to (a) ascertain the location of other players and (b) display the relevant information to the cheat user," and that, "Both of these actions require copying and modifying Bungie's software code in Destiny 2." (Dkt#36, ¶11.)

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1
2
3
4
5
6
7
8

Still further evidence on which Phoenix Digital bases the "information and belief" that Bungie reverse engineered or otherwise violated the Phoenix Digital Terms of Service is provided at ¶14 of Dr. Kaiser's Declaration wherein he testifies that, "To enable the Cheat Software's ESP feature, the Defendants needed to copy the data structures associated with player positioning in Destiny 2 to ascertain the location of other characters, and reverse engineer the software code for Destiny 2's rendering functions to modify what is displayed," and that, "Defendants then had to incorporate cheat software derived from copied Destiny 2 code into every copy of the Cheat Software that they sold or distributed." (Dkt#36, ¶14.)

9
10
11
12
13
14
15
16

Still further evidence on which Phoenix Digital bases the "information and belief" that Bungie reverse engineered or otherwise violated the Phoenix Digital Terms of Service is provided at ¶15 of Dr. Kaiser's Declaration wherein he testifies that, "In order for the Cheat Software features to work while playing Destiny 2, the Cheat Software injects into (i.e., runs its software code inside) the Destiny 2 engine," and that, "The injected code extracts information to which the cheat user does not ordinarily have access from the player positioning data structures and then manipulates the rendering data structures and calls the camera and display functions…" (Dkt#36, ¶15.)

17
18
19
20
21

Still further examples of where Bungie's own Engineering Lead, Dr. Kaiser, purports to have detailed knowledge of the inner workings of the "cheat software" at issue here are presented in Paragraphs 16-20 of Dr. Kaiser's Declaration, Dkt#36 upon which Bungie based its motion for preliminary injunction (Dkt#35) and upon which this Court relied in granting that injunction (Dkt#50).

22
23
24
25
26
27

For Bungie to claim now that it never did a detailed analysis of the subject "Cheat Software," that it did not reverse engineer it, decompile it, or otherwise engage in any of the activities proscribed by Phoenix Digital's Terms of Service is either disingenuous in the extreme or provides ample grounds for this Court to withdraw and vacate the preliminary injunction as having been granted in reliance on facts presented by Bungie that Bungie, itself, apparently now says are false.

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 14

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1        Phoenix Digital's Second Counterclaim further specifically alleges at Paragraphs 44

2  and 45 tha, "On information and belief, Bungie bypassed, removed, deactivated, and/or

3  impaired one or more of the technological measures Phoenix Digital employed to control

4  access to its proprietary programs it uses to distribute the "cheat software" at issue here," and

5  that, "Bungie, without the authorization of  Phoenix Digital, improperly gained access to

6  loader software used by Phoenix Digital to distribute the 'cheat software' at issue here to its

7  customers."  (Dkt#63, p.16, ¶¶44-45.)

8

## 2.    Bungie's Arguments Are Without Merit

9        Bungie makes the claim that Phoenix Digital fails to allege that its Terms of Service

10  "applied when Bungie purportedly downloaded the Cheat Software of that Bungie agreed to

11  them."  Bungie goes on to claim that, "Phoenix Digital's failure to plead such basic facts is

12  fatal, and likely incurable."  Nonsense.

13        At Paragraph 33 of its first Counterclaim (Dkt#63, ¶33), Phoenix Digital clearly

14  alleges that, "In order to gain access to the 'cheat software" products at issue here,

15  subscribers to any of the products offered by Phoenix Digital through the "Aimjunkies'

16  website must agree to the Terms of Service required by Phoenix Digital."  This language is

17  not restricted as to time, and a fair reading states clearly that agreeing to the Terms of Service

18  is a *requirement* of gaining access to the "cheat software" regardless of when it occurs.

19  Bungie's intentional failure to understand this clear language amounts, at best, to raising

20  debater's points and is hardly an adequate basis for dismissing a Counterclaim, either with or

21  without prejudice.

