1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

               Plaintiff,

    v.

AIMJUNKIES.COM; PHOENIX DIGITAL
GROUP, LLC; DAVID SCHAEFER; JORDAN
GREEN; JEFFREY CONWAY AND JAMES
MAY,

               Defendants.

No. 2:21-cv-811

**PLAINTIFF BUNGIE, INC.'S
MOTION TO DISMISS PHOENIX
DIGITAL GROUP, LLC'S AND
JAMES MAY'S AMENDED
COUNTERCLAIMS WITH
PREJUDICE**

NOTE ON MOTION CALENDAR:
January 6, 2023

ORAL ARGUMENT REQUESTED

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3  I.    INTRODUCTION ........................................................................................ 1

4  II.   STATEMENT OF FACTS .......................................................................... 1

5        A.    Procedural History .......................................................................... 1

6        B.    Bungie, the LSLA, and the Privacy Policy .................................... 2

7  III.  ARGUMENT .............................................................................................. 4

8        A.    Legal Standard ................................................................................ 4

9        B.    May's Computer Fraud and Abuse Act Claims Should Be Dismissed ................. 5

10             1.    All Three CFAA Claims Fail Because May Again Relies on
                     Speculative Assumption .......................................................... 6
11
               2.    May's CFAA Claims Fail Because He Permitted Bungie's Alleged
12                   Access ...................................................................................... 7

13             3.    May's 18 U.S.C. § 1030(a)(4) Claim Should Be Dismissed
                     Because May Fails to Allege Bungie Was Engaged in Fraud ................ 9
14
               4.    May's 18 U.S.C. § 1030(a)(5)(C) Claim Should Be Dismissed
15                   Because May Alleges Only that Bungie "Exceeds Authorized
                     Access" .................................................................................. 10
16
        C.    May's and Phoenix Digital's Amended DMCA Anti-Circumvention
17             Claims Should Be Dismissed ........................................................ 10

18             1.    Phoenix Digital Does Not Allege It Employs Technological
                     Protection Measures ............................................................. 11
19
               2.    Phoenix Digital and May Fail to Allege They Own Works
20                   Protected by Copyright that Bungie Accessed ....................... 12

21             3.    Phoenix Digital and May Fail to Allege that Bungie Circumvented
                     Protection Measures ............................................................. 14
22
        D.    Phoenix Digital's Breach of Contract Claim Should Be Dismissed .................... 16
23
        E.    The Counterclaims Should Be Dismissed with Prejudice .................... 17
24
   IV.   CONCLUSION ......................................................................................... 20

25

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
No. C 15-2288 SBA, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) ................................. 15

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) .......................................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 4

*Bailey-Medwell v. Hartford Life & Accident Ins. Co.*,
No. C17-1697-MJP, 2018 WL 5264335 (W.D. Wash. Oct. 23, 2018) ............................. 16

*Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp.*,
No. C13–1300–MJP, 2013 WL 6979555 (W.D. Wash. Oct. 31, 2013), *aff'd*,
655 F. App'x 564 (9th Cir. 2016) .................................................................................. 4, 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 554 (2007) ....................................................................................................... 12

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
292 F. Supp. 2d 1023 (N.D. Ill. 2003) ........................................................................... 13

*Dish Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ............................................................................ 15

*Egilman v. Keller & Heckman, LLP*,
401 F. Supp. 2d 105 (D.D.C. 2005) ................................................................................ 15

*Feist Publications, Inc. v. Rural Tele. Serv. Co., Inc.*,
499 U.S. 340 (1991) ....................................................................................................... 13

*FMHUB, LLC v. MuniPlatform, LLC*,
No. 19-15595 (FLW), 2021 WL 1422873 (D.N.J. Apr. 15, 2021) ................................... 11

*Grae-El v. City of Seattle*,
___ F. Supp. 3d ___, 2022 WL 2952381 (W.D. Wash. July 26, 2022) ......................... 5, 9, 17

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
497 F. Supp. 2d 627 (E.D. Pa. 2007) ............................................................................. 15

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4
*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
   No. 22-cv-4109-TSH, 2022 WL 16637988 (N.D. Cal. Nov. 2, 2022) ....................................7

5
*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,

6
   307 F. Supp. 2d 521 (S.D.N.Y. 2004).................................................................................15, 16

7
*Jagex Ltd. v. Impulse Software*,
   750 F. Supp. 2d 228 (D. Mass. 2010) .......................................................................................13

8
*Joint Stock Co. Channel One Russian Worldwide v. Infomir LLC*,

9
   No. 16-CV-1318 (GBD) (BCM), 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017)......................15

10
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

11
   387 F.3d 522 (6th Cir. 2004) ....................................................................................................12

12
*Navistar, Inc. v. New Balt. Garage, Inc.*,
   No. 11-cv-6269, 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012)................................................15

13
*nexTUNE, Inc. v. McKinney*,

14
   No. C12-1974 TSZ, 2013 WL 2403243 (W.D. Wash. May 31, 2013)..................................6, 7

15
*Nowak v. Xapo, Inc.*,

16
   No. 5:20-cv-3643-BLF, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....................................9

17
*Philips N. Am., LLC v. Summit Imaging Inc.*,
   No. C19-1745JLR, 2020 WL 1515624 (W.D. Wash. Mar. 30, 2020)...................................11

18
*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,

19
   No. 11-CV-726 (CBA), 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013)...................................13

20
*Shipley v. Trans Union Corp.*,

21
   No. C04-2560P, 2006 WL 1515594 (W.D. Wash. May 25, 2006) ...........................................19

22
*Song fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) .......................................................................................5

23
*Steckman v. Hart Brewing, Inc.*,

24
   143 F.3d 1293 (9th Cir. 1998) ..................................................................................................17

25
*TLS Grp., S.A. v. NuCloud Glob., Inc.*,

26
   No. 2:15-CV-00533-TC, 2016 WL 1562910 (D. Utah Apr. 18, 2016) ....................................15

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,
   630 F.3d 1255 (9th Cir. 2011) .........................................................12

*United Federation of Churches, LLC v. Johnson*,
   ___ F. Supp. 3d ___, 2022 WL 1128919 (W.D. Wash. Apr. 15, 2022) ...................................9

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016) .........................................................9

*Universal Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) ...........................................................16

*Vernon v. Qwest Commc'n Int'l, Inc.*,
   643 F. Supp. 2d 1256 (W.D. Wash. 2009) .................................................4

