# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

_____

BUNGIE, INC., a Delaware            )
corporation,                        )
                                    )
                                    )No.2:21-cv-0811 TSZ
                                    )
          Plaintiff,                )        VOL. I
                                    )     (Confidential)
     v.                             )
                                    )
AIMJUNKIES.COM, a business of       )
unknown classification; PHOENIX     )
DIGITAL GROUP LLC, an Arizona       )
limited liability company;          )
JEFFREY CONWAY, an individual;      )
DAVID SCHAEFER, an individual;      )
JORDAN GREEN, an individual; and    )
JAMES MAY, an individual,           )
                                    )
          Defendants.               )
_____

ZOOM DEPOSITION UPON ORAL EXAMINATION
OF
EDWARD KAISER
_____

Tuesday, October 4, 2022
8:59 a.m.

Reported.  By:  Deanna M. Ellis, CCR No. 2511

1        A.    That refers to, in the Windows operating

2    system, the hard drive that that file is located on.

3        Sorry.  Let me correct myself.  The viral drive,

4    not necessarily a hard drive, but the resource that that

5    file is located on.

6        Q.    Now, if we look at that file path, c:/users,

7    doesn't that refer to it's on the C drive of a

8    particular machine?  It's in a first file name users.

9    The sub-file of that, user name James.  And it's located

10   on the desktop of James' computer.  Isn't that a fair

11   interpretation of what we're looking at in Column 3, Row

12   3 of this exhibit?

13       A.    No.

14       Q.    No?  What does that refer to?

15       A.    It refers to a file path.

16       Q.    And you have no idea what that file path might

17   be?

18       A.    I see the file path written in front of me.

19       Q.    And you've told me you have a Ph.D. in

20   computer technology.  Can you tell me what that file

21   path means?

22                 MR. RAVA:  Object to the form.

23       A.    I did not tell you I have a Ph.D. in computer

24   technology.

25       Q.    Okay.  Do you understand how computer files

Page 124

1    are put together?  If you don't, that's fine, too.

2                    MR. RAVA:  Object to the form.

3        A.    What do you mean, "put together"?

4        Q.    What I mean is does the c:\users\James\desktop

5    mean anything to you?

6        A.    There is some information contained there, but

7    no.  Otherwise, it doesn't mean anything to me.

8        Q.    But that does not tell you that is a -- that

9    appears on the desktop of James May's computer?

10       A.    May or may not.

11       Q.    It may or may not?  So you don't know.  So if

12   we get to trial and I start asking about this, you will

13   not be the man who's going to tell us what all this

14   means, correct?

15                    MR. RAVA:  Object to form.

16       A.    I've told you what this means.

17       Q.    And, as I understand it, you say this does not

18   refer to the desktop on the C drive of Mr. May's

19   computer?

20                    MR. RAVA:  Object to the form.

21       A.    This is a file path.  It is a string of

22   characters that describes the structure of folders and a

23   file name of a file that when executed attached to

24   Destiny 2.

25       Q.    Why would Bungie collect this data if they do

Page 125

1  not know what to do with it or they don't know what it

2  means?

3      A.   As I told you earlier, this file attached to

4  Destiny 2 and was attempting to reverse engineer the

5  game.

6      Q.   Now, I understand the file was attempting to

7  reverse engineer the game.  So you do know what that

8  file does?

9      A.   A process was created when that file was run,

10 when it's reverse engineering the game.

11     Q.   Now, is that file located on Mr. May's

12 computer?

13     A.   I don't know.

14     Q.   Would the cheat software be resident on the

15 Bungie computers?

16     A.   No.

17     Q.   So if it's not on the Bungie computers, where

18 else could it be?

19     A.   It could be on a network device.  It could be

20 on a USB key.  There's lots of possibilities.

21     Q.   But those would be operated by Mr. May.  This

22 wouldn't be on a network device operated by Bungie,

23 would it?

24     A.   No.  Bungie is not in the market for making

25 cheat software, reverse engineering tools.

1      Q.   Okay.  So if it's on a network device, it

2  would be on a network device operated by Mr. May?

3  Wouldn't that be the reasonable assumption?

4      A.   You could say that, I guess.

5      Q.   Okay.  And isn't it a fact, again, that Bungie

6  is collecting data that is resident on one or more

7  devices operated by Mr. May?

