THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS**<br><br>**Note on Motion Calendar: January 6, 2022**<br><br>**Oral Argument Requested** |

Defendants Phoenix Digital Group LLC ("Phoenix Digital") and James May ("Mr. May"), for the reasons stated herein, oppose Plaintiff Bungie, Inc.'s Motion to Dismiss their Amended Counterclaims (Dkt#72).

## I.    INTRODUCTION

As it is becoming increasingly apparent that Bungie's case is a house of cards bereft of any legal or factual merit,[1] Bungie continues repeating its sensational but factually baseless allegations, which this Court has, by now, heard at least a half dozen times.  Rather than respond in kind, Phoenix Digital and Mr. May will endeavor to focus on the applicable law and the pleadings themselves.

---

1 For example, at the recently concluded arbitration hearing conducted December 19-22, 2022, Bungie's witnesses confirmed under oath that Bungie *has never actually seen or reviewed* the source code or object code that Bungie in this case claims was "copied" from its Destiny 2 game.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

## II      GOVERNING LAW AND STANDARDS

In its November 10, 2022 Order (Dkt#71) dismissing, without prejudice, Defendants' counterclaims, this Court clearly outlined and correctly stated the "Motion to Dismiss Standards" applicable in this case.  (Dkt#71, pp. 3-5.)  Those standards constitute the "law of the case" and should continue to apply here.

Among other things, this Court clarified that, "Although a pleading challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer 'more than labels and conclusions' and contain more than a 'formulaic recitation of the elements of a cause of action.'"   *Id.* at p.3.  The Amended Counterclaims, which comprise more than eighty separate paragraphs stating in detail the factual basis for the counterclaims are hardly, "labels," "conclusions" or a "formulaic recitation of the elements of a cause of action."  A simple review of these pleadings gives lie to any claim that they are.[2]

In dismissing the original counterclaims, this Court elected to discount and ignore the detailed declarations provided by Phoenix Digital and Mr. May to support their allegations.  (See, Dkt#71, p. 4, "The law is well established that, unless the Rule 12(b)(6) motion is treated as brought under Rule 56, the Court may consider only documents referenced in the pleading and evidence subject to judicial notice...Accordingly, the Court will not consider the declarations.")

In the Amended Counterclaims, the facts set out in the previously discounted declarations have been incorporated into the amended counterclaims and are now fully set out in detail in those Ammended Counterclaims.  Accordingly, those facts now constitute an integral part of the pleadings and must be considered.  In addition, under well established law noted by the Court itself, "[T]he Court must assume the truth of May's and Phoenix Digital's allegations and draw all reasonable inferences in their favor."  (Dkt#71, p.4)

---

2  Indeed, it would be far less time consuming and far more efficient simply to review the 12 pages of the Amended Counterclaims themselves rather than study what will likely be 50+ pages of briefing offering competing versions of what the Counterclaims actually say.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

As Bungie brings its motion under Fed.R.Civ.P. 12(b)(6), "The law is well established that, unless the Rule 12(b)(6) motion is treated as brought under Rule 56, the Court may consider only documents referenced in the pleading and evidence subject to judicial notice." (Dkt#71, p.4)  Because Bungie clearly brings its motion under Rule 12(b)(6), not Rule 56, and has clearly elected not to proceed under the rules controlling summary judgment motions, it would be inappropriate and clear legal error for the Court to consider and accept Bungie's challenges to the accuracy of the factual assertions set out in the amended counterclaims rather than the substance of those assertions.  In short, Bungie's motion to dismiss is not the time, place or mechanism for it to claim it did not do what is clearly alleged in the amended counterclaims.  Factual determinations of that nature should, *and must,* await either a proper motion under Rule 56, or if that is unsuccessful, trial on the merits.

The question before the Court is whether the Amended Counterclaims allege sufficient facts to set out a plausible theory, not who is telling the truth or which facts do or do not exist.

For the reasons set out in detail below, the Amended Counterclaims are more than sufficient to do so.  Bungie's motion to dismiss ignores what the pleadings actually say and argues instead that this Court should not believe the allegations.  Again, this is neither a summary judgment motion nor trial, and Bungie's gratuitous attacks on Mr. May, Phoenix Digital and their counsel are legally irrelevant to the actual issue before the Court.

### III    THE COURT'S PRIOR HOLDINGS

Despite a hodge-podge "shotgun" attack by Bungie on the original counterclaims, this Court, in its November 10, 2022 Order, explicitly noted and relied on only a few specific deficiencies in the counterclaims in dismissing them and granting leave to amend.  These deficiencies, expressly noted by the Court, are as discussed below.

### A.    Failure Adequately To Address Damages

In its November 10, 2022 Order, this Court held the prior counterclaims failed adequately to alleged that Mr. May suffered damages. In the words of the Court, "May alleges

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 3

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

in a conclusory fashion that he suffered 'irreparable injury and damage,'… but he does not allege that his loss exceeded $5,000 during a one-year period. (Dkt#71, p.6).

