THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR DISCOVERY SANCTIONS AND TO COMPEL DISCOVERY RESPONSES**<br><br>**Note on Motion Calendar: April 14, 2023**<br><br>**Oral Argument Requested** |

Defendants, for reasons stated herein, oppose Plaintiff Bungie, Inc.'s Motion For Discovery Sanctions and to Compel Discovery (Dkt#100).

**I.      INTRODUCTION**

Bungie's latest motion continues the baseless personal attacks it levels on Defendants and their counsel.   Should anyone be sanctioned, it should be Bungie for clearly abusing the legal process to bankrupt and destroy the lives of four ordinary men of limited means, spending literally millions on what is, at best, a $40,000 case.

This litigation as a thinly disguised campaign to identify, track down and destroy the various international masterminds (including minors) Bungie believes are behind a worldwide

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 1

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

conspiracy to make and distribute what it calls "cheat software."[1]  This is a manufactured discovery dispute intended to obtain a court order forcing Defendant David Schaefer to set up and lure a Ukrainian-based foreign national into revealing his identity and whereabouts so Bungie can track him down.  This Court cannot properly order Mr. Schaefer to serve as a corporate spy or investigator for the benefit of Bungie, and Bungie has cited no law authorizing such an extraordinary, potentially illegal act.

By relying on the unconfirmed, legally defective Arbitration Award of Judge Ronald Cox (which will be challenged in due course) Bungie hopes to sidestep careful consideration by this Court of the issues here.  This Court should make its own determinations and neither defer to Judge Cox's defective pronouncements nor blindly accept without question Bungie's blatantly false misstatements of fact.

Bungie's dramatic claims that Defendants engaged in "additional deletion of relevant information," "refused to produce relevant information that still exists," and made "improper efforts to frustrate Bungie's legitimate discovery efforts," are demonstrably false.  Bungie is referring here to recent records having nothing to do with the issues here, given that all distribution of the "cheat sofware" at issue here voluntarily ceased more than two years ago.  In short, current records have nothing to do with what took place and ended more than two years ago.

Each of the individual and corporate defendants has responded to multiple document requests and interrogatories, all of which have been answered to the extent possible.  Each has been deposed at least twice, and each was extensively cross-examined during the arbitration hearing.  Defendants long ago produced every scrap of paper they have regarding Bungie's allegations, and they have testified fully and completely regarding what they know.  (Mann Declaration, Exhibit A.)  Bungie is simply asking the same questions it has already asked (and Defendants have answered) multiple times.

---

[1] See, e.g., *Bungie, Inc, v. L.L.*, pending in the Western District of Washington (Case No. 22:2-cv-981 RAJ) wherein Bungie sues a minor for making fun of Bungie in social media, and accuses him of threatening arson, violence and placing (presumably adult) Bungie executives in fear for their lives.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ           Page 2

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

## II. FACTS

Bungie lacks sufficient facts even to bring, much less prove, its case.

Bungie's technical expert and principal witness, Dr. Edward Kaiser, testified during deposition and the Arbitration hearing that no one at Bungie knows what is actually in the accused "cheat software." Indeed, Bungie has claimed under oath that it has never seen the source code for the subject "Destiny 2 Cheat Software," that it has never seen the object code for such software, that it has never "reverse engineered" such software and that is has never even performed *any* sort of analysis of such software.[2] Dr. Kaiser testified that Bungie has done nothing more than simply purchase a subscription to the subject software from Phoenix Digital and thereafter use the software "for about ten minutes." That is the full extent of whatever "pre-filing investigation" Bungie made before bringing this action.

Tellingly, Bungie has now blatantly and abruptly changed the focus of this case, and is now obsessed with a *different* "loader" product it never mentions in either its original Complaint nor its Amended Complaint and is not part of the "cheat software" at issue here.

