THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' MOTION TO SET ASIDE FINAL ARBITRATION AWARD OF JUDGE RONALD E. COX**<br><br>**Note on Motion Calendar: May 19, 2023**<br><br>**Oral Argument Requested** |

## I.      INTRODUCTION

Defendants moves under under the Federal Arbitration Act, 9 U.S.C. § 12, and the Washington State Uniform Arbitration Act, RCW 7.04A.230 to set aside the defective, prejudicial and incompetent Final Arbitration Award issued by Retired Judge Ronald E. Cox on February 1, 2023.  (Dkt.# 89-1, hereinafter, "FAA".)

Not only does the FAA make nonsensical findings wholly unsupported by any actual evidence or testimony, it is a matter of record and *beyond reasonable argument,* that Judge Cox blatantly, and without any authority whatsoever, failed to abide by the clear, simple and unequivocal rules of JAMS that make up part of the arbitration agreement among the parties and that are *binding* on him as a matter of both contract and arbitration law.

In doing so, Judge Cox improperly prevented Defendants from conducting an effective cross examination of Bungie's principal witness, Dr. Edward  Kaiser.  This is not "harmless error" on Judge Cox's part.  Indeed, Judge Cox's FAA *twice* states that he found Dr. Kaiser "a

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 1

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

credible witness" and, more importantly, that he "found him credible...f*or the matters that are material to my decision.*"  (FAA p.15 (emphasis supplied).)  Judge Cox not only erred in preventing an effective cross-examination of Dr. Kaiser that would have seriously damaged his credibility, he then *relied* on Dr. Kaiser's supposed credibility for the very "matters that [were] material to [his] decision."  This makes a mockery of the proceedings Defendants not only paid for but were entitled to receive under the clear contract they entered into with JAMS and Judge Cox.

Indeed, the grossly disproportionate award itself, and Judge Cox's failure to follow the very rules mandated by JAMS, evidence either clear and intentional bias, or negligent failure on his part to know the very rules he was obligated to follow.

Because Judge Cox blatantly failed to carry out his express contractual obligations, and because his failure to do so materially affected the defective decision he issued as a result, this Court should NOT confirm the Final Arbitration Award Judge Cox issued.

## II.      BACKGROUND

Bungie seeks confirmation of a $4.3 Million arbitration award based on Defendants' *de minimis* distribution of supposed "cheat software" that: (1) Defendants promptly and voluntarily removed from their product list immediately after receiving a "cease and desist" letter from Bungie, and that (2) as confirmed by Bungie's own damages expert, had overall gross sales of approximately $43,000.

The underlying arbitration was filed by Bungie with JAMS on February 10, 2022. (Mann Declaration, Ex. A.)   As filed, Bungie expressly demanded that the "JAMS Comprehensive Arbitration Rules and Procedures" apply to the arbitration.

On March 4, 2022, JAMS issued a "Commencement Of Arbitration" notice expressly stating, "This arbitration shall be conducted in accordance with JAMS Comprehensive Rules."  (Mann Ex. B.)

On March 18, 2022, JAMS issued an "Appointment Of Arbitrator" notice appointing Judge Cox as the arbitrator.  This notice expressly states that, "In accordance with the JAMS

Comprehensive Rules no party may have ex-parte communications with the Arbitrator." (Mann Ex. C.)

On June 20, 2022, Judge Cox issued a "Scheduling Order" (Mann Exh. D) wherein he expressly states that, "The JAMS Comprehensive Arbitration Rules and Procedures shall apply in this matter."

At no time thereafter did Judge Cox or JAMS ever indicate that the JAMS Comprehensive Arbitration Rules and Procedures would *not* apply in the Arbitration.  It is beyond reasonable question that the parties *and Judge Cox* were bound by the JAMS Comprehensive Rules and were all contractually bound and required to abide by the provisions of those Rules.

