THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BUNGIE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AIMJUNKIES.COM; PHOENIX DIGITAL GROUP, LLC; DAVID SCHAEFER; JORDAN GREEN; JEFFREY CONWAY; AND JAMES MAY,<br><br>Defendant. | No. 2:21-cv-811<br><br>PLAINTIFF BUNGIE, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO SUBSTITUTE EXPERT WITNESS |

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| | A. Defendants' Dilatory Approach to Expert Discovery | 1 |
| | B. Defendants' Apparent Failure to Vet Mr. Kraemer | 2 |
| III. | ARGUMENT | 4 |
| | A. Defendants' Motion Fails To Demonstrate Good Cause. | 5 |
| | B. A Testifying Expert's Experience & Expertise Are Legitimate Areas Of Discovery. | 6 |
| | C. Bungie Would Suffer Significant Prejudice If Defendants' Motion Is Granted. | 8 |
| |    1. Bungie Has Already Incurred Substantial Costs. | 8 |
| |    2. Defendants' Substitution Is Likely To Cause Delay | 8 |
| |    3. Defendants Now Know Bungie's Deposition Strategy. | 8 |
| | D. The Court Should Take Steps to Minimize Prejudice to Bungie. | 9 |
| |    1. The Court Should Limit the Scope of Mr. LaPorte's Opinion. | 9 |
| |    2. The Court Should Award Costs and Fees To Bungie. | 9 |
| IV. | CONCLUSION | 10 |

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Bagwell v. CBS Broad. Inc.*,
   No. CV 19-8423 DSF (ASX), 2021 WL 9145409 (C.D. Cal. Oct. 19, 2021) ........................... 6

*Cervantes v. Zimmerman*,
   No. 17-CV-1230-BAS-NLS, 2019 WL 1129154 (S.D. Cal. Mar. 12, 2019) ........................... 4

*Chien Van Bui v. City & Cnty. of San Francisco*,
   No. 11-CV-04189-LB, 2018 WL 4959056 (N.D. Cal. Jan. 31, 2018) ..................................... 9

*Choina v. E.I. Du Pont De Nemours & Co.*,
   1996 WL 200279 (E.D. La. Apr. 25, 1996) ......................................................................... 10

*Crandall v. Hartford Cas. Ins. Co.*,
   No. CV 10-00127-REB, 2012 WL 6086598 (D. Idaho Dec. 6, 2012) ..................................... 6

*Enborg v. Ethicon, Inc.*,
   No. 220CV02477AWIBAK, 2022 WL 1300569 (E.D. Cal. Apr. 29, 2022) ........................... 5

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12-CV-03587-WHO, 2014 WL 8094582 (N.D. Cal. Nov. 19, 2014) .............................. 9

*In re Northrup Grumman Corp. ERISA Litig.*,
   No. CV 06-06213-AB, 2016 WL 6826171 (C.D. Cal. Apr. 7, 2016) ...................................... 8

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ................................................................................................. 4

*Jones v. Nat'l R.R. Passenger Corp.*,
   2022 WL 689000 (N.D. Cal. Feb. 23, 2022) ......................................................................... 4

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................................... 6

*Magers v. Jones*,
   2015 WL 925655 (E.D. Cal. Feb. 26, 2015) ......................................................................... 4

*Miesen v. Henderson*,
   2022 WL 392931 (D. Idaho Feb. 2, 2022) ........................................................................ 4, 6

*Park v. CAS Enterprises, Inc.*,
   2009 WL 4057888 (S.D. Cal.) ............................................................................................... 9

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – ii

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

*Payless Shoesource Worldwide, Inc. v. Target Corp.*,
   No. CIV.A. 05-4023-JAR, 2007 WL 4414769 (D. Kan. Dec. 14, 2007) ................................9

*Rydman v. Champion Petfoods USA, Inc.*,
   No. C18-1578 TSZ, 2023 WL 3172466 (W.D. Wash. May 1, 2023) (Zilly, J.).......................6

*State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*,
   No. 3:16-CV-2255-L, 2019 WL 1436659 (N.D. Tex. Mar. 31, 2019) ....................................7

