1                                          THE HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF WASHINGTON

8                           AT SEATTLE

9   BUNGIE, INC.,                       No. 2:21-cv-811-TSZ

10             Plaintiff,          PLAINTIFF BUNGIE, INC.'S MOTION
                                  FOR SUMMARY JUDGMENT

11      v.                          NOTE ON MOTION CALENDAR

12   AIMJUNKIES.COM; PHOENIX DIGITAL   August 11, 2023
   GROUP, LLC; DAVID SCHAEFER; JEFFREY
13   CONWAY; JORDAN GREEN; AND JAMES   ORAL ARGUMENT REQUESTED
   MAY,
14                              REDACTED VERSION
          Defendants.            PUBLICLY FILED
15

16

17

18

19

20

21

22

23

24

25

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF UNDISPUTED FACTS ............................................... 2

    A.   Bungie and *Destiny 2* .................................................................... 3

    B.   Defendants' History of Cheat Development ................................... 5

    C.   Defendants' Development of the Cheat Software ............................ 6

    D.   How the Cheat Software Operates .................................................. 7

        1.   The ESP Cheat Feature ........................................................ 7

        2.   The AIMBOT Cheat Feature ................................................ 9

        3.   The One Position Kill Cheat Feature ................................... 9

        4.   The Cheat Loader ................................................................ 10

    E.   Defendants Promoted the Cheat Software Using Bungie's Destiny Mark .......... 10

    F.   Defendants Profited from their Malicious Conduct and Harmed Bungie............ 11

    G.   May's and Phoenix Digital's Counterclaims .................................. 12

        1.   May's Counterclaims and Reverse Engineering of *Destiny 2* ................. 12

        2.   Phoenix Digital's Terms of Service ..................................... 13

III. ARGUMENT .......................................................................................... 14

    A.   Legal Standard .............................................................................. 14

    B.   Defendants Directly Infringed Bungie's Copyrights ...................... 15

    C.   All Defendants Are Liable for Secondary Copyright Infringement ...................... 17

        1.   Defendants' Contributory Infringement ............................... 17

        2.   Defendants' Vicarious Infringement.................................... 18

    D.   The Phoenix Digital Defendants Infringed Bungie's Trademark ...................... 19

    E.   Bungie Is Entitled to Defendants' Profits, Statutory Damages, Attorneys' Fees and a Permanent Injunction ........................................................ 21

BUNGIE'S MOT. FOR SUMMARY JUDGMENT – i
(No. 2:21-cv-811-TSZ)

161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS (continued)**

Page

1.     Legal Standard ........................................................... 21

2.     Bungie Seeks $600,000 in Statutory Damages. ....................... 22

3.     Attorneys' Fees Are Warranted ....................................... 23

4.     Permanent Injunction Is Warranted and Necessary ................ 24

F.     May's CFAA Claims Fail ............................................... 25

    1.     All CFAA Claims Fail Because May Consented to Bungie's Limited Access............................................................. 25

    2.     All CFAA Claims Fail for Lack of Loss............................ 26

G.     May's DMCA Claim Fails.............................................. 28

    1.     May Does Not Own Copyrighted Works............................ 29

    2.     Bungie Did Not Circumvent Technological Measures............. 30

H.     Phoenix Digital's Breach of Contract Claim Fails ................... 32

    1.     AimJunkies.com's Terms of Service Are Void as Illegal and Against Public Policy.................................................. 32

    2.     Bungie Did Not Accept the Terms of Service ...................... 33

    3.     Bungie Did Not Breach the Terms of Service ...................... 34

    4.     Phoenix Digital Does Not Claim Cognizable Damages ........... 35

IV.     CONCLUSION............................................................. 38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Co. v. AIME LLC*,
No. C20-1096, 2021 WL 5824376 (W.D. Wash. Dec. 8, 2021)................................36

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...........................................................18

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
No. C 15-2288, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015)..............................31

*ALS Scan, Inc. v. Cloudflare, Inc.*,
No. CV 16-5051, 2018 WL 11350606 (C.D. Cal. Mar. 13, 2018) ...........................17

*Bankston v. Pierce County*,
301 P.3d 495 (Wash. Ct. App. 2013)....................................................32

*BAOL, s.r.o. v. Media W. Ent., Inc.*,
No. CV1110138, 2012 WL 13012389 (C.D. Cal. June 26, 2012)............................22

*Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*,
No. C10-380Z, 2011 WL 3360664 (W.D. Wash. Aug. 3, 2011).............................15

*Broad. Music, Inc. v. Benchley Ventures, Inc.*,
131 F. Supp. 3d 1097 (W.D. Wash. 2015).............................................18

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ..........................................................19

*Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*,
776 P.2d 666 (Wash. 1989)..............................................................36

*Cent. Flyway Air, Inc. v. Grey Ghosts Int'l, LLC*,
No. 20-cv-05506, 2022 WL 4534402 (W.D. Wash. Sept. 28, 2022) .......................34

*Coach, Inc. v. Pegasus Theater Shops*,
No. C12-1631, 2013 WL 5406220 (W.D. Wash. Sept. 25, 2013)..........................19

*Dayton v. Farmers Ins. Grp.*,
876 P.2d 896 (Wash. 1994)..............................................................36

*Dish Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ...................................................31

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– iii
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Disney Enters., Inc. v. VidAngel, Inc.*,
4
　　869 F.3d 848 (9th Cir. 2017) ...............................................................................15

5

*Doyle v. Taylor*,
　　No. CV-09-158, 2010 WL 2163521 (E.D. Wash. May 24, 2010)..........................27
6

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
7
　　307 F.3d 197 (3d Cir. 2002)..................................................................................16

8

*eBay Inc. v. MercExchange, L.L.C.*,
　　547 U.S. 388 (2006)...............................................................................................24
9

10

*Experience Hendrix, L.L.C. v. Pitsicalis*,
　　No. 17 Civ. 1927, 2020 WL 3564485 (S.D.N.Y. July 1, 2020) .............................23

11

*Fogerty v. Fantasy, Inc.*,
12
　　510 U.S. 517 (1994)...............................................................................................23

13

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
　　76 F.3d 259 (9th Cir. 1996) .............................................................................17, 18
14

15

*Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*,
　　886 F.2d 1545 (9th Cir. 1989) ...............................................................................23

16

*Getty Images (U.S.), Inc. v. Virtual Clinics*,
17
　　No. C13-0626, 2014 WL 1116775 (W.D. Wash. Mar. 20, 2014) ....................21, 22

18

*Glob. Pol'y Partners, LLC v. Yessin*,
　　686 F. Supp. 2d 642 (E.D. Va. 2010) ....................................................................28
19

20

*Hist. Rsch. v. Cabral*,
　　80 F.3d 377 (9th Cir. 1996) ...................................................................................23

21

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
22
　　No. 22-cv-4109, 2022 WL 16637988 (N.D. Cal. Nov. 2, 2022) ...........................25

23

*Jagex Ltd. v. Impulse Software*,
　　750 F. Supp. 2d 228 (D. Mass. 2010) ....................................................................29
24

*Jeckle v. Crotty*,
25
　　85 P.3d 931 (Wash. Ct. App. 2004).......................................................................36

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ) – iv

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  94 P.3d 945 (Wash. 2004)...........................................................................................33

*Kische USA LLC v. Simsek*,
  No. C16-0168, 2016 WL 7212534 (W.D. Wash. Dec. 13, 2016)...........................19

*Lahrichi v. Curran*,
  No. 65144-7-I, 2011 WL 5222806 (Wash. Ct. App. Oct. 31, 2011) ......................36

*Lawrence v. Star Prot. Agency LLC*,
  No. 21-cv-00299, 2023 WL 2372914 (W.D. Wash. Mar. 6, 2023).........................35

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ..................................................................................29

*LK Operating, LLC v. Collection Grp., LLC*,
  331 P.3d 1147 (Wash. 2014).....................................................................................32

*Lockhart v. Greive*,
  834 P.2d 64 (Wash. Ct. App. 1992)..........................................................................36

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ...................................................................................20

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) .................................................................................17

*McClellon v. Wells Fargo Bank, N.A.*,
  No. C18-0851, 2018 WL 3630299 (W.D. Wash. July 31, 2018) ..............................2

*McNeal v. Allen*,
  621 P.2d 1285 (Wash. 1980)....................................................................................36

*Micro Star v. Formgen Inc.*,
  154 F.3d 1107 (9th Cir. 1998) .................................................................................16

*Microsoft Corp. v. Buy More, Inc.*,
  136 F. Supp. 3d 1148 (C.D. Cal. 2015), *aff'd*, 703 F. App'x 476 (9th Cir.
  2017) ..................................................................................................................24, 25

*Nexon Am., Inc. v. S.H.*,
  No. CV 10-9689, 2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) .........................17

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ) – v

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Nintendo of Am., Inc. v. Dragon Pac. Int'l,*
   40 F.3d 1007 (9th Cir. 1994) ........................................................................22

4

5

*Nintendo of Am., Inc. v. Storman,*
   No. CV 19-7818, 2021 WL 4780329 (C.D. Cal. Aug. 5, 2021)............................18

6

*Perfect 10, Inc. v. Amazon, Inc.,*
   508 F.3d 1146 (9th Cir. 2007) ........................................................................18

7

8

*Philip Morris USA Inc. v. Liu,*
   489 F. Supp. 2d 1119 (C.D. Cal. 2007) .....................................................21, 24

9

10

*Playboy Enters., Inc. v. Baccarat Clothing Co.,*
   692 F.2d 1272 (9th Cir. 1982) ........................................................................23

11

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.,*
   No. 11-CV-726, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013)....................29, 30

12

13

*Polo Fashions, Inc. v. Dick Bruhn, Inc.,*
   793 F.2d 1132 (9th Cir. 1986) ........................................................................25

14

15

*Rhodes v. City of Federal Way,*
   No. C09-265, 2010 WL 1005868 (W.D. Wash. Mar. 16, 2010) ......................36

16

17

*Sartori v. Schrodt,*
   424 F. Supp. 3d 1121 (N.D. Fla. 2019)...........................................................25

18

*Sega Enters. Ltd. v. MAPHIA,*
   948 F. Supp. 923 (N.D. Cal. 1996) ...........................................................20, 24

19

20

*Sennheiser v. Eichler,*
   No. CV 12-10809, 2013 WL 3811775 (C.D. Cal. July 19, 2013) ...................25

21

22

*Take-Two Interactive Software, Inc. v. Zipperer,*
   No. 18 Civ. 2608, 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018) ...............16, 17

23

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.,*
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..........................................................16

24

25

*TLS Grp., S.A. v. NuCloud Glob., Inc.,*
   No. 15-CV-00533, 2016 WL 1562910 (D. Utah Apr. 18, 2016)......................31

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ) – vi

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

1

**TABLE OF AUTHORITIES (continued)**

2

Page(s)

3

*Unicolors, Inc. v. Urb. Outfitters, Inc.,*
    853 F.3d 980 (9th Cir. 2017) ...........................................................................................21

4

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.,*
    630 F.3d 1255 (9th Cir. 2011) .........................................................................................15

5

6

*Zosma Ventures, Inc. v. Nazari,*
    No. CV121404, 2013 WL 12129643 (C.D. Cal. Sept. 23, 2013) ............................................23

7

8

**STATUTES**

9

15 U.S.C. § 1057(b) ...............................................................................................................19

10

15 U.S.C. § 1114 ....................................................................................................................19

11

15 U.S.C. § 1114(1) ...............................................................................................................19

12

15 U.S.C. § 1116 ....................................................................................................................24

13

15 U.S.C. § 1116(a) ...............................................................................................................24

