THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Note on Motion Calendar: August 11, 2023**<br><br>**Oral Argument Requested**<br><br>**(Redacted)** |

Defendants Phoenix Digital Group LLC ("Phoenix Digital"), Jeffrey Conway ("Mr. Conway") David Schaefer ("Mr. Schaefer"), Jordan Green ("Mr. Green") and James May ("Mr. May"), for the reasons stated herein, oppose Plaintiff Bungie, Inc.'s Motion for Summary Judgment (Dkt#160).

## I.    INTRODUCTION

Bungie loudly proclaims that "Defendants are cheaters," hoping that the court will ignore the actual issues presented with a veil of upset over video-game cheating.  But this isn't a case about whether anyone cheated in a video game. This is a trademark and copyright case, wherein Bungie alleges a single instance of trademark infringement in an advertisement and further alleges that its code was both "reverse engineered" and worked into an add-on "hack" or "cheat" to its video game.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Bungie's trademark claim fails because using a trademark to describe a product that adds onto or enhances Bungie's game is a nominative fair use, just as is claiming an aftermarket car part works on Ford or GM cars.  All instances of trademark infringement alleged by Bungie are simply legally permissible instances of "fair use," wherein Phoenix Digital truthfully and accurately informed the public that one of its "cheat" products worked with the "Destiny 2" game.

There is no evidence whatsoever that Phoenix Digital lied about the source of its products or suggested, falsely, that the "cheat" product it distributed originated with Bungie or was otherwise a Bungie product.  Indeed, common sense and experience dictate that anyone using a "banned" program to "cheat" in Destiny 2 is very unlikely to believe that the "cheat" program he is using in violation of Bungie's rules[1] was actually developed and sold by Bungie.

Similarly, Bungie's copyright claim fails because Bungie, *by its own admission,* never had or analyzed the source code or object code of the "cheat" software it says was copied from its source code.  Furthermore, in a transparent effort to avoid admitting it violated Phoenix Digital's own Terms of Service, which among other things proscribes decompiling or reverse engineering Phoenix Digital's products, Bungie attempts to walk an impossible tightrope of somehow claiming that, even though it never had and never analyzed the actual "cheat" software it claims is an infringing copy of its own source code, it nevertheless somehow magically "knows" its own code was copied.  Nonsense.

By its own admission, Bungie never actually had or analyzed the supposed "cheat" code at issue and cannot prove copying.  In fact, Bungie, both here and elsewhere, claims its copyrighted source code is "Highly Confidential" and cannot even be disclosed to Defendants under a protective order on pain of judicial sanctions.  Because Bungie, itself, declares its source code is not available to the public and insists that Defendants cannot even see it,

---

[1]    Bungie's rules do not have the force of law, and, much as Bungie would like to pretend otherwise, there are no federal or state laws against "cheating" in computer games.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Defendants *necessarily* could not, and did not have the necessary "access" needed to support a claim of copying under clearly established law.[2]

Apparently abandoning its claim that Defendants "copied" Bungie's source code, Bungie instead now waves its hands and makes vague claims about copying files, data structures and the like. Indeed, the apparent focus of Bungie's baseless allegations is now on a "loader" program that is mentioned *nowhere* in either of the two complaints Bungie filed in this action, and that Bungie seized upon in apparent recognition that it has no actual case against the "cheat software" it originally complained about but never actually examined.

Not only is Bungie *not* entitled to Summary Judgment on its copyright and trademark claims, if any thing, Summary judgment should be entered in favor of Defendants on these claims, or, in the alternative, the case should be set for trial.

## II        STATEMENT OF FACTS

While loudly proclaiming that Defendants are, "cheaters," the fact remains that Bungie makes money by enticing players to join a violent video game and then purchase products within the game.

Bungie is the purveyor of Destiny 2, one of a legion of purportedly "free to play" games that lure children and other video game players into a game that is offered free or at low-cost but then has in-game purchase options that make it ultimately expensive.[3] As Wired magazine aptly described it, Destiny 2 is "The-free-to-play-but-expensive-when-you-inevitably-get-addicted-to-it game."[4] In Destiny 2, players download a licensed copy of Bungie's code onto their own computers. That code then displays a virtual world where the player can create an avatar and move through an online world with other players, each of whom has his own copy of Bungie's code and views the virtual world through his own computer.

---

2   How could Defendants "copy" code they never had?

3   The business model used by drug pushers is not dissimilar.

4   https://www.wired.com/story/destiny-2-beginners-guide/

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

In the game, players earn virtual currency by participating in adventures in a post-apocalyptic world.  These adventures are almost invariably violent and players can virtually "kill" the avatars of other players.  In-game combat is made more effective by having superior weapons and abilities, which can be gathered in the game or, for some items, purchased from Bungie.  Bungie, of course, makes money on these purchases.

## A.    Defendants Briefly Sold A Destiny 2 "Cheat" Developed By A Third Party

Defendant Phoenix Digital, which is by now out-of-business as a result of this suit, operated a marketing platform that distributed third party software products in the gaming industry.  Such products are used by players of computer-based games to enhance their performance in a game.  Although such products may be used surreptitiously by highly competitive and dishonest players to advance more quickly in a game than otherwise, they are also and more widely used for entirely innocent and legitimate purposes, such as enabling an older, slower parent to compete effectively with a younger son or daughter, thereby increasing the enjoyment of the game for both and providing an incentive to keep playing each other. (See Schaefer Deposition, Mann Dec. Exhibit D.)

Bungie's characterization of Defendants and their products as "cheats" is disingenuous, ignores this legitimate function of the so-called "cheat" software, and ignores that there are, in fact, no laws actually prohibiting "cheating" in computer games.  It is for this reason that Bungie twists itself into pretzels, and is disingenuous with this Court, while trying to shoehorn Defendants' legitimate and lawful activities into claims of copyright infringement, trademark infringement and other forms of conduct actually proscribed by law.

As has been stated to this Court on numerous prior occasions, Defendant Phoenix Digital, for a period of about 14 months, once distributed a "cheat" software product to be used with Bungie's "Destiny 2" game.  This was only one of numerous other products distributed by Phoenix Digital for use with other games and the *only* Phoenix Digital product used with *any* Bungie game.  The product was distributed between November, 2019 and

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

January, 2021 (i.e., 14 months) and generated no more than $65,000 in gross overall sales.  At best, and estimating generously, Phoenix Digital had overall profits from these distributions of less than $10,000.  Phoenix Digital withdrew the Destiny 2 "cheat" immediately after receiving a cease and desist letter from Bungie in November, 2020, little more than one year after the product's introduction.

The Destiny 2 "cheat" at issue here was developed by a Ukraine-based developer, and it is undisputed that neither Bungie nor Defendants actually knows what is in the "cheat" or how it works.  Bungie's case is built on the factually and legally flawed theory that, in order to develop a "cheat," either Phoenix Digital or the overseas developer *must* have copied Bungie's copyrighted software.  There is no evidence to back this up other than the wild speculations of Bungie's principal witness, Dr. Edward Kaiser. (Kaise Deposition, Mann Dec. Exhibit A, pp. 76-77.)  Not only does Dr. Kaiser lack any basis to make such a bald claim, Defendants Jordan Green and James May, who, unlike Dr. Kaiser, actually have developed numerous "cheats" for games other than Destiny 2, testified that, not only is it *possible* to develop a cheat without copying anything, they have, in fact, each done it many times themselves.  (May and Green Depositions, Mann Dec. Exhibits E & F.)

