THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

              Plaintiff,

    v.

AIMJUNKIES.COM; PHOENIX DIGITAL
GROUP, LLC; DAVID SCHAEFER; JEFFREY
CONWAY; JORDAN GREEN; AND JAMES
MAY,

             Defendants.

No. 2:21-cv-811-TSZ

PLAINTIFF BUNGIE, INC.'S REPLY
IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR
August 11, 2023

ORAL ARGUMENT REQUESTED

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................... 1

II.   ARGUMENT ............................................................................................. 1

    A.   Attorney Argument and Unsupported Declarations Are Insufficient to Create a Dispute of Material Fact ....................................................... 1

    B.   Factual Findings in the Final Arbitration Award Are Entitled to Preclusive Effect ................................................................................................. 2

    C.   Bungie Is Entitled to Summary Judgment on Its Direct Copyright Infringement Claim ................................................................................. 2

        1.   Defendants Do Not Create a Dispute of Material Fact as to Their Infringement .................................................................................. 2

        2.   Bungie Is Entitled to Judgment as a Matter of Law ...................... 4

    D.   Bungie Is Entitled to Summary Judgment on Its Secondary Copyright Infringement Claims ............................................................................... 7

    E.   The Phoenix Digital Defendants Infringed Bungie's Trademark .......................... 9

    F.   Bungie Is Entitled to Statutory Damages, Attorneys' Fees, and a Permanent Injunction .............................................................................. 11

        1.   Bungie Seeks $600,000 in Statutory Damages. ......................... 11

        2.   Attorneys' Fees Are Warranted ................................................... 12

    G.   May's CFAA Claims Fail .......................................................................... 12

        1.   May Does Not Dispute Any Facts Evidencing His Consent to Bungie's Access ........................................................................... 13

        2.   May Doubles Down on His Deficient Evidence of Loss ............... 13

    H.   May's DMCA Claim Fails .......................................................................... 14

        1.   May Does Not Even Attempt to Explain Why Any of His Files Merit Copyright Protection .......................................................... 14

        2.   Bungie Did Not Circumvent Technological Measures ................. 15

    I.   Phoenix Digital's Breach of Contract Claim Fails ................................. 15

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – i
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF CONTENTS (continued)**

Page

1. Phoenix Digital Does Not Contest Their Terms' Illegality or Violation of Public Policy ........................................................................... 15

2. Phoenix Digital Does Not Create a Dispute of Material Fact Regarding Acceptance ............................................................... 16

3. Bungie Did Not Breach the Terms of Service ......................................... 17

4. Phoenix Digital Did Not Suffer Damages as a Matter of Law ................ 17

III. CONCLUSION.................................................................................................. 18

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – ii
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES**

**Pages**

CASES

*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019) ...................................................................................10

*Aviva USA Corp. v. Vazirani*,
   902 F. Supp. 2d 1246 (D. Ariz. 2012), *aff'd*, 632 F. App'x 885 (9th Cir. 2015)....................10

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ...................................................................................16

*Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*,
   No. C10-380Z, 2011 WL 3360664 (W.D. Wash. Aug. 3, 2011)..........................................1, 4

*BMW of N. Am., LLC v. S.F. Express Corp.*,
   No. 20CV01574, 2020 WL 10486758 (C.D. Cal. Aug. 6, 2020) ...........................................9

*Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.*,
   776 P.2d 666 (Wash. 1989)......................................................................................17

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ..................................................................................9

*Cent. Flyway Air, Inc. v. Grey Ghosts, Int'l, LLC*,
   No. 20-cv-05506, 2022 WL 4534402 (W.D. Wash. Sept. 28, 2022) ....................................16

*Clark v. Bear Stearns & Co.*,
   966 F.2d 1318 (9th Cir. 1992) ..................................................................................2

*Comput. Access Tech. Corp. v. Catalyst Enters, Inc.*,
   No. C-00-4852, 2001 WL 34118030 (N.D. Cal. June 13, 2001)..........................................5

*Daimler AG v. A-Z Wheels LLC*,
   334 F. Supp. 3d 1087 (S.D. Cal. 2018).......................................................................9

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ...............................................................................11, 12

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2021) ..................................................................................6

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ..................................................................................10

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – iii
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES (continued)**

Pages

*Experience Hendrix, L.L.C. v. Pitsicalis*,
No. 17 Civ. 1927, 2020 WL 3564485 (S.D.N.Y. July 1, 2020) ...........................12

*Fox Broadcast Co. v. Dish Network, L.L.C.*,
905 F. Supp. 2d 1088 (C.D. Cal. 2012) ...................................................................8

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989) ..............................................................................12

*FTC v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) ...................................................................................1

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) .................................................................................1

*Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*,
528 F. Supp. 2d 1106 (W.D. Wash. 2007).................................................................5

*McClellon v. Wells Fargo Bank, N.A.*,
No. C18-0851, 2018 WL 3630299 (W.D. Wash. July 31, 2018) ...............................2

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010) ...................................................................................8

*Menzel v. Scholastic, Inc.*,
No. 17-CV-05499, 2019 WL 6896145 (N.D. Cal. Dec. 18, 2019)............................7

*Neman Bros. & Assoc., Inc. v. Marsons Int'l, Inc.*,
No. CV1601634, 2016 WL 9131964 (C.D. Cal. Dec. 15, 2016).................................4

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
No. 11-CV-726, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013)................................14

*Sega Enters Ltd. v. MAPHIA*,
948 F. Supp. 923 (N.D. Cal. 1996) ..........................................................................9

*Selliken v. Country Mut. Ins.*,
No. 12-CV-0515, 2013 WL 4759083 (E.D. Wash. Sept. 4, 2013)............................9

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) ...................................................................................6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES (continued)**

**Pages**

*Sony Corporation of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................................................6, 8

*Spivak v. Alphabet Inc.*,
    No. C20-1480, 2021 WL 535211 (W.D. Wash. Feb. 12, 2021) ..................................2

