THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BUNGIE, INC., | No. 2:21-cv-00811 |
| Plaintiff, | **PLAINTIFF BUNGIE, INC.'S OMNIBUS MOTION *IN LIMINE*** |
| v. | NOTE ON MOTION CALENDAR November 10, 2023 |
| AIMJUNKIES.COM; PHOENIX DIGITAL GROUP, LLC; DAVID SCHAEFER; JORDAN GREEN; JEFFREY CONWAY; and JAMES MAY, | ORAL ARGUMENT REQUESTED |
| Defendants. | REDACTED VERSION PUBLICLY FILED |

BUNGIE'S OMNIBUS
MOTION *IN LIMINE*
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164187217.8

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

   A.   Motion *In Limine* No. 1: The Jury Should Be Instructed as to Certain
        Findings in Arbitration Award.................................................................. 2

        1.   *Destiny 2* is Bungie's copyrighted work........................................ 3

        2.   May developed the Cheat Software sold on AimJunkies.com while
             working with and for the benefit of the other Defendants. ............... 4

        3.   To operate, the Cheat Software necessarily creates (a)
             unauthorized copies of the *Destiny 2* code and (b) unauthorized
             derivative works............................................................................... 5

        4.   The Cheat Software and loader were designed to circumvent
             protections in place in *Destiny 2*................................................... 7

        5.   Defendants' violations of the DMCA anticircumvention statute
             were willful. ...................................................................................... 7

        6.   Defendants sold at least 1,316 copies of the Cheat Software. ........... 8

        7.   May breached Bungie's Limited Software License Agreement.......... 8

        8.   The Phoenix Digital Defendants spoliated evidence. ....................... 8

   B.   Motion *In Limine* No. 2: Exclusion of Evidence ................................... 10

        1.   Defendants should be precluded from calling Don McGowan as a
             witness............................................................................................ 10

        2.   Defendants should be precluded from introducing evidence or
             testimony regarding Bungie's alleged breaches of Phoenix
             Digital's Terms of Service.............................................................. 11

        3.   Defendants should be precluded from introducing evidence or
             testimony regarding Scott K. Kraemer, his opinions, or his expert
             report............................................................................................... 11

        4.   Defendants should be precluded from testifying regarding how the
             Cheat Software or loader operate on a programming level. ............ 13

   C.   Motion *In Limine* No. 9: John Doe's Identifying Information Should
        Remain Highly Confidential through Trial............................................. 15

II.  CONCLUSION ................................................................................................ 18

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – i
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
5
*Abelove v. Seminole County School Bd.*,
  No. 6:05-cv-975-Orl-31DAB, 2006 WL 2927560 (M.D. Fla. Oct., 12, 2006) ......................12

6
*Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*,
  No. 3:09-cv-255-TMB, 2012 WL 12537418 (D. Alaska May 7, 2012)...........................16, 17

7
8
*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) .........................5

9
10
*Chien Van Bui v. City and County of San Francisco*,
  No. 11-cv-04189-LB, 2018 WL 4957098 (N.D. Cal. Mar. 18, 2018)....................................12

11
*Duffy v. Father Flanagan's Boys' Home*,
  No. 8:03CV31, 2006 WL 208832 (D. Neb. Jan. 26, 2006) .....................................................12

12
13
*Everyday Discount, Inc. v. State Farm Gen Ins. Co.*,
  No. CV 18-902-GW, 2018 WL 11346535 (C.D. Cal. Oct. 30, 2018)...............................16, 17

14
15
*Experience Hendrix, L.L.C. v. Pitsicalis*,
  No. 17 Civ. 1927, 2020 WL 3564485 (S.D.N.Y. July 1, 2020) ...............................................9

16
*FMC Techs., Inc. v. Edwards*,
  No. C05-946C, 2007 WL 836709 (W.D. Wash. Mar. 15, 2007)............................................10

17
18
*Hankins v. US ROF II Legal Title Tr. 2015-1 by US Bank Nat'l Ass'n*, No. C18-
  5896RBL, 2019 WL 1556174, at *2 (W.D. Wash. Apr. 10, 2019)...........................................2

19
20
*In re Bard IVC Filters Prod. Liab. Litig.*,
  No. CV-16-00474-PHX-DGC, 2018 WL 11445967 (D. Ariz. Mar. 9, 2018)........................13

21
*Knickerbocker v. Corinthian Colleges*,
  298 F.R.D. 670 (W.D. Wash. 2014) .........................................................................................9

22
23
*Leaschauer v. Huerta*,
  667 F. App'x 253 (9th Cir. 2016) .............................................................................................3

24
25
*Littlejohn v. United States*,
  321 F.3d 915 (9th Cir. 2003) ....................................................................................................3

26
*Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*,
  528 F. Supp. 2d 1106 (W.D. Wash. 2007).................................................................................7

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – ii
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Mass. Mut. Life Ins. Co. v. Cerf*,
    177 F.R.D. 472 (N.D. Cal. 1998) ...........................................................................10

*Montanye v. Wissachickon School Dist.*,
    No. 02-8537, 2005 WL 6015142 (E.D. Pa. Sept. 6, 2005) .......................................12

*Mustang Mktg., Inc. v. Chevron Prod. Co.*,
    No. SACV02485DOCMLGX, 2006 WL 5105559 (C.D. Cal. Feb. 28, 2006) .................10

*NTCH-WA, Inc. v. ZTE Corp.*,
    921 F.3d 1175 (9th. Cir. 2019) ................................................................................2

