UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

                Plaintiff,

       v.

AIMJUNKIES.COM, et al.,

                Defendants.

C21-0811 TSZ

ORDER

THIS MATTER comes before the Court on the deferred portion of Plaintiff's motion for discovery sanctions, docket no. 99; *see also* Minute Order (docket no. 129) (granting in part, denying in part, and deferring in part Plaintiff's motion); Minute Order (docket no. 142) (granting in part and deferring in part Plaintiff's motion, and ordering supplemental briefing on the applicability of Federal Rule of Civil Procedure 37(e)). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**<u>Background</u>**[1]

Plaintiff Bungie, Inc. owns copyrights for software and audiovisual works related to *Destiny 2* and *Destiny 2: Beyond Light* (collectively, "*Destiny 2*"). Exs. 2–5 to Rava

---

[1] Although the Court's Order references sealed deposition transcripts, all references in the Order discuss information otherwise publicly available on the Docket.

ORDER - 1

Decl. in Supp. of Pl.'s M. for Summ. J. (docket no. 160 at 9–20).  Plaintiff asserts various causes of action against Defendants Phoenix Digital Group LLC ("Phoenix Digital Group"), AimJunkies.com, David Schaefer, Jeffrey Conway, Jordan Green ("collectively, "the Phoenix Digital defendants"), and James May arising from their alleged distribution of Cheat Software for *Destiny 2*.  Am. Compl. at ¶¶ 101–131 (docket no. 34).  Schaefer, Conway, and Green were all members and managers of Phoenix Digital Group.  Phoenix Digital Group LLC Agreement at § 4.3 & Schedule A, Ex. 7 to Rava Decl. in Supp. of Pl.'s M. for Summ. J. (docket no. 161).  Phoenix Digital Group owned AimJunkies.com at the commencement of this lawsuit but sold the website to a non-party in May 2022.  Phoenix Digital Group 30(b)(6) Dep. at 104:6–9, Ex. F to Marcelo Decl. (docket no. 103); *see* Ex. I to Marcelo Decl. (docket no. 101 at 27–28) (acquisition announcement).  May is an independent contractor who develops cheats for AimJunkies.com.  May Dep. at 9:11–21, Ex. K. to Marcelo Decl. (docket no. 101 at 41–58).  Plaintiff moves for sanctions for the Phoenix Digital defendants' alleged spoliation of AimJunkies.com forum messages and records relating to the Cheat Software and Loader Software,[2] financial records relating to the sale of the Cheat Software, records of certain Bitcoin transactions, and the *Destiny 2* images used in Phoenix Digital Group's marketing materials.[3]  Mot. at 2–5 (docket no. 99).  Plaintiff also moves for spoliation sanctions

---

[2] The Loader Software "injects" the Cheat Software from a third-party server into a user's session of *Destiny 2*.  Guris Expert Report at ¶¶ 97–98, Ex. 6 to Rava Decl. in Supp. of Pl.'s M. for Summ. J. (docket no. 160 at 21–53); Schaefer Dep. at 101:25–102:10, Ex. 10 to Rava Decl. in Supp. of Pl.'s M. for Summ. J. (docket no. 164).

[3] Plaintiff also alleges that the Phoenix Digital defendants spoliated the copy of the AimJunkies.com Terms of Service relevant to Phoenix Digital Group's breach of contract counterclaim.  All parties agree that this document is only relevant to Phoenix Digital Group's breach of contract counterclaim.  *See* Mot.

ORDER - 2

against May for his deletion of files from four computer hard drives after the commencement of this litigation. *Id.* at 4.

### A. The Phoenix Digital Defendants

On November 4, 2020, Plaintiff's counsel at Mitchell Silberberg & Knupp LLP sent Schaefer, Conway, and Green a cease-and-desist letter stating that their distribution of the Cheat Software infringed Plaintiff's copyrights, breached Plaintiff's software use agreement, and violated various laws. *See* Exs. B–D to Marcelo Decl. (docket no 101. at 8–16). The cease-and-desist letter notified Schaefer, Conway, and Green of the potential for subsequent legal action. *Id.* The cease-and-desist letter also identified forms of evidence to be preserved, directed Schaefer, Conway, and Green to ensure that routine manual or automated deletion procedures did not result in the destruction of relevant evidence, and cautioned them that Plaintiff would potentially pursue sanctions for any evidentiary spoliation. *Id.* Plaintiff's counsel at Perkins Coie LLP reiterated the obligation to preserve evidence related to Phoenix Digital Group's distribution of the Cheat Software in a second letter dated December 11, 2020. Ex. S. to Suppl. Marcelo Decl. (docket no. 110 at 6–8).

