THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' TRIAL BRIEF** |

Defendants Aimjunkies.com, Phoenix Digital Group LLC, Jeffrey Conway, David Schaefer, Jordan Green and James May, through their undersigned counsel, hereby submit this Trial Brief in advance of the trial currently scheduled for Monday, December 4, 2023.

## INTRODUCTION

This is a case of litigation gone wild.  This case should never have progressed this far and why Plaintiff Bungie, Inc., continues to pursue it, even against its own interests, remains a mystery.

Bungie, as part of an ongoing and self-admitted campaign "to put cheaters and those who assist them on notice that Bungie does not and will not tolerate cheating in Destiny 2," brought this action as one of several highly publicized cases it has filed against several domestic individuals, overseas foreign nationals, and even teenage minor children it has,

Defendants' Trial Brief
Cause No. 21-CV-0811-TSZ

Page 1

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

largely without foundation, accused of making, distributing and/or using what it calls, "cheat software" configured for use with Bungie's "Destiny 2" first-person shooter game.   In all cases except this one, the targets of Bungie's lawsuits have either defaulted without a fight, or have agreed to multi-million dollar "judgments" against them before ever getting anywhere close to an actual trial on the merits. Although the terms of any behind the scenes settlement agreements remain confidential, it is clear to any reasonably experienced lawyer that it is doubtful that any of these defendants, who are obviously not rich, have actually paid any of these well publicized "judgments" against then, and that they are likely largely for show.

What sets the Defendants here apart is that they are, apparently, the first and only ones to point out that there is no law whatsoever proscribing "cheating" in computer games, and that Bungie, Inc., as with any other plaintiff, must prove an actual violation of an established and recognized intellectual property right, such as copyright, in order to maintain a legally proper and permissible action against those it accuses of "cheating."

After two-and-one-half years of litigation, Bungie's case before this Court has now been winnowed down to a single claim of copyright infringement based on a "cheat" software product that Phoenix Digital distributed between November 2019 and February, 2021. During that roughly fourteen month period, which ended when Phoenix Digital voluntarily removed the subject software from its product line after receiving Bungie's "cease and desist letter" in November, 2020, Phoenix Digital distributed fewer than 1500 units of the subject software and received gross revenues as a result of such distribution of less than $65,000. Bungie's profits on these sales are less than $10,000.

To put this in perspective, Bungie has informed this very Court that it spent in excess of $17,000 to take a single deposition of a witness who had already been deposed at least three times before, and whose deposition lasted all of two hours, fifty-two minutes, while thereafter spending over $35,000 to take the deposition of Defendants' single expert witness who expressed but three opinions and submitted a seven page expert report.   This case is obviously not about Bungie's attempting to stop distribution of the subject "cheat' software.

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

That was achieved nearly three years ago when Phoenix Digital voluntarily stopped distributing the software after receiving Bungie's demand that it do so.  Nor is it about Bungie seeking to be "made whole" as a result of the accused copyright infringement -- Defendants can never hope to pay the millions of dollars in legal fees racked up by Bungie, even if Bungie were somehow to succeed in its flimsy claims.

Why, then, are we here?  Clearly it is because Bungie, having launched a publicity campaign and having brought a baseless claim of copyright infringement against the Defendants, cannot now publicly back down and admit its case lacks merit.  In a classic case of sending good money after bad, Bungie is forced to continue, even though it has nothing to gain by so doing and even though this case stopped making sense long ago.

Ironically, as part of its vicious campaign against Defendants, Bungie, *itself*, has stepped out of line and broken the law.  In particular, discovery has shown that, in the course of investigating Defendant James May, Bungie, whether by itself or through its agents, bypassed Mr. May's security measures and accessed and downloaded personal, copyrighted files of Mr. May.  Bungie will claim at trial that the Bungie "Limited Software License Agreement" Mr. May agreed to permits Bungie to do what it did.  However, a simple reading of that Agreement shows this is not true, and that the limited scope Mr. May agreed to did not extend to the files Bungie improperly accessed.  This is the subject of Mr. May's counterclaim against Bungie that will also be addressed at trial.

## BUNGIES' REMAINING CLAIM

A few short days ago, Bungie, for the very first time, sensibly notified Defendants that Bungie would not be pursuing its clearly baseless claims for trademark infringement and false designation of origin.[1]  This leaves Bungie with a single claim for copyright infringement.

Similarly, and no doubt recognizing that it failed to secure registrations for its copyrights in time to claim statutory damages and attorneys' fees, Bungie has also dropped its

---

[1]    Did Bungie seriously think a jury would buy the argument that consumers could reasonably be confused into thinking *Bungie* was the source of the subject "cheat" software?

