THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' OPPOSITION TO BUNGIE'S MOTIONS IN LIMINE**<br><br>**Note on Motion Calendar: November 17, 2023**<br><br>**Oral Argument Requested** |

Defendants hereby oppose Bungie's Omnibus Motions In Limine (Dkt.# 204) for reasons stated herein.

**DEFENDANTS' RESPONSES TO BUNGIE'S MOTIONS**

**A.   Bungie's Motion in Limine No. 1 "The Jury Should Be Instructed as to Certain Findings in Arbitration Award."**

For reasons stated in Defendants' Motion in Limine No. 1 (DKT#212), the arbitration proceedings Bungie references involved altogether *different* claims than those presented here. This was made clear and was not even seriously disputed when this Court ruled in favor of Defendants on their motion to dismiss Bungie's originally filed Complaint in this action. (See, DKT#33.)  In connection with opposing Defendants' motion to dismiss, Bungie conceded that claims other than its claims for (1) copyright infringement, (2) trademark infringement and (3) false designation of

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ

Page 1

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

origin were fundamentally different from the remaining claims that it subsequently pursued in arbitration.[1]  The claims in the arbitration are simply, and undeniably *different* from the sole claim Bungie makes here.

Under clear and well-established law regarding claim preclusion, claim preclusion does not arise or apply when, as here, the claims involved are not identical. See, *Howard v. City of Coos Bay, an Or. Mun. Corp.,* 871 F.3d 1032, 1038-39 (9th Cir. 2017) ("Claim preclusion requires "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.").  Here there can be no legitimate argument that any of the claims addressed in the arbitration involved "copyright infringement" as alleged here.  Indeed, it was the very clear and indisputable fact that copyright infringement *is* materially different from the circumvention of technological measures and other claims made in the arbitration that this Court directed that Bungie's copyright infringement claim be kept in this Court, while the remaining claims be referred to arbitration.  Again, there can be no legitimate claim that claim preclusion has any bearing or relevance here.

As to the related doctrine of "issue" preclusion, the law is equally clear that issue preclusion does not apply unless the "issue" decided in an earlier case was essential and necessary to the disposition of the claim in the earlier case.  In particular, it is well established both in this Court and elsewhere that issue preclusion, "bars a party from relitigating an issue if (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) *the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action."*  See, *Certain Underwriters at Lloyd's, London v. Pettit,* No. C17-259RSM, 2018 U.S. Dist. LEXIS 33840, at *1 (W.D. Wash. Mar. 1, 2018) (emphasis supplied), citing *Clark v. Bear Stearns Co., Inc.,* 966 F.2d 1318 (9th Cir. 1992).

---

1    On November 2, 2023, Bungie, for the very first time, notified Defendants that, "Bungie will...not be pursuing its trademark infringement or false designation of origin claims at trial."  Bungie's sole remaining claim in this action is for copyright infringement only.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ                    Page 2

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

The holding in *Clark v. Bear Stearns Co., Inc.,* is highly pertinent here. In *Clark*, the Ninth Circuit directly addressed the issue of what issue preclusive effect, if any, an arbitration award can have in subsequent litigation and provided a detailed framework as follows:

> In applying res judicata and collateral estoppel to an arbitration proceeding, we make an examination of the record, if one exists, including any findings of the arbitrators. *See, e.g., Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1950). We must decide whether a rational fact-finder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose. *See Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made. *Id.*

966 F.2d 1318 at 1321.

Continuing, the court in *Clark* further stated that,:

> The party asserting preclusion bears the burden of *showing with clarity and certainty what was determined by the prior judgment.* United States v. Lasky, 600 F.2d 765, 769 (9th Cir.), cert. denied, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). "It is not enough that the party introduce the decision of the prior court; rather, *the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated.*" Id.

