UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BUNGIE, INC.,<br><br>    Plaintiff,<br><br> v.<br><br>AIMJUNKIES.COM; PHOENIX DIGITAL GROUP, LLC; DAVID SCHAEFER; JORDAN GREEN; JEFFREY CONWAY; and JAMES MAY,<br><br>    Defendants. | No. 2:21-cv-00811<br><br>**PLAINTIFF BUNGIE, INC.'S RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE***<br><br>NOTE ON MOTION CALENDAR<br>November 17, 2023<br><br>**REDACTED VERSION FILED PUBLICLY** |

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................... 1

II.    Defendants' Motions in Limine ........................................................... 1

       A.     Defendants' Motion to Preclude Reference to the Arbitration Proceedings
              and Arbitration Award. ................................................................. 1

       B.     Defendants' Motion to Preclude Reference to Pre-Trial Discovery Matters.......... 5

       C.     Defendants' Motion to Preclude Reference to "Cheat" Software ........................ 7

       D.     Defendants' Motion to Preclude Expert Testimony Beyond Scope of
              Expert Reports or Deposition Testimony ............................................ 9

       E.     Defendants' Motion to Preclude Testimony of Undisclosed or Late
              Disclosed Experts.......................................................................... 10

       F.     Defendants' Motion to Preclude Reference to Other Bungie Lawsuits................ 11

       G.     Defendants' Motion to Exclude Reference to, or Admission of, Bungie
              Source Code Not Produced in Discovery ............................................. 11

       H.     Defendants' Motion to Preclude Theories of Liability Based on the
              "Loader"...................................................................................... 13

       I.     Defendants' Motion to Preclude Introduction of Deposition Video and/or
              Transcript of David Schaefer ........................................................... 15

III.   CONCLUSION................................................................... 17

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – i
(No. 2:21-cv-00811)

164392105.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Barrett v. Negrete*,
   No. CIV02-CV-2210-LCAB, 2010 WL 2106235 (S.D. Cal. May 25, 2010)..........................6

*Bullard v. Wastequip Mfg. Co., LLC*,
   2015 WL 13757143 (C.D. Cal. May 4, 2015) ............................................9, 10, 15

*Clements v. Airport Authority of Washoe Cty.*,
   69 F.3d 321 (9th Cir. 1995) ................................................................4

*Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*,
   No. C-00-4852, 2001 WL 34118030 (N.D. Cal. June 13, 2001)............................13

*Elliot v. Turner Constr. Co.*,
   381 F.3d 995 (10th Cir. 2004) ........................................................5, 17

*Gamboa v. King Cty.*,
   562 F. Supp. 2d 1288 (W.D. Wash. 2008) .................................................4

*GCA Corp. v. Chance*,
   No. C-82-1063-MHP, 1982 WL 1281 (N.D. Cal. Aug. 31, 1982) .........................13

*Kowalski v. Anova Food, LLC*,
   No. CIV. 11-00795HG-RLP, 2015 WL 1119411 (D. Haw. Feb. 18, 2015)......................8, 9

*Leaschauer v. Huerta*,
   667 F. App'x 253 (9th Cir. 2016) ..........................................................4

*Merchant Transaction Systems v. Nelcela, Inc.*,
   No. CV 02-1954-PHX-MHM, 2009 U.S. Dist. LEXIS 64150 (D. Ariz. July
   24, 2009) ...........................................................................12

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
   No. 14-CV-03953-BLF, 2015 WL 4593439 (N.D. Cal. July 30, 2015)...................6

*NTCH-WA, Inc. v. ZTE Corp.*,
   921 F.3d 1175 (9th Cir. 2019) ..........................................................2

*Randazzo v. Ralphs Grocery Co.*,
   No. 2:14-CV-1042-GMN-GWF, 2015 WL 4506194 (D. Nev. July 23, 2015) ...............16, 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Shenon v. New York Life Ins. Co.*,
　No. 218CV00240CASAGRX, 2020 WL 1317722 (C.D. Cal. Mar. 16, 2020) ..................9, 15

*Tripati v. Henman*,
　857 F.2d 1366 (9th Cir. 1988) ...........................................................................................5

*United States v. McCloud*,
　585 F. App'x 881 (6th Cir. 2014) .......................................................................................9

*Wolfgang v. Mid-America Motorsports, Inc.*,
　111 F.3d 1515 (10th Cir. 1997) .........................................................................................16

## STATUTES

9 U.S.C. § 13 ..................................................................................................................................2

## RULES

Fed. R. Civ. P. 32(a)(3) ................................................................................................................15

Fed. R. Evid. 403 ...........................................................................................................................3

Fed. R. Evid. 404(b) ..................................................................................................................5, 17

## REGULATIONS

37 C.F.R. § 202.20(c)(2)(vii) .......................................................................................................12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# I.   INTRODUCTION

Although Defendants filed nine motions *in limine*, many lack sufficient specificity to determine the disputed issue.  For instance, Defendants seek to generally preclude expert testimony "beyond the scope of expert reports or deposition testimony," without listing the specific issues they believe needs to be excluded.  Defendants also seek to exclude relevant evidence that could "put them in a bad light," such as previously-entered findings of facts regarding Defendants' tortious conduct, their spoliation of evidence, and their egregious deposition conduct.   That evidence is relevant to Bungie's substantive claims, James May's counterclaim, and Defendants' credibility, and Defendants' motions to exclude it should be denied.

