THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

               Plaintiff,

     v.

AIMJUNKIES.COM; PHOENIX DIGITAL
GROUP LLC; DAVID SCHAEFER; JORDAN
GREEN; JEFFREY CONWAY; and JAMES
MAY,

               Defendants.

No. 2:21-cv-00811

PLAINTIFF BUNGIE, INC'S
OPPOSITION TO DEFENDANTS'
MOTION TO STAY EXECUTION OF
ARBITRATION JUDGMENT

**REDACTED VERSION
FILED PUBLICLY**

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF CONTENTS**

2
                                                                                                    **Page**

3   I.      INTRODUCTION ................................................................................................ 1

4   II.     BACKGROUND ................................................................................................. 1

5   III.    ARGUMENT ...................................................................................................... 2

6           A.      Defendants Bear the Burden to Show Departure from the Usual Bond
                    Requirement ........................................................................................... 2
7
            B.      Defendants Fail to Present Any Evidence Justifying Departure from this
8                   Norm ...................................................................................................... 5

9           C.      A Stay Can Only Be Granted with a Supersedeas Bond and Can Only Last
                    Until Resolution of the Appeal and Not Trial ...................................... 10
10
    IV.     CONCLUSION ................................................................................................. 11

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*AirFX.com v. AirFX, LLC,*
5
    No. CV 11-01064-PHX-FJM, 2013 WL 2458770 (D. Ariz. June 6, 2013)..................3, 4, 7, 8

6

*Arban v. W. Publ'g Corp.,*
    345 F.3d 390 (7th Cir. 2003) ...................................................................................................8

7

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.,*
8
    889 F. Supp. 2d 1198 (E.D. Cal. 2012)...............................................................................3, 4, 8

9

*Clark v. Hidden Valley Lake Ass'n,*
    No. 16-cv-02009-SI, 2018 WL 2412136 (N.D. Cal. May 29, 2018).............................. passim
10

11

*Cotton ex rel. McClure v. City of Eureka,*
    860 F. Supp. 2d 999 (N.D. Cal. 2012) .............................................................................3, 4, 5, 8

12

*Dillon v. City of Chicago,*
13
    866 F.2d 902 (7th Cir. 1988) ........................................................................................4, 5, 7, 10

14

*Fed. Prescription Servs., Inc. v. Am. Pharm. Ass'n,*
    636 F.2d 755 (D.C. Cir. 1980) .................................................................................................3
15

16

*Indep. Towers of Wash. v. Washington,*
    350 F.3d 925 (9th Cir. 2003) ....................................................................................................5

17

*Kranson v. Fed. Express Corp.,*
18
    No. 11-cv-05826-YGR, 2013 WL 6872495 (N.D. Cal. Dec. 31, 2013)....................................8

19

*Skydive Arizona, Inc. v. Quattrocchi,*
    No. CV 05-2656-PHX-MHM, 2010 WL 2534200 (D. Ariz. June 18, 2010)...............3, 4, 7, 8
20

21

*United States v. Western Surety Co.,*
    No. C14-1963JLR, 2016 WL 1436069 (W.D. Wash. Apr. 12, 2016) ..................................3, 4

22

RULES

23

Fed. R. Civ. P. 62(b) ....................................................................................................3, 4, 10

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# I.     INTRODUCTION

To obtain a stay of a judgment pending appeal, the federal rules ordinarily require a defendant to post a supersedeas bond equal to the judgment plus costs, interest, and damages for the delay.  To depart from this standard requirement, a defendant must present evidence sufficient to satisfy several criteria.  Here, by their motion (Dkt. No. 254), Defendants[1] seek the extraordinary relief of waiving the bond requirement without providing **any evidence whatsoever** justifying the request.  Their motion falls woefully short of the standard to obtain an unsecured stay and should be denied on this basis alone.

