```
 1                  UNITED STATES DISTRICT COURT

 2            WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3    _____

                                  )
 4    BUNGIE INC.,                 ) C21-00811-TSZ
                                   )
 5                 Plaintiff,      ) SEATTLE, WASHINGTON
                                   )
 6    v.                           ) May 1, 2024 -
                                   ) 2:00 p.m.
 7    AIMJUNKIES.COM, et al.,      )
                                   )
 8                 Defendants.     ) TELEPHONIC PRETRIAL
                                   ) CONFERENCE
 9                                 )
      _____

10

11              VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE THOMAS S. ZILLY
12               UNITED STATES DISTRICT JUDGE
      _____

13

14    APPEARANCES:

15    For the Plaintiff:      William C. Rava
                              Jacob P. Dini
16                            Christian W. Marcelo
                              Perkins Coie
17                            1201 3rd Avenue
                              Suite 4900
18                            Seattle, WA 98101-3099

19

20    For the Defendant:      Philip P. Mann
                              Mann Law Group PLLC
21                            403 Madison Avenue North
                              Suite 240
22                            Bainbridge Island, WA 98110

23

24

25


         Proceedings stenographically reported and transcript produced with computer-aided technology
```

1        THE CLERK:  The United States District Court for the

2  Western District of Washington is now in session, the Honorable

3  Thomas S. Zilly presiding.

4     We are here on the matter of Bungie Incorporated versus

5  Aimjunkies.com, et al, Case No. C21-0811, assigned to this court.

6     Counsel, will you please make your appearances for the

7  record?

8        MR. RAVA:  William Rava from Perkins Coie on behalf of

9  plaintiff.

10       MR. MANN:  Good afternoon, Your Honor --

11       MR. MARCELO:  Christian Marcelo --

12       MR. MANN:  Oh.  I'm sorry.  Go ahead.

13       MR. MARCELO:  Christian Marcelo from Perkins Coie on

14  behalf of plaintiff.

15       MR. DINI:  And Jacob Dini from Perkins Coie on behalf of

16  plaintiff as well.

17       MR. MANN:  Good afternoon, Your Honor.  This is Philip

18  Mann on behalf of the defendants.  I will be the only one

19  appearing on behalf of the defendants this afternoon.

20       THE COURT:  All right.  Good afternoon.  This is Judge

21  Zilly.  Good afternoon.

22     Counsel, we have a court reporter.

23     Why doesn't she identify herself so we know she's on the line

24  and will be reporting?

25       THE COURT REPORTER:  Good afternoon, Your Honor.  This

 1    is Nickie.

 2             THE COURT:  Okay.  Good afternoon.

 3        All right.  Well, this is the second pretrial conference.  We

 4    had one in November before we had to abort on the trial.  And to

 5    the parties, I think I asked whether a pretrial conference would

 6    be appropriate again.  I think one side said that we should have

 7    one and one side said that it was unnecessary, but, obviously,

 8    we're doing this remotely and I thought there were some issues

 9    that maybe we should productively deal with today.  So that's

10    where we are.

11        So I have got an agenda and I will go through it, and then to

12    the extent others wish to add anything to it.  I know we did get

13    something suggesting there were two or three issues that I guess

14    the defense wanted to raise.  At some point during my agenda, I

15    will probably cover those issues.

16        But let's start with the issue we had.  We spent a lot of

17    time talking about whether plaintiff could substitute Expert

18    Witness Hodgson for Buckmiller, and I think it's all moot now

19    based on what I've recently read.

20        But can the plaintiff counsel confirm for us that neither of

21    those witnesses will be called during the trial?

22             MR. RAVA:  This is William Rava.  And I can so confirm.

23             THE COURT:  Thank you, sir.  That takes care of that

24    one.

25        Now, plaintiff is not seeking actual damages, only profits of

1    the defendant; is that correct?

2        Mr. Rava, maybe you can respond to that as well.

3            MR. RAVA:  Again, this is William Rava.  And that is

4    correct, Your Honor.

5            THE COURT:  All right.  Now, so let's talk about the

6    amount of actual damages.  I think your trial brief says you

7    believe that you can prove at least 43,210.  Is that the number

8    that you had?

9            MR. RAVA:  This is William Rava, Your Honor.  And, yes,

10   if that is the amount in our trial brief, then that is the amount

11   that we intend to present.

12           THE COURT:  And is that the net, is that the damages --

13   the damages your client incurred, now what's the basis of that?

14           MR. RAVA:  Your Honor, this is William Rava again on

15   behalf of the plaintiff.  That is a profit calculation or a

16   revenue calculation from defendants' financial records that we

17   have been able to secure through discovery in this matter.

18           THE COURT:  And maybe I misspoke.  What the plaintiff is

19   seeking is not actual damages but rather the profits of the

20   defendant; is that right?

21           MR. RAVA:  William Rava again, Your Honor.  And, yes,

22   that is correct, plaintiff is not seeking -- is not seeking

23   actual damages.

24           THE COURT:  And the 43,210, let's assume that that's

25   what you have got in your trial brief -- I will maybe confirm it

1    before.  Yeah, on page 22 of your brief.  Well, it was 43,210 in

2    sales.  And so the gross profits of Phoenix Digital amounted to

3    13,000, I don't know, 874.  And the 43,000 was assuming you could

4    prove 1,406 copies, but you don't have anything in your trial

5    brief indicating what the defendants' expenses would be, if there

6    were any.

7        So what I'm trying to understand is, from what you know about

8    this case, what is it in terms of total amount of profits of the

9    defendants that you think you can prove?

10            MR. RAVA:  Your Honor, William Rava on behalf of

11    plaintiff.  We believe that we can prove up that $43,210 number

12    as recoverable profits.

