THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BUNGIE, INC., a Delaware corporation,<br><br>Plaintiff<br><br>v.<br><br>AIMJUNKIES.COM, a business of unknown classification; PHOENIX DIGITAL GROUP LLC, an Arizona limited liability company; JEFFREY CONWAY, an individual; DAVID SCHAEFER, an individual; JORDAN GREEN, an individual; and JAMES MAY, an individual,<br><br>Defendants. | Cause No. 2:21-cv-0811 TSZ<br><br>**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR FOR A NEW TRIAL**<br><br>**Note on Motion Calendar: August 2, 2024**<br><br>**Oral Argument Requested** |

Defendants Phoenix Digital Group LLC, Jeffrey Conway, David Schaefer, Jordan Green and James May (collectively, "Defendants"), by and through undersigned counsel, hereby renew their Motion for Judgment As A Matter Of Law under Rule 50, Fed.R.Civ.P., and/or in the alternative for a new trial under Rule 59, Fed.R.Civ.P.

### INTRODUCTION

Under the clear and controlling precedent established by the Ninth Circuit in *Antonick v. Elec. Arts, Inc.,* 841 F.3d 1062 (9th Cir. 2016), Plaintiff Bungie, Inc.'s claim for copyright infringement fails *as a matter of law,* in view of the *indisputable[1]* facts that, (1) the contents of the copyrighted work alleged to be infringed were never introduced into evidence, and (2) the contents of the allegedly infringing works were never introduced into evidence either.

---

[1] Given that Bungie, itself, admitted it did not introduce these materials into evidence, Bungie's copyright infringement claim fails as a matter of law, even when viewing the evidence in the light most favorable to Bungie.

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 1

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Under the clear holding of *Antonick,* either of these indisputable deficiencies compels setting aside the Jury's verdict.

Here, it is beyond question that *both* such fatal deficiencies exist.[2]  As in *Antonick,* wherein the Ninth Circuit held it was proper for the District Court to set aside a jury verdict of copyright infringement, no evidence of record exists to support the jury's finding of copyright infringement here.  Accordingly, judgment in favor of Defendants on the issue of copyright infringement – the sole claim pursued by Bungie at trial – is compelled under the  clearly established and controlling precedent of *Antonick* and the cases cited therein.

Similarly, under the clear precedent of *Lewis Galoob Toys, Inc. v. Nintendo of America,* 964 F.2d 965 (9th Cir. 1992), the law is equally well-established that supposed "cheat" software that draws boxes and other graphics on a computer game display to show where enemy combatants are hidden or otherwise enables someone to "cheat" in a video game, does *not* create a "derivative work" in violation of a copyright holder's rights.  Even if defendant Phoenix Digital's "cheat" software provides additional graphics to the "Destiny 2" visual display, under the clear Ninth Circuit holding in *Lewis Galoob,* this does *not,* as a matter of law, create a "derivative work," and does *not* constitute copyright infringement.

Finally, the "spoliation" instruction given with respect to James May (DKT#293, pp. 13-14) was devoid of any evidentiary support whatsoever and should never have been given to the jury.  The *indisputable* fact is that Mr. May simply took corrective action to repair suspected corruption of his computer's operating system some two months *before* Bungie produced a document indicating that it was Bungie that had corrupted his operating system. At the time Mr. May repaired his computer, which the Court unfairly characterized as "wiping four hard drives,"[3] he had absolutely no reason to believe Bungie was behind the corruption and, as a matter of law, had absolutely no obligation not to repair his compromised computer system.

At trial, Mr. May testified to these indisputable facts, and absolutely no evidence or testimony to the contrary was adduced to dispute them.  Nevertheless, the Court, at Bungie's insistence and over Mr. May's objection, delivered an instruction to the Jury that falsely

---

2   What has been admitted into evidence by this Court is written down (Dkt#300) and is not subject to change, despite whatever wordsmithing might be attempted.

3   Mr. May clearly testified, and it was undisputed, that he "backed up" the files on these hard-drives and only replaced the operating system on them.  He did not destroy the files and readily produced them when requested by Bungie.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

accuses Mr. May of willfully "destroying" evidence "he had a duty to preserve," that he did so, "to deprive Bungie of the evidence that he destroyed," and that any such evidence was, "unfavorable" to him.  Given that the trial court *itself,* at the insistence of Bungie, made such damning statements directly to the Jury, it cannot seriously be argued the the false and improper spoliation instruction was not prejudicial to Mr. May and did not deprive him of a fair trial.

## LEGAL STANDARD

Under Rule 50(b), JMOL is proper where "the evidence construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *Mformation Techs., Inc. v. Research in Motion Ltd.,* 764 F.3d 51392, 1396 (Fed. Cir. 2014) (citing *Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir. 2002)); see also  Fed. R. Civ. P. 50(b). The standard for granting judgment as a matter of law is identical to the summary judgment standard: "[T]he inquiry under each is the same." *Reeves v. Sanderson  Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (quotations omitted). To prevail on a renewed motion under Rule 50(b), the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1348 (Fed. Cir. 1998).

