# EXHIBIT F

## Declaration of Philip P. Mann

## Case No. 21-CV-0817-TSZ

```
                    UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

BUNGIE, INC., a Delaware corporation,  )
                                       )
                         Plaintiff,    ) CASE NO. C21-00881-TSZ
v.                                     )
                                       ) Seattle, Washington
PHOENIX DIGITAL GROUP LLC, an          )
Arizona limited liability company;     ) May 23, 2024
JEFFREY CONWAY, an individual;         ) 9:00 a.m.
DAVID SCHAEFER, an individual;         )
JORDAN GREEN, an individual; and       ) JURY TRIAL, DAY 4 of 5
JAMES MAY, an individual,              )
                                       )
                         Defendants.   )
                                       )
_____

               VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE THOMAS S. ZILLY
               UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:


  For the Plaintiff:        WILLIAM C. RAVA
                            JACOB P. DINI
                            CHRISTIAN W. MARCELO
                            Perkins Coie
                            1201 3rd Avenue, Suite 4900
                            Seattle, WA 98101-3099


  For the Defendants:       PHILIP P. MANN
                            Mann Law Group PLLC
                            403 Madison Avenue North, Suite 240
                            Bainbridge Island, WA 98110



  Reported by:              NANCY L. BAUER, CCR, RPR
                            Federal Official Court Reporter
                            700 Stewart Street, Suite 17205
                            Seattle, WA 98101
                            nancy_bauer@wawd.uscourts.gov
```

1       MR. MANN:  Thank you, Your Honor.

2                   DIRECT EXAMINATION

3  BY MR. MANN:

4  Q.   Good morning, Mr. May.

5  A.   Good morning.

6  Q.   Mr. May, I just want to make sure that we're all clear on

7  one thing.

8       Did you have anything to do with the development of the

9  cheat software that is at issue here?

10 A.   I did not.

11 Q.   Do you recall seeing that cease and desist letter that was

12 dated November 4, 2020, that we've seen here, many times?  It

13 was directed to David Schaefer --

14 A.   Yes, I recall seeing that.

15 Q.   Good.

16      Was that letter ever sent to you?

17 A.   It was not.

18 Q.   Bungie never sent you a cease and desist letter; is that

19 correct?

20 A.   That is correct.

21 Q.   Did you ever receive any directive from Bungie to preserve

22 evidence?

23 A.   I did not.

24 Q.   Now, we had some testimony here, I believe, during the

25 examination yesterday.  You were accused of destroying evidence

1    by buying a new computer; do you remember that?

2    A.   Yes --

3              MR. MARCELO:  Objection, Your Honor.  Counsel is

4    testifying.

5              THE COURT:  Overruled.  You may answer.

6    Q.   (By Mr. Mann)  Okay.  Can you tell the jury why you bought

7    a new computer?

8    A.   Okay.  So the lawsuit already started at this point.

9    Before we got discovery, I had already had a computer prior to

10   the new computer.  This computer was starting to get random blue

11   screens and starting to run slow.

12       I purchased another computer before getting discovery, from

13   Bungie, before I knew that any of this action would be taken for

14   the countersuit.

15       So I bought a new computer, thinking that my computer was

16   corrupted, without having any facts at that point.  It was an

17   assumption at that point.

18       Once I got the new computer, I wiped the old computer --

19   the operating system, and then I copied all my -- or, sorry.  I

20   copied those files that I needed for the new computer, then I

21   wiped the operating system for the old computer and reformatted

22   it and put a new operating system on there for, like, a clean

23   slate.

24   Q.   Mr. May, you preserved your original files, correct?

25   A.   Correct, I did.

1    Q.   Would there be any reason to destroy those files?

2    A.   No.

3    Q.   Okay.  Now, this was -- well, let me ask you this:  Did you

4    ever -- when you changed your computer -- when you bought a new

5    computer, did you have any idea that you could file a

6    counterclaim?

7    A.   No, I did not.

8    Q.   What changed that?

9    A.   Later on -- and I don't remember the exact time in June

10   when we got discovery back -- we received a document that

11   verified that they had been doing this.

