THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

              Plaintiff,

    v.

PHOENIX DIGITAL GROUP, LLC; DAVID
SCHAEFER; JORDAN GREEN; JEFFREY
CONWAY; and JAMES MAY,

              Defendants.

No. 2:21-cv-00811

PLAINTIFF BUNGIE, INC.'S
RESPONSE TO DEFENDANTS'
RENEWED MOTION FOR
JUDGMENT AS A MATTER OF
LAW AND/OR FOR A NEW TRIAL

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL
(No. 2:21-cv-00811)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

168143309

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .......................................................................................................... 1

II.    ARGUMENT .................................................................................................................. 1

    A.    The Overlength Portions of Defendants' Brief Should Be Stricken ..................... 1

    B.    Defendants Are Not Entitled to Judgment as a Matter of Law .............................. 1

        1.    Evidence of Direct Copying ......................................................................... 2

        2.    Circumstantial Evidence of Copying ........................................................... 5

            a.    Defendants Accessed *Destiny 2* .................................................... 5

            b.    The Resulting Works Are Substantially Similar to *Destiny 2* ........................................................................................................ 6

        3.    The Cheat Software Created Derivative Works ............................................ 8

    C.    May Is Not Entitled to a New Trial ..................................................................... 10

III.    CONCLUSION .............................................................................................................. 12

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – i
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
CASES

4
*A.D. v. Cal. Highway Patrol*,
5
   712 F.3d 446 (9th Cir. 2013) ..................................................................................2

6
*Adriana's Ins. Servs. Inc. v. Auto Int'l Ins. Agency, Inc.*,
   687 F. Supp. 3d 992 (C.D. Cal. 2023) ...................................................................3

7
*Antonick v. Electronic Arts, Inc.*,
8
   841 F.3d 1062 (9th Cir. 2016) ...............................................................................7

9
*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ...............................................................................5
10

11
*Clem v. Lomeli*,
   566 F.3d 1177 (9th Cir. 2009) .............................................................................10

12
*Disney Enters., Inc. v. VidAngel, Inc.*,
13
   869 F.3d 848 (9th Cir. 2017) ................................................................................2

14
*Expedia, Inc. v. Reservationsystem.com, Inc.*,
15
   No. C06-1580RSM, 2007 WL 201069 (W.D. Wash. Jan. 23, 2007) ...................1

16
*Gaina v. Northridge Hosp. Med. Ctr.*,
   No. CV 18-177, 2019 WL 1751825 (C.D. Cal. Feb. 25, 2019)..........................11

17
*Grover Prods., Co. v Air Horns of Texas, LLC*,
18
   No.18-cv-00708, 2018 WL 6118435 (C.D. Cal. Oct. 17, 2018) ...........................4

19
*IDS Prop. & Cas. Ins. Co. v. Fellows*,
   No. C15-2031 TSZ, 2017 WL 2600186 (W.D. Wash. June 15, 2017)................10
20

21
*Ironburg Inventions Ltd. v. Valve Corp.*,
   No. C17-1182 TSZ, 2021 WL 2137868 (W.D. Wash. May 26, 2021)...............1, 2

22
*Landes Constr. Co. v. Royal Bank of Canada*,
23
   833 F.2d 1365 (9th Cir. 1987) .............................................................................10

24
*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*,
   964 F.2d 965 (9th Cir. 1992) ......................................................................8, 9, 10
25

26
*Madrigal v. Allstate Ins. Co.*,
   215 F. Supp. 3d 870 (C.D. Cal. 2016) .................................................................10

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – ii
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

**TABLE OF AUTHORITIES**
(continued)

2

3

Page(s)

4

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ...................................................................9

5

6

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
   No. 11-CV-726, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013)..................12

7

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ...............................................................2, 3

8

9

*Tolkien Trust v. Polychron*,
   No. 2:23-cv-04300, 2023 WL 9471264 (C.D. Cal. Dec. 14, 2023)...........3

