UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BUNGIE, INC.,

                Plaintiff,

      v.

PHOENIX DIGITAL GROUP LLC;
DAVID SCHAEFER; JORDAN
GREEN; JEFFREY CONWAY; and
JAMES MAY,

                Defendants.

C21-0811 TSZ

ORDER

THIS MATTER comes before the Court on Defendants' motion for judgment as a matter of law ("JMOL") and for a new trial, docket no. 310. This case proceeded to trial on a claim of copyright infringement brought by Plaintiff Bungie, Inc. ("Bungie") against all Defendants, and a counterclaim for circumvention of technological measures in violation of the Digital Millenium Copyright Act ("DMCA") brought by Defendant James May against Bungie. After a four-day trial, the jury rendered a verdict for Bungie on its copyright claim and against May on his DMCA counterclaim. *See* Verdict (docket no. 299). The jury found that all Defendants had engaged in direct, vicarious, and contributory copyright infringement and that May had not proven his DMCA

1   counterclaim.  *See id.* at 1–3.  In the pending motion, Defendants renew their half-time

2   motion for JMOL, contending that Bungie did not introduce sufficient evidence at trial to

3   sustain the jury's copyright infringement verdict.  Additionally, May moves for a new

4   trial on his DMCA counterclaim, arguing that the Court erred in instructing the jury on

5   his spoliation of evidence.

6   **Discussion**

7   **A.      Judgment as a Matter of Law on Bungie's Copyright Claim**

8           A jury's verdict must be upheld if it is supported by substantial evidence.  *See*

9   *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2006).  Evidence is substantial

10  if it is adequate to support the jury's conclusions, even if drawing a contrary conclusion

11  from the evidence is possible.  *Id.*  In ruling on a motion for JMOL, the Court may not

12  make credibility determinations or weigh the evidence.  *EEOC v. Go Daddy Software,*

13  *Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  Rather, the Court must draw all inferences from

14  the evidence in the light most favorable to the nonmoving party, and it must disregard all

15  evidence favorable to the moving party that the jury was not required to believe.  *Winarto*

16  *v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).  The Court

17  must accept the jury's credibility findings consistent with the verdict, and it may not

18  substitute its view of the evidence for that of the jury.  *Id.*  Judgment as a matter of law

19  may be granted only when the evidence, as appropriately viewed, permits only one

20  reasonable conclusion and such conclusion runs contrary to the jury's verdict.  *A.D. v.*

21  *Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

22

23

To prove a claim for copyright infringement, a plaintiff must establish both (1) ownership of a valid copyright, and (2) copying of protected aspects of the copyrighted work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Bungie and Defendants stipulated that Bungie owns valid copyrights in the computer software and audiovisual works of *Destiny 2* and *Destiny 2: Beyond Light* (collectively, "*Destiny 2*"), the video games that underlie this suit. Admitted Fact 3, Pretrial Ord. at 5 (docket no. 245). Thus, at trial Bungie needed only to establish that the "Cheat Software" distributed by Defendants had copied protected aspects of *Destiny 2*. Bungie could show that Defendants copied protected aspects of *Destiny 2* with either direct or circumstantial evidence of copying. *See Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). Both types of evidence were presented at trial.

## 1. __Direct Evidence__

Direct evidence of copying can include party admissions. *See Tolkien Tr. v. Polychron*, No. 23-cv-4300, 2023 WL 9471264, at *6 (C.D. Cal. Dec. 14, 2023). At trial, May admitted that, in developing a cheat for *Destiny 2*, he attached reverse engineering tools to the game. *See* Tr. (May 21, 2024) at 214:6–22 (docket no. 306); Tr. (May 22, 2024) at 243:25–244:21 (docket no. 307); *see* Trial Ex. 56 (log of times May was banned from *Destiny 2* for connecting reverse engineering tools or other prohibited programs to the game). Those reverse engineering tools were designed to access *Destiny 2*'s code so that May could copy the code structure and put it into the cheat he was developing. *See* Tr. (May 22, 2024) at 240:3–11, 241:5–21 (docket no. 307). Defendants' argument that

the cheat May was working to develop was not the Cheat Software at issue in this case, and that the Cheat Software was actually developed by non-party Andreas Banek, was necessarily rejected by the jury.