22        Furthermore, Bungie's argument at footnote 9 of its opposition claiming that its own

23  "captures" of the Aimjunkies website indicate the "current link...was added sometime after

24  Bungie filed its lawsuit," is a factual allegation that should and must be addressed other than

25  in a Rule 12(b)(6) motion, wherein factual allegations in a Counterclaim are to be regarded as

26  true.

27

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 15

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1      Finally, and although redundant, Phoenix Digital, through the accompanying

2   Declaration of its Officer and Director, David Schaefer, confirms that, yes indeed, the Terms

3   of Service attached as Exhibit C to the Counterclaims (Dkt# 63-3) were in effect well before

4   this action was filed and were in effect on January 3, 2020 when Bungie downloaded the

5   subject "cheat software" from the Aimjunkies website using a fake name and fake address to

6   do so. (Schaefer Declaration, ¶2.) Should this Court order that an amended Counterclaim be

7   filed, Phoenix Digital has ample facts available to do so.

8      Similarly, Bungie's claim that Phoenix Digital has failed to plead harm and damages

9   is misplaced.  As also established by the accompanying Declaration of David Schaefer,

10  Phoenix Digital created and developed proprietary software to enable subscribers to its

11  services to "load" certain "cheat software" into their computers. This proprietary software,

12  referred to herein as the "cheat loader," is protected under the Copyright laws as a work of

13  original authorship owned by Phoenix Digital.

14     As further established by the Declaration of Mr. Schaefer, Phoneix Digital actively

15  took steps to prevent unauthorized access to its proprietary "cheat loader." (Schaefer

16  Declaration, ¶4.)  These steps included the use of a commercially available tool called

17  Themida to protect the loader against reverse engineering. *Id.* The Themida tool obfuscates

18  and protects the software code so that the process of reverse engineering is extremely slowed

19  or entirely stopped. *Id.*  The Themida tool employs Themida's proprietary SecureEngine

20  technology to add anti-cracking techniques to the executable, adding protection to prevent

21  analysis and modification of the protected software. *Id.*  There is, in fact, ample factual

22  support for Phoenix Digital's allegation that its proprietary and copyrighted loader software is

23  protected by technological measure to prevent unauthorized access to its internal workings.

24     Bungie's claim that Phoenix Digital has not "identif[ied] an act of 'circumvention'"

25  allegedly committed by Bungie is equally flawed. At paragraph 40 of Phoenix Digital's first

26  counterclaim, Phoenix Digital expressly alleges that, "Upon information and belief, Bungie,

27  Inc., decompiled, reverse engineered and otherwise inspected the internal workings of the

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                    Page 16

1    "cheat software" product obtained from the aimjunkies website by "Martin Zeniu" on or about

2    January 3, 2020, in breach of the Phoenix Digital Terms of Service to which Bungie, Inc., had

3    agreed." (Dkt#63, ¶40.)  Phoenix Digital's "information and belief" are well-founded.

4        As discussed in detail at Section B 1 above, this "information and belief" is not "mere

5    speculation" or "conjecture," but, rather, is based on the claims made by Bungie itself.  These

6    include not only the various allegations made by Bungie in its first amended complaint

7    purporting to establish that the "cheat software" at issue here "copies" Bungie's claimed

8    software, but also includes the detailed declaration of Dr. Kaiser Bungie filed in this case

9    wherein he purports to have knowledge of the inner workings of the "cheat software."  If Dr.

10   Kaiser does have knowledge of the inner workings of the "cheat software," he reasonably

11   obtained it through decompiling or reverse engineering it in breach of Phoenix Digital's

12   Terms of Service.  If he does *not* have knowledge of the inner workings of the "cheat

13   software," this simply confirms what Defendants have been saying all along, namely that

14   Bungie does not, and cannot have evidence of "copying," and that this entire action is a sham

15   lawsuit brought in bad faith to "demonstrate that Bungie will not tolerate cheating in Destiny

16   2," and to shut down the entirely legal activities of Phoenix Digital and the individual

17   defendants.