**STATUTES**

17 U.S.C. § 410(c) ....................................................................13

17 U.S.C. § 1201(a)(1)(A) ........................................................10, 11, 12

17 U.S.C. § 1201(a)(3)(A) ..............................................................14

18 U.S.C. § 1030(a)(2)(C) ...........................................................5, 7, 10

18 U.S.C. § 1030(a)(4) .............................................................5, 7, 9, 10

18 U.S.C. § 1030(a)(5)(C) ...........................................................5, 7, 10

Computer Fraud and Abuse Act ..................................................... passim

Digital Millennium Copyright Act................................................... passim

**RULES**

Rule 12(b)(6)..........................................................................4, 6

Rule 30(b)(6)........................................................................5, 17

**OTHER AUTHORITIES**

H.R. Rep. No. 105-551, pt. 1 (1998)....................................................15

PLAINTIFF'S MOT. FOR PRELIM. INJ.
(No. 2:21-cv-811) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1

2

## I.   INTRODUCTION

Despite having two chances to plead their counterclaims, Phoenix Digital Group, LLC's ("Phoenix Digital") and James May's (collectively, "Counterclaimants") amended counterclaims are once again legally deficient.  Remarkably, Counterclaimants' re-pled counterclaims suffer from many of the *exact same deficiencies* identified by the Court in its order dismissing their original counterclaims.  This failure to correct even the most obvious of deficiencies, in addition to Defendants' casual treatment of the federal and local rules, bad faith interpretation of the "on information and belief" pleading standard espoused to date, and inconsistent testimony regarding the claims at issue merits dismissal of all of their counterclaims with prejudice.

## II.   STATEMENT OF FACTS

### A.   Procedural History

Defendants[1] admit that they sold and distributed the cheat software at issue for Bungie's *Destiny 2* video game (the "Cheat Software").  Dkt. No. 72 (hereafter "Amend. Counterclaims") ¶ 63.  The Cheat Software infringes Bungie's copyrights, gives an unfair advantage to users of the cheat, violates legitimate users' expectations of fair play, and causes significant harm to both Bungie and the *Destiny 2* player base.  Dkt. No. 34 ("Amend. Compl.") ¶ 2; Dkt. No. 36 ("May 2022 Kaiser Decl.") ¶¶ 10–23.

Given Defendants' infringing conduct, and to protect itself and its player base, Bungie filed the present action naming Defendants and alleging claims of trademark infringement and copyright infringement.  Dkt. No. 1.  On July 1, 2022, this Court granted Bungie's Motion for Preliminary Injunction and held that "Bungie has made a strong showing that [Defendants'] conduct likely constitutes infringement of its exclusive right to copy or reproduce Destiny 2."  Dkt. No. 50 (Preliminary Injunction) p. 6.

---

[1] "Defendants" refers collectively to all Defendants in this action: AimJunkies.com, Phoenix Digital, David Schaefer, Jordan Green, Jeffrey Conway, and James May.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    A year and a half later, Counterclaimants belatedly made their first attempt at asserting

2 counterclaims against Bungie.  As detailed in Bungie's motion to dismiss those counterclaims,

3 that late filing followed a series of actions that flout the Local and Federal Rules, including being

4 the *third* late filing by Defendants in response to Bungie's pleadings, and eliciting yet another

5 directive from the Court that Defendants must comply with all local court rules in connection

6 with another filing.  Dkt. No. 64 p. 1–2; Dkt. No. 71 ("Order Dismissing Counterclaims") p. 9

7 n.2.  Defendants did not request leave for the late filing nor provide any explanation for it,

8 neither contemporaneously with the belatedly-filed Answer and Counterclaims nor in their

9 opposition to Bungie's first motion to dismiss.

10   Bungie moved to dismiss all of the Counterclaims asserted by May and Phoenix Digital,

11 which the Court granted, holding that Counterclaimants had failed to sufficiently plead facts

12 concerning multiple elements of every counterclaim asserted, and finding that "May's and

13 Phoenix Digital's reliance on [new declaration testimony submitted with the opposition]

14 demonstrate[d] a lack of candor with the Court."  Order Dismissing Counterclaims p. 4.  The

15 Court agreed that Bungie "made a strong showing that the counterclaims should be dismissed

16 with prejudice," but allowed amendment because the deadline to amend pleadings (November

17 21, 2022) had not passed.  *Id.* p. 9.

18   **B.    Bungie, the LSLA, and the Privacy Policy**

19   Bungie's *Destiny 2* video game is a successful shared-world first-person action video

20 game.  Originally released in September 2017, *Destiny 2* is now a free-to-play game with paid

21 expansions, continually refreshed downloadable content ("DLC"), and an estimated player base

22 of over 30 million players.  Dkt. No. 34 (hereafter, "Amend. Compl.") ¶¶ 26–27.  Among other

23 DLC, Bungie released its recent expansions, *Destiny 2: Beyond Light*, on November 10, 2020.

24 *Id.* ¶ 27.  Bungie is the owner of all rights, title, and interest in the copyrights in *Destiny 2* and

25

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1   *Destiny 2: Beyond Light*,[2] including as computer software and as audiovisual works, which are

2   the subject of four U.S. Copyright registrations.  *Id.* ¶ 37, Ex. 1–4.

3          Any player who downloads, installs, plays, copies, or uses *Destiny 2* must accept the

4   terms of Bungie's Limited Software License Agreement ("LSLA").  *Id.* ¶ 47; *see also* Dkt. No.

5   63-1 (copy of the LSLA attached to Defendants' answer and counterclaims).  By accepting the

6   LSLA, players also agree to be bound by Bungie's Privacy Policy, expressly incorporated by

7   reference in the LSLA.  Dkt. No. 72-1 (LSLA) p. 2; Dkt. No. 72-2 (Bungie's Privacy Policy).

8   James May is one of the players who accepted the LSLA and Privacy Policy.   Amend.

9   Counterclaims ¶¶ 6–8.  Under the terms of the Privacy Policy, "By using the Bungie Services,

10  you consent to the data practices described in this Privacy Statement."  Dkt. No. 72-2 p. 2.  The

11  Privacy Policy then describes how information is collected by Bungie, as consented to by

12  *Destiny 2* players, including that Bungie "collect[s] Personal Information about you and your use

13  of the Bungie Services via automated means, such as through cookies, web beacons and similar

14  technologies," including information such as:

15          •   Bungie Services Use Data, including information about your use of the Bungie

16              Services, the pages and content that you view, the referring and existing pages,

17              your access times, the links you click, and other actions taken within the Bungie

18              Services.

19          •   Device Data, including information regarding your device, such as device type,

20              operating system type, browser type, device regional and language settings, IP

21              address, and device ID (such as IDFA or AAID).