8      A.   Can you repeat the question, please.

9      Q.   Isn't it reasonable to assume that Bungie is

10  collecting data that is resident on one or more devices

11  that are being operated by Mr. May?

12      A.   No.

13      Q.   Well, you've already told me that they aren't

14  being operated by Bungie, correct?

15      A.   Correct.

16      Q.   Okay.  Who else could they be operated by?

17      A.   This machine in question could be operated by

18  any of the other named defendants, I suppose.

19      Q.   Even though it says James?

20      A.   Sure.

21      Q.   Now, let's go to the account ID that we see in

22  Column 1.  I won't read it off, but it stars out 4611

23  and it ends in 788.

24      Do you know what that account ID number refers to?

25      A.   I do not see an account ID that ends in 788.

Page 234

1

2                       C E R T I F I C A T E

3    STATE OF WASHINGTON)
                        )  ss
4    COUNTY OF SNOHOMISH)

5

            I, the undersigned Washington Certified Court
6    Reporter, pursuant to RCW 5.28.010, authorized to
     administer oaths and affirmations in and for the State
7    of Washington, do hereby certify:

8            That the foregoing deposition consisting of
     pages 1 through 235 of the testimony of each witness
9    named herein was taken stenographically before me and
     reduced to typed format under my direction;
10
            I further certify that according to CR 30(e)
11   the witness was given the opportunity to examine, read
     and sign the deposition after same was transcribed,
12   unless indicated in the record that review was waived;

13           I further certify all objections made at the
     time of said examination to my qualifications or manner
14   of taking the deposition or to the conduct of any party
     have been noted by me upon each said deposition;
15
            I further certify that I am not a relative or
16   employee of any such attorney or counsel, and that I am
     not financially interested in the action or the outcome
17   thereof;

18           I further certify that each witness before
     examination was by me duly sworn to testify the truth,
19   the whole truth, and nothing but the truth;

20           I further certify that the deposition, as
     transcribed, is a full, true and correct transcript of
21   the testimony, including questions and answers, and all
     objections, motions, and exceptions of counsel made and
22   taken at the time of the foregoing examination and was
     prepared pursuant to the Washington Administrative Code
23   308-14-135, the transcript preparation format
     guidelines;
24
            I further certify that I am sealing the
25   deposition in an envelope with the title of the above
     cause and the name of the witness visible, and I am
     cause and the name of the witness visible, and I am

1    delivering the same to the appropriate authority;

2            I further advise you that as a matter of firm
     policy, the Stenographic notes of this transcript will
3    be destroyed three years from the date appearing on the
     Certificate unless notice is received otherwise from any
4    party or counsel hereto on or before said date;
            IN WITNESS WHEREOF, I have hereunto set my
5    hand and affixed my official seal this 19th day of
     October, 2022.

6

7    _____
                         Deanna M. Ellis, CCR
8                        Washington State Certified
                         Court Reporter
9                        License No. 2511

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

_____

Bungie, INC., a Delaware          )
corporation,                      )
                                  )
                                  )No.2:21-cv-0811 TSZ
                                  )
          Plaintiff,              )        30(b)(6)
                                  )     (Confidential)
     v.                           )
                                  )
AIMJUNKIES.COM, a business of     )
unknown classification; PHOENIX   )
DIGITAL GROUP LLC, an Arizona     )
limited liability company;        )
JEFFREY CONWAY, an individual;    )
DAVID SCHAEFER, an individual;    )
JORDAN GREEN, an individual; and  )
JAMES MAY, an individual          )
                                  )
          Defendants.             )
_____

ZOOM DEPOSITION UPON ORAL EXAMINATION
OF
EDWARD KAISER

_____

Wednesday, October 5, 2022
11:22 a.m.

Reported.  By:  Deanna M. Ellis, CCR No. 2511

1   stuff.  My understanding was that some of the

2   information you get regarding a user is information that

3   is provided by Windows.  I believe it's a Windows API

4   function.

5       Does that make sense?

6       A.   I believe that is the case.

7       Q.   So can that Windows API function connect to,

8   basically, anything on a user's computer.

9                 MR. RAVA:  Object to the form and, I

10  guess, topic.