**B.      Failure To Explain "Exhibit B" Of The Counterclaims**

In its November 10, 2022 Order, this Court held that Mr. May failed adequately to establish what the exhibit he relies on (Exhibit B to Counterclaim, Dkt# 63-2) actually is.  In the words of the Court, "May, however, does not explain what this document [docket no. 63-2] is or how it evidences instances in which Bungie allegedly accessed his computer without authorization and  downloaded his personal information."  (Dkt#71, p.6).

**C.      Failure to Plead Anti-Circumvention Facts**

In its November 10, 2022 Order, this Court held that the counterclaims did not adequately plead facts establishing a "circumvention" claim under 17 U.S.C. § 1201(a).

In the words of the Court, "To state a claim under this provision [17 U.S.C. § 1201(a)], a claimant must allege that (i) the work at issue was protected under the Copyright Act, (ii) the copyrighted work was protected by 'a technological measure,' and (iii) the technological measure was 'circumvented' in order to obtain access to the copyrighted work....May, for example, alleges only that Bungie accessed 'files on his personal computer's hard drive' without addressing whether any of those files are protected under the Copyright Act." (Dkt#71, p.6).

In the further words of the Court, "Neither May nor Phoenix Digital allege that Bungie accessed any  copyrighted work." (Dkt#71, p.7.) "May, for example, alleges only that Bungie accessed "files on his personal computer's hard drive" without addressing whether any of those files are protected under the Copyright Act." *Id.*  "Phoenix Digital contends that Bungie accessed its 'loader software,'… but does not address whether the 'loader software' constitutes a copyrighted work."  *Id.*

Similarly, "Phoenix Digital has not pleaded any facts to support that its "loader software" was protected by a technological measure. Instead, Phoenix Digital merely recites this element of the cause of action."  (Dkt#71, p.7.)

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

**D.     Breach of Contract Claims**

In dismissing Defendants' breach of contract counterclaims, the Court stated only that, "In this case, Phoenix Digital has not sufficiently pleaded damages." The Court did not accept any of the other grounds asserted by Bungie for dismissing the breach of contract claims. (Dkt#71, p.7.)

### IV     THE AMENDED COUNTERCLAIMS REMEDY THE DEFICIENCIES NOTED BY THE COURT

The Amended Counterclaims have been specifically drafted to address the deficiencies identified and relied upon in this Court's order (Dkt#71) dismissing the original counterclaims. In particular, the detailed facts set out in the earlier filed Declarations of Mr. May and Mr. Schaefer (Dkt##s 67-1, 67-2) have been incorporated into the Amended Counterclaims. More than ample detail is provided in the Amended Counterclaims to address the earlier deficiencies.

**A.     The Amended Counterclaims Detail Mr. May's Damages**

The damages suffered by Mr. May as a result of Bungie's unauthorized access to Mr. May's computer with intent to defraud in violation of 18 U.S.C. § 1030(a)(4) are set out with specificity in paragraphs 35 and 36 of Mr. May's Amended Counterclaims.

Paragraph 35 expressly alleges that, "Bungie, Inc.'s unauthorized access of Mr. May's confidential and private computer files has caused and will continue to cause Mr. May irreparable injury and damage in excess of $5000 in less than one year." This is all that the law requires to be pleaded.

Going beyond the bare minimum required by law, Paragraph 36 of Mr. May's Amended Counterclaims further provides specific detail and facts as to how, and in what amount, these damages were incurred, alleging, among other things, that Mr. May's damages:

> [I]nclude, but are not limited to, his spending in excess of $2702 to purchase new computers and drives, and spending in excess of 40 hours reviewing files for indication of compromise, cleaning such files when detected, and getting the new

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 5

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

computer set up and ready for work, all incurred at the fair value of his time of at least $75 per hour. [3]

There can be no serious dispute that, in his Amended Counterclaims, Mr. May has adequately pleaded his damages in full compliance with legal requirements.

**B.      The Amended Counterclaims Establish what Exhibit "B" Of The Original Counterclaims Actually Is**

Mr. May's Amended Counterclaims specify in detail what former "Exhibit B," (now Counterclaim Exhibit C, Dkt#72-3) is.  This is expressly set out in paragraphs 12-19 of the Amended Counterclaims.

Paragraphs 12-19 of the Amended Counterclaims not only state expressly what this exhibit is, they provide more than ample detail to specify where it came from and what Bungie, *itself,* admits it is.  In particular, Paragraph 12 states that Exhibit C, "is Bungie Production Document BUNGIE_WDWA_0000409, which Bungie, Inc., produced on or about July 25, 2022 in the course of this litigation."  There is nothing unclear or unambiguous about this statement.

Paragraph 13 specifies when and how Bungie's own Engineering Lead, Dr. Edward Kaiser, testified under oath that this exhibit is, "an export of data from our [Bungie's] database corresponding to the bans of all accounts that we [Bungie] know of being associated with James May."  There is nothing unclear or unambiguous about this statement either.