Bungie has also produced a Report of its Expert, Steven Guris, wherein Mr. Guris openly admits that he studied only "loader" software he obtained from the "Aimjunkies.com" website in September, 2022, more than five months *after* the site had been sold and *more than fifteen months after* the "cheat software" actually at issue here stopped being distributed.

Thus, Dr. Kaiser *admits* Bungie did not analyze the "cheat software" actually at issue, while Mr. Guris *admits* that he only reviewed an unrelated product that he obtained fifteen months *after* the subject "cheat software" was no longer sold. What then is the evidentiary basis for Bungie's dramatic claims? There is none.

---

2  Faced with Phoenix Digital's counterclaim asserting breach of its Terms of Service, it is likely Bungie will *continue* to deny conducting any extensive review of the subject "cheat" software.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ
Page 3

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

### III     ARGUMENT

**A.     Bungie Has Not Complied With LCR 37(a)(1).**

Bungie nowhere provides the statement required under LCR 37(a)(1) that it made a good faith effort to meet and confer regarding the discovery demands it makes in its motion. The reason for that is clear: Bungie never requested such a conference nor made any attempt to set one up.

In its July 6, 2022 Opposition to Defendants Motion for Protective Order (DKT#51, p.2) Bungie eloquently states the requirements of LCR 37(a)(1) and the grave consequences that should follow for non-compliance.  Under LCR 37, the movant *must* provide a certification that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to resolve the dispute without court action."  When, as here, a party (Bungie) "fails to include such a certification, the court may deny the motion without addressing the merits of the dispute," and, "be required by the court to satisfy personally such excess costs and may be subject to such other sanctions as the court may deem appropriate." LCR 11(c).

According to Bungie, courts routinely dismiss motions where a movant fails to first confer as required by the rules. *See, Choi v. City of Lakewood*, No. 21-5119 RJB, 2022 WL 670898, at *2 (W.D. Wash. Mar. 7, 2022); *Elec. Mirror, LLC v. Avalon Glass & Mirror Co.*, No. 16-0665-RAJ, 2018 WL3862250, at *1 (W.D. Wash. Aug. 14, 2018); *Columbia Asset Recovery Grp., LLC v. Phoenix Processor Ltd. P'ship*, No. C13-02302RSL, 2014 WL 1669989, at *1 (W.D. Wash. Apr. 28, 2014).

Incredibly, Bungie has done *even less* than Defendants did when Bungie argued that Defendants' supposed transgression warranted sanctions.  Bungie neither requested a conference (on short notice or otherwise) nor provided the certification *required* by LCR 37, things Defendants undeniably did.  Why Bungie should not be held to the very standard it insists governs here remains unexplained.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                    Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

## B.   Defendants Did Not "Spoliate" Evidence.

The basic facts and timeline of this action are not subject to serious dispute.

Defendant Phoenix Digital first distributed a cheat for "Destiny 2" in November, 2019.  One year later in November, 2020, Bungie, through its counsel Mr. Mark C. Humphrey, sent "cease and desist" letters to Defendants Schaefer, Green and Conway.  (Exhs. B, C and D to Marcello Declaration, Dkt#101.)  As Defendant James May was never part Phoenix Digital, no letter was ever sent to him.

After receiving Mr. Humphrey's letter, Phoenix Digital, voluntarily elected to cease distribution of the Destiny 2 "cheat software."  The last distribution by Phoenix Digital of the subject "cheat software" occurred in late January, 2021, and overall gross revenues received from the software were approximately $45,000.

Seven months after Mr. Humphrey's letter, Bungie, without intervening warning, filed suit on June 15, 2021.

There is no basis for Bungie's dramatic, unfounded claim that defendants"spoliated" evidence.

*First,* Mr. May never received any letter from Mr. Humphrey.  Until he was sued on June 15, 2021, Mr. May had absolutely no knowledge of any dispute with Bungie and had no obligation to preserve records regarding a dispute he did not even know existed.