During the course of discovery, the parties reasonably agreed that, to avoid the time, expense and waste of conducting largely duplicative discovery, discovery conducted in the arbitration could be used in the federal court action and *vice versa.*  Indeed, this was proposed by Bungie's counsel, Mr. Christian Marcello, in a September 26, 2022 email to Defendants' counsel (Mann Ex. E.) wherein Mr. Marcello specifically proposed that, "We also think in the interest of efficiency, the parties should agree to combine the arbitration and litigation depositions of the parties."  By doing so, "[W]e can keep each of Defendants/Respondents depositions to one day that way, without the need to do repetitive depositions."  Defendants agreed to this sensible proposal and confirmed their agreement on the record during the October 5, 2022 deposition of Bungie's Rule 30(b)(6) designee, Dr. Kaiser.  (Mann Ex. F.)

On October 4, 2022, Defendants took the personal deposition of Dr. Edward Kaiser, and on October 5, 2022, took the Rule 30(b)(6) deposition of Bungie wherein Dr. Kaiser testified on Bungie's behalf.   During the course of both depositions, Dr. Kaiser was questioned extensively regarding issues raised in the matter before this Court and Judge Cox.

During the arbitration hearing, Dr. Kaiser testified on behalf of Bungie claiming, among other things, that Bungie has an extensive series of anti-counterfeiting "technological measures" that were in place at the time Defendants supposedly developed and distributed the

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 3

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

subject "Cheat Software."  Because Dr. Kaiser had never presented such testimony in either of his earlier depositions, Defendants' counsel had outlined, and was prepared to conduct, a detailed cross-examination seeking to expose Dr. Kaiser's blatantly inconsistent sworn testimony and establish that Bungie did not have these supposed "technological measures" in place at the relevant time.

Shortly after beginning his cross-examination of Dr. Kaiser, when Defendants' counsel first made reference to Dr. Kaiser's earlier deposition testimony, the following exchange occurred:

> Q.     (BY MR. MANN)·  Now, do you recall when I took your deposition on October 4 and October 5 of this year?
>
> A.     (BY DR. KAISER)  I believe the dates were October 5[th] and October 6th, but --[1]
>
> Q.     Whatever it is.  It's written down, but you do recall when I took your depositions?
>
> A.     Yes.
>
> Q.     I took the deposition of you both personally and as a corporate representative for Bungie?
>
> A.     Correct.
>
> Q.     Do you recall when I asked you to identify all the technological measures that Bungie contends were compromised by Phoenix Digital?
>
> MR. RAVA:     Object to the form of this question.  Those depositions were taken in the federal court litigation.  His 30(b)(6) testimony explicitly did not include anything on the DNCA [sic] violation.
>
> ARBITRATOR COX:   On the basis of the representations, *I'll sustain the objection.  Ask another question.* (Emphasis supplied.)

(Mann Ex. G.)

---

[1]  The arrogant Dr. Kaiser was wrong – the depositions were, in fact, conducted October 4 and 5, 2022.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

In making this objection, Bungie's counsel misrepresented both the content and scope of the earlier depositions as well as counsel's prior agreement that depositions taken in either case could be used for both cases.  By not even providing Defendants' counsel an opportunity to respond and going immediately to, "I'll sustain the objection...Ask another question," Judge Cox was *not even willing to consider* the possibility that there might be another side to the false story told by Bungie's counsel.

As a result of the sustained objection, Defendants' counsel could not conduct the cross-examination he had prepared and planned, and was not provided an opportunity to impeach Dr. Kaiser's credibility on points that go to the very heart of the issues in the Arbitration.

### III      ARGUMENT

**A.      Judge Cox Blatantly Broke The Rules**

**1.      Judge Cox Blatantly Violated JAMS' Own "Comprehensive Rules" In Breach Of His Contractual Obligations To The Parties**

Given Bungie's demand that the arbitration be conducted under the JAMS Comprehensive Rules, and given that on at least three occasions both JAMS and Judge Cox clearly stated that,  "The JAMS Comprehensive Arbitration Rules & Procedures shall apply in this proceeding," there is no question that the JAMS Comprehensive Rules were applicable to, and binding upon, the arbitration.  This is beyond any reasonable question.