*United States v. Smith*,
   562 F.3d 866 (7th Cir. 2009) ..................................................................................................6

**RULES**

Fed. R. Civ. P. 16..............................................................................................................................4

Fed. R. Civ. P. 26(a)(2)(B) ...............................................................................................................7

Fed. R. Evid. 702 .............................................................................................................................6

**OTHER AUTHORITIES**

6A Charles Alan Wright et al. *Federal Practice and Procedure Civil*, § 1522.2
   (3d ed.) ..................................................................................................................................4

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

## I.   INTRODUCTION

The Court should deny Defendants'[1] Motion to Substitute Expert Witness (Dkt. No. 148, hereafter "Motion"). Defendants' current predicament is of their own creation. The Motion comes more than *two years* after this case was filed, nearly *nine months* after the original expert discovery deadline, after *twice* rejecting Bungie's offers to extend that deadline, and *two days* before the extended deadline, which has now passed. Defendants fail to demonstrate good cause or in any way address the prejudice to Bungie. For these reasons, and those set forth below, the Motion should be denied.

## II.   BACKGROUND[2]

**A.   Defendants' Dilatory Approach to Expert Discovery.**

Bungie initiated this litigation more than two years ago. Dkt. No. 1. Two weeks before the original November 2022 expert disclosure deadline, Bungie suggested that the parties extend that deadline "[g]iven [Defendants'] pending potential counterclaims which . . . will require expert analysis and reports[.]" Dkt. No. 131-02, Ex. 2. Defendants refused, explaining they would not agree to extend the expert disclosure deadline or any other discovery deadlines because the "case has been pending for nearly one-and-one-half years [and] . . . needs to be resolved and brought to a conclusion as quickly as possible." *Id*. And so Bungie served its expert reports on November 21, 2022, as required by the then-current case schedule. Dkt. No. 131, ¶3. Defendants did not disclose any experts. In January 2023, when Bungie again suggested extending the case schedule due to unavoidable scheduling conflicts, Defendants again denied Bungie's request. Dkt. No. 80.

During these many scheduling- and expert-related exchanges, Defendants never once suggested that they planned to use a testifying expert. On March 20, 2023, during the 30(b)(6)

---

[1] "Defendants" refers collectively to AimJunkies.com, Phoenix Digital Group, LLC ("Phoenix Digital"), David Schaefer, Jordan Green, Jeffrey Conway, and James May.

[2] All Exhibits are attached to the Declaration of William C. Rava ("Rava Decl.") unless otherwise noted.

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

deposition of Phoenix Digital, Schaefer cryptically referred to "our expert" but refused to disclose the expert's name or role in the case. Nearly one month later, five months after the close of expert discovery, and with only one month left in discovery, Defendants raised the issue of extending the expert disclosure deadline for the first time. Dkt. No. 131-03, Ex. 3. Bungie denied the request, explaining that it wanted to avoid further delays in the case. *Id.*; Dkt. No. 130.

Although the Court noted that "Defendants could have brought [their] motion sooner," Mr. Kraemer was ultimately permitted to serve as an expert, and Defendants served his expert report on June 12, 2023. *See* Dkt. No. 139.

**B.   Defendants' Apparent Failure to Vet Mr. Kraemer.**

As is clear from his public LinkedIn biography, for the last 20+ years, Mr. Kraemer has been employed at Honeywell, either directly or as a contractor. *See* Rava Decl. Ex. A; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Defendants have been in contact with Mr. Kraemer about this case since at least August 2022. Ex. C.