14

15 U.S.C. § 1117(a) ...............................................................................................................23

15

15 U.S.C. § 1117(b) ...............................................................................................................21

16

15 U.S.C. § 1117(c) ...............................................................................................................21

17

15 U.S.C. § 1125(a) ...............................................................................................................19

18

19

15 U.S.C. § 1125(c)(1) ...........................................................................................................24

20

17 U.S.C. § 106 .....................................................................................................................15

21

17 U.S.C. § 106(1)–(4) ..........................................................................................................15

22

17 U.S.C. § 412 .....................................................................................................................22

23

17 U.S.C. § 502(a) .................................................................................................................24

24

17 U.S.C. § 504(c) .................................................................................................................21

25

17 U.S.C. § 505 .....................................................................................................................23

26

17 U.S.C. § 1201(a)(1)(A) .....................................................................................................29

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ) – vii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

1

2

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

3

17 U.S.C. § 1201(a)(3)(A) ..............................................................................................30

4

17 U.S.C. § 1201(b)(1) ....................................................................................................3

5

17 U.S.C. § 1203(b)(5) ..................................................................................................24

6

18 U.S.C. § 1030(a)(2)(C) .............................................................................................25

7

18 U.S.C. § 1030(a)(4) ..................................................................................................25

8

18 U.S.C. § 1030(a)(5)(C) .............................................................................................25

9

18 U.S.C. § 1030(c)(4)(A)(i)(I) .....................................................................................26

10

18 U.S.C. § 1030(e)(11) ...........................................................................................27, 28

11

18 U.S.C. § 1030(g) ......................................................................................................26

12

13

Computer Fraud and Abuse Act .....................................................................................12

14

Copyright Act ...............................................................................................21, 22, 23, 24

15

Lanham Act ............................................................................................................ passim

16

Washington Consumer Protection Act .............................................................................2

17

**RULES**

18

Fed. R. Evid. 701 .....................................................................................................28, 37

19

Fed. R. Evid. 702 ..........................................................................................................28

20

Federal Rule of Civil Procedure 56(a) ...........................................................................14

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

161952707

1

2

## I.      INTRODUCTION

3       Defendants are cheaters.   David Schaefer, Jordan Green, and Jeffrey Conway met

4  because they all used cheat software in video games, paying for artificial power-ups to gain an

5  unfair advantage over players who rely on skill.   For years, after they created Phoenix Digital,

6  they together managed a network of websites, including AimJunkies.com, for the sole purpose of

7  creating, advertising, and selling cheat software to allow others to cheat, rather than earn, their

8  way to video game achievements.   James May works for Phoenix Digital, creating cheat software

9  that Phoenix Digital sells.   Defendants created, advertised, and sold cheat software (the "Cheat

10 Software") for Bungie's video game, *Destiny 2* and its expansions (collectively, "*Destiny 2*").

11      The Cheat Software and its sale are illegal.   The Cheat Software requires the

12 infringement of Bungie's intellectual property.   To create the Cheat Software, Defendants:

13 (1) copied software code from *Destiny 2*, (2) distributed that copied code (or modified versions

14 of it) through the Cheat Software, and (3) modified (i.e., created a derivative work of) *Destiny 2*

15 while the Cheat Software was running on a cheater's computer.   This modified version added

16 features to the cheater's version of *Destiny 2* that were not intended or authorized by Bungie.   To

17 sell the Cheat Software, Defendants incorporated counterfeit copies of Bungie's registered

18 trademark in their promotional materials.

19      Defendants tried to cover up their illegal behavior.   When Bungie caught them,

20 Defendants attempted to delete the incriminating evidence:   Schaefer shredded sales records;

21 May wiped his hard drives; and Phoenix Digital purportedly sold the entire AimJunkies.com

22 website, losing access to the associated database of Cheat Software sales and to the software

23 itself.   More, Defendants alleged counterclaims against Bungie, claiming that Bungie's

24 investigation and detection of Defendants' unlawful activity was somehow wrong.   Not so.

25 Defendants' claims are legally flawed and lack evidentiary support, at least in part because

26 Defendants' also spoliated evidence relevant to their claims.

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 1
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Cheaters should not prosper.  The Court should enter summary judgment in favor of Bungie on its copyright and trademark infringement claims and award Bungie statutory damages and a permanent injunction against Defendants.  The Court should also dismiss Defendants' counterclaims with prejudice.

This motion is supported by the Declarations of William C. Rava ("Rava Decl.") and Dr. Edward Kaiser ("Kaiser Decl.") and the exhibits thereto.  Unless otherwise noted, the exhibits cited herein are attached to the Rava Declaration.

## II.    STATEMENT OF UNDISPUTED FACTS

Bungie asserted nine claims against Defendants for their development and sale of the Cheat Software.  Dkt. Nos. 1, 34.  This Court referred six causes of action to arbitration, where arbitrator Judge Ronald Cox (Ret.) found Defendants liable for circumventing technological measures and trafficking in circumvention technology in violation of the DMCA, breach of contract, tortious interference, and violation of the Washington Consumer Protection Act, and awarded Bungie damages and injunctive relief.  Dkt. No. 89-1 ("Final Award").  This Court confirmed the arbitration award on June 13, 2023.  Dkt. No. 140.  Three of Bungie's claims remain:  (1) copyright infringement, (2) trademark infringement, and (3) false designation of origin.

Judge Cox's findings are both relevant and binding. *McClellon v. Wells Fargo Bank, N.A.*, No. C18-0851, 2018 WL 3630299, at *3 (W.D. Wash. July 31, 2018) ("The Ninth Circuit has recognized that arbitration decisions can have a res judicata or collateral estoppel effect."). Among other things, Judge Cox held that:

- James May, "in concert with the other respondents, circumvented Bungie's technological measures" and "connected reverse engineering tools to the *Destiny 2* process in order to reverse engineer it and develop a cheat for the game." Final Award at 11.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

- The *Destiny 2* cheat was "designed to circumvent the protections in place in *Destiny 2*" and the "cheat loader was designed to circumvent protections by injecting code into the *Destiny 2* program without detection." *Id.* at 14. "Both the cheat and cheat loader's core functions involve working undetected by Bungie's technological measures." *Id.*

- Each distribution of the cheat software and the cheat loader constituted "trafficking of a device that circumvents technological measures" that "effectively protects a right of a copyright owner under this title" in violation of the DMCA, 17 U.S.C. § 1201(b)(1). *Id.* at 13-14.

Judge Cox's findings, Defendants' many admissions of liability, and other undisputed material facts, detailed below, support entry of summary judgment.

**A.    Bungie and *Destiny 2***

*Destiny 2* is a successful shared-world first-person shooter video game.   Originally released in September 2017, *Destiny 2* is now free-to-play and enjoyed by an estimated player base of over 30 million players.  Kaiser Decl. ¶ 6.  Bungie released *Destiny 2: Beyond Light*, one of its paid expansions, on November 10, 2020.  *Id.*

Bungie owns multiple trademarks associated with the Destiny franchise, including a federal registration (No. 4,321,315) for the DESTINY (& design) mark (the "Destiny Mark"):



Ex. 1.[1]

---

[1] Bungie also owns common law rights to several related marks, including but not limited to DESTINY (word & design), DESTINY 2, and DESTINY 2: BEYOND LIGHT.  Only the registered mark, No. 4,321,315, is the subject of this motion.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Bungie also owns all rights, title, and interest in the copyrights in *Destiny 2* and *Destiny*

2    *2: Beyond Light*,[2] including its computer software and the audiovisual works that software

3    creates, which are the subject of four U.S. copyright registrations.  Exs. 2-5; *see also* Final

4    Award at 6, 11 (holding Bungie owns copyrights to *Destiny 2*).

5    Among other things, Bungie's copyrighted computer software consists of data structures

6    that correspond to certain attributes of *Destiny 2*, including, for example, player positioning (the

7    locations of players and non-player characters) and rendering (code that determines what players

8    see from their characters' position).  Kaiser Decl. ¶¶ 13, 14.  The data structures provide a

9    precise layout for individual pieces of data stored and organized in a computer's memory, so that

10   the game functions as intended.  *Id.*  Bungie's copyrighted computer software for *Destiny 2*

11   includes what is commonly referred to as the *Destiny 2* "game engine."  *Id.* ¶ 3.

12   Bungie relies on two technical experts in support of this motion—Steven Guris and

13   Edward Kaiser, Ph.D—both of whose arbitration testimony Judge Cox credited.  Final Award at

14   5, 9-10.  Mr. Guris has a B.S. in software engineering, is the Director of Threat Investigations at

15   Unit 221B, a cybersecurity firm, and has extensive experience with *Destiny 2*.  Ex. 6 (Guris

16   Expert Report).  He analyzed Defendants' Cheat Software loader and opined on the irreparable

17   harm inflicted by the Cheat Software on Bungie.  *Id.*

18   Dr. Kaiser has a Bachelor of Applied Science in Computer Engineering and a Ph.D. in

19   Computer Science, Network Security and is an Engineering Lead and head of Bungie's Product

20   Security Team.  Kaiser Decl. ¶¶ 2-5.  He has substantial experience, including in connection with

21   his doctoral thesis, identifying, investigating, and implementing fixes to stop cheaters and other

22   bad actors in *Destiny 2*.  *Id.* ¶¶ 8-9.  Dr. Kaiser also wrote portions of the code for *Destiny 2*,

23   including code that interacts with player inputs and player and combatant positioning data

24   structures, and is intimately familiar with the game and its operation.  *Id.* ¶ 7.

25

26

---

[2] Collectively referred to hereafter as "*Destiny 2*."

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.     Defendants' History of Cheat Development**

In 2012, David Schaefer, Jeffrey Conway, and Jordan Green formed and became equal 1/3 owners of Phoenix Digital Group LLC (collectively referred to as the "Phoenix Digital Defendants").  Phoenix Digital's sole business purpose was to develop and sell cheats for video games from websites, including Aimjunkies.com.  Ex. 10 (Schaefer 2022 Dep. Tr.) at 29:24-30:5.  Although each had full control and authority to manage Phoenix Digital (Ex. 7 (Phoenix Digital LLC Agreement) ¶ 4.3), generally Conway managed finances, Green performed engineering work (including testing and verifying cheats), and Schaefer acted as the general business manager.  Ex. 8 (Conway 2022 Dep. Tr.) at 22:2-19; Ex. 9 (Green 2022 Dep. Tr.) at 38:24-39:6; 45:17-46:25; Ex. 10 (Schaefer 2022 Dep. Tr.) at 14:12-15:15; Final Award at 4-5.  Schaefer directed almost all of Phoenix Digital's actions.  *See, e.g.*, Ex. 10 (Schaefer 2022 Dep. Tr.) at 68:25-69:16, 115:24-116:11.   Indeed, Conway testified that he acted at Schaefer's command, ▮▮▮ and without ▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. 8 (Conway 2022 Dep. Tr.) at 137:7-138:8.  Schaefer personally controlled every aspect of the cheat sales—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Ex. 10 (Schaefer 2022 Dep. Tr.) at 38:2-21, 68:25-69:16, 77:17-78:16, 115:24-116:11. Defendant James May developed cheats for Phoenix Digital and shared in profits from Phoenix Digital's sales.  At all relevant times, May had no other income and distributed cheats he developed only through Phoenix Digital and its websites, including AimJunkies.com.  Ex. 11 (May 2022 Dep. Tr.) at 13:8-23.