**B.**     **Defendants' "Fair Use" Of The Destiny 2 Name And Logo To Fairly Describe Their "Cheat" And What It Does Is Not Actionable**

Bungie also complains of a single marketing image used by Defendant Phoenix Digital on its "AimJunkies" website.  That image, reproduced below, is a screen advertising the Destiny 2 "cheat" and allowing consumers to purchase it from AimJunkies:

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ
Page 5
Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900



Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 6

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Although Phoenix Digital does not deny making truthful and accurate references to the "Destiny 2" game in representing what the "cheat" product is, what it does and what game it works with, Phoenix Digital never used any Bungie name or trademark to falsely disguise the source of its products or to falsely suggest a connection with Bungie or otherwise suggest that products were distributed or otherwise endorsed by Bungie.  Phoenix Digital simply used the "Destiny 2" name to inform the public truthfully and accurately what its product is and what it does.

**D.     The Earlier Arbitration Involved *Different* Claims From Those Pending Here**

The procedural history of this case, which is is clearly reflected in the docket, is neither complex nor subject to serious dispute.

Bungie's original Complaint filed June 15, 2021 (Dkt#1), contained nine causes of action, the first three of which were for, Copyright Infringement (First Cause),  Trademark Infringement (Cause Two) and False Designation of Origin (Cause Three).  The remaining causes were for circumventing technological measures (Cause Four), trafficking in circumvention technology (Cause Five), breach of contract (Cause Six), tortious interference (Cause Seven), violation of the Washington Consumer Protection Act (Cause Eight) and unjust enrichment (Cause Nine).

Following this court's April 27, 2022 Order granting Defendants' motion to dismiss (Dkt#33), Bungie filed its Amended Complaint (Dkt#34) on May 19, 2022, wherein Bungie elected to pursue only its copyright, trademark and false designation of origins claims in this Court and pursue the remaining claims in arbitration.  The remaining six causes of action, which were *not* claims for copyright infringement, trademark infringement, or false designation of origin, were then brought in arbitration.  The arbitration, accordingly, did not and properly could not address the copyright and trademark claims that are before *this* court and are the subject of Bungie's motion for summary judgment.

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ                          Page 7

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

At arbitration, the Arbitrator expressly stated that the scope of his assignment and the scope of his decision extended *only* to the claims actually before him and not to Bungie's claims for copyright infringement, trademark infringement and false designation of origin.[5] The arbitration did not, and legally could not, address the different claims that are before this court, nor are any rulings on the arbitration claims and the facts necessary to resolve them relevant here.

## II        ARGUMENT

### A.        Legal Standard

Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2D 265 (1986).  The Court may grant summary judgment *sua sponte* to a nonmoving party, such as Defendants here, if, after drawing all inferences in favor of the moving party, there are no genuine issues of material fact, the moving party has been given reasonable notice that the sufficiency of his or her claim will be in issue, and the nonmoving party is entitled to summary judgment as a matter of law.  *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016).

### B.        This Case Concerns Only Bungie's Copyright and Trademark Claims – All Other Arguments Must Be Disregarded.

The vast majority of Bungie's arguments have nothing to do with the issues in this case.  Here Bungie claims that Defendants are cheaters who stole their way past protective devices in order to disrupt Bungie's game universe.   However, these claims have been arbitrated and are not before this Court.  To the extent Defendants are liable for these actions, that liability has been adjudicated elsewhere and cannot be bootstrapped into this separate and different lawsuit.

---

5   See Arbitration Final Award "Factual Findings," Paragraph 17.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

**C.      The Arbitrator's Findings On Separate Factual And Legal Issues Have No Bearing On This Dispute.**

Citing an unreported trial court decision, Bungie glibly proclaims that "The Ninth Circuit has recognized that arbitration decisions can have a *res judicata* or collateral estoppel effect" and then proceeds to rely on the arbitrator's findings for a significant part of its factual support.   But neither doctrine allows Bungie to dispense with evidence, and the arbitrator's ruling is only applicable to issues that were actually litigated and necessary to the arbitrator's decision.   *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845 (9th Cir.1979).   The claims and issues before this Court are not those before the arbitrator, and Bungie's blatant attempt to bypass and short-circuit the law and fact-finding duties of this Court and a jury, respectively, is impermissible here.

**D.      Bungie's Trademark Claim Fails Because Defendants' Use Of The Destiny 2 Mark In Advertising Their Product Is Nominative Fair Use**

Trademark law prevents the public from being deceived that a company sponsors or endorses an unaffiliated or competing product.   *New Kids on the Block v. News Am. Pub., Inc.,* 971 F.2d 302, 305 (9th Cir. 1992).   The doctrine of nominative fair use applies where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe its own product. *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1151 (9th Cir. 2002).   Nominative fair use does not implicate the source-identification function that is the purpose of trademark because it does not imply sponsorship or endorsement by the trademark holder, instead only describing the trademark holder's product. *New Kids,* 971 F.2d at 308.

For example, in *Volkswagenwerk Aktiengesellschaft v. Church,* 411 F.2d 350 (9th Cir.1969), the defendant placed a sign that said "modern Volkswagen Porsche repair service" on an auto shop unaffiliated with the trademark owner. The Ninth Circuit held the defendant was entitled to do so, as long as the public would not be deceived into believing the defendant was part of Volkswagen's network of authorized repair centers. *Id.*

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Whether the public is likely to be deceived is a finding of fact to be decided on a full record considering all the facts and circumstances. *Id.*  As one court recently noted, "in most cases, it is not appropriate to find summary judgment on a likelihood of confusion analysis." *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1098–99 (S.D. Cal. 2018).

In evaluating a claim of nominative fair use, the traditional *Sleekcraft* factors do not apply.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010).  Instead, courts generally consider three factors in determining if use of a mark is nominative fair use:

- The product or service in question must be one not readily identifiable without use of the trademark;

- Only so much of the mark or marks may be used as is reasonably necessary to identify the product or service;

- The user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids*, 971 F.2d at 308.

There is no likelihood of consumer confusion here and each factor is met.  Defendants' advertised their product—the Destiny 2 "cheat"—by displaying Bungie's logo to indicate simply that their product worked on Destiny 2.  There is no possible way to describe the product without doing so.  The product is, in fact, a "cheat" that works on—and only on—Bungie's "Destiny 2" video game.