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) .................................................................................10

*Volkswagenwerk Aktiengesellschaft v. Church*,
    411 F.2d 350 (9th Cir. 1969) ...................................................................................10

**STATUTES**

17 U.S.C. § 106 ...............................................................................................................8

17 U.S.C. § 107 ...............................................................................................................8

17 U.S.C. § 107(2) ...........................................................................................................9

17 U.S.C. § 107(3) ...........................................................................................................9

17 U.S.C. § 412(2) .........................................................................................................11

17 U.S.C. § 505 .............................................................................................................12

Copyright Act .........................................................................................................12, 15

Lanham Act .....................................................................................................................12

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – v
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I.    INTRODUCTION

In their Opposition,[1] Defendants fail to either create a dispute of material fact or demonstrate that Bungie is not entitled to judgment as a matter of law.  Where Bungie provides evidence, Defendants offer unsupported argument.  Where Bungie cites legal authority, Defendants rely on grandstanding.  To the limited extent Defendants point to facts in the record or case law, their arguments miss the mark.  Defendants operate an inherently illegal business predicated on infringement.  By creating and distributing cheat software against *Destiny 2*, Defendants have blatantly infringed Bungie's intellectual property rights.  The undisputed facts support this conclusion, and Bungie is entitled to summary judgment on and relief related to its copyright and trademark infringement claims, as well as dismissal of Defendants' threadbare counterclaims.

## II.    ARGUMENT

### A.    Attorney Argument and Unsupported Declarations Are Insufficient to Create a Dispute of Material Fact

In opposing Bungie's Motion,[2] Defendants "must produce at least some significant, probative evidence . . . to create a genuine issue of material fact." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012).  But Defendants fail to "set forth 'specific facts' demonstrating the existence of a genuine issue for trial." *Blue Nile, Inc. v. Ideal Diamond Sols., Inc.*, No. C10-380Z, 2011 WL 3360664, at *1 (W.D. Wash. Aug. 3, 2011) (citation omitted).

Seemingly unable to present a coherent, fact-based response to Bungie's Motion, Defendants rely on unsupported attorney argument, speculation, and conclusory, self-serving affidavits.  As illustrated below, such "evidence" is insufficient to raise an issue of material fact. *See, e.g.*, *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

---

[1] Dkt. No. 174, hereafter "Opposition" or "Opp'n."

[2] Dkt. No. 157, hereafter "Motion" or "Mot."

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 1
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.      Factual Findings in the Final Arbitration Award Are Entitled to Preclusive Effect**

Arbitration decisions can have collateral estoppel effect.  *McClellon v. Wells Fargo Bank, N.A.*, No. C18-0851, 2018 WL 3630299, at *3 (W.D. Wash. July 31, 2018) (citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992)).  Collateral estoppel applies to the arbitrator's factual findings where (1) the issues at stake in the federal court litigation are identical to the issues in the arbitration; (2) the issues were actually litigated in the arbitration; and (3) the determination of the issue in the arbitration was critical and necessary to the final award.  *Spivak v. Alphabet Inc.*, No. C20-1480, 2021 WL 535211, at *7 (W.D. Wash. Feb. 12, 2021) (citing *Clark*, 966 F.2d at 1320).

Here, Bungie cites factual findings in the Final Award (Dkt. No. 89-1) that are entitled to preclusive effect, including, that May acted in concert with the other Defendants, that May connected reverse engineering tools digitally signed by Phoenix Digital to develop a cheat for *Destiny 2* (Final Award at 11-12, 15-17), and that Defendants had violated the DMCA (Final Award at 13-16).  These issues are identical to issues present in this case and were actually litigated in the arbitration because they were essential to finding Defendants liable.  They are entitled to preclusive effect here.

**C.      Bungie Is Entitled to Summary Judgment on Its Direct Copyright Infringement Claim**

**1.      Defendants Do Not Create a Dispute of Material Fact as to Their Infringement**

Bungie has explained how the creation and operation of the Cheat Software infringes its copyrights.  Defendants do not seriously dispute it.  Instead, Defendants mischaracterize how Bungie's two experts—Dr. Edward Kaiser and Steven Guris—deduced how the Cheat Software was created and operates.  Opp'n at 11-13.  Dr. Kaiser's description of how the Cheat Software was created and operates is not based "solely" on Bungie's test operation of the Cheat Software (Opp'n at 11), but on his depth of experience with the *Destiny 2* software code **that he**

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 2
(No. 2:21-cv-811-TSZ)
163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**participated in authoring,** how the cheat is injected into *Destiny 2*, and the cheat's effect on the game. *See generally* Kaiser Decl. (Dkt. No. 158).

Dr. Kaiser has an undergraduate degree and Ph.D in Computer Science and wrote his thesis about how to identify cheaters in video games, like he did here with Defendants' Cheat Software. *Id.* ¶¶ 2, 9. As Defendants admit, knowledge of the video game's game engine is "indispensable" to develop a cheat for a particular video game. Dkt. No. 176-3 (Green 2022 Dep. Tr.) at 107:20-25 ("That cheat in particular, I had a background knowledge on the game engine, how it worked – which is indispensable. It's valuable to know how it works if you're going to figure it out; right?"); *see also* Dkt. No. 176-2 (May 2022 Dep. Tr.) at 123:23-124:3 ("It's all dependent on game engine and everything else."). Dr. Kaiser knows *Destiny 2*'s game engine. He has worked at Bungie for over a dozen years and participated in the research, development, authorship, and modernization of the *Destiny 2* game engine. *Id.* ¶¶ 3, 7. In fact, Dr. Kaiser wrote and helped develop the exact code that Defendants infringed. *Id.* ¶ 7. Dr. Kaiser also knows what features the Cheat Software offered and verified through his team that they worked. *Id.* ¶ 10.