*RealNetworks, Inc. v. Streambox, Inc.*,
    No. 2:99CV02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ..............................5

*Sabbaghi v. Napolitano*,
    No. C08-1641Z, 2009 WL 4927902 (W.D. Wash. Dec. 11, 2009) (Zilly, J.) ..................3

*Sargent v. City of Seattle*,
    No. C12-1232 TSZ, 2013 WL 1898213 (W.D. Wash. May 7, 2013) (Zilly, J.)................16

*Spivak v. Alphabet Inc.*,
    No. C20-1480, 2021 WL 535211 (W.D. Wash. Feb. 12, 2021) .....................................6

*United States v. Elcom Ltd.*,
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) .....................................................................6

STATUTES

9 U.S.C. § 13 ...........................................................................................................................2

15 U.S.C. § 1117(a) ..............................................................................................................8, 9

17 U.S.C. § 504(b) ................................................................................................................8, 9

17 U.S.C. 1201 .........................................................................................................................1

17 U.S.C. § 1201(a) .................................................................................................................2

17 U.S.C. §§ 1201(a)–(b) .........................................................................................................2

17 U.S.C. § 1201(a)(1)(A) .......................................................................................................3

17 U.S.C. § 1201(a)(2)(A) .......................................................................................................5

17 U.S.C. 1201(b) .............................................................................................................5, 6, 7

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – iii
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

17 U.S.C. § 1201(b)(1)(A)............................................................................5

**RULES**

Fed. R. Civ. P. 26(a)(1)............................................................................10

Fed. R. Civ. P. 37(c)(1)............................................................................10

Fed. R. Evid. 602............................................................................15

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – iv
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# I.    INTRODUCTION

This case has already been substantially narrowed and focused, as a majority of Plaintiff Bungie, Inc.'s ("Bungie" or "Plaintiff") claims were decided in Bungie's favor at arbitration and all but one of Defendants' counterclaims were dismissed on summary judgment.  Bungie has three claims left: copyright infringement (direct and secondary), trademark infringement, and false designation of origin.  And Defendant James May has one counterclaim under the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 1201).  To further narrow the issues for trial, Bungie respectfully moves *in limine* for the following specific relief:

*First,* Bungie requests that certain findings from the arbitration award—which was confirmed and adopted by this Court—be given preclusive effect and the jury be instructed as to their truth.  This includes, among many others, Judge Cox's holdings that:

- May—acting in concert and for the benefit of Phoenix Digital and Schaefer, Green and Conway (collectively, the "Phoenix Digital Defendants")—reverse engineered *Destiny 2* in order to help develop the Cheat Software that Phoenix Digital sold on its website;

- The Cheat Software that Defendants developed and sold necessarily creates unauthorized copies of the *Destiny 2* code and unauthorized derivative works in order to operate; and

- The Phoenix Digital Defendants spoliated evidence in bad faith including many of the financial records concerning sales of the Cheat Software and records concerning the Cheat Software on the AimJunkies.com website.

*Second,* Bungie seeks an order precluding Defendants from introducing certain evidence, as follows:  (1) calling Bungie's General Counsel as a witness; (2) testimony or evidence regarding Defendants' withdrawn expert, Scott Kraemer; (3) testimony or evidence regarding Defendants' claim—now dismissed with prejudice—that Bungie breached Phoenix Digital's Terms of Service; and (4) testimony from Defendants regarding how the Cheat Software and loader operate.

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 1
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Lastly*, Bungie seeks an order maintaining the Highly Confidential designation of the identity of the John Doe witness.  Disclosure of their name to Defendants is still likely to result in annoyance, embarrassment, and/or oppression, and their identifying information is even less relevant now because the Court dismissed Phoenix Digital's contract counterclaim.

A.   **Motion *In Limine* No. 1: The Jury Should Be Instructed as to Certain Findings in Arbitration Award.**

Bungie asserted nine claims against Defendants for their development and sale of cheat software (the "Cheat Software") for *Destiny 2* and its expansions (collectively "*Destiny 2*").  Six of these claims were referred to arbitration:  (1) circumvention of technological measures under the DMCA, 17 U.S.C. § 1201(a); (2) trafficking in circumvention technology under 17 U.S.C. §§ 1201(a)–(b); (3) breach of contract; (4) tortious interference; (5) violation of the Washington Consumer Protection Act; and (6) unjust enrichment (the "Arbitration Claims").  Dkt. Nos. 1, 34.

Following an evidentiary hearing on the merits, a JAMS-appointed arbitrator—Judge Ronald Cox (Ret.)—found Defendants liable for the Arbitration Claims; awarded Bungie a total monetary award of $4,396,222; and entered a permanent injunction against Defendants.  Dkt. No. 89-1 ("Final Award").  This Court confirmed and adopted the Final Award as its own, entering partial judgment against Defendants on June 13, 2023.  Dkt. Nos. 140, 141.

In the Final Award, Judge Cox made numerous findings relevant to establishing Defendants' liability on Bungie's remaining federal claims for copyright infringement, trademark infringement, and false designation of origin.  These findings are binding in the remainder of these proceedings.  *NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th. Cir. 2019) ("A federal-court order confirming an arbitration award has "the same force and effect" as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect.") (collecting cases).