After receiving the letters from Plaintiff's counsel, the Phoenix Digital defendants deleted: (1) records of the Cheat Software, including access to the Cheat Software, from the Aimjunkies.com website, (2) records relating to forum messages regarding the Cheat

---

at 6 n.3, 9 (docket no. 99); Defs.' Suppl. Resp. at 4 (docket no. 173). Because the Court has previously dismissed that counterclaim with prejudice, *see* Order (docket no. 201), it does not address the spoliation of the AimJunkies.com Terms of Service in this Order.

ORDER - 3

Software, (3) records relating to sales of the Cheat Software, including financial records relating to the sales and records from various payment processors and for Bitcoin transactions, (4) the Loader Software and any documents relating to the Loader Software, and (5) images allegedly from *Destiny 2* used in the marketing of the Cheat Software. *See* Schaefer Dep. at 60:2–61:3, 214:2-218:21, Ex. E to Marcelo Decl. (docket no. 102); Phoenix Digital Group 30(b)(6) Dep. at 104:6–106:4, Ex. F to Marcelo Decl. (docket no. 103); Ex. J to Marcelo Decl. (docket no. 101 at 29–40) (marketing email with several images missing).  Additionally, the Phoenix Digital defendants failed to preserve any archival information or records from AimJunkies.com prior to the website's sale. Phoenix Digital 30(b)(6) Dep. at 104:6–16, Ex. F to Marcelo Decl. (docket no. 103).  The Phoenix Digital defendants have also destroyed and continue to destroy records of Bitcoin transactions with Andreas Banek, the purported developer of the Cheat Software and purchaser of the AimJunkies.com website.  Schaefer Dep. at 163:20–166:1, Ex. E to Marcelo. Decl. (docket no. 102).

**B.    May**

May admits that he received notice of this lawsuit sometime in the summer of 2021.  May Dep. at 82:6–16, Ex. K to Marcelo Decl. (docket no. 101 at 41–58); *see* Pl.'s Notice of Service (docket no. 10) (Plaintiff's request that the Clerk's Office serve May pursuant to Ohio Civil Rule 4.1(A)(1)(b)).  Although May knew he was a party to this lawsuit in 2021, in May 2022 he wiped four hard drives that he suspected Plaintiff improperly accessed in relation to this suit.  May Dep. at 82:1–16, 94:9–95:15, Ex. K to Marcelo Decl. (docket no. 101 at 41–58).

ORDER - 4

**Discussion**

**A.     Legal Standards**

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve evidence, in pending or reasonably foreseeable litigation.  *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" (quoting *Kitsap Physicians Serv.*, 314 F.3d at 1001)).  "Federal law governs the imposition of spoliation sanctions as 'spoliation constitutes an evidentiary matter.'"  *Estate of Hill v. NaphCare, Inc.*, No. 20-cv-00410, 2022 WL 1464830, at *9 (E.D. Wash. May 9, 2022) (quoting *Ala. Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 739 (N.D. Ala. 2017)).  "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. C06-3359, 2009 WL 1949124, at *10 (N.D. Cal. July 2, 2009) (citing *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir.1982)).

Under Rule 37(e), a party seeking sanctions for spoliation of electronically stored information ("ESI") bears the burden of proof, *see Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). Plaintiff must show, at a minimum, that (i) the evidence at issue qualifies as ESI, (ii) the ESI is "lost" and "cannot be restored or replaced through additional discovery," (iii) the offending party "failed to take reasonable steps to

ORDER - 5

preserve" the ESI, and (iv) the offending party was under a duty to preserve it. *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-177, 2019 WL 1751825, at *2–3 (C.D. Cal. Feb. 25, 2019). If these four criteria are met and the Court determines that the moving party is prejudiced from the "loss of the information," the Court may "order measures no greater than necessary to cure the prejudice." *See* Fed. R. Civ. P. 37(e)(1).