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

1  claim for statutory damages and recently indicated it would be seeking only "actual damages"

2  in the event it succeeds at trial.  Given that Bungie's *own* damages expert, Mr. Drew Voth,

3  opines that Phoenix Digital received less than $50,000 in gross receipts for *all* distributions of

4  the subject "cheat" software, and given that Phoenix Digital's actual profit on such

5  distributions was less than $10,000, at best, Bungie might obtain less than one-third of what it

6  claims to have spent taking a single deposition in this matter.

7       Throughout its initial and amended complaints, Bungie identifies *only* the "cheat

8  software" that is used directly with Bungie's "Destiny 2" and "Destiny 2: Beyond Light"

9  games as the software supposedly infringing its copyrights.  Neither complaint makes any

10  mention whatsoever of a "loader" as being an infringing product, and claims directed to such

11  a "loader" product are not properly before this Court.

12       Evidence at trial will show that Phoenix Digital distributed the subject "cheat

13  software" between November, 2019 and February, 2021.  David Schaefer will testify that

14  Phoenix Digital had a long-standing policy of removing "cheat" software from its product line

15  on those highly rare occasions a game manufacturer registered a complaint.  Mr. Schaefer will

16  testify that Phoenix Digital  adhered to this policy at all relevant times herein.

17       Mr. Schaefer will further testify that, upon receiving a "cease and desist" letter from

18  Bungie's counsel in November, 2020, Phoenix Digital voluntarily took immediate steps to

19  remove the subject Destiny 2 "cheat" software from Phoenix Digital's product line. This was

20  fully accomplished by January/February, 2021.  Mr. Schaefer will also testify that the subject

21  "cheat" software distributed between November, 2019 and February, 2021 was the only

22  "cheat" product ever distributed by Phoenix Digital directed to a game created, sold,

23  distributed, etc., by Bungie, Inc.

24       Despite having complied with the "cease and desist" demands made in Bungie's

25  November, 2020 letter, Bungie sued Defendants in June, 2021, long after Phoenix Digital

26  voluntarily ceased distribution of the subject "cheat" software.  Again, this was likely done as

27

28

Defendants' Trial Brief
Cause No. 21-CV-0811-TSZ                    Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

part of Bungie's well-publicized campaign against, "cheaters" and was apparently done without any sort of pre-filing investigation on the part of Bungie.

It will be established at trial that no one connected with Phoenix Digital developed the "cheat" software at issue in this case.  On the contrary, the subject software was developed by an unknown, Ukrainian-based developer known only under the likely fictitious name, "Andreas Banek."   In the course of discovery, Defendants have voluntarily provided all information and contact information they have regarding the identity and whereabouts of Mr. Banek.  Despite such disclosure on the part of Phoenix Digital, Bungie has made no effort whatsoever to track down Mr. Banek, who is obviously a material witness and likely necessary party to this action.  Defendants have in no way interfered with any efforts on the part of Bungie to track down or otherwise communicate with Mr. Banek.

Significantly, neither Bungie nor any of the Defendants has actually seen or analyzed the source-code for the "cheat" software at issue.  Mr. Schaefer will testify that Phoenix Digital does not create "cheats" itself but, rather, serves as a distribution platform for "cheats" created by others, much the way Amazon distributes the products of others.  Mr. Schaefer will testify that during distribution of the "cheat" software, Phoenix Digital never has physical possession of the software.  Instead, when a customer "purchases" a subscription to a particular game "cheat," the customer, in return for a subscription payment, is provided with a link that enables him to download the "cheat" directly from the developer.  Again, Phoenix Digital never had possession of the "cheat" software at issue here.

Mr. Schaefer will testify that Phoenix Digital splits gross proceeds with the developer 50-50, leaving Phoenix Digital with 50% of the gross.  From this, Phoenix Digital pays overhead and other expenses.  The remaining "profit," which is typically far less than 25% of the gross, is then divided up among the initially three, and then later two founders of Phoenix Digital.  Mr. Schaefer will testify, and Mr. May will confirm, that none of the revenues Phoenix Digital received through distribution of the subject "cheat" software here was ever shared with Mr. May.

Defendants' Trial Brief
Cause No. 21-CV-0811-TSZ
Page 5
MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

In its claim, Bungie contends that a "cheat" software product that it never fully possessed, that it has not forensically analyzed, and that it has played on only a single occasion "for about ten minutes" nevertheless copies the software code it claims is the subject of its copyrights.  Bungie apparently hopes the Jury will accept this on faith rather than offer competent evidence of any such copying.

## MR. MAY'S COUNTERCLAIM

During the course of discovery, it became apparent that on at least one-hundred occasions, Bungie, either itself or through its agents, accessed the personal computer of Defendant James May and, without his authorization, accessed one or more copyrighted works on his personal computer.  This is the basis for Mr. May's counterclaim for circumvention of technological measures.   In particular, Mr. May will show that Bungie employed unfair means to circumvent technology Mr. May, like tens of millions of other owners of personal computers, use to restrict access to their private files.