966 F.2d 1318 at 1321 (emphasis supplied).

Here, Bungie has made no showing whatsoever that the "issues" it claims were decided in arbitration were "necessary" to the decision reached by the arbitrator. On the contrary, it is clear that none of the issues Bungie claims were decided in arbitration were necessary to resolution of the claims actually raised in the arbitration.

First, whether the subject "cheat" software infringes any Bungie copyright was simply not a question before the arbitrator. Indeed, given that this Court expressly reserved Bungie's copyright infringement claim for resolution in this Court rather than in arbitration, it cannot legitimately be claimed that copyright infringement was either an issue before the arbitrator or a question that had to be resolved in arbitration. As a

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ        Page 3

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

matter of clear and indisputable record, and as expressly indicated in the arbitrator's February 21, 2023 Final Award, the issues actually before the arbitrator were Bungie's claims for:

1. Violation of the "Digital Millenium Copyright Act (DMCA)."  (Final Award, p. 10.)
2. Breach of Contract. (Final Award, p. 16.)
3. Tortious Interference (Final Award, p. 17.) and
4. Violation of the Washington "Consumer Protection Act."  (Final Award, p. 18.)

None of these claims turned on whether the "cheat" software that is at issue before this Court infringed any Bungie copyright.  Indeed, "Factual Finding 17" of the Final Award expressly notes that Bungie's claims for "copyright infringement, trademark infringement and false designation of origin" were not before the arbitrator and that, "The federal court action for these three counts remains pending."  (Final Award, p. 9.)

Bungie's demand for arbitration alleged two violations of the DMCA.  First, Bungie alleged "Circumvention of Technological Measures" under 17 U.S.C. § 1201(a).  Second, Bungie alleged "Trafficking in Circumvention Technology" under 17 U.S.C. §§ 1201(a)-(b).  A simple review of these statutes reveals that *neither* of them requires any showing whatsoever that the accused products infringe any copyright.  By their express terms, these statutes proscribe (1) "circumvent[ion] of a technological measure that effectively controls access to a [protected] work" in the case of Section 1201(a), and (2) "traffic[ing] in any technology, product, service, device, component, or part thereof, that...is primarily designed or produced for the purpose of *circumventing protection* afforded by a technological measure that effectively protects a right of a copyright owner…" in the case of Section 1201(b) (emphasis supplied).  Nowhere does either statute require that there be any proof of an underlying copyright infringement to maintain a claim.  Indeed, it would be nonsensical and contrary to the intent of these statutes to require that the "technology,

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ

Page 4

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

product, service, device, component, or part thereof," must independently infringe a copyright before trafficking in the technology becomes actionable. The laws against copyright infringement and the laws against technologies that enable one to bypass measures intended to protect against unauthorized access to copyrighted works are not the same and address different problems. There is and was simply no reason for the arbitrator to consider whether the "cheat" software distributed by Defendants itself infringed any copyright of Bungie, and any purported findings by the arbitrator addressing whether the "cheat" software infringed Bungie's copyrights (an issue reserved exclusively to this Court) are not the proper subjects of "issue" preclusion.

Finally, it is well-settled law that trial courts have broad discretion as to whether to apply issue preclusion, and this Court is by no means bound to accept the supposed findings of the arbitrator, no matter how wrong they may be. *See, Robi v. Five Platters, Inc.,* 838 F.2d 318, 325 (9th Cir. 1988) ("A trial court has broad discretion to apply offensive issue preclusion."); *Sec. & Exch. Comm'n v. Stein,* 906 F.3d 823, 831 (9th Cir. 2018) ("In *Parklane Hosiery*, the Supreme Court explained that although trial courts have 'broad discretion' to determine whether to apply offensive issue preclusion, the doctrine should not be applied when doing so 'would be unfair to a defendant.'"); *Paul v. RBC Capital Markets LLC,* No. C16-5616 RBL 2018 U.S. Dist. LEXIS 21227, at *1 (W.D. Wash. Feb. 8, 2018) ("Additionally, trial courts have broad discretion to take potential shortcomings or indices of unfairness into account even where the four prerequisite elements for collateral estoppel are established.")