Defendants' other motions can also easily be dismissed.  Defendants seek to preclude the use of the word "cheat" at trial despite that ***Defendants*** referred to the software exclusively as a "cheat" and that Defendants ***stipulated*** to numerous findings of facts that describe the software at issue as the "***Cheat Software***."  Defendants also seek to preclude evidence regarding Defendants' cheat loader, which injects the cheat software into the *Destiny 2* process, claiming that the word "loader" was never used in these proceedings or the subject of discovery.  That's false.  The loader and its functionality were substantively pleaded in Bungie's amended complaint, discussed in depth at each of Defendants' depositions, opined on in Bungie's expert report, and addressed at the arbitration during the earlier portion of these proceedings.  Those motions should also be denied.

For the reasons provided below, each of Defendants motions *in limine* should be denied.

# II.   DEFENDANTS' MOTIONS IN LIMINE

## A.   Defendants' Motion to Preclude Reference to the Arbitration Proceedings and Arbitration Award.

Bungie asserted nine claims against Defendants related to their development and sale of the Cheat Software.  Defendants requested that Bungie remove the arbitrable claims, Bungie obliged by submitting a demand for arbitration in connection with its fourth through ninth causes

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 1
(No. 2:21-cv-00811)

164392105.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

of action, and the Court stayed those six causes of action and referred them to be resolved by arbitration. Dkt. Nos. 28 at 12-13, 33 at 12-13. Following an evidentiary hearing on the merits, a JAMS-appointed arbitrator—Judge Ronald Cox (Ret.)—found Defendants liable for each of the arbitrated claims, awarded Bungie a total monetary award of $4,396,222, and entered a permanent injunction against Defendants. Dkt. No. 89-1 ("Final Award"). This Court confirmed and adopted the Final Award as its own, entering partial judgment against Defendants on June 13, 2023. Dkt. Nos. 140, 141.

In the Final Award, Judge Cox made numerous findings relevant to Defendants' liability on Bungie's remaining federal claim for copyright infringement. As previously found by this Court, these findings are binding in the remainder of these proceedings. Dkt. No. 201 (Order Granting Partial Motion for Summary Judgment) (citing *Spivak v. Alphabet Inc.*, No. C20-1480, 2021 WL 535211, at *7 (W.D. Wash. Feb. 12, 2021)); *see also NTCH-WA, Inc. v. ZTE Corp.*, 921 F.3d 1175, 1180 (9th Cir. 2019) ("A federal-court order confirming an arbitration award has "the same force and effect" as a final judgment on the merits, 9 U.S.C. § 13, including the same preclusive effect.") (collecting cases).

By its motion *in limine*, Bungie seeks to confirm that certain findings in the Final Award should be given preclusive effect. Dkt. 205. Defendants have conceded this point, and the others raised in Bungie's motion *in limine*, by failing to timely respond to Bungie's motion. Bungie's motion in limine was noted for November 10, 2023. Defendants' response brief was due on November 6, 2023, but Defendants did not file a response until November 13, 2023. *See* LCR 7(d)(4).

While Defendants failed to time respond to Bungie's motion *in limine* regarding the Final Award, they seek, through their own motion *in limine*, to preclude any reference to the arbitration proceedings or the Final Award, asserting that the findings in the arbitration are irrelevant and prejudicial. Dkt. No. 212 ("Defs.' MIL") at 2-3. Defendants are wrong on both accounts.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    First, Judge Cox's findings in the arbitration are highly relevant. In fact, they are

2    dispositive on many issues. For instance, after considering evidence and argument from both

3    parties, Judge Cox held that "May reverse engineered Destiny 2 **in order to help develop a cheat**

4    **for Destiny 2 that Phoenix [Digital] sold on its website**." Final Award at 12 (emphasis added).

5    He also found that, in creating the Cheat Software, May was working as an agent of the other

6    Defendants. *Id.* A finding that Defendants created the Cheat Software at issue goes directly to the

7    heart of Bungie's copyright claim, and was disputed by Defendants. *See* Amend. Compl. ¶¶ 2, 49

8    (alleging Defendants developed Cheat Software) *c.f.*, Dkt. No. 72 (Defendants' Answer) ¶¶ 2, 49

9    (denying).

10   Judge Cox also held that "[t]o operate, the cheats necessarily create unauthorized copies of

11   the *Destiny 2* code and unauthorized derivative works." Final Award at 13. That finding, too, is

12   central to Bungie's copyright claim. There can be no serious argument that whether the cheat

13   "creates unauthorized copies of the *Destiny 2* code" or creates "unauthorized derivative works" is

14   somehow **irrelevant** to a claim of copyright infringement.

15   This Court also adopted numerous other findings which are relevant to Bungie's copyright

16   claim. *See, e.g.*, Dkt. No. 201 (Order Granting Partial Mot. for Summary Judgment) (holding that

17   Phoenix Digital's Terms of Service are void as illegal based on the preclusive effect of "the Final

18   Arbitration Award's finding that the Cheat Software and Loader Software violated the DMCA");

19   *see also* Final Award at 14 (Cheat Software was designed to circumvent measures protecting

20   *Destiny 2* from being copied, evincing access); *id.* at 16-17 (May breached Bungie's Limited

21   Software License Agreement, terminating any license to use *Destiny 2*); *id.* at 11 (Bungie owns

22   copyrights in *Destiny 2*). Defendants' argument that such findings are irrelevant falls flat.