The motion should also be denied because Defendants' unsupported cries of poverty fall flat.  The evidence submitted with this opposition shows that Defendants earned enormous revenues developing, marketing, and selling video game cheat software on their network of websites.  When they got caught, they deleted financial records and manufactured a fraudulent sale of one of the websites in a transparent attempt to send Bungie on a wild goose chase.  But the evidence supports the conclusion that Defendants are still operating and profiting from their illegal business.  Defendants' Motion should be denied, and they should be required to post a supersedeas bond of **at least** Bungie's $4.4 million judgment to obtain a stay.[2]

# II.     BACKGROUND

This Court referred six of Bungie's nine causes of action relating to Defendants' sale of Cheat Software to arbitration, where Bungie was awarded a $4.4 million judgment against Defendants.  Dkt. No. 89-1 (Final Award).  Bungie moved to confirm the award, and Defendants moved to vacate it.  The Court granted Bungie's motion, denied Defendants', and found (among other things) that the arbitrator did not fail to consider pertinent evidence or exceed his powers.  Dkt. No. 140.  On June 13, 2023, the Court entered partial judgment against Defendants for the

---

[1] "Defendants" shall collectively refer to Phoenix Digital Group LLC ("Phoenix Digital"), David Schaefer, Jordan Green, Jeffrey Conway, and James May.

[2] *Clark v. Hidden Valley Lake Ass'n*, No. 16-cv-02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018) (holding that supersedeas bond should cover the judgment plus costs, interest, and damages for delay during the appeal and requiring bond of 125% of the judgment).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

full $4.4 million awarded by the arbitrator.  Dkt. No. 141.  Defendants filed a notice of appeal and an opening brief in the Ninth Circuit, requesting oral argument.  Bungie's responsive brief is due on January 19, 2024.

On August 22, 2023, Bungie began various collection efforts against Defendants by domesticating the partial judgment in three states—Oregon, Arizona, and later Ohio.  Rava Decl. ¶ 2.  After filing the domestication papers in the first two states (Oregon and Arizona), Bungie's counsel provided courtesy copies of those papers to Defendants' counsel in this case and asked whether Defendants' counsel would accept service on behalf of Green, Conway, and Phoenix Digital.  *Id.*  Defendants' counsel eventually confirmed that he did not represent any of the Defendants in connection with the enforcement of the partial judgment.  *Id.*  In fall 2023, Bungie then conducted various collection activities, including obtaining a lien on Conway's property in Arizona, and serving discovery requests on all Defendants as authorized under state law to identify their assets, and again providing courtesy copies of the papers to Defendants' counsel in this case. *Id.* ¶ 3.  Defendants have failed to object or respond to these discovery requests, or otherwise engage in those proceedings in any way.  *Id.*  In fact, at least some Defendants appear to be dodging service, including at the addresses where Defendants were previously served in this case.  *Id.* ¶ 4.

Now, six months after the judgment was entered and almost four months after Bungie began collection efforts—and after having ignored Bungie's numerous efforts to conduct debtor discovery—Defendants seek to stay those efforts pending appeal without having to post a supersedeas bond.

## III.   ARGUMENT

### A.   Defendants Bear the Burden to Show Departure from the Usual Bond Requirement

Generally, in order to obtain a stay of judgment pending an appeal, the moving party must post a supersedeas bond or other security[3] for the amount of the judgment plus interest, costs, and any other relief the appellate court may award.  Fed. R. Civ. P. 62(b) ("At any time after judgment

---

[3] Defendants do not offer or request to post "other security" instead of a bond.  *See generally* Mot.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