13            THE COURT:  So there would be -- and you're assuming the

14    defendant doesn't have any costs in relation to those sales?

15            MR. RAVA:  That's correct.  William Rava.  Sorry, Your

16    Honor.

17            THE COURT:  I've got your voice down now.  You don't

18    have to repeat it.

19            MR. RAVA:  Okay, okay.  We were earlier warned, Your

20    Honor, that we should do it on behalf -- for Nickie's sake, and

21    so I --

22            THE COURT:  Nickie, don't you think we've got him down

23    now?

24            THE COURT REPORTER:  Probably, Your Honor.  Until

25    someone else speaks.

1      THE COURT:  All right.  She will speak up if she doesn't

2  know who is talking.

3      But I'm still confused.  Are you seeking gross profits from

4  Phoenix Digital Group different from other defendants?

5          MR. RAVA:  No, Your Honor.

6          THE COURT:  All right.  So we're starting with 43,210,

7  and you're saying that that's the sales, and then it's the

8  defendants' responsibility, as I understand it, to come up with

9  costs.  If they can't do that, you get the 43,210, if you can

10 prove it.  If they do come up with expenses related to the sales,

11 then that would reduce the amount.

12     So, Mr. Mann, let's ask you, do you have expenses or can you

13 prove any expenses dealing with these alleged 1,406 copies that

14 were sold?

15         MR. MANN:  Thank you, Your Honor.  This is Philip Mann

16 for the defendants.

17     Yes, Your Honor, there has been some testimony in the case

18 that the gross revenues that Phoenix Digital receives is split

19 50/50 with the actual creator of the product that was sold.  So,

20 you know, 50 percent of it comes off the top.

21     But the point I would like to make here is whether it's

22 $40,000 or $10,000, this is silly to have a four-day jury trial

23 on this.

24     We have never -- we have never --

25         THE COURT:  Mr. Mann, we're going to get there.

1          MR. MANN:  Okay, okay.  Well --

2          THE COURT:  Just answer the question on the table.

3          MR. MANN:  Yes, Your Honor.  Yes, Your Honor.

4          THE COURT:  I do understand 50/50 from their -- I assume

5    you can offer some evidence that they paid someone else

6    50 percent of the sales.  So let's just assume that.

7        Do you have any other deductions that you would be

8    contending?

9          MR. MANN:  Yes.  Yes, Your Honor.  This is Philip Mann

10   for the defendants.

11       Our principal witness has testified that there were expenses

12   associated.  50 percent comes off the top, they have to pay

13   expenses operating the website, and he estimated that the overall

14   profit margin is approximately 15 percent.  So we're talking

15   about whether it's $43,000 or $15,000.

16         THE COURT:  So we're not talking about a lot of money.

17         MR. MANN:  No, we certainly are not.

18         THE COURT:  Bungie would be entitled to attorney's

19   fees -- I'm sorry, permanent injunction.  But you're not

20   infringing anymore, so maybe they wouldn't --

21         MR. MANN:  Yeah, they, in essence -- and, again, this

22   is Philip Mann for defendants.

23       Very early on, Your Honor granted a preliminary injunction.

24   That took place after my clients had already stopped selling it.

25   The issue of an injunction, it's immaterial.  My client has no

 1    intention of ever selling this product again or any other product

 2    that would relate to Bungie's games.

 3         THE COURT:  I understand.  But whether or not the court

 4    could -- if they're no longer infringing and they're out of

 5    business, whether I could even enter a permanent injunction.

 6         But let's move on.  Bungie wants attorney's fees and costs.

 7    I'm looking at that statute, and it seems to me that, first, it

 8    is discretionary, under 17 U.S.C. Section 505, whether in a

 9    copyright infringement case the court would have to award

10    attorney's fees.

11         And then I'm looking at 17 U.S.C. Section 412, subpart (2),

12    which precludes any award of attorney's fees if the copyrighted

13    work is not registered prior to the commencement of the

14    infringement.  And there's an "unless" that doesn't apply, a

15    three-month rule.

16         And I have to say to the plaintiffs, I'm going to be

17    reluctant, very reluctant, to exercise discretion awarding

18    attorney's fees in this case if we go to trial, unless you have

19    to go to trial because of the counterclaims.

20         So from the plaintiff's standpoint, do you agree I have

21    discretion to award attorney's fees under Section 505, and do you

22    agree that the statute, Section 412(2), would even preclude my

23    exercising discretion if the copyrighted work is not registered

24    prior to the commencement of the infringement?

25         MR. RAVA:  William Rava, Your Honor, again for

1    plaintiff.

2      We agree that you have discretion to enter an award of

3    attorney's fees or not at the conclusion of the case.  And, also,

4    that your read of 412, I believe it was (B), is accurate, and we

5    understand your articulated reluctance relating to that issue.

6           THE COURT:  Do you also agree that Bungie published

7    Destiny 2 on September 9 of 2017?  The effective date of the

8    registration was not until February 9, 2021.  So that's the real

9    important date.  The registration of Destiny 2 is February 9.

10     Now, there was another one, Destiny 2 Beyond Light, was

11   maybe the same date it was registered.

12          MR. RAVA:  William Rava.  Yes.  Yes, Your Honor.

13     Destiny 2 was first published on September 9th, 2017,

14   correct, and the copyright registration was -- I think it was

15   registered on February 9th.

16          THE COURT:  2021.

17          MR. RAVA:  Yeah, 2021.  And another one was maybe six

18   weeks later.

19          THE COURT:  The Beyond Light?

20          MR. MANN:  I think one was --

21          THE COURT:  No registration prior to February 9 of 2021?

22          MR. RAVA:  Correct, Your Honor.

23          THE COURT:  And do you agree that -- well, can you prove

24   that any of the copyright infringement claims relate to any

25   activity of the defendants after February 9 of 2021?