Under Rule 59(a), a new trial is appropriate when "the verdict is against the weight of the evidence, … the damages are excessive, or … for other reasons, the trial was not fair to the party moving." *Molski v. MJ Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007); see also Fed. R. Civ. P. 59(a). The standard for evaluating the evidence under Rule 59 is less stringent than under Rule 50, and a court may, therefore, order a new trial under Rule 59 even when the evidence is insufficient to grant JMOL. *See Landes Constr. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 211371-72 (9th Cir. 1987).  Unlike the Court's analysis under Rule 50, in deciding whether to order a new trial "[t]he judge can weigh the evidence and assess the credibility of

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 3

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Id.*

**ARGUMENT**

**A.   JUDGMENT AS A MATTER OF LAW IN FAVOR OF DEFENDANTS IS PROPER AND MANDATED UNDER CLEAR NINTH CIRCUIT PRECEDENT**

Where, as here, neither the copyrighted work itself nor the work alleged to be infringing are in evidence, copyright infringement as a matter of law cannot properly be found.  This is not surprising as no reasonable jury can find "substantial similarity" without being able to compare the two works in question.  *See, Antonick, supra.*

**1.      The Applicable And Controlling Law**

The operative law regarding a copyright infringement claim is well-settled and easily understood.  Under well-settled law, to make a claim for copyright infringement, a claimant must prove (1) ownership of a valid copyright, and (2) "copying" of the "original expression from the copyrighted work or works."  *See, Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340 (1991) and Jury Instruction No. 4  (Dkt#293, pp.22-23).  Here, given that Defendants stipulated to Bungies' ownership and validity of the four subject copyrighted works, the operative question at trial was whether Bungie could show by a preponderance of the evidence that the subject "Cheat Software" "copied original expression from the copyrighted work or works."

The law regarding how "copying" is proved at trial is equally clear and direct.  The Ninth Circuit has repeatedly and consistently held that "copying" can be proven either by "direct evidence" of copying, or by demonstrating both "access" to the copyrighted work and "substantial similarity" between the copyrighted work and the work alleged to be an infringement. *See, Skidmore v. Zeppelin,* 952 F.3d 1051 (9th Cir. 2020).  In *Skidmore v. Zeppelin,* the Ninth Circuit clearly held that, "In the absence of direct evidence of copying, which is the case here, the plaintiff 'can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities

MANN LAW GROUP PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

probative of copying.'" *Skidmore v. Zeppelin, Id.* at1064, citing *Rentmeester v. Nike, Inc.,* 883 F.3d 1111, 1117, (9th Cir. 2018).  *See also, Lucky Break Wishbone Corp. v. Sears, Roebuck Co.,* 528 F. Supp. 2d 1106, 1122 (W.D. Wash. 2007) ("Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence of: (1) defendant's access to the copyrighted work prior to the creation of defendant's work, and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work");  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.,* 676 F.3d 841, 846 (9th Cir. 2012) ("'Because direct evidence of copying is not available in most cases,' a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar.")

As to the question of "substantial similarity," it is well-established that, "The Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another." *Benay v. Warner Bros. Entertainment Inc.,* 607 F.3d 620, 624 (9th Cir. 2010).  "To prevail in their infringement case, the [plaintiff] *must* 'prove both substantial similarity . . . under the `extrinsic test' and substantial similarity . . . under the `intrinsic test.'" *Id.* at 624, *quoting, Shaw v. Lindheim,* 908 F.2d 531, 919 F.2d 1353 (9th Cir. 1990) (emphasis supplied). In the clear words of the court in *Benay v. Warner Bros.,* such proof under *both* tests is mandatory, not optional. And a failure as to either test is fatal to a claim of substantial similarity.

Under the "extrinsic test," the law is clear and well established:

The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria. The extrinsic test requires ... breaking the works down into their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity. Because the requirement is one of substantial similarity to protected elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work.

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

*Gray v. Hudson,* 28 F.4th 87, 96 (9th Cir. 2022).  The court in *Gray v. Hudson* expressly recognized and noted that, "the extrinsic test is objective and is often resolved as a matter of law," and that, "the extrinsic test requires us as a court to ensure that whatever objective similarities the evidence establishes between two works are legally sufficient to serve as the basis of a copyright infringement claim regardless of the jury's views."  *Id.* at 97. "Initially, the extrinsic test requires that the plaintiff identify concrete elements based on objective criteria." *Three Boys Music Corporation v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000).

Under the "intrinsic test," the law is equally clear and well-established.  "The intrinsic test is subjective and asks 'whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar.'" *Three Boys Music Corporation v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000) *citing Pasillas v. McDonald's Corp.,* 927 F.2d 440, 442 (9th Cir. 1991).  Again, both the "extrinsic test" and the "intrinsic test" must be satisfied to find copyright infringement. *See, Benay v. Warner Bros., supra.*

## 2.     The Evidence At Trial

At trial, Bungie called three witnesses to provide expert testimony, namely Dr. Edward Kaiser, Mr. Steven Guris and Mr. Drew Voth.  In addition, Bungie called each of the individual Defendants, Messrs. Schaefer, Green, Conway and May, as adverse witnesses. Significantly, only one of these witnesses, Dr. Kaiser, purported to provide any evidence whatsoever of "copying."

Initially, neither Mr. Guris nor Mr. Voth even pretended to opine that any of the defendants engaged in copyright infringement.  In particular, Mr. Guris *admitted* numerous times he was never even asked to opine as to whether the "Cheat Software" at issue in the case infringed any Bungie copyright.  In particular, Mr. Guris testified at trial as follows:

> Q.     Now, the question I have for you is, it's a fact that you've never actually seen the cheat software itself, correct?

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

A.      Physically in my hands?  No, sir, that is correct.  I've never seen the cheat software.

Q.      And you've never actually operated the cheat software, have you?

A.      No, sir.

Q.      You never saw the source code for the cheat software, have you?

A.      No, sir.

Q.      You've never seen the object code for the cheat software, correct?

A.      That's correct.

Q.      So if I ask you to point to the substantial similarities between the source code for the cheat software and the *Destiny 2* game, you would be unable to do that?

A.      Having never seen the source code for either, no sir.

Q.      And same question:  You haven't seen the object code either, correct?

A.      No, sir.

Q.      So, again, you can't testify that there's substantial similarities between the object code of the cheat software and the Destiny 2 game, correct?