12         MR. MANN:  Ms. Nassar, if you could pull up Exhibit --

13   this is a plaintiff's exhibit, actually -- 56.  And, again, Your

14   Honor, this is admitted into evidence, and we'll show it to the

15   jury.

16   Q.   (By Mr. Mann)  Is this the document in question?

17   A.   Yes, it is.

18   Q.   And this is a document that I provided to you after we

19   received it from Bungie in discovery?

20   A.   Yes, correct.

21   Q.   Again, for the record, this is a document that Bungie has

22   produced?

23   A.   Yes.

24   Q.   Okay.

25         Now, did you have an opportunity to scan the contents of

1   this document?

2   A.   Yes, I have.

3   Q.   What, if anything, did you observe or conclude after

4   looking at this?

5   A.   I observed that -- Dr. Kaiser testified that anything

6   attached to the process would be in this list.   There are system

7   files on here, drivers, that are never attached to the process,

8   that are on here.

9   Q.   Okay.   Now, how did you feel when you saw this?   What was

10  your reaction?

11  A.   I felt like my privacy had been invaded.

12  Q.   And why was that?

13  A.   Because they had gained access to files I did not give

14  permission to.

15  Q.   Okay.   Now, let's take a look -- and just for the sake of

16  clarity, some of the files we're looking at here do attach to

17  the *Destiny 2* game.   You're not denying that, are you?

18  A.   Correct.

19  Q.   In fact, probably the bulk of these things do attach to the

20  *Destiny 2* game; is that correct?

21  A.   Yes, correct.

22  Q.   And, again, you admit -- you heard the testimony -- you

23  admit that, on several occasions, you did try to develop a cheat

24  for *Destiny 2*.

25  A.   Correct.

1    this file path?

2    A.    It is not.

3    Q.    Let's do one more, and I think we've beaten

4    this dead horse.

5    A.    There's several here.  You can see where every time it says

6    AimJunkies binary pound right here, you can just scroll over,

7    and it shows the system -- the system file being loaded.

8    Q.    Okay.  Now, do you see where it says "backslash, question

9    mark, question mark, C colon"?  Does "C" tell you anything?

10   A.    That would be any C drive on my hard drive.

11   Q.    Okay.  Were there any files that were accessed on a drive

12   other than your C drive?

13   A.    There probably were, but -- there's several on this list

14   right here, but I don't know what else they could have accessed.

15   Q.    Does it appear they've accessed things other than your C

16   drive?

17   A.    Yes.  Sorry.  They've also they accessed my G drive.  If

18   you go down to line 89, column 3.

19   Q.    Okay.  What is -- again, just to clarify for us, what is a

20   G drive?

21   A.    That is my external hard drive with all of my work files on

22   it.  It also has tax documents and other personal information.

23   Q.    Now, does that drive still exist?

24   A.    Yes, it does.

25   Q.    When you were asked to produce documents, did you produce

1   them from that drive?

2   A.   I did.

3   Q.   Now, I want to talk a little bit about the measures you

4   take to protect your computer.

5        What sort of security measures do you use on your computer?

6   A.   I use the Windows Firewall, and I have password-protected

7   folders.

8   Q.   And these are passwords you create?

9   A.   Yes.

10  Q.   Okay.

11       Now, to access the information we see here on this exhibit,

12  would it be necessary to get past your firewall?

13  A.   Yes, it would.

14  Q.   Would it be necessary to get past your password

15  protections?

16  A.   Yes, it would.

17  Q.   How many passwords would it take to get to what we see here

18  on this document?

19  A.   Two passwords.

20  Q.   Can you explain to the jury how you have that set up?

21  A.   So, obviously, there's a Windows login password, and then I

22  have specific passwords set on my folders for all of my private

23  files.

24  Q.   Okay.  Now, can anyone get into your computer files without

25  your permission?

1  prevent or address potential or actual injury or interference

2  with Bungie's rights, property, operations, users, or others who

3  may be harmed or may suffer loss or damage.

4  A.    Yes.

5  Q.    Those were all identified to you and what you agreed to?

6  A.    In the privacy policy, yes.

7  Q.    Mr. May, we heard some testimony about the wiping of your

8  computer.

9  A.    Correct.

10 Q.    You agree that you wiped your computer and the hard drives,

11 right?