10

11

*Wallace v. City of San Diego*,
   479 F.3d 616 (9th Cir. 2006) ...................................................................1

12

**STATUTES**

13

17 U.S.C. § 1201(a)(1)(A) ...........................................................................12

14

**RULES**

15

Fed. R. Civ. P. 37(e)(1) ...............................................................................11

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

## I.      INTRODUCTION

Defendants' Motion for Judgment as a Matter of Law ("JMOL") and/or for a New Trial ("Motion") should be denied. Substantial evidence supported the verdict and spoliation instruction.

Defendants' two arguments for JMOL fall flat. The jury heard evidence, both direct and circumstantial, to support a finding that Defendants copied original *Destiny 2* code, including: admissions from Defendants; testimony from an author of the *Destiny 2* code; and exhibits that tracked Defendants' infringing activities and allowed comparison of the original and infringing works. Critically, Defendants ignore their spoliation of records concerning the Cheat Software, undermining their entire Motion.

James May's request for a new trial is similarly specious. The jury and Court heard testimony that, nearly a year after this lawsuit began and after May "suspected" Bungie had accessed his computer, May deleted the files he claimed Bungie accessed, and wiped his computer operating system. The spoliation instruction was well supported.

Defendants' motion should be denied.

## II.      ARGUMENT

### A.      The Overlength Portions of Defendants' Brief Should Be Stricken

Defendants once again violate the Local Rules. *See* Dkt. 55 p. 1 n.1; Dkt. 61 p. 3 n.5; Dk. 71 p. 9–10 n.2. LCR 7(e)(4) limits motions noted under LCR 7(d)(3) to 4,200 words. Defendants' Motion contains 8,390 words, exceeding the 4,200-word count by page 15 of their 26-page Motion. This discrepancy substantially prejudices Bungie's ability to respond, and the overlength portions should be stricken. *Expedia, Inc. v. Reservationsystem.com, Inc.*, No. C06-1580RSM, 2007 WL 201069, at *2 (W.D. Wash. Jan. 23, 2007) (striking all pages over page limit).

### B.      Defendants Are Not Entitled to Judgment as a Matter of Law

On a renewed motion for JMOL, the "jury's verdict must be upheld if it is supported by substantial evidence." *Ironburg Inventions Ltd. v. Valve Corp.*, No. C17-1182 TSZ, 2021 WL 2137868, at *4 (W.D. Wash. May 26, 2021) (citing *Wallace v. City of San Diego*, 479 F.3d 616,

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 1
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

624 (9th Cir. 2006)). "Evidence is substantial if it is adequate to support the jury's conclusions, even if drawing a contrary conclusion from the evidence is possible." *Id.* On a motion for JMOL, the Court cannot make credibility determinations or weigh the evidence, and it must draw all inferences from the trial evidence in the light most favorable to the nonmoving party while disregarding all evidence favorable to the moving party that the jury was not required to believe. *Id.* ("Court must accept the jury's credibility findings consistent with the verdict."). Thus, the Court may grant a JMOL only when the evidence viewed in this way "permits only one reasonable conclusion" and that conclusion is contrary to the verdict. *Id.* (citing *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013)).

Here, the jury returned a verdict for Bungie on three theories of copyright infringement: direct, contributory, and vicarious. Dkt. 299. Each requires proof of direct infringement, whether by Defendants or third parties. To prevail on its claim, Bungie needed to prove: (1) ownership of the infringed material and (2) that Defendants copied original elements of Bungie's work(s). *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The first element was stipulated (Dkt. 293 p. 6 (Jury Instructions)); only the copying[1] element is disputed.

Bungie may prove copying with either direct or circumstantial evidence. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). Because the jury verdict form did not indicate the basis for finding copyright infringement, if there is substantial evidence to support any method of infringement (creation, distribution, or use of the Cheat Software), then the verdict must be upheld. The substantial direct and circumstantial evidence entered at trial supports a finding of direct infringement via all three methods.