Bungie also presented direct evidence that the use of the Cheat Software caused unauthorized copying to occur. Defendants conceded that, in order for the Cheat Software to function, it had to be "injected" into the *Destiny 2* process. *See* Tr. (May 22, 2024) at 232:7–233:11, 417:6–15 (docket no. 307). As Bungie's expert witness, Dr. Edward Kaiser, explained, when a cheat is "injected" into *Destiny 2*, a copy of the *Destiny 2* code with the Cheat Software code inside of it runs on the customer's computer, creating a modified version of the game. *See* Tr. (May 21, 2024) at 77:18–78:3, 89:20–90:5 (docket no. 306).

Copyright protection also extends beyond *Destiny 2*'s code to the game's audiovisual works. The parties stipulated to how the Cheat Software affected the audiovisual output of *Destiny 2*: the "ESP feature allows users to see other *Destiny 2* players and non-player characters through solid walls by displaying a distinct box around the other players, displaying the players' names, and [disclosing] the distance between the cheating and non-cheating players." Admitted Fact 11, Pretrial Ord. at 6 (docket no. 245). This stipulation, and Defendants other admissions, are direct evidence that the Cheat Software infringed *Destiny 2*'s audiovisual works. Substantial direct evidence supports the jury's verdict that Defendants engaged in copyright infringement.

1
2.    **Circumstantial Evidence**

2       Bungie also presented circumstantial evidence that is substantial enough to sustain

3   the jury's verdict.  To prove copying via circumstantial evidence, Bungie was required to

4   show that (i) Defendants had access to *Destiny 2*, and (ii) *Destiny 2* and the Cheat

5   Software are substantially similar.  *See Skidmore*, 952 F.3d at 1064.

6       Proof of access can be shown via either direct evidence of access or, alternatively,

7   "circumstantial evidence can be used to prove access either by (1) establishing a chain of

8   events linking the plaintiff's work and the defendant's access, or (2) showing that the

9   plaintiff's work has been widely disseminated."  *Art Attacks Ink, LLC v. MGA Ent. Inc.*,

10  581 F.3d 1138, 1143 (9th Cir. 2009) (citation omitted).  The parties stipulated that

11  *Destiny 2* has a player base of over 30 million players and was widely disseminated, *see*

12  Admitted Fact 2, Pretrial Ord. at 5 (docket no. 245), and May admitted that he accessed

13  *Destiny 2* and its object code, Tr. (May 22, 2024) at 243:25–244:4, 259:2–7 (docket

14  no. 307).

15      Substantial similarity is evaluated using a two-part test.  "The first part, the

16  extrinsic test, compares the objective similarities of specific expressive elements in the

17  two works."  *Skidmore*, 952 F.3d at 1064 (citing *Cavalier v. Random House, Inc.*, 297

18  F.3d 815, 822 (9th Cir. 2002)).  "The second part, the intrinsic test, 'test[s] for similarity

19  of expression from the standpoint of the ordinary reasonable observer, with no expert

20  assistance.'"  *Id.* (alteration in original, quoting *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d

21  628, 637 (9th Cir. 2008)).  Bungie satisfied both the extrinsic and intrinsic tests for

22  substantial similarity.

23

1    Defendants rely heavily on the case *Antonick v. Electronic Arts, Inc.*, 841 F.3d

2  1062 (9th Cir. 2016), to support their argument that Bungie failed to prove substantial

3  similarity at trial.  *Antonick* is distinguishable from this case in two ways.  First, in

4  *Antonick* the plaintiff failed to admit the alleged infringing computer code into evidence.

5  *Id.* at 1065.  Although Bungie likewise did not admit the source code of the Cheat

6  Software into evidence, in this matter, the Court gave a spoliation of evidence instruction

7  to the jury.  *See* Jury Instruction No. 9 (docket no. 293 at 13–14)  That instruction

8  informed the jury that they "may presume" any spoliated evidence, including records

9  relating to the Cheat Software and the Cheat Software itself, were adverse to Defendants.

10  *See id.*  This permissive presumption gave the jury a basis to find that the Cheat Software

11  was substantially similar to *Destiny 2*.