18       Furthermore, at least one "Highly Confidential" document produced by Bungie in this

19   matter[2] confirms that Bungie conducted a detailed examination of the "Aimjunkies Cheat

20   loader," which, as established by the accompanying Declaration of David Scaefer, is a

21   proprietary and protected program created and owned by Phoenix Digital.  This two-page,

22   single-spaced document clearly shows that



This is a more than

23

24

25

26

27

2   See accompanying Declaration of Philip P. Mann and Exhibit A thereto.

28

1   adequate basis to form a plausible and reasonable belief that Bungie, in fact, analyzed and
2   reverse engineered the Phoenix Digital cheat loader, in breach of the applicable Terms of
3   Service.

4           Finally, and as further established by the Declaration of David Schaefer, Phoenix
5   Digital suffered damages and harm as a result of Bungie's breach of the Terms of Service.  In
6   particular, Phoenix Digital, upon forming the reasonable, (and now confirmed) belief that
7   Bungie was impermissibly analyzing and reverse engineering its cheat loader, was forced to
8   re-design and re-write the loader, all at considerable effort and expense to Phoenix Digital.
9   (Schaefer Declaration, ¶6.)    In addition, as a result of this baseless and unfounded lawsuit
10  Bungie has filed, which is based largely on a supposed investigation Bungie made of the cheat
11  loader in breach of the Terms of Service, and as a result of the widespread, adverse publicity
12  directed toward Phoenix Digital, the value of the aimjunkies.com website has been adversely
13  affected, and Phoenix Digital was only able to sell the website at a greatly reduced price
14  compared to what it was worth had this baseless lawsuit not been filed.    (Schaefer
15  Declaration, ¶7.)

16  **C.      The Counterclaims Cannot Properly Be Dismissed With Prejudice**

17          **1.      There Are Ample Facts To Support The Counterclaims**

18          There are ample facts, consisting in part of documents and testimony provided by
19  Bungie and/or its employees themselves, to support the Counterclaims.  The accompanying
20  Declaration of Defendant James May is more than adequate to set out a "plausible" claim that
21  Bungie, without authorization, accessed not only files on the hard drive of his computer, but
22  on remote drives connected to that computer as well.   Contrary to Bungie's unsupported
23  claims, Mr. May, who is actually familiar with the various files located in the more than one-
24  hundred file path locations listed on the very document that Bungie *itself* produced in
25  discovery (Dkt#63-2), testifies clearly in his accompanying declaration that these are, in fact,
26  his own private files containing personal and confidential information that, in many cases,
27  have *nothing* to do with Bungie or Destiny 2.  Furthermore, in his declaration, Mr. May

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                          Page 18

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1    establishes that he incurred more than $5000 in expenses and effort to correct the harms

2    caused by Bungie's unauthorized access to his computer.

3           Although Mr. May believes his Counterclaims as written set out facts that are more

4    than adequate to make a "plausible" claim, should this Court believe otherwise, Mr. May

5    should, and must, be accorded an opportunity to amend his pleadings to set out whatever

6    additional information is needed. It is well-settled law that motions to dismiss at the pleading

7    stage are disfavored, and that leave to amend should and must be granted freely. See *Tigard*

8    *Electric, Inc. v. National Electrical Contractors Ass'n,* 790 F. Supp. 1498, 1502 (D. Or. 1992)

9    ("Because the court rules before it receives any evidence, motions to dismiss are

10   disfavored."); Rule 15(a)(2) Fed.R.Civ.P.  ("The court should freely give leave [to amend]

11   when justice so requires.")

12          Similarly, Phoenix Digitals Counterclaims, which, too, are based on facts *already*

13   pleaded under oath by Bungie itself and confirmed by Bungie's own documents, set out more

14   than sufficient facts to support a plausible claim against Bungie.  Again, it is Bungie's own

15   allegations, both in its amended complaint and in the Declaration of Dr. Kaiser it has

16   previously submitted, that provide more than ample basis for Phoenix Digital to have the

17   "information and belief" that it alleges.   Again, should this Court believe that further

18   information is needed, Phoenix Digital should and must be accorded an opportunity to amend

19   its pleadings.