22      *Id.* p. 4.  This information is collected by Bungie to, among other reasons, "prevent

23  fraudulent use of the Bungie Services," "enforce our Terms of Use [and] our legal rights," and

24  "prevent or address potential or actual injury or interference with our rights, property, operations,

25  users or others who may be harmed or may suffer loss or damage."  *Id.* p. 6.  To collect data that

26

---

[2] For ease of reference, *Destiny 2* and *Destiny 2: Beyond Light* are referred to hereafter as "*Destiny 2*".

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    is helpful in preventing fraudulent uses of the Bungie Services and in protecting Bungie's

2    intellectual property rights, the *Destiny 2* process detects potentially malicious processes that can

3    interfere with *Destiny 2*, such as cheat software, computes an MD5 hash[3] of their corresponding

4    files, and reports the MD5 hash to Bungie, if queried.  Declaration of William C. Rava ("Rava

5    Decl."), Ex. 1 (Kaiser Dep. Tr.) at 124:17–125:10 (explaining that the file path for the

6    reclass/blah.64.exe file "attached to Destiny 2 and was attempting to reverse engineer the

7    game").

8                              III.    ARGUMENT

9    A.    Legal Standard

10          To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

11   accepted as true, to state a claim to relief that is plausible on its face."  *Vernon v. Qwest*

12   *Commc'n Int'l, Inc.*, 643 F. Supp. 2d 1256, 1261 (W.D. Wash. 2009) (quoting *Ashcroft v. Iqbal*,

13   556 U.S. 662, 678 (2009)).  Unlike factual allegations, legal conclusions are not accepted as true.

14   *Id.* (quoting *Ashcroft*, 556 U.S. at 664).  A complaint that pleads facts that are "merely consistent

15   with" a defendant's liability, "stops short of the line between possibility and plausibility of

16   entitlement to relief."  *Ashcroft*, 556 U.S. at 678 (internal citation and quotation omitted).  The

17   "mere possibility of misconduct" does not entitle the pleader to relief.  *Id.* at 679.

18   Counterclaimants' amended counterclaims fail to meet this standard.

19          Courts may rule on affirmative defenses—like the existence and effect of a party's terms of

20   service—in considering Rule 12(b)(6) motions "where the defense is apparent from the face of

21   the complaint."  *Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. v. Microsoft Corp*., No. C13–

22   1300–MJP, 2013 WL 6979555, at *3 (W.D. Wash. Oct. 31, 2013) (cleaned up) (holding that

23   license to copyrighted works was incorporated by reference, and dismissing copyright

24   _____

25          [3] An MD5 hash is a 1228-bit number that serves as unique file checksum.  MD5 hashes do not contain any
     information regarding the content of a file.  Often MD5 hashes are used to verify file integrity, indicating that two
     files are identical on a bitwise level, without having to open the file itself to compare, even if the nature or purpose
26   of the file has been obscured—for example, when a malicious program has been renamed with the title of an
     innocuous program.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    infringement claim on motion to dismiss based on the license), *aff'd*, 655 F. App'x 564 (9th Cir.

2    2016); *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 880 (N.D. Cal. 2015) (holding that

3    YouTube's Terms of Service were incorporated by reference, and dismissing claims that were

4    "foreclose[d]" by those terms).  And "where[,] as is the case here, the complaint incorporates

5    documents[,] . . . the Court may consider them in ruling on a 12(b)(6) motion," including

6    deposition transcripts incorporated by reference in the complaint.  *Beijing Zhongyi Zhongbiao*

7    *Elec.*, 2013 WL 6979555 at \*3; *Grae-El v. City of Seattle*, \_\_\_ F. Supp. 3d \_\_\_, 2022 WL

8    2952381, at \*8 n.8 (W.D. Wash. July 26, 2022).

9         Here, in their Amended Counterclaims, Counterclaimants disclosed and relied on Bungie's

10   LSLA and Privacy Policy, as well as the personal and Rule 30(b)(6) deposition transcripts of

11   Dr. Edward Kaiser.  *See, e.g.*, Amend. Counterclaims ¶¶ 7–8, 13, 24, 70, 72, 73.  Accordingly,

12   the LSLA, Privacy Policy, and Dr. Kaiser's deposition transcripts are incorporated by reference.

13   **B.    May's Computer Fraud and Abuse Act Claims Should Be Dismissed**

14        May reasserts three causes of action under the Computer Fraud and Abuse Act ("CFAA")

15   under 18 U.S.C. § 1030(a)(2)(C); 18 U.S.C. § 1030(a)(4); and 18 U.S.C. § 1030(a)(5)(C).  All

16   three should be dismissed because, as with his original CFAA counterclaims, these CFAA claims

17   rely on speculative assumptions about documents produced by Bungie in this case and because

18   May consented to the alleged "access" to his computer by agreeing to Bungie's Privacy Policy.

19   May's claim for unauthorized access with intent to defraud (18 U.S.C. § 1030(a)(4)) should be

20   dismissed for the independent reason that May does not allege that Bungie defrauded May, and

21   his claim for theft of computer data (18 U.S.C. § 1030(a)(5)(C)) should also be dismissed

22   because May does not allege that Bungie accessed his computer without authorization, as

23   required by the statute.

24

25

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1

### 1.    All Three CFAA Claims Fail Because May Again Relies on Speculative Assumption

2

On a Rule 12(b)(6) motion, the Court must accept reasonable inferences, but the Court is

3

not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

4

fact, or unreasonable inferences." *nexTUNE, Inc. v. McKinney*, No. C12-1974 TSZ, 2013 WL

5

2403243, at *4 (W.D. Wash. May 31, 2013) (Zilly, J.) (granting motion to dismiss where trade

6

secret claim was premised on "speculation unsupported by any factual allegation").  May's

7

original CFAA counterclaims were dismissed because, among other reasons, "May . . . [did] not

8

explain what [the spreadsheet BUNGIE_WDWA_0000409 attached as Exhibit B to May's

9

original counterclaims] [was] or how it evidence[d] 104 instances in which Bungie allegedly

10

accessed his computer without authorization and downloaded his personal information."  Order

11

Dismissing Counterclaims p. 6.