11      You can answer.

12      A.   I believe one of the parameters to the

13  function is a handle.  So if you have a valid handle you

14  could reference any other process that had --

15      Q.   So if I'm using the Windows' API function, do

16  I provide the handle or does Windows provide the?

17  Handle.

18      A.   The handle came from Windows.

19      Q.   So did Windows provide you with a handle to

20  link to or associates with the cheat software?

21      A.   There's another API call in which you would be

22  able to query all the handles of processes that are

23  attached to your process.  It can enumerate all the

24  processes that have attached to and manipulated your

25  processes.

1          Q.    And if I'm Bungie, how do I determine what

2     those handles are?

3                    MR. RAVA:  I think with that question,

4     it starts to get into specific sort of investigatory

5     techniques that I think get into highly confidential

6     material.

7                    MR. MANN:  Okay.  Well, that's fair

8     enough.  In fact, I think we've already covered this

9     before.  We don't need to use our limited time on

10    something we've already covered.

11         Q.    Let's move on.  Category 6 of the deposition

12    notice we provided said, when, how, and where Bungie,

13    Inc. first inspected, disassembled, decompiled, reverse

14    engineered, tested, or otherwise examined any cheat

15    software products accused of violating, in any way,

16    the -- Bungie in this action.

17         I know we had an extensive discussion earlier about

18    the person that looked into this stuff.

19         Have we covered everything that that person did,

20    would you say?

21         A.    I believe so.  They ran the software once, as

22    far as I know.

23         Q.    Did they ever disassemble the software?

24         A.    I don't believe.

25         Q.    Did they ever decompile the software?

Page 118

1        A.    I don't believe so.

2        Q.    Did they ever reverse engineer the software?

3        A.    I don't believe so.

4        Q.    Did they ever run any tests on the software?

5   By tests, I mean something other than simply run the

6   software for its intended purpose?

7        A.    Not that I know of.

8               MR. RAVA:  Mr. Mann, just for the

9   record, I would like to state that we printed a copy of

10  the 30(b)(6) notice, and it is close to Dr. Kaiser.

11              MR. MANN:  So he has -- I'm glad.  Yeah.

12  I didn't make this one of the exhibits.  I've got a copy

13  of it myself.

14       But, Dr. Kaiser, if you have a copy in front of

15  you, you're certainly welcome to read it and follow

16  along with me.  That might actually make it easier.

17       No objection from me.

18              MR. RAVA:  But I did want to make that

19  clear.  He's looking at -- otherwise, he's just looking

20  at the screen, but there is a printout of the 30(b)(6)

21  notice available to him.

22              MR. MANN:  No.  That's not a problem.

23  And, actually, you're making my job easier.  I

24  appreciate it.

25       In thinking a little more, I would have designated

Page 119

1    this as an exhibit.

2         Q.   But, Dr. Kaiser, you're certainly free to

3    refer to the document in front of you.  In fact, I would

4    encourage you to do so.

5         So let's move onto Category 7.  I believe that

6    appears on Page 5 of the Notice of Deposition.

7         A.   Okay.

8         Q.   And I think this is stuff that we've already

9    covered.  As you can probably guess, our contention is

10   the defendants, with the exception of Mr. May, never

11   agreed to or otherwise found themselves bound by the

12   LSLA.  I understand that Bungie disagrees with us on

13   that.

14        But, again, is there anything further you want to

15   tell me about in that regard that we haven't previously

16   discussed?  And what I mean by this is I'd like to know

17   all grounds, all factual allegations upon which Bungie

18   states that the defendants, with the exception of

19   Mr. May, are somehow bound by the LSLA?

20        A.   I believe that is primarily the connecting to

21   Destiny and signing into an account.

22        Q.   Signing into an account.  And, again, my

23   understanding is those records have been provided to us?

24        A.   I believe so.

25        Q.   Thank you.

1

2                   C E R T I F I C A T E

3    STATE OF WASHINGTON)
                       )  ss
4    COUNTY OF SNOHOMISH)

5

6            I, the undersigned Washington Certified Court
     Reporter, pursuant to RCW 5.28.010, authorized to
     administer oaths and affirmations in and for the State
7    of Washington, do hereby certify:

8            That the foregoing deposition consisting of
     pages 1 through 132  of the testimony of each witness
9    named herein was taken stenographically before me and
     reduced to typed format under my direction;
10
             I further certify that according to CR 30(e)
11   the witness was given the opportunity to examine, read
     and sign the deposition after same was transcribed,
12   unless indicated in the record that review was waived;