Paragraph 15 specifies that, "Exhibit C evidences some one-hundred and four (104) instances in which Bungie, Inc., without the knowledge of, and authorization by, Mr. May accessed Mr. May's personal computer and downloaded information from it."

Paragraphs 16-19 specify in detail the factual basis on which the allegation of Paragraph 15 is based.  In particular, Paragraph 16 specifies, among other things, that the data shown in "Column 3" of the exhibit, "contains multiple listings that identify computer files contained only on Mr. May's computer," and that, "Such listings are expressly identified, for

---

3 In the event Bungie pedantically claims Mr. May failed to state the total, this Court can take judicial notice that $2702 + (40 x $75) = $5702, and that $5702 > $5000.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

example, with the location, "c:\users\james\desktop\reclass\blah64.exe (4D09FFB3B8CFE53A8250D1A112C4CDE3)." Paragraph 16 further specifies that this file, "is a private file on the "c" drive of Mr. May's computer," and that the file, "is protected by the passwords and firewall operating on Mr. May's computer to prevent unauthorized access by others to his computer." Finally, Paragraph 16 expressly states that, "Mr. May owns and holds copyrights in this file pursuant to 17 U.S.C. § 201."[4]

Paragraph 17 of the Amended Counterclaim specifies and clarifies that, "The data in 'Column 3' of Exhibit C lists several computer file paths that Mr. May recognizes as being files on his own computer and that contain his personal and confidential records and data." This clarifies that the data shown in "Column 3" of the document Bungie put together and produced comprises, in fact, files on Mr. May's own computer, and that these files contain Mr. May's personal confidential records and data. This establishes Mr. May's proprietary interest in the files improperly accessed by Bungie.

Paragraph 18 specifies that Bungie further accessed, without authorization, an external drive attached to Mr. May's personal computer and, on December 19, 2019, downloaded a file identified as ""g:\work files\reclass\x64\plugins\reclasskernel64.sys," which, again, is a file in which Mr. May holds copyrights pursuant to 17 U.S.C. § 201.

Finally, Paragraph 19 specifies that, "Column 3 of Exhibit C further references the file path "c:\users\james\desktop\ reclass\blah64.exe." Paragraph 19 further specifies that this filepath, "is the location of a file on Mr. May's personal computer representing the default desktop in the Windows operating system for his file, 'james,' which contains Mr. May's personal and proprietary files." Paragraph 19 also specifies that Mr. May holds copyrights in these files pursuant to 17 U.S.C. § 201.

Based on the foregoing, the Amended Counterclaims are far more than "bare bones" and are far more than a simple recitation of the elements of a claim. Indeed, they go into far more detail than Bungie has ever provided in any of its claims against Defendants. The

---

4  The basis for this allegation is set out in Paragraph 3 of the Amended Counterclaims.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

Amended Counterclaims are more than sufficient to allege, plausibly, that Bungie did, in fact, create Exhibit C, and did, in fact, access the files identified in Column 3, which files are the personal, confidential and copyright protected files of Mr. May and are contained on Mr. May's personal computer and external drive attached thereto.  To accept otherwise would be to ignore the plain language of the pleadings and engage in willful blindness as to what is actually and expressly stated therein.

**C.     The Amended Counterclaims Allege That The Improperly Accessed Files And Programs Are Protected By Copyright And What Technological Measures Were Circumvented In Improperly Accessing Them**

The deficiencies noted in this Court's November 10, 2022 Order regarding whether the subject works are protected under the Copyright Act and how any technological measures were circumvented have been fully corrected in the Amended Counterclaims.

As to copyrights, Paragraph 3 of the Amended Counterclaims specifies that, "By virtue of being the author of the data and files generated and stored on his personal computer, Mr. May owns and holds copyrights in such data and files pursuant to 17 U.S.C. § 201. ("Copyright in a work protected under this title vests initially in the author or authors of the work.")"  This is based on the clear, well established law that copyrights come into existence *upon the creation* of an original work, and *exist independently* of whether the copyright is later registered or remains unregistered.

In addition to the foregoing, Paragraph 4 of the Amended Counterclaims alleges with specificity not only that Mr. May's copyrighted files were resident on his personal computer, but that third-party copyrighted works were, with the permission of their owners, resident on his computer as well.  "In addition, copyrighted works of others are, with the authorization of the owners of such copyrighted works, stored and maintained on Mr. May's personal computer."

Paragraph 4 further specifies that, "Such works include, but are not limited to, 'loader' software and 'driver' software made available to Mr. May with permission by co-defendant

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 8

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

Phoenix Digital Group LLC."  Paragraph 4 clearly alleges that the "loader" software and "driver" software made available to Mr. May and that was resident on Mr. May's personal computer are copyrighted works.