*Second,* Bungie cites no authority holding that a letter from a private party making false accusations and vague threats of possible legal action imposes a clear duty to preserve records, particularly where, as here, the evidence to be preserved is not specified with particularity.  None of the cases cited by Bungie says this.  Acceptance of such a rule would grossly impede normal business operations by enabling virtually anyone to demand that any business preserve all documents simply by making vague allegations on legal letterhead demanding that all documents be preserved.

Phoenix Digital has testified that any deletion of records between November 2020 and June 15, 2021 occurred pursuant to Phoenix Digital's longstanding procedures, not to

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 5

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

"destroy" evidence. The law is clear that such is not, "spoliation," See, *U.S. v. $40,955.00 in U.S. Currency,* 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. "); *U.S. v. Kitsap Physicians Service,* 314 F.3d 995, 1001 (9th Cir. 2002) ("Defendants engage in spoliation of documents as a matter of law only if they had "some notice that the documents were potentially relevant" to the litigation before they were destroyed."); *Powell v. DEF Express, Inc.,* 265 F. App'x 672, 674-75 (9th Cir. 2008) ("Discovery sanctions...not warranted...[where party] never had 'possession, custody or control' over the allegedly spoiled evidence"). Mr. Humphrey's letter purporting to impose obligations on Defendants does *not* identify with any particularity any specific information to be preserved but includes only a generic litany of virtually *all* records any company may maintain. Nowhere does his letter fairly describe the types of information Bungie claims should have been preserved.

Finally, Mr. Humphrey's letter contains allegations that Defendants *knew* were false, in that it falsely alleges, "[T]he foregoing activities are unlawful and violate the Limited Software License Agreement ("LSLA") that you entered into with Bungie, 2 and may further constitute copyright infringement, both direct and contributory." (Dkt#101, p 9 of 131.) As *none* of the recipients of Mr. Humphrey's letter *had ever* agreed to (or even seen) Bungie's "Limited Software License Agreement," and, more importantly, *knew* they had never entered into any sort of agreement with Bungie, they had absolutely no reason to believe that the remainder of Mr. Humphrey's wild allegations and threats were any better grounded in fact or law. When Bungie finally did take action some seven months later, Defendants, relying on advice of their then counsel, preserved all relevant records in accordance with law. Bungie's claim that Defendants destroyed relevant records *after* this suit was filed is simply false.

Bungie's cited cases are inapposite. In *Knickerbocker v. Corinthian Colleges* 298 F.R.D. 670 (W.D. Wash. 2014), there was no question that the initial document imposing a duty to preserve evidence was *not,* as here, a letter from a private attorney making patently

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 6

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

false claims and vague threats, but, rather was a formal "Notices of Charge of Discrimination from the Equal Employment Opportunity Commission ('EEOC') for [Plaintiffs] shortly after their termination in early May, 2012," followed up with a formal lawsuit filed just one month later. *Id.* at 672.

In *Leon v. IDX Systems Corp.,* 464 F.3d 951 (9th Cir. 2006), there was no question that the letters sent by counsel to preserve evidence were sent *after* a formal lawsuit was filed. "On April 25, 2003 … IDX brought an action for declaratory relief…." *Id.* at 955. "On April 30 and May 7, 2003, IDX's attorneys sent letters to Leon's attorney, requesting that Leon return the IDX-issued laptop to IDX…." *Id.* at 956. "The April 30 and May 9 letters cautioned that Leon should take care to preserve all data…." *Id.* Again, it was clear in *Leon v. IDX* that the letters demanding preservation of evidence were sent *after* a formal lawsuit had been filed, not seven months before as in the case here.