It is also beyond reasonable question what those "Comprehensive Rules" say.   In particular, Rule 22 (e) of the JAMS Comprehensive Rules, which expressly governs "The Arbitration Hearing," provides that, "The Arbitrator *shall receive and consider relevant deposition testimony* recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine."[2]   (See Mann Dec. Exh. H, emphasis supplied.)  This language is non discretionary and expressly *mandates* that Judge Cox, "shall

---

[2]  There is no question Bungie attended the depositions of Dr. Kaiser and had the opportunity to cross-examine.

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 5

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

receive and consider" the very deposition testimony he improperly excluded at Bungie's fraudulent behest.  Under the very rules Judge Cox expressly ordered apply and that he was contractually obligated to follow himself, Judge Cox had *no authority* to sustain Bungie's objection and deny Defendants their opportunity to conduct a meaningful and effective cross-examination. Judge Cox's blind acceptance of Bungie's baseless objection, combined with his blatant failure *to follow the very rules of the organization that engages him and that he, himself, ordered apply during the arbitration,* demonstrate clear bias, negligence, or indifference on his part to his contractual obligations.  In any of these cases, Defendants did not receive the "services" they had contracted and paid for and that Judge Cox was legally and contractually obligated to provide.

### 2.    Arbitration Contracts Are Legally Binding And Must Be Enforced

At a fundamental level, arbitration proceedings are a creature of contract law and are based on the fundamental premise that the parties *contractually agreed* to have their dispute resolved by an arbitrator who, in turn, agrees to provide services *under contract.*  As with all contracts, the parties thereto are expected and required to provide what they contractually agree to provide.  In this case, it was understood and agreed that the arbitration would be conducted under the JAMS Comprehensive Rules.  Give that Judge Cox *himself* ordered that these rules apply, he was contractually and legally obligated to follow those very rules himself.

Thus, Judge Cox was contractually obligated to follow and abide by JAMS Comprehensive Rule 22 (e) mandating that he, "shall receive and consider relevant deposition testimony recorded by transcript or videotape…."  Indeed, it was in reliance on the very rules and procedures published by JAMS that the parties agreed to have JAMS resolve the dispute, and it was in the reasonable expectation that the Arbitrator, *would follow those rules and procedures* that Defendants agreed to hire JAMS and Judge Cox in the first place.  Rule 22(e) is clear, direct, and not subject to exceptions such as, "in the Arbitrator's discretion," or

"unless otherwise ordered," etc., that Bungie will likely claim somehow relieve Judge Cox from following the express rules he was contractually obligated to follow.

### 3. No Exceptions Or "Escape Hatches" Are Available Under JAMS Comprehensive Rule 22(e)

In its Reply in Support of its Motion to Confirm the Arbitration Award, (Dkt.# 94) Bungie attempts to show that Judge Cox had discretion not to follow the clear mandates of JAMS Comprehensive Rule 22(e). Bungie is wrong.

In *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.,* 591 F.3d 1167 (9th Cir. 2010) cited by Bungie, the issue was whether the arbitrator's ex parte contact with others was grounds for setting aside the arbitration award. In concluding that it was not, the Ninth Circuit expressly noted that, "the [Federal Arbitration Act] does not expressly prohibit ex parte contact." *Id* at 1176. Unlike in *U.S. Life Ins. Co.,* here there *is* an express rule, namely Rule 22(e) of the JAMS Comprehensive Rules, that *mandates* that the Arbitrator "*[S]hall receive and consider* relevant deposition testimony…." Thus the issue in *U.S. Life Ins. Co.* was wholly different from the issue here, and *U.S. Life Ins. Co.* does *not* stand for the proposition that Judge Cox was free to ignore the express mandates of the very rule he was contractually obligated to follow. Indeed, 9 U.S. Code § 10(a)(3) expressly provides that an arbitration award can be vacated where an arbitrator, "refus[es] to hear evidence pertinent and material to the controversy." See, *Gulf Coast Indus. Workers Union v. Exxon Co.,* 70 F.3d 847 (5th Cir. 1995) That is exactly what occurred here.

Similarly, 9 U.S. Code § 10(a)(4) expressly provides that an arbitration award can be vacated, "where the arbitrators exceeded their powers…." Here, by refusing to permit cross-examination based on the two depositions Dr. Kaiser had previously given, Judge Cox exceeded his powers in direct and blatant contravention of JAMS Rule 22(e), which *expressly denies him the ability to do so.* By precluding use of the depositions to impeach Dr. Kaiser in direct violation of Rule 22(e), Judge Cox clearly exceeded his powers and authority.