With respect to his purported expert testimony in this case, Defendants' counsel identified Mr. Kraemer's background at Honeywell as a basis for his purported expertise. Dkt. No. 137 ¶ 4. In his expert report, Mr. Kraemer concurred, describing himself as being "extremely familiar with decompiling, attaching debuggers, and memory editing programs that give video game players advantages in games." Ex. D. As the basis for his opinion and his "background with respect to the matters at hand[,]" Mr. Kraemer cited two areas of experience. First, he referred to his "hobby" of "reverse engineering . . . that turned into a website for reverse engineering online video games for 8 years[.]" *Id.* (But, as he admitted in his report, Mr. Kraemer had "retired from programming and reverse engineering" nearly six years ago. *Id.*)[3]

---

[3] Also, Mr. Kraemer's "retirement" would have occurred at about the same time Bungie released *Destiny 2* (2017) and several years before Bungie first detected cheat software targeting *Destiny 2* (2019). That is, Bungie had good reason to doubt the relevance and currency of whatever expertise Mr. Kraemer might have gained through his

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

1   Second, Mr. Kraemer cited as relevant "background" his experience in the "Information
2   Technology field for 25+ years under fortune 500 companies," referring to his experience at
3   Honeywell.

4   As it would with any proffered expert in any federal court litigation, Bungie sought to
5   understand Mr. Kraemer's expertise and experience as it related (or not) to his opinions.
6   Employing unremarkable discovery practices, Bungie sought this information directly from Mr.
7   Kraemer through a document subpoena and deposition. In response to document requests related
8   to Honeywell, Mr. Kraemer did not produce any responsive documents. █████████
9   ████████████ ██████████████████████████████████
10  ████████████████████████████████████████████████
11  ████████████████████████████████████████████████
12  ████████████████████████████ ███████████████████
13  ████████████████ But whenever Bungie attempted to further understand Mr. Kraemer's
14  background at Honeywell, it was stonewalled. ██████████████████████
15  ████████████████████████████████████████████████
16  ████████████████████████████████████████████████
17  ██████████████████████████████

18  Because Mr. Kraemer refused to talk about the last 20+ years of his professional
19  experience and training as related to his proffered expert opinions, Bungie notified Mr. Kraemer
20  and Defendants that Bungie intended to serve a subpoena on Honeywell seeking documents
21  relating to Mr. Kraemer's employment with Honeywell, including his "role(s) and
22  responsibilities," with Honeywell, "professional trainings," and Mr. Kraemer's "training,
23  education, or experience . . . in any way connected to . . . reverse engineering software . . .
24  analyzing network traffic and/or software security . . . [and] decompiling, reverse-engineering,

---

26  "hobby," making close examination of his more recent experience (and whether, for example, that included exposure to current cheat and anticheat technology) all that more important.

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

and/or dumping memory related to commercial software (including video games)[.]" Dkt. No. 148-08, Ex. H.

Nine days after Bungie served its subpoena on Honeywell, Mr. Kraemer's counsel notified Bungie that Mr. Kraemer had decided to withdraw as an expert witness in this lawsuit. Dkt. No. 148-13, Ex. M.

### III.  ARGUMENT

A motion to substitute an expert witness is functionally equivalent to a motion to amend a scheduling order—both are governed by Rule 16(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at *2 (N.D. Cal. Feb. 23, 2022) ("Jones's motion to substitute expert witnesses is properly analyzed under Federal Rule of Civil Procedure Rule 16."); *Miesen v. Henderson,* 2022 WL 392931, *1 (D. Idaho Feb. 2, 2022) (stating that "[m]otions to substitute expert witnesses are essentially motions to amend the scheduling order" and that schedule modifications are governed by 16(b)(4)).  Under Rule 16(b)'s "good cause" standard, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted); *Magers v. Jones*, 2015 WL 925655, at *3 (E.D. Cal. Feb. 26, 2015) (finding that the focus of the "good cause" inquiry is on the moving party's "reasons for seeking modification").  "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A Charles Alan Wright et al. *Federal Practice and Procedure Civil*, § 1522.2 (3d ed.). Defendants bear the burden of showing "good cause" to warrant substitution of Mr. Kraemer. *Cervantes v. Zimmerman*, No. 17-CV-1230-BAS-NLS, 2019 WL 1129154, at *5 (S.D. Cal. Mar. 12, 2019) ("movant bears the burden of showing good cause under Rule 16(b)").