For cheats developed by May and sold through AimJunkies.com, Schaefer, Conway, Green, and May each shared the profits.  *Id.* at 24:1-16. May received ▮▮▮, and Schafer, Conway, and Green split the remaining ▮▮▮ evenly.  Ex. 10 (Schaefer 2022 Dep. Tr.) at 48:17-50:4.  Those profits were substantial: Defendants sold nearly ▮▮▮▮ in cheats *from 2019 - 2020 alone*.  Ex. 12 (Phoenix Digital's PayPal account transactions).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## C.     Defendants' Development of the Cheat Software

Throughout 2019, Defendants developed the Cheat Software.  In or around October 2019, May began reverse engineering *Destiny 2* using a variety of tools, including Phoenix Digital's ██████████ that it provided to cheat developers and that was digitally signed by Phoenix Digital with credentials provided by Schaefer.  *See* Kaiser Decl. ¶ 25 & Ex. 1 (identifying instances that May connected reverse engineering tools and Phoenix Digital files to *Destiny 2*); Ex. 11 (May 2022 Dep Tr.) at 41:14-42:2, 85:5-7; Final Award at 15, 16-17; Ex. 10 (Schaefer 2022 Dep. Tr.) at 241:7-242:13.  May was reverse engineering *Destiny 2* "in order to help develop a cheat for *Destiny 2* that Phoenix Digital sold on its website."  Final Award at 12. Defendants also claim that an Eastern European cheat developer, Andreas Banek, worked on a cheat for *Destiny 2*.[3]  Ex. 10 (Schaefer 2022 Dep. Tr.) at 120:18-121:5.  Like May, Banek shared in the profits from Defendants' sale of cheats he developed.  *Id.* at 141:4-14.

Defendants continually updated the Cheat Software, releasing at least three versions.  In November 2019, Phoenix Digital announced it would soon be releasing a cheat for *Destiny 2*. Ex. 13 (Phoenix Digital promotional email).  On or around December 17, 2019, Phoenix Digital released its first version with an "Extra-Sensory Perception" ("ESP") feature, allowing cheaters to see through walls.  Ex. 14 (Defendants' promotional email).  A few days later, December 23, 2019, Phoenix Digital released a second "full" version of the Cheat Software with new features such as "AIMBOT," and "One Position Kill" ("OPK").  Ex. 15 (same).  About one year later, on November 11, 2020, Phoenix Digital released a third version of the Cheat Software for use with Bungie's new expansion, *Destiny 2: Beyond Light*.  Ex. 16 (Tweet announcing release of updated Cheat Software).  Despite Bungie banning him on numerous occasions, May assisted with all of these versions, repeatedly connected reverse engineering tools to *Destiny 2* from October to May

---

[3] Defendants assert that the Cheat Software was developed by Banek rather than May.  Regardless, Defendants are liable for distributing the Cheat Software and its use by May and other cheaters.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

2021, circumventing *Destiny 2*'s technological protections on roughly 100 separate occasions. Kaiser Decl., Ex. 1; Final Award at 6-7.

**D.      How the Cheat Software Operates**

Defendants' Cheat Software gives cheaters an unfair advantage by adding unauthorized features, including ESP, AIMBOT, and OPK.  Ex. 17. Defendants admit that the Cheat Software includes these features and what they do (e.g., see through walls).  Dkt. No. 72 (Defs.' Answer and Am. Countercls.) ¶¶ 81, 86, 89.  Defendants otherwise claim ignorance of how the Cheat Software and its loader operates.  *See, e.g.*, Ex. 18 (Phoenix Digital 2022 Dep. Tr.) at 9:6-10:21; Ex. 11 (May 2022 Dep. Tr.) at 115:6-17.  Only Bungie's experts, Dr. Kaiser and Mr. Guris, testified about how the software operates, and Defendants did not and cannot dispute this testimony.  Final Award at 5, 9-10, 15.

**1.      The ESP Cheat Feature**

The ESP feature allows cheaters to see the location of other players and non-player characters, including through solid walls.  Dkt. No. 72 (Am. Answer) ¶ 81.  As illustrated in the screenshots below, the Cheat Software displays a box around the other players with their names and distance from the cheater.  *Id.*; Kaiser Decl. ¶ 12; Ex. 11 (May 2022 Dep. Tr.) at 112:18-113:14.

**Normal Player's View**



**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**Player's View Using Defendants' Cheat Software**



Kaiser Decl., Ex. 3; Dkt. No. 72 (Am. Answer) ¶ 81.

In order to display player locations, the Cheat Software must copy and modify Bungie's copyrighted computer software.  Kaiser Decl. ¶ 12.  In particular, to enable the ESP feature, Defendants copied the code related to the data structures for player positioning and rendering and reverse engineered that code.[4]  *Id.* ¶ 15.  Defendants then incorporated derivatives of the copied code into the Cheat Software.  *Id.*  When in use, the Cheat Software creates a modified version of the visual display.  Dkt. 72 (Am. Answer) ¶ 81.  Cheaters run a copy of *Destiny 2* on their computers while also running a copy of the Cheat Software; the Cheat Software injects its code into (*i.e.*, runs its software code inside) the *Destiny 2* game engine; the injected code extracts the normally-inaccessible data about player positioning and manipulates the rendering data; and the Cheat Software then utilizes the game's camera and display functions to display the boxes and player information to the cheaters.  Kaiser Decl. ¶ 16.

---

[4] Bungie employs measures to obfuscate this code from would-be attackers with a form of encryption that could not have been broken but for Defendants' copying and reverse engineering against that code.  *See* Final Award at 6, 11.

BUNGIE'S MOT. FOR SUMMARY JUDGMENT – 8
(No. 2:21-cv-811-TSZ)
161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Each time Bungie updated its code, Defendants updated their Cheat Software to enable its functionality with the updated code, creating new copies of the data structures and software code and incorporating them into the updated Cheat Software.  *Id.* ¶ 23.  At a minimum, Defendants updated their Cheat Software (a) on or around December 23, 2019 when they released the "full" version of the cheat (Ex. 15) and (b) on or around November 11, 2020 when they released a version for the *Destiny 2: Beyond Light* expansion (Ex. 16).

### 2.    The AIMBOT Cheat Feature

Accuracy is also an essential skill in a first-person shooter game like *Destiny 2*.  The AIMBOT feature allows cheaters to aim weapons automatically and accurately (*i.e.*, without movement of the mouse and/or controller joystick), also providing a hugely unfair advantage. Dkt. No. 72 (Am. Answer) ¶ 86.

As with the ESP feature, to provide the AIMBOT feature, Defendants copied the code related to the data structures for player positioning (*i.e.*, the target at which the player aims their weapon), reverse engineered the *Destiny 2* software code that calculates the angle deltas for mouse movements (*i.e.*, software code used to calculate how far the weapon cursor moves in *Destiny 2* in response to inputs), and then incorporated code derived from the copies into the Cheat Software.  Kaiser Decl. ¶ 18.  The Cheat Software also injects code into the game engine that allow the AIMBOT feature to function.  *Id.* ¶ 19.  And, like the ESP feature, Defendants made additional copies of Bungie's software code to keep the AIMBOT feature working with the updated versions of *Destiny 2*.  *Id.* ¶ 23.

### 3.    The One Position Kill Cheat Feature

The OPK feature shortcuts *Destiny 2*'s skill-based combat progression by allowing cheaters to move other players and characters to a single position so that the cheater can damage them all at once.  Dkt. No. 72 (Am. Answer) ¶ 89; Kaiser Decl. ¶ 20.  Like the Cheat Software's other features, to enable OPK, Defendants copied the code related to the data structures for player positioning and combatant positioning to permit reverse engineering; incorporated cheat

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  code derived from the copied code into the Cheat Software; and injected that cheat code that

2  modifies player input data structures and functionalities into *Destiny 2* on the cheaters'

3  computers.  Kaiser Decl. ¶¶ 21, 22.  Similarly, Defendants updated the Cheat Software to reflect

4  Bungie's updates to *Destiny 2*.  *Id.* ¶ 23.

5  **4.    The Cheat Loader**

6  Cheat Software users must also download a loader from AimJunkies.com.  Ex. 6 (Guris

7  Expert Report) ¶¶ 97-99.  The cheat loader—a third party product that Defendants distributed

8  with the purchase of the Cheat Software—injects the Cheat Software into the *Destiny 2* process,

9  allowing the cheat to operate within and modify *Destiny 2*.  *Id.* ¶ 96.  Each cheater had to

10  download Defendants' loader.  Ex. 10 (Schaefer 2022 Dep. Tr.) at 92:18-93:6.  Like malware,

11  Defendants' loader requires extremely broad access to the cheater's computer to operate.  *See*

12  Ex. 6 (Guris Expert Report) ¶¶ 96-111.  Defendants' loader also circumvented Bungie's

13  copyright protections by injecting code into the *Destiny 2* process.  *Id.* ¶ 99; Final Award at 14.

14  **E.    Defendants Promoted the Cheat Software Using Bungie's Destiny Mark**

15  Defendants promoted the Cheat Software on their AimJunkies.com website and in

16  promotional emails using Bungie's Destiny Mark and other intellectual property.  On their

17  website and on the Cheat Software homepage, as shown below, Defendants used an exact copy

18  of the Destiny Mark, pulled from Bungie's promotional materials for *Destiny 2*:



23  Ex. 10 (Schaefer 2022 Dep. Tr.) at 249:4-250:5 and Ex. 20 (confirming image is from

24  AimJunkies website and that he added the DESTINY 2 image to the website).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7



Ex. 21 (screenshot from *Destiny 2* gameplay trailer).

8  Additionally, Defendants used the Destiny Mark and images from *Destiny 2* in

9  promotional Tweets and emails—but Defendants ███████████████████████████

10 █████████████. Exs. 14, 15, 22-24; Ex. 10 (Schaefer 2022 Dep. Tr.) at 214:2-218:21.[5]

11 **F.  Defendants Profited from their Malicious Conduct and Harmed Bungie**

12  Due to Defendants' spoliation, the true number of Cheat Software sales cannot be known.

13 *See* Dkt. Nos. 100, 146; Final Award at 20.  But from the records that Defendants did not destroy

14 and those produced by third parties, Defendants sold a minimum of 1,406 copies of the Cheat

15 Software, totaling over $43,210 in sales.  *See* Ex. 25 (Expert Report of Drew Voth) ¶ 25.  Each

16 Defendant received a portion of the Cheat Software revenue.

17  In addition to profiting from their actions, Defendants' Cheat Software also directly

18 harmed Bungie.  Cheaters poison the experience for legitimate players and devalue the larger

19 ecosystem built around an online live-service multiplayer game such as *Destiny 2*, where

20 retention of invested players is paramount.  Ex. 6 (Guris Expert Report) ¶¶ 121, 124.  Even a

21 small number of cheaters drives away retained players and drops the popularity of a game among

22 new players.  *Id.* ¶¶ 124-126.

23  Here, it is undisputed that Bungie's *Destiny 2* player base has been harmed.  Bungie

24 recorded more than 6,000 complaints about players using the Cheat Software and spent hundreds

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[5] These missing images are one of the issues raised in Bungie's Motion for Spoliation Sanctions, Dkt. Nos. 100, 146.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    of thousands of dollars combatting cheaters and cheat developers such as Defendants in order to

2    protect its player base.  Kaiser Decl. ¶ 24 & Ex. 2.

3    **G.    May's and Phoenix Digital's Counterclaims**

4            May alleges that Bungie unlawfully accessed his computer, and Phoenix Digital alleges

5    that Bungie breached AimJunkies.com's Terms of Service. The undisputed facts show that these

6    counterclaims are meritless.