The sole purpose of the second and third factors is to prevent consumer confusion as to origin, and it is permissible to use a logo as long as it is used in a manner that does not imply sponsorship or endorsement.  *Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1265 (D. Ariz. 2012), aff'd, 632 F. App'x 885 (9th Cir. 2015), *citing Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir.2010).  Bungie's logo is not modified to suggest

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

endorsement and the word "hack" is in a different font and completely separate from the logo. There is no statement of sponsorship.  The image was displayed on AimJunkies' website and is clearly labeled as such.  And, perhaps most significantly, the entire nature of a hack or "cheat" is that it *is* an after-market bonus not sponsored or supported by the game maker itself.  As Bungie goes to great lengths to explain, the *last* thing Bungie wants is what it terms "cheaters" on its platform, and it makes considerable efforts to identify and discourage them. No consumer would be deceived into thinking that Bungie somehow sponsored or endorsed the Phoenix Digital/AimJunkies product.

**E.     Bungie's Copyright Claims Fail Either As A Matter Of Law Or Because They Are Based On Speculation**

   **1.     Bungie has no credible evidence to "prove" the subject "cheat" infringes any copyright**

Importantly, neither Bungie nor any of the Defendants knows how the "cheat software" at issue here was created or how it operates.  Phoenix Digital freely admits, and Bungie has no evidence to the contrary, that the software was developed by a third-party, Ukraine-based author who is not an employee of or otherwise connected with Defendants and the source code of the "cheat" was never made available to them.

Bungie's expert, Dr. Kaiser, admits, as he must, that his only analysis of the subject "cheat software" consisted entirely of someone other than him using the software for a maximum of ten minutes on one single occasion.  Indeed, this use took place *before* Dr. Kaiser was actually part of a "team" assigned to combat "cheating," and everything he knows about the subject "cheat" was told to him by others and is not a matter of his own personal knowledge.  (Mann Dec. Exhibit A, p. 77, lines 1-12.)  Again, Bungie's entire copyright claim is based on guesswork as to how the subject "cheat software" might work.

Bungie's other expert, Mr. Steven Guris, in his expert report (Dkt# 160, pages 22-53 of 395, Mann Dec. Exhibit G), never even *claims* to have seen or used the subject "cheat" software.  Indeed, at paragraph 107 of his report, Mr. Guris freely admits that the only product

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

he actually inspected was a "loader" that he first obtained, "On September 15, 2022," more than 20 months *after* the subject "cheat" software had been withdrawn from the market, and four months *after* the "AimJunkies" website had been sold to an overseas purchaser.  In short, Mr. Guris never actually inspected or even used the subject "cheat" software, and the "loader" he supposedly inspected, besides never being mentioned in either of Bungie's Complaints, is *not* the same loader that was being used at the time when the subject "cheat" software was being distributed.  Mr. Guris, by his own admission, is not making an apples to apples comparison.

Mr. Guris is actually upfront about this by stating, at paragraph 94 of his report, that, "While I have examined other cheats for Destiny 2, *it does not at present appear to be possible to directly examine the specific Destiny 2 cheat produced and sold by AimJunkies,*" and that, "My understanding is that the Respondents in this arbitration *have not produced a copy of the cheat.*" (Emphasis supplied.)[6]  At paragraph 95 of his report, Mr. Guris also states, "However, I have conducted static and dynamic analysis of the *currently available* AimJunkies cheat loader."  At the time of his report served November 21, 2022,[7] the "AimJunkies" website had new owners, and the Destiny 2 "cheat" actually distributed by Phoenix Digital had been off the market for nearly two years.  Accordingly, it is absolutely unknown what this "currently available AimJunkies cheat loader" is or what possible relevance it can have to the "cheat" software, distributed only between November, 2019 and January, 2021, that is the actual subject of this litigation.  Mr. Guris' testimony is simply not relevant to the issues actually before this Court.

Bungie, through the likes of Mr. Guris and Dr. Kaiser, is using smoke and mirrors to cover up the fact that it actually has no idea what the subject "cheat" software is, what it contains or how it operates.  Dr. Kaiser admits he has no personal knowledge of the subject cheat software and is relying solely on what he heard from someone else who did no more

---

6   Nor could Defendants have produced such a copy, given they never had one.

7   Curiously, Mr. Guris' actual report is undated and nowhere reflects when he actually signed it.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

than use the "cheat" software for no more than ten minutes on a single occasion.  Mr. Guris admits he never even saw or used the "cheat" software and, instead, bases his opinions on a review of a different, "loader" program obtained two years *after* the relevant time period, from a source that isn't even owned or operated by the Defendants.  Not only is this insufficient to support an award of summary judgment in Bungie's favor, if anything it supports dismissing Bungie's copyright claim outright at this stage.

### 2.   It does not follow, legally or factually, that a "cheat" program *must* copy copyrighted material

The law is clear that, although some portions of software code can be protected as expression, code also contains ideas and performs functions that are not protectable. *Sony Computer Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000).  Accordingly, it is fair use to obtain a copy of software code for the purposes of investigating how it functions and copying the non-protectable aspects of it. For example, in *Sony*, the Ninth Circuit considered a claim that copying and using Sony's BIOS code for the purposes of creating a virtual game station that would enable Sony's games to be played on competing game systems infringed Sony's copyrights.  The *Sony* court held that because unprotected elements of the code "are frequently undiscoverable in the absence of investigation and translation" the process of copying and using the code was a fair use for the purpose of gaining access to the unprotected elements of Sony's software. *Id.*

Bungie's argument that whoever created the subject "cheat" must have infringed by "reverse engineering" it,[8] therefore fails.  Bungie's cited authority does not hold otherwise. Bungie relies only on *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1163 (C.D. Cal. 2018) in support of its flawed claim that copying the code for purposes of analysis is copyright infringement.   But *Ticketmaster* evaluated, on a motion to dismiss on the pleadings, only an argument that an entire website and its associated code was protectable.

---

8   And there is no evidence of record that anyone actually did.

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Assuming all facts present in the complaint to be true, the court held only that "the pages and code of its website and mobile app, contain protectable content." *Id.*

Although Bungie boldly claims that portions of its code were directly copied as part of the Destiny 2 "cheat," this is pure speculation.  As made clear by the Ninth Circuit, "Absent direct evidence of copying," which Bungie clearly lacks, "proof of infringement involves *fact-based showings* that the defendant had 'access' to the plaintiff's work *and* that the two works are 'substantially similar.'" *Loomis v. Cornish,* 836 F.3d 991, 995 (9th Cir. 2016) (emphasis added, citations omitted); see also *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, 1174 (9th Cir. 2003).  Despite Defendants' discovery requests, Bungie has never produced all the source code for "Destiny 2," and has only produced minor snippets of code that, in many cases, are apparently written by others, such as Microsoft.  And the limited code Bungie has produced has been designated "Highly Confidential," meaning Defendants themselves cannot see it.

Here, not only has Bungie failed to show that Defendants had the needed "access" to its copyrighted code, by designating such code "Highly Confidential" under the protective order in place here, Bungie confirms that Defendants *did not* have access to such code.  The law is clear that at the summary judgment stage, Bungie bears, "the burden of presenting *significant, affirmative and probative evidence* to support a claim of access." *Tisi v. Patrick,* 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000) (emphasis added). More than a "bare possibility" that the defendant had access to the work must be shown.  *Jason v. Fonda,* 698 F.2d 966, 967 (9th Cir. 1982).  Bungie does not, and cannot meet this burden.