Furthermore, Dr. Kaiser knows that the Cheat Software operates in tandem with Defendants' cheat loader. *Id.* ¶¶ 11, 16, 19, 22; *see also* Ex. 6[3] (Guris Expert Report) ¶¶ 117-18. This understanding is confirmed by Steven Guris, who has a B.S. in Software Engineering, is currently a Director of Threat Investigations at Unit 221B, a cybersecurity firm, and routinely conducts investigations into malware and cheat software like Defendants'. *Id.* ¶¶ 5-8. Mr. Guris concluded that Defendants' cheat loader injects the Cheat Software into *Destiny 2* while *Destiny 2* is running in a cheater's computer, allowing the cheat to "read and modify *Destiny 2* memory," and generally allowing the Cheat Software to function in the manner described by Dr. Kaiser. *Id.* ¶ 118; *see also id.* ¶¶ 119-24. While Mr. Guris analyzed the loader in 2022 (after the Cheat Software was purportedly offline), there is **no evidence in the record** that Defendants' cheat

---

[3] Unless otherwise specified, all citations to Exhibits in this Reply refer to those attached to the Rava Declaration with Bungie's Motion (Dkt. No. 160).

1   loader has changed materially since 2020.  *See* Opp'n at 11-12.  To defeat summary judgment,

2   Defendants must do more than rely on speculation about alleged changes to the loader software—

3   they must point to specific facts.  *Blue Nile, Inc*, 2011 WL 3360664, at *1.

4         Even without the Cheat Software, based on everything Dr. Kaiser knows about the *Destiny*

5   *2* game engine, the Cheat Software, and the cheat loader, Dr. Kaiser determined that there was no

6   conceivable way to create the Cheat Software to achieve the verified cheat features without

7   copying the *Destiny 2* object code, and only one reasonable path for that Cheat Software to work.

8   *See* Kaiser Decl. (Dkt. No. 158) ¶¶ 12-23.  The only way the Cheat Software could have been

9   created is by copying the entirety of the *Destiny 2* client, including the relevant data structures in

10  *Destiny 2*, reverse engineering that code, and then incorporating the code derived from that copying

11  and reverse engineering into the Cheat Software.  *Id.* ¶¶ 15, 18, 21.  And that is **exactly** what

12  Bungie detected May doing—repeatedly connecting reverse engineering tools (including those

13  signed by Phoenix Digital) to *Destiny 2*.  *Id.* ¶ 25 & Ex. 2 (Dkt. No. 159); Final Award at 11-12.

14  The Cheat Software could operate only if the loader injected it into *Destiny 2* while the game was

15  running on a user's computer, resulting in a modified derivative work of *Destiny 2* that includes

16  Defendants' cheat features.  Kaiser Decl. ¶¶ 16, 19, 22.

17        **2.      Bungie Is Entitled to Judgment as a Matter of Law**

18        Defendants' remaining arguments are the result of their mischaracterization of the

19  underlying facts and misapplication of copyright law.

20        Defendants do not dispute the first element of Bungie's claim that Bungie owns four

21  copyright registrations covering the *Destiny 2* and *Destiny 2: Beyond Light* computer software

22  code and audiovisual works.  Exs. 2-5; *see* Opp'n at 11-18.  With respect to the second element

23  (violation of an exclusive right), in the absence of direct evidence of copying, Bungie may prove

24  it through evidence that Defendants had access to *Destiny 2* and that *Destiny 2* and the Cheat

25  Software are substantially similar.  *Neman Bros. & Assoc., Inc. v. Marsons Int'l, Inc.*, No.

26  CV1601634, 2016 WL 9131964, at *2 (C.D. Cal. Dec. 15, 2016).  Bungie has readily satisfied

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 4
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   these elements.  As an initial matter, Defendants have not disputed that Defendants (or their cheat

2   developers on their behalf, like May) copied the entire copyright-protected *Destiny 2* game engine

3   to reverse engineer against it.

4       With respect to "access," it is undisputed that *Destiny 2* is a free-to-play game that anyone

5   could download, including Defendants.  Kaiser Decl. (Dkt. No. 158) ¶ 6.  And May did download

6   and reverse engineer or test against *Destiny 2* over 100 times.  *Id.* ¶ 25 & Ex. 2; *see also* Ex. 31

7   (May 2023 Dep. Tr.) at 172:2-5; *see also* Final Award at 12 ("May's actions were also done in

8   concert with and for the benefit of [Defendants]" and "the remaining [Defendants] are liable for

9   May's violations.").  This alone is sufficient to show both access and copying.  *Lucky Break*

10  *Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1122 (W.D. Wash. 2007) ("Direct

11  access is shown if there is proof that defendant actually viewed, read, or heard the work at issue.").

12      Defendants argue that they did not have access to *Destiny 2* because they did not have

13  access to the *Destiny 2* "source code."  *See* Opp'n at 14-15.  But Bungie does not claim that

14  Defendants copied the *Destiny 2* source code.  Instead, Bungie has shown that Defendants have

15  infringed *Destiny 2*'s object code, which is the code a computer executes to run the *Destiny 2* game

16  and which is distributed to users when they purchase a license to a copy of *Destiny 2*.[4]  Suppl.

17  Kaiser Decl. ¶ 2.  And Defendants are (or should be) well aware of this fact.  As early as September

18  2022 in response to Defendants' discovery requests, Bungie: explained that "Defendants have

19  made copies of the entirety of the **object code** for *Destiny 2*, as well as specifically copied and

20  modified **object code** that corresponds to the data structures for player positioning, combatant

21  positioning, rendering functions and the angle deltas for mouse movements;" promised to produce

22  documents sufficient to show the "**object code**" from *Destiny 2* that was infringed; and then

23  produced that object code.  Suppl. Rava Decl. ¶ 4 & Exs. 37 (Bungie Resp. to Phoenix Digital

24

25

26       [4] This code is equally protected by Bungie's software code copyright registrations.  *See Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*, No. C-00-4852, 2001 WL 34118030, at *13 (N.D. Cal. June 13, 2001).