"Collateral estoppel, or issue preclusion, bars the re-litigation of issues actually adjudicated in previous litigation between the same parties." *Hankins v. US ROF II Legal Title Tr. 2015-1 by US Bank Nat'l Ass'n*, No. C18-5896RBL, 2019 WL 1556174, at *2 (W.D. Wash. Apr. 10, 2019)

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 2
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    (citing *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. Cal. 1992)).  Indeed, this Court

2    has already held that "[a]rbitration proceedings are entitled to an issue-preclusive effect."  Dkt.

3    No. 201 (citing *Spivak v. Alphabet Inc.*, No. C20-1480, 2021 WL 535211, at *7 (W.D. Wash. Feb.

4    12, 2021)).  This issue-preclusive effect applies where "(1) the issue at stake [was] identical to the

5    one alleged in the prior litigation; (2) the issue [was] actually litigated in the prior litigation; and

6    (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the

7    judgment in the earlier action."  *Id.*  For a claim to be "actually litigated" means that there was "a

8    full and fair opportunity to litigate the merits of an issue."  *Littlejohn v. United States*, 321 F.3d

9    915, 923 (9th Cir. 2003); *see also Sabbaghi v. Napolitano*, No. C08-1641Z, 2009 WL 4927902, at

10   *4 (W.D. Wash. Dec. 11, 2009) (Zilly, J.) ("A party does not, however, need to actually provide

11   testimony during the prior proceeding…Rather, it is sufficient that a party had a full and fair

12   opportunity to litigate the issue.") (citation omitted).

13       Although Defendants have appealed this Court's order confirming the Final Award, an

14   undecided appeal does not prevent a judgment from having preclusive effect.  *Leaschauer v.*

15   *Huerta*, 667 F. App'x 253, 254 (9th Cir. 2016) ("[T]he preclusive effects of a lower court judgment

16   cannot be suspended simply by taking an appeal that remains undecided.") (quoting *Robi v. Five*

17   *Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1998)).

18       The Court should find that each of the following findings are entitled to an issue-preclusive

19   effect and the jury should be instructed as to their truth.

20       **1.    *Destiny 2* is Bungie's copyrighted work.**

21       The parties actually litigated the issue of Bungie's ownership of copyrights in *Destiny 2*,

22   an essential element of Bungie's DMCA anticircumvention claims.  Final Award at 15.  Judge Cox

23   conclusively adjudicated that Bungie owns copyrights in *Destiny 2*.  *Id*. at 11.  The determination

24   was necessary to finding Defendants liable under the DMCA.  *See* Final Award at 11; 17 U.S.C.

25   § 1201(a)(1)(A) ("No person shall circumvent a technological measure that effectively controls

26   access to **a work protected under this title**.") (emphasis added).  The copyrights litigated in the

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 3
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164187217.8

1   arbitration continue to be litigated here, and Bungie's ownership is entitled to an issue-preclusive

2   effect.  Dkt. No. 34 ("Amend. Compl.") ¶ 37, Exs. 1–4.

### 2. May developed the Cheat Software sold on AimJunkies.com while working with and for the benefit of the other Defendants.

Judge Cox held that "May reverse engineered Destiny 2 in order to help develop a cheat for Destiny 2 that Phoenix [Digital] sold on its website."  Final Award at 12.  Additionally, he found that "May's actions were also done in concert with and for the benefit of [the other Defendants]."  *Id.*  Both findings are entitled to preclusive effect.

*First,* these issues are identical to issues relevant to Bungie's remaining federal claims. The exact same question—who developed the Cheat Software—is central to both the DMCA and related claims previously arbitrated and to the copyright infringement claims now.  *See* Amended Compl. ¶¶ 2, 49 (alleging Defendants developed Cheat Software) *c.f.,* Dkt. No. 72 (Defendants' Answer) ¶¶ 2, 49 (denying); Final Award at 10-12.  Likewise, the question of whether May was acting as an agent for the Phoenix Digital Defendants is relevant to the Phoenix Digital Defendants' liability for his actions in developing the Cheat Software.  Final Award at 12.

*Second and third,* these issues were litigated in the arbitration and found in Bungie's favor. Whether Defendants reverse engineered *Destiny 2* and developed the Cheat Software was critical to Bungie's success on its DMCA anticircumvention claims against the Phoenix Digital Defendants.  Ultimately, Judge Cox held that May circumvented Bungie's technological measures that protected *Destiny 2* when he reverse engineered *Destiny 2* to create the Cheat Software.  *Id.* Judge Cox further held that May did so "in concert with and for the benefit of" the Phoenix Digital Defendants, and so they were vicariously and contributorily liable for May's circumvention because "May reverse engineered *Destiny 2* in order to help develop a cheat for *Destiny 2* that Phoenix sold on its website."  *Id.* at 12 n.5.  He further noted that Defendants had actually argued that "May is not the agent of Phoenix [Digital]."  *Id.* at 15.  Judge Cox considered and rejected their arguments, at least in part because May "used proprietary signature authority of Phoenix

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 4
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   [Digital] to attain his objectives." *Id.* at 15 ("Respondents also argued that May is not the agent

2   of Phoenix [Digital]…the evidence shows otherwise.").

3       **3.**    **To operate, the Cheat Software necessarily creates (a) unauthorized copies of**
    **the *Destiny 2* code and (b) unauthorized derivative works.**

4           Judge Cox's finding that "[t]o operate, the cheats necessarily create unauthorized copies of

5   the *Destiny 2* code and unauthorized derivative works" should also be given preclusive effect.