"Although [Rule] 37(e) does not place the burden of proving or disproving prejudice on either party, if spoliation is proven, the burden shifts to the spoliating party to prove the lost information is not prejudicial." *See Youngevity Int'l v. Smith*, No. 16-cv-704, 2020 WL 7048687, at *3 (S.D. Cal. July 28, 2020) (citing Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). A party is prejudiced when the spoliating party's actions impair the "non-spoliating party's ability to go to trial" or threaten to "interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation omitted). If the Court finds that the offending party "acted with the intent to deprive" the moving party "of the information's use in the litigation," the Court may "presume that the lost information was unfavorable" to the offending party, "instruct the jury that it may or must presume the information was unfavorable" to the offending party, or "dismiss the action or enter a default judgment." *See* Fed. R. Civ. P. 37(e)(2). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *Estate of Hill*, 2022 WL 1464830, at *11 (citation omitted).

Rule 37(e) creates a "uniform standard in federal court" and rejects the notion that, when ESI is spoliated, adverse-inference instructions may be predicated on a finding of

ORDER - 6

mere negligence or gross negligence, as opposed to an "intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e) (advisory committee's note to 2015 amendment). Whether the offending party "acted with the intent to deprive" the moving party "of the information's use in the litigation," *see* Fed. R. Civ. P. 37(e)(2), is a question for the Court. *See Mannion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262, 2020 WL 417492, at *4 (D. Ariz. Jan. 27, 2020) (explaining that judges make discovery-related factual findings). For the purposes of Rule 37(e), intent can be proven through direct or circumstantial evidence. *See Estate of Hill*, 2022 WL 1464830, at *12 ("Courts have found the requisite 'intent to deprive' when a litigant fails to provide a credible explanation for departing from standard operating procedure and intentionally failing to preserve ESI."); *see also Colonies Partners, L.P. v. County of San Bernadino*, No. 18-cv-00420, 2020 WL 1496444, at *11 (C.D. Cal. Feb. 27, 2020) ("Courts also consider the timing of the document loss when evaluating intent."). Further, "an employee's misconduct with regard to spoliation can be imputed to an employer." *Colonies Partners*, 2020 WL 1496444, at *10.

B.  **Defendants Spoliated ESI Evidence**

　　1.　**The Destroyed Evidence Constitutes ESI**

The parties agree that, except for the records of Phoenix Digital Group's Bitcoin wallet transactions with Banek, all the lost information constitutes ESI. The parties agree

that the records of Phoenix Digital Group's Bitcoin wallet transactions with Banek do not constitute ESI.[4]

### 2. Defendants had a Duty to Preserve the Destroyed Evidence

#### a. The Duty to Preserve Evidence was Triggered

"[T]he duty to preserve evidence is triggered when a party knows or reasonably should know that the evidence may be relevant to pending or future litigation." *EEOC v. Fry's Elecs., Inc.*, 874 F. Supp. 2d 1042, 1044 (W.D. Wash. 2012). The reasonable foreseeability of litigation is an objective standard that asks "whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1013 (D. Ariz. 2021) (quoting *Waymo LLC v. Uber Techs., Inc.*, C17-00939, 2018 WL 646701, at *14 (N.D. Cal. 2018)), *appeal docketed*, 21-16852 (9th Cir. 2021). This is a flexible inquiry that turns on the facts of

---

[4] The Court finds that this evidence has been spoliated. When determining whether non-ESI evidence has been spoliated, courts must consider three factors: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind;' and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Ghorbanian v. Guardian Life Ins. Co. of Am.*, No. C14-1396, 2017 WL 1543140, at *2 (W.D. Wash. Apr. 28, 2017) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012)). A duty to preserve evidence arose as soon as Schaefer, Conway, and Green received the initial cease-and-desist letter from Plaintiff's prior counsel. Also, the Phoenix Digital defendants acted with an intent to deprive Plaintiff of evidence. The Phoenix Digital defendants contend that no spoliation occurred because these documents are not relevant to the litigation. The Court, however, has already concluded that information regarding Phoenix Digital Group's Bitcoin transactions with Banek is relevant. *See* Minute Order (docket no. 129) (compelling Phoenix Digital Group and Schaefer to produce wallet IDs for the Bitcoin wallets used by Phoenix Digital Group to pay or receive payments from Banek). Some of the evidence regarding Bitcoin transactions that Plaintiff alleges was spoliated exceeds the scope of the evidence Phoenix Digital Group was compelled to produce in the Court's prior Minute Order. Nonetheless, such evidence is still relevant to this case. Defendants contend that Banek was the developer of the Cheat Software. Accordingly, any evidence that could help Plaintiff identify Banek and determine whether he is the actual Cheat Software developer is relevant to the issues remaining for trial.