Without limitation, Mr. May's contention is, in part, that Bungie circumvented Mr. May's firewall and password protocols by exceeding the authority Mr. May had granted to Bungie to make limited access to Mr. May's computer.  In short, Bungie used deceit and false promises to bypass and avoid the technological measures Mr. May employed to protect his private files.

## THE PARTIES

This case names five defendants, namely Aimjunkies.com, Phoenix Digital Group, LLC, Jeffrey Conway, David Schaefer, Jordan Green and James May.

Aimjunkies.com, which never existed as a formal, separate legal entity, was a website operated by Phoenix Digital up until May, 2022 when it was sold to an overseas purchaser. As of May, 2022, none of the remaining Defendants operates or controls the aimjunkies.com website.

Cause No. 21-CV-0811-TSZ

Page 6

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Phoenix Digital Group, LLC is a Delaware Limited Liability Corporation, initially organized and formed by Defendants Schaefer, Conway and Green, and currently owned by Mr. Schaefer and Mr. Green.

Defendants Jordan Green and David Schaefer are the two current owners of Phoenix Digital, and were two of the three initial founders of Phoenix Digital.

Defendant Jeffrey Conway was one of the three individual founders of Phoenix Digital and was once a co-owner of Phoenix Digital.  Mr. Conway resigned from Phoenix Digital in March, 2021 and is no longer a part of Phoenix Digital.

Defendant James May is an individual residing in Toledo Ohio.  Mr. Green is a software developer who is neither an owner, founder, officer, director, employee or otherwise a part of Phoenix Digital.  From time to time, Mr. May has developed "cheats" for games other than Destiny 2 that were distributed by Phoenix Digital.  Mr. May did not create, develop or otherwise participate in the creation or distribution of the "cheat" software that is at issue in this case, nor did he have a financial interest in such software or otherwise derive revenues from distribution of the subject "cheat" software.

## CLAIMS AND DEFENSES

### A.    Distribution of the Subject Software and Profits Derived Therefrom

Phoenix Digital does not contest that it distributed the subject "cheat" software between November, 2019 and February, 2021.  Phoenix Digital does not contest that it derived up to $65,000 in gross revenues for such distribution of the subject software.  These are undisputed matters and a trial as to these matters is both unnecessary and wasteful.

Given Bungie's wise election not to seek statutory damages in this matter, and given that "actual damages" in the form of Phoenix Digital's profits remain the best measure of damages should liability somehow be found, extensive testimony as to damages is again unnecessary and wasteful as, given the di minimis amount, a stipulated figure should be sought and obtained in the unlikely event Bungie is able to demonstrate copyright infringement.

Defendants' Trial Brief
Cause No. 21-CV-0811-TSZ                          Page 7

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

**B.      Copyright Infringement**

Bungie will not be able to make the requisite showings needed to establish copyright infringement.  At trial, no Bungie witness will (credibly) testify that he actually saw the code making up the accused "cheat" software.  At trial, no Bungie witness will testify that he did more than simply use the "cheat" software for about ten minutes.  No Bungie witness will testify he actually knows what is in the accused "cheat" software or how it operates.  At best, a Bungie witness will testify that the accused "cheat software" *must* infringe for the simple reason he can't (or won't) think of any other way a "cheat" program could be implemented. Bungie's case for infringement will be based on nothing more than simple guesswork and unfounded accusation.  It will not be based on competent evidence.

Significantly, no Bungie witness will demonstrate the "substantial similarity" that is needed to make a viable claim of copyright infringement.  Significantly, no Bungie witness will demonstrate the "access" that is needed to make such a claim either.   Instead, Bungie will use ill-defined jargon, such as ill-defined "code" that  "injects itself" into the game, in an effort to bamboozle both this Court and the Jury.  When pressed, Bungie will be unable to define exactly what these terms mean and, more importantly, how they show copying.

Nor will Bungie be able to show how, exactly, any or all of the Defendants supposedly copied Bungie's copyrighted works.   Bungie makes shotgun claims that Defendants, "directly," "contributorily" and/or "vicariously" infringed its copyrights.  Bungie will be left to its proofs as to what each such claim requires and how each accused Defendant supposedly engaged in the proscribed conduct.