Subject to Defendants' argument above that the arbitrator's Final Award has no bearing on the issues before this Court and have no preclusive effect as to the issues actually before this Court, Defendants will now address each of Bungie's motions in limine. In particular, and as discussed in detail below, Defendants do not contest several of the allegations made by Bungie, while the remaining allegations are either irrelevant and/or prejudicial to Defendants.

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

### 1. "Destiny 2 is Bungie's copyrighted work."

This motion is moot given that Defendants do not deny and do not challenge that Bungie claims copyrights in "Destiny 2" to the extent indicated in the four copyright registrations Bungie identifies in its Amended Complaint (DKT#34) filed May 9, 2023. As it is unclear, at present, precisely what documents were submitted to the Copyright Office in connection with providing the Office with a "Deposit" of a copy of the copyrighted work as required under copyright law, Defendants reserve their right to challenge whether the materials actually submitted by Bungie satisfy the requirements of the Copyright Office and/or comprise the materials Bungie claims have been "copied" in this action. However, Defendants do not dispute that Bungie' holds the four copyright registrations it identifies in its Amended Complaint, that its copies of the registration certificates are true and correct copies, and that the documents state what they state. For these reasons, this motion is immaterial and moot.

### 2. "May developed the Cheat Software sold on AimJunkies.com while working with and for the benefit of the other Defendants."

Throughout this case, Defendant James May has consistently and truthfully asserted that he is not and never was a part of Phoenix Digital, that he did not create or otherwise develop the "cheat" software that is the subject of this action and that he had nothing to do with the copyright infringement allegation made by Bungie in this case. In the arbitration below, Mr. May testified that, although he did independently develop a "cheat" for "Destiny 2," that "cheat" was never accepted by Phoenix Digital and that the "cheat" ultimately distributed by Phoenix Digital was not created or developed by him. Furthermore, that question or issue was not necessary to the arbitrator's decision.

The questions actually before the arbitrator affecting Mr. May were (1) Did Mr. May circumvent technological measures or traffic in technologies that do so?, and (2) Did Mr. May breach the terms of Bungie's Limited Software License Agreement?

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ           Page 6

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

Neither of these issues required a finding as to whether Mr. May actually created the subject "cheat" software actually distributed by Phoenix Digital.

In particular, in imposing personal liability on Mr. May, the arbitrator's Final Award vaguely states that, "[Mr. May]…acted in concert with Phoenix and its owners on matters giving rise to the claims that are the subject of this proceeding," (Final Award, p. 5.)   The arbitrator thereafter goes on to make nonsensical findings that demonstrate either a gross misunderstanding of the technology, such as "The cheat May used to gain access was the same cheat sold by Phoenix over the Aimjunkies website,"[2] or that are immaterial to the copyright infringement issue here, such as the arbitrator's finding that Mr. May engaged in "reverse engineering of Destiny 2" – an issue related to the breach of contract claim, but wholly unrelated to copyright infringement.

The fact of the matter, as will be demonstrated at trial, is that Mr. May did *not* create the "cheat" software that is at issue here.  That the arbitrator made nonsensical and blatantly false statements and "findings" to the contrary is not binding on this Court, particularly where, as here, it would be grossly unfair to Mr. May *not* to permit him to testify as to the true facts and let a jury decide if he is credible.  Finally, as these purported "findings" by the arbitrator were not critical to any of the issues actually before him, "issue preclusion" does not compel this Court to make equally false and embarrassing findings, particularly where, as here, the findings were not material and necessary to the actual issues decided during the arbitration.