23   Second, the findings adopted by this Court are not substantially more prejudicial than

24   probative under FRE 403. It's nonsensical to claim that the prior finding of access to and the

25   unauthorized copying and creation of derivative works of *Destiny 2* is substantially more

26   prejudicial than relevant **to a copyright infringement claim**. To the contrary, prohibiting

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

reference to those findings would significantly prejudice **Bungie**. For example, Bungie has already proved that Defendants accessed and reverse engineered *Destiny 2* and developed the Cheat Software. Final Award at 12. Bungies proved that the Cheat Software copies the *Destiny 2* code and makes derivative works. *Id.* at 13. And Bungie proved that Defendants' tortious conduct was willful. *Id.* at 14. Moreover, Defendants already had an opportunity to—and in fact did—fully litigate the facts and issues resolved by Judge Cox at the arbitration.[1] Defendants are not entitled to a second bite at the apple in defending that claim, and Bungie should not be forced to re-litigate conclusively resolved issues. Indeed, the doctrine of issue preclusion exists to prevent the prejudice caused to the parties and courts that arises when there are inconsistent rulings on the same facts—which is exactly what Defendants are seeking by attempting to exclude any reference to the arbitration award. *Clements v. Airport Authority of Washoe Cty.*, 69 F.3d 321, 300 (9th Cir. 1995) ("Preclusion doctrine encompasses vindication of both public and private interests. The private values protected include shielding litigants from the burden of re-litigating identical issues with the same party, and vindicating private parties' interest in repose. The public interests served include avoiding inconsistent results and preserving judicial economy."); *Gamboa v. King Cty.*, 562 F. Supp. 2d 1288, 1299 (W.D. Wash. 2008) ("[Issue preclusion] relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and by preventing inconsistent decisions, encourages reliance on adjudication.").

Defendants also include a footnote that they have appealed this Court's order confirming the Final Award. Defs.' MIL at 2 n.2. However, as this Court has already held, an undecided appeal does not prevent a judgment from having preclusive effect. *Leaschauer v. Huerta*, 667 F. App'x 253, 254 (9th Cir. 2016) ("[T]he preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided.") (quoting *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1998)); *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988)

---

[1] A forum and method of resolution that they asked for. Bungie bifurcated this lawsuit between arbitration and federal court at Defendants' request, at the cost of adding significant complexity and expense.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  ("The established rule in the federal courts is that a final judgment retains all of its res judicata

2  consequences pending decision of the appeal.") (cleaned up); Dkt. No. 201 at 11 n.6.

3      Lastly, Defendants include a passing, unsupported cite to FRE 404(b), arguing that

4  referencing the Final Award would somehow violate FRE 404(b). Not so. The findings in the

5  Final Award regarding Defendants' tortious actions are not unrelated, prior bad acts. **Those**

6  **actions are the heart of this litigation: accessing, copying and modifying *Destiny 2* to create**

7  **a cheat.** Thus, Defendants' tortious conduct, as described in the Final Award, is not being used

8  as character evidence; the tortious conduct itself—e.g., the fact that Defendants' cheat software

9  "necessarily creates unauthorized copies of the *Destiny 2* code"—is at issue in these proceedings.

10  Fed. R. Evid. 404(b) (prohibiting only [e]vidence of any **other** crime, wrong, or act…") (emphasis

11  added); *see also Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1004 (10th Cir. 2004) (explaining that

12  FRE 404(b) applies only to evidence "extrinsic to the plaintiff's claim," but that "direct or

13  intrinsic" evidence to the plaintiff's claim is not barred by FRE 404(b) because "it is part of the

14  same tortious event").

15      Reference to the arbitration award is permissible and necessary in the remainder of this

16  case. The jury should be instructed as to the truth of the relevant findings that Bungie already

17  proved, and Bungie is entitled to tell the fulsome story of Defendants' infringing actions. The

18  Court should deny Defendants' motion *in limine*.

19  **B.      Defendants' Motion to Preclude Reference to Pre-Trial Discovery Matters**

20      Defendants next move to preclude reference to the sanctions entered against Defendants in

21  this matter, again asserting they are irrelevant and prejudicial. Defs.' MIL at 3-4. Defendants are

22  wrong.

23      As an initial matter, in the Court's November 1, 2023 Order granting discovery sanctions

24  against Defendants, the Court ordered that it would instruct the jury as to the spoliation, and held

25  that that Bungie is allowed to present evidence of Defendants' spoliation. Dkt. 216 at 19. That

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   appears to moot Defendants' motion *in limine* on this issue, at least as to the Court's November

2   Order.

3       Defendants also do not identify which sanction(s) they seek to preclude, and whether they

4   seek to exclude only the Court's orders or the underlying facts about Defendants' discovery

5   violations. However, they have been sanctioned at least three times in these proceedings in

6   connection with their efforts to disrupt and prevent Bungie's legitimate discovery efforts including

7   for their spoliation of evidence (Final Award at 19-20; Dkt. No. 216) and for their harassing and

8   unprofessional behavior, (Dkt. No. 142 at 1-2). Those actions, "designed to frustrate Bungie's

9   legitimate discovery efforts," (Dkt. No. 142), are relevant to the evidence Bungie is able to present

10  at trial to support its claims, and more significantly, the evidence Bungie is **not** able to present due

11  to Defendants' spoliation or discovery conduct. Defendants' spoliation is especially relevant in

12  this case where they plan to argue that Bungie cannot meet its burden because it does not have a

13  copy of the Cheat Software. *See* Dkt. No. 219 (Defendants' Trial Brief) at 8 (explaining

14  Defendants' primary defense to copyright infringement is that Bungie has not viewed the source

15  code of the Cheat Software). Under such circumstances, Defendants' spoliation of evidence,

16  "including access to the Cheat Software," is highly relevant. Dkt. No. 216 at 3.