is entered, a party may obtain a stay by providing a bond or other security."); *Cotton ex rel. McClure v. City of Eureka*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012) ("Generally, the amount of the bond should be sufficient to pay the judgment *plus* interest, costs and any other relief (e.g., attorney fees) the appellate court may award.").   A stay pending appeal "operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment," and so a full supersedeas bond should be required in normal circumstances. *United States v. Western Surety Co.*, No. C14-1963JLR, 2016 WL 1436069, at *1 (W.D. Wash. Apr. 12, 2016) (quoting *Fed. Prescription Servs., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).   "Because the posting of a bond is itself a privilege extended to the judgment debtor as a price of interdicting the validity of an order to pay money, the Court should not depart from the usual requirement of a full security supersedeas bond unless the moving party demonstrates the reasons for such a departure." *Skydive Arizona, Inc. v. Quattrocchi*, No. CV 05-2656-PHX-MHM, 2010 WL 2534200, at *1 (D. Ariz. June 18, 2010); *AirFX.com v. AirFX, LLC*, No. CV 11-01064-PHX-FJM, 2013 WL 2458770, at *1 (D. Ariz. June 6, 2013); *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1242 (E.D. Cal. 2012) ("An unsecured stay is reserved for 'unusual circumstances' . . .").

Accordingly, Defendants bear the burden to "objectively demonstrate" that an unsecured stay is appropriate. *Cotton ex rel. McClure*, 860 F. Supp. 2d at 1028; *Western Surety Co.*, 2016 WL 1436069, at *1.   Although Defendants argue that an unsecured stay is warranted because of their alleged (but factually unsupported) inability to pay, "Defendants' ability to pay the judgment is but one of many factors the Court is to consider in connection with a request to waive a supersedeas bond." *Cotton ex rel. McClure*, 860 F. Supp. 2d at 1028 (denying the defendants' request to issue an unsecured stay where defendants failed to address all of the required factors). Specifically, the Court examines the following criteria on a request for an unsecured stay:

1. The complexity of the collection process;

2. The amount of time required to obtain a judgment after it is affirmed on appeal;

BUNGIE'S OPP'N TO DEFS.' MOT. TO STAY – 3
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164809807.5

3.  The degree of confidence that the district court has in the availability of funds to pay the judgment;

4.  Whether the defendants' ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and

5.  Whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id.* (quoting *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988)); *Clark v. Hidden Valley Lake Ass'n*, No. 16-cv-02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018) (denying request for unsecured stay after weighing all five *Dillon* factors).

Courts routinely **deny** requests to waive the supersedeas bond requirement for a stay under Rule 62(b) where the moving party fails to support their request with specific, documentary evidence in support of its contentions, including in one case cited by Defendants themselves. *AirFX.com*, 2013 WL 2458770, at *2 (denying request for unsecured stay where "defendant ha[d] not offered specific evidence demonstrating that it is in such a precarious financial position"); *Skydive Arizona*, 2010 WL 2534200, at *3 (denying request for unsecured stay where "Defendants have provided no evidence supporting their contentions that they would be forced to seek bankruptcy protection and that their other creditors would be harmed"); *Western Surety Co.*, 2016 WL 1436069, at *1 (denying request for unsecured stay where moving parties submitted a single self-serving declaration in support of their motion); *Century 21 Real Estate*, 889 F. Supp. at 1243 (denying request for unsecured stay because defendants did "not present evidence that obtaining a bond would bankrupt them"); *see also Cotton ex rel. McClure*, 860 F. Supp. 2d at 1028 ("Defendants' motion neglects to address any of the other *Dillon* factors, and the Court declines to do so sua sponte.").

Here, Defendants' motion is devoid of any factual support and utterly fails to satisfy this heavy burden.

BUNGIE'S OPP'N TO DEFS.' MOT. TO STAY – 4
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.     Defendants Fail to Present Any Evidence Justifying Departure from this Norm**

Defendants entirely ignore four of the five *Dillon* factors that the Court must consider and offer **absolutely zero** evidence to substantiate the one factor they do argue.  Defendants' motion should be denied on this basis alone.  *Cotton ex rel. McClure*, 860 F. Supp. 2d at 1028 ("Defendants' motion neglects to address any of the other *Dillon* factors, and the Court declines to do so sua sponte."); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court . . . . [W]e have held firm against considering arguments that are not briefed.").

Evaluated against a substantiated record, each of the five *Dillon* factors favors Bungie.