1    Do you want me to ask that again?

2         MR. RAVA:  Yeah, yeah.  I'm sorry, Your Honor.  If you

3    could ask that again, that would be --

4         THE COURT:  Yeah.  As I understand it, the first

5    registration of either Destiny 2 or Destiny 2 Beyond Light was on

6    February 9, 2021.

7         MR. MANN:  That's correct, Your Honor.

8         THE COURT:  And as I understand it, prior to that time,

9    the defendant ceased selling any or making any distributions of

10   the cheat software by at least that time.  I haven't heard the

11   proof yet.  But are you going to be able to prove that they

12   copyrighted anything after February 9 of 2021?

13        MR. RAVA:  Well, we can prove that we copyrighted --

14   that Bungie copyrighted Destiny -- that one of the other

15   copyrights registered on Destiny 2 on March 23rd of 2021, and

16   that Bungie's copyright on Beyond the Light registered on -- or

17   one of them registered on February 10th of 2021.

18   I don't know if I'm answering the -- I don't know if I'm

19   understanding the question, so I'm not sure I'm answering it

20   correctly.

21        THE COURT:  Well, here's my, and I will think about what

22   you just said as well, but it seemed to me that any -- let's take

23   this $43,210 in sales that we were talking about, the 1,406

24   copies of the cheat software that totaled in sales of 43,210.

25   Did all of those sales occur prior to February 9, 2021?

1      MR. RAVA:  I believe they did, Your Honor.

2      THE COURT:  All right.  So then the question -- I guess

3  what I hear you suggesting, and I don't know that this has been

4  briefed, and maybe you are not suggesting it, but are you

5  suggesting that because the defendants registered their own

6  copyright -- did they register something after February 9?  No.

7      MR. RAVA:  No.  I'm sorry, Your Honor, if I misspoke.  I

8  don't believe that the defendants have registered any copyrights.

9  I'm unaware.  I'm unaware of any copyrights being registered by

10  the defendants.

11      MR. MANN:  Your Honor, Philip Mann for the defendants.

12  That's correct, we have not registered anything ourselves.

13      THE COURT:  All right.  So where I'm going is just

14  trying to understand what's at issue in this case and what it is

15  that the plaintiff could possibly recover by pursuing the claim.

16  And what I'm hearing is that, A, attorney's fees are

17  discretionary; B, the judge has already said that he would be

18  very reluctant to grant attorney's fees just because of what's

19  involved, et cetera, and the way that the case is progressing;

20  and, lastly, that even if I wished to grant attorney's fees and

21  exercise my discretion in that regard, Section 412(2) would

22  preclude it, based on my reading of that statute.

23      So it sounds like you're not going to get attorney's fees

24  whether you win or not.  Is that kind of a fair reading?

25      MR. RAVA:  Well, Your Honor, let me -- this is William

1   Rava -- maybe correct it, correct the record slightly, Your

2   Honor, on that.  Our Beyond Light registration was registered

3   within three months of the first publication, so, under 412, we

4   would be entitled to attorney's fees, of course, subject to the

5   505 discretionary standard.

6        THE COURT:  And Bungie published Destiny 2 Beyond Light,

7   I think I've got November 10, 2020, and they registered it on

8   February 9.  So I guess that's the three months.  But then it

9   would be ...  Okay.  All right.  I understand your position.

10       Don't take offense if I'm picking on you, because I'm going

11  to pick on Mr. Mann in just a moment in a like way.  I just want

12  to understand what is involved, what are the likely results, and

13  whether or not this is something that should or could be resolved

14  somehow short of a jury trial.

15       But let's move on.  I have yours.  I understand yours.

16       Now, Mr. Mann, are you still there?

17       MR. MANN:  I am, Your Honor.

18       THE COURT:  Wonderful.

19       You've got a counterclaim.  You've got one counterclaim, and

20  you are entitled to both actual damages or any profits of the

21  plaintiff.  So are you seeking actual damages?

22       MR. MANN:  We were, Your Honor.  I think this is going

23  to be a bone of contention.  I'm sorry.  This is Philip Mann for

24  the defendant.

25       Our client incurred some expenses in replacing his computer

1  equipment and putting time into correcting this.  I know, in

2  general, that Bungie has objected to that.  You know, that will

3  probably be a factual issue.  But we're not talking huge numbers,

4  I will --

5          THE COURT:  Well, what are you talking?

6          MR. MANN:  10-, $15,000, for his direct damages incurred

7  by the substance of our counterclaim.

8          THE COURT:  All right.  And with respect to profits of

9  the plaintiff, do you have any evidence that's going to get you

10 anything in that regard on this counterclaim?

11         MR. MANN:  To be honest, I don't really know, but I

12 don't think so.  I mean, I don't want to pull myself in, but I'm

13 not aware that we have a claim for millions or millions or

14 anything like.

15         THE COURT:  Well, if you don't got the proof, you can't

16 tell me.  And, of course, because of the nature of that

17 counterclaim, it's just kind of unlikely that you can -- well, if

18 you don't have the --

19         MR. MANN:  Well, Your Honor -- I'm sorry.  Go ahead.

20         THE COURT REPORTER:  I'm sorry, Your Honor.  Your Honor,

21 I need everyone to speak one at a time.

22     You are overlapping tremendously, counsel.

23         MR. MANN:  I understand.  Thank you.

24         THE COURT:  And I am probably guilty of that as well,

25 Nickie.  I'm sorry.

1    Let's slow it down a little.  Mr. Mann, tell me what evidence

2    you have of any profits made by the plaintiff as a result of this

3    counterclaim, should you prevail on the counterclaim?