A.      I don't believe I've been asked to, sir.  Correct.

(Trial transcript p. 195, line 24 – p. 196, line 24, Mann Dec., Ex. D.)

When confronted with his own expert report, Mr. Guris agreed that the expert report expressed no opinion as to whether the subject "Cheat Software" copied any of Bungie's copyrighted materials.  Indeed, on cross-examination and before the Jury, Mr. Guris admitted,

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

as he had to, that he never even saw, used or reviewed the subject "Cheat Software, but instead reviewed only a "loader" that was obtained from a third party and not from any of the Defendants:

> Q.  So then, in fact, what you did review is the currently available loader...It says what you have done is a static and dynamic analysis of the currently available cheat loader, correct?
>
> A.  Yes, sir.
>
> Q.  And the currently available cheat loader was the one that was available and the one you downloaded in September of 2022?
>
> A.  Yes, sir.
>
> Q.  And just to belabor the point, you have not examined a loader that was available to the public between December 2019 and February 2021, correct?
>
> A.  Correct.

(Trial transcript p. 199, line 20 – p. 200, line 8.)

Again, based on Mr. Giuris' own testimony before the Jury, he did not, and could not, present any evidence whatsoever, whether "direct," "circumstantial" or otherwise, as to whether the subject "Cheat Software" copied any of Bungie's asserted copyrights.

Similarly, Mr. Voth, called solely as a damages expert, expressed no opinion whatsoever as to whether the subject "Cheat Software" copied any of Bungie's copyrighted materials.  Nor could he, given that he was qualified only as a financial expert and never claimed to have the technical expert skills needed to review and analyze computer source code or object code.  Again, based on Mr. Voth's expert qualifications and actual trial testimony, he did not, and could not, present any evidence whatsoever, whether "direct,"

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ                    Page 8

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

"circumstantial" or otherwise, as to whether the subject "Cheat Software" copied any of Bungie's asserted copyrights.

As to the individual Defendants' testimony at trial, *none* of them admitted to copying *any* part of Bungie's copyrighted materials and each vehemently denied doing so.  There is nothing in the testimony of Messrs. Schaefer, Green, Conway and May that constitutes evidence, whether "direct," "circumstantial" or otherwise, that the subject "Cheat Software" copied any of Bungie's asserted copyrights.

Given the indisputable facts above, the *only* evidence presented at trial that the "Cheat Software" copied any of Bungie's copyrighted material was the testimony of Dr. Kaiser.  Under the clear record of the evidence and testimony received at trial,  Dr. Kaiser presented no competent evidence upon which a reasonable jury could find copyright infringement.

### 3.    Even When Viewed In The Light Most Favorable To Bungie, Dr. Kaiser's Trial Testimony Fails To Provide Evidence Upon Which A Reasonable Jury Could Find "Copying"

The first half-hour of Dr. Kaiser's testimony consisted of a generalized overview of how Bungie seeks to "build strong communities" and "promote friendship" by providing a "first person shooter" game wherein players seek to kill each other as quickly and efficiently as possible.  Significantly, none of this testimony was relevant to copyright infringement, the sole claim actually made by Bungie at trial and the sole liability question actually presented to the jury.

On direct examination, the *only* testimony Dr. Kaiser provided purporting to support Bungie's copying claim was Dr. Kaiser's bald claim that Defendants "must" have copied Bungie's copyrighted materials because, in Dr. Kaiser's view, that is the "only" way to make a cheat.

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ                    Page 9

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

### a.  Dr. Kaiser did not, and could not, provide any "direct" evidence of copying

Significantly, Dr. Kaiser provided *nothing* in the way of direct evidence[4] that the subject "Cheat Software" copied any of Bungie's copyrighted materials.  Indeed, this Court's Jury Instruction No. 7 (DKT#293-10) itself states in clear plain English that, "Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness *personally* saw, heard or did." (Emphasis supplied.)  By his own admission, Dr. Kaiser could not and did not provide any "direct evidence" of copying.  Dr. Kaiser did not personally witness anyone copy the copyrighted materials.  Dr. Kaiser did not identify any "admission" by anyone that the subject "Cheat Software" copied any of Bungie's copyrighted materials.  Indeed, Dr. Kaiser admitted, as he had to, that he was never even aware of the subject "Cheat Software" until nearly four months *after* this action was filed.  *Everything* that Dr. Kaiser purportedly knows about the subject "Cheat Software" is what he heard from others, and *none* of it constitutes what Dr. Kaiser, "personally saw, heard or did."  Nowhere did Dr. Kaiser ever testify that he personally witnessed any "copying" on the part of Defendants.  Indeed, given by his own admission that he did not personally become aware of the "cheat software" until long after Phoenix Digital had, as requested, ceased distributing it, there is no way he *could* have witnessed any such thing.

Under this Court's very instruction as to what constitutes "direct evidence," and viewing Dr. Kaiser's actual trial testimony in the light most favorable to Bungie, it is absolutely clear that Dr. Kaiser could not, and did not, provide any "direct evidence" that the subject "Cheat Software" copied any of Bungie's copyrighted material.

### b.  Critical Evidence *Required* By The Clear, Precedential Holding Of The Ninth Circuit In *Antonick v. Elec. Arts, Inc.*, Was Not Introduced Into Evidence At Trial

The Ninth Circuit's clear and direct precedential holding in *Antonick v. Elec. Arts, Inc.* 841 F.3d 1062 (9th Cir. 2016) requires that the Jury's verdict be set aside under the

---

4   For purposes of this motion, "Direct Evidence" has the meaning ascribed to that term in this Court's Jury Instruction No. 7 (Dkt#293, p.10).