12 A.    Yes.

13 Q.    You wiped files from your C, D, F, G, and H drives in May

14 of 2022.

15        MR. MANN:  Your Honor, I believe that misstates

16 testimony.

17        THE COURT:  Well, you can ask the question.

18        The question is a statement rather than a question.  Why

19 don't you ask it again, counsel, in a question format.

20 Q.    (By Mr. Marcelo)  Mr. May, is it correct that you wiped the

21 files from your C, D, F, G, and H drives in May of 2022?

22 A.    The external drive was never wiped.

23 Q.    And which one is the external drive?

24 A.    It was G at that -- I don't know if it was G at that time.

25 I wiped the drive.  When you plug it in and unplug it, it

 1   changes drives, depending on how many drives you have plugged in

 2   at the time.

 3   Q.   But you agree that you wiped the other drives?

 4   A.   Yes, because they had nothing related to any of the files

 5   related in this case anyway.

 6   Q.   You say just not the G drive?

 7   A.   Yeah.  That's my external drive, yes.

 8   Q.   Mr. May, I'm going to direct you to your testimony, March

 9   23, 2023.

10   A.   Okay.

11   Q.   This is page 94, lines 9 through 19.

12        "QUESTION:  Okay.  Do you still have access to the C, D, F,

13   G, and H drives from your old computer prior to May 2022?

14        "It's all been cleaned since then, since I moved over to

15   the new PC.

16        "So is that a "no," you don't have access to those files

17   anymore?

18        "No.  Because I cleaned everything and wiped everything

19   when all this was going on.  The only thing I have are all the

20   files on my external drive that still were developed and

21   everything."

22   A.   That's correct.  Everything from my external drive was kept

23   that related to this case.

24   Q.   But all the other files -- you had made some references

25   to -- you thought Bungie, maybe, accessed some other files --

1    those were all wiped?

2    A.   All the files I made reference to in this were the files

3    right here.  At that time, it was the G drive, but that is my

4    external drive, yes.

5    Q.   Mr. May, my question was, you had made reference to that

6    you thought Bungie may have accessed other files on your

7    computer, but those were all wiped, other than the files that we

8    saw on Exhibit 56.

9    A.   Yes.  Please note that all of this was done before I got

10   any testimony -- or, I mean, any documents from Bungie.  I was

11   not planning on filing a counterclaim until I got those

12   documents.  I never knew I would file a counterclaim, up until

13   that point.  So those files were already gone before this.

14   Q.   Mr. May, does your computer processing system or operating

15   system track activities on your computer, do you know?

16   A.   It probably does.

17   Q.   When you wiped your computer, did you save all that

18   information?

19   A.   I wouldn't know what to do -- or how to do that, no.

20   Q.   When you got your new computer, you just threw away your

21   old computer?

22   A.   Yes.  I wiped the old computer and installed a new

23   operating system, and, hopefully, if I needed it again, I could

24   use it.

25   Q.   Did Bungie ever have an opportunity to review your old

1    computer?

2    A.    No.

3    Q.    Did Bungie ever have an opportunity to review the

4    processing system or operating system of that computer?

5    A.    They never asked.

6    Q.    But you had wiped it, right?

7    A.    Yes.   But this was all done before I filed my countersuit.

8    I didn't know I was going to file a countersuit at that point.

9              MR. MARCELO:  Nothing further, Your Honor.

10             THE COURT:  All right.  Anything further?

11             MR. MANN:  Short redirect, Your Honor.

12             THE COURT:  All right.

13                        REDIRECT EXAMINATION

14   BY MR. MANN:

15   Q.    Mr. May, I just want to clarify a few points here.

16        Mr. Marcelo said you had no copyrights in your ReClass64;

17   do you recall that?

18   A.    Yeah, I do recall that.

19   Q.    Okay.  Now, do you have a copyright registration in that?

20   A.    I do not.

21   Q.    Do you believe that you are the author of that work?

22   A.    I do.

23   Q.    Okay.  Do you know what -- that sentence we said, "by

24   operation of 17 U.S.C.," do you know what that means?

25   A.    I do not.

1  Bungie service."  I think that was the language of the privacy

2  policy.