### 1.    Evidence of Direct Copying

Circumstantial evidence is not necessary when there is evidence of direct copying. *Id.* at 1154 ("A showing of 'substantial similarity' is irrelevant in a case…in which the [plaintiffs]

---

[1] "Copying" is "shorthand for the infringing of any of the copyright owner's exclusive rights", which include the rights to reproduce, distribute, and prepare derivative works based upon the copyrighted work. *Range Road Music*, 668 F.3d at 1153–54.

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 2
(No. 2:21-cv-00811)
168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

produced evidence that the [resulting works] entailed direct copying of copyrighted works.").

Evidence of direct copying may include party admissions, for example, where an infringing author

admitted that he attempted to "stick as close to canon [of the plaintiff's works] as [he] could."

*Tolkien Trust v. Polychron*, No. 2:23-cv-04300, 2023 WL 9471264, at *6 (C.D. Cal. Dec. 14,

2023). Direct evidence may also include observation of the defendants' infringing acts. *Range

Road Music*, 668 F.3d at 1154 (affirming summary judgment finding copyright infringement

where witness observed public performances of plaintiff's musical works); *Adriana's Ins. Servs.

Inc. v. Auto Int'l Ins. Agency, Inc.*, 687 F. Supp. 3d 992, 1001 (C.D. Cal. 2023) (granting summary

judgment where "Defendants obtained a copy of the Subject Work from the internet,"

"superimposed the face of a stock-photography model over [plaintiff's] face" on the Subject Work,

and then published the resulting image).

Here, while any one method of copying is sufficient, there was direct evidence that the

creation, distribution, *and* use of the Cheat Software involved copying.

**Creation:**  Dr. Kaiser explained that to create a cheat with the Cheat Software features,

key components of original *Destiny 2* code had to be copied into the Cheat Software. Trial Tr.[2] at

77:18–78:3, 83:20–84:7, 89:9–19. May confirmed this process, and Dr. Kaiser observed May

doing exactly that.

Similar to the direct evidence of copying in *Tolkien Trust*, where the defendant testified he

attempted "stick as close to canon [of the plaintiff's works] as [he] could," May admitted that he

used tools designed to copy game code while making a cheat for *Destiny 2*. *Tolkien Trust*, 2023

WL 9471264, at *6. Specifically, May admitted he accessed *Destiny 2* to develop cheat software

by repeatedly attaching reverse engineering tools to *Destiny 2*, and at key times before the

Defendants released or updated the Cheat Software. Trial Tr. at 214:6–22, 243:25–244:21; Ex. 56[3]

(May's ban history); Ex. 38 38 (AimJunkies advertisements indicating when cheat was released

---

[2] "Trial Tr." refers to Exhibit A to the Declaration of William Rava.

[3] All Exhibit cites in this brief refer to the trial exhibits attached to the Declaration of William Rava.

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 3
(No. 2:21-cv-00811)
168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    and updated). Every time he attached those tools, May gained access to the game code for up to

2    an hour. Trial Tr. at 247:15–23, 259:2–7 (May could see the *Destiny 2* object code while reverse

3    engineering it). And as May explained, those reverse engineering tools were designed to access

4    the code and "**copy the [code] structure and put it right in the cheat**." *Id.* at 241:5–21 (emphasis

5    added); *see also id.* at 240:3-11 (reverse engineering tools allow May to "plug and play" code from

6    game to cheat). May's objection that the cheat he was making was not the Cheat Software at issue

7    goes to his credibility—which the Court cannot weigh.

8         Trial Exhibit 56 is also direct evidence of May's copying, contemporaneously capturing

9    May's cheat creation activities. Ex. 56; Trial Tr. at 244:22–247:14 (May confirming Ex. 56

10   captured his reverse engineering). Further, as Dr. Kaiser observed, May's activities indicated he

11   was using "a reverse engineering tool attached to *Destiny 2*… to explore through the memory, look

12   for functions, and find sensitive code and structures." Trial Tr. at 99:21–100:1; *see also id.* at

13   101:8–18. May's admissions, Dr. Kaiser's testimony, and the information captured in Exhibit 56

14   are all direct evidence establishing that, when, and how May copied the *Destiny 2* code.

15        The remaining Defendants are also liable for this infringement because they used Phoenix

16   Digital to carry out this willful copyright infringement and/or derived direct financial benefit from

17   it. Dkt. 293 (Jury Instruction No. 12A); *Grover Prods., Co. v Air Horns of Texas, LLC*, No.18-cv-

18   00708, 2018 WL 6118435, at *3 (C.D. Cal. Oct. 17, 2018); Trial Tr. at 277:20–22 (revenue from

19   Cheat Software sales paid to Conway, Green, and Schaefer); *id.* at 215:7–19 (May must obtain

20   approval from Schaefer to make cheats).

21        **Distribution:**   There was also direct evidence that distribution of the Cheat Software

22   involved copying. Schaefer admitted that, when used by customers, the Cheat Software—which

23   contained portions of *Destiny 2* code—passed through Phoenix Digital's computers, meaning a

24   copy of the copied *Destiny 2* code could be found on Phoenix Digital's computers. Trial Tr. at

25   345:2–7; Ex. 63 (Phoenix Digital's Supp. Resp. to Interrogatory No. 6).

26

1   **Use:**  Finally, direct evidence showed that Cheat Software customers created a modified

2   version of the *Destiny 2* code and audiovisual works, i.e., derivative works. For the code,

3   Defendants conceded that the cheats distributed by Phoenix Digital, including the Cheat Software,

4   are *injected* into the game process. Trial Tr. at 417:6–15; *id.* at 233:3–8. As Dr. Kaiser explained,

5   when a cheat is "injected" into *Destiny 2*, a copy of the *Destiny 2* code *with the Cheat Software*

6   *code inside of it* runs on the customer's computer, thus creating a modified version of *Destiny 2*.

7   *Id.* at 77:18–78:3, 89:20–90:5 ("after the loader has taken the payload and injected it, you have the

8   *Destiny 2* code in there, as well as the cheat code"), 180:15–21, 185:20–186:3.

9       As to the audiovisual works, the parties stipulated to how the Cheat Software affected the

10   audiovisual output of *Destiny 2*: the "ESP feature…display[s] a distinct box around the other

11   players" and the OPK feature teleports players in the game. Dkt. 293 p. 7. These admissions are

12   likewise direct evidence that the *Destiny 2* audiovisual works were modified by the Cheat

13   Software, creating derivative works. *Id.*; Trial Tr. at 234:2–16, 235:2–14, 235:18–25.

14       **2.     Circumstantial Evidence of Copying**

15       The jury verdict is also supported by substantial circumstantial evidence, where Defendants

16   had access to the original work and the infringing work is substantially similar to the original work.

17       **a.     Defendants Accessed *Destiny 2***

18       Access may be shown directly, or circumstantially by showing that the plaintiff's work has

19   been widely disseminated. *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th

20   Cir. 2009).

21       Here, May admits that he downloaded *Destiny 2* and accessed its object code. Trial Tr. at

22   243:25–244:4, 259:2–7 (confirming that May saw the *Destiny 2* object code when using reverse

23   engineering tools). Moreover, the parties stipulated that *Destiny 2* (and its object code) was widely

24   disseminated, with each of its 30 million players having access to the code. Dkt. 293 p. 6; Trial Tr.

25   at 142:8–15, 259:2–7. Thus, substantial evidence supports access.

26

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 5
(No. 2:21-cv-00811)
168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Defendants' argument that they did not have access to the *Destiny 2* source code

2    misunderstands what was copied. Mot. at 15. Defendants copied the *Destiny 2* object code, not

3    source code. *See* Trial Tr. at 134:22–135:3.  Object code is the computer readable version of source

4    code, and is the code that is distributed when *Destiny 2* is downloaded by customers. Trial Tr. at

5    142:8–15. Both source code and object code are protected in their entirety by Bungie's copyright

6    registrations. Dkt. 293 p. 6.

7                     **b.       The Resulting Works Are Substantially Similar to *Destiny 2***

8            Substantial evidence also supported the jury finding substantial similarity, in both the game

9    and Cheat Software code, and the resulting audiovisual works.

10           As to the code, Defendants' argument that the jury could not compare the *Destiny 2* object

11   code to the Cheat Software object code **omits that Defendants' spoliation caused this**

12   **impossibility.** Dkt. 293 (Jury Instruction No. 9) (Defendants deleted "records of the Cheat

13   Software, including access to the Cheat Software" and "did so with an intent to deceive Bungie or

14   otherwise interfere with Bungie's ability to proceed to trial"). Regardless of whether the *Destiny*

15   *2* object code was entered into evidence, the jury could not do a comparison without the infringing

16   code. But Dr. Kaiser's testimony that the Cheat Software necessarily included copies of key

17   portions of the *Destiny 2* code (Trial Tr. at 77:18–78:3, 89:20–90:5; *see also id.* at 180:15–21,

18   185:20–186:3), as well as May's testimony confirming his process of copying code to make the

19   cheat (*id.* at 241:5–21, 240:3–11), in combination with the adverse inference that an analysis of

20   the Cheat Software code would be "unfavorable to Defendants," is more than enough to establish

21   substantial similarity.

22           Moreover, Bungie did introduce portions of the *Destiny 2* source code **and** identified

23   certain lines that corresponded to object code that Defendants copied to create the Cheat Software,

24   including code for "ability interfaces" and "the ability manager."  Trial Tr. at 135:6–136:10; *see*

25   *also* Exs. 2, 4 (software code registrations). Dr. Kaiser also described the other key portions of

26

1    *Destiny 2* code that were copied into the Cheat Software, including aiming, player position,

2    combatant position, ammo, and rendering. Trial Tr. at 82:20–83:1, 83:20–84:3.

3    Relying heavily on *Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016),

4    Defendants argue that the trial evidence cannot satisfy the "intrinsic" prong of the substantial

5    similarity test. But their reliance on *Antonick* is misplaced and the case is easily distinguished.

6    **First**, a key basis for the *Antonick* holding was that the plaintiff inexplicably did not enter

7    the infringing source code into evidence. *Id.* at 1065. That is not the case here, where Defendants

8    *intentionally* prevented Bungie from showing the infringing code to the jury. *See* Dkt. 293 p. 13–

9    14. Thus, the jury was allowed to presume that, had they seen the code, it would have shown

10   substantial similarity. *Id.* *Antonick* did not involve a spoliation instruction. Moreover, Dr. Kaiser

11   identified specific lines of source code that corresponded to the object code that Defendants copied

12   to create the Cheat Software. Trial Tr. at 135:6–136:10; *see also* Exs. 2, 4.

13   **Second**, in *Antonick*, plaintiff's key witness testified that he "had no programming

14   responsibilities," "did not understand the [original work's] code," and "had no knowledge about

15   differences in the games' codes." *Antonick*, 841 F.3d at 1067. In stark contrast, Dr. Kaiser is

16   intimately familiar with the *Destiny 2* code, having written portions that Defendants copied; he

17   explained how the Cheat Software infringed and what portions of the *Destiny 2* code were copied.

18   Trial Tr. 62:19–63:8, 77:7–17; *see also id.* 77:18–78:3, 89:9–93:4.

19   **Third and finally**, *Antonick* did not involve infringement of an audiovisual work .

20   *Antonick*, 841 F.3d at 1067. This case did. Bungie alleged infringement of both its code and its

21   audiovisual works, and infringement of either supports the jury's verdict. And, in support of the

22   jury's verdict, the evidence at trial allowed the jury to compare the audiovisual elements of the

23   unmodified *Destiny 2* with the game with the Cheat Software. Exs. 1, 3, 29.[4]

24                          *      *      *

25

26   _____

[4] Defendants' spoliation of all "records" of the Cheat Software and images used to market it could also support a finding of substantial similarity between the audiovisual works.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Because substantial evidence supported a finding of access and substantial similarity, the
2    jury's verdict is well supported and Defendants' Motion should be denied.

3       **3.    The Cheat Software Created Derivative Works**

4            Defendants' final JMOL argument dusts off a decades-old, pre-internet case concerning
5    video game cheats. Mot. at 20–21 (citing *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*,
6    964 F.2d 965 (9th Cir. 1992)). Unsurprisingly, that 30-year-old technology bears little resemblance
7    to the Cheat Software. Relying on *Galoob*, Defendants argue that the modified audiovisual
8    displays created by the Cheat Software are not derivative works.

9            *Galoob* does not require setting aside the jury's verdict. There, the "Game Genie," a
10   physical device inserted between a cartridge containing Nintendo's game and Nintendo's console,
11   "block[ed] the value for a single data byte sent by the game cartridge" to the console and
12   "replac[ed] it with a new value." *Id.* As a result, the player could alter the value of that data, such
13   as their character's strength, and make their character invincible. *Id.* Because the Game Genie
14   merely intercepted a single byte of data passing from the cartridge to the console, and "did not
15   incorporate a portion of a copyrighted work in some concrete or permanent form," the court found
16   that the Game Genie did not create a derivative work of the audiovisual displays. *Id.* at 968.

17           The jury considered much different evidence here. Rather than data on a game cartridge,
18   *Destiny 2* comprises tens of millions of lines of dynamic computer code, meaning it changes as
19   the players interact with the game and with game code from other players. Trial Tr. at 160:22–
20   161:4; *see also id.* at 80:11–81:8 (the aiming functions are "not a simple…number that's in
21   memory"). That code and the audiovisual display it creates are both protected by Bungie's
22   copyright registrations. Dkt. 293 p. 6. To interact with the *Destiny 2* code, the Cheat Software
23   incorporated—in a concrete and permanent form—copied portions of the *Destiny 2* code. This
24   copied code includes the rendering functions, which are responsible for creating the visuals on a
25   player's screen and which were used by the Cheat Software to draw the red boxes for the Cheat
26   Software customers. Trial Tr. at 80:11–81:8, 82:20–83:1, 83:20–84:7. This stands in stark contrast

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 8
(No. 2:21-cv-00811)
168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  to the *Galoob* Game Genie. *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1111 (9th Cir. 1998)

2  (finding infringement where "the audiovisual displays generated by the [video game] from the

3  [infringing files] **are in the [infringing files] themselves**" and distinguishing *Galoob* where "the

4  audiovisual displays created by Game Genie were never recorded in any permanent form")

5  (emphasis added).

6       The Cheat Software also works differently than the Game Genie. To affect *Destiny 2*, the

7  Cheat Software was injected into the *Destiny 2* code, modifying lines of code within the game,

8  while the Game Genie did not modify the underlying game itself (i.e., the data on the cartridge).

9  Trial Tr. at 77:18–78:3, 89:20–90:5, 180:15–21, 185:20–186:3; *Galoob*, 964 F.2d at 967. That's a

10  critical difference. The result of this copying and injection process, as illustrated in Bungie's trial

11  demonstrative below, was a concrete, modified version of *Destiny 2* that included injected Cheat

12  Software code, running on the customer's computers.



22  Ex. D79; Trial Tr. 89:20–91:1.

23       By modifying the code, the Cheat Software also created a modified audiovisual display,

24  which included the red boxes drawn around other combatants and the ability to teleport characters

25  to different locations. Trial Tr. at 75:19–76:2, 91:5–23; Ex. 29.

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    In support of their misplaced *Galoob* analogy, Defendants refer to their rudimentary trial

2    demonstration of a box drawn on a projected piece of paper to show that the image on the paper

3    was not permanently changed. Mot. at 21. But as Dr. Kaiser explained, the example was

4    "meaningless" in the context of the Cheat Software because the Cheat Software does not merely

5    draw a box "on top" of *Destiny 2*; it draws the boxes **within** *Destiny 2* using code Defendants

6    copied from *Destiny 2*, such that the boxes follow moving players using copied *Destiny 2* code

7    regarding player locations. Trial Tr. at 148:11–17; *see also id.* at 82:20–83:1, 83:20–84:3.

8    The substantial evidence demonstrates that the Cheat Software modifies the *Destiny 2* code

9    and creates a modified audiovisual output from within the code. These modifications are concrete,

10    derivative works, and substantial evidence supports the jury's verdict.

11    **C.    May Is Not Entitled to a New Trial**

12    May's request for a new trial is merely another attempt to re-litigate this Court's November

13    1, 2023 Order finding that May spoliated evidence. Dkt. 216; Dkt. 285; Trial Tr. 525:9–19. This

14    attempt should also fail.

15    "On a motion for a new trial, the Court's inquiry is whether, giving full respect to the jury's

16    findings and considering all of the evidence, the Court is left with 'the definite and firm conviction

17    that a mistake has been committed.'" *IDS Prop. & Cas. Ins. Co. v. Fellows*, No. C15-2031 TSZ,

18    2017 WL 2600186, at *3 (W.D. Wash. June 15, 2017) (quoting *Landes Constr. Co. v. Royal Bank*

19    *of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987)). Even when a jury instruction was erroneous,

20    the motion for new trial will not be granted if the error was harmless; that is, "if it is more probable

21    than not that the jury would have reached the same verdict had it been properly instructed."

22    *Madrigal v. Allstate Ins. Co.*, 215 F. Supp. 3d 870, 909–10 (C.D. Cal. 2016) (quoting *Clem v.*

23    *Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)).

24    On November 1, 2023, the Court granted Bungie's motion for discovery sanctions against

25    May for his spoliation of four hard drives that he alleged Bungie accessed. Dkt. 216. While May

26    initially indicated he was not objecting to the spoliation order, he later changed course. Ex. B (Nov.

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 10
(No. 2:21-cv-00811)
168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1  17, 2023 Pretrial Conf. Tr.) at 19:14–17 ("[w]e're not asking for reconsideration" of the spoliation

2  order); Dkt. 285 (objecting to spoliation instruction).

3      Over May's objection, the Court issued the spoliation instruction that included May's

4  deleted hard drives. *See* Trial Tr. at 525:9–19; Dkt. 293 p. 13–14. May now seeks another bite at

5  the despoiled apple. But Bungie established the need for a spoliation order both in the briefing

6  *before* trial and through evidence entered *at* trial.

7      Sanctions, such as a spoliation instruction, are proper if ESI is (1) irreplaceably lost; (2) the

8  offending party failed to take reasonable steps to preserve the ESI; (3) the offending party was

9  under a duty to preserve it; and (4) the moving party was prejudiced by the loss. Dkt. 216 (Order

10  Granting Motion for Discovery Sanctions) (citing *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV

11  18-177, 2019 WL 1751825, at *2–3 (C.D. Cal. Feb. 25, 2019) and Fed. R. Civ. P. 37(e)(1)).

12      As to the first and second elements, May conceded that he wiped files from his C, D, F,

13  and H hard drives after Bungie filed the lawsuit. Dkt. 216 p. 14–15; Trial Tr. at 490:20–491:21.

14  Although he attempted to change his story at trial, his impeaching deposition testimony confirmed

15  that the deleted files could not be recovered. *Id*. at 491:8–21 (deposition testimony confirming he

16  did not have access to certain files after wiping hard drives). He also conceded he permanently

17  deleted operating system information that would "track activities on [May's] computer". *Id.* at

18  492:14–19.

19      May also had a duty to preserve the files he wiped, which duty "arose the moment he

20  received notice of this lawsuit," because that's when May suspected Bungie improperly accessed

21  his computer. Dkt. 216 at 11–12; Dkt. 101, Ex. K (May 2023 Dep. Tr.) at 82:1–16 (May suspected

22  his "files had been accessed by Bungie . . . right when [he] got the lawsuit."). May's cross

23  examination confirmed this finding. Trial Tr. at 263:1–4 (May wiped his computer a year after

24  litigation began), 492:5–13 (conceding he wiped files May "thought Bungie may have accessed").

25  May's changing story at trial goes to his credibility, and does not warrant a new trial.

26

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 11
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Finally, Bungie was prejudiced because the lost evidence was relevant. Indeed, May

2    claimed Bungie accessed his C drive, one of the drives May wiped, and suspected Bungie accessed

3    files on his other wiped drives. Trial Tr. at 475:8–14, 492:5–13; *see also* Dkt. 216 at 17 n.6 ("May

4    offers no argument for why his wiping of the four hard drives has not prejudiced Plaintiff"). May

5    also testified that his wiped operating system could have tracked Bungie's activities, if any, on his

6    computer. Trial Tr. at 492:14–19.

7    Even if the jury instruction was erroneous (it was not), any error was harmless because

8    May could not have satisfied at least two elements of his DMCA counterclaim; specifically, that

9    Bungie circumvented technological protection measures and that May's files were protected by

10   copyright. 17 U.S.C. § 1201(a)(1)(A). May admitted that he granted *Destiny 2* permission to access

11   his computer past his only two technological protection measures—Bungie did not circumvent

12   them. Trial Tr. at 485:3–19; 486:11–487:18.  May also failed to offer *any* evidence that the files at

13   issue were protected by the Copyright Act other than that he wrote code for the files (which was

14   copied from public sources online), which is legally insufficient. Trial Tr. at 479:6–480:7; *Point 4*

15   *Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726, 2013 WL 4409434, at

16   *18 (E.D.N.Y. Aug. 2, 2013) ("it is not enough for the party claiming protection to show that it

17   independently created a certain number of lines of code"). Even if the spoliation instruction had

18   not been given, May could not have overcome these plain deficiencies.

19   Because the spoliation instruction was warranted, and any hypothetical error in granting it

20   would be harmless, May's motion should be denied.

21   **III.    CONCLUSION**

22   Bungie respectfully requests that the Court deny Defendants' motion for JMOL and May's

23   motion for a new trial.

24

25

26

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 12
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    I certify that this memorandum contains 4,153 words, in compliance with the Local Civil

2  Rules.

3

4

5  Dated: July 25, 2024                      By: s/ William C. Rava

6                                                William C. Rava, Bar No. 29948
                                               Christian W. Marcelo, Bar No. 51193
7                                              Jacob P. Dini, Bar No. 54115
                                               **Perkins Coie LLP**
8                                              1201 Third Avenue, Suite 4900
                                               Seattle, Washington 98101-3099
9                                              Telephone: +1.206.359.8000
                                               Facsimile: +1.206.359.9000
10                                             WRava@perkinscoie.com
                                               CMarcelo@perkinscoie.com
11                                             JDini@perkinscoie.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BUNGIE'S RESP. TO DEFS.' RENEWED MOT.
FOR JMOL AND/OR NEW TRIAL – 13
(No. 2:21-cv-00811)

168143309

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: +1.206.359.8000
Fax: +1.206.359.9000