12    Second, *Antonick* involved only infringing computer code and not audiovisual

13  works.  841 F.3d at 1067.  Audiovisual works are, however, one of the *Destiny 2*

14  components that Bungie has copyrighted.  Admitted Fact 3, Pretrial Ord. at 5 (docket

15  no. 245); Trial Ex. 1 (*Destiny 2* Audiovisual Copyright Registration and Deposit

16  Materials); Trial Ex. 3 (*Destiny 2: Beyond Light* Audiovisual Copyright Registration and

17  Deposit Materials).  At trial, the jury was able to compare both the original audiovisual

18  elements of *Destiny 2* and the modified audiovisual elements created by the Cheat

19  Software.  *See* Trial Ex. 1 (*Destiny 2* Audiovisual Copyright Registration and Deposit

20  Materials); Trial Ex. 3 (*Destiny 2: Beyond Light* Audiovisual Copyright Registration and

21  Deposit Materials); Trial Ex. 29 (screenshots from Aimjunkies.com showing the Cheat

22

23

1    Software in use).  Thus, substantial circumstantial evidence also supports the jury's

2    verdict.

3        **3.     Derivative Works**

4        Defendants' final argument for why they are entitled to JMOL on Bungie's

5    copyright claim is that, as a matter of law, the Cheat Software does not create derivative

6    works.  The case Defendants rely on to support this contention, *Lewis Galoob Toys, Inc.*

7    *v. Nintendo of Am., Inc.*, 964 F.2d 965 (9th Cir. 1992), is distinguishable from the instant

8    case.  *Galoob* involved a device known as the "Game Genie," which was inserted

9    between a game cartridge and the game console and through which the cartridge's code

10   would have to pass to get to the console.  *See id.* at 967.  The Game Genie blocked a

11   single byte of data from being transmitted from the cartridge to the console and allowed

12   the user to insert new data in place of the blocked byte.  *See id.*  In essence, "[t]he Game

13   Genie was dumb; it functioned only as a window into the computer program, allowing

14   players to temporarily modify individual aspects of the game."  *Micro Star v. Formgen*

15   *Inc.*, 154 F.3d 1107, 1111 (9th Cir. 1998) (distinguishing *Galoob* from a case involving

16   alleged infringement of copyrighted audiovisual works and finding infringement in the

17   latter case where "the audiovisual displays generated by the [video game] from the

18   [infringing products] are in the [infringing products] themselves").

19       In the present case, the Cheat Software was not dumb and functioned as more than

20   a window into *Destiny 2*'s programming.  Beyond just allowing the end user to edit a

21   value in computer code generated from a valid source without modifying the underlying

22   source, the Cheat Software's computer code is "injected" into the *Destiny 2* code,

23

creating an essentially new and altered copy of the game.  *See* Tr. (May 21, 2024) at

77:18–78:3, 89:20–90:5 (docket no. 306).  Additionally, the Cheat Software added red

boxes around certain characters, creating a modified audiovisual display of *Destiny 2*, *i.e.*

a derivative work.  *See id.* at 77:18–78:3, 89:20–90:5; Trial Ex. 29 (screenshots from

Aimjunkies.com showing Cheat Software in use).  Defendants' argument that the Cheat

Software does not create derivative works fails, and substantial evidence supports the

jury's verdict that Defendants infringed Bungie's copyrights in *Destiny 2*.

**B.    Jury Instruction on May's Spoliation of Evidence**

May contends that he is entitled to a new trial on his DMCA counterclaim because

the Court erred in giving Jury Instruction No. 9, docket no. 293 at 13–14, which

instructed the jury regarding May's spoliation of evidence.  "On a motion for a new trial,

the Court's inquiry is whether, giving full respect to the jury's findings and considering

all of the evidence, the Court is left with 'the definite and firm conviction that a mistake

has been committed.'"  *IDS Prop. & Cas. Ins. Co. v. Fellows*, No. C15-2031, 2017 WL

2600186, at *3 (W.D. Wash. June 15, 2017) (quoting *Landes Constr. Co. v. Royal Bank

of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987), and citing 11 Charles Alan Wright,

et al., Fed. Prac. & Proc. § 2806 & n.26 (3d ed. 2012)).

On November 1, 2023, the Court issued an Order finding that Defendants,

including May, had spoliated evidence and that a spoliation instruction should be given at

trial.  *See* docket no. 216.  May's arguments that Instruction No. 9 was not supported by

the facts or the law ignore entirely the Court's prior Order and findings therein.  May has

not raised any doubt about the appropriateness of Instruction No. 9.

**<u>Conclusion</u>**

For the foregoing reasons, the Court ORDERS:

(1)     Defendants' motion for judgment as a matter of law and for a new trial, docket no. 310, is DENIED.

(2)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 30th day of August, 2024.

Thomas S. Zilly
United States District Judge

ORDER - 9