20          In short, the Counterclaims are hardly the sort of claims that simply cannot be proved

21   no matter how many attempts to amend them are made.  See, *McGary v. City of Portland,* 386

22   F.3d 1259, 1261 (9th Cir. 2004) ("Dismissal of the complaint is appropriate only if it appears

23   beyond doubt that the plaintiff can prove no set of facts in support of the claim which would

24   entitle him to relief."); *Hicks v. Skaar*, No. C20-5100 RJB, at \*4 (W.D. Wash. Oct. 15, 2020)

25   ("On a 12(b)6) motion, 'a district court should grant leave to amend even if no request to

26   amend the pleading was made, unless it determines that the pleading could not possibly be

27   cured by the allegation of other facts.'").  As established by the accompanying declarations,

28

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

1  more than sufficient facts are available, should they be needed, to supplement the pleadings
2  and "fill in" whatever holes might exist, if any.

3          **2.      Bungie's Procedural Arguments Are A Red Herring**

4          Bereft of factual and legal grounds to support its motion to dismiss, Bungie instead
5  attacks Defendants and their counsel on manufactured procedural grounds.

6          To the extent Bungie claims or suggests that Defendants are in default as a result of
7  the timing of their Answer and Counterclaims, the law in this District regarding default is
8  clear and set out in Local Rule LCR 55, which sets out in detail the procedure to be followed
9  in moving for default and that expressly provides that at least fourteen days notice be given
10 where, as here, the opposing party has appeared and is represented by counsel (LCR 55(a)).
11 Bungie did not follow this procedure, and the email Bungie sent asking when Defendants
12 would be filing their responsive pleading is, fairly read, either a genuine inquiry or a
13 "reminder" that the pleading is due.  To the extent Bungie supposes this somehow satisfies the
14 requirements of LCR 55(a), which expressly requires that Bungie give "written notice of [its]
15 intention to move for the entry of default," it does not.  No such intention is anywhere stated
16 in Bungie's email.  Either the email was intended to ask a genuine question, or it was part of
17 some calculated scheme to provide Bungie with ammunition for a later attack.  Either way,
18 Defendants are not in default, given Bungie's failure to follow the procedures expressly set
19 out in LCR 55.

20         Similarly, Bungie's not-so-veiled threat at footnote 2 of its motion to seek "sanctions
21 under Fed.R.Civ.P. 11(c)," is another example of Bungie's passive-aggressive posturing.  The
22 procedures under Rule 11 are clear and direct, and if Bungie believes it has legitimate grounds
23 for seeking Rule 11 sanctions, it could have and should have followed the clear procedure set
24 out under Fed.R.Civ.P. 11(c)(1)(A).  It has not, choosing instead to talk around the issue
25 rather than confront it head on.

26         In similar manner, Bungie pretends that it is somehow outrageous that the
27 Counterclaims were filed on September 16, 2022 *"over 18 months after Bungie initiated this*

28

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                         Page 20

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900

*action,"* (Bungie Motion p. 2, emphasis in original), as a simple review of the record will indicate that in all cases extensions of time were granted to Defendants, either by Bungie itself or by this Court, and there has been no pattern of repeated disregard for the deadlines in this case on part of the Defendants.  Again, it is likely because Bungie's case is weak on the merits that it needs to engage in such ancillary, procedural attacks rather than address the case on the merits.

### III    CONCLUSION

For all the reasons stated herein, Bungie's motion to dismiss should be denied. Alternatively, should this Court believe further facts are needed, Defendants should be accorded a reasonable opportunity to amend their Counterclaims.

Dated October 24, 2022.

*/s/ Philip P. Mann*

Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 21

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA 98110
Phone: 206.436.0900