12

In his amended CFAA counterclaims, May relies on the same spreadsheet (Exhibit C)

13

and another document produced by Bungie (*see* Dkt. No. 72-4 (Exhibit D)), once again devoid of

14

any context alleging that these documents evidence instances of Bungie's unauthorized access.

15

*See* Amend. Counterclaims ¶¶ 12–15.

16

As to Exhibit D, May's description of the document simply states that it is "another

17

document Bungie, Inc. has produced in the course of this litigation and which was generated by

18

or on behalf of Bungie, Inc."  *Id.* at ¶ 20.  He then identifies a file *path*—not the content of any

19

file—purportedly found on his computer that is also listed on Exhibit D, but does not explain

20

what its inclusion in Exhibit D allegedly shows.  Like he did with his initial Counterclaims, May

21

again "does not explain what this document is or how it evidences [] instances in which Bungie

22

allegedly accessed his computer without authorization and downloaded his personal

23

information."  *See* Order Dismissing Counterclaims p. 6.

24

May has similar problems, again, with Exhibit C.  The only additional context for the

25

spreadsheet that May attempts to provide is an allegation that Bungie's Engineering Lead stated

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  during his deposition that the document is "an export from our [Bungie's] database

2  corresponding to the bans of all accounts that we [Bungie] know of being associated with James

3  May." *Id.* at ¶ 13. From this, May concludes that the document is "thus, an internal document

4  created by Bungie reflecting information collected by Bungie about Mr. May." *Id.* at ¶ 14. But

5  May does not provide any allegations explaining how a document from Bungie's internal

6  database evidences that information was collected from May by accessing May's computer.

7       May's unsupported conclusions regarding the meaning of Exhibits C and D—devoid of

8  factual allegations with supporting context—are nothing more than speculation, and should not

9  be accepted as true for purposes of the motion to dismiss. *nexTUNE*, 2013 WL 2403243, at *4.

10  May's CFAA counterclaims should therefore be dismissed.

11       **2.    May's CFAA Claims Fail Because He Permitted Bungie's Alleged Access**

12       May's CFAA counterclaims should also be dismissed because May admits that he agreed

13  to Bungie's Privacy Policy, which permits the activity that May alleges form the basis of his

14  CFAA claims. In other words, May authorized Bungie's alleged access of his computer.

15       Under 18 U.S.C. §§ 1030(a)(4) and 1030(a)(2)(C), a claimant must allege (among other

16  elements) that the other party "accesse[d] a protected computer without authorization, or

17  exceed[ed] authorized access." And under 18 U.S.C. § 1030(a)(5)(C), a claimant must allege

18  that the party "intentionally access[ed] a protected computer without authorization."[4] Thus,

19  where a claimant authorizes a party to access his computer and view or obtain certain

20  information, the claimant cannot maintain a CFAA claim for the party's access to that

21  information. *See HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-4109-TSH,

22  2022 WL 16637988, at *6 (N.D. Cal. Nov. 2, 2022) (granting motion to dismiss CFAA claim

23  where counterclaim plaintiff authorized counterclaim defendant to access software via contract).

24

25       [4] As discussed in further detail below, 18 U.S.C. § 1030(a)(5)(C) does not contain the "exceeds authorized

26  access" language, and thus any allegations that a party "exceeded authorized access" of a protected computer are not
actionable under this section. *Infra* Section III.B.4.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1      May admits that he accepted and was bound by both Bungie's LSLA and Privacy Policy,

2  and incorporates both by including them as exhibits to his counterclaims (Exhibits A (LSLA) &

3  B (Privacy Policy)).   *See* Amend. Counterclaims ¶¶ 6–8.   And he further concedes that he

4  provided at least some level of authorization for Bungie to collect data specified in Bungie's

5  Privacy Policy.   *Id.* at ¶ 32.   Therefore, the only issue is whether the Privacy Policy authorizes

6  Bungie to access the information that May alleges Bungie accessed.

7      It does, and May fails to allege facts sufficient to establish that Bungie's alleged access to

8  his computer would fall outside the scope of Bungie's Privacy Policy.   May repeatedly alleges

9  that the information supposedly accessed by Bungie is information about May's personal

10  computer (i.e., his device), such as file paths (i.e., where files are located, not the content of the

11  files) that exist on the computer he used in connection with *Destiny 2*.   Amend. Counterclaims

12  ¶¶ 16, 18, 19, 21, 26.   That's exactly the type of information covered by the Privacy Policy.

13      The Privacy Policy describes the "categories of information" that users consent to the

14  collection of, and then lists examples of the information that fits within those categories.   Dkt.

15  No. 72-2 p. 4.   These categories include "information about your use of the Bungie Services" and

16  "actions taken within the Bungie Services," as well as information about "your device."   *Id.*

17  Exemplary device data that Bungie's Privacy Policy discloses that Bungie collects includes

18  information "**such as** device type, operating system type, browser type…IP address, and device

19  ID," among other types of data.   *Id.* (emphasis added).

20      The Privacy Policy also explains why this information is collected by Bungie.   It is

21  collected to, among other reasons, "prevent fraudulent use of the Bungie Services," "enforce our

22  Terms of Use [and] our legal rights," and "prevent or address potential or actual injury or

23  interference with our rights, property, operations, users or others who may be harmed or may

24  suffer loss or damage."   *Id.* at p. 6.   In other words, Bungie is authorized to collect the type of

25  data from the computers of users of Bungie's services necessary to prevent fraudulent or

26  malicious activity, such as, the file paths of files used to reverse engineer *Destiny 2*.   May thus

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  expressly authorized this collection.   Kaiser Dep. Tr. at 124:17–125:10 (May's

2  reclass/blah.64.exe file "attached to Destiny 2 and was attempting to reverse engineer the

3  game").

4      May's counterclaims do not include any factual allegations demonstrating that the data

5  purportedly collected by Bungie falls outside of these categories of data he agreed to allow

6  Bungie to collect, and May's CFAA claims (Counterclaims 1-3) should thus be dismissed.  *See*

7  Amend. Counterclaims ¶¶ 1–53.

8      **3.    May's 18 U.S.C. § 1030(a)(4) Claim Should Be Dismissed Because May Fails to Allege Bungie Was Engaged in Fraud**

9      In order to survive a motion to dismiss a CFAA claim based on intent to defraud, the

10 claimant must allege (among other elements) that the other party accessed a protected computer

11 "knowingly and with intent to defraud."  18 U.S.C. § 1030(a)(4).  To plead fraud in this context,

12 May must allege "knowing and specific conduct," including pleading with particularity the

13 "who, what, when, where, and how of the misconduct charged."  *Nowak v. Xapo, Inc.*, No. 5:20-

14 cv-3643-BLF, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020) (quoting *United States v.*

15 *Nosal*, 844 F.3d 1024, 1032–33 (9th Cir. 2016)); *see also United Federation of Churches, LLC v.*

16 *Johnson*, ___ F. Supp. 3d ___, 2022 WL 1128919, at *6 n.8 (W.D. Wash. Apr. 15, 2022).  Here,

17 May alleges that Bungie committed fraud because Bungie's LSLA and Privacy Policy

18 purportedly represented that Bungie would collect "**only** the information expressly stated" in the

19 Privacy Policy.  Amend. Counterclaims ¶ 30 (emphasis added).  But a reading of the plain

20 language of the Privacy Policy expressly contradicts May's allegation of fraud.  *See Grae-El*,

21 2022 WL 2952381, at *8 n.8 (holding that the court may consider documents attached to the

22 complaint and need not accept the truth of conclusory allegations that contradict the document).

23     In particular, the Privacy Policy provides the "categories of information" that Bungie

24 collects and then lists exemplary types of data that are within those categories.  *See* Dkt. No. 72-

25 2 p. 4 ("The **categories of information** we automatically collect and have automatically

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

collected…**include**…"); *id.* ("Bungie Services Use Data, **including** information about your use of the Bungie Services….**and other actions taken** within the Bungie Services."); *id.* ("Device Data, **including** information regarding your device, **such as** device type, operating system type, browser type, device regional and language settings, IP addresses, and device ID (**such as** IDFA or AAID).").  Therefore, the enumerated data in the Privacy Policy is expressly exemplary, and the Privacy Policy did not state that it would "only" collect that enumerated information.  May has not alleged that Bungie accessed his computer "with intent to defraud," and this claim should be dismissed.

### 4.    May's 18 U.S.C. § 1030(a)(5)(C) Claim Should Be Dismissed Because May Alleges Only that Bungie "Exceeds Authorized Access"

A party is liable under 18 U.S.C. § 1030(a)(5)(C) only if the party "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage or loss."  Unlike May's other CFAA counterclaims, § 1030(a)(5)(C) does not make it unlawful to "exceed[] authorized access."  *Compare* 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4) *with id.* § 1030(a)(5)(C) (making it unlawful for anyone to "intentionally access[] a protected computer without authorization").  But, even in connection with this claim, May alleges only that Bungie "intentionally exceed[ed] the terms of the express authority provided by Bungie to Mr. May." Amend. Counterclaims ¶ 49.  May does not allege that Bungie accessed his computer without authorization.  In fact, *May concedes that May authorized Bungie to access his computer.  Id.* at ¶ 31 (stating that May "provided limited authorization" for Bungie to access his computer). Bungie therefore did not access May's computer "without authorization," and May's CFAA counterclaim under § 1030(a)(5)(C) should be dismissed.

### C.    May's and Phoenix Digital's Amended DMCA Anti-Circumvention Claims Should Be Dismissed

May and Phoenix Digital once again each assert counterclaims against Bungie under the Digital Millennium Copyright Act's ("DMCA") anti-circumvention provision, 17 U.S.C. § 1201(a)(1)(A).  To survive a motion to dismiss, Counterclaimants must allege facts sufficient

to show that (1) Counterclaimants employ technological measures that effectively control access (2) to Counterclaimants' works that are protected by copyright and that (3) Bungie circumvented those technological measures.  *See id.* ("No person shall circumvent a technological measure that effectively controls access to a work protected under this title.").  Despite their amendments, these claims remain legally deficient, including in ways previously identified by the Court when their original counterclaims were dismissed.

1.      **Phoenix Digital Does Not Allege It Employs Technological Protection Measures**

First, as with its initial attempt at an anti-circumvention claim, Phoenix Digital fails to allege that it employs technological measures that effectively control access to the program it alleges that Bungie accessed.  A complaint alleging a claim for violation of § 1201(a)(1)(A) is deficient if it "fails to allege that the copyrighted works are protected by technological measures."  *FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595 (FLW), 2021 WL 1422873, at *6 (D.N.J. Apr. 15, 2021) (granting motion to dismiss); *cf. Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 WL 1515624, at *2–3 (W.D. Wash. Mar. 30, 2020) (denying motion to dismiss where plaintiff specifically enumerated the different protection measures implemented).  Phoenix Digital's allegations concerning its technological protection measures are *virtually identical* to those that the Court held were insufficient when the Court dismissed Phoenix Digital's original claim.  *Compare* Dkt. No. 63 at ¶ 44 ("On information and belief, Bungie bypassed, removed, deactivated, and/or impaired one or more of the technological measures that Phoenix Digital employed to control access to its proprietary program it uses to distribute the 'cheat software' at issue here.") *and id.* at ¶ 45 ("Bungie defeated and compromised technological measures implemented by Phoenix Digital to preclude access to its loader software.") *with* Amend. Counterclaims ¶ 77 ("Bungie bypassed, removed, deactivated, and/or impaired one or more of the technological measures Phoenix Digital employed to control access to its proprietary programs it uses to distribute the 'cheat software' at issue here.") *and id.*

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1   at ¶ 78 ("In doing so, Bungie defeated and compromised technological measures implemented to

2   preclude such access to Phoenix Digital's loader software.").

3          As with its original attempt at a DMCA claim, Phoenix Digital "merely recites this

4   element of the cause of action [and] Phoenix Digital's allegations are insufficient."   Order

5   Dismissing Counterclaims p. 7.   Phoenix Digital's amended DMCA claim should again be

6   dismissed for that reason.

               **2.      Phoenix Digital and May Fail to Allege They Own Works Protected by
                         Copyright that Bungie Accessed**

7

8          Counterclaimants also failed to cure another deficiency with their DMCA claims

9   expressly identified by the Court when they failed to properly allege that Bungie accessed any

10  works "protected by [copyright]." 17 U.S.C. § 1201(a)(1)(A); *see also* Order Dismissing

11  Counterclaims p. 6–7; *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 550

12  (6th Cir. 2004) (The DMCA requires any "claimant to show that the 'technological measure' at

13  issue 'controls access to *a work protected under this title*,' . . . which is to say a work protected

14  under the general copyright statute.   To the extent the [plaintiff's software] is not a 'work

15  protected under [the copyright statute,]' . . . the DMCA necessarily would not protect it.")

16  (emphasis in original).   Both May and Phoenix Digital recite the bare legal conclusion that

17  "[Counterclaimant] owns and holds copyrights in [their files and programs] pursuant to 17

18  U.S.C. § 201." *See* Amend. Counterclaims ¶¶ 16, 18, 19, 21, 23, 26, 28.   But the Court need not

19  accept these naked conclusions.   Order Dismissing Counterclaims p. 3 ("[the pleading] must

20  offer 'more than labels and conclusions' and contain more than a 'formulaic recitation of the

21  elements of a cause of action'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

22  (2007)).

23         Unlike Bungie, Counterclaimants do not claim to have registered any of the supposedly

24  copyrighted works that they now claim to own, meaning that Counterclaimants do not enjoy the

25  presumption of validity and ownership that attaches to copyright registration.   *United Fabrics*

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    *Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) ("A copyright registration is

2    'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'")

3    (quoting 17 U.S.C. § 410(c)).

4           "In the DMCA context, where a party has not registered its work, the absence of

5    registration 'makes it difficult for [a counterclaimant] to succeed on [its] DMCA claim, which is

6    dependent on proof of a valid copyright." *Point 4 Data Corp. v. Tri-State Surgical Supply &

7    Equip., Ltd.*, No. 11-CV-726 (CBA), 2013 WL 4409434, at *17 (E.D.N.Y. Aug. 2, 2013)

8    (quoting *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 237 (D. Mass. 2010)).  In *Point 4

9    Data Corp.*, "because plaintiffs [did] not have a registered copyright in the [software allegedly

10   accessed by the defendant], the Court [needed to] examine whether plaintiffs [had] adduced

11   sufficient evidence to establish a genuine issue of fact with respect to copyrightability of their

12   [software in the summary judgment context]." *Id.*; *see also Chamberlain Grp., Inc. v. Skylink

13   Techs., Inc.*, 292 F. Supp. 2d 1023, 1038 (N.D. Ill. 2003) (denying plaintiff summary judgment

14   on DMCA claim where there was a dispute of material fact whether unregistered computer

15   software was protected by copyright).  So too here.  On a motion to dismiss Counterclaimants'

16   DMCA counterclaims, the Amended Counterclaims must contain sufficient factual allegations to

17   demonstrate the copyrightability of their alleged programs and data.  *See Point 4 Data Corp.*,

18   2013 WL 4409434, at *17; *Chamberlain Grp.*, 292 F. Supp. 2d at 1038.  A work is copyrightable

19   if it was "independently created by the author" and "possesses at least some minimal degree of

20   creativity."  *Feist Publications, Inc. v. Rural Tele. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991).

21   While computer programs are copyrightable, "not every element, whether literal or nonliteral, is

22   automatically entitled to protection," and so the scope of copyrightable computer programs is

23   limited by "the exclusion of functional elements, the merger doctrine, and the *scenes a faire*

24   doctrine."  *Point 4 Data Corp.*, 2013 WL 4409434, at *18.  "Thus, for computer software to

25   merit copyright protection, it is not enough for the party claiming protection to show that it

26   independently created a certain number of lines of code."  *Id.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Counterclaimants fail to allege even the most basic of elements of copyrightability for the software Bungie allegedly accessed.  May alleges only that "[b]y virtue of being the author of the data and files generated and stored on his personal computer, Mr. May owns and holds copyrights in such data and files pursuant to 17 U.S.C. § 201."  Amend. Counterclaims ¶ 3. While May identifies some of these files by their alleged file path, he concludes simply that he "owns and holds copyrights" in those files "pursuant to 17 U.S.C. § 201."  *Id.* at ¶¶ 16, 18, 19, 21, 26, 28.  May fails to allege that these files possess the requisite level of creativity to suggest even the possibility of copyrightability, let alone any facts to demonstrate that the elements he claims are protected are not functional or otherwise unprotectable under the merger or *scenes a faire* doctrines.  Phoenix Digital alleges even less.  *See* Amend. Counterclaims ¶¶ 4, 23.  It does not even allege that whatever programs and files it supposedly claims are protected by copyright[5] were independently created by any author, let alone Phoenix Digital.  *See id.*  And, like May, Phoenix Digital fails to allege that these files are sufficiently creative to merit protection or that they otherwise contain protectable elements.  *Id.*  Counterclaimants' DMCA claims should therefore be dismissed for this reason too.

### 3.   Phoenix Digital and May Fail to Allege that Bungie Circumvented Protection Measures

As with their original DMCA counterclaims, Counterclaimants do not allege that Bungie circumvented any technological measure implemented by Counterclaimants.  Counterclaimants do not allege that Bungie "descramble[d] a scrambled work, []decrypt[ed] an encrypted work, or otherwise avoid[ed], bypass[ed], remove[d], deactivate[d], or impair[ed] a technological measure."  *See* 17 U.S.C. § 1201(a)(3)(A) (defining "circumvent a technological measure" in the DMCA).  Instead, Counterclaimants' circumvention theory apparently rests on the allegation that Bungie used "deceit and subterfuge" to access files on May's computer, including files allegedly owned by Phoenix Digital, by "falsely representing that Bungie would collect only the

---

[5] This is likely because, as explained below, contrary to Defendant David Schaefer's sworn testimony in his declaration, Phoenix Digital does not, in fact, own the copyright to the loader software it uses.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    information specified by the Bungie Privacy Policy." *See* Amend. Counterclaims ¶ 56.  Phoenix

2    Digital's allegations are even more sparse, claiming only that Bungie "gained access to 'loader'

3    software" without explanation of how.   *Id.* at ¶ 78.   These allegations do not constitute

4    "circumvention."

5          It is well-established that "using deception to gain access to copyrighted material is not

6    the type of 'circumvention' that Congress intended to combat in passing the DMCA."  *Dish*

7    *Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012) (denying

8    plaintiff leave to file second amended complaint with DMCA claim in which plaintiff alleged

9    defendant obtained access to decrypted signals through "fraud and deceit"); *Adobe Sys. Inc. v. A*

10   *& S Elecs., Inc.*, No. C 15-2288 SBA, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015)

11   (granting motion to dismiss DMCA claim where only alleged act of circumvention was

12   unauthorized distribution of otherwise genuine software license keys); *TLS Grp., S.A. v.*

13   *NuCloud Glob., Inc.*, No. 2:15-CV-00533-TC, 2016 WL 1562910, at *9 (D. Utah Apr. 18, 2016)

14   (holding that circumvention "through fraud and deceit…is not a violation of § 1201(a)(1)");

15   *Joint Stock Co. Channel One Russian Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD)

16   (BCM), 2017 WL 696126, at *18 (S.D.N.Y. Feb. 15, 2017) ("Similarly, there is no liability

17   under § 1201(a)(1)(A) where the defendant misuses a password, or otherwise uses 'deceptive'

18   methods (as opposed to its own technology) to circumvention the technology that the copyright

19   owner relies on for protection.").[6]  The DMCA is aimed at the conduct of those who "decod[e]

20   the encrypted codes protecting copyrighted works," and those who breach the "digital walls"

21   erected by copyright owners.  *Dish Network*, 893 F. Supp. 2d at 454 (quoting H.R. Rep. No. 105-

22   551, pt. 1, at 19 (1998)).  "[A] cause of action under the DMCA does not accrue upon

23   unauthorized and injurious action *alone*; rather, the DMCA 'targets the *circumvention* of digital

24

_____

25        [6] *See also Navistar, Inc. v. New Balt. Garage, Inc.*, No. 11-cv-6269, 2012 WL 4338816, at *4 (N.D. Ill.
     Sept. 20, 2012); *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 645 (E.D.
26   Pa. 2007); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005); *I.M.S. Inquiry Mgmt. Sys.,*
     *Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004).

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    walls guarding copyrighted material.'"   *I.M.S. Inquiry Mgmt. Sys.*, 307 F. Supp. 2d at 532

2    (quoting *Universal Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001)).

3         The *only* alleged act of circumvention in is May's counterclaims for "deceit and

4    subterfuge" based on Bungie's allegedly misleading Privacy Policy.   Amend. Counterclaims

5    ¶ 56.   That supposed "circumvention" is not actionable under the DMCA.   Phoenix Digital, for

6    its counterclaim, does not even attempt to remedy the pleading error from its first DMCA

7    counterclaim, instead repeating *the exact same allegation* that the Court held insufficient because

8    it was merely a "recitation of the statutory language."   Order Dismissing Counterclaims p. 7 n.1;

9    *compare* Dkt. No. 63 ¶ 44 *with* Amend. Counterclaims ¶ 77.   Counterclaimants' DMCA claims

10   should therefore be dismissed for failure to allege facts sufficient to show circumvention.

11   **D.    Phoenix Digital's Breach of Contract Claim Should Be Dismissed**

12        To plead a breach of contract claim, Phoenix Digital must plead, among other things, that

13   Bungie breached a contract.   *Bailey-Medwell v. Hartford Life & Accident Ins. Co.*, No. C17-

14   1697-MJP, 2018 WL 5264335, at *3 (W.D. Wash. Oct. 23, 2018).   Phoenix Digital fails to meet

15   this simple requirement.   Phoenix Digital alleges that by agreeing to its Terms of Service,

16   purchasers agree not to "modify, hack, decompile, disassemble, reverse engineer, derive source

17   code, or create derivative works of our software in part or in whole," and not to "transmit our

18   software or display the software's object code on any computer screen or to make any hard copy

19   memory dumps of the software's object code."   Amend. Counterclaims ¶ 68.   This is the only

20   provision Phoenix Digital alleges is at issue.

21        ***Phoenix Digital does not allege that Bungie engaged in any of the prohibited conduct.***

22   Phoenix Digital alleges that Bungie's corporate representative testified during his deposition that

23   Bungie "tested" the cheat software that is the subject of this lawsuit.   *Id.* at ¶ 72.   Nothing more.

24   But "testing" is not one of the enumerated acts prohibited by Phoenix Digital's Terms of Service.

25   Nor does Phoenix Digital allege any facts that would suggest "testing" involves *any* of the

26   prohibited acts in the Terms of Service.   Instead, Phoenix Digital jumps to the unsupported

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    conclusion "testing" software means that Bungie decompiled, reverse engineered and "otherwise

2    inspected the internal workings of" the cheat software (the latter of which is also not mentioned

3    in the Terms of Service). *Id.* at ¶ 73.  That's insufficient to plead a breach of contract.

4         Moreover, Bungie's corporate representative testified that Bungie did *not* perform any of

5    these prohibited activities in connection with the cheat software.  Rava Decl., Ex. 2 (Dr. Kaiser

6    30(b)(6) Dep. Tr.), 117:11–118:7.[7]    Where the facts contained in a deposition transcript

7    incorporated by reference in a complaint "contradict [Counterclaimants'] conclusory assertions,"

8    the Court on a motion to dismiss need not accept Counterclaimants' conclusory assertions as

9    true.  *Grae-El*, 2022 WL 2952381, at *8 n.8 (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d

10   1293, 1295–96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations

11   which are contradicted by documents referred to in the complaint")).    Accordingly, the Court

12   should disregard Phoenix Digital's unsupported conclusion that "testing" means "decompiling,

13   reverse engineering" or any of the activities identified in its Terms of Service, and dismiss

14   Phoenix Digital's breach of contract counterclaim.

15   **E.    The Counterclaims Should Be Dismissed with Prejudice**

16         "Five factors are frequently used to assess the propriety of a motion for leave to amend:

17   (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and

18   (5) whether plaintiff has previously amended his complaint."  *Allen v. City of Beverly Hills*, 911

19   F.2d 367, 373 (9th Cir. 1990).  This Court previously held that Bungie "made a strong showing

20   that the counterclaims should be dismissed with prejudice."  Order Dismissing Counterclaims p.

21   9.  The reasons to dismiss with prejudice have only grown.

22         *First*, as with their original counterclaims, Counterclaimants bring their amended

23   counterclaims in bad faith knowing their allegations are unsupported, false, and with the

24   calculated intent to damage Bungie's reputation.  As explained in Bungie's prior Motion to

25

26   [7] Counterclaimants repeatedly reference and even quote both the personal and 30(b)(6) deposition transcripts for Bungie's Engineering Lead (Amend. Counterclaims ¶¶ 13, 24, 70, 72, 73), and so those transcripts may be relied upon in evaluating this motion to dismiss.  *Grae-El*, 2022 WL 2952381, at *8 n.8.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –17

159296657.4

1   Dismiss, Counterclaimants' true intentions in filing their counterclaims were exposed by David

2   Schaefer's recent emails to various third parties.  As Schaefer explained to a third party, he

3   construes the phrase "on information and belief" as "code for 'its [sic] not true but were [sic]

4   going to throw this out there and see if it sticks with the judge[.]'" Dkt. No. 65-3.[8]  He further

5   notes that he believes the phrase is used by Bungie to "get away with [saying] what they say in a

6   filing that they cant [sic] say in public because its slanderous." *Id.*  With this malicious

7   definition of what "on information and belief" means and why it is used, Schaefer explains he is

8   "embracing 'on information and belief'" in his counterclaims.  *Id.*  Counterclaimants have

9   apparently taken this erroneous definition to heart and acted in accordance, alleging claims with

10  no basis to "get away with" allegations that they know are "not true" to "see if it sticks."  To

11  state the obvious, Schaefer is mistaken; alleging facts "on information and belief" does not

12  justify or excuse making knowingly false allegations or "get[ting] away" with libel (or slander).

13        Additionally, Counterclaimants continue to present patently false allegations and sworn

14  testimony in support of their counterclaims.  For instance, in opposition to Bungie's First Motion

15  to Dismiss, Schaefer submitted a declaration stating that "Phoenix Digital claims, owns and

16  enjoys copyright protection for its 'cheat loader' software."  Dkt. No. 67-2 (Schaefer Decl.) ¶ 3.

17  Not so.  Soon after submitting this declaration to the Court, ████████████████████

18  ████████████████████████    ████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████    Simply put, Phoenix Digital does not and

21  cannot own the copyright to the cheat loader.[9]  Similarly, May alleges in his amended

22

23    [8] Bungie discovered Schaefer's correspondence through a YouTube video posted by Mr. Hoeg:
      (https://www.youtube.com/watch?v=2aQeBeXuj5s).  Defendants did not produce this communication and
24    Defendants' counsel recently confirmed that Schaefer deleted his emails to third parties such as Mr. Hoeg. Dkt. No.
      65-2 (email to P. Mann regarding September 30, 2022 meet and confer).  Bungie intends to pursue remedies,
25    including seeking spoliation sanctions, at the appropriate time.
      [9] Tellingly, in its amended counterclaims, Phoenix Digital carefully drafts around this issue asserting only
26    that the loader software is a "copyrighted work[] of others."  Amend. Counterclaims ¶ 4.  That does not, however,
      rectify the falsehood in Schaefer's sworn declaration.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    counterclaims that he "owns and holds copyrights" to the "blah54.exe" file.    Amend.

2    Counterclaims ¶ 16. ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████████

5    ████████████████████████[10]    Such inconsistencies or falsehoods underscore the need to

6    dismiss these counterclaims with prejudice.    *Shipley v. Trans Union Corp.*, No. C04-2560P, 2006

7    WL 1515594, at *3 (W.D. Wash. May 25, 2006) (finding claims were brought in bad faith where

8    they were based on dishonest acts and for the purpose of harassment).

9        ***Second and third***, Defendants' unexplained delay in filing their response to Bungie's

10    pleading in violation of the Federal Rules and the prejudice it has caused is reason to dismiss

11    their claims with prejudice.  Dkt. Nos. 18, 38; 40, 55 p. 1 n.1, 61 n. 5, 63. The parties have

12    already exchanged the majority of their documents, both parties are at or near the limit on their

13    interrogatory requests, depositions have been taken, the deadline for disclosing expert testimony

14    has passed, and discovery soon closes (Feb. 21, 2022).  In fact, when asked for an extension of

15    the case deadlines in light of Counterclaimants' belated counterclaims which, if allowed, would

16    require extensive additional discovery, Counterclaimants *refused* to agree to extend *any* case

17    deadlines.  Rava Decl., Ex. 5 (November 9, 2022 email from P. Mann) ("We cannot agree to

18    extend the expert disclosure deadline at this time, nor can we agree to any extension of

19    discovery.").  Moreover, the deadline to amend pleadings is now well passed, and there is no

20    reason Defendants should be allowed to amend now.

21        ***Fourth and fifth***, a third opportunity for Counterclaimants to plead their claims would be

22    futile.  Counterclaimants have had two bites at the apple.  Despite the Court's order detailing

23    Counterclaimants' various pleading deficiencies with the claims they now reassert, they have

24    failed to correct many of these fundamental deficiencies.  The reason Counterclaimants have not

25

26        [10] The document referred to in this portion of the deposition was the same document provided as Exhibit C
    to the Amended Counterclaims.

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4

1    corrected these fundamental errors the second time around is obvious—they cannot correct them.

2    Despite having 20 months and two attempts to craft their counterclaims, as well as months of

3    discovery to try to find factual support for their claims, Counterclaimants are still unable to

4    sufficiently plead key elements of their claims or provide sufficient factual allegations.  There is

5    no reason to give them yet another opportunity to respond to Bungie's pleadings.

6                                            **IV.   CONCLUSION**

7              For the foregoing reasons, Bungie respectfully requests that Phoenix Digital's and James

8    May's counterclaims be dismissed with prejudice.

9

10

11   Dated: December 8, 2022                    By: */s/William C. Rava*

12                                                  William C. Rava, Bar No. 29948
                                                   Christian W. Marcelo, Bar No. 51193
                                                   Jacob P. Dini, Bar No. 54115

13                                                 **Perkins Coie LLP**
                                                   1201 Third Avenue, Suite 4900

14                                                 Seattle, Washington 98101-3099
                                                   Telephone: +1.206.359.8000

15                                                 Facsimile: +1.206.359.9000
                                                   WRava@perkinscoie.com

16                                                 CMarcelo@perkinscoie.com
                                                   JDini@perkinscoie.com

17
                                                   *Attorneys for Plaintiff Bungie, Inc.*
18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOT. TO DISMISS
(No. 2:21-cv-811) –20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

159296657.4