13           I further certify all objections made at the
     time of said examination to my qualifications or manner
14   of taking the deposition or to the conduct of any party
     have been noted by me upon each said deposition;
15
             I further certify that I am not a relative or
16   employee of any such attorney or counsel, and that I am
     not financially interested in the action or the outcome
17   thereof;

18           I further certify that each witness before
     examination was by me duly sworn to testify the truth,
19   the whole truth, and nothing but the truth;

20           I further certify that the deposition, as
     transcribed, is a full, true and correct transcript of
21   the testimony, including questions and answers, and all
     objections, motions, and exceptions of counsel made and
22   taken at the time of the foregoing examination and was
     prepared pursuant to the Washington Administrative Code
23   308-14-135, the transcript preparation format
     guidelines;
24
             I further certify that I am sealing the
25   deposition in an envelope with the title of the above
     cause and the name of the witness visible, and I am
     cause and the name of the witness visible, and I am

Page 132

1   delivering the same to the appropriate authority;

2        I further advise you that as a matter of firm
    policy, the Stenographic notes of this transcript will
3   be destroyed three years from the date appearing on the
    Certificate unless notice is received otherwise from any
4   party or counsel hereto on or before said date;
             IN WITNESS WHEREOF, I have hereunto set my
5   hand and affixed my official seal this 23rd day of
    October, 2022.

6

7        _____
                        Deanna M. Ellis, CCR
8                       Washington State Certified
                        Court Reporter
9                       License No. 2511

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 3
# FILED UNDER SEAL

# EXHIBIT 4
# FILED UNDER SEAL

EXHIBIT 5

| | |
|---|---|
| **From:** | Phil Mann <phil@mannlawgroup.com> |
| **Sent:** | Wednesday, November 09, 2022 3:30 PM |
| **To:** | Marcelo, Christian W. (SEA) |
| **Cc:** | Rava, William C. (SEA); Dini, Jacob  (SEA) |
| **Subject:** | Re: Bungie, Inc. v. AimJunkies.com, et al., No. 2:21-cv-811-TSZ - Expert Report Deadline |

Thanks Christian,

We cannot agree to extend the expert disclosure deadline at this time, nor can we agree to any extension of discovery. This case has been pending for nearly one-and-one-half years, and its existence has had a profoundly deleterious effect on my clients' business and their personal lives.  It needs to be resolved and brought to a conclusion as quickly as possible.

If Bungie is willing to engage in meaningful settlement negotiations to bring all matters to an end, we are more than willing to speak.  However we cannot agree to have this cloud hang over the defendants' heads any longer than the current schedule allows.

All the best,

Phil

On 11/9/22 3:17 PM, Marcelo, Christian W. (SEA) wrote:

> Phil – bringing this to the top of your inbox. Let us know if Defendants agree to extending the expert report deadline.
>
> Thanks,
>
> Christian
>
> **Christian Marcelo** | **Perkins Coie LLP**
> D. +1.206.359.3315
>
> **From:** Marcelo, Christian W. (SEA)
> **Sent:** Tuesday, November 8, 2022 3:12 PM
> **To:** Phil Mann <phil@mannlawgroup.com>
> **Cc:** Rava, William C. (SEA) <WRava@perkinscoie.com>; Dini, Jacob (SEA) <JDini@perkinscoie.com>
> **Subject:** Bungie, Inc. v. AimJunkies.com, et al., No. 2:21-cv-811-TSZ - Expert Report Deadline
>
> Phil,
>
> We're writing regarding the upcoming deadline to exchange expert reports on November 21. Given the pending potential counterclaims which, if they remain, will require expert analysis and reports, we propose agreeing to push the expert report deadline to 30 days after the pleadings are finalized (either after the motion is granted and no amendment is allowed, or after Bungie files its answer to any

remaining or amended claims). Depending on the timing of Judge Zilly's ruling, the other discovery deadlines may need to be moved as well. We're happy to address those now, or wait to see if it's necessary based on the timing/substance of the order.

Given the pending deadline, please let us know by Thursday morning if Defendants agree to this extension.

Best,

Christian

**Christian Marcelo** | **Perkins Coie LLP**
1201 Third Avenue Suite 4900
Seattle, WA 98101-3099
D. +1.206.359.3315
F. +1.206.359.4315
E. CMarcelo@perkinscoie.com

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.