Paragraphs 16, 18, 19, 21, 23, 26 and 28 of the Amended Counterclaims each expressly identify files that Bungie accessed and copied without authorization and each expressly alleges that these files are protected by copyright.  Any claim by Bungie that the Amended Counterclaims fail to allege  "that Bungie accessed any copyrighted work," is simply untrue.

As to the technological measures that were circumvented, the Amended Counterclaims specify in detail what they are.

In particular, paragraphs 41 and 48 of the Amended Counterclaims expressly allege that technological measures used by Mr. May to prevent unauthorized access to the private files on his computer include, "the use of passwords and firewalls to preclude unauthorized access to the data, files and records thereon."  The case law is clear that passwords and firewalls do, indeed, comprise "technological measures" for purposes of 17 U.S.C. § 1201(a)(1)(A).  See, e.g., *Synopsys, Inc. v. InnoGrit, Corp.,* No. 19-CV-02082-LHK, 2019 WL 4848387, at *12 (N.D. Cal. Oct. 1, 2019)  ("Courts that have examined similar password or encrypted control code systems in the past have roundly concluded that these systems are indeed "technological measures" for the purposes of the DMCA.")  See also, *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.,* 315 F. Supp. 3d 1147 (C.D. Cal. 2018) (Holding that use of "CAPTCHAS" to  control access to website is use of a "technological measure" for purposes of DMCA).  Again, any claim that the Amended Counterclaims do not identify the "technological measures" employed by Mr. May to protect the personal and confidential files on his computer is simply unfounded.

Paragraphs 42 and 49 of the Amended Counterclaims specify how Bungie circumvented these technological measures.  In particular, these paragraphs specify that Bungie circumvented the passwords and firewall by means of deceit and subterfuge.  In

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 9

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

particular, and as specified by Paragraphs 42 and 49, Bungie deceived Mr. May by exceeding the authority Mr. May provided for Bungie to gain only highly limited access to Mr. May's computer.   As specified by these paragraphs, "by falsely representing that Bungie would collect only the information specified by the Bungie Privacy Policy, Bungie obtained limited access to Mr. May's computer, thereby bypassing the password and firewall technology utilized by Mr. May to protect his files."

As further specified by these paragraphs, "By intentionally exceeding the terms of the express authority provided to Bungie by Mr. May, Bungie engaged in theft of Mr. May's private computer data."   Subterfuge and deceit (e.g., bribing a security guard, posing as an authorized agent, presenting forged documents, etc.,) have long been recognized as means for "bypassing" security measures.   The allegations of the Amended Counterclaims are more than sufficient to set out plausible theory that Mr. May had technological measures in place to secure his private data and that Bungie "circumvented" them by means of deceit.

As amended, the Amended Counterclaims expressly and explicitly state that the files improperly accessed by Bungie are copyrighted works, that they were protected by technological measures, (i.e., passwords and firewalls) and that Bungie "bypassed" these measures through deceit and subterfuge.

**D.**     **Phoenix Digital's Breach Of Contract Claims**

The sole basis stated in this Court's November 10, 2022 Order dismissing Phoenix Digital's breach of contract counterclaim is that Phoenix Digital did not adequately plead damages.   The Amended Counterclaims cure and obviate that basis for dismissal.

In particular, Paragraph 75 of the Amended Counterclaims specifies that Phoenix Digital's damages:

[I]nclude but are not limited to investigating and responding to inaccurate and factually baseless claims by Bungie, both in and outside of court, that Phoenix Digital has engaged in unlawful conduct when it has not, which accusations have diminished the fair market value of Phoenix Digital's "aimjunkies" website, resulting in Phoenix Digital's sale of the website at a price lower than that that would have been realized had Bungie not breached the applicable Terms of

Service and not made false and harmful accusations against Phoenix Digital and its Officers and Directors.

Paragraph 75 sets out in detail not only that Phoenix Digital suffered damages but what those damages include.   Paragraph 75 is not a naked statement that damages were suffered, and it is not a rote recitation of a required element.   These are consequential damages suffered as a consequence of Bungie's unlawful actions in: (1) violating Phoenix Digital's Terms of Service, and (2) bringing baseless legal actions against Phoenix Digital based on a purported sham "investigation" of Phoenix Digital.

### V      BUNGIE'S ARGUMENTS CHALLENGE THE EVIDENCE AND PLEADED FACTS, NOT THE SUFFICIENCY OF THE PLEADINGS

Behind the rhetoric, the fact is that Bungie does not challenge the sufficiency of the pleadings. Instead, Bungie challenges whether Defendants have proved their allegations.   As this Court has correctly noted, those questions are reserved for either summary judgment or trial.  They are not properly addressed at the pleading stage.

Furthermore, and as the Amended Counterclaims are not entirely new, but rather, consist of the earlier filed counterclaims supplemented with more than necessary detail, the arguments Bungie raises in its latest motion to dismiss are simply repeats of the same arguments this Court considered earlier but did not adopt in its November 10, 2022 Order dismissing the original counterclaims.

As noted in Section **III** above, this Court clearly stated the deficiencies in the original counterclaims and accorded Defendants an opportunity to amend their counterclaims to address those deficiencies.   In their Amended Counterclaims, Defendants have done just that, and Bungie should not be permitted to rely on arguments previously submitted and not adopted by this Court.

A review of Bungie's arguments reveal that they do not address the pleadings themselves, but, rather, simply deny Defendants' allegations or claim that Defendants have insufficient evidence to prove them.  Again, those are not proper arguments or issues on a

motion to dismiss, which is based on the pleadings and in which all factual allegations are presumed to be true.

## A.    Reliance on "Speculative Assumptions"

Aside from being a thinly disguised repeat of arguments previously made but not adopted by this Court, Bungie's claim that Defendants are relying on "speculative assumptions" is sophistry.

Exhibits C and D of the Amended Counterclaims are documents produced by Bungie itself.  Although Bungie feigns ignorance of what they show, at Exhibit C was both introduced and relied upon by Bungie in the recently concluded arbitration hearing on the now dismissed claims as evidencing improper conduct on the part of Mr. May.  In short, Bungie not only admitted obtaining this information from Mr. May's computer, Bungie argued during the arbitration that this document shows improper conduct by Mr. May.  And it was Dr. Kaiser himself who testified at the arbitration hearing as to what Exhibit C was and what it meant.  Bungie is clearly hoping that it can tell one story at the arbitration and a different one here by trying to maintain a clear line between the two separate, but nevertheless highly related, proceedings.  Again, this is legal legerdemain that should not be endorsed by this Court.

Furthermore, there is no denying what Exhibits C and D say, and there is no denying that they show access, by Bungie, to files not only on the hard drive of Mr. May's computer but on an external drive connected to Mr. May's computer.[5]  This is not argument presented here for the first time but is set out in detail in Paragraphs 12-28 of the Amended Counterclaims.  These paragraphs do not set out, "mere speculation."  They set out specific allegations of misconduct on the part of Bungie and they set out the detailed facts on which these allegations are based.  Again, Bungie's arguments are sophistry and, at best, challenge

---

5  Indeed, Bungie never denies accessing Mr. May's computer and obtaining the information contained in Exhibits C & D.  Instead, Bungie merely claims, "May does not provide any allegations explaining how a document from Bungie's internal database evidences that information was collected from May by accessing May's computer."  Again, this is sophistry bordering on chicanery.  If Bungie did not do this, why not simply say that in a declaration under oath?  The obvious answer is that Bungie would commit blatant perjury if it did.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 12

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

the truthfulness of the factual allegations, not their substance.  Again, these are matters to be addressed at trial, not during a motion to dismiss.

**B.      Bungie's Claim That May "Permitted Bungie's Access"**

Mr. May's claim is neither complicated nor difficult to understand.  In essence, it boils down to his allegation that he never permitted Bungie to access the computer files it did and never permitted Bungie to download the information it did.  Knowing that Bungie would point to its LSLA and Privacy Policy as granting authority for Bungie to do so, Mr. May, at Paragraphs 7-9 of his Amended Counterclaims alleges in detail precisely why neither of these documents grants Bungie authority to access and download the private, confidential and copyrighted files maintained on Mr. May's computer.

In particular, the Amended Counterclaims set out in detail what the Bungie "Limited Software License Agreement," (Exhibit A, Dkt# 72-1)  and "Bungie Privacy Policy" (Exhibit B, Dkt# 72-2) actually say and, more importantly, what they don't say and what authorization they don't provide to freely access all files on a user's computer.

Paragraphs 7-9 of the Amended Counterclaims allege, in detail, that the Limited Software License Agreement ("LSLA") that was in place at all relevant is the one shown in Exhibit A, and, more importantly, that is says absolutely *nothing* about granting Bungie authority to access anyone's computer.  (Amended Counterclaim, Paragraph 9, "In particular, the LSLA itself makes no mention whatsoever about granting Bungie access to Mr. May's (or anyone else's) personal computer.")

Paragraph 10 of the Amended Counterclaims details what the Bungie Privacy Policy (Dkt# 72-2) actually says and expressly alleges that, "None of these expressly stated categories [in the Privacy Policy] includes the personal, private and confidential information stored and maintained in the private and confidential files contained on Mr. May's personal computer's hard drive."

Paragraph 11 of the Amended Counterclaims expressly alleges that, "On several occasions between October 2, 2019 and May 25, 2021 Bungie, Inc., without the knowledge

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

and authorization of Mr. May accessed and obtained information from personal files contained on Mr. Mays' personal computer." and that, "Bungie did so by exceeding the authorization provided to it by the Bungie Privacy Policy."

Taken together, these paragraphs set out in detail that Bungie accessed and obtained information from the personal files contained on Mr. May's computer and did so without Mr. May's knowledge or authorization. Furthermore, these paragraphs provide ample detail as to why neither the LSLA nor the Bungie Privacy Policy (the only documents Bungie can point to as providing any sort of authorization) *do not* authorize Bungie to access and download these files.

In its motion to dismiss, Bungie argues that these documents somehow do provide authorization, but again, that is a combined factual and legal issue[6] that cannot properly be decided at this point. Again, these are issues to be addressed by way of summary judgment and/or trial, not on a motion to dismiss. Again, Bungie is inviting this Court into clear error should the Court ignore the actual allegations made in the Amended Counterclaims and rely, instead, on Bungie's arguments and unilateral misrepresentations of fact.

Bungie's argument that exceeding authority previously granted does not give rise to a cause of action is, again, sophistry and baseless. 18 U.S.C. §1030(a)(4), under which Mr. May brings his first counterclaim, explicitly states, "Whoever...knowingly and with intent to defraud, accesses a protected computer without authorization, *or exceeds authorized access*," violates the statute. The Amended Counterclaims specifically allege Bungie exceeded such authority, they spell out how Bungie exceeded that authority, and they address why Bungie's LSLA and Privacy Policy did not, and do not, provide Bungie with the authority it claims to have. Again, Bungie's claim that its Privacy Policy authorized it to violate Mr. May's rights is an argument that goes to the weight of the evidence, not to any supposed deficiencies in the pleadings, the only question properly before this Court.

---

6 For example, what do people mean and understand when they use the terms contained in the Privacy Policy, such as, "device type, operating system type, browser type…IP address, and device ID"? This will likely require expert testimony and is not properly decided at the pleading stage.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 14

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

Because "exceed[ing] authorized authority" is an element of 18 U.S.C. § 1030(a)(4), and because the Amended Counterclaims set out in detail how Bungie exceeded any such authority, and because the Amended Counterclaims set out in detail and demonstrate that the relevant documents *do not* grant Bungie the authority to access and download the files it did, Bungie's claim that, "May's CFAA Claims Fail Because He Permitted Bungie's Alleged Access" is simply unfounded and incorrect.  Again, Bungie is inviting this Court into clear error should the Court ignore the actual allegations made in the Amended Counterclaims and rely, instead, on Bungie's arguments and unilateral misrepresentations of fact.

Similarly, Bungie's argument that, "May's 18 U.S.C. § 1030(a)(5)(C) Claim Should Be Dismissed Because May Alleges Only that Bungie 'Exceeds Authorized Access,'" is equally flawed.  Having "authority" which somehow permits actions *in excess* of that authority is a clear non-sequitur this Court should not accept.  By Bungie's reasoning, driving in excess of a speed limit is nevertheless permitted and not subject to sanctions because it consists only of "exceeding" one's authority, and therefore is "authorized."  Again, Bungie relies on sophistry and pedantry.

Finally, Bungie's claim that, "May's counterclaims do not include any factual allegations demonstrating that the data purportedly collected by Bungie falls outside of these categories of data he agreed to allow Bungie to collect," is similarly nonsense.  At Paragraph 19 of his Amended Counterclaims, Mr. May specifically identifies in detail the specific files on his personal computer that Bungie accessed and added to Column 3 of its own document, Exhibit C, and expressly alleges, "These files do not attach to or manipulate the Destiny 2 process and have nothing to do with Destiny 2."  In short, they have nothing to do with the types of data Bungie's Privacy Policy addresses.  Bungie has not pointed to what specific language of the Privacy Policy supposedly permits the collection of such data, nor can it.  And even if Bungie attempts to do so in its Reply, any purported "construction" of such language in the Privacy Policy will raise factual issues not to be decided in this motion to dismiss.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

Similar allegations are made in Paragraphs 21-28 of the Amended Counterclaims alleging, among other things, that Bungie accessed private files having nothing to do with Bungie's "Destiny 2" game including, but not limited to, files related to Phoenix Digital Group LLC resident on Mr. May's personal computer (Paragraph 22), and proprietary and trade secret information of Mr. May himself (Paragraph 28).  How these cannot be viewed as allegations and demonstrations that such data, "falls outside of these categories of data [Mr. May] agreed to allow Bungie to collect," is difficult to see.  Again, this Court should not accept these bald misstatements on the part of Bungie, particularly where the documents themselves show what actually was pleaded and alleged.

**C.      Purported Failure To Allege Fraud**

Bungie claims, without basis, that Mr. May's Amended Counterclaims should be dismissed for purported failure to allege "fraud."  This argument, too, is meritless.

Mr. May's Amended Counterclaims at Paragraphs 30-34 state with particularity the elements of fraud upon which Mr. May's counterclaims are based.

Paragraph 30 specifically alleges that, "In particular, Bungie, through its LSLA and its Privacy Policy represented that Bungie would collect only the information expressly stated in the Privacy Policy."  Paragraph 31 specifically alleges that, "Mr. May agreed to the LSLA and Privacy Policy in reliance on Bungie's representation that Bungie would collect only the information expressly stated in the Privacy Policy," and that, "Based on that reliance, Mr. May provided limited authorization for Bungie to collect only the data specified in the Privacy Policy."  These paragraphs establish the fraud elements of (1) statements of material fact made by Bungie, and (2) Mr. May's reliance on those statements.

Paragraph 31 expressly alleges that, "Mr. May agreed to the LSLA and Privacy Policy in reliance on Bungie's representation that Bungie would collect only the information expressly stated in the Privacy Policy," and that, "Based on that reliance, Mr. May provided limited authorization for Bungie to collect only the data specified in the Privacy Policy.  This

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                                    Page 16

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

paragraph further alleges and establishes the reliance Mr. May placed on the representations of material fact made by Bungie.

Paragraph 32 expressly alleges that, "By exceeding the scope of the express authorization provided by Mr. May to Bungie, Bungie defrauded Mr. May, who would not have provided Bungie with any access to his personal computer but for reliance on Bungie's representation that it would collect only the information specified in the Privacy Policy." This, along with the detailed facts stated in paragraphs 1-29 of the Amended Counterclaims, alleges and establishes the fraud elements of (1) misrepresentation of material fact on the part of Bungie (namely what information would be collected from Mr. May's computer), and (2) Mr. May's detrimental reliance on that misrepresentation, (i.e., that he would not have provided any access to his computer but for Bungie's representation that it would be for limited, specific purposes).  This is summarized in Paragraph 33 which alleges, "Bungie fraudulently misrepresented that it would collect only the information specified in the Privacy Policy. Mr. May relied on Bungie's fraudulent misrepresentation in electing to agree to the Bungie LSLA and Privacy Policy."

Taken together, these paragraphs of the Amended Counterclaims, along with further paragraphs alleging with specificity the types and amounts of damages suffered, clearly set out a claim of fraud, namely misrepresentation of material facts on the part of Bungie and Mr. May's detrimental reliance on that misrepresentation.  This is far more than, "bare bones," and again, Bungie's arguments go to matters reserved for trial and not appropriate for disposal by way of its motion to dismiss.

**D.      Purported Failure To Allege Circumvention Of Technological Measures**

As it did before, Bungie continues to claim Defendants fail to plead (1) their use of technological measures, and (2) Bungie's circumvention of such measures.  Again, it appears Bungie either did not read the Amended Counterclaims or, more likely, reads them selectively and distorts what they say.

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone:  206.436.0900

As discussed in detail in section **IV-C** above, paragraphs 3, 4, 16, 18, 19, 21, 23, 26, 28, 41, 42, 48 and 49 of the Amended Counterclaims set out in detail what technological measures were employed and how Bungie "circumvented" these measures.  Further detail as to how Bungie circumvented these technological measures are set out in Paragraphs 55 and 56 of the Amended Counterclaims.   There can be no question that these highly detailed allegations are more than sufficient to set out a viable claim.

Indeed, a simple review of the Amended Complaint filed by Bungie in this matter (Dkt#34) as well as Bungie's original Complaint (Dkt#1) shows that, in Bungie's own claim for circumvention of technological measures (i.e., Cause of action IV, since referred to arbitration) Bungie only description of the "technological measures" it employs consists of the following:

> Bungie has designed and implemented technological measures to prevent and control access to Destiny 2. These technological measures include attempts to safeguard critical player data and prevent unauthorized reading and writing of this data, as well as unauthorized execution of game logic. Additional measures are taken to prevent otherwise normal game functionality (e.g. firing a weapon) from being manipulated, misused, or over-used to gain an unfair advantage.

(Dkt#1, p.15, ¶ 95.)

Bungie's own description of its "technological measures" is far less detailed than the description it complains of here.  By contrast, Defendants in their Amended Counterclaims expressly specify, among other things, "passwords" and "firewalls" which the law has long recognized as "technological measures" for purposes of the DMCA.  See, e.g., *Synopsys, Inc. v. InnoGrit, Corp.,* Section **IV-C**, *supra.*

Similarly, when it came to pleading how Defendants supposedly circumvented these "technological measures," Bungie stated only that, "On information and belief, Defendants descrambled, decrypted, avoided, bypassed, removed, deactivated, and/or impaired one or more of Bungie's technological measures that control access to Destiny 2 without the authority of Bungie."  (Dkt#1, p.16, ¶ 97.)  Bungie clearly applies a double standard that this

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                    Page 18

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

Court should recognize and refuse to accept. The level of detail provided in Defendants' Amended Counterclaims far exceeds that which Bungie, itself, presented to this Court in both its initial Complaint and Amended Complaint.

Behind the rhetoric and double talk, Bungie's arguments simply challenge the veracity and evidentiary support of the Amended Counterclaims, not their substance. Again, these are not issues to be resolved on a motion to dismiss. Again, Bungie's motion is not a motion for summary judgment and, under well settled law, should not be treated as such.

**E.      Copyrights In The Subject Works**

Bungie's claim that Defendants failed to allege copyrights in the works improperly accessed by Bungie is factually and legally deficient.

As demonstrated in section **IV-C** above, the Amended Counterclaims expressly claim that the subject works are subject to protection under the Copyright Act and thus meet the pleading requirements for the asserted counterclaims. Faced with the clear language of the pleadings, Bungie argues (1) that the works shouldn't be copyrighted, and (2) at least some of the are not owned by Phoenix Digital.

Whether a work is properly copyrighted is an issue of fact that depends on a number of factual questions, such as, who is the author of the work, what is the substance of the work, and does the work have originality? These are factual questions and issues that are not properly addressed at the stage of a motion to dismiss.

Furthermore, Bungie's claim that the copyrights in these works have not been registered is immaterial. The law is clear that copyrights come into existence upon creation of a work and that "registration" is not needed in order to vest copyrights in the author of a work. 17 U.S.C. §408(a) "Such registration is not a condition of copyright protection." *See, Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.,* Case No.: 2:12-cv-01051-GMN-VCF, 2024 WL 553181 at *8 (D. Nev. Feb. 10, 2014) ("Registration of a copyright claim with the United States Copyright Office is not a condition of copyright protection, but may be obtained by the owner of copyright or of any exclusive right in the work.") Indeed, the law is clear that

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 19

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900

"copyright registration" simple constitutes "prima facie" evidence that a copyright exists and is not a prerequisite to the existence of copyrights.  *See,* 17 U.S.C. §408(a), 17 U.S. Code § 410.

Should Bungie challenge the existence of the copyrights, it certainly may do so following discovery and, if its motion for summary judgment is denied, at trial as well.  But at this stage, Bungie is asking this Court to skip those procedures and go directly to a factual finding that the subject copyrights do not exist.  It would be clear error for this Court to do so, given the clear standard, properly adopted by this Court, that, "unless the Rule 12(b)(6) motion is  treated as brought under Rule 56, the Court may consider only documents referenced in the pleading and evidence subject to judicial notice." (Dkt#71, p.4)  Bungie is inviting this Court to ignore its own correct statement of the proper procedure for deciding a motion to dismiss, and what matters are to be considered (and ignored) in doing so.

**F.     Phoenix Digital's Breach Of Contract Claim Is Properly Pleaded**

Again, Bungie challenges the veracity and evidentiary support for Phoenix Digital's Breach of Contract counterclaim, rather than whether the allegations of the claim set out a plausible theory of recovery.  Again, these are not proper issues to be considered on a motion to dismiss.

In particular, Bungie claims that, "Phoenix Digital does not allege that Bungie engaged in any of the prohibited conduct."  Again, this is nonsense.

At Paragraph 73 of the Amended Counterclaims, Phoenix Digital expressly alleges that:

> Based on the deposition testimony of Bungie's Rule 30(b)(6) designee, Dr. Edward Kaiser, Bungie tested, decompiled, reverse engineered and otherwise inspected the internal workings of the "cheat software" product obtained from the aimjunkies website by its agent, "Martin Zeniu," on or about January 3, 2020, in breach of the Phoenix Digital Terms of Service which were in place on January 3, 2021 and to which Bungie had agreed.

Earlier paragraphs of the Amended Counterclaim (i.e., ¶¶ 64-68) establish that Phoenix Digital's Terms of Service expressly preclude such activities.  Bungie's claim that, Dr, Kaiser

only "tested" the subject "cheat software" is an issue of fact to be determined at trial, not as part of a motion to dismiss.

Furthermore, if Bungie now claims that it never made a detailed study of the subject "cheat software" and never "decompiled, reverse engineered and otherwise inspected the internal workings of the 'cheat software,'" on what credible basis can it make and maintain its various claims that the "cheat software" "copies" Bungie's software and violates the other rights it alleges?  If Bungie's claims are true, this is a tacit admission by Bungie that its entire case is based on speculation and guesswork rather than a proper pre-filing study based on fact.

Again, for Bungie to claim now that it never did a detailed analysis of the subject "Cheat Software," that it did not reverse engineer it, decompile it, or otherwise engage in any of the activities proscribed by Phoenix Digital's Terms of Service, is either disingenuous in the extreme or provides ample grounds for this Court to withdraw and vacate the preliminary injunction as having been granted in reliance on facts presented by Bungie that Bungie, itself, apparently now says are false.

In any event, and as previously noted, these are factual issues to be resolved at trial, not by means of a motion to dismiss.

## VI     CONCLUSION

For all the reasons stated herein, Bungie's motion to dismiss, which is clearly a thinly disguised motion for summary judgment, should be denied.

Dated January 3, 2023.

/s/ Philip P. Mann
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ
Page 21
Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Seattle, WA  98110
Phone: 206.436.0900