Knowing that Phoenix Digital, Schaefer, Green and Conway did not delete or dispose of any relevant documents following the initiation of this action on June 15, 2021,[3] Bungie claims falsely that Defendants have destroyed documents even recently. What Bungie's fails to tell this Court is that the "documents" it claims were destroyed were, in fact, records generated during the two years *after* Phoenix Digital voluntarily stopped distributing the subject "cheat software" in January, 2021 and relate to *entirely different products having nothing to do with this lawsuit.*

The "loader" software that Bungie now claims is the real focus of this case is mentioned *nowhere* in either its original Complaint or its Amended Complaint. Indeed, Bungie first sought discovery into the "loader" software only *after* the Aimjunkies.com website was sold in May, 2022. Indeed, the very first time Bungie ever even mentioned a "loader" was on September 20, 2022 when Bungie served its very first discovery request directed to the "loader." However, by this time, namely twenty months *after* Phoenix Digital

---

[3] Mr. May, having never been a part of Phoenix Digital, was never sent, and never received, any letter from Bungie or its counsel.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ
Page 7

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

ceased distributing the "Cheat Software and fifteen months *after* this case was filed, the "loader" licensed to Phoenix Digital had not only been materially changed since the time the relevant product was distributed, but was no longer available to Phoenix Digital, given that the "Aimjunkies.com" website was sold five months earlier.

Because the "loader" software was referenced nowhere in Bunbgie's pleadings, and was not mentioned *anywhere* until Bungie's September 20, 2022 document request, and does not make up *any* part of the "Destiny 2 cheat software" Bungie identifies as the sole offending product here, Defendants had absolutely no duty to protect information regarding claims *Bungie had not made.*[4]  Bungie strains mightily to find *something* to complain about in its desperate effort to smear and impugn Defendants and their counsel.  Bungie's failure even to seek, much less conduct, a conference under L.R. 37(a)(1) shows that it was more important for Bungie to publicly smear Defendants with its instant motion rather than to follow the basic rules of this Court.

Bungie's claim that Defendants have destroyed records pertaining to the new owner of the "Aimjunkies.com" website is a red herring.  Again, the subject "cheat software" that is the actual subject of this lawsuit and the complaints Bungie actually filed, has not been distributed by Defendants since January, 2021. As all distribution ended no later than February, 2021, there simply are no sales records or payment records *relating to that product* after that date.  What *other* products (unrelated to Bungie) Phoenix Digital distributed are simply not relevant to the copyright and trademark issues raised in this case that concern the products *actually accused of infringement* in Bungie's original and amended complaints.

**C.  Bungie Falsely Claims That, "The evidence that Defendants destroyed is...indisputably relevant."**

Bungie's dramatic claim that Defendants improperly destroyed relevant evidence is a perfect indication of how Bungie brought this case without having done a proper pre-filing investigation and without sufficient basis for making good faith claims.

---

4   Bungie has not amended it complaint to reference the "loader," and the "loader" is not properly even in this action.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                          Page 8

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Bungie claims that, "**First,** Defendants deleted financial documents and data on the AimJunkies.com website that would have evidenced sales volume of the Cheat Software, which is relevant to Defendants' profits and Bungie's damages."  In point of fact, and as Mr. Schaefer testified many times, any such information was automatically deleted on a monthly basis by the Aimjunkie.com website, and that this was done to prevent "hacking" or other possible compromise of credit card and other data supplied by customers.  More importantly, because Phoenix Digital had stopped distributing the subject "cheat software" in January of 2021, the last sales records maintained by the Aimjunkies.com website would have been deleted shortly thereafter.  This was *well before* this lawsuit was filed on June 15, 2021.  By playing fast and loose with the dates, Bungie hopes to fool this Court into accepting things that are not true.  There is no basis for any allegation that Defendants deleted any relevant information following the date this suit was filed.

Furthermore, Bungie already has obtained full and complete sales records from PayPal and other providers Phoenix Digital used in conducting its business.  (See, e.g. Dkt## 49-55.) Phoenix Digital has never denied distributing the alleged "cheat software," has never denied receiving approximately $43,000 in gross revenues in doing so.  Indeed, Bungie's damages expert, Mr. Drew Voth, in his expert report, (Mann Declaration Exhibit B.) analyzed the financial records that have been produced and confirmed these figures.  Bungie's claim that it needs non-existent *duplicates* of these records, when Bungie has *already* obtained them from PayPal and others, is a make-weight argument to impugn Defendants.  The sales figures are not in dispute, Bungie already has those numbers and is simply trying to make hay about the fact that records were routinely purged long before Bungie brought this suit on June 15, 2021.

Bungie claims that, "**Second,** Defendants deleted all records of the Cheat Software from the AimJunkies.com website, including records relating to accessing the Cheat Software, records relating to forum messages for the Cheat Software, sales of the Cheat Software, and any documents relating to the Cheat Software and loader."  Again, all such "deletions" took place before Bungie sued and there can be no claim that any were deleted after suit was filed.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                                Page 9

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Furthermore, as Bungie first mentioned a "loader" on September 20, 2022, more than a year after suit was filed, Defendants had no notice whatsoever that the "loader" would ever be an issue until long after suit was filed. Finally, such terms as, "records relating to accessing the Cheat Software, records relating to forum messages for the Cheat Software, sales of the Cheat Software, and any documents relating to the Cheat Software and loader," are vague and ambiguous in their own right, reflecting that Bungie itself is not exactly sure what it is asking for.

Presumably Bungie had sufficient knowledge of what the "cheat software" contains to bring suit in the first place. If it cannot make its case without inspecting a "loader" that it never identifies in its complaints and did not even mention until more than one year after this case was filed, on what "good faith" basis did Bungie file this action? Bungie hopes to sidestep this problem by falsely accusing Defendants of destroying evidence. Such is simply not true, and this Court should not be fooled.

Bunie claims that, "**Third,** Defendants deleted marketing images used to promote the Cheat Software." Again, any such deletions were routine and occurred before suit was filed. Importantly, Phoenix Digital does not claim it made no use of the "Destiny 2" mark, instead it claims that such use is a legally permissible, "fair use." This is another illusory issue raised by Bungie to claim Defendants have wrongfully frustrated Bungie's case. The real problem with Bungie's case is that it lacks substantive merit and Bungie failed adequately to investigate the facts before filing it, not because Defendants have somehow destroyed key evidence that never existed in the first place.

Bungie final claim that, "**Fourth,** May deleted the files and data on four of the five drives he alleges that Bungie accessed as the basis for both his CFAA and DMCA claims" is illusory. As Bungie well knows following its most recent deposition of Mr. May, Mr. May testified that, following his suspicion, (later confirmed by Bungie's own admission) that his computer had been hacked by Bungie, he was forced to buy new computer equipment and

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ                               Page 10

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

wipe his current drives to ensure no "spyware" was resident on them.[5]  Before doing so, he transferred files, including the files referenced in his counterclaim, to a new drive, and t*hose files have been produced to Bungie.*  There has been no "deletion" of critical files.

More fundamentally, Bungie, unlike Mr. May, actually *knows* what it did.  If by wiping his earlier drives this somehow destroys conclusive evidence that Bungie improperly accessed the files, this does not hurt Bungie; instead it hurts Mr. May.  Bungie makes illogical arguments here simply to place Defendants in an unjustified bad light.

D.  **Bungie Is Not Entitled To Supposed "Withheld" Evidence**

Bungie reveals its true motives in its demand that Defendants turn over all information regarding their "bitcoin" wallets.  Importantly, Bungie does not confine its demand to the relevant period during which the subject "cheat software" was actually distributed, but demands that Defendants produce wallets they may be using *even now*, more than two years later.  In particular, it is transparent that Bungie is desperate to obtain a bitcoin account number for "Andreas Banek," a Ukrainian national, a non-party Bungie suspects is the international mastermind behind "cheat software" of various sorts.

Bungie has more-or-less admitted this is the real purpose of this litigation and the real motive for its motion to compel.  However, in legal terms, any *current* financial transactions Phoenix Digital may have had with Mr. Banek, have absolutely no relevance to any issue in this case and go far beyond standards of proportionality, given that distribution of the relevant "cheat software" ended more than two years ago.  Defendants have turned over all records they have relating to the subject "cheat software," they have identified other institutions, e.g. PayPal, that handled transactions for them and invited Bungie to subpoena them for whatever additional records they may have.  In short, Bungie has more than ample records to establish "damages" should it somehow prove liability (which it cannot), and trying to make Mr. Banek's bitcoin wallet relevant at this late stage is illegitimate.

---

[5]  Mr. May, did this in May, 2022, but did not get confirmation until Bungie produced Document BUNGIE_WDWA_0000367 on July 25, 2022.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 11

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

### E. "Damages" As A Basis For Bungie's Requests Is Illusory

Bungie claim that the "discovery" it still needs "relates" to damages is nonsense.

First, under clear law, Bungie is not, in this case, entitled to statutory damages or attorneys' fees under 17 U.S.C. § 504. It is beyond dispute that the effective dates of the four copyright registrations Bungie asserts are March 23, 2021, February 9, 2021 and February 10, 2021. (*See,* Exhibits 1-4 (Dkt#34-1) to Amended Complaint.) The effective date of each copyright registration Bungie asserts is *well after* Defendants first distributed the subject "Cheat Software" in November, 2019.

Title 17 U.S.C. § 412(2) provides that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration…"

Under the Ninth Circuit's clear holding in *Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696 (9th Cir. 2008), "in order to recover statutory damages, the copyrighted work *must have been registered prior to commencement of the infringement,* unless the registration is made within three months after first publication of the work." *Id.* at 699. Here there is no question that the subject "cheat software" was first distributed by Defendants in November 2019, well in advance of the effective dates of *any* of the registrations. Furthermore, the idea that individual distributions of an infringing work constitutes a new act of infringement has been soundly rejected by the courts. "Every court to consider the issue has held that 'infringement commences' for the purposes of § 412 *when the first act in a series of acts constituting continuing infringement occurs" Id.* at 700-01 (emphasis supplied).

Under *Derek Andrew, Inc. v. Poof Apparel,* Bungie is not entitled to statutory damages or attorney's fees and is limited to whatever damages it can prove.

Title 17 U.S.C. § 504 (b) provides that, "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any *profits of the infringer that are attributable to the infringement…."* (Emphasis supplied.)

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 12

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

The only legitimate damages issue here is Defendants' profits, (if any) attributable to distribution of the subject software.  It is beyond dispute that Defendants have already provided such information that they have, and that Bungie has already obtained all additional information through third party discovery.  Bungie is using the pretext of "damages" to seek information regarding the current whereabouts of Mr. Banek.  This litigation cannot properly be used for such purposes, and Defendants cannot properly be ordered to serve as involuntary investigators in such a pursuit.

**F.     Request For Evidentiary Hearing**

When literally dozens of false accusations are hurled, it is difficult if not impossible to address them all within the 4200 word limit of LCR 7(e)(4).

Given the seriousness of Bungie's charges publicly impugning the integrity, honesty and professionalism of not only Defendants but their counsel as well, it is appropriate and necessary that this Court receive both oral argument and testimony from the individuals involved so that the Court can receive all relevant information, ask relevant questions and make an informed decision.

Accordingly, Defendants respectfully request that this Court schedule a remote or in-person hearing, wherein Mr. Schaefer and others, if needed, can testify as to the relevant facts and address any questions the Court may have.  The seriousness of the charges leveled in Bungie's misguided motion demand nothing less.

### III     CONCLUSION

Bungie's motion should be denied.  Given Bungie's blatant failure to comply with L.R. 37(a)(1), Defendants should be awarded their reasonable attorneys' fees in responding to this unnecessary and improperly noticed motion.

Dated April 10, 2023.

/s/ Philip P. Mann

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ

Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

I certify that this memorandum contains 4196 words, in compliance with the Local Civil Rules.

Opposition to Motion To Dismiss
Cause No. 21-CV-0811-TSZ
Page 14

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900