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 7

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

### 4.      The Arbitrator's Refusal To Permit Cross-Examination Using Prior Deposition Testimony Was Prejudicial

It is fundamental law that prior deposition testimony may be used to impeach a witness at trial.  See, Fed.R.Civ.P. 32(a)(2), "Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness," and 32(a)(3), "An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  There is no question that, at the arbitration hearing, Defendants' counsel sought to impeach Dr, Kaiser with prior deposition testimony Dr. Kaiser *himself* gave as both a personal witness as as Bungie's corporate designee.

Nor is there any question that the prior deposition testimony given by Dr. Kaiser directly related to the issues raised in the arbitration.  A central issue in the arbitration was whether Defendants had "circumvented" any "technological measures" supposedly implemented by Bungie.. A critical factual question at the arbitration was what, exactly, those supposed "technological measures" were, given that the absence of "technological measures" in place at the relevant time would necessarily preclude any "circumvention" of them.  Dr. Kaiser's failure to previously identify the "technological measures" he suddenly and conveniently remembered and testified to at the arbitration hearing goes directly to his credibility and essential elements of Bungie's case.

During his prior depositions, Dr. Kaiser was directly asked to list all such technological measures and provided a very short list of them.  At the arbitration hearing, Dr. Kaiser provided an extensive list of supposed "technological measures" never before mentioned in prior testimony or discovery.  The intended cross-examination relying on the depositions Judge Cox improperly refused to allow would have demonstrated Dr. Kaiser's inconsistent and conflicting answers that go directly to his credibility and the merits of Bungie's case.  Indeed, it cannot come as a surprise to this Court that prior inconsistent

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 8

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

deposition testimony is regularly used for impeachment purposes and likely comes up in most, if not all, trials.

Furthermore, Judge Cox, himself, repeatedly states and *admits* in his FAA that the supposed "credibility" of Dr. Kaiser was a critical factor in reaching the decision he did. Denying Defendants a meaningful opportunity to impeach Dr. Kaiser with his prior inconsistent deposition testimony goes to the very heart not only of Dr. Kaiser's credibility but to Judge Cox's FAA as well.  It cannot credibly be argued that Judge Cox's erroneous refusal to permit cross-examination based on Dr. Kaiser's prior deposition testimony was harmless error or otherwise unimportant.  Of course Judge Cox found Dr. Kaiser "credible" when Defendants were improperly denied a meaningful opportunity to demonstrate and prove otherwise.

**B.    Judge Cox Displayed "Evident Partiality" In His FAA**

Not only did Judge Cox commit blatant and gross error in failing to comply with JAMS Comprehensive Arbitration Rule 22(e), his FAA is replete with indications he either did not pay attention to the actual evidence presented at the hearing or intentionally ignored it. This is evident not only in his failure to get such basic things as the spelling of witnesses' names right, but in apparently hearing testimony that was never given and accepting arguments that *Bungie itself* never advanced.

Title, 9 U.S. Code § 10(a)(2) expressly provides that an arbitration award can be vacated, "where there was evident partiality or corruption in the arbitrators, or either of them." Such evident partiality exists here.

**1.    Bungies' Supposed "Technological Measures"**

In his FAA, Judge Cox makes the following specific findings indicated in italics below:

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

      (a)     *"Destiny 2 is the subject of copyright filings."*

The arbitration, however, was not in any way, shape or form concerned with copyright infringement, which is one of the two issues before this Court and remains the province of this Court.

      (b)     *"Bungie maintains and develops robust measures to protect its game from unauthorized intrusions, at substantial expense.  These measures were described, in detail, by Dr. Kaiser at the hearing as 'defenses in depth.'"*

Dr. Kaiser did indeed so testify, but Judge Cox prevented cross-examination showing such "defenses in depth" were never identified in his earlier deposition testimony.

      (c)     *"These measures include, among other things, code obfuscation, user account bans, anti-process attachment tools, anti-reverse engineering tools, hardware bans…."*

None of these "measures" was ever identified by Dr. Kaiser in his deposition testimony.  Again, given that Judge Cox found Dr. Kaiser's testimony "credible" on these matters, his refusal to permit legitimate cross-examination into these matter in defiance of JAMS' clear rules evidences bias on his part.

      (d)     *"I find that it is undisputed from the evidence before me that these measures are all designed to prevent unauthorized access to Destiny 2 videogames."*

This reflects a serious and gross misunderstanding of the issue before Judge Cox. What was "undisputed" is that the users of the subject "Cheat Software" are *themselves* authorized users of the Bungie "Destiny 2" game and therefore have the full right to access the game.  Doing so pursuant to their established user accounts with Bungie does not, and cannot, constitute "unauthorized access."  The question before Judge Cox was whether the "Cheat Software" distributed by Phoenix Digital itself defeats measures put in place to keep those without authorization from gaining unauthorized access to the game.  Furthermore, the evidence Dr. Kaiser presented was clearly of recent origin, coming into existence long after Defendants voluntarily ceased distribution of the subject software, which could and would have been demonstrated had Judge Cox permitted cross-examination using the prior deposition testimony.

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 10

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

### 2.  The Role Of James May

It was and remains undisputed that Defendant James May was never an owner, officer, director, employee or otherwise part of Defendant Phoenix Digital.  As established at the arbitration hearing, Mr. May' *sole* connection with Phoenix Digital is that he, from time to time, created game "cheats" that were later accepted for distribution through Phoenix Digital. It was undisputed that Mr. May *did not* create the "Destiny 2" "Cheat Software" that was at issue in the arbitration.

It was also un-refuted that the "Cheat Software" actually at issue in the arbitration was developed by an overseas developer who also was never an owner, officer, director, employee, etc., of Phoenix Digital.  Indeed, *none of the Defendants* developed, wrote or otherwise had anything to do with the creation of the "Cheat Software" actually at issue.

Despite these clear, undisputed facts, Judge Cox found that, *"James May is not an owner of Phoenix. However, he acted in concert with Phoenix and its owners on matters giving rise to the claims that are the subject of this proceeding,"* and on this basis imposed personal liability on Mr. May.

What is "he acted in concert with Phoenix and its owners on matters giving rise to the claims that are the subject of this proceeding," supposed to mean?  Acting "in concert" with a company literally describes all independent vendors, outside agents, representatives and even independent  professionals, such as lawyers and accountants retained to assist the company, doing violence to clear corporate law.

As to, *"matters giving rise to the claims that are the subject of this proceeding,"* this is contrary to the undisputed facts.  There was no evidence whatsoever that Mr. May created or had anything to do with the "Cheat Software" that was, "the subject of [the] proceeding." Mr. May testified he received no compensation whatsoever from Phoenix Digital's distribution of he "Cheat Software" at issue.

Judge Cox's vague references to "acting in concert" and "matters giving rise to the claims" are inadequate substitutes for clear legal analysis and rational thought and come

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 11

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

nowhere near establishing, as a matter of law, that Mr. May had any liability for distribution of the "Cheat Software" that was actually at issue.

Judge Cox further makes the bizarre claim that, *"May reverse engineered Destiny 2 in order to help develop a cheat for Destiny 2 that Phoenix sold on its website."* There is absolutely no evidence of record that Mr. May ever, "reverse engineered Destiny 2 in order to help develop a cheat for Destiny 2 that Phoenix sold on its website." Bungie, *itself,* never seriously claimed that he did.

The undisputed evidence was that the "Cheat Software" actually distributed by Phoenix Digital was created by an overseas creator and that Mr. May's *only* involvement with that "Cheat Software" was that he once briefly used it for his own enjoyment as would any other customer of Phoenix Digital. There is no evidence whatsoever that any "Destiny 2" cheat Mr. May developed was ever sold by Phoenix Digital or anyone else for that matter. Again, Judge Cox is hearing testimony that was *never provided* and is accepting arguments that *even Bungie itself never made.*

### 3.    Mr. Schaefer's Credibility

Judge Cox unfairly attacks Mr. Schaefer's credibility stating that, *"I find that Shaefer* [sic] *was not a credible witness for the matters that are material to my decision. First, he authored, but did not sign, the November 20, 2022, response to the Bungie cease and desist letter dated November 4, 2022."*

In point of fact, and as clearly testified to during the hearing, Bungie's "cease and desist letter dated November 4, 2022," was sent to Defendant Jeffrey Conway, not Mr. Schaefer. Accordingly, Mr. Schaefer "did not sign, the November 20, 2022, response" because he reasonably drafted the response for signature by the actual addressee of the letter, namely, Mr. Conway.

Similarly, and as Mr. Schaefer freely testified, PayPal had for some reason (possibly at Bungie's request) terminated Phoenix Digital's account and denied Defendants access to their

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 12

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

account.  This was subject to cross-examination, and, contrary to Judge Cox's unsupported finding to the contrary, does not evidence dishonesty or chicanery on Mr. Schaefer's part.

### 4.    The Testimony Of Steven Guris

Judge Cox states: *"Steven Guris provided expert testimony...regarding the technical functions of how the Phoenix cheats interact with Destiny 2,"* and that, *"Notably, he tested the cheats by purchasing one from the Aimjunkies website in September 2022."*  Again, Judge Cox heard testimony that was never provided and accepted arguments Bungie, itself, never made.

As readily stated by Mr. Guris in his expert report (Mann Dec. Exh. H, ¶102), Mr. Guris freely admits that all he reviewed was the "loader" software he downloaded from the Aimjunkies website in September, 2022, months after the website was no longer owned by Phoenix Digital, and nearly *two years after* the "Cheat Software" at issue was voluntarily removed from distribution by Phoenix Digital.  Under cross-examination Mr. Guris admitted, as he had to, that he never saw, used, analyzed, tested, etc., the actual "Cheat Software" that is at issue, and that all he did was analyze only the "loader" (that is nowhere even mentioned in the Complaint or Demand for Arbitration filed by Bungie) that he acquired long after the relevant period of time and from a website Defendants no longer owned or operated.

Again, Judge Cox attributes testimony to Mr. Guris that Mr. Guris never provided. Indeed, Mr. Guris, who was actually far more credible than Dr. Kaiser, freely and honestly admitted the limitations on his actual knowledge and did not pretend to know more than he did.  That Judge Cox attributes testimony and findings to Mr. Guris that Mr. Guris, himself, admitted he did not make, demonstrates that Judge Cox either did not understand or did not care what Mr. Guris actually said.

### 5.    The Clearly Excessive Award Evidences Judge Cox' Bias

It was unchallenged that Phoenix Digital ceased distributing the subject software in early 2021, shortly after receiving Bungie's "cease and desist" letter.  It was also undisputed that Phoenix Digital's overall gross revenues for distribution of the "Cheat Software" was in

Motion To Set Aside
Cause No. 21-CV-0811-TSZ

Page 13

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

the neighborhood of $43,000 (Mann Dec. Exh. I, ¶27).  Despite these undisputed facts, Judge Cox saw fit to award more than $4.3 Million against all the Defendants, including James May who was not part of Phoenix Digital and had nothing to do with the creation or distribution of the "Cheat Software" at issue.

As demonstrated at the hearing, the law compels neither the court or arbitrator to impose the maximum statutory award permitted under the statutes, and broad discretion is given to award a far lesser amount if justice so requires.  See, 17 U.S.C. § 1203 .  Judge Cox's grossly excessive award, – *over 100 times the maximum possible actual damage found by Bungie's own damages expert* and which will bankrupt the four individual Defendants if allowed to stand – demonstrates a clearly punitive intent on the part of Judge Cox, far removed from any actual damage suffered by Bungie.  It is further evidence of prejudice on the part of Judge Cox, given that it rests largely on testimony that was never given and acceptance of arguments even Bungie itself never made.

### IV       CONCLUSION

For all the foregoing reasons, this Court should vacate the clearly defective Final Arbitration Award.

Dated May 1, 2023.

/s/ Philip P. Mann

Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

I certify that this memorandum contains 4188 words, in compliance with the Local Civil Rules.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900