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

### A. Defendants' Motion Fails To Demonstrate Good Cause.

Defendants have failed to carry their burden. Defendants claim that substitution is warranted "due to circumstances outside [their] control" (Mot. p. 5), but Mr. Kraemer's apparent discomfort with and unwillingness to substantively participate in the foundational aspects of expert discovery is neither a circumstance outside of Defendants' control nor a satisfactory explanation to warrant substitution. Defendants' Motion fails to set forth any further details explaining Mr. Kraemer's "unavailability" apart from the fact that he wants "nothing further to do with this matter." Courts in the Ninth Circuit have found such generalized and vague explanations to be insufficient to demonstrate good cause. *See, e.g.*, *Enborg v. Ethicon, Inc.*, No. 220CV02477AWIBAK, 2022 WL 1300569, at *2–3 (E.D. Cal. Apr. 29, 2022) (denying motion to substitute where plaintiff failed to show why former expert was unable to participate in the lawsuit, "let alone [enable the court to] determine whether it has merit and rises to the level other courts have found to justify substitution"). The Court should do so here as well.

As an initial matter, Defendants' reason for seeking substitution is not—as they claim—a result of Bungie's litigation conduct, but instead their own failure to properly prepare their expert witness. Had Defendants asked Mr. Kraemer *any* questions about his supposed sensitivity to his employer learning that he was testifying on behalf of Defendants, Defendants could have replaced Mr. Kraemer well in advance of the close of expert discovery or otherwise resolved Mr. Kraemer's concerns. Instead, on the same day that Bungie served Mr. Kraemer with a subpoena requesting documents from him related to his experience at Honeywell, Mr. Kraemer raced to the Court seeking emergency relief. *See* Dkt. No. 148-2, Ex. B. Even a cursory inquiry by Defendants would have avoided these issues entirely.

Defendants could also have many times avoided the need for this additional scheduling order modification. Defendants repeatedly rejected Bungie's earlier attempts to allow for the parties to have additional time for expert discovery, and waited months after expert discovery closed to even propose Mr. Kraemer's now-aborted testimony.

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

Ultimately, Defendants seek permission to replace an expert a few months before trial based solely on an unelaborated, conclusory statement that Mr. Kraemer wants "nothing further to do with this matter" and his withdrawal is "due to circumstances outside [Defendants] control," after repeatedly rejecting offers for additional time by Bungie to engage in expert discovery when this case was in its infancy. Good cause requires more than that. Defendants chose Mr. Kraemer to serve as their expert; their delay, lack of foresight, and inadequate preparation does not warrant a second chance. *See Miesen*, at *2-3 ("A party's choice upon which expert to hire for assistance in a lawsuit is just that—a choice. Sometimes the results of those choices go smoothly and successfully. Sometimes they do not.") (citing *Crandall v. Hartford Cas. Ins. Co.*, No. CV 10-00127-REB, 2012 WL 6086598, at *3 (D. Idaho Dec. 6, 2012); *see also United States v. Smith*, 562 F.3d 866, 871 (7th Cir. 2009) ("'If at first you don't succeed, try, try again' might make a memorable maxim, but it is ill-suited as a principle for case management.").

**B.     A Testifying Expert's Experience & Expertise Are Legitimate Areas Of Discovery.**

Defendants blame Bungie for Mr. Kraemer's unavailability, alleging that Bungie's discovery into Mr. Kraemer's experience and expertise intimidated him into withdrawing. Dkt. No. 148. But Mr. Kraemer and Defendants complain of conduct that is an expected and routine aspect of expert discovery. For an expert's testimony to even be admissible, the expert must be qualified—in other words, such testimony must "come from someone who is qualified to serve as an expert by 'knowledge, skill, experience, training, or education.'" *Bagwell v. CBS Broad. Inc.*, No. CV 19-8423 DSF (ASX), 2021 WL 9145409, at *4 (C.D. Cal. Oct. 19, 2021) (quoting Fed. R. Evid. 702); *see also Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 TSZ, 2023 WL 3172466, at *2, 7 (W.D. Wash. May 1, 2023) (Zilly, J.) (excluding expert opinions that were "outside of [the purported expert's] expertise"). This basic gatekeeping function is required for ensuring *all* expert testimony is proper. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

(1999) (Daubert imposed a special "gatekeeping obligation" on trial judges for all expert testimony).  This is precisely the type of information Bungie was seeking.

More to the point, Bungie was fully entitled to the information it sought—it is undisputed that Bungie is entitled to full discovery of Defendants' testifying expert, Mr. Kraemer, including his purported qualifications and expertise under Rule 26(a)(2)(B).  *See, e.g.*, *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-CV-2255-L, 2019 WL 1436659, at *25 (N.D. Tex. Mar. 31, 2019) ("Litigants in federal court are entitled to the disclosures that are required to be made under Rule 26(a)(2)(B), and it is not incumbent on the opposing party to investigate or ferret out that information as best as it can through deposition or other means of discovery at the expense of its client.").  Whatever Mr. Kraemer's supposed sensitivities, Bungie is entitled to determine whether Mr. Kraemer was qualified to provide expert testimony.

Finally, not only was discovery into Mr. Kraemer's background by Bungie necessary, but it was also justified under the circumstances, given Mr. Kraemer's outright refusal to reasonably cooperate during the discovery process.  ██████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████ *see also* Ex. D.  Naturally, Bungie was attempting to discern the basis of Mr. Kraemer's purported expertise in this matter, as it is permitted to do so under Rule 26(a)(2)(B), and if it deemed necessary, to challenge Mr. Kraemer's expertise through a *Daubert* motion.  ████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████ Only after it was stymied by Mr. Kraemer did Bungie seek information directly from Honeywell.

Mr. Kraemer's apparent discomfort with discovery into his purported expertise is a failing of Defendants.  Bungie's inquiries concerning Mr. Kraemer's background were normal

PLAINTIFF'S OPPOSITION TO MOT. TO SUBSTITUTE EXPERT (No. 2:21-cv-811) – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

and predictable; Defendants and Mr. Kraemer should both have been prepared for this ordinary course expert discovery.

C. **Bungie Would Suffer Significant Prejudice If Defendants' Motion Is Granted.**

Should the Court permit Defendants to substitute their expert at this stage, Bungie is likely to suffer significant prejudice.

### 1. Bungie Has Already Incurred Substantial Costs.

Bungie has already incurred substantial costs in deposing Mr. Kraemer and in analyzing and responding to Mr. Kraemer's expert report. *See* Rava Decl. ¶ 6. The cost of analyzing and responding to a new opinion and deposing a new expert would presumably be similarly substantial.

### 2. Defendants' Substitution Is Likely To Cause Delay.

Substitution at this late stage will undoubtedly require the re-opening of expert discovery (which has now closed). Considering the time required previously for scheduling, planning, and deposing Mr. Kraemer as well as the time spent analyzing, coordinating, and responding to Mr. Kraemer's expert report, it is likely that Defendants' substitution of Mr. Kraemer will delay the currently scheduled December 4, 2023 trial date.

### 3. Defendants Now Know Bungie's Deposition Strategy.

Bungie has already deposed Mr. Kraemer regarding the exact opinions that the new expert will be required to adopt. *See infra* Section III.D.1. Not only do Defendants—and by extension any new expert—know how Bungie intends to attack those opinions, but they know the *exact questions* that Bungie may ask in order to do so. Substitution of a new expert at this stage effectively gives Defendants and their expert witness a second bite at the apple with respect to their expert witness' deposition and opinion defense. Defendants' failure to adequately vet and prepare their original expert witness should not be rewarded by being put in a more advantageous position with their second putative expert witness on the same subject. *See In re Northrup Grumman Corp. ERISA Litig.*, No. CV 06-06213-AB (JCx), 2016 WL 6826171, at *4

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

(C.D. Cal. Apr. 7, 2016) ("[T]he purpose of allowing substitution of an expert is to put the movant in the *same position* it would have been in but for the need to change experts") (internal citation omitted) (emphasis added).

**D.     The Court Should Take Steps to Minimize Prejudice to Bungie.**

Should the Court permit Defendants to substitute Mr. LaPorte for Mr. Kraemer at this late stage, Bungie respectfully requests that the Court take steps to minimize the prejudice to Bungie.

**1.     The Court Should Limit the Scope of Mr. LaPorte's Opinion.**

As an initial matter, Mr. LaPorte should not be permitted to offer any opinions that are in addition to, inconsistent with, or substantively different from the opinions espoused by Mr. Kraemer during his deposition and disclosed in Mr. Kraemer's report. *See Chien Van Bui v. City & Cnty. of San Francisco*, No. 11-CV-04189-LB, 2018 WL 4959056, at *2 (N.D. Cal. Jan. 31, 2018) (granting substitution but limiting new expert's opinion to the subject matter and theories espoused by the previous expert; holding Defendants new expert "will not be permitted to offer (as he does now in the current version of his proposed report) opinions different from or in addition to those that were offered by [the prior expert]"); *Park v. CAS Enterprises, Inc.*, 2009 WL 4057888 (S.D. Cal.) (limiting new expert's testimony to opinions and theories included in original expert's report was proper when expert unilaterally chose to withdraw). For this reason, Mr. LaPorte "must limit his . . . opinions to the subject matter covered in [Mr. Kraemer's] report and may not testify in any manner that is contrary to or inconsistent with [Mr. Kraemer's testimony or report]." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 8094582, at *2 (N.D. Cal. Nov. 19, 2014).

**2.     The Court Should Award Costs and Fees To Bungie.**

Courts routinely award a party's attorneys' fees and costs to analyze and address a substituted expert witness, even where parties have provided reasonable explanations for such substitutions (which is not the case here). *See, e.g.*, *Fujifilm*, 2014 WL 8094582, at *2 (requiring movant seeking substitution to pay for all fees and costs associated with rebutting the substitute

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000

expert report); *Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. CIV.A. 05-4023-JAR, 2007 WL 4414769, at *1 (D. Kan. Dec. 14, 2007) (awarding fees and costs to cure the prejudice suffered by defendants in light of plaintiff's untimely substitution of its damages expert); *Choina v. E.I. Du Pont De Nemours & Co.*, 1996 WL 200279, at *2 (E.D. La. Apr. 25, 1996) ("[B]ecause plaintiff's expert refused to testify at the subsequent retrial, the only just result would be for plaintiff to pay for defendant's additional costs in defending against a new expert.").

Here, if the Court allows Defendants to substitute experts, it should also require them to post a cash bond of $25,000 to cover the expected costs to Bungie of analyzing, investigating, and deposing Mr. LaPorte. Although Bungie's efforts to depose Mr. Kraemer, and investigate, research, and respond to Mr. Kraemer's expert report, cost well in excess of the $25,000 suggested here, this amount will at least begin to pay for what Bungie expects will be a similar effort required to address Mr. LaPorte. Bungie should not bear the substantial cost occasioned by Defendants' lack of diligence in designating Mr. Kraemer, and should be permitted to file a declaration of fees and costs after completing expert discovery into Mr. LaPorte, which appropriate fees and costs would be paid from the cash bond held by the Court.

## IV.    CONCLUSION

For the foregoing reasons, Bungie respectfully requests that the Court deny Defendants' Motion to Substitute Expert Witness. In the alternative, if Mr. LaPorte is permitted to substitute in, Bungie respectfully requests that the Court issue an order (1) preventing Mr. LaPorte from offering any opinions that are in addition to, inconsistent with, or substantively different from the opinions espoused by Mr. Kraemer, and (2) requiring defendants to post a cash bond of $25,000 to cover Bungie's expected attorneys' fees and costs to analyze, investigate, and depose Mr. LaPorte.

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

I certify that this memorandum contains 3,978 words, in compliance with the Local Civil Rules.

Dated: July 19, 2023

By: */s/William C. Rava*
William C. Rava, Bar No. 29948
Christian W. Marcelo, Bar No. 51193
Jacob P. Dini, Bar No. 54115
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
WRava@perkinscoie.com
CMarcelo@perkinscoie.com
JDini@perkinscoie.com

PLAINTIFF'S OPPOSITION TO MOT.
TO SUBSTITUTE EXPERT
(No. 2:21-cv-811) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206 359.8000
Fax: 206.359 9000