7            **1.    May's Counterclaims and Reverse Engineering of *Destiny 2***

8            May admits to and was found liable for violating the DMCA anti-circumvention

9    provision by reverse engineering *Destiny 2*.  Ex. 11 (May 2022 Dep. Tr.) at 41:14-42:2, 73:1-

10   74:19, 85:5-7; Final Award at 10-12.  When May connected reverse engineering tools to the

11   *Destiny 2* process, or ran processes on his computer at the same time as *Destiny 2*, the *Destiny 2*

12   process obtained metadata (e.g., file headers containing file path information) and recorded an

13   MD5 hash—a string of numbers and letters that serves as a unique identifier or digital

14   watermark—of those tools and programs that May was using.  Kaiser Decl. ¶ 25.[6]  Incredibly,

15   May now asserts that Bungie's discovery of **his** reverse engineering—which was held to violate

16   the DMCA anti-circumvention provision—somehow shows that **Bungie** circumvented May's

17   technological protections.  Dkt. No. 72 (Am. Countercls.) ¶¶ 54-60.[7]  The conduct of which May

18   complains, however, was simply the *Destiny 2* process identifying malicious programs that were

19   connected or running parallel to it, like May's reverse engineering tools.  *See* Kaiser Decl. ¶ 25.

20           May also agreed to Bungie's collection of this data by accepting Bungie's Limited

21   Software License Agreement ("LSLA") which incorporates by reference Bungie's Privacy

22   Policy.  Dkt. No. 72 (Am. Countercls.) ¶¶ 6-8; *see also* Dkt. No. 72-1 (copy of the LSLA

23   attached to Defs.' Am. Answer and Countercls.); Dkt. No. 72-2 (Bungie's Privacy Policy); Dkt.

24   No. 90 (Pl.'s Answer) ¶¶ 8-10.

25           [6] Dr. Kaiser provides a full explanation of what an MD5 hash is in Paragraph 26 of his declaration.

26           [7] May also alleges counterclaims for violations of the Computer Fraud and Abuse Act based on the same
     conduct.  Dkt. No. 72 (Am. Countercls.) ¶¶ 1-53.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

By agreeing to the Privacy Policy, May consented to Bungie "collect[ing] Personal Information about you and your use of the Bungie Services via automated means, such as through cookies, web beacons and similar technologies," including information such as, but not limited to:

- Bungie Services Use Data, including information about your use of the Bungie Services, the pages and content that you view, the referring and existing pages, your access times, the links you click, and other actions taken within the Bungie Services.
- Device Data, including information regarding your device, such as device type, operating system type, browser type, device regional and language settings, IP address, and device ID (such as IDFA or AAID).

Dkt. No. 72-2 at 4. This information is collected by Bungie to, among other reasons, "prevent fraudulent use of the Bungie Services," "enforce our Terms of Use [and] our legal rights," and "prevent or address potential or actual injury or interference with our rights, property, operations, users or others who may be harmed or may suffer loss or damage." *Id.* at 6. To collect data that is helpful in preventing fraudulent uses of the Bungie Services and in protecting Bungie's intellectual property rights, *Destiny 2* detects potentially malicious processes that can interfere with *Destiny 2*, such as cheat software or reverse engineering tools, computes an MD5 hash of the corresponding files as a unique file-identifier, and reports the MD5 hash to Bungie, if queried. Ex. 28 (Kaiser Dep. Tr.) at 124:17-125:10 (explaining that the file path for the reclass/blah.64.exe file "attached to Destiny 2 and was attempting to reverse engineer the game").

### 2.     Phoenix Digital's Terms of Service

On January 3, 2020, a member of Bungie's Product Security Team purchased a subscription to the Cheat Software from AimJunkies.com. Ex. 26 (Doe Dep. Tr.) at 37:5-15. That Bungie employee does not recall being presented with or agreeing to any terms of service.

1    *Id.* at 58:3-24.  Bungie launched the Cheat Software; used it as it was designed to be used (i.e., in

2    connection with *Destiny 2*); and concluded that the various features of the Cheat Software—

3    including ESP, AIMBOT and OPK—were functional within *Destiny 2*.  *Id.* at 37:5-15.  Soon

4    after its first use, the Cheat Software stopped working and Bungie was unable to relaunch it.

5    Kaiser Decl. ¶ 28.

6         In an attempt to prevent legitimate businesses from investigating its unlawful goods,

7    Phoenix Digital purportedly required purchasers of the Cheat Software to accept a Terms of

8    Service (the "Terms of Service").  Dkt. No. 72 (Am. Countercls.) ¶ 63.  Defendants provide no

9    evidence showing that Bungie accepted the Terms of Service, and admit that no such evidence

10   exists or has ever existed.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 40:20-41:18, 42:24-43:5.

11   Indeed, Defendants are unable to explain from whom or where they obtained the copy of the

12   2019 Terms of Service produced in discovery (*id.* at 30:3-17, 31:18-32:4), where the Terms of

13   Service were located on the website (*id.* at 36:20-37:9), or why they only happen to have the

14   2019 copy (*id.* at 31:18-32:20).

15                                **III.    ARGUMENT**

16   **A.    Legal Standard**

17        Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

18   if the movant shows that there is no genuine dispute as to any material fact and the movant is

19   entitled to judgment as a matter of law."  The moving party has the burden of demonstrating the

20   absence of a genuine issue of material fact.  *Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*,

21   No. C10-380Z, 2011 WL 3360664, at *1 (W.D. Wash. Aug. 3, 2011).  In opposing the motion,

22   the non-moving party may not rest on the mere allegations or denials of its pleadings, but "must

23   set forth 'specific facts' demonstrating the existence of a genuine issue for trial."  *Id.* (citation

24   omitted).

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.    Defendants Directly Infringed Bungie's Copyrights**

Bungie must prove two elements to succeed on its direct copyright infringement claim: (1) ownership of the infringed material and (2) that Defendants violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  A copyright owner's exclusive rights include the rights to reproduce the copyrighted work, prepare derivative works based on the copyrighted work, and distribute copies of the copyrighted work.  17 U.S.C. § 106(1)–(4).

It is undisputed that Bungie has met the first element.  Bungie owns four copyright registrations covering the *Destiny 2* computer software code and audiovisual works that Defendants infringed.  Exs. 2-5.  These registrations protect the entirety of the computer software code and audiovisual components of the *Destiny 2* video game and the *Destiny 2: Beyond Light* expansion.  *Id.*  Bungie thus owns the infringed materials.  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (a copyright registration is prima facie evidence of the validity of the copyright); Final Award at 11.

Nor is there a dispute that Defendants violated Bungie's exclusive rights to reproduce, prepare derivative works from, and distribute copies of its copyrighted works.

***First,*** to create the Cheat Software, Defendants copied certain copyrighted software code from *Destiny 2*, reverse engineered against that code to develop derivative cheat code, and incorporated that unauthorized derivative code into the Cheat Software.  Kaiser Decl. ¶¶ 15, 18, 21.  Specifically, Defendants copied the data structures that correspond to player and combatant positioning; and reverse-engineered the code dedicated to the game's rendering and calculation of angle deltas for mouse movement; and incorporated a derivative of Bungie's software code into the Cheat Software.  *Id.*  The Cheat Software's ESP, AIMBOT, and OPK features could not function without this copied and reverse engineered code, and Defendants could not have successfully reverse engineered against Bungie's code except by experimentation against an unauthorized copy.  *Id.*  That copying infringes Bungie's copyrights. *See Ticketmaster L.L.C. v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   *Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) ("The act of downloading

2   and storing the pages and code of a website qualifies as making a 'copy' under the Copyright Act

3   . . . .").

4       Moreover, when Defendants updated the Cheat Software to ensure compatibility with

5   *Destiny 2* code updates, Defendants copied Bungie's updated code. Kaiser Decl. ¶ 23; Final

6   Award at 6 (May's reverse engineering "allowed Phoenix [Digital] to modify and sell" various

7   versions of the Cheat Software); *see also* Ex. 11 (May 2022 Dep. Tr.) at 132:24-133:15.

8   Therefore, Defendants infringed Bungie's exclusive right to copy or reproduce its copyrighted

9   *Destiny 2* code, which is alone sufficient for Bungie to prevail on its copyright infringement

10  claim.

11      ***Second,*** the Cheat Software's features create derivative works of *Destiny 2*—both the

12  software code and audiovisual works. Adding new features to a video game infringes the right to

13  create derivative works. *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998)

14  (levels of computer game burned onto a CD disk were derivative works in part because the levels

15  manipulated the game code to create an altered visual display); *Dun & Bradstreet Software*

16  *Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002); *Take-Two Interactive*

17  *Software, Inc. v. Zipperer*, No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018)

18  (granting preliminary injunction where cheat developer created an alternative version of

19  plaintiff's video game with "added elements that allow its users to use features not available" in

20  the original game).

21      Here, the Cheat Software injects code into *Destiny 2*, including into the player

22  positioning and player input data structures; the cheat code then manipulates those structures to

23  create modified versions of the *Destiny 2* software code and audiovisual display that constitute

24  unauthorized derivative works. Kaiser Decl. ¶¶ 16, 19, 22; *Take-Two Interactive Software*, 2018

25  WL 4347796, at *8; *Micro Star*, 154 F.3d at 1112.

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT – 16
(No. 2:21-cv-811-TSZ)

161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   ***Third and finally***, Defendants infringed Bungie's exclusive right to distribute copies of
2   *Destiny 2*.  As discussed above, Defendants sold more than 1,400 copies of the Cheat Software,
3   which incorporated copies of code derived from Bungie's copyrighted code.  *See* Ex. 25 (Voth
4   Expert Report) ¶ 25.  Each sale of the Cheat Software violated Bungie's distribution right.  *See*
5   *Nexon Am., Inc. v. S.H.*, No. CV 10-9689 (JCx), 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13,
6   2011) (holding that defendant distributed infringing cheat software, which was a modified
7   version plaintiff's video game software, by uploading it to a website where it was then
8   downloaded by users).

9   **C.   All Defendants Are Liable for Secondary Copyright Infringement**

10   In addition to their direct infringement, Defendants are also liable for both contributory
11   and vicarious copyright infringement.

12   **1.   Defendants' Contributory Infringement**

13   To be liable for contributory infringement, (1) the defendant must have knowledge of
14   direct infringement; and (2) either induce, cause, or materially contribute to the infringing
15   conduct.  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).
16   "[P]roviding the site and facilities for known infringing activity is sufficient to establish
17   contributory liability."  *ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051 (AFMx), 2018 WL
18   11350606, at *9 (C.D. Cal. Mar. 13, 2018) (quoting *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76
19   F.3d 259, 264 (9th Cir. 1996)).

20   With each purchase of Defendants' Cheat Software, code that infringes Bungie's
21   copyrighted code "passes through a Phoenix Digital computer to the customer's computer."
22   Ex. 29 (Defendants' Suppl. Resp to Rog. 6); *see also* Kaiser Decl. ¶¶ 15, 18, 21.  In addition,
23   every use of the Cheat Software by a Phoenix Digital customer results in an unauthorized
24   derivative work of *Destiny 2*.  *Supra* Section III.B.  Defendants sold more than 1,400 copies of
25   their Cheat Software.  Ex. 25 (Voth Expert Report) ¶ 25.  And Defendants are aware of the
26   resulting infringement by their customers.  Ex. 17 (advertising features of the Cheat Software on

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    AimJunkies.com).  Defendants were also the direct cause of and encouraged that infringement.

2    *See, e.g.*, Exs. 14, 15, 22-24 (promotional emails).  But for Defendants' creation, advertising, and

3    sale of the Cheat Software, the cheaters' infringement would not have occurred.  Defendants

4    therefore induced, caused, or materially contributed to the infringing conduct "by advertising and

5    making the [Cheat Software] available for download on [their] website."  *Nintendo of Am., Inc.*

6    *v. Storman*, No. CV 19-7818 (RAOx), 2021 WL 4780329, at *4 (C.D. Cal. Aug. 5, 2021)

7    (defendant contributorily infringed by distributing infringing copies of video games on his

8    website).

9            **2.      Defendants' Vicarious Infringement**

10           Liability for vicarious copyright infringement extends to a defendant who "has the right

11   and ability to supervise the infringing activity and also has a direct financial interest in such

12   activities."  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001) (quoting

13   *Fonovisa*, 76 F.3d at 262).   A financial interest exists where "the availability of infringing

14   material acts as a draw for customers."  *Nintendo of Am.*, 2021 WL 4780329, at *4.  "A

15   defendant 'exercises control over a direct infringer when he has both a legal right to stop or limit

16   the directly infringing conduct, as well as the practical ability to do so.'"  *Broad. Music, Inc. v.*

17   *Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1103 (W.D. Wash. 2015) (quoting *Perfect 10,*

18   *Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).

19           Bungie has satisfied both elements.  Defendants admit that they have both the right and

20   practical ability to control their customers' infringement.   Schaefer concedes he made the

21   decision to sell the Cheat Software and had the ability and ███████████████████████████

22   ██████████████████.  Ex. 10 (Schaefer 2022 Dep. Tr.) at 102:18-103:8; Final Award at

23   4.  In addition, Defendants admit to a direct financial interest in the Cheat Software—generating

24   more than $43,000 in sales from the Cheat Software.  Ex. 25 (Voth Expert Report) ¶ 25.  And, as

25   advertised by the Defendants, the primary attraction of the Cheat Software were the features

26   ESP, AIMBOT, and OPK, which individually and together infringe Bungie's copyrights.  Ex. 14,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    15, 22-24 (promotional emails).  Therefore, Defendants are vicariously liable for the cheaters'

2    infringement.

3    **D.    The Phoenix Digital Defendants Infringed Bungie's Trademark**

4            The Phoenix Digital Defendants infringed Bungie's registered Destiny Mark in violation

5    of 15 U.S.C. § 1114.[8] To prove trademark infringement of a registered trademark, a plaintiff

6    must show (1) it has a protectable ownership interest in the mark; and (2) that the defendant's

7    use of the mark is likely to cause consumer confusion.  *Kische USA LLC v. Simsek*, No. C16-

8    0168, 2016 WL 7212534, at *7 (W.D. Wash. Dec. 13, 2016) (citation omitted).

9            There is no dispute that Bungie owns rights in and to the Destiny Mark.  Ex. 1.  Bungie

10   owns a federal trademark registration for the Destiny Mark, which constitutes prima facie

11   evidence of the validity of the DESTINY (& design) mark, as well as of the facts stated in the

12   registration certificate.  15 U.S.C. § 1057(b); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*.,

13   174 F.3d 1036, 1047 (9th Cir. 1999).  The registration is also prima facie evidence of Bungie's

14   exclusive right to the use of the mark for purposes of 15 U.S.C. § 1114(1).  *See* 15 U.S.C.

15   § 1057(b); *Brookfield*, 174 F.3d at 1047.  Thus, Bungie has established ownership of a valid

16   mark.

17           Bungie also meets the second element regarding the likelihood of confusion.  "Numerous

18   courts, including those in the Ninth Circuit, have held if an allegedly infringing mark qualifies as

19   a 'counterfeit' mark, then no genuine issue of fact exists regarding likelihood of confusion and,

20   assuming all other elements are satisfied, the plaintiff is entitled to summary judgment on the

21   defendant's liability for trademark infringement."  *Coach, Inc. v. Pegasus Theater Shops*,

22   No. C12-1631, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013).  A counterfeit mark is a

23   "(1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the

24

25

26           [8] Bungie's claim for false designation of origin under 15 U.S.C. § 1125(a) is not the subject of this motion. Bungie does not assert a trademark infringement claim against May.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    genuine mark was registered for use on the same goods to which the infringer applied the

2    mark[.]"  *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 658 F.3d 936, 946 (9th Cir. 2011).

3         Here, Bungie's registered Destiny Mark covers "Computer game software; Computer

4    game software downloadable from a global computer network; Video game software."  Ex. 1.

5    The Phoenix Digital Defendants used an identical or nearly identical copy of Bungie's Destiny

6    Mark on the landing page on AimJunkies.com where they distributed the Cheat Software.  Exs.

7    20, 30.   Additionally, the Phoenix Digital Defendants' use of the Destiny Mark was in

8    connection with promoting computer game software, namely computer game cheats for *Destiny*

9    *2*.  Thus, the Phoenix Digital Defendants' use of the Destiny Mark qualifies as a "counterfeit"

10   mark.

11        Moreover, the *Sleekcraft* factors also clearly weigh in favor of a finding of likelihood of

12   confusion.   "The Ninth Circuit has adopted the following factors to determine whether a

13   likelihood of consumer confusion exists: (1) strength of the mark; (2) proximity of the goods;

14   (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used;

15   (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's

16   intent in selecting the mark; and (8) likelihood of expansion of product lines."  *Sega Enters. Ltd.*

17   *v. MAPHIA*, 948 F. Supp. 923, 937 (N.D. Cal. 1996) (finding a likelihood of confusion where

18   defendant used Sega's trademarks on his website to identify pirated video games available for

19   download).

20        Here, those factors weigh in favor of a finding of likelihood of confusion.  The Destiny

21   Mark is well-known and inherently strong; Bungie has used it in connection with the massively

22   popular *Destiny* video game series for over a decade.  Ex. 1.  The goods and marketing channels

23   also overlap; indeed, the sole purpose of the Cheat Software is to operate in and modify *Destiny*

24   *2*.  Kaiser Decl. ¶¶ 15-22.  Additionally, the mark used by Defendants is identical or nearly

25   identical to the Destiny Mark, containing the entirety of the mark, and Defendants used the

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  Destiny Mark knowing they were not authorized to do so.  Ex. 27 (Phoenix Digital 2023 Dep.

2  Tr.) at 104:18-105:8.

3  **E.    Bungie Is Entitled to Defendants' Profits, Statutory Damages, Attorneys' Fees and a**
4  **Permanent Injunction**

5  **1.    Legal Standard**

The Copyright Act authorizes statutory damages of up to $30,000 per copyright

6  infringed, enhanced to up to $150,000 per copyright if the infringement is willful.  17 U.S.C.

7  § 504(c).  "The court has wide discretion in determining the amount of statutory damages to be

8  awarded within the ranges provided by 17 U.S.C. § 504(c)(1)-(2)."  *Getty Images (U.S.), Inc. v.*

9  *Virtual Clinics*, No. C13-0626, 2014 WL 1116775, at *2 (W.D. Wash. Mar. 20, 2014).   In

10  determining the appropriate award, courts consider several factors including "(1) the infringer's

11  profits and expenses saved because of the infringement; (2) the plaintiff's lost revenues; (3) the

12  strong public interest in ensuring the integrity of copyright laws; and (4) whether the infringer

13  acted willfully."  *Id*.  Infringement is willful if "the defendant was actually aware of the

14  infringing activity" or "the defendant's actions were the result of reckless disregard for, or

15  willful blindness to, the copyright holder's rights."  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853

16  F.3d 980, 991 (9th Cir. 2017).

17  Similarly, in cases involving use of a counterfeit mark, a trademark owner may elect to

18  recover an award of statutory damages of up to $200,000 per trademark infringed, enhanced to

19  up to $2,000,000 per mark if the infringement is willful.  15 U.S.C. § 1117(c).  To establish the

20  level of willfulness necessary to warrant enhanced damages under the Lanham Act, a plaintiff

21  need only show that the defendant acted with "willful blindness" to the trademark holder's

22  rights.  15 U.S.C. § 1117(b); *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D.

23  Cal. 2007).

24  Finally, when a defendant has infringed both trademarks and copyrights, a plaintiff is

25  entitled to recover separate statutory damages awards, because the Lanham Act and the

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Copyright Act provide separate remedies for the two distinct injuries and serve different public

2   policies.  *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994) (a

3   defendant commits "two wrongs" when his actions violate both the Copyright Act and the

4   Lanham Act; to "effectuate the purposes of both statutes, damages may be awarded under both").

5           **2.      Bungie Seeks $600,000 in Statutory Damages**

6           Bungie seeks statutory damages for Defendants' infringement of its registered copyrights

7   to *Destiny 2: Beyond Light* (Reg. Nos. TX 8-933-658 and PA 2-280-030) and Bungie's

8   registered Destiny Mark (Reg. No. 4,321,315).

9           There is no doubt that Defendants' conduct was willful.  Defendants knew about *Destiny*

10  *2*; knew they were not authorized to create the Cheat Software; repeatedly reverse engineered

11  *Destiny 2* to develop the Cheat Software; and repeatedly circumvented Bungie's efforts to ban

12  them.  Defendants then advertised and sold the Cheat Software widely, using Bungie's Destiny

13  Mark and game images, all knowing such use was not authorized.  Ex. 27 (Phoenix Digital 2023

14  Dep. Tr.) at 104:18-105:8.

15          For Defendants' trafficking in the infringing Cheat Software, Bungie seeks willful

16  statutory damages of $300,000 for the use of the Destiny Mark at issue and $150,000 for the two

17  *Destiny 2: Beyond Light* copyright registrations, for a total of $600,000.[9]  The requested damages

18  are imminently reasonable given the willful nature of the infringement and spoliation which

19  prevented a full accounting of Defendants' infringement and their profits.  *See Getty Images*,

20  2014 WL 1116775, at *4 (awarding maximum statutory damages to deter future infringement);

21  *BAOL, s.r.o. v. Media W. Ent., Inc*., No. CV1110138 (PJWx), 2012 WL 13012389, at *4 (C.D.

22  Cal. June 26, 2012) (awarding statutory damages of $500,000 per trademark and $75,000 per

23  copyright infringed "given Defendants' pattern of infringement and the goal of deterrence"); *see*

24          [9] A party may elect statutory damages where the infringement occurred prior to registration of the
25  copyrighted work as long as "such registration is made within three months after the first publication of the work."
    17 U.S.C. § 412.  *Destiny 2: Beyond Light* was first published on November 10, 2022.  Exs. 3, 4.  Defendants
26  released an update to the Cheat Software on November 11, 2022.  Ex. 16.  Bungie obtained registration certificates
    for the *Destiny 2: Beyond Light* software code and audiovisual works on February 9, 2021.  Ex. 3, 4.

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 22
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *also Experience Hendrix, L.L.C. v. Pitsicalis*, No. 17 Civ. 1927, 2020 WL 3564485, at \*11-12

2    (S.D.N.Y. July 1, 2020) (awarding near maximum copyright statutory damages in part because

3    of defendants' discovery abuses and failure to cooperate in discovery to produce full sales

4    records).

5    ### 3.    Attorneys' Fees Are Warranted

6    Both the Copyright and Lanham Acts authorize an award of reasonable costs and

7    attorneys' fees.[10]  Such an award is warranted under the circumstances here.

8    The Copyright Act authorizes the Court to award costs and attorneys' fees to the

9    prevailing party.  *See* 17 U.S.C. § 505.  A court may "freely award fees" to the prevailing party

10   as long as it "seek[s] to promote the Copyright Act's objectives," which is designed to encourage

11   plaintiffs to act to protect their copyrights.  *Hist. Rsch. v. Cabral*, 80 F.3d 377, 378-79 (9th Cir.

12   1996) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).  Willful infringement is not a

13   prerequisite for an award of attorneys' fees, and attorneys' fees are generally awarded to a

14   prevailing plaintiff as a matter of course.  *Frank Music Corp. v. Metro-Goldwyn Mayer Inc.*, 886

15   F.2d 1545, 1556 (9th Cir. 1989).

16   Bungie is also entitled to its fees and costs under the Lanham Act, which provides that

17   "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" and

18   the "costs of the action."  15 U.S.C. § 1117(a).  Defendants' deliberate and willful infringement,

19   litigation misconduct, and spoliation makes this an "exceptional" case under the Lanham Act.

20   *See Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982); *Zosma*

21   *Ventures, Inc. v. Nazari*, No. CV121404 (FFMx), 2013 WL 12129643, at \*4 (C.D. Cal. Sept. 23,

22   2013) (awarding attorneys' fees where defendant's bad faith during the litigation and willful

23   infringement made case exceptional).  In cases involving the mass distribution of infringing

24

25

26   ---

[10] Upon a favorable ruling on its motion, Bungie will submit a declaration in support of its request for reasonable attorneys' fees and costs in prosecuting this action.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   works, courts have also routinely awarded attorneys' fees. *See, e.g.*, *Philip Morris*, 489 F. Supp.

2   2d at 1124; *Sega*, 948 F. Supp. at 941.[11]

3       **4.      Permanent Injunction Is Warranted and Necessary**

4       Permanent injunctions are available under both the Copyright Act and the Lanham Act.

5   *See* 17 U.S.C. § 502(a); 15 U.S.C. §§ 1116(a) and 1125(c)(1).  Courts apply a four-factor test in

6   determining whether to grant an injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

7   391 (2006); *Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1158 (C.D. Cal. 2015),

8   *aff'd*, 703 F. App'x 476 (9th Cir. 2017).  Specifically, courts examine whether (1) the plaintiff

9   has suffered irreparable injury; (2) there is an adequate remedy at law; (3) a remedy in equity is

10  warranted, considering the balance of hardships between the plaintiff and the defendant; and

11  (4) it is in the public's interest to issue the injunction.  *Id.*  Each factor weighs in favor of an

12  injunction.

13      Where a defendant is found to have violated the Lanham Act, a "plaintiff seeking any

14  such injunction shall be entitled to a rebuttable presumption of irreparable harm."  15 U.S.C.

15  § 1116.  Moreover, Defendants' distribution of the Cheat Software has caused Bungie irreparable

16  harm for which there is no adequate remedy at law to its game community and player base. *See*

17  Ex. 6 (Guris Expert Report) ¶¶ 121, 124-126. As Mr. Guris explains, "[t]he presence of cheaters

18  within this environment damages Bungie, poisons the well for players and content creators, and

19  creates an unsustainable and unsafe environment for legitimate players." *Id.* ¶ 16; *see also id.*

20  ¶ 20 ("The continuing presence of cheaters in the game environment discourages communication

21  between players and game developers, disincentivizes digital content creators from featuring the

22  game, and drives legitimate current and prospective players away from the game entirely[.]").

23      The third and fourth factors likewise support granting a permanent injunction.  Regarding

24  the balance of hardships, "an injunction will merely assure [Defendants'] compliance with the

25

26      ---
        [11] Bungie is also entitled to recover its attorneys' fees and costs as the prevailing party on May's DMCA
        counterclaim (17 U.S.C. § 1203(b)(5)).

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 24
(No. 2:21-cv-811-TSZ)
161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Lanham Act and other laws governing trademark infringement and unfair competition."

2    *Sennheiser v. Eichler*, No. CV 12-10809, 2013 WL 3811775, at *11 (C.D. Cal. July 19, 2013);

3    *see also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986) ("[i]f

4    the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it

5    gives [the plaintiff] substantial protection of its trademark").  Moreover, Defendants assert they

6    have sold AimJunkies.com and no longer distribute the Cheat Software; thus, an injunction does

7    not cause them any prejudice.  However, the threat of Defendants continuing to sell the Cheat

8    Software—or to develop a new cheat for *Destiny 2*—remains highly likely without an injunction.

9    May continues to develop cheats for Phoenix Digital, and Phoenix Digital continues to handle at

10   least the financials for the AimJunkies website.  Ex. 31 (May 2023 Dep. Tr.) at 9:15-18; Ex. 27

11   (Phoenix Digital 2023 Dep. Tr.) at 109:12-24.

12         Finally, the public interest is served by upholding the rights provided under the Copyright

13   and Lanham Acts.  *Sennheiser*, 2013 WL 3811775, at *11; *Buy More, Inc.*, 136 F. Supp. 3d at

14   1159.

15   **F.    May's CFAA Claims Fail**

16         May alleges three CFAA claims under 18 U.S.C. §§ 1030(a)(4), 1030(a)(2)(C) and

17   1030(a)(5)(C). Each should be dismissed.

18         **1.    All CFAA Claims Fail Because May Consented to Bungie's Limited Access**

19         Under each of May's CFAA theories, he must prove (among other elements) that Bungie

20   either "accesse[d] a protected computer without authorization," or "exceed[ed] authorized

21   access."  18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C).  Because May authorized

22   Bungie to access his computer and view or obtain certain information, his CFAA claims fail.  *See*

23   *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-4109, 2022 WL 16637988, at

24   *6 (N.D. Cal. Nov. 2, 2022) (granting motion to dismiss CFAA claim where counterclaimant

25   authorized defendant to access software via contract); *Sartori v. Schrodt*, 424 F. Supp. 3d 1121,

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 25
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    1127 n.7 (N.D. Fla. 2019) (granting summary judgment on CFAA claim for defendant where

2    defendant repeatedly accessed plaintiff's email account with plaintiff's knowledge).

3      Here, the undisputed material facts demonstrate that May expressly authorized Bungie's

4    access to his computer when he accepted Bungie's Privacy Policy.  *See* Ex. 31 (May 2023 Dep.

5    Tr.) at 172:6-22; Dkt. No. 72-2.  Under the Privacy Policy, Bungie is authorized to collect device

6    data necessary to prevent fraudulent or malicious activity, including files open and information

7    about processes operating on a user's device while using *Destiny 2*.  Dkt. No. 72-2.  May alleges

8    that Bungie accessed only the files listed in the documents attached to his amended

9    counterclaims.  Ex. 31 (May 2023 Dep. Tr.) at 15:16-20, 17:7-24, 161:18-21; Ex. 32; Kaiser

10   Decl., Ex. 1.  But Bungie detected these files only because May opened them while running

11   *Destiny 2*, and while he was reverse engineering *Destiny 2*.  Ex. 31 (May 2023 Dep. Tr.) at

12   150:20-151:5.  Bungie collected precisely what the Privacy Policy disclosed: information about

13   May's device and his use of Bungie's services to detect fraudulent and infringing conduct.

14     May's conduct reinforces his consent.  To avoid getting banned from *Destiny 2* while

15   using his reverse engineering tools, May changed the names of the files he was using **because he**

16   **knew Destiny 2 could read them**.  Ex. 31 (May 2023 Dep. Tr.) at 151:23-152:10.  Indeed, May

17   admits that for at least one of his files, he "might have just renamed the actual file for *Destiny 2*"

18   because "some anti-cheats check for the name of the executable that's running."  *Id.* at 57:20-

19   58:13.  May consented to *Destiny 2*'s alleged accessing of his files, and so summary judgment

20   should be granted.

21     **2.**  **All CFAA Claims Fail for Lack of Loss**

22     The Court should also grant Bungie summary judgment on May's CFAA counterclaims

23   because it is undisputed that May has not suffered $5,000 in loss.  May must prove that Bungie's

24   alleged access resulted in "loss . . . during any 1-year period . . . aggregating at least $5,000 in

25   value."  18 U.S.C. §§ 1030(g), 1030(c)(4)(A)(i)(I).  "Loss" means "any reasonable cost to any

26   victim, including the cost of responding to an offense, conducting a damage assessment, and

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 26
(No. 2:21-cv-811-TSZ)
161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). May posits only two categories of "loss": (1) his 40 hours spent reviewing and cleaning his files that he alleges Bungie accessed, valued at $75/hour based on a self-conducted, undocumented survey of unknown, unverified participants, and (2) his cost to purchase new computers and drives. Ex. 33; Ex. 31 (May 2023 Dep. Tr.) at 70:9-12.

Neither constitutes "loss." First, May's cost to purchase equipment is not "loss" because his old computer was not harmed or detrimentally affected by Bungie's alleged access. *See* 18 U.S.C. § 1030(e)(11) ("loss" includes costs for "restoring . . . system . . . to its condition prior to the offense" and those "incurred because of interruption of service"). May alleges that only files on his external hard drive were accessed by Bungie, yet May purchased an **entirely new computer setup**—including a new processor, video card, RAM, m.2 drive, SSD, motherboard, three new monitors, a new keyboard, a new mouse, and a new power supply—which he now claims as loss. Ex. 31 (May 2023 Dep. Tr.) at 93:1-11, 108:14-109:7. But none of these components were damaged or corrupted by Bungie's alleged access. *See, e.g., id.* at 120:24-121:1 ("Q. Was there any damage to the motherboard as a result of Bungie's alleged access? A. No."); *see also id.* at 110:13-20, 111:18-112:3, 113:12-114:4, 116:16-24, 120:3-8, 120:18-121:9, 121:21-24, 122:7-17, 123:19-124:5, 124:10-21. None of these supposed "replacement costs" were caused by Bungie. *See Doyle v. Taylor*, No. CV-09-158, 2010 WL 2163521, at *3 (E.D. Wash. May 24, 2010) (granting defendant's motion for summary judgment on CFAA claim where "there [was] no basis in the record to find that the thumb drive was impaired or that Plaintiff will incur any costs associated with restoring any such impairment").

May claims to have purchased entirely new equipment because he thought Bungie learned his hardware's ID. Ex. 31 (May 2023 Dep. Tr.) at 126:6-16, 171:17-172:1. But, as May acknowledges, he consented to Bungie's collection of his hardware identifiers when he agreed to Bungie's Privacy Policy. *Id.* at 172:6-173:23 ("Q. Right. And so you knew that Bungie

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

attributed a particular device to you, right? A. Yes."); Dkt. No. 72-2 at 4.  May cannot claim that data he consented to Bungie collecting constituted a "loss" to support his CFAA claims.  *See* 18 U.S.C. § 1030(e)(11).

Second, May's self-serving, self-conducted survey to determine the value of his time should be disregarded as improper opinion testimony.  *See* Fed. Rs. Evid. 701, 702.  May calculated the value of his time spent at $75/hour based on his own telephonic "survey" of seven or eight unidentified computer technicians and consultants in the Dayton, Ohio area.  Ex. 31 (May 2023 Dep. Tr.) at 72:25-74:12.  May did not do any research on these companies, including whether his surveyed "businesses" even provided computer services.  *Id.* at 75:1-76:19.  May is also unqualified, both to provide opinion testimony based on a survey and to compare himself to any business that provides professional computer services.  *Id.* at 72:5-20 (May did the survey alone, had never conducted a survey before, had no education, training, certifications, or expertise in surveys), 77:8-18 and 78:18-79:9 (May never worked as computer consultant or technician, never been paid to provide those services, and does not have any training).  His testimony regarding this invented rate should be excluded.

Finally, May's claim that he spent 40 hours reviewing and cleaning his files is dubious at best and lacks any evidentiary support.  *Id.* at 87:4-16.  At least one other court has dismissed CFAA claims based on similar evidence of "loss," and the Court should do so here too.  *See Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 642, 651-52 (E.D. Va. 2010) (granting CFAA defendant summary judgment where plaintiff's allegations of loss that she spent 50 hours investigating and responding to CFAA violations were baseless because "she did not record or document that time in any way" and was "unable to describe the specific tasks accomplished during those 50 hours" other than vague categorizations).

## G.   May's DMCA Claim Fails

Under the DMCA, May must prove that (1) he employs technological measures that effectively control access, (2) to May's works that are protected by copyright, and that

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    (3) Bungie circumvented those technological measures.  17 U.S.C. § 1201(a)(1)(A).  There is no

2    genuine dispute of material fact that May's DMCA claim fails the second and third elements.

3        **1.      May Does Not Own Copyrighted Works**

4            First, May does not own any works that are protected by copyright.  "To the extent the

5    [plaintiff's software] is not a 'work protected under [the copyright statute,]' . . . the DMCA

6    necessarily would not protect it."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387

7    F.3d 522, 550 (6th Cir. 2004) (second alteration in original).  May identifies four copyrighted

8    works   as   protected   by   technological   measures:   blah64.exe,   reclass.net.exe   (a/k/a

9    renamedreclass.exe), reclasskernel.sys, and reclasskernel64.pdb.[12]  Ex. 31 (May 2023 Dep Tr.) at

10   23:15-23, 34:19-25, 40:17-41:5, 47:15-22.  May has not registered these works.

11           "In the DMCA context, where a party has not registered its work, the absence of

12   registration 'makes it difficult for [a counterclaimant] to succeed on [his] DMCA claim, which is

13   dependent on proof of a valid copyright.'"  *Point 4 Data Corp. v. Tri-State Surgical Supply &*

14   *Equip., Ltd.*, No. 11-CV-726, 2013 WL 4409434, at *17 (E.D.N.Y. Aug. 2, 2013) (quoting *Jagex*

15   *Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 237 (D. Mass. 2010)).  In *Point 4 Data Corp.*,

16   "because plaintiffs [did] not have a registered copyright in the [software allegedly accessed by

17   the defendant], the Court [needed to] examine whether plaintiffs [had] adduced sufficient

18   evidence to establish a genuine issue of fact with respect to the copyrightability of their

19   [s]oftware."  *Id.*  This is because "not every element [of computer software], whether literal or

20   nonliteral, is automatically entitled to protection," but is instead subject to at least three doctrines

21   that "define (and limit) the scope of copyright protection," namely, "the exclusion of functional

22   elements, the merger doctrine[,] and *the scenes a faire* doctrine*.*"  *Id*. at *18 (internal footnotes

23   omitted).  "Thus, for computer software to merit copyright protection, **it is not enough for the**

---

24           [12] May does not claim to own copyrights in cheatengine-86_64.exe, nor does he claim to own copyrights in

25   the randomly-named .sys files identified by hash value 6E73A01E5DFC8D8DEA4D8A99E9273A04 in his
     amended counterclaims. Ex. 31 (May 2023 Dep. Tr.) at 28:12-16, 45:6-10. Curiously, May pleads in his amended

26   counterclaims that he owns copyrights in the randomly-named .sys files, but apparently that was a "misstatement."
     *Id.* at 45:11-46:9; *see* Dkt. No. 72 (Am. Countercls.) ¶ 19.

1    **party claiming protection to show that it independently created a certain number of lines of**

2    **code**.   On the contrary, the Court must undertake a highly complex analysis that typically

3    requires expert evidence*.   Id.* (emphasis added).   Thus, that court granted the defendant's

4    motion for summary judgment because "the evidence remaining in the record [was] not

5    sufficient to create an issue of fact with respect to the copyrightability of the [s]oftware [at

6    issue]."   *Id.* at *20.

7    This case is highly similar to *Point 4 Data*.   May claims to own copyrights in four files,

8    relying exclusively on the fact that he created the files.   Ex. 31 (May 2023 Dep. Tr.) at 23:15-23,

9    34:19-25, 40:17-41:5, 47:15-22.   May's claim is unsupported by any other evidence.   He has no

10   copyright registrations; he offers no expert opinions on the issue; and he has failed to

11   demonstrate whether any portion(s) of his code overcome the functionality, merger, and/or

12   *scenes a faire* doctrines.   May has failed to evidence ownership of any works protected by

13   copyright, and Bungie's motion for summary judgment should be granted.

14        **2.    Bungie Did Not Circumvent Technological Measures**

15   Bungie's motion for summary judgment should also be granted because it is undisputed

16   that Bungie did not "circumvent" any of May's technological measures.   "'[C]ircumvent a

17   technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or

18   otherwise avoid, bypass, remove, deactivate, or impair a technological measure, without the

19   authority of the copyright owner."   17 U.S.C. § 1201(a)(3)(A).   As relevant here, May claims to

20   employ two types of technological measures: two firewalls (one associated with his router, one

21   on his computer) and two layers of passwords (one to log onto his machine, another that protects

22   his work files).   Ex. 31 (May 2023 Dep. Tr.) at 127:10-16, 128:4-7, 129:1-3, 138:5-20, 139:6-17.

23   And May asserts two circumvention "theories": (1) that Bungie allegedly misled May regarding

24   what information Bungie would collect from him, thus bypassing May's technological measures,

25   and (2) that Bungie "avoided" May's technological measures, although May cannot explain how

26   Bungie did so.   *Id.* at 144:22-145:15, 146:23-147:9; Dkt. No. 72 (Am. Countercls.) ¶ 56.

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 30
(No. 2:21-cv-811-TSZ)

161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

May's first theory fails for two reasons. As a threshold matter, "misleading" is not circumvention under the DMCA: "using deception to gain access to copyrighted material is not the type of 'circumvention' that Congress intended to combat in passing the DMCA." *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012) (denying plaintiff leave to file second amended complaint with DMCA claim in which plaintiff alleged defendant obtained access to decrypted signals through "fraud and deceit"); *see, e.g.*, *Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. C 15-2288, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (granting motion to dismiss DMCA claim where only alleged act of circumvention was unauthorized distribution of otherwise genuine software license keys); *TLS Grp., S.A. v. NuCloud Glob., Inc.*, No. 15-CV-00533, 2016 WL 1562910, at *9 (D. Utah Apr. 18, 2016). Thus, Bungie's alleged "deceit and subterfuge," is not actionable. And in any event, there was no misrepresentation about the information Bungie collected from May. *See supra* Section III.F.1.

May's second theory—the unexplained "avoiding" of his technological measures—fails by his own admissions. May downloaded Bungie's *Destiny 2* video game onto his computer. Ex. 31 (May 2023 Dep. Tr.) at 141:7-9. When he did so, May granted *Destiny 2* permissions sufficient to access his computer through both of his firewalls, including "private access" through his Windows Firewall, which permitted *Destiny* 2 to access any program that connected to the *Destiny 2* game process. *Id.* at 132:15-21, 134:7-21. When May granted *Destiny 2* this access, he knew that it "can access anything they want to [on May's computer] while it's running." *Id.* at 135:2-136:1. Thus, because May gave Bungie permission, it never had to circumvent any of May's firewalls. Bungie similarly never avoided May's passwords. May downloaded *Destiny 2* onto his computer, and so Bungie could not have "avoided" May's Windows login password. *Id.* at 141:7-9. As to his password-protected work files, May had already entered passwords and opened them while *Destiny 2* was running, so again Bungie did

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  not avoid those passwords.  *Id.* at 147:22-148:4, 150:20-151:5.  Bungie did not circumvent

2  May's technological protection measures, and Bungie's motion should be granted.

3  **H.      Phoenix Digital's Breach of Contract Claim Fails**

4      Phoenix Digital's counterclaim for breach of its Terms of Service fails for four reasons.

5      **1.      AimJunkies.com's Terms of Service Are Void as Illegal and Against Public
               Policy**

6

7      Under Washington law, a contract that is illegal or against public policy is void and

8  unenforceable.  *Bankston v. Pierce County*, 301 P.3d 495, 498 (Wash. Ct. App. 2013); *LK*

9  *Operating, LLC v. Collection Grp., LLC*, 331 P.3d 1147, 1163 (Wash. 2014).  Whether a contract

10  is void as illegal or against public policy can be determined as a matter of law.  *Bankston*, 301

11  P.3d at 499.  A contract is illegal where, for example, the formation of the contract violated a

12  statute.  *Id.* at 498.  A contract's terms are void for violating public policy when the interest in

13  their enforcement is clearly outweighed by a public policy against their enforcement.  *LK*

14  *Operating*, 331 P.3d at 1163.

15      The AimJunkies.com Terms of Service are void because they are both illegal and against

16  public policy.  The Terms of Service apply to the software sold on the AimJunkies.com website,

17  including the Cheat Software and the loader.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 18:20-

18  19:3, 19:9-22.  The Cheat Software and loader have been found to violate the DMCA.  *See* Final

19  Award at 13-16.  And as demonstrated above, the Cheat Software infringes Bungie's copyrights.

20  *Supra* Section III.B-C.  The Terms of Service, the subject of which is the license and distribution

21  of the Cheat Software and loader, are therefore void as illegal.

22      The Terms of Service are also void for violating public policy because, if enforced as

23  Phoenix Digital suggests, they would effectively prevent Bungie from investigating Defendants'

24  circumvention software and intellectual property infringement.   Under Phoenix Digital's

25  interpretation, merely **purchasing and using** the Cheat Software is a breach.  Ex. 27 (Phoenix

26  Digital 2023 Dep. Tr.) at 45:4-15 ("Q: And they [Bungie] breached it by using the software? A:

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Yes.").  To enforce the Terms of Service as Phoenix Digital urges would mean that Bungie—

2    whose technological measures were defeated by software that Phoenix Digital illegally trafficked

3    in—could not even operate the Cheat Software to determine what it does to Bungie's own

4    copyrighted works.  Phoenix Digital's interest in enforcement of this provision is clear: to

5    prevent copyright owners from investigating whether their rights are being infringed.  The public

6    interest in the protection of intellectual property rights clearly outweighs Phoenix Digital's

7    interest in hiding its illegal activity, and the Terms of Service are void against public policy.

8              **2.      Bungie Did Not Accept the Terms of Service**

9              To form a contract, "parties must objectively manifest their mutual assent" to the terms of

10   the contract.  *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004).

11   Although Phoenix Digital alleges that Bungie accepted the Terms of Service in January 2020

12   when Bungie purchased the Cheat Software, Phoenix Digital has no evidence that Bungie

13   accepted them.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 43:6-21.

14             Phoenix Digital does not keep any records of who accepts the Terms of Service, nor does

15   it have any record of Bungie ever accepting the Terms of Service.  *Id.* at 40:20-41:18, 42:24-

16   43:5.  Defendants could not agree on where the Terms of Service were posted on

17   AimJunkies.com, let alone who (if anyone) was required to accept them.  *See id.* at 25:16-24

18   (Terms posted on website and click through on purchase), 40:16-19 (users that create an account

19   on AimJunkies.com without purchasing do not have to accept Terms); Ex. 19 (Conway 2023

20   Dep. Tr.) at 18:12-20 (all registered members of AimJunkies.com required to agree to Terms);

21   Ex. 31 (May 2023 Dep. Tr.) at 156:10-16, 157:5-9 (Terms posted on forums, but May never

22   required to accept them).  Phoenix Digital's primary evidence that Bungie accepted the Terms of

23   Service is its testimony that they were on the website in January 2020 and it was apparently

24   impossible to purchase cheat software without accepting them.  Ex. 27 (Phoenix Digital 2023

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Dep. Tr.) at 39:23-40:11, 97:12-98:21.[13]   But to survive summary judgment, Phoenix Digital

2   must "point to . . . evidence corroborating [its] self-serving declaration that the alleged

3   agreement existed, or indicating any circumstances under which it came into being."   *Cent.*

4   *Flyway Air, Inc. v. Grey Ghosts Int'l, LLC*, No. 20-cv-05506, 2022 WL 4534402, at *7 (W.D.

5   Wash. Sept. 28, 2022) (granting summary judgment for defendants on plaintiff's breach of

6   contract claim where no reasonable juror could conclude that the parties entered into an

7   agreement).   Phoenix Digital cannot meet even this modest burden.   Summary judgment should

8   be entered in Bungie's favor on Phoenix Digital's breach of contract claim.

9       **3.    Bungie Did Not Breach the Terms of Service**

10      Bungie also did not breach the AimJunkies.com Terms of Service.   Phoenix Digital

11  alleges that Bungie breached each part of the following term:

12      You shall not modify, hack, decompile, disassemble, reverse engineer, derive
        source code, or create derivative works of our software, in part or in whole.   You
13      shall not transmit our software or display the software's object code on any
        computer screen or to make any hard copy memory dumps of the software's
14      object code.

15  Dkt. No. 72-5 (AimJunkies.com Terms of Service) at 4; Ex. 27 (Phoenix Digital 2023 Dep. Tr.)

16  at 51:5-17.   Phoenix Digital further claims that Bungie breached a provision that prohibits

17  "distribut[ing] . . . [or] . . . display[ing] . . . any part of our software except as expressly

18  authorized herein."   Dkt. No. 72-5 at 4; Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 48:8-25.

19  Phoenix Digital also alleges that Bungie "displayed," "hacked," and "created a derivative work"

20  of the Cheat Software by "opening up" the Cheat Software.   Ex. 27 (Phoenix Digital 2023 Dep.

21  Tr.) at 48:17-20, 53:6-15, 63:3-13.   Beyond simply repeating the terms of the Terms of Service,

22  however, Phoenix Digital could not articulate any way in which Bungie breached these terms

23  and so instead claimed that by merely using the Cheat Software, Bungie had committed **every**

24  _____
        [13] Although Defendants purportedly sold AimJunkies.com and claim to have lost access to the website and
25  associated data in May 2022, Phoenix Digital produced a copy of the 2019 version of the Terms of Service on
    August 5, 2022.  Ex. 34.  It alleges this version was in place in January 2020, but was unable to explain when that
26  document was collected, who collected it, where it was collected from, or why they did not have any versions of the
    document from any other year.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 30:15-17, 31:18-32:4.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    action prohibited by the Terms of Service. *See id.* at 50:12-51:17. These generic, unsupported

2    allegations are insufficient to survive summary judgment. *Lawrence v. Star Prot. Agency LLC*,

3    No. 21-cv-00299, 2023 WL 2372914, at *4 (W.D. Wash. Mar. 6, 2023) (holding that "the

4    nonmoving party must come forward with specific facts showing that there is a genuine issue for

5    trial" and "conclusory, non-specific allegations" are insufficient to survive summary judgment)

6    (internal quotation marks and citation omitted).

7        Moreover, it is undisputed that Bungie would not have been able to reverse engineer or

8    similarly analyze the Cheat Software. Kaiser Decl. ¶ 28; Ex. 10 (Schaefer 2022 Dep. Tr.) at

9    101:25-102:10, 104:21-105:2 (█████████████████████████████████████████

10   █████████████████████). Bungie thus could not have "modif[ied], hack[ed],

11   decompile[d], disassemble[d], reverse engineer[ed], derive[d] source code, or create[d]

12   derivative works" of the Cheat Software. *See* Kaiser Decl. ¶ 28.

13       **4.    Phoenix Digital Does Not Claim Cognizable Damages**

14       Finally, Phoenix Digital's breach of contract claim fails because it has not suffered

15   damage. The **entirety** of Phoenix Digital's alleged damages result from supposedly "inaccurate

16   and factually baseless claims" in the public filing and discussion of this case; specifically, that

17   the lawsuit diminished the value of the AimJunkies.com website and caused Phoenix Digital to

18   incur legal fees. Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 82:16-21; Ex. 35.

19       As an initial matter, there can be no damage from Bungie's allegedly "inaccurate and

20   factually baseless claims" because Judge Cox already held that Bungie's claims were **true**. *See*

21   *generally* Final Award. That alone is sufficient reason to dismiss Phoenix Digital's claim.

22       Additionally, no reasonable juror could find that Bungie's alleged breaches (*i.e.*, using

23   the Cheat Software) were the cause or proximate cause of any of Phoenix Digital's alleged

24   damage. Phoenix Digital does not allege, nor could it, that Bungie's **use** of the Cheat Software

25   damaged Phoenix Digital; it claims that Bungie's filing of its complaint was the cause of

26   damage. Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 82:16-21; Ex. 35. There is simply no causal

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 35
(No. 2:21-cv-811-TSZ)
161952707

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    connection between the alleged breach and the alleged damages, and Phoenix Digital's claims

2    must be dismissed.  *See Lockhart v. Greive*, 834 P.2d 64, 67 (Wash. Ct. App. 1992) (affirming

3    summary judgment for defendants on breach of contract claim where there was no basis for

4    holding plaintiff's harm was proximately caused by defendants' conduct); *Rhodes v. City of*

5    *Federal Way*, No. C09-265, 2010 WL 1005868, at *5 (W.D. Wash. Mar. 16, 2010) (same).

6         Setting aside these threshold issues, Washington's long-recognized litigation privilege

7    immunizes Bungie from any liability in connection with statements made during the course of

8    litigation.  Witnesses, parties, and their attorneys are immune from suit for actions taken during

9    the course of litigation, provided those actions were performed in the course of the judicial

10   proceeding and were pertinent to the relief sought.  *McNeal v. Allen*, 621 P.2d 1285, 1286

11   (Wash. 1980); *Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*, 776 P.2d 666, 670 (Wash. 1989)

12   (applying litigation privilege to expert witnesses); *see also Jeckle v. Crotty*, 85 P.3d 931, 938

13   (Wash. Ct. App. 2004); *Lahrichi v. Curran*, No. 65144-7-I, 2011 WL 5222806, at *4 (Wash. Ct.

14   App. Oct. 31, 2011) (dismissing breach of contract on litigation privilege grounds).  The

15   "litigation privilege can also preclude liability arising from out-of-court conduct related to a

16   lawsuit," including statements on a party's website that "refer to the allegations [the party] made

17   in its various complaints and relate to [the party]'s efforts to combat fraud."  *3M Co. v. AIME*

18   *LLC*, No. C20-1096, 2021 WL 5824376, at *12 (W.D. Wash. Dec. 8, 2021).

19        All of Phoenix Digital's alleged damages—"negative press, loss of trust, market share,

20   loss of revenue, loss of site valuation" and legal fees[14]—are the result of the public filing and

21   public discussion of Bungie's lawsuit against Defendants.  Ex. 27 (Phoenix Digital 2023 Dep.

22   Tr.) at 82:12-21.  Even Phoenix Digital's claim that it was harmed by Bungie's out-of-court

23   statement that "it's good for business to go after cheat sites" is immunized because it concerns

---

[14] Phoenix Digital's legal fees are also not recoverable because, under Washington law, "a court has no power to award attorney fees as a cost of litigation in the absence of contract, statute, or recognized ground of equity providing for fee recovery." *Dayton v. Farmers Ins. Grp.*, 876 P.2d 896, 897-98 (Wash. 1994). AimJunkies.com's Terms of Service do not have a provision authorizing attorneys' fees, and no statute or ground of equity authorizes attorneys' fees for Phoenix Digital from its breach of contract claim.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the litigation and Bungie's effort to combat cheaters in *Destiny 2*, like Defendants.  *Id.* at 81:25-82:11.  Nor could a reasonable juror find this statement to have caused the harm Phoenix Digital alleges it suffered.  The **only** harms alleged by Phoenix Digital arose after Bungie's filing of its complaint against Defendants and from Bungie's litigation-related conduct.  Such conduct is immunized.

Even if the litigation privilege were not to apply, Phoenix Digital has not provided competent evidence that AimJunkies.com's market value diminished.  Phoenix Digital claims that the AimJunkies.com website was valued at $6,384,000 in 2019, then $1,920,000 in 2021 after the lawsuit was filed, and was ultimately sold for $7,000 in May 2022.  Ex. 35.  In support of this claim, Phoenix Digital offers improper opinion testimony from Schaefer, a self-admitted lay witness.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 85:18-86:11, 86:25-87:2 ("Q. Would you say you're an expert at providing valuations of companies? A. I wouldn't say I'm an expert.").  For non-expert witnesses, "testimony in the form of an opinion is limited to one that is . . . not based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid.] 702."  Fed. R. Evid. 701(c).  In determining AimJunkies.com's purported value, Schaefer claims to have applied a "times revenue method" that he learned from Investopedia.com.  Ex. 27 (Phoenix Digital 2023 Dep. Tr.) at 85:23-86:9.  This method, according to Schaefer, depends upon the application of a "multiplier which depends on industry and economic environment," i.e., scientific, technical, or other specialized knowledge  *Id.*  By Schaefer's own admission, however, he is unqualified to provide an opinion on the value of AimJunkies.com under the times revenue (or any other) method.  *Id.* at 86:25-87:2.  Identifying a laundry list of errors and faulty assumptions made by Schaefer, Bungie's qualified damages expert confirms that Schaefer is wholly unqualified to make such an assessment.  Ex. 36 (Supplemental Expert Report of Drew E. Voth) ¶ 7 ("Based on my analysis, Defendants' counterclaim damages calculation is not supported by the data provided in this case, was not prepared in accordance with accepted

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   valuation standards, and is counterfactual to Defendants' own financial data and other publicly

2   available data."); *see also id.* ¶¶ 12-26.

3          There is no basis for Phoenix Digital's alleged damages, nor are they connected in any

4   fashion to Bungie's alleged breaches. Phoenix Digital's counterclaim should be dismissed.

5                                   **IV.    CONCLUSION**

6          For the foregoing reason, Bungie respectfully requests that the Court grant its motion for

7   summary judgment and find all Defendants liable for copyright infringement and the Phoenix

8   Digital Defendants liable for trademark infringement, and to dismiss all counterclaims against

9   Bungie with prejudice.  Bungie further requests that the Court award $600,000 in statutory

10  damages, issue a permanent injunction against Defendants, and award Bungie its attorneys' fees

11  and costs.

12

13         I certify that this memorandum contains 12,300 words, in compliance with the Local

14  Civil Rules and this Court's May 4, 2023 Order.

15

16  Dated: July 20, 2023                   By: s/ *William C. Rava*

17                                          William C. Rava, Bar No. 29948
                                            Christian W. Marcelo, Bar No. 51193
                                            Jacob P. Dini, Bar No. 54115
18                                          **Perkins Coie LLP**
                                            1201 Third Avenue, Suite 4900
19                                          Seattle, Washington 98101-3099
                                            Telephone: +1.206.359.8000
20                                          Facsimile: +1.206.359.9000
                                            WRava@perkinscoie.com
21                                          CMarcelo@perkinscoie.com
                                            JDini@perkinscoie.com
22

23

24

25

26

BUNGIE'S MOT. FOR SUMMARY JUDGMENT
– 38
(No. 2:21-cv-811-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000