Bungie also cannot prove substantial similarity because it does not have a copy of the "cheat" software code that is at issue here.  *Cabinetware Inc. v. Sullivan*, No. CIV. S. 90-313 LKK, 1991 WL 327959, at *4 (E.D. Cal. July 15, 1991). The only way to prove substantial similarity in the software context is to isolate protected elements of Bungie's code, bearing in mind that not all components of software code are protectable, and then compare those

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 14

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

elements to the allegedly infringing code.  *Nulinx Int'l, Inc. v. Servue Sols., Inc.*, No. CV 08-6076 CBM (RCX), 2009 WL 10673575, at *6 (C.D. Cal. Dec. 1, 2009).  In *Nulinx*, the court allowed a plaintiff to proceed past summary judgment based on screenshots of a program's function and expert testimony but held that the plaintiff needed to be prepared to present actual code at trial.  Given that the discovery cutoff is long past, Bungie cannot rely on new, never before produced code at this late date.

Defendants are unable to locate any reported decision wherein a plaintiff, such as Bungie here, prevailed, at summary judgment or otherwise, on a copyright infringement claim for source code without producing, much less evaluating and comparing it against, the allegedly infringing code itself.  Indeed, in *Cabinetware v. Sullivan*, *supra*, the court went so far as to enter default judgment against a party after finding that it willfully destroyed the source code, noting that doing so made proving infringement impossible.

Although Bungie boldly claims that portions of its code were directly copied as part of the Destiny 2 "cheat," this is pure speculation.  Neither Bungie nor Defendants have access to the actual "cheat" code.  No one involved in this case knows how it actually works.  For reasons known only to itself, Bungie has not named the hack developer as a defendant nor has Bungie obtained a copy of the "cheat" code from any third party that may have it.  Absent the actual code, Bungie cannot demonstrate that *any* of its code was copied.  And even if Bungie could demonstrate that some code was copied, it cannot prove that those portions were protectable under copyright.

In the absence of any evidence other than speculation showing infringement of protected material, it is Defendants and not Bungie who are entitled to summary judgment.  At best, Bungie's expert testimony that claims the "cheat" must necessarily have been based on copying Bungie's software directly contrasts with Defendants' testimony that it is quite possible to create a hack without doing so. This quintessential dispute of fact must be resolved in Defendants' favor at summary judgment.

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 15

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

### 3.    The addition of code to a licensed copy does not infringe copyright

It is long established that a consumer may copy and modify copyright-protected materials for home use, and that the manufacturer of a product for the purpose of personal consumption is not liable for neither direct nor derivative infringement when the consumer does so.  *Fox Broad. Co. Inc. v. Dish Network, L.C.C.,* 905 F. Supp. 2d 1088, 1099 (C.D. Cal. 2012), aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C.,* 723 F.3d 1067 (9th Cir. 2013), and aff'd sub nom. *Fox Broad. Co. v. Dish Network L.L.C.,* 747 F.3d 1060 (9th Cir. 2014), citing *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 418, 104 S. Ct. 774, 777, 78 L. Ed. 2d 574 (1984).

Bungie's claims that, by adding graphics (such as a red box) around avatars in the game, Defendants have created an infringing "derivative work" therefore fail.   It is indisputable that Bungie licenses game players to download and use a copy of Bungie's code to play the game.  Each user has his own licensed copy stored on his or her own personal computer.  Players who choose to use Defendants' "cheat" add its functionality in the form of the red box and other features that appear *only* on the user's *own* personal display of an image, *that by virtue of the user's license with Bungie,* the user is perfectly free to display and view without violating any "copyright" claimed by Bungie.   *(See, MDY Indus., LLC v. Blizzard Entm't, Inc.,*  629 F.3d 928 (9th Cir. 2010), holding that it is *not* copyright infringement when a  holder of a license to a copyrighted work breaches a contractual covenant, such as one purporting to ban "cheating" while playing a game.)

In Bungie's words, the "cheat" is "injected" into Bungie's code. (Motion at 16:13-17.) This is no more copyright infringement than recording a home copy of a televised movie for one's own use or buying a print of the Mona Lisa and adding a comic mustache to it for display in a private home.  Again, the graphics added by the subject "cheat" appear *only* on the user's individually displayed screen, which the user, who has agreed to Bungie's terms of service and, as a result, has the legal right not only to view and display, but to modify without thereby creating a "derivative work" or otherwise infringing any Bungie copyright.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Bungie's cited authority rests on different facts and is legally inapposite.  In *Micro Star v. Formgen Inc.,* 154 F.3d 1107, 1112 (9th Cir. 1998), the defendant used game code to create new levels of game play, the equivalent of creating unauthorized movie sequels. Bungie alleges not that new scenes have been created but that existing scenes can be played with tools that make play easier.  Likewise, in *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 208 (3d Cir. 2002), the defendant copied a program, modified it, and then sold it as its own.  *See also Take-Two Interactive Software, Inc. v. Zipperer,* No. 18 Civ. 2608, 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (Defendant "created and distributed computer programs which are alternative versions of GTAV [the Grand Theft Auto game] based on GTAV"); *Nexon Am., Inc. v. S.H.,* No. CV 10-9689 (JCx), 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (defendant created an alternate version of game with modifications and ran it on his own unauthorized server.)  In other words, in all these cases, a consumer could choose between buying the original product, or a copy of the product with additional features.   That is not the case here.

In order to use the subject "cheat," consumers first have to obtain Destiny 2 from Bungie, which brings with it a license to use Destiny 2 and view, display and modify the images in it.   The users then download additional third party code via AimJunkies, which is added to and provides additional features to Bungie's product. This is akin to providing the user with a marker pen that the user can then use to draw pictures on a screen that the user owns and that displays an image the user is legally free to display.  Because the user is licensed to display that image, it is not an act of copyright infringement for the user to modify, or even entirely dispose of that image.  See, 17 U.S. Code § 109.

Bungie has not lost any sales of Destiny 2 and Bungie's copyrights have not been infringed as a result of any add-on capability provide by Phoenix Digital.  Under the clear holding in *MDY Indus., LLC v. Blizzard Entm't,* this is simply not copyright infringement.

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ                                    Page 17

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

**F.      Defendants are not liable for contributory or vicarious infringement**

Bungie's contributory and vicarious liability claims are dependent on its theory that by downloading the hacks and installing them into Bungie's code on a licensed user's computer that user committed copyright infringement.  As described above, that is simply not the case.  The user may have violated Bungie's terms and conditions, but Bungie's copyrights were not violated by installing code into a licensed copy possessed by the licensed user.  In the absence of direct infringement, Defendants have neither contributed to infringement nor can they be vicariously liable for it.

**G.      Even if Bungie could prove copyright infringement, Bungie is not entitled to the "damages" and attorney's fees it seeks.**

Significantly, Bungie did not register the four copyrights that are at issue here until long after the supposed "infringement" commenced.  Indeed, Bungie did not even register its copyrights until after Phoenix Digital *ceased* distributing the "cheat software" at issue here.  These facts are not subject to debate.

The four copyright registrations Bungie seeks to enforce here are attached to its Amended Complaint (Dkt#34) as Exhibits 1, 2, 3, and 4 (Dkt#34-1, pp. 1-13).  The effective dates of these registrations appear on their face and are not subject to dispute.  The earliest "Effective Date of Registration" for *any* of these registrations is February 9, 2021. (Ex. 1, Reg. No. TX-8-933-665, and Ex. 3, Reg. No. TX-8-933-658.)  Another of these registrations has an effective date of registration of February 10, 2021 (Ex. 4, Reg. No. PA-2-280-030), while the last of these registrations (Ex. 2, Reg. No. PA-2-282-570) has an effective date of registration of March 23, 2021.

It is a matter of indisputable fact that the "cheat software" product Bungie complains about here was first distributed in November, 2019, more than one year before *any* of these effective dates of registration.  Indeed, the very "cease and desist" letter Bungie loudly touts as having imposed an obligation on Defendants to "preserve evidence" (see, Dkt#101) was itself sent on November 4, 2020, well in advance of these dates of registration.  On its face,

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

the cease-and-desist letter accuses a product that Phoenix Digital had been distributing for at least one year beforehand.  There is and can be no doubt that the alleged copyright infringement *began at least fourteen months before* the earliest effective date of registration of any of Bungie's copyright registrations.

The significance of these dates is that, in the Ninth Circuit as well as elsewhere, it is crystal clear law that statutory damages and attorneys' fees under 17 U.S.C. § 504 are *not* available where, as here, the alleged infringement began before the effective date of registration.  Indeed, Title 17 U.S.C. § 412(2) provides that "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration…"

Under the Ninth Circuit's clear holding in *Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696 (9th Cir. 2008), "in order to recover statutory damages, the copyrighted work *must have been registered prior to commencement of the infringement,* unless the registration is made within three months after first publication of the work." *Id.* at 699 (emphasis supplied).  Here there is no question that the subject "cheat software" was first distributed by Defendants in November 2019, well in advance of, and clearly more than three months before, the effective dates of *any* of the registrations.  Furthermore, the idea that individual distributions of an infringing work constitutes a new act of infringement has been soundly rejected by the courts.  "Every court to consider the issue has held that 'infringement commences' for the purposes of § 412 *when the first act in a series of acts constituting continuing infringement occurs" Id.* at 700-01 (emphasis supplied).

Under *Derek Andrew, Inc. v. Poof Apparel,* Bungie is not entitled to statutory damages or attorney's fees and is limited to whatever actual damages it can prove.[9]  Here, Defendants'

---

9    Title 17 U.S.C. § 504 (b) provides that, "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any *profits of the infringer that are attributable to the infringement…."*  (Emphasis supplied.)

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

"profits" of less than $10,000 cannot be seriously disputed[10], and Bungie has offered no evidence whatsoever as to any "actual" damages it claims to have suffered.  Bungie simply cannot prove the exorbitant damages it nonetheless demands.

Despite the indisputable dates and the clear holding in *Derek Andrew,* Bungie seeks an astounding $600,000 in statutory damages.  However, Bungie makes no attempt to justify the amount with regard to any of the factors set out in *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir.1984).  Defendants' profits were $10,000 at best, and likely far less. Indeed, Bungie's own damages expert opines that, "Defendants' sales revenues of alleged infringing Destiny 2 products total $43,210," an amount *less* than what Phoenix Digital admits to.  (See Dkt#  160, Page 114 of 395.)  Although Bungie claims Defendants spoliated evidence, that claim has been fully briefed and Defendants know their own business and testify that they sold a total of $65,000 worth of products.  At summary judgment, this Court must find that testimony true.

Furthermore, Bungie identifies zero lost profits. Although Bungie uses hyperbolic testimony about the harm the hacks caused, it cannot identify a single customer lost or a single dollar of lost revenue.  Likewise, while the public has a strong general interest in copyright laws, there is no exceptional public interest in safeguarding the profits of a violent video game purveyor, particularly one who, as here, brings ill-considered and un-investigated lawsuits to, in its words, "put cheaters and those who assist them on notice that Bungie does not and will not tolerate cheating in Destiny 2." (Dkt#1, ¶4.)  The courts are not Bungie's personal plaything, and Bungie must respect the law, including the law requiring it to do an adequate "pre filing investigation" before suing, as much as anyone else.

Although Bungie does its best to demonize Defendants, in truth Defendants (with the exception of James May) simply operated a marketing website that for a short time featured a

---

10    In this case, it is undisputed that Phoenix Digital received approximately $65,000 in gross revenues for its overall distribution of the accused "cheat software," and realized profits of well less than $10,000 on those distributions.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

software "cheat" that gave players of the Destiny 2 game a slight advantage against their competition.  Bungie's lack of perspective on the importance of its product is stunning; Bungie alleges that the "cheat" created an "unsustainable and unsafe environment for legitimate players." (Guris Report at ¶ 16.)  But, unless Bungie *agrees* with the often leveled criticism that violent computer games can lead to violence in real life, the fact is that Destiny 2 is a video game, played largely by children and teenagers from the safety of their homes and bedrooms.  Safety is simply not at issue.

Further, when Bungie sent Defendants a cease-and-desist letter, Defendants immediately and voluntarily stopped selling the subject product. Moreover, Bungie has already obtained an arbitration award for the "cheating" it complains about.[11]  The only issues here are the copyright and trademark infringement claims, and even if Bungie were to prevail, an award of attorney's fees and $600,000 in statutory damages not only far exceeds any actual harm, it violates the clear standard set by the Ninth Circuit in *Derek Andrew* as well.

### H.        Summary Judgment is warranted against Bungie, not Defendants,

Bungie has put its best foot forward.  It simply does not have evidence supporting its claims that Defendants committed trademark or copyright infringement.  Instead, Bungie has attempted to shoehorn its already-litigated claims into inapposite law. Not only has Bungie failed to show that this Court should take the extraordinary step of finding Defendants liable for trademark and copyright infringement without even letting them face a jury and have their day in court, the "facts" as argued by Bungie, coupled with their admitted failure even to obtain and analyze the very product they accuse of infringement, suggest that, if anything, summary judgment should be granted in favor of *Defendants* on these dubious claims, built on nothing more than hand-waving, speculation and guesswork.

---

11    That award, and particularly this Court's confirmation of that award are presently on appeal and not yet decided.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

**I.      More Than Sufficient Evidence Exists To Support And Create Genuine Issues Of Material Fact As To Mr. May's Counterclaims**

Bungie makes the broad, sweeping and false claims that there is no evidence to support Mr. May's counterclaims.  Bungie's false claims in this regard are an insult to this Court's intelligence.

**1.      Bungie Not Only Tacitly Admits It Improperly Stole Copyrighted Files From Mr. May's Computer, Bungie Asserts And Relies On That Ill-Gotten Material To Support Its Case Against Mr. May**

The following arguments are supported, in part, by the accompanying Declaration of James May.

Bungie's own admissions, whether direct or tacit, demonstrate that Bungie accessed Mr. May's personal computer without his authorization.  The evidence of this includes, in part, a document, *created by Bungie itself,* (DKT#72-3) which lists in detail over one-hundred instances in which Bungie accessed and downloaded private files created by Mr. May and stored on Mr. May's personal computer.

At his October 4, 2022 deposition, Bungie's expert, Dr. Edward Kaiser, pretended not to recognize what these files were and even feigned ignorance as to what a "sys" file is.  (See, Mann Dec. Exhibit A, p. 116, line 16 – p. 120, line 19 & p.163, lines 15-16.)   Unlike Dr. Kaiser, Mr. May knows exactly what these files are and, at trial, will testify as to them.

By failing even to admit what the information on Bungie's own internally generated document is, Bungie *itself* creates a genuine issue of material fact as to what these files even are.  Mr. May says, "these are my own personal files."  Bungie not only says "they are not," but pretends not to know even what is on the very document it, itself, created.   Who is correct?

Mr. May has also repeatedly, consistently and truthfully testified (1) that he is not an officer, director, owner, principal, shareholder, employee or otherwise a part of Phoenix Digital, (2) that he has never been a part of Phoenix Digital, (3) that his only connection to Phoenix Digital is that he has, from time to time, distributed certain "cheat" programs

through Phoenix Digital as an independent author, for games other than Bungie games, and (4) that *he is not the creator of the cheat software at issue in this case and had nothing to do with the creation or distribution of the cheat software at issue in this case.*   In its various attempts to show otherwise, Bungie has repeatedly pointed to an, "MD5 Hash" that it claims proves that Mr. May used Phoenix Digital "tools" in creating a "cheat" for the Bungie's Destiny 2 game.   In so doing, Bungie, probably unknowingly, admits that it downloaded a program from Mr. May's computer without his authorization in violation of the Computer Fraud and Abuse Act ("CFAA").

The "MD5 Hash" Bungie points to and relies on was created from a computer program, namely the "reclasskernel64.sys" file, that Mr. May, *himself* authored and created. (See May Declaration, ¶¶ 3, 4, 8, 9.)[12]   As such, it is an original work of authorship and is automatically copyrighted under 17 U.S.C. § 201.   This fact gives lie to Bungie's claim that no "copyrighted" work existed on Mr. May's computer and that Bungie could not have accessed any such "copyrighted" work. As further established by the accompanying declaration of Mr. May, Mr. May created the "reclasskernel64.sys" file that Bungie not only admits to having but points to as "proof" that Mr. May was working with Phoenix Digital.   As further established by the Declaration of Mr. May, this file could only have been obtained by Bungie through surreptitious access to his personal computer because that is the *only* place that the "reclasskernel64.sys" file was ever stored.   (May Declaration, ¶4.)

Nor is Bungie's transgression limited solely to the "reclasskernel64.sys" Mr. May authored and created.   In his Declaration Mr. May identifies additional files Bungie improperly obtained from his computer but relies on in this case to charge both he and the remaining defendants with copyright infringement.   (May Declaration, ¶ 14.)

In his Declaration, Mr. May also testifies that his private computer files contain additional programs authored by Phoenix Digital that are, themselves, original works of

---

12   A "hash" is what results when a string of characters, such as a password or computer file, are fed through a hash function to create a unique string different characters.   "MD5" is a popular and well-known hash function.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

authorship and copyrighted by Phoenix Digital.   (May Declaration, ¶¶ 5, 10.)   In his Declaration, Mr. May testifies that these files, too, were accessed and downloaded from his personal computer by Bungie without authorization.  (May Declaration, ¶¶ 5, 10.)

Similarly, the Expert Report of Mr. Scott Kraemer (Mann Dec.  Exhibit C), further evidences that Bungie unlawfully accessed files on Mr. May's computer having nothing to do with the operation of the Destiny 2 game and that, instead, "[………………………………………………………….REDACTED……………………………………………………………………………………..]"  (Kraemer Report, Summary of Conclusions, ¶ 3.)  Mr. Kraemer's report is replete with other examples of precisely how accessed, without authority, private files on Mr. May's personal computer.  (See, Kraemer Report, Section, "Counterclaim #2.)

## 2. Bungie's Claim That, "All CFAA Claims Fail Because May Consented to Bungie's Limited Access" Is Baseless And Dishonest

Bungie's claim that it was permitted to spy on Mr. May's computer and access and download whatever it wanted is belied by the actual language of the very documents Bungie references, but never actually quotes.  Rather than point to specific language authorizing Bungie to access and download the files it did, Bungie makes the broad, sweeping and false claim that, "Bungie collected precisely what the Privacy Policy disclosed: information about May's device and his use of Bungie's services to detect fraudulent and infringing conduct." Significantly, Bungie never points to any actual language in its "Privacy Policy" authorizing Bungie to engage in the surveillance it indisputable did.  The reason is obvious:  The Privacy Policy nowhere states Bungie has the authority it now claims.

In his October 24, 2022 Opposition to Bungie's Motion to Dismiss Mr. May's original Counterclaims (Dkt# 67) incorporated by reference as if set forth fully herein, Mr. May provides a detailed analysis and discussion of what, exactly, the Bungie "Limited Software License Agreement" and its "Privacy Policy" actually say and, more importantly, what they *don't* say.  (Dkt#67, pp. 8-11.)

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 24

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

As discussed in detail in his Opposition (DKT#67, pp. 8-11), a review of the actual language of both documents shows that *nowhere* in either document does Bungie get the broad authority to "Collect... information about May's device and his use of Bungie's services to detect fraudulent and infringing conduct." Although Bungie may have intended to "detect fraudulent and infringing conduct," that is *not* what either document actually says. Bungie, like everyone else, is bound by what the documents actually say, not by what Bungie perhaps intended to say but never actually put down on paper. Again, Bungie never actually quotes the language supposedly giving it these broad powers. Again, Bungie does not do so *because it cannot.* The unquoted magic language Bungie relies on simply does not exist.

### 3.     Bungie's claim that, "May Does Not Own Copyrighted Works" is illusory

As established by Mr. May's accompanying declaration, the "reclasskernel64.sys" that Bungie not only stole off of Mr. May's computer but actually relies on to impose liability against Mr. May is an original work of authorship, authored by him, and through which he automatically obtains a copyright by operation of 17 U.S.C. § 201. As further established by Mr. May's declaration, additional files stolen off of his computer by Bungie include a multitude of files authored and created by Phoenix Digital. These files, too, are automatically copyrighted through operation of 17 U.S.C. § 201.

Nor can Bungie complain that the files are somehow not entitled to copyrights. Copies of the files improperly downloaded by Bungie were, at the request of Bungie's counsel promptly produced long ago, and Bungie has had ample time to analyze them and point out why, if at all, they are not entitled to copyright protection. Again, this is an illusory and disingenuous claim made by Bungie. If the files are not entitled to copyright protection, Bungie has had ample time and information to demonstrate that. It has not made any such demonstration.

Contrary to Bungie's claims, having a copyright registration is not a prerequisite to bringing a claim under the CFAA. Nor is it necessary that Mr. May be the owner of the copyrights in the works improperly accessed by another. Just as it would be a violation of the

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

CFAA to fraudulently access the computer of another and download movies, music or computer programs owned by, for example, Sony, Universal Music Group or Microsoft, it is equally a violation to fraudulently download the copyrighted programs of Phoenix Digital.

Indeed, and ironically, if it is *required* that a copyright registration be in place before a violation of rights can occur, Bungie's entire copyright infringement allegation here is grossly out of place, given the *indisputable* fact that Phoenix Digital first began distributing the subject "cheat" software in November, 2019, while Bungie did not even get around to registering its copyrights in Destiny 2 until, at the earliest, February 9, 2021, well *after* Phoenix Digital had not only started, but had actually *ceased* distributing the subject software (see, Dkt#34-1, pp. 1-13). If having a copyright registration must be in place *before* an act can be considered a violation of the law, Bungie's entire action here is out of place. Bungie's arguments are self-contradictory and hypocritical on their face.

> **4.    Ample evidence exists of Bungie's circumvention of Mr. May's technological measures**

Bungie's claim that, "it is undisputed that Bungie did not 'circumvent' any of May's technological measures," is disingenuous on its face. Mr. May has always alleged and established that his private computer system is protected by both passwords and a firewall and that Bungie only succeeded in accessing his private files by bypassing those technological measures. (May Declaration, ¶ 6.) Furthermore, Mr. May has always claimed that he protects these private files with passwords and a firewall and that he never gave Bungie permission or otherwise consented to give Bungie the access that Bungie, now apparently admits to having. (Indeed, at his deposition, Dr. Kaiser denied that the files shown on Bungie's own Document "BUNGIE_WDWA-0000409XLXS" are, in fact, the files of Mr. May. Nor did Dr. Kaiser identify how or where Bungie ever notified Mr. May that these files would be accessed by Bungie.) (Mann Dec. Exhibit A, p. 116, line 16 – p. 120, line 19.)

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Fundamentally, Bungie's claim is that, as a matter of law, bypassing such widespread and accepted technological measures for protecting computer data as passwords and firewalls, is not "circumvention" so long as it is done by fraud and deceit, as opposed to "hacking."

Bungie's further argument that, "When May granted Destiny 2 this access," he knew that Bungie "can access anything they want to [on May's computer] while it's running," is equally fraudulent and false. As discussed and established in section I, 2 above, neither the Bungie LSLA nor the Privacy Policy grants Bungie the broad rights it now claims, and Mr. May certainly *did not* "know" that Bungie could, "can access anything they want to [on his computer] while it's running." Again, when asked, Dr. Kaiser could not identify how Bungie notified Mr. May that these files would be accessed. (Mann Dec. Exhibit A, p. 116, line 16 – p. 120, line 19.) Again, Bungie is playing fast and loose with this Court.

In any event, even if Bungie did not "circumvent" Mr. May's technological measures via electronic means, such is immaterial to Mr. May's other counterclaims for unauthorized access with intent to defraud, theft of computer data, and unauthorized action, which remain viable, even if Mr. May's protections against unauthorized access were overcome by deceit rather than through direct electronic attack.

### 5. Mr. May suffered damages in excess of $5000

As detailed in both his Amended Counterclaims and his declaration, Mr. May incurred in excess of $5000 as a result of Bungie's unauthorized compromise of his computer system and theft of his files. In particular, Mr. May was forced to buy new computer equipment. Contrary to Bungie's assertion that he could simply have continued using his existing equipment, Mr. May has testified that he could not do so because he could not trust the existing hardware and firmware not to have viruses or other risks to the security of his system. Mr. May rightfully and correctly concluded that the only way to avoid potential further breaches to his system was to buy new equipment.

Bungie's claim that Mr. May's self-reported value of his time at $75 per hour is somehow inflated and excessive is laughable compared to the rates at which Bungie's own

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

junior counsel, who are substantially younger and less experienced than Mr. May, value their own services.[13]   As detailed in his prior declarations and responses to Bungie's discovery requests, Mr. May selected this rate by canvassing and surveying what computer technicians in the Dayton, Ohio region charge for similar services.  Mr. May has testified to the number of hours needed to repair his computer system after discovering it had been compromised, and Bungie has offered no testimony, expert or not, that either the number of hours Mr. May spent, or his modest $75 per hour rate, are somehow excessive.  On the contrary, they are likely conservative and understate the true harm caused by Bungie's unauthorized breach.

**J.     More Than Sufficient Evidence Exists To Support Phoenix Digital's Counter-Claim For Breach Of The Terms Of Service**

> **1.     Bungie's "Public Policy" argument lacks merit**

Desperate to avoid liability for its clear breach of Phoenix Digital's Terms Of Service, Bungie, in tacit admission that it did so violate those terms, argues that, even so, those terms should not be enforced because they violate public policy.  Bungie offers no shred of actual support for its claim that routine Terms of Service, such as those employed by Phoenix Digital, somehow violate public policy and should not be enforced.  Indeed, the Terms of Service utilized by Phoenix Digital are essentially those freely available to all on the Internet and differ little, if at all, to similar terms used by countless small, medium and large enterprises doing business on the Internet.  Furthermore, a perusal of Bungie's own, "Limited Software License Agreement" ("LSLA") shows that Bungie, itself, includes the same proscriptions against de-compiling, decrypting, reverse engineering, etc., its own products that are included in Phoenix Digital's Terms of Service.  Bungie's "public policy" argument is a desperate and legally bereft attempt to avoid liability for the improper actions it made.

> **2.     Bungie accepted the Phoenix Digital Terms of Service**

Bungie's claim that it did not even see, much less accept, the Phoenix Digital Terms of Service is not only a genuine issue of material fact, it is laughable on its face.

---

13   Mr. Marcello, seven years out of law school, bills at $785 per hour, while Mr. Dini, five years out of law school, bills at $670 per hour.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Phoenix Digital's President, David Schaefer, testified on numerous occasions that Phoenix Digital always had Terms of Service in place and that it was impossible to obtain a subscription and software products from Phoenix Digital without agreeing to those terms. This was corroborated by the testimony of Phoenix Digital's co-founder and technical leader, Jordan Green.  Phoenix Digital has produced and provided a copy of its Terms of Service that have been in place since shortly after the company's founding and that were in place at all relevant times.

In its motion, Bungie makes the bizarre claim that, despite the procedures used by Phoenix Digital (which were hardly invented by Phoenix Digital and are used by virtually all of the millions of websites in operation around the world), Bungie not only failed to see the Terms of Service but was somehow able to access the Phoenix Digital "AimJunkies" site and make a purchase while *not* "clicking" the button needed to show acceptance of the terms and complete the transaction.  However, the actual deposition testimony of the Bungie person who purchased and obtained the subject "cheat" software, the identity-protected "Mr. Doe," was that he had *no recollection whatsoever* of what he saw or did not see on the Phoenix Digital "AimJunkies" site while so doing.  As a result of this convenient amnesia, Mr. Doe is in no position to deny having seen the Phoenix Digital Terms of Service.

During his deposition, (Mann Dec. Exhibit H.) Mr. Doe was presented with "Exhibit 16," which is a screen-shot, *taken by Bungie itself,* of the AimJunkies "purchase" page.  This document  was produced to Defendants by Bungie itself under Bungie Document Control numbers BUNGIE_WDWA 0000606-607.  (Mann Dec. Exhibit I.)  "Exhibit 16" clearly shows at the bottom of the first page a box that a purchase *must* "click" in order to complete a transaction.  This box, which must be "clicked" to complete a transaction, says, in clear, plain English: **"I have read, and agree to be bound by the Terms of Service."**

Confronted with this damning document that gives lie to any claim by Bungie that it somehow completed a purchase at the AimJunkies site without having agreed to the Terms of

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Service, Mr. Doe, following some dissembling, admitted, as he had to, that it was "possible" he had seen this page and that he could not affirmatively deny seeing it:

> Q:    Is this [Exhibit 16] what you saw when you had to complete the purchase?
>
> A:    Don't remember exactly.
>
> Q:    Is it possible you saw this?
>
> A:    Yep.
>
> Q:    And in order to complete the purchase, you would have had to fill out this form and submit it. Correct?
>
> A:    It appears that way, but, again, I don't remember exactly.
>
> Q:    You don't deny seeing this form, do you?
>
> A:    I don't remember.
>
> Q:    So it's possible you saw it?
>
> A:    Don't remember.
>
> Q:    Again, is it possible you saw it?
>
> A:    Yeah, sure.

("Doe" deposition, p. 58, lines 12-24,  Mann Dec. Exhibit H.)[14]

Mr. Doe's actual testimony under oath is a far cry from Bungie's unsupported and fraudulent claim that it never agreed to the Terms of Service.   Not only is there ample evidence to show that Bungie agreed to the Terms, its denial of doing so is farcical on its face.

### 3.    Bungie breached the Terms of Services

While claiming it did not breach the Terms of Service, Bungie, perhaps unaware that it is doing so, creates a genuine issue of material fact that precludes the grant of summary judgment in its favor on any of the issues it raises.

If it is true that Bungie never de-compiled, decrypted, reverse engineered, or otherwise inspected the "cheat" software it accuses of infringement in this lawsuit, and if Bungie admits

---

14    Not only did Mr. Doe dissemble regarding his memory, he admitted, as he had to, that he purchased the software from the AimJunkies site using a PayPal account set up under the assumed name, "Martin Zeniu," in direct violation of PayPal's Terms of Service prohibiting the use of fictitious names, and establishing that Bungie has no respect for the Terms of Service of others.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

that it obtained a sample of the subject "cheat" software from Phoenix Digital's "AimJunkies" site,  how, then, did Bungie bring this action in good faith, and how can it prove infringement on Defendants' part?  If Bungie denies breaching the Terms of Service, it admits to basing this action on nothing more than guesswork that does not even rise to the level of "educated." (Again, see the supposed "expert" testimony of Mr. Guris who, through extraordinary powers, can somehow divine the inner workings of products and programs that he, by his own admission, has never actually seen or used, much less analyzed.  See also the testimony of Dr. Kaiser, who admits he has never actually seen or used the "cheat" software at issue here.)

Furthermore, the Expert Report of Scott Kraemer establishes, in part, that, "[……………………………………………………………………………………………………………… …………………………………………..REDACTED……………………………………………… …………………………………………………………………...]" and even points out that, "The Expert Report from Steven Guris lists in detail how he reverse engineered AimJunkies' Cheat Loader on Page 26-30 with images of the loader decompiled."  (Kraemer Report, Summary of Conclusions, ¶1.)

Again, Bungie is attempting to walk a treacherous tightrope in trying to have it both ways, but this, in itself, creates a clear, genuine issue of material fact precluding summary judgment in its favor.  Whether Bungie did violate the Terms of Service by conducting a necessary pre-filing investigation, or simply shot from the hip by guessing at what Phoenix Digital was doing, is a clear issue of material fact to be decided by a jury after hearing and seeing all the relevant evidence.  Summary judgment on this issue is clearly inappropriate.

### 4.    Phoenix Digital did suffer damage as a result of Bungie's breach

Phoenix Digital sets out the basis for its damages claim in paragraphs 75 and 79 of its Amended Counterclaims (Dkt#72) which specify, among other things, that Phoenix Digital suffered damages that:

> include but are not limited to investigating and responding to inaccurate and
> factually baseless claims by Bungie, both in and outside of court, that Phoenix

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ

Page 31

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone:  206.436.0900

Digital has engaged in unlawful conduct when it has not, which accusations have diminished the fair market value of Phoenix Digital's "aimjunkies" website, resulting in Phoenix Digital's sale of the website at a price lower than that that would have been realized had Bungie not breached the applicable Terms of Service and not made false and harmful accusations against Phoenix Digital and its Officers and Directors.

At deposition, Mr. Schaefer, President of Phoenix Digital, stated the grounds and facts on which these claims are made.  In particular, Mr. Schaefer, as seasoned business man, was aware of and testified as to Phoenix Digital's revenues, profits growth prospects, all of which contribute to the value of the company.  In addition Mr. Schefer was aware of and intimately familiar with an offer to purchase the company that fell through after Bungie filed suit, and later resulted in the company selling for far less than had originally been offered.  This is corroborated by the deposition testimony of Jordan Green who testified he was aware that, prior to suit, Phoenix Digital had received several offers to purchase the site.  (Mann Dec. Exhibit F., p.71, line 15-p.72, line 5.)

Bungie's motion for summary judgment does not establish any lack of evidence of damages, but, as often occurs, simply challenges the credibility of the evidence.  Whether Mr. Schaefer is speaking the truth about what he has testified to as to damages, and whether his estimates are reasonable, are all matters of credibility to be decided, properly, by an informed jury following a full trial, not by this Court that, at present, has and can only have an incomplete picture of the entire story.

### III     CONCLUSION

Bungie is asking this Court to somehow decide that Bungie is telling the truth while Defendants are not.  Bungie is further asking that this Court have sufficient confidence in its ability to do so that it can dispense with a full evidentiary hearing as well as a jury to sort through the various contradictory factual claims being made.  Bungie is also asking this Court to deny Defendants their clear right to a trial on these convoluted, self-contradictory claims made by Bungie, which are properly the province of a jury to decide anyway.

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ                          Page 32

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

Unless the Court is supremely confident in its ability to sort through these voluminous and contradictory factual claims made under oath and supported by numerous pieces of documentary evidence, and state with certainty that no reasonable jury could find in favor of Defendants, summary judgment in favor of Bungie is not appropriate and Bungie's motion should be denied.

I certify that this memorandum contains 10,908 words, in compliance with the Local Civil Rules and this Court's May 4, 2023 Order.

Dated  August 7, 2023.

*/s/ Philip P. Mann*

Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

Opposition to Motion for Summary Judgment
Cause No. 21-CV-0811-TSZ                    Page 33

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900