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 5
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    ROG No. 1); 38 (Bungie Suppl. Resps. to Phoenix Digital RFP Nos. 1 and 2), 39 (production letter

2    confirming object code produced) (emphasis added).

3           With respect to substantial similarity, Defendants necessarily (1) downloaded unlicensed

4    copies of *Destiny 2* for purposes of reverse engineering, and (2) copied and incorporated portions

5    of *Destiny 2* object code in their cheat software—each separate acts of infringement.  Defendants

6    argue that because some of Bungie's code might be unprotectable, Bungie cannot show that the

7    code Defendants copied was substantially similar to protectable code.  Opp'n at 13-15.  But

8    Defendants erroneously invert the parties' respective burdens on this issue.  Because Bungie has

9    copyright registrations for its *Destiny 2* software code, Bungie is entitled to the resulting

10   presumptions of ownership and validity.  *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253,

11   1259 (9th Cir. 2021).  Defendants then bear the burden of presenting evidence to negate that

12   presumption.  *Id.*  Although Defendants had copies of the *Destiny 2* object code no later than

13   September 16, 2022, they failed to offer any evidence of invalidity.  The presumption of validity

14   remains.

15          Defendants' reliance on *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d

16   596 (9th Cir. 2000), is misplaced.  In that case, defendants' reverse engineering was considered

17   fair use on facts entirely distinct or absent from this case.  For example, in *Sony*, it was undisputed

18   that the copied code contained some unprotectable elements, but here Defendants have offered no

19   such evidence.  *Id.* at 603.  The *Sony* court also found that defendant copied Sony's code for

20   transformative purposes to create a competing product.  *Id.* at 607.  Here, the Cheat Software is

21   intended to be used by cheaters in *Destiny 2* in a way that harms the broader *Destiny 2* community

22   and player base.  *See* Ex. 6 (Guris Expert Report) ¶ 16, 20.

23          As discussed above, the actual code for the Cheat Software itself is not necessary to show

24   substantial similarity, because Dr. Kaiser and Mr. Guris have done more than enough to explain

25   why Defendants' Cheat Software is substantially similar to *Destiny 2*.  To create the Cheat

26   Software, Defendants necessarily copied and reverse engineered the entire *Destiny 2* client and

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 6
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   key data structures essential to the Cheat Software's features.  Kaiser Decl. (Dkt. No. 158) ¶¶ 15,

2   18, 21.  And for the Cheat Software to function, it must be injected into *Destiny 2*, adding its own

3   code to the existing *Destiny 2* code in a computer's memory, thus creating a derivative work.  *Id.*

4   ¶ 16, 19, 22; Ex. 6 (Guris Expert Report) ¶¶ 117-18.  And the resulting displays created by the

5   Cheat Software are demonstrably similar, the only difference being the box drawn over opposing

6   players when using the ESP feature.  *Compare* Kaiser Decl. (Dkt. No. 158), Ex. 3 (unmodified

7   *Destiny 2* screenshot), *with* Dkt. No. 72 ¶ 81 (admitting screenshot of Cheat Software with ESP

8   feature running was true).

**D.   Bungie Is Entitled to Summary Judgment on Its Secondary Copyright Infringement Claims**

9
10          Defendants bizarrely claim that they are not liable for secondary copyright infringement,

11   because the cheaters that license *Destiny 2* and use Defendants' Cheat Software to create a

12   modified version of *Destiny 2* are somehow authorized to do so because they are only modifying

13   their "own" personal version of *Destiny 2*.  Opp'n at 16-18.  This argument is counterfactual—a

14   cheater affects the game experience for everyone they interact with—and reflects a

15   misunderstanding of the basic difference between licensing and transferring ownership of

16   copyrighted software.  Bungie indisputably does the former, not the latter.  *See* Amend. Countercl.

17   (Dkt. No. 72) ¶ 6 (May accepted Bungie's LSLA "to receive access to the Destiny 2 game");

18   Bungie's Ans. to Amend. Countercl. (Dkt. No. 90) ¶ 6.  *Destiny 2* "is licensed, not sold, for [a

19   customer's] use."  LSLA (Dkt. No. 72-1) at 3.  Defendants claim that a user who has agreed to

20   Bungie's LSLA "has the legal right . . . to modify" *Destiny 2* (Opp'n at 16), even though the LSLA

21   expressly prohibits "modif[ication] . . . or creat[tion of] derivative works of [*Destiny 2*], in whole

22   or in part."  LSLA at 4.  The license terminates automatically upon a breach of the LSLA.  *Id.* at

23   5.  By modifying or creating a derivative work based on *Destiny 2* when they use the Cheat

24   Software, the cheaters breach the LSLA, their license to use and have a copy of *Destiny 2*

25   terminates, and their unlicensed use of *Destiny 2* infringes Bungie's copyrights.  *See Menzel v.*

26

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 7
(No. 2:21-cv-811-TSZ)

163357338.4

1   *Scholastic, Inc.*, No. 17-CV-05499, 2019 WL 6896145, at *7 (N.D. Cal. Dec. 18, 2019) ("[I]f the

2   licensee acts outside the scope of the license, the licensor may sue for copyright infringement.").

3       Defendants' reliance on *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d

4   928 (9th Cir. 2010), is misplaced.  In *MDY*, the Ninth Circuit held that "for a licensee's violation

5   of a contract to constitute copyright infringement, there must be a nexus between the condition

6   and the licensor's exclusive rights of copyright," and the prohibition on bot software in the video

7   game developer's license was not connected to any exclusive rights of copyright.  *Id.* at 941.  This

8   case is different because cheaters' use of the Cheat Software violates the LSLA's prohibition on

9   "modify[ing]" and "create[ing] derivative works" of *Destiny 2* (Dkt. No. 72-1 p. 4), which is

10  undeniably tethered to Bungie's exclusive rights to reproduce and create derivative works based

11  on *Destiny 2*.  *See* 17 U.S.C. § 106; Kaiser Decl. (Dkt. No. 158) ¶¶ 15, 16, 18, 19, 21, 22.

12      *Fox Broadcast Co. v. Dish Network, L.L.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012), also

13  doesn't help Defendants.  There, a broadcast company that owned rights to television shows

14  brought secondary copyright infringement claims against a television service provider that allowed

15  its customers to digitally record television shows.  *Id.* at 1092-93.  The court held that there was

16  no secondary infringement because the customers' use was fair, and so there was no underlying

17  direct infringement.  *Id.* at 1098.  The court relied on *Sony Corporation of America v. Universal

18  City Studios, Inc.*, which held that customers who used unmodified versions of the digitally-

19  recorded shows only for their own personal use for the "unobjectionable purpose" of watching

20  those shows at a later time were engaging in fair use of the television shows.  464 U.S. 417, 454-

21  55 (1984).

22      But Defendants have presented **no evidence**, or even a coherent argument, as to why

23  cheaters' highly objectionable use of the Cheat Software in connection with *Destiny 2* is fair.  *See*

24  Opp'n at 16-18.  That's because it isn't.  *See* 17 U.S.C. § 107 (listing fair use factors).  The purpose

25  and character of the Cheat Software's use is plainly commercial, allowing Defendants to profit,

26  the cheaters to earn in-game rewards over non-cheating players, and, in some cases, cheaters to

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 8
(No. 2:21-cv-811-TSZ)
163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    profit from paid "boosting" services.  Ex. 6 (Guris Expert Report) ¶¶ 145-47.  *Destiny 2* is

2    undoubtedly a creative work, entitling it to strong protection, and Defendants copied wholesale

3    portions of the *Destiny 2* code to create the cheat.  17 U.S.C. § 107(2)-(3).  Finally, and most

4    significantly, the Cheat Software has a demonstrably negative effect on the market for *Destiny 2*

5    because cheats in *Destiny 2* drive away non-cheating players.  *See* Ex. 6 (Guris Expert Report)

6    ¶¶ 16, 20, 144.  Defendants have proffered no evidence to rebut this testimony.

7    **E.    The Phoenix Digital Defendants Infringed Bungie's Trademark**

8            Defendants do not dispute that Bungie owns rights to the Destiny Mark, nor do they dispute

9    that they used the Destiny Mark in connection with the sale, advertising, and promotion of the

10   Cheat Software.  *See* Opp'n at 5-7.  Defendants do not even dispute that they used the Destiny

11   Mark in an identical manner to how Bungie uses it in marketing.  *Id.*  Defendants even concede,

12   in failing to address Bungie's arguments, that their use of the Destiny Mark is a "counterfeit" use.

13   *See Selliken v. Country Mut. Ins.*, No. 12-CV-0515, 2013 WL 4759083, at *3 (E.D. Wash. Sept.

14   4, 2013) (party opposing summary judgment "has effectively conceded" an issue when it fails to

15   respond to the moving party's argument); *BMW of N. Am., LLC v. S.F. Express Corp.*, No.

16   20CV01574, 2020 WL 10486758, at *4 (C.D. Cal. Aug. 6, 2020) (nominative fair use doctrine

17   does not protect the sale of counterfeit products).  This undisputed use of the Destiny Mark

18   infringed Bungie's trademark rights as a matter of law.  *Sega Enters Ltd. v. MAPHIA*, 948 F. Supp.

19   923, 938 (N.D. Cal. 1996).  Instead, Defendants rely solely on the defense of nominative fair use.

20   Opp'n at 9-11.  But Defendants' reliance is misplaced.

21           ***First***, by definition, nominative fair use refers to a defendant's use of the plaintiff's

22   trademark to describe or identify the **plaintiff's product**.  *Cairns v. Franklin Mint Co.*, 292 F.3d

23   1139, 1150 (9th Cir. 2002).  Defendants, by contrast, use Bungie's trademark to refer to the Cheat

24   Software, their own product.  *See, e.g.*, *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087,

25   1098 (S.D. Cal. 2018).

26

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 9
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1       **Second**, even on its merits, nominative fair use fails because Defendants use significantly

2 more of the Destiny Mark than reasonably necessary.  To prove nominative fair use, Defendants

3 must show:  (1) the product or service in question is not readily identifiable without use of the

4 plaintiff's trademark; (2) only so much of the mark is used as reasonably necessary to identify the

5 product or service; and (3) the user must do nothing that would, in conjunction with the mark,

6 suggest sponsorship or endorsement by the trademark holder.  *Downing v. Abercrombie & Fitch*,

7 265 F.3d 994, 1009 (9th Cir. 2001) (citation omitted).  Here, Defendants run afoul on the second

8 and third factors because Defendants use an identical or nearly identical copy of Bungie's Destiny

9 Mark on the landing page on AimJunkies.com, where Defendants marketed and sold the Cheat

10 Software.

11       While a defendant may use some portion of a plaintiff's mark, such as "a soft drink

12 competitor would be entitled to compare its product to Coca-Cola or Coke," that competitor could

13 not use "Coca-Cola's distinctive lettering."  *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d

14 884, 895 (9th Cir. 2019) (citation omitted); *see also Toyota Motor Sales, U.S.A., Inc. v. Tabari*,

15 610 F.3d 1171, 1181 (9th Cir. 2010) (the use of the stylized Lexus mark and "Lexus L" logo was

16 more use of the mark than necessary and suggested sponsorship or endorsement by Toyota as

17 defendants "could adequately communicate their message without using the visual trappings of

18 the Lexus brand").  Defendants' own case law emphasizes this point.   Unlike in both

19 *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), and *Aviva USA Corp.*

20 *v. Vazirani*, 902 F. Supp. 2d 1246, 1265 (D. Ariz. 2012), *aff'd*, 632 F. App'x 885 (9th Cir. 2015),

21 Defendants here used an identical or nearly identical copy of Bungie's stylized Destiny Mark, and,

22 contrary to Defendants' contention, did so on **numerous** occasions, including on the

23 AimJunkies.com page for the Cheat Software and in their emails advertising the Cheat Software.

24 Exs. 20, 30 (AimJunkies.com page); Exs. 14, 15, 22-24 (AimJunkies.com emails); Ex. 10

25 (Schaefer 2022 Dep. Tr.) at 214:2-218:21; *see also* Opp'n at 5-6 (incorrectly stating that Bungie

26 complains of a "single marketing image").

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 10
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

The Court should find that Bungie is entitled to summary judgment on its trademark infringement claim.

**F.     Bungie Is Entitled to Statutory Damages, Attorneys' Fees, and a Permanent Injunction[5]**

**1.     Bungie Seeks $600,000 in Statutory Damages.**

Bungie seeks $300,000 in statutory damages for Defendants' counterfeit trademark use, which Defendants do not contest.  Opp'n at 18-21 (discussing only copyright statutory damages). Bungie also seeks $300,000 total in statutory damages for Defendants' willful infringement of its registered copyrights to *Destiny 2: Beyond Light* (Reg. Nos. TX 8-933-658 and PA 2-280-030), which Defendants erroneously argue are time barred under *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008), because "Bungie did not register the four copyrights that are at issue here until long after the supposed "infringement" commenced."  Opp'n at 18.

Defendants are wrong.  A party may elect statutory damages where the infringement occurred prior to registration of the copyrighted work as long as "such registration is made within three months after the first publication of the work."  17 U.S.C. § 412(2).  *Destiny 2: Beyond Light* was first published on November 10, 2020, replacing the previous version of *Destiny 2*.  Exs. 3-4. Defendants released an update to the Cheat Software on November 11, 2020 so that it would work with *Destiny 2: Beyond Light*.  Ex. 16.  Bungie obtained registration certificates for *Destiny 2: Beyond Light* within the first three months after it was first published, on February 9, 2021.  Ex. 3-4.  Each time Defendants developed Cheat Software to go with a new Bungie expansion, they committed separate and independent acts of infringement.  *See* Kaiser Decl. (Dkt. No. 158) ¶ 23.

In addition, the requested damages are reasonable given the willful nature of the infringement and spoliation which prevented a full accounting of Defendants' infringement and their profits.  *See* Mot. at 22-23.  Defendants' Opposition highlights the propriety of Bungie's requested statutory damages, because Defendants **once again** come up with an entirely new

---

[5] Defendants do not address, and thus concede, Bungie's request for a permanent injunction.

1   estimated revenue amount for their sales of Cheat Software, further undercutting any credibility

2   that can be attached to this or any prior estimates of sales volume. *Compare* Dkt. No. 28-5

3   (Schaefer Decl.) ¶ 8 ("overall sales of the produces were $27,748" with gross profits of $13,874),

4   *with* Dkt. No. 107 (Opp'n to Mot. for Spoliation Sanctions) at 5 ("[O]verall gross revenues

5   received from the software were approximately $45,000."), *and* Opp'n at 5 (Cheat Software sales

6   "generated no more than $65,000 in gross overall sales" with "overall profits" of "less than

7   $10,000"). In the face of such uncertainty of Defendants' true profits, and their spoliation of

8   relevant records, an award of $600,000 in statutory damages is warranted. *See Experience*

9   *Hendrix, L.L.C. v. Pitsicalis*, No. 17 Civ. 1927, 2020 WL 3564485, at *11-12 (S.D.N.Y. July 1,

10  2020) (awarding near maximum copyright statutory damages in part because of defendants'

11  discovery abuses and failure to cooperate in discovery to produce full sales records).

12          **2.      Attorneys' Fees Are Warranted**

13          Bungie also seeks its attorneys' fees and costs under both the Copyright and Lanham Acts.

14  Disregarding Bungie's request for attorneys' fees under the Lanham Act entirely, Defendants

15  erroneously argue that Bungie may not recover any attorneys' fees under the Copyright Act and is

16  instead limited to actual damages it can prove under *Derek Andrew*.

17          This is incorrect. First, the Copyright Act expressly authorizes the Court to award costs

18  and attorneys' fees to the prevailing party. 17 U.S.C. § 505. In cases like this one, where

19  Defendants' infringement is willful, attorneys' fees are generally awarded to a prevailing plaintiff

20  as a matter of course. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556

21  (9th Cir. 1989). Second, and as to Bungie's request for attorneys' fees under the Lanham Act, the

22  court in *Derek Andrew* actually awarded attorneys' fees to the plaintiff, finding the defendant's

23  infringement of plaintiff's trademarks to be willful. 528 F.3d at 702. The Court should do so here.

24  **G.     May's CFAA Claims Fail**

25          Bungie is entitled to summary judgment on these claims for two reasons: (1) May

26  consented to Bungie's access, and (2) May did not suffer $5,000 in loss in a one-year period. Over

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 12
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   the course of seven Opposition pages, May meanders between Bungie's CFAA arguments and

2   DMCA arguments, occasionally appearing to confuse the two, but only devotes a few paragraphs

3   to addressing the arguments Bungie made (*see* Opp'n Sections I.2. and I.5).  His arguments are

4   unconvincing.

5   **1.     May Does Not Dispute Any Facts Evidencing His Consent to Bungie's Access**

6          Page 13 of Bungie's Motion quotes the Privacy Policy language through which May

7   consented to Bungie's access of his computer.  Specifically, May consented to Bungie's collection

8   of "Bungie Services Use Data, including information about your use of the Bungie

9   Services . . . and other actions taken within the Bungie Services" and "Device Data, including

10  information regarding your device, such as device type, operating system type . . . IP address, and

11  device ID (such as IDFA or AAID)."  Dkt. No. 72-2 at 4.  A review of the Privacy Policy shows

12  that the Privacy Policy does actually say that Bungie collects that data to "prevent **fraudulent** use

13  of the Bungie Services" and "enforce . . . our **legal rights**," which of course includes infringement

14  of Bungie's IP.  *Id.* at 6.  And that's exactly what Bungie did.

15         May's argument is more notable for what he does not dispute rather than what little he

16  attempts to dispute.  May does not dispute that he was running *Destiny 2* (i.e., using a Bungie

17  Service) when he had the reverse engineering files open on his computer (i.e., his device) that

18  Bungie detected.  Nor does he dispute that he knew at the time that Bungie was collecting that

19  information because he changed file names to avoid Bungie's detection.  May does not dispute

20  **any** of the material facts that evidence his consent to Bungie's access of his computer.  Summary

21  judgment should be granted for Bungie on May's CFAA claims.

22  **2.     May Doubles Down on His Deficient Evidence of Loss**

23         May was not "forced" to buy new computer equipment by Bungie's alleged access.  He

24  readily admits that **none** of the new components he purchased (which amounted to an entirely new

25  gaming computer, complete with 3 monitors) were damaged or corrupted by Bungie's alleged

26  access.  *See* Mot. at 27.  His claim (asserted for the first time in the Opposition) that "he could not

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 13
(No. 2:21-cv-811-TSZ)
163357338.4

trust the existing hardware and firmware not to have viruses or other risks to the security of his system" contradicts his deposition explanation.  Opp'n at 27.  At his deposition, May testified that "the reason" he got a new device is because Bungie had identified his hardware and he had been "hardware banned."  Ex. 31 (May 2023 Dep. Tr.) at 171:17-172:1; *see also* Suppl. Rava Decl., Ex. 40 (May 2023 Dep. Tr.) at 126:6-11.  May was not concerned about viruses or security risks. Bungie caught him developing a cheat, and he needed to buy a new computer to continue his illicit enterprise.  Bungie should not be forced to foot the bill so that May can keep his illegal "job."[6]

## H.    May's DMCA Claim Fails

Bungie is entitled to summary judgment on May's DMCA claims because he has not explained how any of his files are entitled to copyright protection, nor is there any dispute of material fact that Bungie did not "circumvent" May's technological protection measures as defined by the DMCA.

### 1.    May Does Not Even Attempt to Explain Why Any of His Files Merit Copyright Protection

May identifies four copyrighted works that are the subject of his DMCA claim,[7] and as the sole basis for the fact that he owns copyrights he claims that he authored the files and that they are original.  Opp'n at 25.  That is not enough to survive summary judgment.  Defendants once again incorrectly identify who has the burden of proof on an issue.  *See* Opp'n at 25 ("If the files are not entitled to copyright protection, Bungie has had ample time and information to demonstrate that."). May, as the claimant (not Bungie), has the burden to demonstrate that the claimed files are copyrightable.  *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2013 WL 4409434, at *19 (E.D.N.Y. Aug. 2, 2013) ("As a preliminary matter, plaintiffs unfairly chastise [the defendant and summary judgment movant] for failing to take evidence of

---

[6] As to May's invented hourly rate, May's attack on Bungie's counsels' rate does not somehow legitimize that rate or his "survey."  Opp'n at 28 n.13.

[7] Bungie has never argued that a copyright registration is required for either a DMCA claim or a CFAA claim. Nor do the files accessed by a CFAA defendant even need to be copyrightable at all.  *See* Opp'n at 26 (somehow claiming that Bungie argued a registration is a pre-requisite for a CFAA claim).

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 14
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

copyrightability during discovery.  But it is a DMCA plaintiff's burden to show that the work accessed was 'protected' under the Copyright Act.") (citations omitted).  He has not met this burden by simply stating in a declaration that he owns copyrights.  Mot. at 29-30.  Unlike Bungie, which has registrations for its asserted copyrights, May does not get the benefit of the presumptions of ownership and validity.  He must prove it, and he has not.  To the extent May maintains a DMCA claim based on Bungie's access of alleged files owned by Phoenix Digital on his computer, these claims suffer from the same deficiency.

### 2.     Bungie Did Not Circumvent Technological Measures

May does not seriously dispute any of the facts showing that Bungie did not circumvent May's firewalls or passwords.  He does not dispute that he downloaded *Destiny 2* onto his computer, that he granted *Destiny 2* "private access" through his firewalls, or that such access allowed Bungie to identify any program that connected to *Destiny 2* while running.  Ex. 31 (May 2023 Dep. Tr.) at 141:7-9; 132:15-21, 134:7-21.  Nor does May dispute any of Bungie's evidence that it never had to "circumvent" May's passwords to access process in memory while *Destiny 2* was running.  *Id.* at 147:22-148:4, 150:20-151:5.  He nominally "disputes" that he knew that the permissions he granted *Destiny 2* meant Bungie could identify malicious programs operating on his computer while *Destiny 2* was running.  But at his deposition he admitted that he understood the scope of the permissions he granted, and his Opposition argument cannot form a real dispute of material fact.  *Id.* at 135:2-136:1.

May also fails to cite a single case refuting Bungie's argument, supported by voluminous case law, that "deceit and subterfuge," are not "circumvention" under the DMCA.  *See* Mot. at 31.

### I.     Phoenix Digital's Breach of Contract Claim Fails

### 1.     Phoenix Digital Does Not Contest Their Terms' Illegality or Violation of Public Policy

Phoenix Digital fails to respond to the main thrust of Bungie's argument, which is that **AimJunkies.com's** Terms of Service are void as illegal, because the Cheat Software violates the

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 15
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

DMCA, and against public policy, because the Terms are calculated to frustrate a rights-holder's ability to investigate infringing conduct.  Mot. at 32-33.  Instead, Phoenix Digital seems to be under the mistaken impression that Bungie argues that **all** terms of service are illegal and void against public policy.  Opp'n at 28.  Phoenix Digital further fails to cite to **any** case law on this issue, let alone address Bungie's.  *Id.*  On the one hand, Phoenix Digital claims that Bungie would have violated its Terms of Service if Bungie conducted what Phoenix Digital characterizes as a "necessary pre-filing investigation" to confirm infringement.  *Id.* at 31.  But on the other, if Bungie complied with Phoenix Digital's Terms of Service and did not do the "necessary" pre-filing investigation of the cheat loader and Cheat Software, then (Defendants argue) Bungie never could have filed suit.  *Id.*  Phoenix Digital essentially admits that the purpose of the AimJunkies.com Terms of Service is to chill "necessary pre-filing investigations," and are void.  *Id.*

### 2. Phoenix Digital Does Not Create a Dispute of Material Fact Regarding Acceptance

To survive summary judgment, Phoenix Digital needed to "point to . . . evidence corroborating [its] self-serving declaration that the alleged agreement existed, or indicating any circumstances under which it came into being."  *Cent. Flyway Air, Inc. v. Grey Ghosts, Int'l, LLC*, No. 20-cv-05506, 2022 WL 4534402, at *7 (W.D. Wash. Sept. 28, 2022).  It failed to do so.  At best, Defendants' "evidence" indicates that some time in December 2020 there may have been a checkbox on a form that mentions the words "Terms of Service," but that the Bungie employee who purchased the Cheat Software has no memory of seeing the Terms of Service.  *See* Dkt. No. 176-6 (Mann. Decl. Ex. I); Dkt. No. 176-5 (Mann. Decl. Ex. H).  But Phoenix Digital offers no evidence that the Terms of Service were presented to a purchaser of the Cheat Software, how a user might access them, or if a hyperlink to the Terms of Service was even present on that page.  Defendants must do more.  *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("a web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text," including "use of a contrasting

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 16
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    font color" and "the use of all capital letters."). Most importantly, Phoenix Digital does not contest

2    that it has **no records** of Bungie ever accepting the Terms of Service. *See* Opp'n at 28-30; *see* Ex.

3    27 (Phoenix Digital 2023 Dep. Tr.) at 43:6-21. Its claim should fail on this basis alone.

4    ###    3.    Bungie Did Not Breach the Terms of Service

5    Phoenix Digital's "evidence" of Bungie's breach of the Terms of Service relies on a faulty

6    assumption and a misunderstanding of applicable law. First, Kraemer erroneously assumes that

7    the documents that he relied on to conclude that Bungie breached the Terms of Service by "reverse

8    engineer[ing]" Phoenix Digital software were created by Bungie. *See* Dkt. No. 179 (Mann. Decl.,

9    Ex. C) at 2 ¶ 1. They weren't, and Phoenix Digital has failed to proffer facts showing that they

10    were. Suppl. Kaiser Decl. ¶ 4; Suppl. Rava Decl. Ex. 41 (Kraemer Dep. Tr.) at 167:12-20. Phoenix

11    Digital has also failed to offer any facts (as opposed to faulty opinion) that the third party that

12    created the documents was an agent of Bungie, or that the documents themselves even evidence a

13    breach of the Terms of Service (they don't). *See* Suppl. Kaiser Decl. ¶ 4. Second, to the extent

14    Phoenix Digital's theory that Bungie breached the Terms of Service relies on Bungie's expert's

15    analysis, such conduct is immunized by the litigation privilege because Mr. Guris conducted that

16    analysis for the purpose of testifying in this case. *See Bruce v. Byrne-Stevens & Assocs. Eng'rs,*

17    *Inc.*, 776 P.2d 666, 670 (Wash. 1989) (applying litigation privilege to expert witnesses).

18    ###    4.    Phoenix Digital Did Not Suffer Damages as a Matter of Law

19    Phoenix Digital fails to substantively respond to any of Bungie's legal arguments that it

20    did not suffer cognizable damages. It fails to rebut Bungie's evidence and case law that Bungie's

21    alleged breach of the Terms of Service was not the cause or proximate cause of any "damage"

22    suffered by Phoenix Digital. Mot. at 35-36. Nor does Phoenix Digital rebut that Bungie is

23    immunized from liability for any of the supposed damages claimed by Phoenix Digital under

24    Washington's litigation privilege. *Id.* at 36. Finally, it is inaccurate to say that Bungie challenges

25    only the credibility of Phoenix Digital's evidence of damages (Opp'n at 32); rather, Bungie

26    challenges its admissibility because Schaefer is not qualified to provide an opinion as to the

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 17
(No. 2:21-cv-811-TSZ)

163357338.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    supposed lost value in Phoenix Digital.  Mot. at 36.  These oversights are fatal to the breach of

2    contract claim too.

3                                    **III.    CONCLUSION**

4         For the foregoing reason, Bungie respectfully requests that the Court grant its motion for

5    summary judgment and Bungie's requested damages, fees, costs, and permanent injunction.

6

7         I certify that this memorandum contains 6,269 words, in compliance with the Local Civil

8    Rules and this Court's May 4, 2023 Order.

9

10   Dated: August 11, 2023                    By: s/ *William C. Rava*
                                               _____

11                                             William C. Rava, Bar No. 29948
                                               Christian W. Marcelo, Bar No. 51193

12                                             Jacob P. Dini, Bar No. 54115
                                               **Perkins Coie LLP**

13                                             1201 Third Avenue, Suite 4900
                                               Seattle, Washington 98101-3099

14                                             Telephone: +1.206.359.8000
                                               Facsimile: +1.206.359.9000

15                                             WRava@perkinscoie.com
                                               CMarcelo@perkinscoie.com

16                                             JDini@perkinscoie.com

17

18

19

20

21

22

23

24

25

26

BUNGIE'S REPLY ISO
MOT. FOR SUMMARY JUDGMENT – 18
(No. 2:21-cv-811-TSZ)

163357338.4