6   Final Award at 13.

7           The DMCA anticircumvention statute prohibits trafficking in any technology that is

8   primarily designed or has limited commercially significant purposes other than to circumvent a

9   technological measure that protects a **right** of a copyright owner.   17 U.S.C. § 1201(b); Final

10  Award at 13.  Previously, Defendants were found liable for violating this statute.  Final Award at

11  13-16.   Critically, a violation of 17 U.S.C. § 1201(b) requires a showing that a technology

12  circumvents a measure protecting a **right** of a copyright owner (such as creating copies or

13  derivative works), rather than just access to a copyrighted work.   *Compare* 17 U.S.C.

14  § 1201(b)(1)(A) ("circumventing protection…that effectively protects **a right of a copyright**

15  **owner**…") *with* 17 U.S.C. § 1201(a)(2)(A) ("circumventing a technological measure that

16  effectively **controls access to a work**...") (emphasis added).  This is significant because § 1201(b)

17  requires the court to analyze whether the technology at issue—here, the Cheat Software—

18  circumvented measures that protected against, for instance, copying the *Destiny 2* code or creating

19  derivative works.  *See, e.g., Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 941 (N.D. Cal.

20  2009) (finding violation of 17 U.S.C. § 1201(b) where using software was "an act of

21  circumvention" and using the software "results in an unauthorized copy to RAM"), *aff'd*, 658 F.3d

22  1150 (9th Cir. 2011); *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV02070, 2000 WL 127311,

23  at *7–8 (W.D. Wash. Jan. 18, 2000) (trafficking of technology violated 17 U.S.C. § 1201(b) where

24  it circumvented a technological measure and "permit[ted] consumers to obtain and redistribute

25  perfect digital copies of audio and video files that copyright owners have made clear they do not

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 5
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1     want copied"); *see also United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1124 (N.D. Cal. 2002)

2     ("Putting Section 1201(b)(2)(B) together with Section 106, a technological measure 'effectively

3     protects the right of a copyright owner' if, in the ordinary course of its operation, it prevents,

4     restricts or otherwise limits the exercise of any of the rights set forth in Section 106, such as the

5     rights to reproduce the work, prepare derivative works, distribute copies of the work, perform the

6     work publicly or by digital audio transmission, or display the work publicly.").

7         Judge Cox held that Defendants' Cheat Software circumvented Bungie's technological

8     measures protecting against copying and creation of derivative works of *Destiny 2*.  Final Award

9     at 13.  Specifically, he found that (1) Bungie employed technological protective measures and (2)

10    Defendants' Cheat Software and loader copied the code and created derivative works of *Destiny 2*

11    by circumventing those measures.  *Id.* at 6 ("Bungie maintains…robust measures to protect its

12    game"); *id.* at 13-14 ("[t]o operate, the cheats necessarily create unauthorized copies of the *Destiny*

13    *2* code and unauthorized derivative works").  This issue was also litigated by Defendants and their

14    arguments were rejected.  *Id.* at 15 ("Respondents deny liability under the act [17 U.S.C. §

15    1201(b)].  Their arguments are not convincing.").

16        An identical issue remains relevant now.  Here, Bungie argues that Defendants have

17    directly and secondarily infringed Bungie's copyrights in part because the Cheat Software and/or

18    loader copies *Destiny 2* code and creates unauthorized derivative works of *Destiny 2* when in

19    operation.  Amend. Compl. ¶¶ 80-91, 105-107.  Judge Cox held that the Cheat Software and loader

20    circumvent Bungie's protections that are designed to protect against **this exact infringement**, and

21    he also held that the Cheat Software and loader actually "create unauthorized copies of the *Destiny*

22    *2* code and unauthorized derivative works."  Final Award at 13.  These findings should be given

23    preclusive effect and the jury should be instructed as to the truth of the finding.  *Spivak*, 2021 WL

24    535211, at *7.

25

26

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 6
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**4.     The Cheat Software and loader were designed to circumvent protections in place in *Destiny 2*.**

Judge Cox also held that Defendants' Cheat Software "was designed to circumvent the protections in place in Destiny 2" and Defendants' cheat loader was "designed to circumvent protections by injecting code into the Destiny 2 program without detection" in violation of 17 U.S.C. § 1201(b).  Final Award at 14.  This finding, too, should be given preclusive effect.

Once again, this issue was clearly litigated during the arbitration, and was an essential element of Bungie's DMCA trafficking claims.  Final Award at 13 (holding that the third elements of 17 U.S.C. § 1201(b) was satisfied by this evidence).  This holding is also relevant to Bungie's copyright claims in this case.  One element of Bungie's copyright infringement claims is that Defendants accessed Bungie's copyrighted work, *Destiny 2*.  *See Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1122 (W.D. Wash. 2007).  By circumventing Bungie's protective measures (and then copying the code and creating derivative works), the Cheat Software and loader must access *Destiny 2*, satisfying one of the elements of Bungie's claim.  This finding should be given preclusive effect.

**5.     Defendants' violations of the DMCA anticircumvention statute were willful.**

In determining Bungie's entitlement to statutory damages for Defendants' violation of the DMCA antitrafficking and anticircumvention claims in connection with their development and sale of the Cheat Software, Judge Cox found that Defendants' conduct was willful.  *See id.* at 14 ("Given respondents' egregious and willful conduct, including their ongoing concealment of sales…").  This issue was adjudicated by Judge Cox; it was critical to Judge Cox's determination of statutory damages; and Defendants were provided an opportunity to argue the merits of this issue.  *Id.* 14-16.

This issue is also relevant to the remaining federal proceedings:  that Defendants willfully circumvented technological measures employed by Bungie to **protect its copyrighted work** is

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 7
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  relevant to whether Defendants willfully infringed that same work.  Accordingly, Judge Cox's

2  finding of willfulness is entitled to issue preclusive effect.

3        **6.**     **Defendants sold at least 1,316 copies of the Cheat Software.**

4        In determining Bungie's entitlement to statutory damages on its DMCA claims, Judge Cox

5  found that Defendants sold **at least** 1,316 copies of the Cheat Software.  *Id.* at 14.

6        This issue was conclusively adjudicated by Judge Cox (*id.*), and Defendants were provided

7  an opportunity to argue the merits of this issue.  *Id.* ("Respondents deny liability under the act.

8  Their arguments are not convincing.").  This issue remains relevant, as Bungie is entitled to recover

9  Defendants' profits attributable to the sale of the Cheat Software, which profits are related to the

10  number of Cheat Software copies sold.  *See* 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a).  This finding,

11  too, should be given preclusive effect.

12        **7.**     **May breached Bungie's Limited Software License Agreement.**

13        In connection with Bungie's claims for breach of contract regarding its Limited Software

14  License Agreement ("LSLA"), Judge Cox held that May, acting in concert with and for the benefit

15  of the remaining Defendants, "breached the LSLA multiple times by his reverse engineering of

16  *Destiny 2* an express condition of the license."  Final Award at 16-17.

17        The question of breach was fully litigated and an element of Bungie's breach of contract

18  claim.  *Id.*  It is also relevant for the remainder of the federal proceeding because it shows that

19  Defendants' reverse engineering of *Destiny 2* was willful and that their subsequent use of *Destiny*

20  *2* after the LSLA breach was unlicensed and therefore infringed Bungie's copyrights in *Destiny 2*.

21  *See* Dkt. No. 72-1 (LSLA) at 2 ("Any use of the Program in violation of the License Limitations

22  will result in an immediate termination of your license, and continued use of the Program will be

23  an infringement of Bungie's copyrights in and to the Program.").

24        **8.**     **The Phoenix Digital Defendants spoliated evidence.**

25        Judge Cox found that the Phoenix Digital Defendants "engaged in spoliation by their

26  actions after receipt of the November 4, 2020, cease and desist letter from Bungie."  *Id.*

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 8
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   Specifically, Judge Cox found that the Phoenix Digital Defendants "lied in response to [Bungie's]

2   letter, failed to preserve many of the financial records concerning sales of the cheats, and either

3   deleted records concerning the Aimjunkies website or failed to stop the automatic deletion of those

4   records." *Id.* at 20; *see also id.* at 9 ("Phoenix did not preserve any documents relating to the

5   website or *Destiny 2* cheats when it sold the [Aimjunkies.com] site"). Judge Cox further found

6   that "[n]one of this was done innocently." *Id.*[1]

7       This issue is also relevant in the remainder of these proceedings. Financial records

8   concerning the sales of the Cheat Software are directly relevant to Bungie's damages and recovery

9   of Defendants' profits. 17 U.S.C. § 504(b); 15 U.S.C. § 1117(a); *see also Experience Hendrix,*

10  *L.L.C. v. Pitsicalis*, No. 17 Civ. 1927, 2020 WL 3564485, at *11-12 (S.D.N.Y. July 1, 2020)

11  (awarding near maximum copyright statutory damages in part because of defendants' discovery

12  abuses and failure to cooperate in discovery to produce full sales records). Because of Defendants'

13  spoliation, however, Bungie will never know the extent of Defendants' sales of the Cheat Software,

14  and an instruction to the jury of an adverse inference is appropriate regarding those sales. "In the

15  Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the

16  merits of the case, and further, that such evidence was adverse to the party that destroyed it."

17  *Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 677 (W.D. Wash. 2014). Defendants'

18  deletion of records regarding the Aimjunkies website and the Cheat Software—including access

19  to the Cheat Software, records relating to forum messages for the Cheat Software, the cheat

20  software loader, and any documents relating to the loader—require an adverse inference to remedy

21  the harm of that spoliation. *See* Dkt. No. 101 ("Marcelo Decl."), Ex. F (October 31, 2022 Schaefer

22  30(b)(6) Dep. Tr.) at 104:6-106:4; *see also* Ex. G (Oct. 31, 2022 email from P. Mann to JAMS)

23  ("the loader software used during the relevant period, namely November 2019 to January 2021,

24

25

26      [1] These same issues, and other instances of spoliation, were raised in Bungie's motion for discovery sanctions. Dkt. No. 99. The Court deferred ruling on the spoliation aspect of the motion. Dkt. No. 142.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   was not preserved").  Judge Cox's findings of spoliation, as adopted by this Court, are thus entitled
2   to issue preclusion here.

3   **B.     Motion *In Limine* No. 2: Exclusion of Evidence**

4           Bungie moves to exclude the following categories of evidence, witnesses, and/or
5   testimony.

6           **1.     Defendants should be precluded from calling Don McGowan as a witness.**

7           For the first time in their Pretrial Statement, Defendants identify Bungie's General
8   Counsel, Don McGowan, as a fact witness.  As an initial matter, Defendants should be precluded
9   from calling McGowan as a witness because Defendants never identified McGowan in their initial
10  or amended disclosures.  *See* Fed. R. Civ. P. Rule 26(a)(1); Rava Decl. ¶ 2.  As a result, Defendants
11  are not allowed to call him at trial, unless the failure was substantially justified or is harmless.  Fed.
12  R. Civ. P. 37(c)(1).  Defendants' failure to make this disclosure until 5 months after the close of
13  discovery is reason enough to prevent Defendants from calling him.

14          Setting that threshold issue aside, there is no substantive reason to call McGowan as a
15  witness.  To the contrary, "[t]here is a general presumption that lawyers should not be called to
16  testify in cases where their client is a party because doing so compromises the standards of the
17  legal profession."  *Mustang Mktg., Inc. v. Chevron Prod. Co.*, No. SACV02485DOCMLGX, 2006
18  WL 5105559, at *3 (C.D. Cal. Feb. 28, 2006); *see also Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D.
19  472, 479 (N.D. Cal. 1998).  Courts in this District have held that a party's counsel should be
20  allowed to testify only where the party seeking the testimony demonstrates that "(1) no other means
21  exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3)
22  the information is crucial to the case."  *FMC Techs., Inc. v. Edwards*, No. C05-946C, 2007 WL
23  836709, at *3 (W.D. Wash. Mar. 15, 2007) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323,
24  1327 (8th Cir. 1986)).

25          The testimony Defendants purportedly seek from McGowan do not meet any of these
26  elements.  Defendants concede that the only testimony they seek from McGowan is in regard to

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 10
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

"public statements he has made on behalf of Bungie concerning Bungie's desire and efforts to combat 'cheating' in Destiny 2." Rava Decl., Ex. 1 p. 6. The information is not relevant, let alone crucial to any claims. Indeed, the only context in which Defendants have raised these purported statements is in connection with their claimed damages from Phoenix Digital's **now-dismissed** breach of contract counterclaim. Dkt. No. 72 (Amend. Counterclaims) ¶ 75. McGowan's public statements on Bungie's efforts to combat cheating are wholly irrelevant to the issues actually remaining in this case. For these reasons, Defendants should be precluded from calling McGowan as a witness.

**2.      Defendants should be precluded from introducing evidence or testimony regarding Bungie's alleged breaches of Phoenix Digital's Terms of Service.**

The Court dismissed Phoenix Digital's breach of contract counterclaim with prejudice. Dkt. No. 201 at 11-12. Apparently undeterred, Defendants intend to assert an affirmative defense that Bungie's claims are barred by the doctrine of unclean hands "in that they are based on information illegally and unlawfully obtained by Bungie, Inc., through breach of Terms of Service of Defendant Phoenix Digital Group LLC." Rava Decl., Ex. 1 p. 3. This affirmative defense conflicts with the Court's ruling that Phoenix Digital's Terms of Services "are void as illegal and unenforceable" and any evidence or testimony presented by Defendants regarding the existence of those Terms of Service or Bungie's alleged breach of them should be precluded. Dkt. No. 201 at 11-12. To the extent any such evidence is allowed or introduced, the jury should be instructed that the Terms of Service are void as illegal and unenforceable because they apply to the use of illegal goods.

**3.      Defendants should be precluded from introducing evidence or testimony regarding Scott K. Kraemer, his opinions, or his expert report.**

Defendants should be precluded from relying on or referencing any testimony proffered by its withdrawn expert, Scott K. Kraemer.

Defendants sought permission from the Court to replace Kraemer months before trial, claiming that Kraemer wanted "nothing further to do with this matter" and his withdrawal was

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 11
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    "due to circumstances outside [Defendants'] control[.]"  Dkt. No. 148 at 4, 5.  Bungie thus stopped

2    its discovery efforts into Kraemer.  *See* Dkt. No. 152 (Bungie's Opp. to Defs' Mot. to Substitute

3    Expert Witness) at 3-4.  The Court permitted Defendants to substitute Brad LaPorte for Kraemer

4    on the express condition that LaPorte's opinions and expert report were to be "limited to those

5    expressed in Kraemer's June 12, 2023 Expert Report and June 23, 2023 deposition testimony."

6    Dkt. No. 180.  Indeed, "[t]he purpose of allowing substitution of an expert is to put the movant in

7    the same position it would have been in but for the need to change experts; it is not an opportunity

8    to designate a better expert."  *Chien Van Bui v. City and County of San Francisco*, No. 11-cv-

9    04189-LB, 2018 WL 4957098, at *4 (N.D. Cal. Mar. 18, 2018) (quoting *In re Northrup Grumman*

10   *Corp. ERISA Litig.*, No. CV 06-06213-AB (JCx), 2016 WL 6826171, at *4 (C.D. Cal. Apr. 7,

11   2016)).  As Bungie has already explained in its pending Motion to Strike (Dkt. No. 199), multiple

12   opinions offered by LaPorte exceed the Court's limitation, and flout this principle.  Permitting

13   Defendants to rely on testimony from **both** their previous expert and their current expert would

14   produce the precise effect the safeguards were designed to avoid.

15        Moreover, reference to findings by both experts without any explanation that Kraemer was

16   replaced could create the false impression that Kraemer's opinions somehow corroborate or lend

17   credibility to LaPorte's opinions.  Any such false implication would be highly prejudicial to

18   Bungie.  *Abelove v. Seminole County School Bd.*, No. 6:05-cv-975-Orl-31DAB, 2006 WL

19   2927560, at *2 (M.D. Fla. Oct., 12, 2006) (granting motion to strike expert witness whose "name

20   had been withdrawn"); *Duffy v. Father Flanagan's Boys' Home*, No. 8:03CV31, 2006 WL 208832,

21   at *4 (D. Neb. Jan. 26, 2006) (granting motion *in limine* to exclude expert testimony of withdrawn

22   expert); *Montanye v. Wissachickon School Dist.*, No. 02-8537, 2005 WL 6015142, at *1 (E.D. Pa.

23   Sept. 6, 2005) (granting motion *in limine* to exclude all reports and testimony of withdrawn expert).

24        Indeed, "before the deposition of any withdrawn expert may be used at trial, 'there should

25   be some showing...that no other expert of similar qualifications is available or that the unavailable

26   expert has some unique testimony to contribute.'"  *In re Bard IVC Filters Prod. Liab. Litig.*, No.

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 12
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   CV-16-00474-PHX-DGC, 2018 WL 11445967, at *2 (D. Ariz. Mar. 9, 2018) (citing *Carter-*

2   *Wallace, Inc. v. Otte*, 474 F.2d 529, 536-37 (2d Cir. 1972)).  Here, LaPorte's availability has been

3   confirmed for trial and he has been engaged as Defendants' expert witness in this case to testify

4   about the opinions in his expert report.  Thus, it would be irrelevant and prejudicial to allow any

5   reference to Kraemer, his opinions, or expert report at trial.

       **4.**     **Defendants should be precluded from testifying regarding how the Cheat Software or loader operate on a programming level.**

Defendants admit that the Cheat Software includes certain features and what those features do, (e.g., see through walls).  Dkt. No. 72 (Amend. Answer) ¶¶ 81, 86, 89.  For instance, Defendants admit in their Answer to Bungie's Amended Complaint that:

- "Defendants' *Destiny 2* cheat software included a feature called "ESP," which allowed users of Defendants' cheat software to see other *Destiny 2* players and non-player characters through solid walls by displaying a distinct box around the other players, displaying the players' names, and the distance between the cheating and non-cheating players."  Amended Compl. ¶ 81.

- "Defendants' *Destiny 2* cheat software also included an "AIMBOT" feature, which allowed cheat users to automatically aim at other *Destiny 2* player and non-player characters with little to no input (i.e., movement of the mouse and/or joystick) by the player using Defendants' cheat software."  *Id.* ¶ 86.

- "Defendants' *Destiny 2* cheat software included a feature called "One Position Kill" ("OPK"), which allowed cheat users to cause other players and characters to either respawn at or move (teleport) to the same space in *Destiny 2* so that the cheat user's abilities would be more effective at defeating those opponents, accelerating the rate at which cheat users accumulate rewards and accolades."  *Id.* ¶ 89.

Other than admissions of how certain cheat features work, Defendants claim ignorance of how the Cheat Software and its loader operates, and their testimony should be limited accordingly.

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 13
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Schaefer, testifying as the corporate representative for Phoenix Digital, testified that

2    "█████████████████████████████████████████████████████████████████████

3    ████████████████████████████████." He likewise claimed each of the Phoenix

4    Digital Defendants were ignorant of how the cheat loader operated.  His testimony on the issue is

5    provided below:



BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 14
(No. 2:21-cv-00811)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164187217.8

1    Rava Decl., Ex. 2 (October 31, 2022 30(b)(6) Phoenix Digital Dep. Tr.) at 8:20-9:21; *see*

2    *also* Rava Decl., Ex. 3 (October 28, 2022 Schaefer Dep. Tr.) at 225:19-21 (████████████████

3    ████████████████████████████████████████████████████████████).

4    Green and Conway likewise claimed ignorance.  *See* Rava Decl., Ex. 4 (October 19, 2022

5    Conway Dep. Tr.) at 248:16-20 ████████████████████████████); *id.* at 258:19 ████████

6    ████████████████████); Rava Decl., Ex. 5 (October 12, 2022 Green Dep. Tr.) at 184:10-13

7    ████████████████████████████████████████████.

8    Finally, May also concedes that he does not know how either the Cheat Software or the

9    cheat loader operates.  Rava Decl., Ex. 6 (October 25, 2022 May Dep. Tr.) at 115:6-17 ████

10   ████████████████████████████████████████████████████████████████████

11   ████████████████████████████).

12   Defendants cannot testify about something for which they have claimed to lack personal

13   knowledge.  Fed. R. Evid. 602.  Here, other than their admissions of the advantages the various

14   Cheat Software features provide to users, Defendants claim to have no knowledge of how the

15   Cheat Software or loader operate, and they should be precluded from testifying on such topics.

16   **C.    Motion *In Limine* No. 9: John Doe's Identifying Information Should Remain Highly
       Confidential through Trial.**

17   The Court granted Bungie's motion for a protective order regarding the identity of the

18   witness referred to as "John Doe," ordering that "the real name and any other identifying

19   information for the witness…shall be designated as 'Highly Confidential' under the parties'

20   Stipulated Protective Order, docket no. 60."  Dkt. No. 126.  Bungie seeks an order maintaining the

21   Highly Confidential designation of John Doe's identity through trial—including redaction of his

22   name from any documents used at trial—because disclosure of John Doe's name to Defendants is

23   still likely to result in annoyance, embarrassment, and/or oppression, and because John Doe's

24   identifying information is even less relevant now with the dismissal of Phoenix Digital's

25   counterclaim.  To be clear, Bungie does not seek to prevent Defendants from calling John Doe as

26

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 15
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

a witness for a proper purpose at trial; it merely seeks the continued protection of John Doe's identifying information.

The Court may grant a protective order upon a showing of good cause, "which has been characterized by the Ninth Circuit as showing that specific prejudice or harm will result if no protective order is granted." *Sargent v. City of Seattle*, No. C12-1232 TSZ, 2013 WL 1898213, at *1 (W.D. Wash. May 7, 2013) (Zilly, J.) (citation omitted).  In evaluating a request to protect a witness's identity from disclosure completely or on an "attorney's eyes only" basis, courts consider the requesting party's need for that identifying information.  *Alaska Cmty. Action on Toxics v. Aurora Energy Servs., LLC*, No. 3:09-cv-255-TMB, 2012 WL 12537418, at *2 (D. Alaska May 7, 2012) (citation omitted).  Orders protecting a witness's identity from disclosure have been granted where, for example, the party opposing the order has full access to the witness's substantive testimony and is unable to demonstrate the need for the witness's identifying information.  *Id.* at *4; *Everyday Discount, Inc. v. State Farm Gen Ins. Co.*, No. CV 18-902-GW (PLAx), 2018 WL 11346535, at *4 (C.D. Cal. Oct. 30, 2018) (ordering that witness's name and identifying information could remain redacted from police report where the party opposing the order still had access to the substantive information from the witness in the police report).

Courts may also consider the following factors: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public." *Alaska Cmty. Action on Toxics*, 2012 WL 12537418, at *2 (quoting *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424 n.5).

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 16
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164187217.8

With the dismissal of Phoenix Digital's breach of contract counterclaim, John Doe's identity is now largely irrelevant to this case. Defendants intend to call John Doe as a witness to "testify as to his acquisition of software from the 'Aimjunkies' website, including but not limited to his use of an assumed name in doing so and his agreement to the Aimjunkies/Phoenix Digital Terms of Service in doing so." Rava Decl., Ex. 1 at 6-7. But this testimony was relevant, if at all, only to Phoenix Digital's breach of contract counterclaim, which has now been dismissed with prejudice. *See* Dkt. No. 201. As in *Everyday Discount* and *Alaska Cmty. Action on Toxics*, Defendants have had ample opportunity to question John Doe and their involvement in this case, cross-examining John Doe at the arbitration hearing in December 2022 and deposing John Doe in May 2023. *See Alaska Cmty. Action on Toxics*, 2012 WL 12537418, at *4; Final Award p. 2. Just as Defendants agreed to proceed in the December 2022 arbitration without disclosing John Doe's identity, so too should the Court permit John Doe to testify anonymously now. Final Award p. 2.

The same reasons supporting Bungie's previous request to maintain John Doe's identity as Highly Confidential similarly support the maintenance of that designation through trial. Anonymity continues to be essential for John Doe's role at Bungie investigating malicious users of Bungie's software, including Defendants, and they have taken significant steps to protect their real identity from those who might access it online. Dkt. No. 118 ¶ 3. Bungie's ability to retain qualified cybersecurity personnel like John Doe requires that it vigorously protect their privacy and physical security. John Doe's personal safety concerns also remain, particularly given his involvement in investigations regarding threats made to other Bungie employees and other cases involving documented threats against Bungie employees, like John Doe. *Id.* at ¶ 6; *see also* Dkt. No. 120 ¶¶ 4. And Defendants' past threats against John Doe continue to loom large, especially as trial becomes imminent. *See* Dkt. No. 120, Ex. D (Schaefer Oct. 31, 2022 30(b)(6) Tr.) at 28:12-17 (threatening to "open up your people" including the "guy that bought the cheat"); *Id.* at 29:6-11 (threatening to "see what they got hiding in their closets"); Dkt. No. 120, Ex. E (Schaefer March 20, 2023 30(b)(6) Tr.) 44:3-8 (Defendants' counsel telling Schaefer to say the name of John Doe

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 17
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    "[i]f you remember the names of the person").  The remaining factors weigh in favor of keeping

2    John Doe's identity Highly Confidential.  They are not a public official; their name is not important

3    to the public; and their identifying information is not related to public health or safety.  An order

4    protecting John Doe's identifying information promotes fairness and efficiency, as well as the

5    privacy interests of John Doe.  Bungie therefore requests that the Court order John Doe's name

6    and other identifying information remain Highly Confidential through trial.

7                                    **II.    CONCLUSION**

8           For these reasons, Bungie's motions *in limine* should be granted.

9

10          I certify that this memorandum contains 6,043 words, in compliance with the Local Civil

11   Rules.

12

13          **LCR 7(d)(4) CERTIFICATION**

14          Counsel for Bungie certifies that it held a videoconference with Defendants' counsel on

15   October 24, 2023, in a good faith attempt to resolve the issues described in Bungie's motion *in*

16   *limine*.  The parties were unable resolve any of the above disputed issues.

17

18   Dated: October 26, 2023              By: *s/ William C. Rava*

19                                           William C. Rava, Bar No. 29948
                                             Christian W. Marcelo, Bar No. 51193
20                                           Jacob P. Dini, Bar No. 54115
                                             **Perkins Coie LLP**
20                                           1201 Third Avenue, Suite 4900
21                                           Seattle, Washington 98101-3099
                                             Telephone: +1.206.359.8000
22                                           Facsimile: +1.206.359.9000
                                             WRava@perkinscoie.com
23                                           CMarcelo@perkinscoie.com
                                             JDini@perkinscoie.com
24

25                                           *Attorneys for Plaintiff Bungie, Inc..*

26

BUNGIE'S OMNIBUS
MOTION *IN LIMINE* – 18
(No. 2:21-cv-00811)

164187217.8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000