the case. *Id.* For example, the *Fry's Electronics* court concluded that the "sophisticated corporate" defendant had notice of potential litigation when the plaintiff, after having engaged in protected activity for several weeks prior to his termination, made reference to the Equal Employment Opportunity Commission upon receiving his termination notice. 874 F. Supp. 2d at 1044. The filing of a lawsuit undoubtedly triggers the duty to preserve evidence. *E.g.*, *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007).

### b. The Phoenix Digital Defendants

The Phoenix Digital defendants' duty to preserve evidence arose when Schaefer, Conway, and Green received the cease-and-desist letter from Plaintiff. The cease-and-desist letter contained an admonition that they maintain any evidence that may have been relevant to Plaintiff's claims or otherwise relating to the Cheat Software. *See* Exs. B–D to Marcelo Decl. Further, the cease-and-desist letter warned that Plaintiff would potentially pursue legal sanctions if the Phoenix Digital defendants were found to have destroyed relevant evidence. *See id.* Consequently, receipt of Plaintiff's cease-and-desist letter triggered the Phoenix Digital defendants' duty to preserve evidence. *See Hearne v. HUB Bellevue Props., LLC*, No. C16-1010, 2020 WL 2512872, at *4 (W.D. Wash. May 15, 2020) (holding that a letter contemplating legal action and containing a preservation demand was sufficient to trigger the duty to preserve evidence); *Perez v. USPS*, No. C12-0315, 2014 WL 10726125, at *3 (W.D. Wash. July 30, 2014) ("Letters threatening or providing notice of potential litigation can trigger the duty to preserve." (internal citation omitted)).

ORDER - 9

The Phoenix Digital defendants contend that they had no duty to preserve evidence because "[o]verbroad demands that a party preserve all evidence are insufficient to trigger an obligation to preserve specific but unidentified items." Defs.' Suppl. Resp. at 5 (docket no. 173) (citing *Cache La Poudre Feeds*, 244 F.R.D. at 621). They cite multiple cases to support this contention, all of which are distinguishable.

The page of *Cache La Poudre Feeds* the Phoenix Digital defendants cite does stand for the proposition that a legal communication does not always trigger a duty to preserve evidence. *See Cache La Poudre Feeds*, 244 F.R.D. at 621. The communications at issue in *Cache La Poudre Feeds*, however, showed that the party seeking sanctions wanted to avoid litigation and "preferred and was willing to a explore a negotiated resolution." *Id.* at 622. Here, the cease-and-desist letter was "more than an equivocal statement of discontent" and "addresse[d] any contemporaneous preservation obligations" that the Phoenix Digital defendants had. *Id.* at 623. In short, the communications at issue in *Cache La Poudre Feeds* were seeking to avoid litigation whereas here the cease-and-desist letter directly threatened a lawsuit.

The remaining three cases the Phoenix Digital defendants rely on are even less persuasive. First, a letter directing a party to preserve evidence that was received less than a year prior to the relevant lawsuit being filed is distinct from an investigation report clearing a medical practice of wrongdoing that was issued ten years prior to the relevant lawsuit. *See Kitsap Physicians Serv.*, 314 F.3d at 1001. Second, although the alleged notice in *United States v. $40,955 in United States Currency*, 554 F.3d 752 (9th Cir. 2009), was temporally closer to the relevant lawsuit than in *Kitsap Physician Service*,

ORDER - 10

*$40,955* is still distinguishable from this case.  In *$40,955*, currency was seized from a safe in the room of the son of the party seeking spoliation sanctions during the execution of a search warrant relating to the party's son's alleged drug distribution.  *$40,955*, 554 F.3d at 754–55.  The Ninth Circuit concluded that an oral statement that the seized funds belonged to the party, made to a state law enforcement officer during the search, was not enough to give the federal government notice that it needed to preserve the exact serial numbers of each seized bill.  *Id.* at 758–59.  Unlike the oral statement in *$40,955* that made no reference to the relevance of the lost evidence or the need to preserve it, the written letter here contained express directions to preserve specified forms of evidence.  Finally, distinct from *Powell v. DEF Express, Inc.*, 265 F. App'x 672, 674–75 (9th Cir. 2008), here the Phoenix Digital defendants had "'possession, custody, or control' over the deleted evidence."

      **c.**     **May**

May had a duty to preserve the evidence on the four wiped hard drives.[5]  This case was filed on June 15, 2021, and May received notice of the lawsuit soon thereafter.  His duty to preserve any relevant evidence therefore arose the moment he received notice of this lawsuit.  *Cache La Poudre Feeds*, 244 F.R.D. at 621 ("In most cases, the duty to preserve evidence is triggered by the filing of a lawsuit.").  May argues that his duty to preserve any evidence on the hard drives did not arise until he received discovery production from Plaintiff in July 2022 regarding Plaintiff's alleged improper access.

---

[5] May transferred five files to a new computer prior to wiping the hard drives.  These files have been produced during this litigation.

ORDER - 11

May, however, testified at his deposition that he suspected Plaintiff improperly accessed his computer the moment he received notice of the lawsuit.  May Dep. at 82:1–82:8, Ex. K to Marcelo Decl. (docket no. 101 at 41–58).  If May suspected his hard drives were improperly accessed in relation to this case, then he should have reasonably known that the hard drives would contain relevant evidence.

### 3. The Destroyed Evidence is Irretrievably Lost

#### a. The Phoenix Digital Defendants

The Phoenix Digital defendants argue that the financial records Plaintiff seeks have not been irretrievably lost because substitute evidence can be obtained through depositions.  This argument is unpersuasive.  Defendants have represented three different amounts in revenue generated from sales of the Cheat Software throughout this litigation.  *See* Schaefer Decl. in Supp. of Defs.' Mot. to Dismiss at ¶ 8 (docket no. 28-5) ("During the entire life of the products [Plaintiff] refers to as 'cheat software,' overall sales of the products were $27,748.00 and Phoenix Digital Group's gross profits on these sales amounted to $13,874.00."); Defs.' Resp. to Mot. for Sanctions at 9 (docket no. 107) ("Phoenix Digital has never denied distributing the alleged 'cheat software,' has never denied receiving approximately $43,000 in gross revenues in doing so."); Defs.' Suppl. Resp. at 1 (docket no. 173) ("Phoenix Digital readily admits that it distributed the subject 'cheat' software and collected approximately $60,000 in gross revenues in so doing").  Given these shifting representations, any deposition testimony as to the revenue generated from the Cheat Software cannot replace the direct evidence from the financial records Plaintiff seeks.

ORDER - 12

Also unpersuasive is the Phoenix Digital defendants' argument that Plaintiff already has access to Phoenix Digital Group's PayPal records and can access additional financial information through records from its other payment processors.  Beyond using numerous payment processors, Phoenix Digital Group accepted payment via Bitcoin and deleted the Bitcoin wallets used for those transactions monthly.  Schaefer Dep. at 60:6–13, 166:2–167:24, Ex. E to Marcelo Decl. (docket no. 102).  And even though the AimJunkies.com website tracked how many times the Cheat Software had been purchased, Conway Dep. at 103:23–104:10, Ex. H to Marcelo Decl. (docket no. 104), those records were also deleted, Schaefer Dep. at 217:17–218:21, Ex. E to Marcelo Decl. (docket no. 102); Phoenix Digital Group 30(b)(6) Dep. at 104:10–106:4, Ex. F to Marcelo Decl. (docket no. 103).  The destruction of this evidence and the sale of AimJunkies.com have made it impossible for Plaintiff to obtain complete records of the revenue generated from sales of the Cheat Software.  Therefore, the Court concludes that the financial records Plaintiff seeks have been irretrievably lost.

The Phoenix Digital defendants argue that records relating to the Cheat Software and Loader Software have not been irretrievably lost because "the material information—whether the software infringes copyrights and trademarks—is available from other sources and [Plaintiff] has it." Defs.' Suppl. Resp. at 4 (docket no. 173).  Whether the Cheat Software or Loader Software infringe any of Plaintiff's copyrights is one of the underlying issues in this case.  The fact that Plaintiff may be able to obtain other evidence supporting or undermining its theories does not resolve whether the destroyed records are irretrievably lost.  And the Phoenix Digital defendants fail to address the fact that they

ORDER - 13

intentionally deleted the Cheat Software and "everything Destiny" after receiving Plaintiff's cease-and-desist letter, Schaefer Dep. at 217:17–218:21, Ex. E to Marcelo Decl. (docket no. 102), or the fact that AimJunkies.com was sold during the pendency of this litigation.  The Court therefore finds that these records have been irretrievably lost.

The Phoenix Digital defendants argue that the *Destiny 2* images used in Phoenix Digital Group's marketing email have not been irretrievably lost because Plaintiff has the marketing emails and knows that its images were used in the marketing emails.  The Phoenix Digital defendants again fail to address the fact that the images were intentionally deleted in response to Plaintiff's cease-and-desist letter.  *See id.* at 214:2–218:21.  Further, the fact that Plaintiff knows that its images were used in Phoenix Digital Group's marketing materials cannot replace knowing exactly how the images were used, which is key to proving Plaintiff's trademark infringement claim.  The Court therefore finds that Phoenix Digital Group's marketing images have been irretrievably lost.

    **b.**  **May**

May argues that no evidence has been irretrievably lost because he transferred five files to his new computer prior to wiping the hard drives.  May, however, makes no argument in his opposition papers as to why any other evidence that was destroyed when he wiped the four hard drives has not been irretrievably lost.  Further, at his deposition he testified that he believed that the contents of the four hard drives are irretrievable.  May Dep. at 95:3–4, Ex. K to Marcelo Decl. (docket no. 101 at 41–58).  Thus, the Court finds that the evidence on May's hard drives has been irretrievably lost.

ORDER - 14

### 4. Reasonable Steps Were Not Taken to Preserve the Destroyed Evidence

#### a. The Phoenix Digital Defendants

It is undisputed that no steps were taken to alter the AimJunkies.com automatic content deletion protocol or otherwise preserve relevant evidence. Phoenix Digital Group 30(b)(6) Dep. at 104:10–106:4, Ex. F to Marcelo Decl. (docket no. 103). Indeed, Schaefer admitted to deleting evidence in response to Plaintiff's cease-and-desist letter. Schaefer Dep. at 217:17–218:21, Ex. E to Marcelo. Decl. (docket no. 102). Additionally, AimJunkies.com was sold during the pendency of this litigation and no steps were taken to preserve access to the website's contents. Phoenix Digital Group 30(b)(6) Dep. at 104:6–9, Ex. F to Marcelo Decl. (docket no. 103). The Court finds that the Phoenix Digital defendants failed to take reasonable steps to preserve the destroyed evidence.

#### b. May

Because he admitted to willfully erasing the four hard drives, except for the five transferred files, the Court finds that May failed to take reasonable steps to preserve significant evidence.

## C. Sanctions are Appropriate

### 1. Spoliation of the Evidence Prejudiced Plaintiff

"The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (internal quotation omitted). Such impairment or interference can occur when the non-spoiling party is forced "to rely on incomplete and spotty evidence at trial." *Id.* (internal quotation omitted).

ORDER - 15

Defendants argue that Plaintiff "has identified little if any prejudice" caused by their spoliation. Defs.' Suppl. Resp. at 5 (docket no. 173). This argument, however, mistakes the burden of proof as to prejudice once spoliation has been proven. Plaintiff does not have the burden of showing the spoliated evidence was prejudicial. Rather, Defendants bear the burden "to prove the lost information is not prejudicial." *Youngevity*, 2020 WL 7048687, at *3 (internal citations omitted).

Even if broadly construed as an attempt to show that the lost evidence is not prejudicial, the Phoenix Digital defendants' arguments as to the relevance of the lost evidence are unpersuasive. They contend that Plaintiff "offers no evidence how" the AimJunkies.com forum messages "could possibly be relevant." Defs.' Suppl. Resp. at 4 (docket no. 173). The Phoenix Digital defendants, however, are "not entitled to a presumption that the documents on the [website] were irrelevant." *Fry's Elecs.*, 847 F. Supp. 2d at 1046 (citing *Leon*, 464 F.3d at 959). Moreover, they state that "[t]he forum messages are communications posted by users commenting or asking questions about the software." Defs.' Suppl. Resp. at 4 (docket no. 173). That is to say, the forum messages may have contained information about how the Cheat Software functioned or how purchasers perceived the Cheat Software and related marketing materials. Such information would go to all of Plaintiff's remaining claims. The financial information Plaintiff seeks is relevant to its damages. And the specific usage of the *Destiny 2* images

in Phoenix Digital Group's marketing materials is relevant to Plaintiff's trademark infringement claim.[6]

Defendants have failed to show that the spoliated evidence is not prejudicial.  The Court finds that the spoliated evidence threatens to "interfere with the rightful decision of the case," *Leon*, 464 F.3d at 959 (internal quotation omitted), and sanctions against Defendants are warranted.

### 2. **Defendants' Intent**

Having determined that the sought evidence was spoliated and that this spoliation has resulted in prejudice to Plaintiff, the Court must now evaluate Defendants' intent. "Only upon a finding of intent may the Court impose severe sanctions such as an adverse-inference instruction or default judgment." *Hunters Capital, LLC v. City of Seattle*, No. C20-0983, 2023 WL 184208, at *8 (W.D. Wash. Jan. 13, 2023) (internal citation omitted).

The Court finds substantial circumstantial evidence that Defendants acted with the requisite intent necessary to impose a severe sanction.  The Phoenix Digital defendants intentionally took steps to delete or otherwise render inaccessible relevant evidence after their duty to preserve evidence was triggered.  Further, the misrepresentations as to whether Phoenix Digital Group owned AimJunkies.com, *see* Ex. R to Suppl. Marcelo Decl. (docket no. 110 at 3–5), the misrepresentations regarding the revenue generated from the Cheat Software, and Schaefer's harassing and evasive deposition conduct, *see*

---

[6] The Court notes that May offers no argument for why his wiping of the four hard drives has not prejudiced Plaintiff.

ORDER - 17

Minute Order (docket no. 142) (granting Plaintiff's motion for monetary sanctions because Schaefer's deposition conduct was "harassing and unprofessional behavior designed to frustrate [Plaintiffs'] legitimate discovery efforts"), demonstrates an intent to deceive Plaintiff or otherwise interfere with Plaintiff's ability to proceed to trial.  As to May, he wiped the four hard drives after the initiation of this litigation and after he suspected he might have claims against Plaintiff.  If failing to take reasonable steps after a duty to preserve evidence arose is enough to infer an intent to deprive, then taking proactive steps to destroy evidence after a litigation is commenced is more than sufficient to infer the requisite intent.

### 3. Adverse Inferences are Warranted

Because the Court finds that Defendants acted with the requisite intent, Rule 37(e)(2) permits the imposition of severe sanctions.  "[A] court must consider five factors: (i) the public's interest in expeditious resolution of litigation," (ii) the court's need to manage its docket, (iii) the risk of prejudice to the party seeking sanctions, (iv) the public policy favoring disposition of cases on their merit, and (v) the availability of less drastic sanctions," when evaluating whether terminating sanctions are appropriate.  *Hunters Capital*, 2023 WL 184208, at *10 (internal quotations omitted, citing *Colonies Partners*, 2020 WL 1496444, at *11).  Although the scope of Defendants' spoliation in this case is egregious, entry of default judgment against Defendants is too severe a sanction and is not supported by the factors referenced above or the evidence.  Additionally, dismissal of May's counterclaim is also too severe a sanction for his spoliation.

ORDER - 18

The Court concludes that a lesser sanction in the form of adverse jury instructions is sufficient to address any prejudice Plaintiff experienced because of Defendants' spoliation. Such a sanction allows the case to proceed to trial and be resolved substantively on the merits, while also curing the fact that Plaintiff will be forced to rely on incomplete evidence. The Court will therefore issue an adverse jury instruction at trial that the jury may presume that the records and information deleted, destroyed, or otherwise rendered inaccessible by Defendants' actions after their duty to preserve evidence arose were unfavorable to Defendants.[7] Further, the Court will allow Plaintiff to present evidence of Defendants' spoliation.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The deferred portion of Plaintiff's motion for discovery sanctions, docket no. 99, is GRANTED. The Court will instruct the jury that it *may* presume that the spoliated evidence was unfavorable to Defendants and will allow Plaintiff to present evidence of Defendants' spoliation.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 1st day of November, 2023.

Thomas S. Zilly
United States District Judge

---

[7] The Court will determine the exact language of the instruction(s) at a later date.