In the case of James May, Mr. May will testify, and Phoenix Digital will confirm, that Mr. May had absolutely nothing to do with creating the "cheat" software that is the subject of this action, and that all "cheat" software actually created by him and distributed by Phoenix Digital was for games other than "Destiny 2" and games other than those created and distributed by Bungie.  Mr. May is innocent of any of any claim of copyright infringement – the only claim being pursued by Bungie here – and should not be here in the first place.  He

Defendants' Trial Brief
Cause No. 21-CV-0811-TSZ

Page 8

Mᴀɴɴ Lᴀᴡ Gʀᴏᴜᴘ ᴘʟʟᴄ
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

simply did not create the "cheat" software at issue here, did not participate in the distribution of the software, and did not derive any economic benefit from such distribution. Indeed, he is not and never has been a part of Phoenix Digital. He is simply a third-party "cheat" developer who has from time to time marketed his products using the Phoenix Digital service. Significantly, *none* of those products he has distributed through Phoenix Digital are directed toward any Bungie game or product. Mr. May's distribution of unrelated "cheats" makes him no more a part of Phoenix Digital than merely selling products through Amazon makes all such tens of millions of sellers senior executives with Amazon.

## C.     Mr. May's Counterclaim

In its blind zeal to file lawsuits against cheaters and "put cheaters and those who assist them on notice that Bungie does not and will not tolerate cheating in Destiny 2," Bungie, itself, has broken not only the law but the trust of the millions of players of its games who, perhaps naively, think that Bungie will abide by the terms of its own terms of use and not spy on those who sign up for an account and play the game. In particular, documents produced by Bungie itself establish that on more than one-hundred occasions, Bungie accessed Mr. May's personal computer far beyond the limits Mr. May had agreed to and secretly downloaded copyrighted files on Mr. May's computer. This will be established through the direct testimony of Mr. May himself, as well as Mr. May's expert witness, Brad A. LaPorte. This will be further demonstrated and corroborated by documents actually created and produced *by Bungie.*

Against these clear facts, Bungie will offer shotgun defenses along the familiar lines of, (1) "We didn't do it," (2) "Someone else did it" and (3) "Even if we did do it, you let us do it." In particular, Bungie is expected to argue, simultaneously, that no one accessed Mr. May's computer, that if someone did access Mr. May's computer, it was a third-party that did so, and that even if Bungie obtained private information from Mr. May's computer, Mr. May authorized it by agreeing to Bungie's Limited Software License Agreement.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Bungie is expected (and if permitted by the Court) to argue that none of the works improperly accessed by Bungie on Mr. May's computer is "copyrighted."  Although Mr. May agrees that none of the works on his computer is the subject of a formal copyright registration, such registration is not needed in order for a violation of the DMCA to occur.  Mr. May is expected to testify that he authored some of the subject works and, therefore, owns copyrights in them under applicable copyright law.  Mr. May will further testify that other works on his computer and accessed by Bungie are the copyrighted works of Phoenix Digital.  Again, formal registration is not necessary for these works to be the subject of a claim under the DMCA, and it is not legally necessary for Mr. May to own the copyrights in the copyrighted work(s) improperly accessed by Bungie.

As a further result of Bungie's violation of Mr. May's rights, it will be apparent that Bungie comes to court with unclean hands.  Whether Bungie should be rewarded for itself engaging in the very type of improper tactics it accuses others of using is an issue directly raised by Bungie's own actions.

### DAMAGES

As previously noted, the available damages under any theory of law presented in this simple, uncomplicated claim for copyright infringement have long been dwarfed by the attorneys' fees Bungie has voluntarily elected for itself and unfairly imposed on Defendants.  Bungie cannot show, and heretofore has not even attempted to show, that it, itself, incurred any actual, quantifiable harm as a result of Phoenix Digital's actions, even if those actions are hypothetically viewed as "infringing," which Bungie has not and cannot prove.  Under clearly established law, Bungie, at best, would receive Defendants' "profits," which Bungie's own expert witness *agrees* can be no more than $60,000 and, in reality, are far less than that.

As is not even seriously disputed by Bungie, itself, Defendants long ago voluntarily removed the subject "cheat" software from their product line shortly after receiving Bungie's "cease and desist" letter in November, 2019, and they have not, and will not, either re-introduce the product to the market or offer any other product to be used with Destiny 2 or

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

1   any other game offered by Bungie.  This was presented to Bungie long ago, and has even been

2   made formal by the preliminary injunction this Court issued early in the case and as to which

3   Defendants have complied with completely. Why a four day jury trial in federal court is

4   needed to address less than $10,000 in potential damages ostensibly resulting from a short-

5   lived, no longer extant product *that no longer appears* in the Phoenix Digital product line and

6   that *never caused any actual harm whatsoever* to Bungie, has not been explained.

7           Dated November 9, 2023.

8                                                   */s/ Philip P. Mann*
                                                    Philip P. Mann, WSBA No: 28860
9                                                   **Mann Law Group PLLC**
                                                    403 Madison Ave. N. Ste. 240
10                                                  Bainbridge Island, Washington  98110
                                                    Phone (206) 436-0900
11                                                  phil@mannlawgroup.com
                                                    Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28