---

2   Neither Bungie nor anyone else ever claimed that the subject"cheat" software is what provided Mr. May with "access" to Destiny 2, and the parties were, and remain in agreement that "cheat" software is used by players who have legitimate accounts with Bungie and already have access to the game.  During the arbitration, the allegations and testimony were that Mr. May used "spoofing" software, not the subject "cheat" software, to hide his identity and get around Bungie's bans.  That the arbitrator was in over his head on technical matters and made laughably erroneous findings that Bugie, itself, never even claimed does not compel this Court to do the same.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ                                      Page 7

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

**3. "To operate, the Cheat Software necessarily creates (a) unauthorized copies of the Destiny 2 code and (b) unauthorized derivative works."**

Bungie's motion in this regard is based on a single sentence that appears out of nowhere in the arbitrator's Final Award at p. 13. In particular, the arbitrator, in addressing Bungie's claim for "Trafficking" under the DMCA identifies three criteria, any one of which may be satisfied in order to make a claim for "trafficking." These criteria are expressly set out at p. 13 of the Final Award. *None* of these criteria requires or turns on a finding that the "technology, product, service, device, component or part" being "trafficked" itself must infringe a copyright. Nor is there any requirement that such technology, "necessarily create[s] unauthorized copies of the *Destiny 2* code and unauthorized derivative works." Aside from being factually wrong and something not actually claimed or litigated during the arbitration, this out-of-the-blue nonsensical "finding" by the arbitrator had nothing to do with the issues actually before him and was neither legally nor factually required in ruling on Bungie's "trafficking" claim. Under clear standards of issue preclusion, this Court is under no obligation to credit this unsupported, extraneous "finding" of the arbitrator and risks committing reversible error should it accept Bungie's flimsy arguments in this regard.

**4. The Cheat Software and loader were designed to circumvent protections in place in Destiny 2."**

This motion in limine is superfluous, irrelevant and redundant given that whether "the Cheat Software and loader were designed to circumvent protections in place in Destiny 2" has nothing to do with whether the software infringes any Bungie copyright. The issue before the Court and the issue to be presented to the jury is solely whether the accused software "infringes" of Bungie's copyrights. Under well-settled law, this, in turn, requires Bungie to establish, in part, (1) that Defendants had "access" to the claimed copyrighted work(s) and (2), whether the accused software is

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ

Page 8

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

"substantially similar" to Bungie's claimed copyrighted work(s).  Intent has no bearing on either of these issues, and whether the accused work was "designed to circumvent protections in place in Destiny 2" is entirely irrelevant to the claim now before this Court.  Indeed, by making this argument here, Bungie is either unaware that "circumvent[ing] protections in place in Destiny 2" was the issue actually litigated in the arbitration, or, more likely, is hoping this Court will not appreciate the difference.  Either way, this motion in limine has no bearing on the issue actually to be tried in this case and should be denied as being immaterial to any issue actually in this case.

### 5. "Defendants' violations of the DMCA anticircumvention statute were willful."

Again, this motion addresses an issue relevant only to the arbitration and in no way relevant here.  Whether Defendants violated "the DMCE anticircumvention statute,' willfully or not, is absolutely irrelevant to the single claim for copyright infringement Bungie asserts here.  Again, this motion in limine has no bearing on the issue actually to be tried in this case and should be denied as being immaterial to any issue in this case.

### 6. "Defendants sold at least 1,316 copies of the Cheat Software."

This motion, too, is redundant and unneeded.  Defendants do not deny that they distributed the subject "cheat" software and have never denied doing so.  Instead, they deny that such admitted distribution infringes any legitimate right of Bungie.

Throughout this case, the Phoenix Digital defendants have provided the records they have regarding the number of units distributed by Phoenix Digital.  In addition, Bungie has obtained records and confirmation of such sales from third party sources such as PayPal.  No defendant has denied the number of units that were distributed, nor have they denied the gross revenues they received from such distributions.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ    Page 9

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

To date, Bungie is apparently uncertain as to what exact number of distributions it will claim at trial that Phoenix Digital made, but *all* numbers asserted by Bungie have centered around and no more than about 1500.

Phoenix Digital does not contest this number, nor will it contest any reasonable number asserted by Bungie.[3]  Indeed, Defendants believe that a stipulation as to the number of units distributed by Phoenix Digital and the gross revenues received by Phoenix Digital (namely, the number of units multiplied by $39.50 or roughly $60,000) will greatly simplify and shorten the trial and avoid needless testimony and evidence regarding an issue not seriously in dispute.

Again, this motion is largely unnecessary and can be resolved by way of a reasonable stipulation of the parties.

**7.     "May breached Bungie's Limited Software License Agreement."**

This motion, too, is directed to an issue addressed in the arbitration and has no bearing on Bungie's sole claim for copyright infringement here.  Whether Mr. May "breached Bungie's Limited Software License Agreement" has no bearing on whether the subject "cheat" software at issue here infringes any Bungie copyright.  As with Bungie's numerous other attempts to bring separate and unrelated "findings" from the arbitration into this case, this, too, is an attempt to unfairly prejudice the jury against Mr. May with irrelevant and prejudicial evidence that should and must be barred under Rules 401 and 403 of the Federal Rules of Evidence.

**8.     "The Phoenix Digital Defendants spoliated evidence."**

Again, the only possible justification for this motion is to unfairly prejudice the jury against Phoenix Digital.  This Court has already considered and *rejected* Bungie's argument that Bungie should be awarded a summary disposition in its favor as a result of the supposed "spoliation" (See DKT#216).  In its order, this Court expressly ruled

---

3    In this regard, Phoenix Digital will not contest a claimed number in the range of 1500 units, but cannot and will not accept an unsupported claim by Bungie that the number could be substantially higher than that, e.g., tens of thousands, etc.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ                                Page 10

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

that, "a lesser sanction in the form of adverse jury instructions is sufficient to address any prejudice Plaintiff experienced because of Defendants' spoliation." By asking for a ruling that "spoliation" is dispositive of the entire case and that instructions should be given directing the jury to find in Bungie's favor, Bungie is asking this Court to reconsider its clear ruling and, in essence, award it summary judgment in its favor, something this Court properly elected *not* to do in denying Bungie's motion for summary judgment.

B.        **"MOTION IN LIMINE NO. 2: EXCLUSION OF EVIDENCE"**

Defendants substantively respond to Bungie's "Motion in Limine No. 2" as follows:

**1.        "Defendants should be precluded from calling Don McGowan as a witness."**

Although he is a lawyer representing Bungie, Mr. McGowan is not being called to testify as to any privileged matters he may have discussed with Bungie but solely to testify with respect to various public statements he knowingly and voluntarily provided to the press regarding Bungie's well-publicized campaign to sue "cheaters," including but not limited to the Defendants here.

Furthermore, naming Mr. McGowan now as a trial witness as to his own public statements and not earlier is harmless and without prejudice to Bungie. Mr. McGowan has been active behind the scenes in this case from its very inception, and he will not be caught either uniformed or unfairly surprised by either the existence of this case or its issues. His testimony, as revealed in the public statements he has made in support of Bungie's campaign against, "cheaters," is directly relevant to the question of whether Bungie made a relevant inquiry into the facts of this case or proceeded on a, 'sue first, ask questions later" basis. This goes directly to the question of whether Bungie had actual facts to support this case or sued with reckless disregard for Defendants' rights. Again, nothing in this regard implicates or is affected by the

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ          Page 11

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

attorney-client privilege and is based entirely on the public statements Mr. McGowan knowingly and voluntarily provided to the press.  There is no prejudice either to Mr. McGowan or Bungie in calling Mr. McGowan as a witness and, at worst, his testimony may simply be unhelpful to the jury in reaching its decision.  As Mr. McGowan is likely to be present for the trial anyway, there is little inconvenience either to him or Bungie in having him take the stand and submiting to what is likely to be a twenty minute (or less) examination.

### 2. "Defendants should be precluded from introducing evidence or testimony regarding Bungie's alleged breaches of Phoenix Digital's Terms of Service."

This motion in limine is not well founded.  Although Phoenix Digital's counterclaims have been dismissed, Bungie is not relieved of its burden of substantively proving its case for copyright infringement.   In this regard, Bungie remains responsible for introducing, among other things, evidence of "substantial similarity" between the accused "cheat" software and Bungie's copyrighted computer programs.  This necessarily involves Bungie's being able to establish that it conducted a sufficient review of the subject "cheat" software to make claims in this regard.

It is expected that Bungie will testify that one or more of its employees obtained a copy of the "cheat" program at issue and made at least some sort of evaluation of it.  Whether Bungie has a provable or plausible claim in this regard depends substantially on the credibility of the witness (likely, "John Doe") making the claim.  Whether Mr. Doe is open and upfront about the deception he used in obtaining the "cheat" program he claims to have obtained goes directly to his credibility.  This evidence is directly related to credibility and constitutes precisely the type of information that can be used for impeachment purposes.  Furthermore, Defendants affirmative and pleaded defense of "unclean hands" remains regardless of whether Phoenix Digital's counterclaims

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ                        Page 12

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900

remain. Bungie's actions in its dealings with Phoenix Digital in the open market are relevant to this defense, even in the absence of the Phoenix Digital counterclaims.

### 3. "Defendants should be precluded from introducing evidence or testimony regarding Scott K. Kraemer, his opinions, or his expert report."

With this motion in limine, Bungie is once again playing games. In particular, Bungie uses this motion in yet another attempt to preclude testimony at trial by any expert on behalf of Mr. May on his counterclaim.

In particular, Bungie claims that, with the substitution of Mr. Brad LaPorte for Mr. May's prior expert, Mr. Scott K. Kraemer, there is no need to receive any opinion from Mr. Kraemer. What Bungie neglects to tell this Court is that, after taking Mr. LaPorte's deposition on September 28, 2023, Bungie has refused to pay *any* portion of Mr. LaPorte's invoice for preparing for, and appearing at, the deposition. This not only is in violation of Fed.R.Civ.P. 26(b)(4)(E)(i) which requires Bungie to "pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)" Bungie's blatant failure to abide by its clear obligations under Rule 26 has resulted in Mr. LaPorte's indication that he may not be available to testify in the event his invoice is not paid in advance of trial. Coupled with Bungie's pending motion to exclude Mr. LaPorte's testimony altogether, in part, because it "exceeds" the opinion previously expressed by Mr. Kraemer, it is clear that Bungie continues to play procedural games in an attempt to deny Defendants a fair trial on the merits.

The fact remains that Mr. Kraemer, despite his withdrawal under intimidation and threats from Bungie, expressed opinions that were timely disclosed in this case, that are the subject of his timely served expert report and that were confirmed by his subsequent deposition testimony. Should Mr. LaPorte be precluded from testifying, either because of Bungie's clear failure to abide by its obligations under Fed.R.Civ.P. 26(b)(4)(E)(i) or its pending motion to exclude Mr. LaPorte altogether, Defendants

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ
Page 13

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

have a clear right under Fed.R.Civ.P. 32 (a)(4) to present Mr. Kraiemer's prior deposition testimony at trial. Bungie's latest attempt to game the system by way of a motion in limine should be denied, particularly if Bungie succeeds in chasing away yet another expert witness willing to testify on Mr. May's behalf.

### 4. "Defendants should be precluded from testifying regarding how the Cheat Software or loader operate on a programming level."

This motion in limine is self-contradictory in light of Bungie's accusations against Mr. May.

Defendants have always contended that they did not develop the "cheat" software at issue here, that they never possessed the code for the "cheat" software at issue here and that they do not know how the "cheat" software at issue here operates. To that extent, this motion is redundant as the Phoenix Digital defendants have no plans to testify at trial that they know how the "Cheat Software" operates on a programming level.[4] However, Bungie continues to make the (false) claim that *Mr. May*, not someone else, (i.e., Mr. Banek) developed the "cheat" software that Phoenix Digital distributed, and has, itself, filed a motion in limine seeking to prevent Mr. May from denying this. Clearly, if Mr. May, himself, created the "cheat" software at issue here he obviously knows how that cheat software operates and should be free to testify to that effect.[5] In short, Bungie needs to decide whether it accepts that Mr. May did not develop the subject software and therefore does not know how it operates, or whether to argue (falsely) that Mr. May *did* create that software and, therefore, necessarily does know how it operates. Bungie cannot have it both ways.

---

[4] Defendants maintain that the "loader" software which is nowhere mentioned in either of the two complaints Bungie has filed in this case, is not properly before this Court. That is the subject, in part, of Defendants' pending motions in limine.

[5] Mr. May has testified that he did create a "cheat" for Destiny 2, but that Phoenix Digital never distributed it and, instead, distributed a different "cheat" developed by Mr. Banek. While Mr. May does not know how the "cheat" distributed by Phoenix Digital operates, he most certainly does know how the "cheat" *he* developed does.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ
Page 14

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

Any attempt by Bungie to claim that Mr. May somehow wrote an effective "cheat" program but does not know what the program contains or how it operates is nonsensical and should not be endorsed by any court seeking to maintain its legitimacy and credibility.

### C. "Motion In Limine No. 9: John Doe's Identifying Information Should Remain Highly Confidential through Trial."

A hallmark of our legal system is that court proceedings are conducted openly and publicly and not in secret. That especially applies here where this is simply just another business dispute between publicly operating businesses who, fundamentally, are simply arguing about money. This case does not involve deep-cover agents putting their lives on the line to fight "terrorists" or organized crime or others who might resort to violence against such agents should their identity and role become knows. It does not involve minors who may be frightened and intimidated by the legal process.[6] It does not involve victims of sexual or other crimes of a highly sensitive nature. At best, Bungie's motion is prompted simply because, "John Doe" may be uncomfortable having it known that he, among other things, secretly spies on others to obtain information to be used against them in lawsuits. Simply being "uncomfortable" is a claim that can be made by virtually all lay witnesses in a lawsuit, and the system of civil justice simply could not work and exist if all such witnesses were able to testify anonymously or under pseudonyms.

Furthermore, given that Bungie knowingly elected to delegate a necessary task in this case to someone likely to be called as a material witness at trial, making that delegation to a person afraid to testify under his own name is a problem Bungie created for itself, and it should not be a basis for restricting Defendants' ability to defend themselves in this action. As we are on the eve of trying this case before a jury

---

6    Indeed, Bungie did not hesitate to sue a minor in this very Court and publicly name him by name until this Court properly ordered it to use initials instead in accordance with the Local Rules.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ                    Page 15

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA 98110
Phone: 206.436.0900

in open court, Bungie knew or should have known that its options would be either to resolve the case on private terms, or present its witnesses in court openly, publicly and subject to full cross examination.  Again, Bungie has not demonstrated that "John Doe" is entitled to special protections not available to the tens of thousands of other witnesses who testify openly and under their real names every year in courts throughout the country.

Finally, it is unclear as to how, exactly, Mr. Doe's testimony is to take place. Will he testify behind a screen with his voice disguised?  Will he wear a bag over his head to prevent spectators from recognizing who he is?  Will the courtroom be cleared of spectators when he testifies?  Will Defendants be forced to leave the courtroom as well?  Bungie's motion leaves such questions unanswered, and for this reason alone should be denied.

## CONCLUSION

For all the foregoing reasons, Bungie's motions in limine should be denied as being either irrelevant to the issues actually to be tried or on the substantive grounds stated herein.

Dated November 13, 2023.

*/s/ Philip P. Mann*
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

I certify that this memorandum contains 5321 words in compliance with the Local Civil Rules.

Opposition to Bungie Motions in Limine
Cause No. 21-CV-0811-TSZ

Page 16

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Islande, WA  98110
Phone:  206.436.0900