17      The cases Defendants rely on are inapplicable. In *Monterey Bay*, the sanctions order that

18  was precluded was from a **different** litigation. *Monterey Bay Mil. Hous., LLC v. Pinnacle*

19  *Monterey LLC*, No. 14-CV-03953-BLF, 2015 WL 4593439, at *7 (N.D. Cal. July 30, 2015). The

20  court in *Monterey* also does not discuss the details of the order that was precluded, other than to

21  note it was one for monetary sanctions. *Id.* Here, the orders were entered in **this** proceeding, and

22  go directly to Defendants' efforts to hide or destroy evidence relevant to **this** proceeding. Dkt.

23  Nos. 142, 216. The other case Defendants rely on, *Barrett v. Negrete*, is also inapposite. Defs.'

24  MIL at 4. In *Barrett*, the court excluded a sanction order regarding a party's failure to "jointly

25  prepare a revised proposed pretrial order." *Barrett v. Negrete*, No. CIV02-CV-2210-LCAB, 2010

26  WL 2106235, at *6 (S.D. Cal. May 25, 2010). Failing to participate in the preparation of a pretrial

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

order simply bears no similarity to a party's intentional efforts to frustrate legitimate discovery efforts and hide evidence.

Here, where one party has intentionally destroyed or failed to preserve evidence multiple times and frustrated Bungie's discovery efforts—including during the pendency of this trial—it is highly relevant to the claims at issue. Bungie should not be precluded from entering evidence or eliciting testimony regarding Defendants' sanctioned conduct.

**C.     Defendants' Motion to Preclude Reference to "Cheat" Software**

The parties, the arbitrator, and this Court have repeatedly and consistently referred to the software at issue as the Cheat Software with no objection. Now, on the eve of trial, Defendants seek to prohibit the use of the word "cheat." Defs.' MIL at 4. But, **by Defendants' own admissions**, "cheats" are exactly what is at issue here.

Each of the Defendants refer to the software that they develop and sell as "cheats." May testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ Declaration of Christian Marcelo ("Marcelo Decl."), Ex. A (May 2022 Dep. Tr.) at 26:12-16; 168:20-169:18 (emphasis added).[2] Schafer testified that Phoenix Digital's sole business purpose was to develop cheats and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B (October 28, 2022 Schaefer Dep. Tr.) at 42:16-43:8 (emphasis added). Green and Conway consistently made similar reference to "cheats" at their depositions. Ex. C (Green 2022 Dep. Tr.) at 49:14-22 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. D (Conway 2022 Dep. Tr.) at 14:23-15:1 ("▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added).

Defendants also publicly advertised the products they sold on their websites as "**CHEATS**," named the *Destiny 2* Cheat Software at issue the "DESTINY 2 **CHEAT**", and touted their own business in a press release about their (supposed) acquisition as a "Leading Independent

---

[2] All exhibits are attached to the Marcelo Declaration unless otherwise noted.

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 7
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164392105.3

US Videogame **Cheat** Distributor, AimJunkies" that distributes "highly-acclaimed **cheats**," maintains a "world class **cheat** library," provides "live game **cheats** services and technology expertise," employs "50 independent contractor **cheat** developers," and was described in that press released by Schaefer as "distributing **cheats**." Exs. E, F. Just one example of Defendants' advertising for the Cheat Software is below, replete with the word "cheat":



Ex. E.

Even in the recently-filed joint proposed Pretrial Order, Defendants agree to numerous admitted facts that include the word "cheat". Dkt. No. 227 at 6 ¶ 8 ("Schaefer personally controlled every aspect of the sale of cheat software, including communicating with cheat software developers, deciding whether to sell a cheat…and deciding when to stop selling a cheat."), ¶ 9 ("On or around December 17, 2019, Phoenix Digital began distributing the first version of the Cheat Software"), ¶¶ 10-13.

There is no dispute here that Defendants sold **cheats** for videogames, and that the software at issue is "cheat software." Defendants' request to not describe the Cheat Software as a "cheat" during the trial is unreasonable and impractical. It may not even be possible. In any case, changing course now, against the weight of Defendants' own descriptions of the software as "cheat software" would confuse everyone involved, including the jury.

The use of the word "cheat" is also not unfairly prejudicial. This is not a case like *Kowalski*, which Defendants rely on, in which a party is seeking to use "inflammatory language" as a

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 8
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164392105.3

descriptor. *Kowalski v. Anova Food, LLC*, No. CIV. 11-00795HG-RLP, 2015 WL 1119411, at *4 (D. Haw. Feb. 18, 2015). It is undisputed that the software at issue is cheat software—that's what Defendants call it. There is no prejudice in calling the product what it actually is. *See, e.g.*, *United States v. McCloud*, 585 F. App'x 881, 887 (6th Cir. 2014) (explaining that "[i]f the term "kickback" is an accurate description of the payments, it cannot be said to mislead the jury nor, for that matter, prejudice them").

Defendants developed cheats, sold cheats, and called them cheats. They cannot now prevent Bungie from using the same terminology, and their motion should be denied.

## D.  Defendants' Motion to Preclude Expert Testimony Beyond Scope of Expert Reports or Deposition Testimony

Defendants make a vague motion to preclude expert testimony beyond the scope of the expert's reports, disclosures and deposition testimony. Defs.' MIL at 5-7. However, Defendants' motion lacks specificity as to what testimony they seek to exclude. While Bungie does not disagree with the generally accepted rule that experts are limited to offering expert opinions within the scope of their reports, disclosures, or other testimony provided in the case, Defendants' motion should be denied for lack of specificity as to what it seeks to preclude. *Shenon v. New York Life Ins. Co.*, No. 218CV00240CASAGRX, 2020 WL 1317722, at *6 (C.D. Cal. Mar. 16, 2020) (denying motion *in limine* which "lacks the requisite specificity that would allow the Court to rule on its merits"); *Bullard v. Wastequip Mfg. Co., LLC*, 2015 WL 13757143, at *7 (C.D. Cal. May 4, 2015) ("defendants' failure to specify the evidence they seek to exclude constitutes a sufficient basis upon which to deny their motion").

Moreover, Defendants' attempts to limit testimony to the topics covered in Defendants' depositions of Bungie's experts is unclear in its purpose. Other than Dr. Ed Kaiser, Defendants chose not to depose any of Bungie's expert witnesses. And Dr. Kaiser was deposed **before** Bungie disclosed Dr. Kaiser as an expert and the topics on which he intended to testify at trial, so Defendants could not have asked him questions about the content and scope of his expert

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

testimony, let alone any purported limitations. *See* Defs.' MIL at 5 (Bungie experts timely disclosed on Nov. 21, 2022), *id.* at 6 (Dr. Kaiser deposed on Oct. 4-5, 2022). Bungie should not be punished by Defendants' strategic missteps in connection with their depositions. Likewise, while Defendants deposed Dr. Kaiser, their decision to ask or not ask about certain subjects should not control the scope of his testimony at trial. Bungie has provided ample insight into Dr. Kaiser's expected testimony, including through Bungie's initial disclosures, expert disclosures, Dr. Kaiser's detailed declarations (*see, e.g.*, Dkt. Nos. 36, 158, 183), and Dr. Kaiser's deposition testimony.[3] Because they do not explain what specifically Defendants believe Dr. Kaiser, or Bungie's other experts, should be prohibited from testifying about, Defendants' motion should be denied.

**E.     Defendants' Motion to Preclude Testimony of Undisclosed or Late Disclosed Experts**

In its July 1, 2022 initial disclosures, Bungie disclosed Clint Hodgson, Bungie's then-Senior Director of Accounting, as a witness with knowledge regarding the "financial impact of Defendants' Destiny 2 cheat software" and "Bungie's harm." Ex. G. Bungie again disclosed Hodgson as an expert witness in its November 21, 2022 expert disclosures. Defs.' MIL at 8. Defendants chose not to depose Hodgson.

Well after the close of discovery, in late July 2023, Hodgson departed from Bungie and is no longer a Bungie employee. Thus, in the Pretrial Order, Bungie disclosed that Nate Buckmiller—who holds a similar role at Bungie as Hodgson previously did—may be called in place of Hodgson to testify regarding the same topics. Despite Defendants' protestations, there is no prejudice in allowing Buckmiller to testify. No expert report was submitted by Hodgson (nor was one required, as he was a Bungie employee). Defendants never sought discovery from or about Hodgson, and they did not depose him. And Buckmiller will testify, if called, regarding the exact same topics as disclosed for Hodgson. Thus, Defendants are in the exact same position they

---

[3] Dr. Kaiser has also been disclosed as a fact witness, in addition to as an expert.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    would be if Hodgson were still a Bungie employee and called to testify.  Bungie should not be

2    precluded from calling Buckmiller, and Defendants' motion should be denied.[4]

3    **F.    Defendants' Motion to Preclude Reference to Other Bungie Lawsuits**

4         Noting that it is "unclear" whether Bungie even intends to mention them, Defendants seek

5    to preclude reference to Bungie's other lawsuits regarding other cheat developers or similar cases.

6    Defs.' MIL at 8-9.  In stark juxtaposition to Defendants' motion, however, it is **Defendants** who

7    repeatedly have raised Bungie's other lawsuits, including in the opening paragraphs of their

8    recently-filed Trial Brief.  Dkt. 219 (Defendants' Trial Brief) at 1-2.

9         Setting aside Defendants' gross mischaracterizations of Bungie's other lawsuits, this

10   appears to largely be a moot issue.  While Bungie should be allowed to reference the existence of

11   other legal actions against cheaters or cheat developers to show the many steps it takes to protect

12   its game and the importance of preventing cheaters in *Destiny 2*, it does not plan to reference the

13   substance of the individual lawsuits nor the specific results unless Defendants open the door to

14   such testimony (as it appears Defendants may do based on their Trial Brief).

15   **G.    Defendants' Motion to Exclude Reference to, or Admission of, Bungie Source Code
            Not Produced in Discovery**

16
17        Defendants move to exclude testimony or evidence regarding the source code of *Destiny 2*

18   to the extent it was not produced in discovery.  Defs.' MIL at 9-12.  However, this motion is, once

19   again, unclear in its scope and purpose and should be denied.  Bungie does not intend to introduce

20   the entire *Destiny 2* source code at trial, nor is that code at issue except as it relates to the *Destiny*

     *2* copyright registrations.  Here, Defendants copied the *Destiny 2* **object code**, which is the same
21
     code as the source code, but converted to binary numbers by a compiler that a computer executes
22
23   to run the *Destiny 2* game.  Dkt. No. 183 (Supp. Kaiser Decl. ISO Bungie MSJ) ¶ 2.  Both the

24   source code submitted to the Copyright Office and the *Destiny 2* object code were produced to

25

26        [4] If Buckmiller is not able to testify as an expert, Bungie requests that he be allowed to testify, if called, as a
     fact witness regarding the same topics.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  Defendants.  Exs. J, K.  To the extent Defendants' motion seeks to preclude reference to the

2  *Destiny 2* copyrights generally, or to the *Destiny 2* object code, their motion should be denied.

3  In response to Defendants' discovery requests, Bungie produced the source code provided

4  to the Copyright Office in securing the copyright registrations for *Destiny 2* and *Destiny 2: Beyond*

5  *Light*.  However, the Copyright Office does not require the submission of a software's full source

6  code to register a work, and instead requires that only a portion of the first and last sections of code

7  be submitted.  *See* 37 C.F.R. § 202.20(c)(2)(vii).  Bungie submitted the required code to the

8  Copyright Office and was granted its copyright registrations to the *Destiny 2* and *Destiny 2:*

9  *Beyond Light* works.  Exs. H-I.  Bungie is entitled to refer to those copyrighted works and to the

10  extent Defendants' motion seeks to prevent such evidence, their motion should be denied.[5]

11  *Merchant Transaction Systems v. Nelcela, Inc.*, No. CV 02-1954-PHX-MHM, 2009 U.S.

12  Dist. LEXIS 64150 (D. Ariz. July 24, 2009), is inapposite.  In *Merchant Transaction Systems*, the

13  defendants accused of copyright infringement failed to produce the entirety of the **source code** for

14  the defendants' software that was allegedly derivative of the claimants' software until six weeks

15  before trial.  *Id.* at *36.  The claimants alleged that defendants infringed claimants' **source code**.

16  *Id.* at *36-39.  Here, Bungie has alleged, and will prove at trial, that Defendants infringed Bungie's

17  **object code**, a fact of which Defendants have been aware of for over a year.  Exs. J, K.

18  Bungie also produced to Defendants the entire object code of *Destiny 2* and *Destiny 2:*

19  *Beyond Light*.[6]  *See* Dkt. 184 (Rava Decl.) ¶ 4.  Source code is a human-readable version of

20  software code (i.e., with labels, nouns, verbs) that developers use to write software.  Dkt. No. 183

21  (Supp. Kaiser Decl. ISO Bungie MSJ) ¶ 2.  Object code is the same exact code that is converted

22

23  [5] The parties have also stipulated that "Bungie owns all rights, title, and interest in the copyrights to *Destiny 2* and *Destiny 2: Beyond Light*."  Dkt. No. 227 (Pretrial Order) Admitted Facts ¶ 3.

24  [6] Here, too, this case is distinguishable from *Merchant Transaction Systems*.  In that case, the defendants represented during discovery that they had produced the entirety of the source code at issue, even though they had
25  produced only a portion.  2009 U.S. Dist. LEXIS 64150, at *39-40.  Here, when asked to identify and produce the *Destiny 2* code that was infringed, Bungie responded that the object code was at issue and produced that code in its
26  entirety.  Apparently satisfied, Defendants never again requested or otherwise moved to compel production of the entire source code for *Destiny 2*.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

to binary numbers by a compiler that a computer executes to run the *Destiny 2* game, and which is distributed to users when they purchase a license to access *Destiny 2*. *Id.* Object code is equally protected by Bungie's software code copyright registrations. *See Comput. Access Tech. Corp. v. Catalyst Enters., Inc.*, No. C-00-4852, 2001 WL 34118030, at *13 (N.D. Cal. June 13, 2001); *GCA Corp. v. Chance*, No. C-82-1063-MHP, 1982 WL 1281, at *2 (N.D. Cal. Aug. 31, 1982) ("Because the object code is the encryption of the copyrighted source code, the two are to be treated as one work; therefore, copyright of the source code protects the object code as well."). Thus, to the extent Defendants seek to exclude evidence or testimony regarding the object code or copyright registrations, their motion should also be denied.

## H. Defendants' Motion to Preclude Theories of Liability Based on the "Loader"

Defendants move to preclude any theories of liability based on Defendants' cheat loader software distributed on AimJunkies.com. They base the entire motion on a (false) semantic claim: that Bungie never used the word "loader" in its Amended Complaint or in discovery. Defs.' MIL at 12-13. This is a highly misleading red herring. It's also patently false. Defendants' motion should be denied.

As Defendants admit, the Cheat Software and the loader are functionally inseparable in connection with *Destiny 2*, because the game-specific component of the Cheat Software cannot be used without being injected into the *Destiny 2* game engine by the loader. Ex. B (Schaefer Oct. 28, 2022 Dep. Tr.) at 103:9-22 (███████████████████████████████████████████████████████ ████); Ex. A (May 2022 Dep. Tr.) at 16:25-19:4 (███████████████████████████████ ██████████████); Ex. C (Green 2022 Dep. Tr.) at 67:3-24 (█████████████████████ ██████████████████████████████████████). Thus, any theory about how the game-specific component of the Cheat Software works necessarily includes a description of how the loader component functions.

Defendants also know that the loader is relevant to Bungie's copyright claims because the loader **injects** the cheat into the *Destiny 2* game engine. **Defendants acknowledge this.** *See* Ex.

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 13
(No. 2:21-cv-00811)

164392105.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    B (Oct. 28, 2022 Schaefer Dep. Tr.) at 130:20-131:2 (testifying that ████████

2    ████████████████████████████████████████████████████████████████████

3    ██████).  As Schaefer testified and as confirmed by Bungie's expert, that's exactly what the

4    loader does:  it **injects** code into the *Destiny 2* process.  Ex. L (Guris Report) ¶ 96.

5         And Defendants have had ample and repeated notice that the injection by the loader is at

6    issue in these proceedings.  Most importantly, Bungie identified the issue of the injection process

7    in its Amended Complaint. *See, e.g.*, Dkt. 34 ¶¶ 85 ("Defendants then inject their own code into

8    (i.e., run their software code inside) the Destiny 2 game engine."); *id.* ¶ 88 ("Defendants then inject

9    their own code into the *Destiny 2* game engine to automatically call certain functions within

10   *Destiny 2*.").

11        Moreover, throughout these proceedings there can be no question that the loader and its

12   injection of the Cheat Software has been discussed in depth.  For instance:

13   • Bungie disclosed that Dr. Kaiser will offer opinions that the Cheat Software "injects into

14        (i.e., runs its software code inside) the *Destiny 2* engine," and that the "injected code"

15        extracts otherwise inaccessible information.  *See* Defs.' MIL at 6.

16   • The loader software and its function has been explored extensively during the depositions

17        of every single Defendant in this case.  *See, e.g.*, Ex. B (Schaefer 2022 Dep. Tr.) at 103:9-

18        22; Ex. A (May 2022 Dep. Tr.) at 16:25-19:4; Ex. C (Green 2022 Dep. Tr.) at 67:3-24;

19        Ex. D (Conway 2022 Dep. Tr.) at 188:13-192:5 (████████████████████████████

20        ██████).

21   • The loader software was the subject of Bungie's discovery requests.  *See, e.g.*, Ex. M.

22   • The loader software was the subject of one of Bungie's expert reports.  Ex. L (Guris

23        Report).

24   • And the loader was a key component of the arbitration proceedings.  *See, e.g.*, Final Award

25        at 13 ("[Defendants] also distributed more than one thousand copies of the cheat loader

26        that was used to inject the cheats into the *Destiny 2* process.").

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1     This is not a case, like those relied on by Defendants, where Bungie is asserting a "new

2     theory of liability." Defs.' MIL at 13. Instead, Defendants are attempting to leverage a label to

3     preclude reference to the loader and the injection process. The loader issue was substantively

4     pleaded in Bungie's complaint, discussed in depth at each of Defendants' depositions, opined on

5     in Bungie's expert report, and addressed at the arbitration. Defendants' motion should be denied.

## I.     Defendants' Motion to Preclude Introduction of Deposition Video and/or Transcript of David Schaefer

7          Defendants final motion *in limine* seeks to preclude some undefined portions of Schaefer's

8     deposition testimony. Defendants cite vaguely to Exhibits E, F and L to the Declaration of

9     Christian Marcelo (Dkt. 101). Defs.' MIL at 14. But that gives little guidance. Exhibit L, for

10    instance, contains the **entire** transcript of Phoenix Digital's March 20, 2023 corporate deposition.

11    Defendants also indicate they seek to preclude evidence of Schaefer's "unprofessional" conduct,

12    but that encompasses nearly the entirety of his testimony. Defendants also reference the deposition

13    transcripts identified in Bungie's Pretrial Statement, but it is unclear if they seek to preclude the

14    entirety of the identified testimony or certain parts. Defendants' motion should be denied because

15    it lacks sufficient specificity. *Shenon*, No. 218CV00240CASAGRX, 2020 WL 1317722, at *6

16    (denying motion in limine which "lacks the requisite specificity that would allow the Court to rule

17    on its merits"); *Bullard*, 2015 WL 13757143, at *7.

18         Defendants motion should also be denied on several substantive grounds.

19         *First,* it is black letter law that "an adverse party may use **for any purpose** the deposition

20    of a party[.]" Fed. R. Civ. P. 32(a)(3) (emphasis added). Schaefer's testimony fits within this rule.

21         *Second,* Schaefer's deposition testimony is relevant. For instance, Bungie designated—

22    and Defendants appear to be moving to exclude—Schaefer's testimony regarding how the cheat

23    and the cheat loader operates (Ex. B (Oct. 28, 2022 Schaefer Dep. Tr.) at 230:12-232:1);

24    Defendants' spoliation (*id.* at 264:11-265:9); and Schaefer's control of Phoenix Digital (Ex. N

25    (Oct. 31, 2022 Schaefer Dep. Tr.) at 21:12-22:12). Such testimony is clearly relevant.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Additionally, Schaefer's "unprofessional" testimony, and his demeanor during his depositions in this federal case, is also relevant. How Schaefer decided to act when testifying under oath goes directly to his credibility. *Randazzo v. Ralphs Grocery Co.*, No. 2:14-CV-1042-GMN-GWF, 2015 WL 4506194, at *3 (D. Nev. July 23, 2015) (explaining that "the visible manner and demeanor of a witness are important factors in determining a witness' credibility"). And Schaefer's admitted use of discovery in these proceedings to, as he described it, give the "█████ █████" to Bungie to try to watch "████████████████████████████" is part and parcel with Defendants' actions in destroying evidence. Ex. N (Oct. 31, 2022 Schaefer Dep. Tr.) at 105:19-106:22. Defendants' **admitted** goal in these proceedings was to frustrate Bungie's legitimate discovery efforts. *Id.* Such testimony is of course relevant to rebut Defendants' claim that Bungie lacks sufficient evidence in these proceedings, and regarding what evidence Bungie can or cannot put forth at trial.[7]

*Third,* if any prejudice is caused by showing videoclips of Schaefer's deposition, it is prejudice **he caused and brought upon himself**. If Defendants' argument is accepted, a party could simply act outrageously at a deposition and thereby preclude the use of their deposition testimony based on alleged prejudice that the deposition puts them "in a bad light." Defs.' MIL at 14. That makes no sense and is not a basis to preclude the use of a party's own deposition testimony. Nor is the probative value of presenting Schaefer's **sworn testimony** and allowing the jury to make credibility determinations substantially outweighed by any prejudice.

Defendants' reliance on *Wolfgang* is misplaced. Defs.' MIL at 14 (citing *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1526 (10th Cir. 1997)). The evidence excluded in *Wolfgang* was not that party's deposition testimony or video, and it was excluded because it

---

[7] Defendants make reference to Schaefer's testimony regarding his "sex life" claiming Bungie was asking "abusive" questions. **This is flat out false**. In the relevant portion of the deposition, ███████████████████████████████████████████ Ex. N (Oct. 31, 2022 Schaefer Dep. Tr.) at 27:20-30:8. ██████████████████████████████████████████ *. Id.* ██████████████████████████████████. *Id.*

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 16
(No. 2:21-cv-00811)

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164392105.3

introduced an issue of comparative fault into a negligence claim where fault was not in question. *Id.* Here, the testimony at issue is not regarding any new or irrelevant theory. It goes directly to Schaefer's credibility and Defendants' repeated attempts to prevent and frustrate legitimate discovery in these proceedings. *Randazzo*, No. 2:14-CV-1042-GMN-GWF, 2015 WL 4506194, at *3.

**Fourth and finally,** the use of Schaefer's testimony is not improper character evidence under FRE 404(b). Defs.' MIL at 14. Once again, Defendants' argument is less than clear. However, to the extent Bungie can identify what portions of Schaefer's testimony Defendants seek to exclude, he does not testify regarding any prior crimes or wrongful acts outside of his actions in this proceeding (such as copyright infringement, trafficking circumvention devices, and spoliation). Thus, the testimony Defendants seek to exclude is intrinsic to Bungie's claims, and FRE 404(b) does not apply here. Fed. R. Evid. 404(b) (prohibiting only [e]vidence of any **other** crime, wrong, or act…") (emphasis added); *see also Elliot*, 381 F.3d at 1004.

Schaefer's demeanor and testimony at his sworn depositions are relevant and should come into evidence. There is no doubt that Schaefer was unprofessional during his depositions. Incredibly, he maintained that same unprofessional demeanor in the deposition that occurred **after** the arbitration hearing, even after he had a chance to see clips of his prior deposition conduct played during that hearing. Schaefer cannot now use his decision to act in that manner to prevent the use of his deposition video, and the jury should be allowed to assess his credibility and view his conduct for themselves.

### III.    CONCLUSION

For these reasons, Defendants' motions *in limine* should be denied.


I certify that this memorandum contains 6,014 words, in compliance with the Local Civil Rules.

RESP. TO DEFENDANTS'
MOTIONS *IN LIMINE* – 17
(No. 2:21-cv-00811)

164392105.3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

2  Dated: November 13, 2023

By: _s/ William C. Rava_

William C. Rava, Bar No. 29948
3                                          Christian W. Marcelo, Bar No. 51193
Jacob P. Dini, Bar No. 54115
4                                          **Perkins Coie LLP**
1201 Third Avenue, Suite 4900
5                                          Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
6                                          Facsimile: +1.206.359.9000
WRava@perkinscoie.com
7                                          CMarcelo@perkinscoie.com
JDini@perkinscoie.com

8

9                                          _Attorneys for Plaintiff Bungie, Inc.._

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

RESP. TO DEFENDANTS'
MOTIONS _IN LIMINE_ – 18
(No. 2:21-cv-00811)

164392105.3