Under the ***first*** and ***second*** factors, the collection process will likely be complex and drawn out, as demonstrated by Defendants' prior dilatory and obstructionist conduct in this case, and their conduct through collection proceedings thus far.  Both this Court and the JAMS arbitrator found that Defendants intentionally destroyed financial documents relevant to their revenues from the sale of the Cheat Software.  *See* Dkt. No. 89-1 (Final Award) p. 19-20 (Defendants "lied in response to [Bungie's C&D letter], failed to preserve many of the financial records concerning sales of the cheats, and either deleted records concerning the Aimjunkies website or failed to stop automatic deletion of those records.  None of this was done innocently."); Dkt. No. 216 p. 18-19 (finding that Defendants "inten[ded] to deceive Plaintiff or otherwise interfere with Plaintiff's ability to proceed to trial" when they intentionally took steps to delete or otherwise render inaccessible relevant evidence).  After destroying the financial and other documents, Defendants then made "misrepresentations as to whether Phoenix Digital Group owned AimJunkies.com," and "misrepresentations regarding the revenue generated from the Cheat Software."  Dkt. No. 216 p. 12, 17; *see also* Schaefer Decl. ISO Defs.' Mot. to Dismiss at ¶ 8 (Dkt. No. 28-5); Defs.' Resp. to Mot. for Sanctions at 9 (Dkt. No. 107); Defs.' Suppl. Resp. to Mot. for Sanctions at 1 (Dkt. No. 173).  Thus, evidence of Defendants' assets has already been irretrievably lost and, based on

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

164809807.5

1   Defendants' prior conduct, it is likely they will impede further asset identification and collection

2   efforts.

3       And even when Defendants remained in possession of certain relevant financial

4   documents—such as Bitcoin-related documents—they only produced them after being compelled

5   to do so by the Court.  Dkt. No. 129 p. 1-2 (ordering Phoenix Digital to produce its Bitcoin wallet

6   ID).   Indeed, Defendants' prior resistance to providing Bitcoin information is particularly

7   concerning in Bungie's collection efforts, because Defendants have admitted that after being shut

8   out of PayPal, they have transitioned most of their business's finances to Bitcoin, including

9   accepting payments from consumers for cheats and making payments to cheat developers, like

10  May.  Rava Decl., Ex. 1 (Phoenix Digital 2023 Dep. Tr.) at 109:12-113:17 (explaining that Phoenix

11  Digital receives payments from consumers through Bitcoin and then pays developers using the

12  same); *id.*, Ex. 2 (May 2023 Dep. Tr.) at 9:19-11:3 (Schaefer pays May on behalf of Phoenix

13  Digital via Bitcoin for developing cheats for AimJunkies.com); Rava Decl., Ex. 3 (Schaefer 2022

14  Dep. Tr.) at 60:11-16 ███████████████████████████████████████████████████████ .

15  Compounding these issues, Defendants claim to change their Bitcoin wallets on a monthly basis

16  (most likely to obfuscate their activities), which is also likely to complicate collection efforts.

17  Rava Decl., Ex. 1 (Phoenix Digital 2023 Dep. Tr.) at 112:19-113:11 ("The cold wallet is destroyed

18  every month and it's sent to Banek."); Rava Decl., Ex. 3 (Schaefer 2022 Dep. Tr.) at 64:25-65:5

19  ███████████████████████████████████████████ .  And Defendants have already

20  obstructed Bungie's initial efforts to learn more about these Bitcoin wallets, at one point claiming

21  to have control of the Bitcoin wallet used for the business, while simultaneously claiming not to

22  have access to it and to not know how the payments are made.  *See* Rava Decl., Ex. 1 (Phoenix

23  Digital 2023 Dep. Tr.) at 109:12-113:17.

24      Given Defendants' history, it is almost certain that enforcement of the judgment will be an

25  arduous, time-consuming process.  *See Skydive Arizona*, 2010 WL 2534200, at *2-3 (finding that

26  first two factors weighed in plaintiff's favor where defendants engaged in suspicious transactions

BUNGIE'S OPP'N TO DEFS.' MOT. TO STAY – 6
(No. 2:21-cv-00811)

164809807.5

1   and made contradictory statements concerning their revenues and financial health); *see also*

2   *AirFX.com*, 2013 WL 2458770, at *2 (finding that first two factors weighed in plaintiff's favor

3   where defendant was a foreign entity with no known assets in the state where the district court was

4   located).  Indeed, Defendants have stated that they intend to resist judgment enforcement efforts

5   or make such efforts difficult.  For example, Schaefer has outright stated that " ████████████

6   ██████████████████████████████████████████████████████████████████████████████████

7   ██████████████████████████████████ "  Rava Decl., Ex. 3 (Schaefer 2022 Dep. Tr.) at

8   268:25-269:6; *see also id.*, Ex. 1 (Schaefer 2023 Dep. Tr.) at 10:10-11:2 ("Q. And, Mr. Schaefer,

9   you're refusing to answer where you're currently working?  A. Yes.  Q. What are your sources of

10  income?  Yes.  Q. Yes what?  A. I don't remember.  Q. You don't recall what your current sources

11  of income are?  A. No."); *see also id.*, Ex. 4 (Green 2022 Dep. Tr.) at 148:1-17 █████████████

12  ██████████████████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████ .  Finally,

14  Defendants appear to be dodging service of Bungie's collection efforts, despite actual notice of

15  them, which will further add to the complexity and time to enforce the judgment.  Rava Decl. ¶ 4.

16  The first two *Dillon* factors decisively favor Bungie.

17          The ***third*** and ***fourth*** factors, which relate to Defendants' ability to pay the judgment, also

18  weigh decisively in Bungie's favor.  If Defendants are to be believed, then the Court has little

19  reason to be confident that they have funds available to pay the judgment, and the third factor

20  favors Bungie.  *AirFX.com*, 2013 WL 2458770, at *2 (finding that third factor favored plaintiff

21  where defendant "concede[d] that even if it dismantles its operations, sold its assets, and laid off

22  employees, it may not have the full fund to pay the judgement"); *Clark*, 2018 WL 2412136, at *3

23  (third factor favored plaintiff where "Defendant's 'financial frailty' indicates that a bond is

24  necessary to protect plaintiff's interests").  At minimum, Defendants' ability to pay the judgment

25

26

BUNGIE'S OPP'N TO DEFS.' MOT. TO STAY – 7
(No. 2:21-cv-00811)

164809807.5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   is not "so plain" such that the cost of the bond would be "a waste of money." *Clark*, 2018 WL

2   2412136, at *3.[4]

3       Finally, the ***fifth*** factor (the only one that Defendants even attempt to argue), conclusively

4   favors Bungie for a variety of reasons.  Under this factor, Defendants need to show "that [they

5   have] any other creditors the Court should consider" in the first place, and then also "how requiring

6   a supersedeas bond would affect those creditors if they do exist." *Clark*, 2018 WL 2412136, at *3

7   (holding that failure to do so would mean fifth factor favors plaintiff).  Defendants have failed to

8   make **any** such claim, let alone one supported by evidence. *See* Mot. p. 4-5.  Defendants, as the

9   moving party, have the burden to objectively demonstrate that the bond requirement should be

10  waived by presenting sworn evidence to support their argument. *See Cotton ex rel. McClure*, 860

11  F. Supp. 2d at 1028.  Their failure to attach any supporting evidence to their motion is sufficient

12  reason to deny it, especially on this factor, where they have failed to show the **existence** of any

13  creditors that would be affected by a supersedeas bond, let alone how they would be affected.

14  *AirFX.com*, 2013 WL 2458770, at *2 ("[D]efendant has not offered specific evidence

15  demonstrating that it is in such a precarious financial position that the bond requirement would

16  place it or its creditors in an insecure position."); *Clark*, 2018 WL 2412136, at *3 (same); *Skydive*

17  *Arizona*, 2010 WL 2534200, at *3 (same); *Century 21 Real Estate*, 889 F. Supp. 2d at 1243 (same).

18      That Defendants failed to provide creditor, asset, or any relevant financial information is

19  not surprising, because there is persuasive evidence that Defendants are not in dire financial straits.

20  The limited financial statements of Phoenix Digital—those that were not intentionally destroyed—

21  show that Phoenix Digital generated **over** ████████ in revenue from AimJunkies.com (one of

22  several websites selling cheats) since its inception through PayPal (one of several payment options

23  offered), including nearly ███████ in revenue from 2019-2020.  Rava Decl., Ex. 5 (Phoenix

---

24      [4] Two cases cited by Defendants are entirely inapposite here because in those cases the court granted the

25  request for an unsecured stay where those defendants presented evidence that their revenues were so large that their
    ability to pay was obvious and requiring a bond would be a waste of money. *Kranson v. Fed. Express Corp.*, No. 11-

26  cv-05826-YGR, 2013 WL 6872495, at *1-2 (N.D. Cal. Dec. 31, 2013); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 409
    (7th Cir. 2003).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Digital AimJunkies.com PayPal Account Summary); *see also* Dkt. No. 170 (Ex. 12 to Rava Decl.

2    ISO MSJ – Corresponding PayPal Account Transaction List).   And this revenue flowed **directly**

3    to the individual Defendants, with each individual Defendants' PayPal account receiving hundreds

4    of thousands of dollars, including over ▮▮▮▮ to Conway, over ▮▮▮▮ to Schaefer, over

5    ▮▮▮▮ to May, and over ▮▮▮▮ to Green.[5]  Rava Decl., Exs. 6-9 (PayPal Account Summaries

6    for each Defendant).  Records reflecting revenue from the remaining four payment processors used

7    on the AimJunkies.com website were irretrievably spoliated by Defendants.  Dkt. No. 216 p. 3-4

8    ("Phoenix  Digital  defendants  deleted…records  relating  to  the  sales  of  the  Cheat  Software,

9    including financial records relating to the sales and records from various payment processors and

10   for Bitcoin transactions."); Rava Decl., Ex. 3 (Schaefer 2022 Dep. Tr.) at 60:2-61:3 (identifying

11   other payment processors).   While the revenue earned through those payment processors is

12   uncertain, Phoenix Digital's PayPal revenues suggest they are likely substantial.  Phoenix Digital

13   also earned revenue from other cheat software websites that it managed, and PayPal records for

14   those accounts show revenue of over ▮▮▮▮ through PayPal alone as well, again not accounting

15   for any other payment processors they may have used.  Rava Decl., Exs. 10-13.

16          What's more, the evidence suggests that Defendants are still selling cheat software.  After

17   Bungie filed its lawsuit, Defendants claimed to have "sold" the AimJunkies.com website to an

18   overseas entity: "Blome" Entertainment.  Rava Decl., Ex. 14 ("Press Release" Issued by Phoenix

19   Digital); *see also* Dkt. No. 50 (order granting Bungie's motion for preliminary injunction based on

20   supposed sale of AimJunkies.com).  While the name of the company alone is enough to show the

21   "sale" of AimJunkies.com for what it is, that Defendants plagiarized Bungie's own press release

22   and  added  the  name  of  a  dead  man  as  the  "Director  of  Global  Communications"  at

23   AimJunkies.com in order to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

24   ─────────────────────
         [5] This number for Green is likely substantially higher because Green admits he switched which PayPal
25   accounts at which he received Phoenix Digital payments to avoid having his name connected to the business.  *See*
     Rava Decl., Ex. 4 (Green 2022 Dep. Tr.) at 146:13-147:1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, 147:22-148:14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
            Bungie only has information related to one of those PayPal accounts.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   conclusively demonstrates that the supposed sale was a farce.  Rava Decl., Ex. 15 (Phoenix Digital

2   2022 Dep. Tr.) at 50:14-51:8.  Indeed, despite claiming to have sold AimJunkies.com, Defendants

3   are still managing the essential services for the website, including "processing payments," and

4   providing "back-end support" and "software support."  Rava Decl., Ex. 1 (Phoenix Digital 2023

5   Dep. Tr.) at 108:20-24; *id.*, Ex. 16 (Green 2023 Dep. Tr.) at 22:4-14.  And James May continues

6   to do the "exact same thing" for Phoenix Digital; namely, "mak[e] cheats," and is being paid in

7   Bitcoin by Schaefer.  Rava Decl., Ex. 2 (May 2023 Dep. Tr.) at 9:11-23, 10:16-25.  By all accounts,

8   other than Conway's departure from Phoenix Digital, Defendants appear to be operating business

9   as usual, even after this lawsuit.

10          Against this evidentiary record—the only evidence of Defendants' financial situation—

11  Defendants' claims of poverty are dubious at best.  The fifth *Dillon* factor weighs in Bungie's

12  favor both because Defendants offer no evidence in support of their motion, and because the

13  evidence actually in the record demonstrates that Defendants likely have assets to satisfy the

14  judgment or post bond.

15          Each of the five *Dillon* factors therefore favors Bungie, and Defendants' motion should be

16  denied.

17  **C.      A Stay Can Only Be Granted with a Supersedeas Bond and Can Only Last Until
            Resolution of the Appeal and Not Trial**

18          Having failed to demonstrate unusual circumstances justifying waiver of the bond

19  requirement, Defendants may only obtain a stay of the partial judgment upon posting a supersedeas

20  bond.  Fed. R. Civ. P. 62(b).  A supersedeas bond should cover the judgment plus costs, interest,

21  and damages for the delay during the appeal.  *Clark v. Hidden Valley Lake Ass'n*, No. 16-cv-

22  02009-SI, 2018 WL 2412136, at *3 (N.D. Cal. May 29, 2018).  A bond amounting to 125-150%

23  of the amount of the judgment is routinely recognized as sufficient to protect the appellee's

24  interests.  *See, e.g.*, *id.*  The Court should require Defendants to post a bond in this range as well.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1      In addition, if Defendants are able to post a supersedeas bond to obtain a stay, the stay

2   should only last until the expiration of the appeal and not also the conclusion of the trial.  The

3   outcome of the trial is wholly unrelated to resolution of the appeal and Bungie's collection efforts,

4   which relate to only the partial judgment from the arbitration Final Award.  *See* Dkt. No. 241

5   (denying Bungie's motions *in limine* to give the Final Award issue preclusive effect).

6   Accordingly, if the stay is granted after Defendants post an appropriate bond, it should expire after

7   resolution of the pending appeal of the partial judgment from the Final Award.

8                                    **IV.    CONCLUSION**

9      For the foregoing reasons, Bungie respectfully requests that the Court deny Defendants'

10   request for a stay of the judgment pending appeal without requiring a supersedeas bond.

11

12      I certify that this memorandum contains 3,812 words, in compliance with the Local Civil

13   Rules.

14

15   Dated: December 26, 2023              By: s/*William C. Rava*
                                          William C. Rava, Bar No. 29948
16                                         Christian W. Marcelo, Bar No. 51193
                                          Jacob P. Dini, Bar No. 54115
17                                         **Perkins Coie LLP**
                                          1201 Third Avenue, Suite 4900
18                                         Seattle, Washington 98101-3099
                                          Telephone: +1.206.359.8000
19                                         Facsimile: +1.206.359.9000
                                          WRava@perkinscoie.com
20                                         CMarcelo@perkinscoie.com
                                          JDini@perkinscoie.com
21

22

23

24

25

26

BUNGIE'S OPP'N TO DEFS.' MOT. TO STAY –
11
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000