4        MR. MANN:  As I sit here today, Your Honor -- this is

5    Philip Mann -- as I sit here, I'm not sure that we have any

6    evidence of profits as a measure of damages.

7        THE COURT:  All right.  Thank you.

8    So if the plaintiff gave up on their claim, which they

9    obviously don't have to if they don't want to, but would the

10   defendant be willing to dismiss the counterclaim?

11       MR. MANN:  That is something I will have to discuss with

12   my client, Your Honor.  But, again, I'm going to be honest with

13   you, the purpose of our counterclaim is to demonstrate in a

14   formal manner, by way of a jury finding, that Bungie has violated

15   the rights of its own customers.  Now, this may be the subject

16   of -- if this happens, this may be the subject of a class action

17   lawsuit.  I don't handle those things, but I do know people who

18   do.  So our interest in this would be in getting a thankful

19   finding that Bungie is violating the rights of the people who

20   sign up for its game.  I'm putting my cards on the table.  That

21   is the value to us.  Now, whether it translates into actual

22   dollars in damages, they said we're talking thousands of dollars,

23   maybe 10,000.  I don't want to pretend that I have bigger numbers

24   than that, but that is the value of pursuing the counterclaim for

25   us.

1          THE COURT:  All right.  Well, let me just share with you

2    what I learned today with respect to your ability to recover

3    attorney's fees should you win on the counterclaim.  And as I

4    understand it, under Section 1203 of I think it's Title 17, you

5    get actual damages, which you have described as 10- to 15,000,

6    but I think that's a wish list; you get profits, but you don't

7    have any; now, you could get statutory damages, and I guess you

8    could elect for that even after the case was over, but any time

9    before final judgment, so that doesn't generate anything.  But

10   you may elect to recover -- I'm sorry.  I want to find the

11   attorney's fees section because I think it is discretionary.

12   Aha.  Section 1203(b)(4), in its discretion, the court may allow

13   recovery of costs.  And in its discretion, subpart (5), the court

14   may award reasonable attorney's fees to the prevailing party.

15        Once again, this judge is going to be very reluctant, under

16   what's involved here and given the history and the award in the

17   arbitration, to bring a jury in to litigate this case.  It is,

18   frankly, a little bit, I don't want to say offensive to me -- you

19   obviously can do it -- but it just doesn't seem like it's the

20   kind of case that should go forward under all the circumstances.

21   But you have to decide that, I guess.

22        So let's go to the voir dire and have a little more

23   substantive conversation.  In the voir dire section, there were a

24   couple of objections to my proposed voir dire, which was

25   originally dated November 27.  So I'm looking at that script, and

1    I'm proposing to make a couple of changes.

2        One was asked for by Bungie in the "Nature of the Case."  And

3    in the third line -- I don't know if you have got copies of your

4    voir dire script in front of you -- Bungie was asking me, after

5    the "registrations for the computer software" language, to add in

6    "audiovisual work."  I'm inclined to add that to the "Nature of

7    the Case."

8        I'm also inclined -- I don't think anybody asked me this --

9    but on page 6, No. 12, I'm going to break 12 into two parts.  The

10   first part deals with owning stock or having any financial

11   interest, and I'm not going to change that, other than to make it

12   12A.  And 12B is:  "Do you know any employee of Bungie or Phoenix

13   Digital?"

14       And one of the reasons I want to ask that is, we haven't

15   talked about the John Doe issue yet, but I gather he works -- can

16   plaintiff confirm he works for Bungie, or does he work for its

17   parent, Sony, or some related company?

18           MR. MARCELO:  This is Christian Marcelo.  We can confirm

19   that he works for Bungie.

20           THE COURT:  Okay.  So the reason that I ask is that if I

21   ask it that way, if nobody knows anybody who works for Bungie,

22   then hopefully they don't know Mr. Doe, unless they live next

23   door to him, and we will have to sort that out if and when we

24   ever get there.

25       So I think that that's maybe the only changes to the voir

1  dire.  I will send you out another revised copy, and you can file

2  any final objections to the voir dire script by May 15th, should

3  you have any.

4      So let's go to the -- does either side have anything else

5  they want to talk about now about the voir dire script?

6          MR. MANN:  Oh.  For the defendant, Your Honor, we have

7  no problem with it.  Nothing to discuss.

8          MR. MARCELO:  Same for plaintiffs.

9          THE COURT:  All right.  I wanted to clarify, because

10  there was some question of referring to the arbitration, and,

11  basically, we're not going to tell the jury about the

12  arbitration, but there may be -- one side or the other, or both,

13  may wish to impeach a witness by testimony they gave during the

14  arbitration.  But I don't think that it's necessary to identify

15  where the testimony was given or why, but only, in impeaching,

16  that it would be "You gave testimony under oath on such and such

17  a date" and then proceed to impeach, if you can.

18      Does everybody understand kind of the use of the impeachment

19  rules and not to refer to arbitration?

20          MR. MANN:  Your Honor, Philip Mann for the defendants.

21  We think that that's a very sensible approach, and I was going to

22  suggest that, if the court hadn't.

23      You know, certainly they can use prior testimony for

24  impeachment purposes, but they could simply say that in prior

25  testimony, you stated, under oath, et cetera, blah, blah, blah.

 1  No reason to say, "In an arbitration, where the arbitrator

 2  awarded 4.3 million"; you know, we think that would be a bit

 3  gratuitous.  But I think that's a very sensible approach that

 4  ought to handle this.

 5          THE COURT:  Any objection to that approach?

 6          MR. RAVA:  William Rava for plaintiffs, Your Honor.  No,

 7  we have no objection to the approach you have recommended.

 8          THE COURT:  All right.  Wonderful.

 9      Let's talk about jury instructions.  Again, we had a draft

10  dated November 27.  We're going to provide you in the next two

11  days with a revised draft.  But I want to go over the changes

12  because you each had some objections that you had raised.  I

13  guess they were filed right before -- last December, before we

14  had to abort the trial.

15      But Bungie filed its objections at Docket 253, and I'm kind

16  of going to walk through your objections and tell you kind of

17  what I'm tentatively thinking and then see if there's any

18  objections from the other side.

19      So with respect to the plaintiff's objections, they have

20  proposed adding the language -- well, what you did is you just

21  reordered it, but I don't think you changed any of the wording,

22  but you just did it in perhaps a little better format.  And I

23  have no objection to the format that you have proposed in

24  Objection No. 1.  So I'm intending to do that.  That would be my

25  ruling.  That's just style.

1       Objection 2 dealt with the question of the source code and

2   whether it needed to be added, that language, to how a copyright

3   is obtained.  It's on page 8 and 9 of Bungie's objections, Docket

4   253.

5       But I don't think there's any dispute, is there, that both

6   the source code and the object code constitute representations,

7   and if either is registered, the lawsuit is to be -- that's the

8   end of the story.  So I don't see why I would add that because I

9   don't think it's necessary.

10      Mr. Mann, you are not going to argue, are you, that they

11  didn't register?  Well, I mean, I think the admitted facts are

12  that these were registered.  So that's kind of the end of the

13  story.  We don't need to talk about source code, at least in the

14  instructions.  You may get into it in evidence.  I don't know

15  why, but you might.

16      But for purposes of our plaintiff's right to recover, the

17  cases seem pretty clear that either can be registered, and once

18  they're registered, that covers them both.

19      So, Mr. Mann, do you have a different view of the world?

20          MR. MANN:  Your Honor, I don't think so.  I don't know

21  whether this was addressed with the court earlier or not, but I

22  believe Mr. Rava and I are in agreement on what was submitted to

23  the Copyright Office by way of what they call, you know, copies

24  or what they deposit, the stuff that they deposit.  So I don't

25  think that's in serious dispute.  I believe that they have

1  confirmed.  They've provided one of their exhibits.  They said

2  these are the samples that we submitted to the Copyright Office

3  and I confirmed it was this, nothing more, nothing less, yes.  So

4  I can't confirm or say, but I don't think this is an issue

5  anymore.

6      But, Mr. Rava, you might want to correct me, but, yeah.

7          THE COURT:  Well, but -- this is the judge -- you were

8  objecting at some point along the way that, well, you were

9  wishing to and were wanting -- contending that they hadn't

10  supplied you with the source code, or maybe it was the object

11  code, I'm not sure.  But in any event, it doesn't really matter,

12  does it?  I think that issue is pretty much off the table.

13      I have read all the cases cited on page 11 of the Bungie

14  objections, and, you know, the cases stand for what the plaintiff

15  says.  The *GCA Corporation* case specifically says object code is

16  the encryption of the copyrighted source code, the two are

17  treated as one work, and the copyright of the source code

18  protects the object code as well.

19      So, I mean, I just think that that issue is off the table,

20  and assuming it's off the table, I'm not going to make the change

21  that Bungie is requesting in objection to the court's proposed

22  language.  If we get into it during trial for some reason, then,

23  obviously, we will take another look at it.  But I just think

24  that's not something we need to put in the instructions, as I

25  understand the issues in the case.

1      So Bungie's Objection No. 3 deals with May's counterclaim,

2   and, there, they want to add something to the extent that -- and

3   I'm looking now at page 13 of the objections, that "However,

4   misleading a copyright holder or using deception in order to gain

5   access ..."

6              (Court reporter interruption due to noise.)

7              THE COURT:  Well, I don't see the necessity of adding

8   the language which Bungie is suggesting we add.  And I'm not

9   entirely sure -- so does plaintiff want to explain a little bit

10  why you think you need to add that language that's shown on

11  page 13 of your Submission 253, Docket 253?

12             MR. RAVA:  Yes, Your Honor.  This is William Rava on

13  behalf of the plaintiff.

14      The language that we were seeking was to clarify simply that

15  misleading behavior or deception that does not involve efforts to

16  defeat a digital measure is not covered by the DMCA.  And because

17  we don't believe that the defendant, counterclaim plaintiff

18  here -- or, actually, it's Mr. May -- that Mr. May will be able

19  to have any evidence to suggest that Bungie defeated any digital

20  measures and will intend, instead, to focus on deceptive behavior

21  or misleading behavior or other things, we think it's important

22  to clarify that those things are not protected under the DMCA.

23             THE COURT:  Well, Mr. Mann, what's your view of the

24  world here?

25             MR. MANN:  Frankly, Your Honor, I'm not up on that,

1  this issue, and I did not understand what -- I mean, I heard

2  Mr. Rava's words.  I'm not sure I understand those.

3      Our position from day one has been, among other things,

4  Bungie has defeated the firewall that Mr. May had and Bungie has

5  defeated the passwords that Mr. May has had in place.  Whether we

6  can prove that or not, that's a matter for the jury.  But our

7  theory is certainly that they did defeat technological measures.

8  And I suppose what I'm thinking is maybe this is something we

9  revisit shortly before the case goes to the trial {sic} and base

10 it on what testimony we have heard or we haven't heard.

11         THE COURT:  So I'm not particularly inclined to add this

12 language.  It sounds more like arguments than what the law is.

13 On the other hand, I think the appropriate thing to do is to just

14 defer, and after we hear the evidence, if one side or the other

15 thinks that some additional language is necessary for

16 Instruction 15, we can have that discussion and make that

17 decision at the time of trial.

18     So with respect to what I'm going to describe as Bungie's

19 proposed language and objections to Instruction 15, we will just

20 defer that to trial.

21     The next one that Bungie raises is dealing with

22 Instruction 16C, and my view is that there should be no change in

23 the language of measure of damages on May's counterclaim.

24 Although, at the moment, I will maybe make some changes myself,

25 so let me look at my notes as well.

1    I think it's pretty clear that 16 -- I am going to change 16

2    because we -- no, I think that 16 is all right the way it is.

3    So I'm just not understanding what it is that the plaintiff

4    thinks we need to change or why we have to have 16C.  What does

5    that add that we don't already have in 16?

6    MR. RAVA:  William Rava for plaintiff, Your Honor.

7    Our only objection to 16C was simply just essentially

8    correcting the citation to the code in the source at the bottom.

9    We essentially think there's a typo.  Instead of "1201," it

10   should be "1203."  That's all.  That's our only --

11   THE COURT:  And I think you are absolutely right.  It is

12   1203(c), I think.  Yeah.

13   All right.  I will make that change.  I mean, obviously, the

14   jury is not going to see those sources.

15   MR. RAVA:  Right.

16   THE COURT:  They're going to come off when we get to the

17   final draft.

18   All right.  So let's go to your Objection 5, which is to

19   Instruction 14D.  This is new.  And I don't think it's necessary

20   because "derivative works" is something that is in the

21   instructions already in several places, and it seems to me that

22   it adds nothing, other than maybe confusion, to try and come up

23   with this type of language.  So I'm not inclined to add it

24   because it's already there.  You proposed a new 14E and a 14D,

25   but I think that what we have got covers the waterfront.

1      So why should I make any changes to this statement for the

2   plaintiff?

3           MR. RAVA:  William Rava, Your Honor, for plaintiff.

4      As to our Proposed 14D on derivative works, our thinking

5   there was that "derivative works" can be complex and an

6   unfamiliar topic for the jurors, and a derivative work is

7   essential to one of Bungie's infringement theories, specifically

8   that the cheat software creates a derivative work based on

9   Destiny 2.

10          THE COURT:  And "Copyright Infringement," in Instruction

11  14, already says that an owner has the right to exclude any other

12  person from reproducing, distributing, et cetera, or preparing

13  derivative works from the work covered.  So it's covered in 14,

14  page 1.  It's also covered later, when we get to the rest of

15  the -- and "Direct Infringement" includes "prepares derivative

16  works," on 14, page 3, through line 7,

17     So, I mean, I just think we've got it covered.  Derivative

18  copyrighting is set forth, and I think this adds nothing to where

19  we are.  So I'm inclined not to give it.

20     And you ask in Objection 6 kind of the same, adding 14E, but,

21  again, I think it repeats what we've already got, and I'm not

22  inclined to give it.  So that's kind of where we are on the

23  plaintiff's objections.

24     Let me take a look quickly at the defendants' objections.  I

25  think we have covered defendants' profits is the sole measure to

1    be pursued by Bungie at trial, so that's not something -- but I

2    think we do need to revise, and I did accept the revisions to 16.

3    So let me just find those and read them to you.  And you will get

4    a copy of these things.

5        In Instruction 16, I think that we need to strike "any

6    'Actual Damages'" because you have given up on actual damages.

7    So you would be able to recover any profits.  That would be a

8    change to 16.  We don't need 16A because that's the actual

9    damages.  And so I think that covers 16 -- that is 16A.

10       But we had a 16B, and I think I'm going to make a change

11   there.  There, we said, "In addition to actual damages, the

12   copyright owner is entitled to any profits."  But I think the way

13   it should be worded now -- and you will see this when we send it

14   to you -- is "If your verdict is for Bungie on its copyright

15   infringement claim as to a defendant or defendants, Bungie is

16   entitled to an award of any profits of the defendant or the

17   defendants attributable to the infringed claim."  So, in other

18   words, just limiting it to actual -- sorry, to profits.

19       Let me ask this:  Does the plaintiff draw a distinction

20   between one defendant versus the other, or is your infringement

21   claim -- if you get a judgment on your infringement claim, is it

22   against all defendants?

23           MR. RAVA:  Your Honor, William Rava on behalf of

24   plaintiffs.  And we anticipate that the evidence will show that

25   it will be as against all the defendants.

 1          THE COURT:  All right.  I think I covered defendants'

 2   objections to the instructions.  It was only relating to 16 and

 3   16A and B.

 4      What we will do is we will send you a copy of the revised

 5   court's instructions, and we will ask that you give me pretty

 6   much a final any-other-thing-you've-got-to-talk-about objection

 7   by May 15.

 8      There's one instruction that we haven't talked about.  It was

 9   just filed maybe yesterday or the day before, and that's dealing

10   with the spoliation instruction.  It's Docket 281.  And I was

11   going to ask the plaintiff to draft something.  But, anyway, I

12   thought it was a pretty good proposed instruction, frankly.  And

13   I don't know exactly where it would go in the packet.  I wouldn't

14   have the footnotes, obviously.

15      But, Mr. Mann, I don't know if you have had a chance to

16   review this proposed spoliation instruction.  And if not, I

17   totally understand and would give you a week or so to file any

18   proposed objections to it.

19          MR. MANN:  Oh, thank you, Your Honor.  This is Philip

20   Mann.  I did see it, but I have not had a chance to digest it or

21   analyze it.

22      I don't know whether this is the appropriate time to address

23   this, but as far as the spoliation goes, what we as the

24   defendants -- we do not understand why this mattered because we

25   are not disputing many of the -- or any of the allegations made

1    by Bungie in this respect.  You know, in particular, the

2    financial records were obtained from PayPal and others.  We don't

3    dispute what they say.  And I don't know if this is the

4    appropriate time to address it, but why don't we do this:  If you

5    can give me a week to respond to that, I can get my thoughts

6    together and probably give you a much better and a more coherent

7    response than I can give you off the cuff here.

8         THE COURT:  Well, I did enter a spoliation order, as you

9    know, and we did say that we'd permit the plaintiff to provide

10   the jury with evidence of the spoliation.  I think this

11   particular draft of the spoliation instruction tracks the order

12   pretty accurately and doesn't really go beyond it.

13        So your objection would go not maybe to the language but

14   whether it should be even given, given the nature of where we

15   are.  And, you know, file whatever you need to file and we will

16   take a look at it and we will deal with it.  But for purposes of

17   what I am going to send you next week, the spoliation instruction

18   is going to be in there, and then it will be your job to try and

19   convince me that, at trial, we should take it out.

20        MR. MANN:  Yeah.

21        THE COURT:  All right.

22        MR. MANN:  I understand, Your Honor.  Thank you.

23        THE COURT:  All right.  I have got two or three other

24   issues, and I think we will be done.

25        One is I know that you have raised some issues about

1  transcripts and days.  Does anybody think they need some sort of

2  daily transcript during trial?

3       MR. MANN:  Your Honor, for the defendant, that's a

4  luxury we can't afford, so we certainly have no request for

5  daily transcripts.

6       MR. MARCELO:  Your Honor, this is Chris Marcelo.  I

7  think at the last pretrial conference we had discussed just

8  smooth roughs would be fine.

9       THE COURT:  Would you say that again?  I didn't

10  understand you.

11       MR. MARCELO:  Yeah.  For plaintiff, just roughs instead

12  of dailies would be fine, and I think that's what we had all

13  discussed at the last pretrial conference as well, smooth roughs.

14       THE COURT:  Well, you are going to have to work that out

15  with the court reporter.  I don't know who that will be.

16    Nickie, do you know if they have been set for May?

17  (Off-the-record discussion between the reporter and the court.)

18       THE COURT:  We have talked about the time clock, and I

19  think we've set 12 hours per side.

20    So let me ask about witnesses.  Are all of the witnesses

21  going to testify that are in the pretrial order now that I have

22  entered or are there -- well, I guess, the one experts aren't

23  going to testify.  But do we have others that won't testify?  I

24  know we went through this before, but let's just take a moment.

25    We have got the expert witnesses.  You have got Dr. Kaiser.

```
 1   Is that going to be live, or by deposition, or how is that going
 2   to be presented?
 3            MR. RAVA:  William Rava for plaintiff, Your Honor.
 4   Dr. Kaiser will be presented live.
 5            THE COURT:  Okay.  And Steven Guris, G-u-r-i-s?
 6            MR. RAVA:  William Rava again.  And, yes, doctor -- not
 7   doctor -- Mr. Guris will also be presented live.
 8            THE COURT:  All right.  And Drew Voth, V-o-t-h?
 9            MR. RAVA:  Mr. Voth also will be presented live.
10            THE COURT:  All right.  And Buckmiller we can take out;
11   is that right?
12            MR. RAVA:  That's correct, Your Honor.
13            THE COURT:  All right.  He will be deleted then.
14       Now, for "Other Witnesses," you have got Schaefer as a "will
15   testify."  Is that still so?
16            MR. RAVA:  It is, Your Honor.
17            THE COURT:  All right.  Jordan Green, you say "may
18   testify."  What's the status of Green?
19            MR. RAVA:  I think it's likely that we will call
20   Mr. Green to testify, Your Honor.
21            THE COURT:  But if you do, it will be live?
22            MR. RAVA:  Yes.  Our understanding is that Mr. Green
23   will be attending the trial.
24            THE COURT:  All right.  How about Mr. Conway?  You got a
25   "may testify" and he lives in Phoenix.
```

1    MR. RAVA:  Yes.  And I think our current plan is that

2    Mr. Conway will testify.  And as I believe that we had discussed

3    at the earlier -- at the November pretrial conference, Mr. Conway

4    will testify remotely, I believe, unless his plans and/or health

5    have changed.

6         THE COURT:  Oh, yes, I remember.

7    All right.  And Mr. May will testify.  You will call May?

8         MR. RAVA:  We will call Mr. May for sure, and our

9    understanding is that he will be a live witness as well.

10        THE COURT:  All right.  Now, May is sued and he's also

11   got a counterclaim.  So my normal procedure would be to have a

12   witness, once they testify, to get all the testimony in.  But it

13   seems to me that, with May, plaintiff can call him, ask whatever

14   questions, Mr. Mann can cross-examine based on what you have

15   presented, and then defer and bring him back in their case-in-

16   chief and present their testimony affirmatively in their

17   counterclaim.

18   All right.  Jason Hahn from Florida.  Is going to testify?

19        MR. RAVA:  Mr. Hahn, I do not believe he will testify.

20        THE COURT:  All right.  Can we take him off the pretrial

21   order?

22        MR. RAVA:  Hold on one second, Your Honor.

23        THE COURT:  All right.

24        MR. RAVA:  Your Honor, again, William Rava.  I believe

25   you can take Mr. Hahn off of the pretrial order.  Thank you.

1          THE COURT:  All right.  He's now gone.

2      All right.  On behalf of the defendants, we've got David

3  Schaefer.  He's going to testify.  And Mr. May will testify.  And

4  Jordan Green is listed as a "may testify."

5      From the defense standpoint, what's the status of that

6  witness?

7          MR. MANN:  Yes, Your Honor.  This is Philip Mann for the

8  defendants.  I can make this very simple.  Our plan is

9  Mr. Schaefer, Mr. Green, and Mr. May will be in Seattle in the

10  courtroom and they will be available to testify live, whether for

11  the defendants or called adversely by the plaintiff.

12      Mr. Conway, as we mentioned, has some serious health issues.

13  I don't anticipate calling him at all.  If he were to testify,

14  that would be done remotely.

15      And our expert witness, Brad LaPorte, is in Florida.  We

16  would plan to call him remotely.

17      So that is the plan for the defendants.  Schaefer, Green, and

18  May will be physically present in Seattle; the others would be

19  available only by remote.  And we do plan to call Mr. LaPorte.

20          THE COURT:  And you do plan to call John Doe?

21          MR. MANN:  Well, I forget whose witness list he's on,

22  but I will put him as a "may call" for the defendants.

23          THE COURT:  Well, I don't see him on the plaintiff's

24  list.

25          MR. RAVA:  William Rava for plaintiff.  No, we do not

 1  plan to call Mr. Doe.

 2          THE COURT:  Well, then --

 3          MR. MANN:  Well, that makes it easy then.  Why don't we

 4  put him down as a "may call" for the defendant?  That's something

 5  I would have to think about.  I was under the impression that he

 6  was going to testify for the plaintiffs.

 7          THE COURT:  All right.  Well, we need -- I mean, because

 8  there's certain complications with Mr. Doe, maybe you need to

 9  give me and plaintiff's counsel a heads-up on that.  May 15?

10      What day of the week is May 15?

11          THE LAW CLERK:  It's a Wednesday.

12          THE COURT:  So, by May 15th, file something telling us

13  he's going to testify or not testify.

14          MR. MANN:  Well, thank you, Your Honor.  Philip Mann.

15      I understand then -- if I may ask Mr. Rava a question.  Do I

16  understand correctly that the plaintiff does not plan to call

17  Mr. Doe?

18          MR. RAVA:  That's correct.

19          MR. MANN:  Thank you, Will.

20          THE COURT:  All right.  That takes care of the

21  witnesses.

22          MR. MARCELO:  And, Your Honor, this is Christian

23  Marcelo.  If I could add, I know that you had mentioned, for

24  Mr. May, with his counterclaims, that he will be called by

25  plaintiff and then again can be called in the case-in-chief for

1    his counterclaim.  I'm wondering how that applies to the other

2    defendants that are being called by plaintiff in their

3    case-in-chief:  Mr. Schaefer, Mr. Green, and Mr. Conway.

4            THE COURT:  Well, I think so.  If they're defendants,

5    you can -- you know, it would be certainly a lot easier if they

6    testified all at once.  I would encourage you to do that, but

7    because they're defendants, I'm not going to insist on it.  But

8    see if you can agree on what you are going to do.  If you can't

9    agree, then Mr. Mann will just cross-examine when they're first

10   called and call them back in his case-in-chief.

11           MR. MARCELO:  Understood.  Thank you.

12           THE COURT:  I've kind of exhausted my list of issues

13   that I wanted to discuss.  Is there anything that we haven't

14   discussed that you wish to bring up?

15           MR. MANN:  For the defendants, I don't think so.  I

16   think we have covered -- between this and the earlier pretrial, I

17   think we have covered everything.

18       Oh, the other matter.  I assume there are no changes in the

19   logistics.  We'll select a jury by Zoom and present our opening

20   statements and then have the jurors come into court the following

21   day.  Is that procedure still in effect, Your Honor?

22           THE COURT:  That's my intent.

23           MR. MANN:  Thank you.

24           THE COURT:  Any other questions?

25           MR. RAVA:  Yeah.  This is William Rava for plaintiff.

1  We just want to, I guess, confirm that we can work with Laurie or

2  other courtroom staff on arranging a technical walk-through and

3  access to the courtroom in the week before, or at least the

4  Friday before, so we can move stuff in, et cetera.

5          THE COURT:  She's in charge of all that.  She's on the

6  line here.  So work with her.  We will need your exhibit books a

7  couple days before trial.  But work it out with the clerk.

8      So let me take one more swing at this settlement business.

9  I'm just kind of discouraged.  I bring in this jury, and they try

10  a case for four or five days, and the plaintiffs, you know, might

11  recover, let's say, something south of $43,000.  You probably

12  wouldn't get attorney's fees.  You may not get an injunction

13  because they're not doing that anymore.  And the defendants have

14  got a counterclaim, which, even if they prevail, it doesn't sound

15  like there's much in the way of damages.  It just seems like --

16  you know, if you've got other fish to fry in terms of reasons why

17  you need to try it, then I guess we try it, but I would encourage

18  you to see if you can't figure out a way to resolve this if you

19  can.  Otherwise, it will be an interesting trial, as I've said

20  before, and I'm hoping that there will be no other events that

21  occur that require changes of timing.

22      So, anyway, unless you have got anything else to say, we will

23  be ending this.  Anything from the plaintiff?

24          MR. RAVA:  Nothing further, Your Honor.  Thank you very

25  much.

 1          THE COURT:  Mr. Mann?

 2          MR. MANN:  Likewise, Your Honor.  Thank you for your

 3   time and effort on this.  We have nothing else to discuss.  I

 4   think we have covered everything.  Thank you.

 5          THE COURT:  All right.  We will be in recess.  Have a

 6   nice day.

 7          MR. MANN:  You too.  Thank you.

 8          MR. RAVA:  Thank you.

 9          THE CLERK:  Thank you, everyone.

10                    (Adjourned.)

11

12              C E R T I F I C A T E

13

14      I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

15   United States District Court in the Western District of

16   Washington at Seattle, do certify that the foregoing is a correct

17   transcript, to the best of my ability, from the record of

18   proceedings in the above-entitled matter.

19

20

21              /s/ Nickoline Drury

22              Nickoline Drury

23

24

25