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 10

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

indisputable facts here.  Indeed, the very first paragraph of the decision in *Antonick* states in clear, perfectly understandable English, "In this case, the plaintiff claimed copyright infringement. *But the contents of the copyrighted work and the allegedly infringing works were never introduced into evidence.* The district court held that the claim failed as a matter of law. We agree, and affirm." *Id.* at 1064 (emphasis supplied).

Here, too, neither the source code nor the object code of Bungie's copyrighted works were introduced into evidence.  Nor were the source code and/or object code of Defendants' "allegedly infringing works" introduced into evidence either.  Again, what, exactly, was introduced into evidence is a matter of record, it is written down (see, DKT#300, Mann Dec., Ex. C) and is beyond legitimate dispute.  There can be no legitimate claim that these essential pieces of evidence required under the holding in *Antonick* were ever introduced into evidence.  A simple inspection of the list of documents introduced into evidence confirms this indisputable fact.

Furthermore, during discovery, Defendants *specifically asked* Bungie to produce copies of all source code Bungie contended was improperly copied by Defendants.   In response to Defendants' discovery requests (Mann Dec. Exhs. A & B), Bungie failed to produce any of the source code it contended had been copied, and, instead, produced *only* the limited sample source code it deposited with the United States Copyright Office, *none* of which source code Bungie even argued had been copied.

At trial, Bungie's sole witness addressing the issue of copyright infringement, Dr. Edward Kaiser, *admitted* under oath on several occasions that neither he nor anyone else at Bungie had ever seen the source code for the "Cheat Software" that allegedly infringed Bungie's copyrights:

> Q.     Dr. Kaiser, I'm going to turn specifically now to the AimJunkies' cheat.
>        Did you have a chance to review the AimJunkies' cheat code?
>
> A.     I have not.

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 11

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Q:      Have you had a chance to see the AimJunkies' cheat code interacting with the Bungie game engine?

A:      I have not.

Q:      Have you played with the Aimjunkies' cheat code?

A:      I have not.

(Trial Transcript P. 74, lines 14-22.)

During cross-examination, Dr. Kaiser further confirmed that neither he nor anyone else at Bungie had ever seen or examined the source code for the "Cheat Software" at issue in the case:

Q.      My question is, does a loader enable Bungie to get access to the Destiny 2 cheat code?

A.       It does not.

(Trial Transcript P. 105, lines 14-16.)

Q.      My question is, did you download the source of the – the software of the Destiny 2 cheat, whether it's our source code, whether it's object code, whether it's red, I don't know, whatever; did you download?

A.      We did not. We downloaded the loader.

Q.      So you have not actually looked at the Destiny 2 cheat itself; isn't that correct?

A.      I haven't looked at the source code nor the object code, that's correct.

(Trial Transcript P. 105, line 24-p. 106, line 7.)

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 12

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

Dr. Kaiser *admitted* under oath on several occasions that neither he nor anyone else at Bungie had ever seen the object code for the "Cheat Software" that allegedly infringed Bungie's copyrights:

Q.    Have you personally seen the source code for the Destiny 2 cheat distributed by the Defendant in this case, Phoenix Digital?

A.    I have not seen the source code.

Q.    Good. Now let's try it again with the object code.  Have you personally seen the object code for the Destiny 2cheat distributed by the defendant, Phoenix Digital?

A.    I have not personally seen the object code.

Q.    Good,  Now let's change it slightly.  Has anyone at Bungie personally seen the source code for the Destiny 2 cheat distributed by the defendant, Phoenix Digital?

A.    No, I don't think so.

                                        ***

Q.    Again, now, has anyone at Bungie personally seen the object code for the Destiny 2 cheat distributed by the defendant, Phoenix Digital?

A.     No, I don't believe so.

(Trial Transcript p. 107, line 16 –  p. 108, line 10.)

Dr. Kaiser further admitted under oath that he, personally, had never seen the subject "Cheat Software" operate.  In particular, Dr. Kaiser previously submitted a signed Declaration under oath with this Court (DKT#158) stating that, "Bungie has never had a copy of the Cheat

Software on a machine capable of analyzing it."   Under cross-examination, Dr. Kaiser, presented with his prior signed Declaration, confirmed his prior statement under oath and confirmed that Bungie has never actually analyzed the Cheat Software it accuses of infringement in this matter.  (Trial Transcript p. 158, lines 9-22.)

Indeed, it is undisputed that Defendants, in response to Bungie's discovery requests, freely stated that "Andreas Banek" was the source of the subject *Destiny 2* "Cheat Software" and freely provided to Bungie all contact and other information they had regarding Mr. Banek.  To the best of Defendants' knowledge, Bungie, despite its demonstrated ability to conduct, "scorched earth" discovery, made no effort to seek any discovery from Mr. Banek whatsoever, which might have provided Bungie with the source code that Defendants never had and, consequently, could not produce.

Under cross-examination, Dr. Kaiser further admitted that the copyright registrations introduced into evidence without objection, namely Trial Exhibits TX-001 through TX-004, did *not* contain either the source code or object code Bungie claims was copied. (Trial Transcript p. 163, lines 9-11.)   Instead, Dr. Kaiser testified that the registrations included only "excerpts" from the Destiny 2 game source code and that there were at least "25 million lines of code" that do not appear in the registrations and that were never introduced into evidence.  When asked on cross-examination to do so, Dr. Kaiser admitted he could not point to any similarities between the source code or object code of the Destiny 2 game and the "Cheat Software."  This is unsurprising given the fact that, by Dr. Kaiser's own admission, Bungie did not introduce into evidence the source code or object code it claims was copied and his admission that Bungie never even saw or analyzed the source code or object code of the "Cheat Software."

The simple, indisputable fact, confirmed by Dr. Kaiser's *own* trial testimony, is that neither Dr. Kaiser nor anyone else at Bungie has ever even had, much less analyzed, either source code or object code for the "Cheat Software" at issue here.  Under these indisputable facts, there is, and there can be, no plausible evidence to show that the "Cheat Software" has

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 14

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

any "substantial similarity" whatsoever to either the source code or the object code of Bungie's copyrighted works. Indeed, Dr. Kaiser admitted this indisputable fact during cross-examination:

> Q.    If I heard your testimony this morning correctly, Bungie admits it never had the source code for the Destiny 2 cheat software, correct?
>
> A.    That is correct.
>
> Q.    And if Bungie doesn't have the source code for the Destiny 2 cheat software, it cannot point to where the source code for the Destiny 2 cheat source code is substantially similar to we see here in Exhibit 2.
>
> A.    I think your statement is correct that we cannot compare source code against source code if we do not have one of the source codes.
>
> Q.    I believe you testified that Bungie has never had the object code for the Destiny 2 cheat software; is that correct?
>
> A.    In terms of the cheat software, divided into two halves, the loader and the payload, we've never had the object code scrutinized it with the payload, and we had the object code for the loader but did not have a chance to scrutinize it.

(Trial Transcript p. 139, line 19 – p. 140, line 12.)  This fact, alone, is fatal to Bungie's claim for copyright infringement under the clear holding of *Antonick* and its predecessors.

Furthermore, Dr. Kaiser confirmed under cross-examination that the "25 million lines" of code making up the work alleged to be infringed was not publicly available and indeed, was considered "highly confidential" by Bungie.   (Trial Transcript p. 164, lines 10-13.) Given this clear admission, no reasonable inference can be drawn that Phoenix Digital, or anyone else for that matter, ever had the "access" needed, as a matter of law, to make a viable copyright claim.   This fact, too, is fatal to Bungie's claim for copyright infringement.

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ
Page 15
Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

### c.   Unsubstantiated "Expert" Testimony Cannot Make Up For Bungie's Failure To Introduce Basic, Critical And Legally Required Evidence

The holdings in *Antonick* and other Ninth Circuit cases make clear that a failure to introduce basic, critical evidence cannot be remedied by guesswork from a supposed expert. As directly held in *Antonick*, "our law is clear that expert testimony cannot satisfy a plaintiff's burden of proof under the intrinsic test, which 'depend[s] on the response of the ordinary reasonable person.'" *Antonick v. Elec. Arts, Inc.*, 841 F.3d at 1067.

At trial, Bungie offered no evidence whatsoever as what might or could be "the response of the ordinary reasonable person," and instead relied solely on the bald, unsupported and conclusory opinion of Dr. Kaiser who, despite admitting that he had never even seen the source code and object code of the accused "Cheat Software," much less compare them against the code of the *Destiny 2* game, nevertheless testified with no support whatsoever that the "Cheat Software" must have copied the Bungie's code because he could think of no other way to do it.  Not only did Dr. Kaiser testify and admit at trial that he had never actually written or made a cheat himself (Trial Transcript p. 514, lines 19-21), Defendant Jordan Green, without challenge or cross-examination, testified that he, himself, had on many occasions created a "cheat" without copying any of the code of the underlying game (Trial Transcript p. 429, lines 14-21).

### d.   Bungie Cannot Base Its Claim For Copyright Infringement On A Supposed "Loader" Distributed By Phoenix Digital

Throughout the trial, Bungie made numerous references to a "loader" program that Phoenix Digital had in place long before the *Destiny 2* "Cheat Software" at issue in this case was ever first distributed.  Despite these numerous, and indeed irrelevant, references to the unrelated "loader," Dr. Kaiser admitted, as he had to, that the "loader" was *not* the actual product Bungie was accusing of infringement in this case.  In this regard, Dr. Kaiser testified at trial as follows:

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ                    Page 16

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Q.     It is not Bungie's contention that the loader used by Phoenix Digital Group infringes Bungie copyrights; is that correct?

A.     The loader does not, as far as I know, contain object code from the game itself.  Bungie has never been in the business of building cheat loaders, cheat injectors.

Q.     And then the loader used by Phoenix Digital Group – again, just to make sure we dot all the i's -- you're not contending that the source code of the Phoenix Digital loader infringes any copyright of Bungie, correct?

A.     I don't believe the source code for the loader infringes.

(Trial Transcript p. 141, lines 3-21.)

Based on this clear testimony from Dr. Kaiser himself, there is no evidence of record on which a reasonable jury can find that the "loader" infringes any Bungie Copyright.

> **e.     There Is No Evidence To Support Bungie's Last-Minute Theory That *James May* Created The "Cheat Software" At Issue In The Case**

At trial, Bungie shifted among various infringement theories and, at the end of its case, argued for the very first time that the "Cheat Software" it accuses of infringement was not that actually distributed by Phoenix Digital but, rather, a "cheat" supposedly developed by Defendant James May, who is not, and never was, an owner, director, officer or other principal of Phoenix Digital.  Apparently aware that its claim that the "Cheat Software" actually distributed by Phoenix Digital did not, and could not infringe any *Destiny 2* copyright, Bungie, at the last minute, for the very first time in this action claimed that Defendant James May had actually created the "Cheat Software" at issue in this case.

Importantly, there is no evidence of record that James May did anything more than, from time to time, access the *Destiny 2* game in an unsuccessful effort to develop a cheat for his own amusement.  Importantly, Mr. May testified that he was never asked to develop a cheat for *Destiny 2,* (Trial Transcript p. 254, lines 19-21, Mann Dec. Ex. E),  which was

confirmed by the testimony of Phoenix Digital's President, David Schaefer (Trial Transcript p. 334, lines 10 – 11, 16-18). There is absolutely no evidence or testimony to the contrary.

Nor is there any evidence whatsoever that Mr. May succeeded in developing a working "cheat" for *Destiny 2.* On the contrary, Mr. May testified that, because he was flagged by Bungie as someone not welcome on the *Destiny 2* site. Mr. May testified that his numerous attempts to access the site were quickly detected and he was quickly ejected from the site before he had an opportunity to make any progress toward developing a "cheat." This, in fact, is confirmed by Bungie's own document production control number BUNGIE_WDWA 0000409 (Trial Exhibit TX-56) which Bungie *itself* created and produced to show the numerous times on which Mr. May attempted to access the site, was detected, and ejected from the site.

Indeed, Dr. Kaiser's own trial testimony was that many (but not all) of the personal files maintained by Mr. May and accessed by Bungie on Mr. May's computer comprise "reverse engineering tools" that Mr. May used to develop cheats. Clearly, Bungie had the ability to, and actually did, access Mr. May's personal files on his own computer and to identify at least some of them as reverse engineering "tools" used to develop "cheats" for computer games. Indeed, as part of Bungie's defense against Mr. May's counterclaim, Bungie argued that it was legally permitted to access any and all files maintained by Mr. May that "attach" to the *Destiny 2* game.

Conspicuously absent from any of the evidence that Bungie has produced and relied on in this case is a copy of the *Destiny 2* "cheat software" Bungie now alleges was actually developed by Mr. May and distributed by Phoenix Digital. In particular, *had* Mr. May actually developed a cheat for *Destiny 2,* such would clearly have been noticed and accessed by Bungie in its admitted over one-hundred occasions on which it accessed Mr. May's computer and inspected his files. Had there, in fact, *been* a "cheat" on Mr. May's computer, it would easily have been noticed by Bungie and likely designated, "Exhibit A" in this case. The fact that no such "cheat" was ever detected on Mr. May's computer gives lie to Bungie's

completely speculative and evidence-free claim that it was *Mr. May* who actually created the "Cheat Software" actually distributed by Phoenix Digital and that, up until the last day of the trial, was what Bungie claimed was the work infringing its copyrights.

Based on the foregoing, there was absolutely no evidence introduced at trial to support Bungie's desperate and last-minute claim that Mr. May actually created the "Cheat Software" at issue in this case, and this preposterous last-minute claim is belied by Bungie's own failure to find any such "cheat" on Mr. May's computer, despite over one-hundred instances during which Bungie admits it accessed Mr. May's computer.

Nor can Bungie credibly claim that "spoliation" on the part of Mr. May somehow precluded it from finding "cheat software" on Mr. May's computer. By Bungie's own admission, it was accessing Mr. May's computer at least as early as October 2, 2019 *before* the "Cheat Software" actually distributed by Phoenix Digital had even been introduced. Bungie's inspections of Mr. May's computer took place on regular occasions between that date and continued at least up until May 25, 2021, nearly one month *before* Bungie filed suit against Mr. May and Phoenix Digital. Bungie had ample time to obtain any purported "cheat" software from Mr. May's computer long before either Mr. May or Phoenix Digital had any reason to know they were in Bungie's sights.

And as to any claim that, by repairing his computer in May/June of 2022 Mr. May somehow prevented Bungie from noticing and accessing the supposed "cheat" Mr. May had supposedly created, this is nonsense. The undisputed facts established at trial were that the subject "Cheat Software" was first distributed by Phoenix Digital in December, 2019, and was withdrawn from distribution by January, 2021, roughly one year later. All of these dates significantly *predate* both Mr. May's first knowledge of Bungie's claim and his repair of his computer in May/June 2022, nearly one-and-one-half-years *after* the subject "Cheat Software" was voluntarily withdrawn from the market.

The simple fact remains that Bungie, on more than one-hundred occasions, accessed Mr. May's personal computer files and on no occasion ever found the imaginary "cheat

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 19

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

software" that Bungie, on the last day of trial, for the first time claimed had been developed by Mr. May and distributed by Bungie. There is absolutely no evidence of record on which a reasonable jury could conclude that Mr. May actually created the "Cheat Software" at issue here and, two years after the fact, somehow destroyed it to keep Bungie from finding it two years earlier. To accept this aspect of Bungie's case in face of the actual evidence adduced at trial is to believe in time travel and to put fantasy over fact.

**B.     AS A MATTER OF LAW, THE "CHEAT SOFTWARE" AT ISSUE IS NOT, AND CANNOT BE, A "DERIVATIVE WORK"**

To the extent Bungie claims that the "Cheat Software" distributed by Phoenix Digital comprises a "derivative work" based on Bungie's copyrighted work, any such claim is barred as a matter of law under the clear holding of the Ninth Circuit in *Lewis Galoob Toys, Inc. v. Nintendo of America*, 964 F.2d 965 (9th Cir. 1992). In a case remarkably similar to this one, the Ninth Circuit in *Lewis Galoob* held that a "Game Genie" device that interacted with Nintendo's "home video game system" and enabled players to "cheat" in the game did *not* create derivative works in violation of Nintendo's copyrights and did not infringe Nintendo's copyrights. Similar to the "cheat software" at issue here, the "Game Genie" device temporarily altered the displays generated by the game and enabled players to do such things as, "increase the number of lives of the player's character, increase the speed at which the character moves, and allow the character to float above obstacles." *Id.* at 967. Among other things, the Ninth Circuit in *Lewis Galoob* noted that, "The Game Genie does not alter the data that is stored in the game cartridge," that, "Its effects are temporary, and that, "A derivative work must incorporate a protected work in some concrete or permanent 'form.'" *Id.* Finally, the Ninth Circuit in *Lewis Galoob* made clear that, "A derivative work must incorporate a protected work in some concrete or permanent form." *Id.* at 969.

At trial, it was established and undisputed that the "Cheat Software" at issue made no permanent changes to the Destiny 2 game and that its effects were temporary. During cross-examination Dr. Kaiser admitted, as he had to, that the rectangles and boxes generated by the

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ                          Page 20

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

"Cheat Software" to show the locations of enemy players did not actually or permanently alter the copyrighted images of the Destiny 2 game. (Trial Transcript p. 148, lines -13.) There was absolutely no evidence introduced at trial to show that the "Cheat Software" incorporated *any* part of Bungie's copyrighted works "in some concrete or permanent form" as required under the holding in *Lewis Galoob. Id.* at 969.

Given the facts established at trial, including but not limited to Dr. Kaiser's admission that the "Cheat Software" at issue makes no permanent changes to the images Bungie asserts are copyrighted, under the clear holding in *Lewis Galoob,* the subject "Cheat Software" does not create "derivative works" and, as a matter of law, cannot be held to infringe for that reason.

## C.     MR. MAY IS ENTITLED TO A NEW TRIAL ON HIS COUNTERCLAIM

At Bungie's insistence and over Defendants' clear objections, this Court delivered a "spoliation" instruction that was unsupported by either fact or law and that clearly denied Mr. May a fair trial on his counterclaim. For this reason, Mr. May is entitled to a new trial under Rule 59, Fed.R.Civ.P.

The gist of Bungie's "spoliation" claim as to Mr. May is that, by transferring his files to a new computer and "wiping" the corrupted hard-drives of his old computer, Mr. May intentionally destroyed evidence he "had a duty to preserve," that he "intended to deprive Bungie" of this evidence, and that such evidence was "unfavorable to Defendants." At trial, no evidence whatsoever was introduced to support any of these allegations and the indisputable evidence that was introduced clearly showed (1) that Mr. May had absolutely no obligation *not* to repair his own computer equipment that had been infiltrated and corrupted by parties then unknown and (2) that Mr. May repaired his computer equipment months *before* Bungie first produced documents evidencing that it was Bungie who had infiltrated and compromised his computers.

At trial, it was undisputed that, unlike the other Defendants in this case, Mr. May had never received the "cease and desist" letter Bungie sent to others on November 4, 2020 and

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

under no stretch of the imagination was Mr. May somehow obligated to "preserve evidence" as to a dispute he did not know, and had no way of knowing, even existed.

By accepting Bungie's factually baseless allegations, *even after the testimony and evidence at trial clearly showed that those allegations were baseless,* and thereafter instructing the jury that Mr. May had knowingly and intentionally destroyed evidence he had an obligation to protect and he did so because such "evidence" was "unfavorable" to him, this Court clearly and unquestionably denied Mr. May his right to a fair trial on his counterclaim.

### 1. Mr. May did not destroy, delete or otherwise "spoliate" any evidence in violation of law

The facts regarding Mr. May's supposed "spoliation" of evidence were thoroughly explored and brought out at trial. Indeed, certain critical facts were established and are not subject to dispute. Among these are the following:

1. No "cease and desist" letter was sent, much less received, by Mr. May. Accordingly, Mr. May was never instructed to "preserve evidence," etc. as unilaterally demanded by Bungie in its counsel's letters of November 4, 2020. (Trial Transcript, p. 466, lines 16-23, Mann Dec. Ex. F)

2. Mr. May noticed his computer equipment was showing signs of having been corrupted in early Spring of 2022 and bought new computer equipment to replace it in May, 2022. (Trial Transcript, p. 467, lines 6-17.)

3. Mr. May transferred his files from his old computer to a new back-up drive in May, 2022 before "wiping" the corrupted hard drives of his old computer. These files remained unchanged in the process and were provided to Bungie's counsel on May 8, 2023 when Bungie requested them in discovery. (Trial Transcript, p. 467, line 18 – p. 468, line 2, p. 475, line 23 – p. 476, line 2.)

4. Mr. May "wiped" the hard drives of his old computer in May and June of 2022. He did so in order to ensure that any malware or other undesired programs were no longer resident on his computer. (Trial Transcript, p. 493, lines 4-8.)

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 22

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900

5.      Bungie did not produce the document identified under its document production control number BUNGIE_WDWA 0000409 (TX-56)  until July 25, 2022.  (Mann Declaration, ¶ 8.)

6.      Mr. May did not realize it was Bungie who had infiltrated and corrupted his computer until he reviewed the document Bungie produced on July 25, 2022 under  its document production control number BUNGIE_WDWA 0000409 (TX-56).  Mr. May did not realize he had a counterclaim against Bungie until after he reviewed that document first produced on July 25, 2022.  (Trial Transcript, p. 492, lines 5-13.)

7.      July 25, 2022 is *after* May and June, 2022.

8.      When Mr. May "wiped" his hard drives in May/June 2022, he did not, *and could not,* know of his potential counterclaim against Bungie.

At trial, no evidence whatsoever was introduced to counter any of these clear facts. Accordingly, there was, and there remains, no evidence whatsoever that Mr. May had a "duty" not to repair his own computers and "wipe" his own hard drives that he suspected (correctly, it turns out) had been compromised, and there is no possible basis on which Mr. May could or should have known in May/June 2022, that Bungie would nearly two months later first produce documents showing *it* had bypassed Mr. May's security measures and improperly accessed his computer.

In short, after full testimony and evidentiary review at trial, there was no factual or legal basis for the "spoliation" instruction this Court gave to the Jury regarding Mr. May, and the instruction that was improperly given clearly deprived Mr. May of his right to a fair trial on his counterclaim.

**2.      Mr. May was under no obligation not to repair his computer equipment and wipe his hard drives**

As a matter of law, Mr. May was under no legal obligation to refrain from repairing his own compromised and corrupted computer equipment.

Mann Law Group PLLC
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

Bungie glibly claims, without establishing, that Mr. May was somehow legally obligated *not* to repair his own compromised computer equipment and that by reasonably and properly discarding the corrupted operating system resident on his hard drive, he violated some law and improperly harmed Bungie.  This is nonsense and the Court accepts it at its own risk.

Well-established law states that the obligation to "preserve" evidence extends only to evidence that is "reasonably related" to some claim that is or is likely to be the subject of litigation.  *See, Akiona v. U.S.,* 938 F.2d 158, 161 (9th Cir. 1991) ("A party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant.")  Furthermore, to justify a spoliation instruction, it is required that Bungie make some showing that the information purportedly "spoliated" is somehow relevant to the claim at issue.  *Id.*  Here, Bungie has made no showing whatsoever that the operating system Mr. May deleted in order to preserve the integrity of his computer system is somehow relevant to Mr. May's counterclaim.  Mr. May's counterclaim is simply that Bungie, without authority, accessed certain files on Mr. May's computer Bungie was not authorized to access.  Importantly, Bungie at trial did not deny this but, rather, claimed it had the authority to access those files pursuant to various terms of service Mr. May agreed to.  Furthermore, the files Mr. May contends were improperly accessed are not in dispute but are listed on Bungie's own document No.  BUNGIE_WDWA 0000409 (TX-56) Bungie *itself* produced and created as verified by the trial testimony of Dr. Kaiser himself.  It is difficult to see what relevance the Microsoft Operating System Mr. May "wiped" from his computer could possibly have to Mr. May's counterclaim and Bungie has not even attempted to show any such relevance.

### 3. There Is No Evidence Whatsoever That Any "Evidence" Purportedly Destroyed By Mr. May Would Have Been Helpful To Bungie

Bungie requested, and this Court provided, a "spoliation" instruction specifically instructing and directing the jury, in part, that, "You may presume that the records and

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 24

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone:  206.436.0900

information deleted, destroyed, or otherwise rendered inaccessible by Defendants' intentional actions after their duty to preserve evidence arose were unfavorable to Defendants." Absolutely no evidence was adduced at trial to support this instruction against and over Mr. May's objection.

At trial, the only evidence introduced as to Mr. May's supposed "spoliation" was that, in May, 2022, before he was even aware that he had a counterclaim, he "wiped" the operating system from the hard-drive on his computer system. Indeed, and despite several attempts by Bungie's counsel to get him to testify otherwise, Mr. May consistently and repeatedly testified that he deleted only the Windows Operating system (a non-Bungie product) from his computer and that he did so only after preserving, without modification, the various "work files" he had on his computer. He testified under oath and subject to cross-examination that he produced all files actually requested by Bungie in this action and there is absolutely no testimony or evidence that any information actually requested by Bungie during discovery was somehow *not* produced by Mr. May.

At trial, absolutely no evidence was elicited that Mr. May "spoliated" any evidence he was under an obligation to preserve. There is no question that he deleted the Window Operating system he (correctly) surmised was corrupted *before* Bungie produced its document BUNGIE_WDWA 0000409 (TX-56) which first indicated he might have a counterclaim against Bungie. Nor is their any evidence whatsoever that preserving the corrupted Microsoft Operating System would have been helpful to Bungie. Indeed, Mr. May testified that, if anything, having the operating system corrupted through Bungie's efforts would, if anything, strengthen Mr. May's counterclaim. And there is no evidence whatsoever that Mr. May, in simply trying to repair his malfunctioning computer, had any intent to deprive Bungie of material or relevant information. The trial record establishes beyond doubt that Mr. May did *not* intentionally or improperly destroy any evidence.

In view of the forgoing, it was error for this Court to instruct the Jury that Mr. May, "wiped four hard drives," that "he had a duty to preserve" these hard-drives, that he "intended

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ

Page 25

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA 98110
Phone: 206.436.0900

to deprive Bungie of the evidence that he destroyed," and that "the records and information deleted, destroyed, or otherwise rendered inaccessible by Defendants' intentional actions after their duty to preserve evidence arose were unfavorable to Defendants."

This instruction as to Mr. May is simply not supported by the facts and testimony elicited at trial or by the applicable law.  Nor can it be argued with a straight face that the instruction was "harmless" or otherwise *not* prejudicial as to Mr. May.  It amounts to no less than the trial judge *himself* instructing the jury not to trust Mr. May and to view him as someone who intentionally and willfully destroyed evidence that was unfavorable to him. This gross error, instigated by Bungie's own insistence that the instruction be given even after the actual trial testimony and evidence showed there was no basis for it in law or fact, deprived Mr. May of the fair trial he was entitled to receive and compels an order granting him a new trial on his counterclaim.

## CONCLUSION

For all the forgoing reasons, Defendants' Motions should be granted in their entirety.

Dated July 10, 2024.

/s/ Philip P. Mann
Philip P. Mann, WSBA No: 28860
**Mann Law Group PLLC**
403 Madison Ave. N. Ste. 240
Bainbridge Island, Washington  98110
Phone (206) 436-0900
phil@mannlawgroup.com
Attorneys for Defendants

I certify that this memorandum contains 8390 words in compliance with the Local Civil Rules.

Defendants' Renewed Motion For JMOL
Cause No. 21-CV-0811-TSZ                    Page 26

Mann Law Group pllc
403 Madison Ave. N. Ste. 240
Bainbridge Island, WA  98110
Phone: 206.436.0900