3  A.   Yes.

4  Q.   Does the ReClass64.sys file, does that work within the

5  Bungie service?

6  A.   It does not.

7  Q.   Is that external to the Bungie service?

8  A.   It is.

9  Q.   Would you interpret that as being something outside of what

10  Bungie said they could look at?

11  A.   Yes.

12  Q.   Okay.  Now, we got into you were wiping files.  Again, can

13  you clarify for the jury, one more time, which files you cleaned

14  on your computer?

15  A.   So all the files that I clean on my computer are the

16  operating systems and, basically, any game that was installed on

17  there.

18       So before all this happen, before I knew I was going to

19  file a countersuit, I wiped the computer and copied the files

20  over from my hard drive, the external hard drive, and kept those

21  on that drive to the new computer, so that way I could have any

22  copies of all my work files and everything without having to

23  worry about it.

24       And then I'd wipe the old computer, so that way I had a

25  clean slate, and it wouldn't be corrupted anymore.

1       But this was all before I knew I was going to file a

2   counterclaim.

3       I had no idea that the documentation that I would get from

4   discovery would show that they'd been on my computer.  So then

5   that's when I filed the counterclaim, but those files were gone

6   before the counterclaim on that previous computer, but the

7   relevant files were still on the new computer because I still

8   had my external drive.

9   Q.    Okay.  Let's talk a little bit about this claim that you

10  were destroying evidence that would be helpful to Bungie and

11  harmful to you.  It's the other way around, isn't it?

12  A.    Yes.

13          MR. MARCELO:  Objection, Your Honor; misstates

14  testimony from counsel.

15          MR. MANN:  I'll rephrase, Your Honor.

16          THE COURT:  The jury is to disregard the last question

17  and answer.

18      Ask another question.

19          MR. MANN:  Certainly.

20  Q.    (By Mr. Mann)  Mr. Marcelo asked you, if you had those

21  files, it would show who accessed your computer when, correct?

22  A.    Could you repeat that question?

23  Q.    Sure.

24      Mr. Marcelo, I don't mean to put words in his mouth, I

25  understood the question to be that, if you had retained those

1   original drives, you would have data showing when files were

2   accessed and by whom, or something to that effect.  Do you

3   recall that question?

4   A.   I do.

5   Q.   Okay.  Now, if you had that information, wouldn't that show

6   when Bungie was accessing your computers?

7   A.   I would assume so, yes.

8   Q.   And wouldn't that be helpful to your case?

9   A.   It would be.

10  Q.   Would it make sense for you to destroy information and

11  evidence that would be helpful to your case?

12  A.   No.

13  Q.   And, again, this all happened before you saw that green

14  sheet exhibit that showed -- that made you think that you had a

15  counterclaim, correct?

16  A.   Yes, correct.

17          MR. MANN:  No further questions, Your Honor.

18          THE COURT:  Anything further?

19          MR. MARCELO:  Very briefly.

20                  RECROSS-EXAMINATION

21  BY MR. MARCELO:

22  Q.   Mr. May, you used the ReClass driver tool to help you see

23  memory in *Destiny 2*, right?

24  A.   I used it to get an elevated handle to ReClass, but it did

25  not attach to the game itself, no.

1  any of the hash that we see on this document?

2  A.   No, I don't believe so.

3  Q.   Okay.  Now, you testified you prepared this document,

4  correct?

5  A.   Yes, I did.

6  Q.   Okay.  And you said this is a summary or a compilation of

7  the information you received from James May's computer?

8  A.   No, I never said that.

9  Q.   The question I have is:  Is this the entirety of everything

10  that was ever obtained off of Mr. May's computer, or is there

11  other information that does not appear on this document?

12  A.   These are rows in our banned database.  This is not

13  information obtained off of James May's computer.

14  Q.   Is this the entirety of the information that was obtained

15  off of James May's computer, or is there other information?

16  A.   There is associated metadata.

17  Q.   But it doesn't appear on this, correct?

18  A.   That's correct.

19  Q.   We're in the homestretch here.  I just want to clarify.

20       Have you yourself ever created a cheat?

21  A.   No.

22            MR. MANN:  No further questions, Your Honor.

23            THE COURT:  Any further questions, counsel?

24                  REBUTTAL REDIRECT EXAMINATION

25  BY MR. RAVA: